UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SAIO BARZEE,

Petitioner,

v.

9:23-CV-1022
(DNH/ML)

JAY SKIFF, Superintendent
of Upstate Corr. Facility,

Respondent.

---

APPEARANCES: OF COUNSEL:

SAIO BARZEE
*Pro se* Petitioner
Upstate Correctional Facility
Post Office Box 2001
Malone, New York 12953

LETITIA A. JAMES
New York State Attorney General
Counsel for Respondent
28 Liberty Street
New York, New York 10005

JALINA J. HUDSON, ESQ.
Assistant Attorney General

MIROSLAV LOVRIC, United States Magistrate Judge

**REPORT and RECOMMENDATION**

Currently before the Court in this habeas corpus proceeding filed by the petitioner, Saio Barzee ("Petitioner"), pursuant to 28 U.S.C. § 2254, is a referral to the undersigned for a report and recommendation from Senior United States District Court Judge David N. Hurd regarding the Petition. (Dkt. No. 1.) Petitioner is challenging a judgment of conviction in Onondaga County Court. (Dkt. No. 1 at 1.)

On August 1, 2023, Petitioner filed a Petition seeking a writ of habeas corpus challenging his confinement. (Dkt. No. 1.) Respondent Jay Skiff[1] ("Respondent") opposed that motion and Petitioner filed a traverse. (Dkt. Nos. 27, 36, 38.) For the following reasons, the undersigned recommends that the Petition be denied.

## I. BACKGROUND

### A. Criminal Charges and Uncharged Criminal Conduct

On January 4, 2013, an Onondaga county grand jury charged Petitioner with first-degree burglary (N.Y. Penal Law § 140.03(3)), two counts of first-degree robbery (N.Y. Penal Law § 160.15(3)), second-degree assault (N.Y. Penal Law § 120.05(3)), two counts of fourth-degree grand larceny (N.Y. Penal Law §§ 155.30(4), (8)), petit larceny (N.Y. Penal Law § 155.25), reckless driving (N.Y. Veh. & Traf. Law § 1212), and third-degree unlawful fleeing a police officer in a motor vehicle (N.Y. Penal Law § 270.25). (State Record ["SR."] at 1-3.) The charges arose from two separate incidents involving Petitioner in Syracuse, New York: (1) on September 9, 2012, Petitioner stole a cell phone from Jake Van Alstyne using a knife (SR. at 2, 180), and (2) on September 13, 2012, Petitioner stole a debit card from Mark Hoffman using a knife (SR. 2, 177).

1 Petitioner informed the Court that he was transferred to Upstate Correctional Facility. (Dkt. No. 48.) The proper respondent for a federal habeas action is the superintendent of the facility in which petitioner is incarcerated. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts ("If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody."). Accordingly, the Clerk of the Court is respectfully directed to update the caption to reflect the proper respondent following petitioner's transfer: Jay Skiff, Superintendent of Upstate Correctional Facility.

At the time of his plea, other incidents involving Petitioner had been reported to the police, but he had not yet been charged with offenses related to those incidents. (SR. 174, 181, 197.)

**B. Pre-trial Proceedings**

At a conference on April 3, 2013, the trial court noted Petitioner's potential sentencing exposure as follows:

> He has an assault second degree. The maximum sentence on that is seven years. He's got a robbery first degree pending. . . . . The maximum sentence on that is twenty-five years. He's got a grand larceny fourth. The maximum sentence on that is four years. You and -- and I'm not even going to begin to calculate how much time he's looking at consecutively if he does to trial and gets convicted on all these charges. Okay? I mean, he would be, you know, probably sentenced into the next millennium if that happens because it all runs consecutive to that. Okay?

(SR. 407-08.)

During that conference, defense counsel Scott Brenneck stated that Petitioner insisted on advising the court that he was willing to plead guilty if the court would commit to a five-year sentence. (SR. 409.) The court declined the request and stated that the minimum is five years incarceration, the State was seeking ten years incarceration, and the court would look at everything and arrive at a sentence that it deems appropriate. (*Id.*) The trial court advised Petitioner not to listen to the individuals that he was incarcerated with but to listen carefully to his attorney and to discuss the plea offer with his parents. (*Id.* at 408.) The trial court also said that if Petitioner were convicted of everything, he would never "see the light of day again." (SR. 408-09.)

On April 18, 2013, Petitioner appeared in court and Attorney Brenneck was relieved from representing Petitioner. (Dkt. No. 29, Attach. 7 at 2.) The trial court denied Petitioner's request for the appointment of a specific attorney, and appointed Todd Smith as counsel. (*Id.* at 2-3.)

The trial court advised Petitioner that this was his last assigned attorney and if Petitioner did not cooperate with Attorney Smith he would have to hire his own lawyer. (*Id*. at 3.)

On April 22, 2013, retained counsel Charles Keller—the third attorney to appear for Petitioner—filed an omnibus motion on Petitioner's behalf. (SR. at 182-93.) The omnibus motion sought, among other things, to dismiss the indictment, suppression of statements Petitioner made to the police, suppression of the witness identifications, a hearing regarding the voluntariness of Petitioner's statements to police, a hearing to determine the admissibility of witness identifications, and *Brady* and *Rosario* material. (*Id*. at 182-202.) Attorney Keller's affirmation stated that he conducted interviews with Petitioner and investigated the circumstances surrounding Petitioner's police statements and witness identification procedures. (SR. 189-90.)

On May 7, 2013, the prosecution responded to the omnibus motion and consented to a hearing as to the voluntariness of the statements. (SR. 203-07.) The People argued that the witness identifications were legally obtained and not suggestive and reported that no exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) had been found. (SR. 205.)

**C. Guilty Plea and Sentence**

On May 23, 2013, before the court decided the omnibus motion or conducted any hearings, Petitioner pleaded guilty to one count of first-degree robbery in exchange for a determinate term of eight years in prison and three years post-release supervision. (*See generally* Dkt. No. 29, Attach. 5.) When pleading guilty, Petitioner stated that no "other promises or statements had been made" to induce him to plead guilty. (Dkt. No. 29, Attach. 5 at 3.) Petitioner stated that he understood that he was giving up the right to (1) a jury trial, (2) have the State prove beyond a reasonable doubt that he committed the crime of first-degree robbery, (3)

confront, cross-examine, and question witnesses, (4) call witnesses and produce evidence or testimony in defense, and (5) take the stand and testify on his own behalf. (*Id*. at 3-4.) Petitioner also waived his right to appeal. (*Id*. at 5.)

Petitioner admitted that on September 13, 2012, he forcibly stole property from Michael Bergman and in the course of that crime—or immediately after—he used or threatened to use a knife. (Dkt. No. 29, Attach. 5 at 5-6.) Petitioner also admitted to violating the terms of his probation by committing robbery in the first-degree and stated that he understood he would be sentenced to one year in prison for that violation, to be served concurrently with his sentence for first-degree robbery. (*Id*. at 6-9.)

After pleading guilty, Petitioner submitted letters to the trial court where he alluded to his guilt and made statements like he "is learning the hard way that [his] actions were leading [him] to the graveyard or a life sentence up north." (SR. at 209.) In another letter, Petitioner asked that he be released for two weeks to see his dying grandfather before he had to "go up north" to serve his sentence. (SR. at 210.)

Attorney Keller requested that the Center for Community Alternatives ("CAC") to submit to the court an analysis of Petitioner's life history and personal circumstances that might mitigate his punishment. (SR. at 95-110.) The trial court reviewed the CAC analysis and—at the request of Attorney Keller—the analysis was attached to the pre-sentence report prepared by the probation department. (Dkt. No. 29, Attach. 10 at 3.)

On June 20, 2013, Petitioner was sentenced—as agreed—to eight years in prison followed by three years of post-release supervision. (Dkt. No. 29, Attach. 10 at 3-4.) Petitioner was also sentenced to a concurrent term of one year in prison for his probation violation. (*Id*. at 4.)

### D. Direct Appeal

On July 26, 2013, Petitioner filed a notice of appeal but did not perfect the appeal until 2021. (SR. at 4-20, 165.) In his counseled brief, Petitioner argued that (1) he did not validly waive his right to appeal because the trial court misstated the scope of the waiver and failed to explain that the right to appeal is not automatically forfeited by a guilty plea, and (2) the trial court's threats rendered Petitioner's plea not knowing, voluntary, and intelligent. (SR. at 4-20.) The State conceded that the waiver of appeal was invalid but opposed the remainder of Petitioner's arguments. (SR. at 223-42.)

Petitioner submitted a *pro se* supplemental brief. (SR. at 23-78.) Petitioner argued that the trial court was biased against him and conspired with his adopted mother, the lawyers she hired, the prosecutor, and the probation department to "inflict legal injuries" on Petitioner. (SR. at 42-44.) Petitioner denied writing the post-plea letters to the trial court that were included in the Appendix on appeal. (SR. at 43-44.) Petitioner argued that two of his lawyers—Attorneys Brenneck and Keller—were ineffective for failing to investigate appropriate defenses. (SR. at 51.) Petitioner argued that Attorney Brenneck failed to request tapes and recordings related to his arrest and failed to file an omnibus motion seeking to dismiss the witnesses' identifications and Petitioner's statements to police. (SR. at 52-65, 71.) Petitioner also argued that Attorney Brenneck coerced him into pleading guilty by threatening to withdraw from the case if Petitioner did not plead guilty. (*Id*. at 65-66.) Petitioner argued that he was improperly not permitted to request a specific attorney when Attorney Brenneck withdrew from the case, and alleged that Attorney Keller "technically" was not his attorney. (SR. at 67-68.) Petitioner argued that Attorney Keller was ineffective for not filing a timely omnibus motion and failing to file a notice of appeal. (*Id*. at 68.)

Petitioner's *pro se* supplemental brief also argued that the indictment should be dismissed because it was legally defective on its face and the evidence failed to establish reasonable cause to believe that Petitioner committed the crimes. (SR. at 75-78.) More specifically, Petitioner argued that police misconduct led to suggestive witness identifications and that police lacked probable cause to arrest him. (*Id.*)

On April 22, 2022, the Appellate Division Fourth Department unanimously affirmed Petitioner's conviction. (SR. at 244-46.) The Appellate Division held that Petitioner's waiver of appeal was invalid but rejected all his other claims. (*Id.*)

More specifically, the Fourth Department held that Petitioner's claim that his plea was not knowing, voluntary, and intelligent was unpreserved and declined to review it in the interest of justice. (SR. 244-45.) In addition, the Fourth Department denied as unpreserved Petitioner's claims that the trial court was biased, that the plea was procured by fraud and duress, and that the plea was involuntary. (SR. at 245.) The Appellate Division found that to the extent that Petitioner's ineffective assistance of counsel claim survived the guilty plea—i.e., that the alleged ineffectiveness "infected" the plea bargaining process or that Petitioner entered the plea because of his attorney's allegedly poor performance—it should be raised in a motion pursuant to N.Y. Crim. Proc. Law § 440.10 because it cannot be resolved without referencing matters outside of the record. (*Id.*) The Appellate Division denied Petitioner's remaining claims. (*Id.* at 245-46.)

On April 28, 2022, Petitioner sought leave to appeal and argued that the trial court's threats rendered Petitioner's plea not knowing, voluntary, and intelligent. (SR. at 248-51.)

On July 29, 2022, the Court of Appeals denied leave to appeal. (SR. at 257.)

### E. Motion to Vacate the Judgment of Conviction

On February 22, 2021, Petitioner filed a motion pursuant to N.Y. Crim. Proc. Law § 440.10 to vacate the judgment of conviction. (SR. 258-335.) In his motion, Petitioner argued that (1) (a) the court committed "fraud and duress" by threatening to give him the maximum sentence if he went to trial, and (b) the court, his mother, the lawyers his mother hired, the prosecutor, and the probation department all conspired to deprive him of due process; (2) the prosecution failed to disclose *Brady* material; (3) he was denied effective assistance of counsel because (a) Attorney Brenneck did not file an omnibus motion, failed to raise viable defenses, and threatened to withdraw from the case, and (b) Attorney Keller did not file a timely omnibus motion and "technically" was not Petitioner's attorney; and (4) the indictment was legally insufficient because (a) police officers wrongfully arrested him and used excessive force, (b) his statements to police were made involuntarily, and (c) the identifications of him by witnesses were unduly suggestive or otherwise improper. (SR. at 264-323.)

On June 14, 2022, the motion court denied Petitioner's § 440.10 motion in its entirety. (SR. 529-39.) The motion court rejected Petitioner's contention that his conviction was obtained by fraud or duress and noted that his allegations were conclusory and belied by the record. (SR. at 531.) The motion court concluded that (1) Petitioner knowingly, voluntarily and intelligently entered a plea of guilty, and (2) there is nothing in the record to indicate that Petitioner was misled or forced into pleading guilty. (*Id*. at 535.) Moreover, the motion court held that Petitioner's involuntary plea claim was entirely record-based, and thus, could only be properly brought on direct appeal, rather than by way of a § 440.10 motion. (*Id*. at 535-36.)

The motion court held that Petitioner's *Brady* claim was "conclusory" because Petitioner failed to set forth "other than by mere speculation, that alleged Brady material existed and was

not turned over." (SR. at 536.) The motion court held that, in any event, (1) the items Petitioner claimed were not turned over did not constitute *Brady* material, and (2) Petitioner failed to demonstrate how he was prejudiced by the alleged failure to disclose the materials (i.e., that there was a "reasonable possibility" that the purported non-disclosure "materially contributed to the verdict"). (*Id.*)

The motion court rejected Petitioner's ineffective counsel claim as "without support and, indeed . . . contradicted by the record." (SR. at 536-38.) The motion court found that Petitioner received "meaningful representation which included the negotiating of a favorable plea bargain" that Petitioner "voluntarily and intelligently and knowingly entered." (*Id*. at 538.)

The motion court rejected Petitioner's remaining contentions as meritless. (SR. at 539.) The motion court "particularly" noted that Petitioner's claim that the indictment should be dismissed in the interest of justice "not only lacks merit but that is improper and untimely." (*Id.*)

The Appellate Division denied Petitioner leave to appeal the motion pursuant to N.Y. Crim. Proc. Law § 440.10. (SR. at 600-01.)

## II. GROUNDS RAISED

### A. Petition

On July 7, 2023, Petitioner commenced this proceeding by the filing of a verified Petition for writ of habeas corpus. (Dkt. No. 1.) The Petition asserts the following found grounds for habeas relief: (1) the indictment should have been dismissed because it lacked a factual basis ("Ground 1"); (2) Petitioner's guilty plea was the result of duress and fraud by the trial court, and thus, was not knowing, voluntary, or intelligent ("Ground 2"); (3) the prosecutor committed misconduct by failing to disclose exculpatory *Brady* material ("Ground 3"); and (4) Petitioner's trial counsel was constitutionally ineffective ("Ground 4"). (*See generally* Dkt. No. 1.)

### B. Respondent's Answer and Memorandum of Law

Generally, Respondent makes the following four arguments in support of his answer: (1) Petitioner's challenge to the indictment as legally insufficient is procedurally barred, waived by his guilty plea, non-cognizable, and meritless; (2) Petitioner's challenge to his guilty plea is procedurally barred on adequate and independent state law grounds and, in any event, the claims are meritless; (3) the motion court reasonably rejected Petitioner's *Brady* claim; and (4) Petitioner's ineffective counsel claim is barred by his guilty plea, and, in any event the motion court reasonably determined that Petitioner received effective assistance of counsel. (*See generally* Dkt. No. 27.)

More specifically, with respect to his first argument (addressing Ground 1), Respondent asserts that Petitioner's challenge to the legal sufficiency of the indictment is procedurally barred because the motion court held that it was untimely, which constitutes an adequate and independent state law ground that bars habeas relief. (Dkt. No. 27 at 20-22.) Respondent argues that the claim was waived by Petitioner's guilty plea. (*Id*. at 22-23.) Further, Respondent asserts that in any event, the claim is non-cognizable on federal habeas review because it concerns solely state law issues and there is no right to a grand jury pursuant to the United States Constitution. (*Id*. at 23.) Finally, Respondent argues that Petitioner cannot establish that the motion court's rejection of his claim on the merits was contrary to, or an unreasonable application of, clearly established Supreme Court law. (*Id*. at 23-24.)

With respect to his second argument (addressing Ground 2), Respondent argues that Petitioner's claim that his guilty plea was not made knowingly, intelligently, and voluntarily, is unpreserved for review because the Appellate Division applied N.Y. Crim. Proc Law. § 470.05(2), and found that Petitioner failed to move to withdraw the plea pursuant to N.Y. Crim.

Proc. Law § 220.60 or to vacate the plea pursuant to N.Y. Crim. Proc. Law § 440.10. (Dkt. No. 27 at 24-26.) Respondent argues that as a result, the claim is barred on independent and adequate state law grounds. (*Id.*) Further, Respondent argues that the motion court reasonably determined that Petitioner's claims challenging his guilty plea are meritless and the denial of the claim did not unreasonably apply clearly established Supreme Court law. (*Id.* at 26-29.) Respondent argues that the motion court concluded that before pleading guilty, Petitioner was fully informed of the consequences of his plea, Petitioner stated that no other promises or statements had been made to induce him to plead guilty, and defense counsel filed a motion seeking to dismiss the indictment and suppress statements and identifications but Petitioner voluntarily pleaded guilty before the motion was ruled on. (*Id.*)

With respect to his third argument (addressing Ground 3), Respondent argues that the motion court reasonably denied Petitioner's *Brady* claim on the merits. (Dkt. No. 27 at 29-32.) Respondent asserts that (1) Petitioner's claim that the prosecutor failed to disclose all police reports and witness statements essentially amounts to a discovery complaint, which is solely a matter of state law and not cognizable on federal habeas review; (2) because Petitioner pleaded guilty before the scheduled trial and before any pre-trial hearings, there is no basis to find a *Brady* violation; (3) Petitioner's *Brady* claim should be deemed waived by his guilty plea; (4) Petitioner failed to show that alleged *Brady* material existed and was not turned over; and (5) Petitioner failed to establish that he was prejudiced by any *Brady* violation. (*Id.* at 30-32.)

With respect to his fourth argument (addressing Ground 4), Respondent asserts that Petitioner's guilty plea barred any ineffective counsel claim that does not directly relate to the voluntariness of his plea and the decision to plead guilty. (Dkt. No. 27 at 33-35.) Respondent argues that any claims regarding Attorney Brenneck or Smith should be denied because those

attorneys did not represent Petitioner when he pleaded guilty. (*Id.*) Further, Respondent argues that Attorney Keller filed an omnibus motion and the prosecution consented to a hearing on the voluntariness of Petitioner's statements, but Petitioner freely chose to plead guilty before the hearing was conducted. (*Id.*) Moreover, Respondent argues that even if Petitioner's claim was not barred, he failed to establish that the motion court erred in denying his claim on the merits. (Dkt. No. 27 at 35-40.) Respondent argues that nothing in the record suggests that defense counsel's performance was deficient and counsel negotiated an "extremely favorable" plea bargain. (*Id.*)

### C. Petitioner's Traverse

Petitioner makes the following three arguments in his Traverse: (1) Respondent's allegation that Petitioner's claims are procedurally barred is inapplicable and should be overlooked; (2) Petitioner's request for a hearing on cause and prejudice; and (3) Petitioner's federal claims qualify for habeas relief. (*See generally* Dkt. Nos. 36, 38.)

More specifically, with respect to his first argument, Petitioner asserts that it was the trial court's wrongful actions of delaying court proceedings related to Petitioner's § 440 motion that prevented Petitioner from adequately raising claims to the New York State Supreme Court. (Dkt. No. 38 at 4-7.) Petitioner argues that this Court should determine that the Respondent's procedural default allegations—premised on the New York State Supreme Court's holding that Petitioner's claims are unpreserved—inapplicable and should be overlooked because Petitioner clearly established cause. (*Id.* at 7-9.) Further, Petitioner argues that the motion court's determination that his § 440 claims are meritless does not bar habeas relief under the procedural default doctrine. (*Id.* at 9-10.)

With respect to his second argument, Petitioner requests a hearing "on cause and prejudice matters" because (1) he was unable to obtain an affidavit from Attorney Brenneck as a result of Attorney Brenneck's "lack of interest in helping Petitioner," (2) he was unable to obtain an affidavit from Attorney Keller and was under the impression that the record clearly reflected that Attorney Keller never filed a notice of appearance and thus was not considered Petitioner's attorney, and (3) Petitioner is inexperienced and believed he could obtain evidence upon request from the court and lacks financial resources. (Dkt. No. 38 at 11-12.) Petitioner requests that Respondent be required to show cause why the record before this Court does not contain: transcripts from May 23, 2013,[2] the colored booking photographs of Petitioner, and "all of the other court history which Respondent admitted were correctly cited by the Petitioner." (*Id*. at 12.) Petitioner requests that at a hearing he be permitted to argue regarding the insufficiencies of the evidence against him and be provided various documents like a copy of his attorney-client visitation, dates recorded in the Onondaga County Justice Center logbooks, the inmate movement sheet, and grand jury minutes. (*Id*.)

With respect to his third argument, Petitioner asserts that he is entitled to habeas relief. (Dkt. No. 38 at 13-21; Dkt. No. 36, Attach. 1 at 1-12.) Petitioner argues that defense counsel was ineffective because (1) Attorney Brenneck (a) wrongfully tried to coerce him into pleading guilty, (b) failed to file any motions on behalf of Petitioner 45 days after arraignment, and (c) failed to file a motion to withdraw from representing Petitioner; (2) Attorney Keller (a) failed to

---

[2] The transcript from the court proceeding on May 23, 2013, is contained in the state court record at Dkt. No. 29, Attach. 5. However, Petitioner claimed in his Traverse that the transcript from the proceeding on May 23, 2013, is inaccurate or incomplete. (Dkt. No. 36, Attach. 1 at 2 ["neither to state court nor the Respondent have as of yet been able to properly provide the court with a true and exact copy of the May 23, 2013, Onondaga County Court transcripts."]; Dkt. No. 36, Attach. 1 at 3 ["As asserted by the court without the people nor the respondent providing a true and exact copy of the May 23rd, 2013, court transcripts."].)

file a notice of appearance and give Petitioner notice that he was retained by Petitioner's adopted mother, (b) failed to adequately raise legal arguments within the omnibus motion—such as, seeking to disqualify Onondaga County Court Judge Joseph E. Fahey, (c) filed the omnibus motion in haste and failed to conduct a proper investigation or present a proper defense, (d) engaged in a friendly conversation with Judge Fahey and a District Attorney representative on May 9, 2013, and made a comment that reflected a "careless demeanor," (e) failed to timely file a notice of appeal, (f) appended the report from the Center for Community Alternatives to the presentence report to follow Petitioner to the state facility he was incarcerated in, (g) improperly instructed Petitioner not to speak to probation regarding the facts and circumstances surrounding the case, which prevented Petitioner from putting on the record that he was being force to plead guilty as a result of ineffective assistance of counsel, duress by the court, and misrepresentations of the prosecutor; and (3) a conflict of interest existed between Petitioner and his attorneys. (Dkt. No. 38 at 13-21; Dkt. No. 36, Attach. 1 at 1-7.) Petitioner asserts that the transcript from May 23, 2013, when he pleaded guilty reflects that he was "in total disagreement with saying 'no' to the Court's questioning about if there is any possibility of 'other promises' or statements being made to get Petitioner to enter a guilty plea" and at sentencing on June 20, 2013, Petitioner "refused to provide any form of statements at all before the County Court pronounced the sentence." (Dkt. No. 36, Attach. 1 at 6-7.) Petitioner argues that he met his burden of demonstrating that there is a reasonable probability that but for defense counsels' errors, he would not have pleaded guilty and would have insisted on going to trial instead. (*Id*. at 8.) Petitioner asserts that the trial court was biased and a rational jury would have found him not guilty. (*Id*. at 8-11.) Finally, Petitioner argues that the prosecutor in this case did not withhold

*Brady* with the intent of later disclosing it but instead stated that a search of the files revealed no *Brady* material. (*Id*. at 11-12.)

**D. Petitioner's Additional Submissions**

Petitioner filed a letter dated August 5, 2024, that attached news articles that Petitioner asserts "stand[] as substantial evidence in support of the Petitioner's argument that he must be found not guilty in the interest of justice." (Dkt. No. 41 at 1.) Attached to the submission were news articles summarizing Petitioner's criminal allegations and sentence. (Dkt. No. 41 at 4-13.)

On October 2, 2024, Petitioner filed a letter that was a duplicate of the letter filed at Dkt. No. 41. (Dkt. No. 42.) The submission attached various letters that Petitioner sent to municipal entities and organizations seeking documents related to his criminal action and the responses that Petitioner received from those municipal entities and organizations. (Dkt. No. 42 at 3-23.)

On October 9, 2024, Petitioner filed a submission that contained, among other things, the Court's text order of April 11, 2024, various correspondence with the Onondaga County Sheriff's Office, and documents related to criminal charges against Petitioner in 2023 involving a firearm. (Dkt. No. 43.)

On October 15, 2024, Petitioner filed a letter enclosing grand jury minutes from the underlying criminal charges in this action. (Dkt. No. 44.) Petitioner's letter asserts that the grand jury minutes support his claims (1) of being threatened unjustifiably, (2) that there existed other relevant testimonial evidence and police reports that the prosecutor wrongfully failed to disclose, and (3) that there was a rational probability of further law enforcement misconduct that wrongfully prejudiced Petitioner. (Dkt. No. 44 at 1.)

## III. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Review of Habeas Petition

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(d)); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (Sotomayor, J.).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord, Cullen*, 563 U.S. at 181. Federal habeas courts must presume that the state court's factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

As required by section 2254, on federal habeas review, a court may only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen*, 563

U.S. at 181; *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001); *see Willson v. Sellars*, 138 S. Ct. 1188, 1192 (2018) (holding that a federal habeas court reviewing an unexplained state-court decision on the merits "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning," but that "the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision").

**B. Legal Standard Governing Procedural Bars**

A procedural default in a federal habeas case occurs "if the state court's rejection of a federal claim rests on a state law ground – such as the operation of a state procedural rule – that is both independent of the federal question and adequate to support the judgment." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (internal quotation marks omitted); *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (holding that "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement[,]" federal habeas review is barred by the independent and adequate state ground doctrine). Procedural default precluding federal habeas review applies only "if the last state court rendering a judgment in the case rests its judgment on the procedural default." *Harris v. Reed*, 489 U.S. 255, 262 (1989); *see also Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005).

### C. Legal Standard Governing Ineffective Assistance of Trial Counsel

For ineffective assistance of counsel claims, federal habeas "review is 'doubly deferential' because counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]" *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (internal quotation marks and citation omitted).

To prove ineffective assistance of counsel, petitioner must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong requires petitioner to show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 688. The Court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (citation and internal quotation marks omitted). The second prong requires petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 669. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

### D. Legal Standard Governing Claims Pursuant to *Brady*

To establish violation pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), "a petitioner must show that (1) the undisclosed evidence was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was prejudiced as a result of the failure to disclose." *Mack v. Conway*, 476 F. App'x 873, 876 (2d Cir. 2012) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). Under these principles, a *Brady* violation occurs only where there is a "reasonable probability" that a different verdict

would have resulted from disclosure of the information that the defendant claims was suppressed. *Strickler*, 527 U.S. at 281. That is, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985).

A petitioner bears the burden of proving that the prosecution withheld material information. *Harris v. United States*, 9 F. Supp. 2d 246, 275 (S.D.N.Y. 1998). "Conclusory allegations that the government 'suppressed' or 'concealed' evidence do not entitle [the petitioner] to relief." *Harris*, 9 F. Supp. 2d at 275 (quotations omitted); *see also Mallet v. Miller*, 432 F. Supp. 2d 366, 378 (S.D.N.Y. 2006) (*Brady* claim dismissed where supported only by conjecture); *Flynn v. Colvin*, 13-CV-1247, 2016 WL 7053582, at *6 (N.D.N.Y. Dec. 5, 2016) (Singleton, J.) ("It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief.") (citation omitted).

**E. Legal Standard Governing Guilty Pleas**

The standard governing the acceptance of guilty pleas is neither recently evolved nor controversial. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (citations omitted)); *see also Parke v. Raley*, 506 U.S. 20, 28-29 (1992) (plea is valid when it is both knowingly and voluntarily made); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) (United States Constitution requires that guilty plea be intelligently and voluntarily entered). A knowing plea is entered "'with understanding of the nature of the charge and the consequences of the plea.'" *Santobello v. New York*, 404 U.S. 257, 261 n.1 (1971) (quoting Fed.

R. Crim. P. 11); *see Martinez v. Costello*, 03-CV-2763, 2004 WL 26306, at *5 (S.D.N.Y. Jan. 5, 2004) (citing *Santobello,* 404 U.S. at 261 n.1; Fed. R. Crim. P. 11); *see also Hanson v. Phillips*, 442 F.3d 789, 798 (2d Cir. 2006).

Applying this standard, to establish that a criminal defendant's guilty plea was knowingly, intelligently, and voluntarily entered the court must find, based upon the record of the relevant plea proceedings, that he or she (1) was competent to proceed and was fully aware of the nature of the charges faced; (2) had a rational and factual understanding of the proceedings; and (3) was cognizant of the constitutional protections relinquished upon entry of the plea. *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004); *Matusiak v. Kelly*, 786 F.2d 536, 543 (2d Cir. 1986), *cert. dismissed*, 479 U.S. 805 (1986). While "the question of whether a plea of guilty has been entered voluntarily within the meaning of the Constitution is often a complex one that involves mixed questions of law and fact[,]" the ultimate issue of whether a plea represents an effective waiver of federal Constitutional rights is controlled by federal law. *Oyague*, 393 F.3d at 104.

If a petitioner pleads guilty based "on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" *Ford v. Georgia*, 498 U.S. 411, 411 (1991) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

## IV. ANALYSIS

### A. Ground 1

After carefully considering the matter, I recommend that Petitioner's claim regarding the insufficiency of the indictment (Ground 1) be denied for the reasons set forth in Respondent's memorandum of law. (Dkt. No. 27 at 19-24.)

First, as Respondent sets forth, a motion to dismiss an indictment must be made within 45 days after an arraignment or within additional time set by the court before the entry of judgment. (Dkt. No. 27 at 20 [citing N.Y. Crim. Proc. Law § 225.20(1)].) As a result, the motion court denied as untimely Petitioner's claim regarding the indictment. (SR. at 539.) The state court's denial of Petitioner's claim as untimely constitutes an adequate and independent state law ground for its decision that bars habeas relief. *Rivera v. Kaplan*, 17-CV-2257, 2020 WL 5550047, at *13 (S.D.N.Y. July 20, 2020) (citing *Chappero v. West*, 04-CV-8018, 2009 WL 2058534, at *2 (S.D.N.Y. July 15, 2009)), *report and recommendation adopted*, 2022 WL 3572880 (S.D.N.Y. Aug. 19, 2022).

A federal court will therefore refrain from reviewing the judgment unless the petitioner can demonstrate (1) cause for his default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner fails to make this showing.

Second, Petitioner's challenge to his conviction based on the sufficiency of the indictment is barred by his guilty plea. *See United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea."); *Kattis v. Rockwood*, 19-CV-6916, 2024 WL 2882610, at *6 (E.D.N.Y. June 7, 2024) (holding that the petitioner's "challenge to the sufficiency of the state court indictment is . . . barred by his guilty plea").

Third, Petitioner's challenge the legal sufficiency of the evidence supporting the indictment is based entirely on New York statutory law. *Branzburg v. Hayes*, 408 U.S. 665, 688

n.25 (1972) (the right to "indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment[.]"); *LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002) (noting that the Fifth Amendment right to an indictment by a grand jury does not apply to the states as it is not incorporated by the due process clause of the Fourteenth Amendment); *Horton v. Bell*, 21-CV-0262, 2023 WL 10727421, at *7 (N.D.N.Y. Mar. 30, 2023) (Baxter, M.J.) (holding that the petitioner's claim that the evidence before the grand jury was legally insufficient to support the indictment was "not cognizable on habeas review because [it is] based entirely on New York statutory law."), *report and recommendation adopted by*, 2024 WL 1341091 (N.D.N.Y. Mar. 29, 2024) (D'Agostino, J.).

For each of these reasons, I recommend that Ground 1 be denied.

**B. Ground 2**

After carefully considering the matter, I recommend that Petitioner's claim regarding whether his guilty plea was the result of fraud and duress (Ground 2) be denied as meritless as set forth in Respondent's memorandum of law.[3] (Dkt. No. 27 at 26-29.)

---

[3] In making this recommendation, the undersigned declines to address Respondent's argument that Petitioner's challenge to his guilty plea is procedurally barred on adequate and independent state law grounds for two reasons. First, it is unclear whether Petitioner complied with the procedural rule and preserved this claim by raising it in his motion pursuant to N.Y. Crim. Proc. Law § 440.10. Respondent argues that the Appellate Division rejected Petitioner's challenge to the voluntariness of his guilty plea as unpreserved because he had neither (1) sought to withdraw the plea pursuant to N.Y. Crim. Proc. Law § 220.60(3), nor (2) moved to vacate the judgement of conviction pursuant to N.Y. Crim. Proc. Law § 440.10. (Dkt. No. 27 at 25-26 [citing *People v. Lopez*, 71 N.Y.2d 662, 665 (1988)].) However, on February 22, 2021—before the decision by the Appellate Division on April 22, 2022—Petitioner filed a motion pursuant to N.Y. Crim. Proc. Law § 440.10 to vacate the judgment of conviction on the ground that, among other things, his guilty plea was not entered knowingly, voluntarily, and intelligently. (SR. at 264-284.) The motion court did not rule on Petitioner's motion pursuant to N.Y. Crim. Proc. Law § 440.10, until June 14, 2022, approximately two months after the Appellate Court decision. (SR. at 529-539.) Hence, it is unclear whether Petitioner complied with the procedural rule and preserved his claim by raising it in his § 440.10 motion, which was filed after his direct appeal but before a ruling on the direct appeal or a ruling on the §440 motion. *Compare Patel v.*

Given the appropriate deference under the AEDPA, the motion court's holding that Petitioner "knowingly, voluntarily and intelligently entered a plea of guilty to the charge of Robbery in the First Degree" (SR. at 535) and "there is nothing in the record to indicate that [Petitioner] was misled in anyway or forced into pleading guilty" (*id.*), was reasonable.

Although Petitioner asserts that he was pressured by the trial judge to accept a guilty plea, the record does not support this assertion. More specifically, over one month before Petitioner entered a plea of guilty, the trial court expressed frustration that Petitioner was seeking advice from fellow inmates when he should have been consulting with his attorney regarding matters of significance in his case and used exaggerated or hyperbolic language to describe the sentencing exposure that Petitioner faced. (SR. at 407-408.) Notwithstanding, during the same appearance, the trial court clarified that it intended to impose a sentence of between five and ten years imprisonment if Petitioner pleaded guilty. (*Id.* at 408.) The trial court appropriately and

*Martuscello*, 10-CV-5695, 2015 WL 11401853, at *6 (E.D.N.Y. May 12, 2015) (holding that the petitioner's claim that his plea was entered involuntarily was not barred on federal habeas review despite the appellate division's finding of procedural bar because the petitioner "complied with the procedural rule and preserved his claim by raising it in his § 440.10 motion" where (1) the petitioner filed a § 440 motion, (2) then the petitioner filed a direct appeal, (3) then the petitioner's § 440 motion was denied, and (4) then the petitioner's direct appeal was denied as unpreserved), *with Amay v. Royce*, 19-CV-11329, 2025 WL 3232678, at *7-11 (S.D.N.Y. Oct. 10, 2025) (holding that the petitioner's claim that his plea was entered involuntarily was barred on federal habeas review where (1) the petitioner filed a direct appeal, (2) the appellate division held that the claim was unpreserved, (3) then the petitioner filed a § 440.10 motion, and (4) the § 440.10 motion was denied). Second, where the petitioner's "claim [is] that the County Court judge coerced him into pleading guilty against his will[, that claim] is based upon the knowledge and acts of that judge. Therefore, a motion pursuant to [N.Y. Crim. Proc. Law] § 440.10, to vacate the judgment on voluntariness grounds before that same judge would not have enlightened the judge with further information leading to a reconsideration of the voluntariness of the guilty plea[]. Such a motion would have been fruitless and, thus, unnecessary to preserve the claim." *Nyenekor v. New York*, 09-CV-8719, 2014 WL 785690, at *10 n.3 (S.D.N.Y. Feb. 25, 2014).

permissibly advised Petitioner that a conviction after trial would likely result in "multiple, multiple consecutive sentences." (*Id*. at 409.)

"[T]rial judges are entitled to encourage guilty pleas by imposing on a defendant who pleads guilty a lesser sentence than would have been imposed had the defendant stood trial." *See United States v. Cruz*, 977 F.2d 732, 733-34 (2d Cir. 1992) (citing *Cortbitt v. New Jersey*, 439 U.S. 212, 219 (1978); *Brady v. United States*, 397 U.S. 742, 750-51 (1970)). As a result, an individual who stands trial often receives a higher sentence than would have been imposed if he had pled guilty. *Cruz*, 977 F.2d at 733. This reality does not make Petitioner's plea involuntary.

In evaluating whether a plea was knowing and voluntary, a court may consider, "among other things, [a petitioner's] allocution statements." *Carpenter v. Unger*, 10-CV-1240, 12-CV-0957, 2014 WL 4105398, at *19 (N.D.N.Y. Aug. 20, 2014) (citing *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)). At the court appearance where Petitioner pleaded guilty, the following exchange occurred:

> Court: Okay. Mr. Barzee, you've heard what's been said here this morning by Mr. Keller, by Mr. Kasmarek, and by myself. Is that the way you want to resolve your case.
>
> Petitioner: Yes, sir.
>
> Court: Have any other promises or statements been made to you to get you to enter this plea of guilty this morning other than what we've said here in Court? Has anybody made you any other promises in order to get you to plead guilty?
>
> (off the record discussion)
>
> Petitioner: Nah -- no.
>
> Court: Do you understand that with respect to Indictment Number 2013-0011-1, you would have the right to a trial before me or before me with a jury. Do you understand that?
>
> Petitioner: Yes

Court: Do you understand that if you had that trial the District Attorney's Office would be required to call witnesses and produce evidence and testimony proving beyond a reasonable doubt that you committed the crime of Robbery in the First Degree?

Petitioner: Yes.

Court: Do you understand that your attorney, Mr. Keller, would have the right to confront, cross-examine, and question witnesses on your behalf?

Petitioner: Yes.

Court: Do you understand that you also would have the right to call any witnesses and produce any evidence or testimony you chose in defense of this charge?

Petitioner: Yes.

Court: Do you understand that although you could not be required to do so, you'd have the right to take the stand and testify on your own behalf?

Petitioner: Yes.

Court: Do you understand that by giving up these rights and entering this plea of guilty this morning, it's the same as if I or a jury found you guilty of the crime of Robbery in the First Degree?

Petitioner: Yes, sir.

Court: Do you understand that you're pleading guilty to a felony this morning?

Petitioner: Yes.

Court: And do you understand that if you're found guilty of another felony within the next ten years, [there will] be a mandatory state prison sentence and the punishment will be about twice as bad as what it would normally be?

Petitioner: Yes, sir.

. . . .

Court: With all that in mind, do you still want to enter this plea of guilty this morning?

Petitioner: Yes.

> Court: All right. Are you prepared to admit to me that on or about September the 13th, 2012, in the City of Syracuse, in this county, that you forcibly stole property from Michael Bergman and in accordance with the commission of that crime, or in the immediate flight from it, you or another participant in the crime used or threatened the immediate use of a dangerous instrument; and that was a knife?
>
> Petitioner: Yes.
>
> Court: How do you plead to the crime of Robbery in the First Degree?
>
> Petitioner: Yes, sir -- guilty.

(Dkt. No. 29, Attach. 5 at 3-6.) The motion court's conclusion that Petitioner "knew and understood" the terms of and "he willingly accepted" the guilty plea, is not unreasonable and is supported by the record.

Petitioner's plea allocution directly contradicts his present contention that his guilty plea was not made knowingly and voluntarily. With respect to his allegations of 'duress,' Petitioner's statement that no other promises or statements had been made to him to get him to enter the plea, is afforded a "'strong presumption of verity' . . . and create[s] a 'formidable barrier' to habeas relief." *De Leon v. United States*, 18-CR-6094, 2020 WL 3269139, at *5 (W.D.N.Y. June 17, 2020) (internal citations omitted); *see also Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution 'carry a strong presumption of verity,' and are generally treated as conclusive in the face of the defendant's later attempt to contradict them[.]") (citations omitted).

As a result, I recommend that Ground 2 be denied.

### C. Ground 3

After carefully considering the matter, I recommend that Petitioner's claim regarding the prosecutor's alleged *Brady* violation (Ground 3) be denied for most of the reasons set forth in Respondent's memorandum of law.[4] (Dkt. No. 27 at 29-32.)

First, although Ground 3 is fashioned as a claim pursuant to *Brady*, it appears to be a discovery claim based on state law, which is not cognizable on federal habeas review. More specifically, the Petition asserts that "there are many more statements made to and by the Syracuse Police Department, such as complainant Mariana Bunich's written statement and complainant Ernest Longyear's 'statement of prosecution' along with officer Helterine's police report, and that the disclosure of the documentary evidence could have rationally shined a light favorable to [Petitioner]'s defense[.]" (Dkt. No. 1 at 64-65.)

The New York Court of Appeals' decision in *People v. Rosario*, 9 N.Y.S.2d 448 (1961) stands for the proposition that, as a matter of state law, "a criminal defendant is entitled to the prior statements of the prosecution's witnesses in order to determine if the testimony of such witnesses in court departs from their prior statements." *Ely v. Lempke*, 09-CV-5836, 2012 WL 7050432, at *16 n.8 (S.D.N.Y. Oct. 18, 2012), *adopted by*, 2013 WL 544070 (S.D.N.Y. Feb. 11,

---

4 In making this recommendation, the undersigned rejects Respondent's argument that because the "government need only disclose *Brady* materials 'in time for its effective use at trial,'" there could not have been a *Brady* violation since Petitioner "pleaded guilty long before the scheduled trial." (Dkt. No. 27 at 30-31.) "The Government's obligation to disclose *Brady* materials is pertinent to the accused's decision to plead guilty; the defendant is entitled to make that decision with full awareness of favorable (exculpatory and impeachment) evidence known to the Government." *United States v. Militello*, 13-CR-01652026 WL 672740, at *10 (W.D.N.Y. Mar. 10, 2026) (citing *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998), *reh'g denied*, 136 F.3d 262 (2d Cir. 1998). It is axiomatic that "[a]lthough a guilty plea is generally considered valid so long as the plea was intelligent and voluntary, the validity of the plea must be reassessed if it resulted from impermissible conduct by state agents. Impermissible conduct includes *Brady* violations." *Avellino*, 136 F.3d at 255 (citations and internal quotation marks omitted).

2013). "It is well settled, however, that to the extent that Petitioner's claim relies on *Rosario*, he is asserting a state law claim which is not a cognizable claim for habeas relief." *Chrysler v. Guiney*, 14 F. Supp. 3d 418, 448 n.17 (S.D.N.Y. 2014) (citing *Ely*, 2012 WL 7050432, at *16; *Johnson v. New York*, 01-CV-4219, 2002 WL 1974048, at *2 (S.D.N.Y. Aug. 26, 2002).

Second, Petitioner has failed to show that the prosecution's purported failure to disclose these alleged materials created a reasonable probability that he would not have pleaded guilty. *See United States v. Bagley*, 473 U.S. 667, 682 (1985) (the suppression of *Brady* material does not amount to a constitutional violation unless "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"); *accord Boyette v. Lefevre*, 246 F.3d 76, 91 (2d Cir. 2001). The "test of materiality in the context of a plea is whether there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial." *Tate v. Wood*, 963 F.2d 20, 24 (2d Cir. 1992). Petitioner asserts that the allegedly suppressed police reports and witness statements "could have rationally shined a light favorable to the . . . defense." (Dkt. No. 1 at 65.) This speculation is insufficient to establish a *Brady* claim. *See Stevenson v. Capra*, 17-CV-5251, 2018 WL 582467, at *2 (E.D.N.Y. Jan. 26, 2018) ("Petitioner's bare assertion that trial counsel 'could have used the withheld material to strengthen the defense' falls short of suggesting a 'reasonable probability' of a different" result); *Washington v. Walsh*, 10-CV-7288, 2015 WL 4154103, at *21 (S.D.N.Y. July 9, 2015) (finding no *Brady* violation where "the petitioner has failed to explain how the contents of the [withheld evidence] are favorable to his position or specify how he was prejudiced by their being withheld, aside from a conclusory assertion that he 'could [have] made valuable use' of them").

Third, the motion court's finding that Petitioner failed to show "other than by mere speculation, that alleged *Brady* material existed and was not turned over" (SR. at 536) was not unreasonable.

For each of these reasons, I recommend that Ground 3 be denied.

**D. Ground 4**

After carefully considering the matter, I recommend that Petitioner's ineffective counsel claim (Ground 4) be denied for the reasons set forth in Respondent's memorandum of law. (Dkt. No. 27 at 32-40.)

First, to the extent that Petitioner's ineffective counsel claim relates to alleged actions or inactions by his attorneys that do not directly relate to the voluntariness of Petitioner's guilty plea, I recommend that those claims be dismissed as barred pursuant to *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The Supreme has consistently held that

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett*, 411 U.S. at 267 (citing *McMann v. Richardson*, 397 U.S. 759, 770 (1970)).

Hence, Petitioner's claims regarding alleged deficiencies by Attorney Brenneck or Attorney Smith—who were relieved well before Petitioner entered the guilty plea—cannot support his federal habeas claim because Attorneys Brenneck and Smith had neither the obligation nor the opportunity to advise Petitioner regarding the entry of his guilty plea. (Dkt. No. 1 at 82-83; *see generally* Dkt. No. 29, Attach. 7 [court appearance on April 18, 2013, where Attorney Brenneck was relieved from representing Petitioner]; Dkt. No. 29, Attach. 5 [court

appearance on May 23, 2013, where Petitioner pleaded guilty while represented by Attorney Keller].)

Moreover, Petitioner's claims that Attorney Keller filed an omnibus motion too quickly and without developing a defense, also are not attacks on the voluntary and intelligent character of the guilty plea. (Dkt. No. 1 at 83, Dkt. No. 38 at 17-18, 21.) Petitioner fails to offer any evidence to suggest what defense could have been developed, especially given the procedural posture of his criminal proceeding at the time of his guilty plea, which was awaiting a decision on Petitioner's omnibus motion that sought the dismissal of the indictment, and suppression of statements and witness identification.

Second, Petitioner failed to establish that the motion court erred in denying his ineffective counsel claim on the merits. The motion court reasonably held that Petitioner

> received meaningful representation which resulted in a favorable plea bargain in a case involving multiple incidents. . . . The evidence, the law and the circumstances alleged upon the instant motion, viewed in totality and as of the time representation, reveal to this Court that the [Petitioner]'s attorney provided meaningful representation.

(SR. at 537.)

Indeed, Attorney Keller promptly filed an omnibus motion seeking to dismiss the indictment, suppress Petitioner's police statements, suppress the witnesses' identifications, obtain discovery, and obtain *Brady* materials. (SR. at 182-203.) Attorney Keller negotiated a favorable plea bargain where Petitioner faced potentially consecutive sentences for many of the counts charged in the indictment and the possibility that the People would bring charges for additional crimes that Petitioner committed in Onondaga County around the same time period. (SR. at 252-53.)

Petitioner's claims regarding defense counsel are conclusory and Petitioner failed to obtain (or even request) affidavits from his attorneys explaining the strategies behind their

actions. (Dkt. No. 38 at 11.) On habeas review, "the burden to 'show that counsel's performance was deficient' rests squarely on" the petitioner. *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013) (quoting *Strickland*, 466 U.S. at 687). Hence, where the record does not reveal counsel's reasons for taking particular actions, the Court must presume that counsel's actions reflected a strategy and that strategy was sound. *Burt*, 571 U.S. at 22-23.

Third, Petitioner failed to establish a reasonable probability that, but for defense counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citing *Hill*, 474 U.S. at 59). Petitioner's "self-serving, post-conviction" statements are insufficient to establish prejudice. *United States v. Gordon*, 156 F.3d 376, 380-81 (2d Cir. 1998). Further, Petitioner fails to present any objective evidence to support his claim that but for counsel's alleged deficiencies, he would have insisted on going to trial. *See United States v. Frederick*, 526 F. App'x 91, 93 (2d Cir. 2013) (holding that "[i]n the context of plea negotiations" a petitioner can prove prejudice by "producing both a sworn affidavit or testimony stating that he would have accepted or rejected a plea agreement but for counsel's deficient performance and also some additional 'objective evidence' supporting his claim." (emphasis added)).

For each of these reasons, I recommend that Ground 4 be denied.

## V. CERTIFICATE OF APPEALABILITY

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the

denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013). A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further."[5] *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted).

In this instance, I find that jurists of reason would not find it debatable as to whether the petition in this matter is meritorious. Accordingly, I recommend against the issuance of a COA.

**ACCORDINGLY**, it is respectfully

**RECOMMENDED** that the Petition (Dkt. No. 1) be **DENIED and DISMISSED**, and that a certificate of appealability not be issued to Petitioner; and it is further

**ORDERED** that Clerk of the Court update the caption to reflect the proper respondent: Jay Skiff, Superintendent of Upstate Correctional Facility; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the parties, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

---

[5] A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: August 18, 2026
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

[6] If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2025 WL 3232678
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Paul AMAY, Petitioner,
v.
Mark ROYCE, Respondent.

7:19-cv-11329 (PMH) (VR)
|
Signed October 10, 2025

**Attorneys and Law Firms**

Paul Amay, Stormville, NY, Pro Se.

Lisa E. Fleischmann, Kaufman Borgeest & Ryan LLP, Valhalla, NY, Michelle Elaine Maerov, Office of the Attorney General, New York, NY, for Respondent.

## REPORT & RECOMMENDATION

VICTORIA REZNIK, United States Magistrate Judge

***1 TO THE HONORABLE PHILIP M. HALPERN, United States District Judge:**

## I. INTRODUCTION

Paul Amay, *pro se* and incarcerated, petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2254. On August 30, 2011, Amay pleaded guilty, in the County Court of the State of New York, Putnam County, to second-degree murder, in violation of N.Y. Penal Law § 125.25(1). On Christmas eve of 2010, Amay stabbed his wife, Gloria Zhingri, killing her. On November 15, 2011, Amay was sentenced to a term of 22 years to life imprisonment.

Amay's § 2254 petition claims that: (1) he received ineffective assistance of counsel because plea counsel failed to inform him of, and discuss with him, the possibility of an intoxication defense, which would have negated the intent *mens rea* of second-degree murder; and (2) his plea was not made knowingly, voluntarily, and intelligently because he was not apprised of intoxication as an available defense and the court failed to inquire about it.

This petition is before me under an Order of Reference, dated January 10, 2020. [1] (ECF No. 6). For the below reasons, I respectfully recommend that Your Honor deny the petition in its entirety.

## II. BACKGROUND [2]

### A. Plea and Sentencing Proceedings

On August 30, 2011, Amay, represented by counsel, Timothy Curtiss, esq., appeared before the Putnam County Court, with the help of a Spanish interpreter, to plead guilty to second-degree murder. (*See* ECF No. 10-1 at 3–18). [3] Curtiss explained that Amay would plead guilty to second-degree murder with the understanding that the State would recommend a sentence of 22 years to life imprisonment. (*Id.* at 4–5). The State explained that law enforcement had obtained a "video confession" from Amay and Amay "underst[ood] that he ha[d] no option but to accept a plea of a life sentence." (*Id.* at 10). The court asked Amay whether he joined Curtiss's application and Amay responded, "Yes." (*Id.* at 5–6).

The State confirmed that Amay was able to understand the proceedings through his interpreter. (*Id.* at 6). Amay confirmed, by answering "Yes," that: (1) he had "discussed this matter with [his] attorney"; (2) he had "discussed possible defenses with [his] attorney"; (3) he had "had enough time to talk with [his attorney] and make a decision"; (4) he was "satisfied with the representation given to [him] by [his] attorney"; (5) he understood that he had a right to a jury trial, at which (a) the State would be required to prove every element of each crime beyond a reasonable doubt, (b) he would be able to confront and cross-examine the State's witnesses, and (c) he could present his own witnesses and testify on his own behalf; and (6) by pleading guilty, he was giving up all those rights. (*Id.* at 6–8). When asked whether anyone had threatened, coerced, or forced him into pleading guilty, he responded, "No," and when asked whether he was pleading guilty freely, voluntarily, and because he was in fact guilty, he responded, "Yes." (*Id.* at 8–9). He understood that the maximum sentence was 25 years to life imprisonment. (*Id.* at 9). He understood the immigration consequences of pleading guilty. (*Id.*). Other than the sentence commitment, no one had made any promises or representations about the plea. (*Id.* at 11).

***2** He confirmed, by answering "Yes," that he understood that he was "waiving [his] right to appeal [his] conviction and

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

sentence to the Appellate Division Second Department." (*Id.* at 12). He confirmed, by answering "Yes," that he was "making this waiver of [his] appellate rights freely and voluntarily and in exchange for the People's consideration on the plea and sentence." (*Id.* at 13). Finally, he had "discussed the waiver" with his attorney. (*Id.*).

In taking Amay's plea, the State had the following colloquy with Amay:

> MS. KRAUSS: Under count 1 of the indictment, murder in the second degree, do you freely and voluntarily admit that on or about and between the 23rd day of December and the 24th day of December 2010 in the Town of Carmel, County of Putnam and State of New York, that with the intent to cause the death of Gloria Zhingri, that you did cause the death of Gloria Zhingri?
>
> MR. AMAY: Yes.
>
> MS. KRAUSS: And how did you do that?
>
> MR. AMAY: With a knife.
>
> MS. KRAUSS: And what did you do with that knife?
>
> MR. AMAY: I left it there.
>
> MS. KRAUSS: And did you stab her with that knife?
>
> MR. AMAY: Yes.
>
> MS. KRAUSS: And how many times did you stab her?
>
> MR. AMAY: I don't know if it's two or three. I don't know.
>
> MS. KRAUSS: And that was with the intent to cause her death; isn't that correct?
>
> MR. AMAY: I didn't know. I was drunk. But I'm guilty. But I'm going to pay my price. What else do you want?
>
> THE COURT: Well—
>
> MS. KRAUSS: You just indicated—
>
> (Off-the-record discussion between counsel.)
>
> (Defendant confers with counsel.)
>
> MS. KRAUSS: Mr. Amay, you just made a statement about having been drunk. I'm gonna ask you some questions. On or about and between December 23rd and December 24th, did you go to Gloria's house?
>
> MR. AMAY: Yes.
>
> MS. KRAUSS: And when you were at Gloria's house, did there come a time that you dragged her into the house.
>
> MR. AMAY: Yes.
>
> MS. KRAUSS: And did you take a knife?
>
> MR. AMAY: Yes.
>
> MS. KRAUSS: And did you stab her in the chest at least two times with that knife?
>
> MR. AMAY: Yes.
>
> MS. KRAUSS: And did you leave the knife protruding in her chest?
>
> MR. AMAY: Yes.
>
> MS. KRAUSS: And when you did that, regardless of—when you did that, you knew what you were doing; isn't that correct?
>
> (Defendant confers with counsel.)
>
> MS. KRAUSS: You knew what you were doing; isn't that correct?
>
> MR. AMAY: Yes.
>
> MS. KRAUSS: Your Honor, at this time, we would suggest acceptance of that plea. Just a few further questions. Do you understand everything that's been said here today?
>
> MR. AMAY: Yes.
>
> MS. KRAUSS: Do you have any questions?
>
> MR. AMAY: No. I just want them to take care of my son. I want you to tell my mother-in-law to please take care of my son. That is all.
>
> THE COURT: A.D.A. Krauss, anything else you want to ask him?
>
> MS. KRAUSS: Yes, sir. Two more questions, Judge.
>
> THE COURT: Please.
>
> MS. KRAUSS: First, how do you plead to the crime of, under count 1, murder in the second degree having occurred

on or about and between December 23rd and December 24th of 2010? How do you plead?

MR. AMAY: Criminal. Guilty.

MS. KRAUSS: And notwithstanding, just to clarify the prior comment that you had been drinking that day, you admit that you went there and that you stabbed her multiple times and you murdered Gloria Zhingri?

MR. AMAY: Yes.

MS. KRAUSS: Judge, may we approach for a minute?

THE COURT: Yes.

(Off-the-record discussion held at the bench.)

(Defendant confers with counsel.)

THE COURT: Thank you. Mr. Curtiss, are you ready to go?

MR. CURTISS: We are ready to proceed, Your Honor.

***3** MS. KRAUSS: Judge, may I ask one or two more questions?

THE COURT: Certainly.

MS. KRAUSS: Thank you, sir. Mr. Amay, notwithstanding your earlier comment that you had something to drink that day, earlier in the day, you admit that you went to Gloria's house that day, is that correct?

MR. AMAY: Yes.

MS. KRAUSS: And when you were at Gloria's house, you took a knife, isn't that correct?

MR. AMAY: Yes.

MS. KRAUSS: And that you stabbed her at least two times in the chest with that knife; isn't that correct?

MR. AMAY: Yes.

MS. KRAUSS: And notwithstanding that earlier comment, that you knew what you were doing; isn't that correct?

MR. AMAY: Yes.

MS. KRAUSS: Your Honor, we would recommend acceptance of the plea.

THE COURT: Okay. Based on the questions and the answers, the Court will accept the plea at this time.

(*Id.* at 13–17).

On November 15, 2011, the court sentenced Amay to a term of 22 years to life imprisonment. (*Id.* at 31).

**B. Direct Appeal**

On direct appeal, Amay argued, as relevant now, that: (1) he received ineffective assistance of counsel because Curtiss failed to advise Amay of intoxication as an available defense; (2) his plea was not made knowingly, voluntarily, and intelligently because he did not know that intoxication was an available defense; and (3) his sentence was excessive. (*Id.* at 166, 170, 181–98).

In December 2017, the Second Department affirmed, reasoning as follows. *People v. Amay*, 156 A.D.3d 895, 895 (2d Dep't 2017). Insofar as Amay "contend[ed] that counsel's alleged ineffectiveness affected the voluntariness of his plea, his contention [was] based, in part, on matter on the record, and, in part, on matter outside the record, and thus constitute[d] a 'mixed claim' of ineffective assistance." *Id.* It was "not evident from matter appearing on the record that [Amay] was deprived of the effective assistance of counsel." *Id.* Because his ineffective assistance claim could not "be resolved without reference to matter outside the record, a [N.Y. Crim Proc. Law §] 440.10 proceeding [was] the appropriate forum for reviewing the claim in its entirety." *Id.* As to the voluntariness of Amay's plea, the claim was "unpreserved for appellate review" because "further inquiry into the facts was conducted and [Amay] did not challenge this remedial action." *Id.* Finally, Amay's appeal waiver barred review of his excessive sentence claim. *Id.*

Amay sought leave to appeal to the New York Court of Appeals (ECF No. 10-1), which was denied on March 29, 2018. *People v. Amay*, 31 N.Y.3d 980 (2018) (Feinman, J.).

**C. N.Y. Crim. Proc. Law § 440 Proceedings**

On December 24, 2018, Amay filed a N.Y. Crim. Proc. Law § 440.10 motion. (ECF No. 10-1 at 35–80). He argued, as relevant now, that he received ineffective assistance of counsel because Curtiss failed to advise and discuss the possibility of an intoxication defense. (*Id.* at 43–59). Amay attached an affidavit, swearing, as relevant now:

> I was in no way or form informed as the viability to any other defense as intoxication defense, since I was intoxicated when the crime occurred. Mr. Timothy Curtiss did not inform me of an alternate defense of intoxication [diminished capacity] during the plea colloquy or the sentencing phase, nor prior to any of these events in relations to my case.

***4** (*Id.* at 79.) He also attached witness statements, made to law enforcement on the night of Amay's arrest, reflecting that Amay had been "drinking," was "drunk," and "smelled of alcohol" on the night of Ms. Zhingri's death. (*Id.* at 69–70).

In the State's opposition, the State asserted that "the People, on or about January 14, 2019, had an opportunity to discuss this matter with Curtiss and confirmed to the best of Curtiss' recollection that Legal Aid discussed intoxication as a defense with the defendant, but that defendant did not wish to proceed to trial, or to have the facts of this case disseminated publicly at a trial, and made the decision that he wanted to enter a guilty plea." (*Id.* at 102).

On March 5, 2019, the Putnam County Court summarily denied Amay's § 440.10 motion without a hearing, reasoning as follows:

> As to the matters appearing on the record, the Court finds that the Defendant's ineffective assistance of counsel claim is unsupported and, in fact, contradicted by the record, specifically the record of his plea allocution. As to matters allegedly outside of the record pertaining to this claim, the Court finds that the Defendant's papers are insufficient. The Defendant must demonstrate the absence of strategic or other legitimate explanations for defense counsel's shortcomings. *See, People v. Standsblack,* 162 A.D.3d 1523, 79 N. Y.S.3d 420 [4th Dept. 2018]. The Defendant failed to do so in his motion papers. Rather, the Defendant submitted his self-serving and unsubstantiated Affidavit in support of his ineffective assistance of counsel claim. The Defendant's papers did not contain an affirmation from his defense counsel or an explanation for the absence of such affirmation. Furthermore, the Court finds that, based upon the circumstances of this matter, there is no reasonable possibility that the Defendant's ineffective assistance of counsel claim is true. Thus, an evidentiary hearing on the Motion is unnecessary.

(*Id.* at 303–04).

Amay sought leave to appeal to the Second Department (*id.* at 238–49), which was denied on August 26, 2019. (*Id.* at 325).

**D. Amay's Section 2254 Petition**

On or about December 10, 2019, Amay timely[4] filed his § 2254 petition. (*See* ECF No. 2). Amay asserts two claims: (1) he received ineffective assistance of counsel because counsel failed to inform him of, and discuss with him, the possibility of an intoxication defense, which would have negated the intent *mens rea* of second-degree murder; and (2) his plea was not knowingly, voluntarily, and intelligently made because he was not apprised of intoxication as an available defense and the court failed to inquire about it. (ECF No. 2 at 4).

***5** The State opposes the petition, arguing that: (1) Amay's claim that his plea was not knowingly, voluntarily, and intelligently made is procedurally barred and meritless (ECF No. 11 at 11–16); and (2) Amay's ineffective assistance claim was waived by his guilty plea and the state courts' rejections of this claim were not contrary to, nor unreasonable applications of, clearly established federal law (*id.* at 16–22).

In July 2020, Amay filed his reply. (ECF No. 18).

**III. LEGAL STANDARD**

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). A state prisoner seeking habeas relief under § 2254 must show by a preponderance of the evidence that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997).

"Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254." *Hewitt v. Annucci*, No. 13 Civ. 7505 (NSR) (JCM), 2017 WL 10900091, at *6 (S.D.N.Y. May 3, 2017) (citation omitted). If a petitioner meets these threshold requirements, including timeliness and exhaustion of state court remedies, a federal court may decide a claim on the merits.

**A. Timeliness**

AEDPA imposes a one-year statute of limitations on habeas petitions. As relevant here, a state prisoner has one year to file his petition after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1). A judgment becomes final "upon the completion of direct appellate review in state court and by the United States Supreme Court—either when certiorari proceedings are completed or when the time for seeking direct review by the United States Supreme Court expires, *i.e.*, ninety (90) days after the last decision by the highest state court to which a direct appeal can be taken." *Wynerman v. Colvin*, No. 16 Civ. 2886 (RA) (HBP), 2017 WL 3503402, at *2 (S.D.N.Y. June 13, 2017) (citing, among others, *Clay v. United States*, 537 U.S. 522, 532 (2003)).

The limitations period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The limitations period may also be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him from filing his petition on time," and the petitioner "acted with reasonable diligence throughout the period he seeks to toll." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).

**B. Exhaustion**

Even if a petition for a writ of habeas corpus is timely filed, a federal court may not consider it unless the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *see also Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) ("To provide the state with the first opportunity to consider and correct alleged violations of its prisoners' constitutional rights, a state prisoner is required to exhaust all of his available state remedies before a federal court can consider his habeas application."). In other words, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, a petitioner invokes "one complete round" of review by appealing an issue to the Appellate Division, then seeking leave to appeal to the New York Court of Appeals. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

***6** To satisfy the exhaustion requirement, a petitioner must "fairly present" each of his habeas claims in "each appropriate state court (including a state supreme court with powers of discretionary review)," in a manner that "alert[s] that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted); *Conway*, 763 F.3d at 133 ("While 'a state prisoner is not required to cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.' ") (quoting *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)).

A petitioner can "fairly present" his claims in several ways, including by citing to the applicable provisions of the federal Constitution in his state-court briefs, *see Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001), or by citing "pertinent federal cases employing constitutional analysis," *Rustici v. Phillips*, 308 F. App'x 467, 469 (2d Cir. 2009) (Summary Order) (internal quotation marks and citation omitted). But a claim is generally not "fairly presented" to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin*, 541 U.S. at 32. The federal claim also must be presented with some specificity: "a general appeal to a constitutional guarantee as broad as due process" is insufficient "to present the 'substance' of such a claim to a state court." *Gray v. Netherland*, 518 U.S. 152, 163 (1996) (citing *Anderson v. Harless*, 459 U.S. 4, 7 (1982)).

**C. Procedural Default**

If a habeas petition presents unexhausted claims, a federal court must determine whether the petitioner would be able to return to state court to exhaust them. *Conway*, 763 F.3d at 133. An unexhausted claim for which the petitioner cannot obtain further review in state court is procedurally defaulted and must be dismissed. *Id.* ("[I]f the state prisoner fails to exhaust his state remedies in a manner in which, were he to return to the state courts with his unexhausted claim, those courts would find the claim barred by the application of a state procedural rule, we must deem the claim procedurally defaulted." (internal quotation marks and citations omitted)).

Separately, even where a timely and exhausted habeas claim is raised, the interests of finality, comity, and federalism demand that a federal court abstain from review when the last-reasoned state court opinion to address the claim relied upon an "adequate and independent finding of procedural default" to deny it. *Harris v. Reed*, 489 U.S. 255, 262, 264 (1989*); Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995). A state court decision is "independent" when it "fairly appears" to rest primarily on state law. *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 740 (1991)). A decision is "adequate" if it is based on a rule that is " 'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)).

The exception to the procedural default rule is if the petitioner establishes either "cause and actual prejudice or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 615 (1998) (internal quotation marks and citations omitted); *see also Coleman*, 501 U.S. at 748. A petitioner can show "cause" for a procedural default through examples of external factors, including when (1) "the factual or legal basis for a claim was not reasonably available," (2) "some interference by state officials made compliance [with the procedural rule] impracticable," or (3) "the procedural default is the result of ineffective assistance of counsel." *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (internal quotation marks and citation omitted). Although the Supreme Court has not given "precise content" to the term "prejudice," *see Wainwright v. Sykes*, 433 U.S. 72, 91 (1977), the prejudice must be sufficient "to overcome society's justified interests in the finality of criminal judgments," *United States v. Frady*, 456 U.S. 152, 175 (1982). "The petitioner's burden in making a gateway showing of actual innocence is deliberately 'demanding.' " *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019) (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). The standard of innocence in this context "references 'factual innocence, not mere legal insufficiency.' " *Id.* at 657 (citing *Bousley*, 523 U.S. at 623).

**D. Merits Review**

***7** If a claim meets all procedural requirements, AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Jones v. Murphy*, 694 F.3d 225, 234 (2d Cir. 2012) (quoting *Hardy v. Cross*, 565 U.S. 65, 66 (2011)). Thus, even if a claim is timely and properly exhausted, under AEDPA, a federal court may only grant a habeas petition decided on the merits in state court if the challenged state-court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time of the state-court decision, or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

Under the first prong of § 2254(d), a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's result. *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000). "[C]learly established" federal law means "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *Id.* at 412.

A state court makes "an unreasonable application" of clearly established federal law if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Cullen v. Pinholster*, 563 U.S. 170, 188 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). That application of federal law must be " 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)). "The state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.' " *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (quoting *White v. Woodall*, 572 U.S. 415, 420 (2014)).

Under the second prong of § 2254(d), the factual findings of state courts are presumed to be correct. *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**E. Liberal construction of *Pro Se* Filings**

Courts liberally construe pleadings prepared by *pro se* litigants and hold them "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Courts have a "duty to read *pro se* submissions to raise the strongest arguments they suggest." *Lewis v. Rawson*, 564 F.3d 569, 575 n.7 (2d Cir. 2009) (internal quotation marks and citation omitted).

## IV. DISCUSSION

**A. Amay's Claim that His Plea Was Not Made Knowingly, Voluntarily, and Intelligently is Procedurally Barred**

Here, Amay' § 2254 petition asserts, among other things, that his plea was not knowingly, voluntarily, and intelligently made because he was not apprised of intoxication as an available defense and the court failed to inquire about it. (ECF No. 2 at 4, 9). In opposition, the State argues that this claim is procedurally barred because the Appellate Division rejected it on an independent and adequate state procedural rule. (ECF No. 11 at 9).

A state court's "independent and adequate" finding of procedural default ordinarily bars federal habeas review of a constitutional claim. *Coleman*, 501 U.S. at 750. "A procedural default occurs in one of two ways. First, if the state prisoner fails to exhaust his state remedies in a manner in which, were he to return to the state courts with his unexhausted claim, those courts would find the claim barred by the application of a state procedural rule, we must deem the claim procedurally defaulted." *Conway*, 763 F.3d at 133 (internal quotation marks omitted). "Alternatively, a procedural default occurs if the state court's rejection of a federal claim rests on a state law ground—such as the operation of a state procedural rule—that is both independent of the federal question and adequate to support the judgment." *Id.* (internal quotation marks and citation omitted).

***8** When a state court's decision rests on two grounds, one federal and one state, federal habeas review will be barred if the state law ground is independent of the federal question and adequate to support the judgment, whether the state law is substantive or procedural. *Walker v. Martin*, 562 U.S. 307, 315 (2011); *Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d Cir. 2010).

**1. The Second Department Relied on an "Independent" State Law Ground to Reject Amay's Plea Claim**

A state law ground is independent if the state court actually relied on a state rule to justify its decision. *Cone v. Bell*, 556 U.S. 449, 465–66 (2009). The state court must "clearly and expressly" state that its decision rests on a state procedural bar. *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (internal quotation marks and citation omitted).

Here, the Second Department denied Amay's challenge to the voluntariness of his plea on two grounds—one federal and one state. *Amay*, 156 A.D.3d at 896. First, the Second Department, relying on a state law ground, concluded that Amay had failed to preserve his claim because after he had said that he was drunk at the time of the crime, the State conducted further inquiry into the facts and Amay did not challenge the State's remedial action. *Id.* Specifically, the Second Department applied the procedural rule articulated in *People v. Lopez*, 71 N.Y.2d 662 (1988), that a criminal defendant must preserve any challenge to the factual sufficiency of his guilty plea with the trial court in a post allocution motion. *See Amay*, 156 A.D.3d at 896 (citing *Lopez*, 71 N.Y.2d at 667–68). Second, relying on a federal law ground, the Second Department found that, "[i]n any event, [Amay's] challenge [was] without merit." *Id.* The Second Department's reliance on the state law ground was independent of the federal law ground because each ground was an independent basis to deny the claim. *See Murden v. Artuz*, 497 F.3d 178, 193 (2d Cir. 2007) (holding that where a state court explicitly relies on a procedural ground and nothing in the record suggests that it based its decision on a consideration of the merits, the ground is independent).

**2. The Second Department Relied on an "Adequate" State Law Ground to Reject Amay's Plea Claim**

The adequacy of a state procedural rule barring the assertion of a federal question on habeas review is itself a federal question. *Johnson v. Lee*, 578 U.S. 605, 608 (2016) (per curiam). "Before accepting a procedural bar defense" to

consideration of a claim raised in a petition for federal habeas relief, a "federal court must examine the adequacy of the alleged procedural default." *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003). A petitioner may challenge the adequacy of a state procedural bar on two grounds: (1) "it is not firmly established and regularly followed by the state in question"; or (2) "in exceptional cases where the state court's application of the rule was exorbitant, rendering the state ground inadequate to stop consideration of a federal question." *Pierotti v. Walsh*, 834 F.3d 171, 177 (2d Cir. 2016) (alteration and citations omitted).

***(a) The State Procedural Rule Is Firmly Established and Regularly Followed***

The New York procedural rule applied here by the Second Department—that a criminal defendant must preserve any challenge to the factual sufficiency of his guilty plea—is a firmly established and regularly followed rule. As noted above, the procedural rule applied here was articulated in *People v. Lopez*, 71 N.Y.2d 662 (1988). There, the New York Court of Appeals explained that for a criminal defendant to preserve a challenge to the validity of his guilty plea, he must either: (a) move to withdraw the plea under N.Y. Crim. Proc. Law § 220.60(3), or (b) move to vacate the judgment of conviction under N.Y. Crim. Proc. Law § 440.10, in the trial court before seeking a direct appeal. *Lopez*, 71 N.Y.2d at 665. The Court of Appeals identified one exception to the procedural rule:

> ***9** [W]here a defendant's factual recitation negates an essential element of the crime pleaded to, the court may not accept the plea without making further inquiry to ensure that defendant understands the nature of the charge and that the plea is intelligently entered. Where the court fails in this duty and accepts the plea without further inquiry, the defendant may challenge the sufficiency of the allocution on direct appeal, notwithstanding that a formal postallocution motion was not made.

*Id.* at 666 (citations omitted). In this case, the Second Department applied *Lopez*'s procedural rule. *See Amay*, 156 A.D.3d at 896 (citing *Lopez*, 71 N.Y.2d at 667–68).

To determine whether a state procedural rule is firmly established and regularly followed, the Court may survey state court decisions applying the rule. *See Downs v. Lape*, 657 F.3d 97, 103–04 (2d Cir. 2011) (surveying state court decisions to determine whether New York's contemporaneous objection rule is firmly established and regularly followed). New York courts have applied *Lopez*'s procedural rule for 35 years, and a version of the rule for at least a decade before that. *See, e.g.*, *People v. Pastor*, 28 N.Y.3d 1089, 1091 (2016) (Mem.) (applying *Lopez*, 71 N.Y.2d at 666); *People v. Williams*, 27 N.Y.3d 212, 214 (2016) (same); *People v. Davis*, 24 N.Y.3d 1012, 1013 (2014) (same); *People v. Toxey*, 86 N.Y.2d 725, 726 (1995) (Mem.) (same); *People v. Claudio*, 64 N.Y.2d 858, 858–59 (1985); *People v. Bell*, 47 N.Y.2d 839, 840 (1979); *People v. Warren*, 47 N.Y.2d 740, 741 (1979) ("Not having raised the issue [concerning the adequacy of a plea] by motion to vacate or otherwise in the court of first instance, no error has been preserved for review."); *People v. Adams*, 46 N.Y.2d 1047, 1047–48 (1979) (holding that a defendant's challenge to a guilty plea was unpreserved because the defendant had not challenged the plea at the trial court, nor had he moved to vacate the plea); *People v. Steinard*, 210 A.D.3d 1202, 1202–03 (3d Dep't 2022) (applying *Lopez*, 71 N.Y.2d at 666); *People v. Tanveer*, 205 A.D.3d 1054, 1054 (2d Dep't 2022) (same, citing more recent caselaw); *People v. Melendez*, 201 A.D.3d 444, 444–45 (1st Dep't 2022) (applying *Lopez*, 71 N.Y.2d at 666); *People v. McMillian*, 185 A.D.3d 1420, 1421 (4th Dep't 2020) (same, citing more recent caselaw). Although the Second Circuit has not yet held that *Lopez*'s procedural rule is firmly established and regularly followed, the foregoing sampling of New York caselaw demonstrates that it is. Also, courts in this district have held that *Lopez*'s procedural rule is an independent and adequate state law ground. *See, e.g.*, *Babcock v. Heath*, No. 11-cv-4631, 2014 WL 4979448, at *4 (S.D.N.Y. Oct. 3, 2014); *Rojas v. Heath*, No. 11-cv-4322, 2012 WL 5878679, at *7 (S.D.N.Y. Oct. 18, 2012), *report and recommendation adopted*, 2012 WL 5878752 (S.D.N.Y. Nov. 16, 2012); *Tinsley v. Woods*, No. 08-cv-1332, 2011 WL 3251527, at *7 (S.D.N.Y. June 16, 2011), *report and recommendation adopted*, 2011 WL 4472468 (S.D.N.Y. Sept. 28, 2011).

### *(b) The Second Department Did Not Exorbitantly Apply* Lopez

The Second Department did not exorbitantly apply *Lopez*. To determine whether a state court's application of a firmly established and regularly followed state procedural rule was exorbitant, courts examine "three non-exclusive considerations": (1) "whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision"; (2) "whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented"; and (3) "whether petitioner had substantially complied with the rule and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest." *Fulton v. Graham*, 802 F.3d 257, 262 (2d Cir. 2015) (alteration omitted) (quoting *Cotto*, 331 F.3d at 240); *see Lee v. Kemna*, 534 U.S. 362, 381–82 (2002) (identifying these three considerations). These three inquiries are not "factors," nor do they comprise a "test"; rather, they are merely "guideposts for evaluating the state interest in a procedural rule against the circumstances of a particular case" and only apply in "unique circumstances." *Whitley*, 642 F.3d at 287–88 (internal quotation marks and citation omitted).

***10** The first part of the first consideration, whether the alleged procedural violation was actually relied on in the trial court, is not applicable here. The "trial court could not have known" at that time about the issue over Amay's failure to withdraw his plea. *See Hunter v. McLaughlin*, No. 04-cv-4058, 2008 WL 482848, at *2 (S.D.N.Y. Feb. 20, 2008). Thus, "this aspect is discounted." *Id.*; *see Cotto*, 331 F.3d at 242 (discounting this aspect of the first consideration where the procedural default was the failure to preserve an objection); *Clark v. Perez*, 510 F.3d 382, 391 n.4 (2d Cir. 2008) (same, where the procedural default was a failure to timely appeal); *Garvey v. Duncan*, 485 F.3d 709, 719 (2d Cir. 2007) (explaining that it is "meaningless to ask whether the alleged procedural violation was actually relied on" when the "violation was the defendant's failure to raise a specific issue before the trial court").

Whether perfect compliance with the state procedural rule would have changed the trial court's decision "involves a certain degree of speculation." *Cotto*, 331 F.3d at 243. On the one hand, in accepting Amay's plea, the trial court had already considered whether the plea was "knowing, voluntary, and intelligently made," including whether Amay had discussed possible defenses with his attorney. (ECF No. 10-1 at 6–9). And the issue of intoxication was clearly an issue during the plea allocution, as Amay was questioned several times about whether despite being drunk, "[h] knew what [he was] doing." (*Id.* at 13–17). Thus, it seems unlikely that Amay's perfect compliance with the state procedural rule would have changed the trial court's decision. Yet, had Amay moved to vacate, that motion would have given the trial court an opportunity to correct any error by inquiring further about whether defense counsel told Amay about the intoxication defense and its implications for the *mens rea* of the crime charged against him. *See Lopez*, 71 N.Y.2d at 665–66 ("The failure to make the appropriate motion [to withdraw the plea or a motion to vacate the judgment of conviction] denies the trial court the opportunity to address the perceived error and to take corrective measures, if needed."). On balance, the Court finds this factor neutral, if not slightly favoring Amay.

As for the second consideration, whether state caselaw indicated that compliance with the state procedural rule was demanded under the circumstances, "[t]here is ample case law holding that a defendant must notify the trial court of his request to withdraw a guilty plea on a specific basis in order to preserve that issue for appeal." *Hunter*, 2008 WL 482848, at *3; *see, e.g.*, *Pastor*, 28 N.Y.3d at 1091; *Williams*, 27 N.Y.3d at 214; *Davis*, 24 N.Y.3d at 1013; *Toxey*, 86 N.Y.2d at 726; *Lopez*, 71 N.Y.2d at 666–68; *Claudio*, 64 N.Y.2d at 858–59; *Bell*, 47 N.Y.2d at 840; *Warren*, 47 N.Y.2d at 741; *Adams*, 46 N.Y.2d at 1047–48. Thus, the second consideration weighs against Amay.

The third consideration, whether the petitioner substantially complied with the procedural rule and whether demanding perfect compliance would serve a legitimate governmental interest, is the "most important" consideration. *Lee*, 534 U.S. at 382. Here, Amay did not substantially comply with the procedural rule because he "did not provide any degree of notice to the trial court" that he believed his plea was not knowingly, voluntarily, and intelligently made. *Hunter*, 2008 WL 482848, at *4; *Garvey*, 485 F.3d at 720 ("Had the defendant here put the trial court on notice regarding his argument ..., perhaps it would have been exorbitant to punish him for not complying with some technical aspect of [the procedural rule]."). Finally, perfect compliance would have served a legitimate governmental interest because failing to provide the trial court with any notice of a request to withdraw a plea on a particular basis "denies the trial court the opportunity to address the perceived error and to

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

take corrective measures." *People v. Louree*, 8 N.Y.3d 541, 545 (2007) (quoting *Lopez*, 71 N.Y.2d at 665–66). "The requirement that a claim must be timely raised in order to create a question of law is grounded in large part in the need to preserve limited judicial resources and avoid untoward delay in the resolution of criminal proceedings." *Lopez*, 71 N.Y.2d at 665 (internal quotation marks and citations omitted).

***11** Thus, the Second Department's reliance on Amay's procedural default is sufficiently "adequate" to preclude federal habeas review.

**B. No Exception to the Procedural Default Rule Applies to Save Amay's Plea Claim**

When a § 2254 petitioner has procedurally defaulted on a claim, the federal habeas court may only review the claim if the petitioner can demonstrate: (1) "cause" for his default and "actual prejudice" resulting therefrom or (2) that failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Acosta v. Artuz*, 575 F.3d 177, 184 (2d Cir. 2009) (quoting *Coleman*, 501 U.S. at 750); *Gutierrez v. Smith*, 692 F.3d 256, 263 (2d Cir. 2012), *superseded on other grounds by Gutierrez v. Smith*, 702 F.3d 103 (2d Cir. 2012). A "fundamental miscarriage of justice" has been described as an "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Sawyer v. Whitley*, 505 U.S. 333, 338–39 (1992). Here, neither exception applies.

**1. Amay Fails to Establish "Cause" and "Prejudice"**

To establish "cause," a § 2254 petitioner must ordinarily show that "some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule." *Gutierrez*, 692 F.3d at 263; *accord Davila v. Davis*, 582 U.S. 521, 528 (2017). "An example of such an objective impediment is 'a showing that the factual or legal basis for a claim was not reasonably available to counsel' at the time of trial." *Gutierrez*, 692 F.3d at 263 (quoting *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999)). "Cause" may also be established by showing that the procedural default was caused by counsel's error. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (noting that "constitutionally ineffective assistance of counsel is cause") (alterations and citation omitted).

Here, Amay argues that "if there was [a] procedural default, [he] has established cause for that default in that his attorney provided constitutionally ineffective assistance of counsel." (ECF No. 18 at 14–15). But "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486 (1986); *see also Gupta v. United States*, 913 F.3d 81, 85 (2d Cir. 2019) (per curiam); *Wade v. Melecio*, No. 21-cv-9138, 2023 WL 2152489, at *12 (S.D.N.Y. Feb. 22, 2023), *report and recommendation adopted*, 2023 WL 2500676 (S.D.N.Y. Mar. 14, 2023). Rather, "[a] defense counsel's ineffectiveness in failing to properly preserve a claim for review in state court can suffice to establish cause for a procedural default only when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel." *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001) (citations omitted); *see also Wade*, 2023 WL 2152489, at *12. As discussed below, in Section D with respect to Amay's separate claim for ineffective assistance of counsel, Amay has not made such a showing. Thus, Amay has not established cause to overcome his procedural default. And because Amay has not shown cause for the default, the Court need not consider whether he has suffered actual prejudice. *See McCleskey*, 499 U.S. at 502; *Hare v. Rockwood*, No. 22-cv-3190, 2023 WL 6065948, at *9 (S.D.N.Y. Aug. 28, 2023), *report and recommendation adopted*, 2023 WL 6472023 (S.D.N.Y. Sept. 18, 2023).

**2. Amay Fails to Demonstrate a "Fundamental Miscarriage of Justice"**

***12** A § 2254 petitioner's default claim may be reviewed in federal court if the petitioner can demonstrate that a fundamental miscarriage of justice would occur absent relief. *Murray*, 477 U.S. at 495–97. This may be satisfied by a showing of "actual innocence." *Id.* at 497. "Actual innocence means 'factual innocence, not mere legal insufficiency.' " *Carvajal v. Artus*, 633 F.3d 95, 108 n.9 (2d Cir. 2011) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). A petitioner asserting actual innocence must establish that, given all the evidence, including new evidence produced in support of actual innocence, "it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536–37 (2006) (internal quotation marks and citations omitted). This will be satisfied only in "extraordinary case[s]"

because the petitioner must present "new reliable evidence." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).

Here, Amay does not present new evidence of his innocence in his § 2254 petition. (*See generally* ECF No. 2). Nor is the evidence in Amay's § 440.10 motion "new" because it was available to both Amay and counsel at the time of his plea. Thus, Amay has not presented new, reliable evidence of his innocence. *Schlup*, 513 U.S. at 324. But even if the evidence were new, it would not demonstrate "*factual* innocence," but rather, a "mere legal insufficiency." *Carvajal*, 633 F.3d at 108 n.9 (emphasis added). In other words, the evidence would not demonstrate that Amay did not kill Gloria Zhingri. Rather, the evidence would question whether Amay had the requisite intent to commit second-degree murder; this would create a legal insufficiency, but not demonstrate factual innocence. *Id.*

Thus, Amay has not made a showing that a fundamental miscarriage of justice would occur absent review of his claim that his plea was not made knowingly, voluntarily, and intelligently.

### C. Even if Amay Could Overcome the Procedural Bar, His Claim that the Plea Was Not Knowing, Voluntary, and Intelligent is Meritless

Under AEDPA, the Appellate Division's rejection of Amay's claim that his plea was not knowing and voluntary is neither contrary to nor an unreasonable application of Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). Nor does it result in a decision that was based on an unreasonable determination of the facts considering the evidence presented in the State court proceeding. *Id.* at § 2254(d)(2). Thus, even if Amay could overcome the procedural bar to federal habeas review, his claim would fail on the merits.

The Due Process Clause of the Fourteenth Amendment requires that a guilty plea be knowingly and voluntarily entered. *See Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969); *see also Parke v. Raley*, 506 U.S. 20, 28–29 (1992). A plea is voluntary and intelligent when a defendant "had the advice of counsel," "understood the consequences of his plea," and the plea was not physically or mentally coerced. *See Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988). "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (internal quotation marks and citations omitted).

A defendant's statements under oath at a plea allocution "carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Such statements "are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999). Even so, the barrier imposed by this rule is "not invariably insurmountable." *Blackledge*, 431 U.S. at 74. When a defendant can prove through extrinsic evidence that there was some "misunderstanding, duress, or misrepresentation by others," the guilty plea may be "a constitutionally inadequate basis for imprisonment." *Id.* at 75.

***13** Here, at the plea proceeding Amay indicated, by responding in the affirmative under oath, that he had discussed his plea with his attorney, including "possible defenses," that he had "had enough time to talk with [his attorney] and make a decision" to plead guilty, and that he was satisfied with his attorney's representation. (ECF No. 10-1 at 6–7). When asked whether anyone had threatened, coerced, or forced him into pleading guilty, he responded, "No," and when asked whether he was pleading guilty freely, voluntarily, and because he was in fact guilty, he responded, "Yes." (*Id.* at 8–9). He understood that the maximum sentence was 25 years to life imprisonment. (*Id.* at 9). As noted above, these statements "carry a strong presumption of verity," *Blackledge*, 431 U.S. at 74, and are "conclusive in the face of the defendant's later attempt to contradict them," *Adames*, 171 F.3d at 732. While Amay did state during his plea that he "was drunk" when he killed Gloria Zhingri, the record shows that he had an opportunity to confer with his attorney following that statement and he, nevertheless, proceeded with the plea. (*Id.* at 14). The prosecutor then asked Amay several times about his actions, within the context of Amay having just stated that he was drunk at the time. (ECF No. 10-1 at 14–17). And each time, Amay agreed that despite being drunk, "[h]e knew what [he was] doing." (*Id.* at 15, 17). Although Amay submitted an affidavit (attached to his § 440.10 motion) swearing that he had not been advised of intoxication as an available defense (ECF No. 10-1 at 79), his "self-serving affidavit," *United States v. Gonzalez*, 647 F.3d 41, 54 (2d Cir. 2011), is insufficient to establish that his plea was not made knowingly and voluntarily.

Given the totality of the circumstances, including Amay's plea admission that he killed Gloria Zhingri, and a videotaped confession procured by law enforcement, admitting to the killing (*see* ECF No. 10-1 at 129–130), [5] I cannot conclude that Amay's decision to plead guilty was not "a voluntary

and intelligent choice among the alternative courses of action open to" him. *Hill*, 474 U.S. at 56. Nor can I conclude that the Appellate Division's rejection of Amay's claim was contrary to or an unreasonable application of Supreme Court precedent, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts considering the evidence presented in the State court proceeding. *Id.* at § 2254(d)(2).

Thus, Amay's claim that his plea was not entered knowingly, voluntarily, and intelligently should be DENIED.

### D. Amay's Claim for Ineffective Assistance of Plea Counsel Fails on the Merits [6]

Here, Amay' § 2254 petition asserts that he received ineffective assistance of counsel because plea counsel failed to inform him of, and discuss with him, the possibility of an intoxication defense, which would have negated the intent *mens rea* of second-degree murder. (ECF No. 2 at 4). In opposition, the State argues that the state courts' rejections of Amay's claim were not contrary to, nor based on an unreasonable application of, clearly established federal law (ECF No. 11 at 16–22).

To prevail on an ineffective assistance of counsel claim under federal law, a petitioner must: (1) show that counsel's representation was deficient in that it fell below an "objective standard of reasonableness"; and (2) establish prejudice by demonstrating a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). This standard applies to petitioners who plead guilty as well as to those who are convicted upon a jury's verdict: a petitioner who pleads guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

***14** "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Harrington*, 562 U.S. at 105. "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* (internal quotation marks and citations omitted). "The operative question in reviewing a state court's *Strickland* ruling is thus 'not whether a federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable—a substantially higher threshold.' " *Waiters v. Lee*, 857 F.3d 466, 478 (2d Cir. 2017) (alterations omitted) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "In such circumstances, federal courts are to afford both the state court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (per curiam) (internal quotation marks and citations omitted).

#### 1. Amay Fails to Show that Counsel's Representation Fell Below an "Objective Standard of Reasonableness"

When assessing whether plea counsel's performance fell below an objective standard of reasonableness, the Court " 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that 'there are countless ways to provide effective assistance in any given case' and that 'even the best criminal defense attorneys would not defend a particular client in the same way.' " *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (alterations omitted) (quoting *Strickland*, 466 U.S. at 689).

Here, Amay claims that his plea counsel failed to advise him of intoxication as an available defense. "A strong case can indeed be made that failure to advise a criminal defendant of the availability of an affirmative defense when facts known to an attorney suggest that the defense may be meritorious does not constitute 'reasonably effective assistance' when judged 'under prevailing professional norms.' " *Mitchell v. Scully*, 746 F.2d 951, 954 (2d Cir. 1984) (quoting *Strickland*, 466 U.S. at 687–88).

But as the Putnam County Court held on § 440.10 review, Amay's claim that plea counsel failed to advise him of intoxication as an available defense is "unsupported and, in fact, contradicted by the record, specifically the record of his plea allocation." (ECF No. 10-1 at 303). As to matters outside the record, the County Court found that Amay's papers failed to demonstrate "the absence of strategic or other legitimate explanations for defense counsel's shortcomings." (*Id.*) Instead, Amay's claim was supported by nothing more than "his self-serving and unsubstantiated Affidavit" (*id.* at 304), and his papers did not contain an affirmation from his defense counsel or an explanation for its absence. (*Id.*) The County Court further concluded that, "based upon the circumstances of this matter, there is no reasonable possibility

that the Defendant's ineffective assistance of counsel claim is true." (*Id.*)

As explained above, the record before the County Court included Amay's statements under oath at his plea allocution that he had had enough time to discuss his plea, including possible defenses, with plea counsel, which "carry a strong presumption of verity," *Blackledge*, 431 U.S. at 74, and "are generally treated as conclusive in the face of [his present] attempt to contradict them." *Adames*, 171 F.3d at 732. The plea allocution also included a series of questions about Amay's intoxication at the time of the murder to confirm whether he had the requisite intent. (ECF No. 10-1 at 14–17). When Amay replied that he "didn't know" if he stabbed the victim with the intent to kill her because "[he] was drunk," the prosecutor inquired further. (*Id.* at 14). She elicited that Amay "dragged" the victim into the house, took a knife, and stabbed her in the chest at least two times, and that despite being drunk, he knew what he was doing at the time. (*Id.* at 14–15, 17). Before Amay admitted that he knew what he was doing when he stabbed his wife, he conferred with his attorney. (*Id.* at 15). Thus, the County Court's decision not to credit Amay's affidavit or hold an evidentiary hearing was not objectively unreasonable. *Waiters*, 857 F.3d at 478.

**2. Amay Fails to Demonstrate "Prejudice"**

***15** When a § 2254 petitioner contends that his counsel's ineffective performance affected the outcome of the plea process, the Supreme Court has held that "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *see also* *Panuccio v. Kelly*, 927 F.2d 106, 109 (2d Cir. 1991) ("The likelihood that an affirmative defense will be successful at trial and an assessment of the probable increase or reduction in sentence relative to the plea if the defendant proceeds to trial are clearly relevant to the determination of whether an attorney acted competently in recommending a plea.").

"[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59. The prediction of whether an affirmative defense would prevail at trial "should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.' " *Id.* at 60 (quoting *Strickland*, 466 U.S. at 695).

"Intoxication is not actually a complete affirmative defense to a criminal charge; it rather merely reduces the gravity of the offense by negating the specific intent element of the crime charged." *Hill v. Colvin*, No. 16-cv-1301, 2018 WL 736013, at *16 (N.D.N.Y. Feb. 6, 2018) (alteration and citations omitted) (quoting *Garfield v. Poole*, 421 F. Supp. 2d 608, 612 (W.D.N.Y. 2006)); *see* *People v. Harris*, 98 N.Y.2d 452, 474–75, 474 n.4 (2002); N.Y. Penal Law § 15.25; *Velasquez v. Ercole*, 878 F. Supp. 2d 387, 408 (E.D.N.Y. 2012). "Although it is true that a defendant may offer evidence of his intoxication whenever it is relevant to negate an element of the crime charged, even an intoxicated person may be capable of forming the requisite intent." *Velasquez*, 878 F. Supp. 2d at 408 (alteration and citations omitted). "While the requisite level of intoxication need not be to the extent of depriving the accused of all power of volition or of all ability to form an intent, the degree of intoxication that a defendant must demonstrate is quite high." *Id.* (citation omitted). "Accordingly, counsel has no duty to disclose an intoxication defense where the likelihood of success is slim and the risk of increased exposure to punishment is significant." *Colvin*, 2018 WL 736013, at *16 (citation omitted); *see* *Panuccio*, 927 F.2d at 109 ("We agree with the district court that there was a high likelihood that the intoxication defense would not have succeeded at trial and would have exposed [defendant] to significant additional punishment while only providing the potential for a reduction in prison time relative to the plea that was not substantial compared to the risks of proceeding to trial.").

Here, Amay does not satisfy the prejudice prong. He does not establish that he likely would have prevailed at trial on an intoxication defense, either as an affirmative defense or as evidence negating the requisite intent for second-degree intentional murder. At the plea allocution, Amay admitted, under oath, that he went to Gloria Zhingri's house, dragged her into the house, and then stabbed her "two or three" times with a knife, killing her. (ECF No. 10-1 at 14–17). When asked whether he "knew" what he was doing, despite having been drinking, he said, "Yes." (*Id.* at 15, 17). Given Amay's plea allocution testimony, one could conclude that his intoxication defense would not have succeeded at trial as his intoxication

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

was likely not quite high enough to negate his intent. *See* *Panuccio*, 927 F.2d at 108–09; *Velasquez*, 878 F. Supp. 2d at 408. Additionally, if Amay had gone to trial, the State would have presented Amay's videotaped confession, which had been procured by law enforcement on the night of the killing. (*See* ECF No. 10-1 at 130). As the State explained at the plea hearing, that video confession made Amay "understand[ ] that he ha[d] no option but to accept a plea of a life sentence." (*Id.* at 10). The videotaped confession further dims the likelihood that Amay would have prevailed at trial. And as noted above, counsel has no duty to disclose an intoxication defense where the likelihood of success is slim. *Colvin*, 2018 WL 736013, at *16.

***16** In sum, in light of the "overwhelming evidence" against Amay, he "cannot demonstrate that but for counsel's purported ineffectiveness, 'the result of the proceeding would have been different' in that [ ]he would not have pleaded guilty." *United States v. Wilson*, 523 F. App'x 30, 31 (2d Cir. 2013) (Summary Order) (quoting *Strickland*, 466 U.S. at 694). Thus, the state court's rejection of Amay's claim for ineffective assistance of plea counsel was not contrary to nor an unreasonable application of *Strickland*.

## CONCLUSION

For the above reasons, I conclude—and respectfully recommend that Your Honor should conclude—that the instant § 2254 petition for a writ of habeas corpus should be denied in its entirety. Further, because reasonable jurists would not find it debatable that Amay has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability should be issued. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

## NOTICE

**Pursuant to 28 U.S.C. § 636(b)(1)(c), Rule 72(b) of the Federal Rules of Civil Procedure and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, the parties shall have fourteen (14) days from service of this Report and Recommendation to serve and file written objections. If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections. Fed. R. Civ. P. 6(a), (d). Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Hon. Philip M. Halpern, at the Hon. Charles L. Brieant, Jr., Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.**

**FAILURE TO TIMELY FILE OBJECTIONS TO THIS REPORT AND RECOMMENDATION WILL PRECLUDE LATER APPELLATE REVIEW OF ANY ORDER OF JUDGMENT THAT WILL BE ENTERED. *See Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008).**

**Requests for extensions of time to file objections must be made to Judge Halpern.**

**All Citations**

Slip Copy, 2025 WL 3232678

## Footnotes

1 This petition was reassigned to me on September 18, 2023. (ECF 9/18/2023 Notice of Reassignment).

2 The Background is drawn from the instant petition (ECF No. 2), and the State Court Record, i.e., exhibits from the state court proceedings that have been submitted by the State (ECF Nos. 10-1; 11 (Mem. of Law)).

3 All page numbers to documents filed on ECF refer to ECF pagination, printed in blue on the top of each page.

4 Under 28 U.S.C. § 2244(d)(1), a § 2254 petition generally must be filed within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." However, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation." 28 U.S.C. § 2244(d)(2).

Here, the New York Court of Appeals denied leave to appeal on March 29, 2018. *Amay*, 31 N.Y.3d 980. Since Amay did not seek a writ of certiorari from the U.S. Supreme Court, Amay's conviction became final 90 days later, on June 27, 2018. *See* *Williams v. Artuz*, 237 F.3d 147, 148–49 (2d Cir. 2001) ("[A] state prisoner's conviction becomes final for purposes of the one-year limitations period ... when a writ of certiorari has been denied by the United States Supreme Court or the time for seeking such a writ has expired."); U.S. Sup. Ct. R. 13.1 (providing 90 days to file a petition for a writ of certiorari). The limitations period then ran for 180 days, until Amay filed his N.Y. Crim. Proc. Law § 440.10 motion, on December 24, 2018. (ECF No. 10-1 at 36). The limitation period tolled until August 26, 2019, when the Second Department denied leave to appeal. *See* 28 U.S.C. § 2244(d)(2); (ECF No. 10-1 at 325). At that point, the limitations period resumed and ran for 106 days, until December 10, 2019, when Amay filed his § 2254 petition. (ECF No. 2). Since the limitations period cumulatively ran for less than 365 days, Amay's § 2254 petition is timely.

5 On December 30, 2010, the state court held a felony hearing, during which the State presented a video of Amay confessing to law enforcement that he killed Gloria Zhingri. (ECF No. 10-1 at 109–39).

6 The State argues that Amay's ineffective assistance claim was waived by his guilty plea because his claim "concern[s] events that occurred prior to the entry of his guilty plea" and "[w]hen a valid guilty plea is entered on advice of counsel, it is a waiver of all non-jurisdictional defects in any prior stage of the proceedings against him." (ECF No. 11 at 17 (alterations and internal quotation marks omitted)). The State's argument is misplaced. It is true that a defendant who pleads guilty may not assert claims relating to events occurring prior to the entry of the guilty plea. *See* *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *accord* *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996). But a guilty plea does not bar a criminal defendant from asserting an ineffective assistance claim that "attack[s] the voluntary and intelligent character of the guilty plea." *Tollett*, 411 U.S. at 267; *Coffin*, 76 F.3d at 497. Here, Amay's ineffective assistance claim attacks the voluntary and intelligent character of his guilty plea, because he claims that plea counsel failed to advise him of intoxication as an available defense. Thus, Amay did not waive his ineffective assistance claim by pleading guilty.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4105398
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Frederic C. CARPENTER, Jr., Petitioner,
v.
David UNGER, Superintendent of Wyoming Correctional Facility, Respondent.
Frederic C. Carpenter, Jr., Petitioner,
v.
David Unger, Superintendent of Wyoming Correctional Facility, Respondent.

Nos. 9:10–CV–1240 (GTS/TWD),
9:12–CV–0957 (GTS/TWD).
|
Signed Aug. 20, 2014.

**Attorneys and Law Firms**

Frederic C. Carpenter, Jr., Cortland, NY, pro se.

Hon. Eric T. Schneiderman, Paul B. Lyons, Esq., Assistant Attorney General, Lisa Fleischmann, Esq., of Counsel, New York, NY, for the State of New York Counsel for Respondents.

***DECISION and ORDER***

GLENN T. SUDDABY, District Judge.

***1** Frederic C. Carpenter ("Petitioner") filed Petitions for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 in both of the above-captioned actions. By Report–Recommendation dated March 28, 2014, United States Magistrate Judge Thérèse Wiley Dancks recommended that both actions be dismissed pursuant to 28 U.S.C. § 2253(c)(2), and that a certificate of appealability not be issued with regard to any of Petitioner's claims. (Dkt. No. 52.) On April 23, 2014, Petitioner filed Objections to the Report–Recommendation. (Dkt. No. 55.) For the reasons set forth below, Magistrate Judge Dancks' Report–Recommendation is accepted and adopted in its entirety; both actions are dismissed; and a certificate of appealability not be issued with regard to any of Petitioner's claims.

## I. RELEVANT BACKGROUND

For the sake of brevity, the Court will not repeat the factual background of Petitioner's conviction of July 31, 2000, for rape in the second degree (Indictment 99–112), and his conviction of and March 30, 2000, for sexual abuse in the first degree (Indictment 98–82). Rather, the Court will simply refer the parties to the relevant portions of Magistrate Judge Dancks' Report–Recommendation, which accurately recite that factual background. (Dkt. No. 52, at Part II.)

### A. Petitioner's Claims

#### 1. Petitioner's Claims in Lead Case No. 9:10–CV–1240

Petitioner filed his original Petition in the lead case on October 18, 2010. (Dkt. No. 1.) He filed an Amended Petition in that case on August 20, 2012, asserting the following six claims: (1) a claim that his motion to withdraw his guilty plea under Indictment 99–112 and his motion to vacate his judgment of conviction under Indictment 98–82 were improperly denied in violation of the Fifth, Sixth, and Fourteenth Amendments; (2) a claim that the Government failed to disclose exculpatory evidence in violation of the Fifth, Sixth, and Fourteenth Amendments; (3) a claim that the trial judge violated Fed.R.Crim.P. 11(c)(1) by threatening Petitioner to accept the prior plea agreement, and defense counsel refused to provide legal advice causing Petitioner to enter an involuntary and unknowing guilty plea, in violation of the Fifth, Sixth, and Fourteenth Amendments; (4) a claim that Judge Smith lacked jurisdiction to compel Petitioner to withdraw his guilty plea under Indictment 99–112 as part of his plea in pending Indictment 98–82; (5) a claim that the Government's prosecutor improperly promised Petitioner that his postrelease supervision under Indictment 99–112 would run concurrently with his probation violation; and (6) a claim that Petitioner received ineffective assistance from Attorneys Butler and Adinolfi in violation of the Fifth, Sixth, and Fourteenth Amendments. (Dkt. No. 35, at "Ground One" Through "Ground Six.")

#### 2. Petitioner's Claims in Member Case No. 9:12–CV–0957

Petitioner filed his Petition in the member case on June 13, 2012, asserting the following four claims: (1) a claim that his guilty plea was not voluntary, knowing, and intelligent because he was coerced to plead guilty by Attorney Butler; (2) a claim that Petitioner was denied effective assistance of counsel by Attorney Butler; (3) a claim that Judge Ames improperly denied Petitioner a hearing on his Section 440.10 motion; and (4) the Appellate Division overruled the Judge's


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

denial of the Section 440.10 motion. (Dkt. No. 1, at "Ground One" Through "Ground Four.")

**B. Magistrate Judge Dancks' Report–Recommendation**

**1. Recommendations as to Lead Case (No. 9:10–CV–1240)**

***2** On March 28, 2014, Magistrate Judge Dancks issued her Report–Recommendation. (Dkt. No. 52.) Generally, in her Report–Recommendation, Magistrate Judge Dancks made the following seven recommendations: (1) that the Court deny Petitioner's claim that his guilty plea to rape in the second degree (Indictment 99–112) was not voluntarily, knowingly and intelligently made, because there is insufficient evidence in the state court record to overcome the strong presumption of verity of statements made by him in his plea allocution; (2) that the Court deny Petitioner's claim that Judge Smith violated Fed.R.Crim.P. 11(c)(1), because the statute does not apply to state court judges; (3) that the Court deny Petitioner's ineffectiveassistance-of-counsel claim, because he has failed to put forth evidence that Attorney Adinolfi's representation fell below reasonable standards or that he was prejudiced in any way; (4) that the Court deny Petitioner's claim that Judge Smith lacked jurisdiction to withdraw his motion, because Petitioner failed to include this claim in his direct appeal; (5) that the Court deny Petitioner's claim that the prosecutor improperly promised a concurrent sentence and probationary term in exchange for his guilty plea, because the state court transcript reveals that a concurrent probationary term was never discussed during Petitioner's plea hearing; (6) that the Court deny Petitioner's claim that prosecutors failed to turn over exculpatory evidence, because the claim is unexhausted and procedurally barred; and (7) that the Court deny Petitioner's claim that Judge Smith violated his due process rights by denying his motion to withdraw his guilty plea or failing to hold an evidentiary hearing, because the Court has determined that Petitioner's plea was voluntary and knowing. (*Id.* at Part III.)

**2. Recommendations as to Member Case (No. 9:12–CV–0957)**

Also in her Report–Recommendation of March 28, 2014 (Dkt. No. 52), Magistrate Judge Dancks made the following three recommendations with respect to Petitioner's claims in the member case: (1) that Petitioner failed to submit evidence to support the allegation that his guilty plea was coerced; (2) that, during his plea allocution before Judge Ames, Petitioner acknowledged he was ready to enter guilty plea, indicated he was satisfied with representation by counsel, and denied that he had been subjected to any acts of coercion or threats; and (3) that the trial court's denial of Petitioner's Section 440.10 hearing request does not constitute a violation of federal law, because procedural errors in post-conviction proceedings do not implicate federal law and thus, are not applicable to Section 2254 review. (*Id.* at Part IV.)

**C. Petitioner's Objections to the Report–Recommendation**

On April 23, 2014, Petitioner filed his Objections to the Report–Recommendation. (Dkt. No. 55.) Generally, in his 47–pages of Objections, Petitioner asserts a variety of factual and legal arguments, the "crux" of which is that Magistrate Judge Dancks erred by failing to cite, and "adhere to [the] mandates" of, *Massaro v. United States,* 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), which (he argues) requires that, before deciding his ineffective-assistance-of-counsel claim, the Court hold a hearing, to establish the off-the-record remarks made between Petitioner and Judge Smith and/or Attorney Adinolfi, before sentencing. (*Id.* at 6 [attaching page "2" of Petitioner's Supporting Affid.].)

**II. APPLICABLE LEGAL STANDARDS**

**A. Standard Governing Review of Report–Recommendation**

***3** When a *specific* objection is made to a portion of a magistrate judge's reportrecommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c).[1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[2] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.,* 04–CV–0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug.15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the

magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley,* 752 F.Supp.2d 311, 312–13 (W.D.N.Y.2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b)(2),(3); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[3] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*[4]

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

### B. Standard Governing Review of Petitioner's *Habeas* Petition

***4** Magistrate Judge Dancks has recited the correct legal standard governing review of Petitioner's *habeas* petition pursuant to 28 U.S.C. § 2254(d). (Dkt. No. 52, at Parts III.A. through III.C.) As a result, this standard is incorporated by reference in this Decision and Order, which is intended primarily for review of the parties.

## III. ANALYSIS

After carefully reviewing all of the papers in this action, the Court can find no error in Magistrate Judge Dancks' Report–Recommendation, clear or otherwise. Magistrate Judge Dancks employed the proper legal standards, accurately recited the facts, and correctly applied the law to those facts. (Dkt. No. 52, at Parts II through IV.) As a result, the Court accepts and adopts Magistrate Judge Dancks' Report–Recommendation in its entirety for the reasons stated therein. (*Id.*)

The Court will merely add a few brief observations regarding the primary argument in Petitioner's Objections. *See, supra,* Part I .C. of this Decision and Order. As an initial matter, the argument is sufficiently repetitive of arguments submitted to Magistrate Judge Dancks (*see, e.g.,* Dkt. No. 50, at 57 [attaching page "52" of Petitioner's Traverse] ) to subject the relevant portion of the Report–Recommendation to only a clear-error review (which it survives). *See, supra,* note 3 of this Decision and Order. In any event, the Court does not read Massaro as requiring a hearing in this circumstance. The Court notes that Petitioner's claims of off-therecord interactions with Attorney Adinolfi and/or Judge Smith (in addition to being wholly inconsistent with the record) are so unreasonably conclusory and/or incredible as to be facially invalid.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Dancks' Report–Recommendation (Dkt. No. 52) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that both of the above-captioned actions are ***DISMISSED;*** and it is further

**ORDERED** that a certificate of appealability shall not issue with respect to any of the claims set forth in the Petition, because Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).

### *ORDER and REPORT–RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

## I. INTRODUCTION

Petitioner Frederic C. Carpenter, Jr., a New York State prison inmate appearing *pro se,* has filed two timely petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] The proceedings were consolidated in July 24, 2012, Text Orders

in *Carpenter v. Unger,* No. 9:10–CV–1240 and No. 9:12–CV–957. [2]

In his Amended Petition in No. 9:10–CV–1240, Petitioner challenges the judgment of conviction entered in Broome County Court under Indictment No. 98–82, based upon his July 31, 2000, guilty plea to Rape in the Second Degree under N.Y. Penal Law ("Penal Law") § 130.30, as well as the judgment of conviction entered in Cortland County Court under Indictment No. 99–112, based upon his March 30, 2000, guilty plea to Sexual Abuse in the First Degree under Penal Law § 130.65. [3] (Dkt. Nos. 35 and 46–1 at 28.) [4] The Petition in No. 9:12–CV–957 is limited to the judgment of conviction under Indictment No. 99–112. (Dkt. No. 46 at 224; No. 9:12–CV–957, Dkt. No. 1.) For the reasons that follow, the Court recommends that Petitioner's Amended Petition in No. 9:10–CV–1240 (Dkt. No. 35) and his Petition in No. 9:12–CV–957 (No. 9:12–CV957, Dkt. No. 1) be denied.

## II. BACKGROUND

### A. Indictment No. 98–82

***5** In 1998, Petitioner was indicted for Sexual Abuse in the Second Degree, Penal Law § 130.60(2) (subjecting a person less than fourteen years old to sexual conduct); Rape in the Second Degree, Penal Law § 130.30 (a person eighteen or more engaging in sexual intercourse with a person to whom he is not married who is less than fourteen years old); and Endangering the Welfare of a Child, Penal Law § 260.10(1) (knowingly acting in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old, by subjecting the child to sexual intercourse). (Dkt. No. 46–3 at 253–55.)

Plaintiff entered a guilty plea to Rape in the Second Degree, Penal Law § 130.30, in satisfaction of the charges on July 31, 2000, before the Hon. Martin E. Smith, a Broome County Court Judge assigned to the case after Cayuga County Court Judge Emerson R. Avery, Jr. granted Petitioner's third motion for recusal on bias grounds. (Dkt. Nos. 46 at 298–299, 325; 46–1 at 28.) Judge Smith agreed to sentence Petitioner, adjudicated a second violent felony offender, to two to four years to run concurrently with a four to twelve year sentence Petitioner was already serving in connection with a probation violation. [5] *Id.* at 17–18; *see also* Dkt. No. 46 at 211, 214. Petitioner also agreed to waive his appeal rights. (Dkt. No. 46–1 at 17–18.)

### B. Indictment No. 99–112

On August 12, 1999, while the charges under Indictment No 98–82 were pending, Petitioner was indicted on charges of Unlawful Imprisonment Second, Penal Law § 135.05 (restraint of another person); Attempted Sodomy in the First Degree, Penal Law §§ 110.00 and 130.50 (attempting to engage in oral or anal sexual conduct with another person by forcible compulsion); Sodomy in the First Degree, Penal Law § 130.50(1) (engaging in oral or anal sexual conduct with another person by forcible compulsion); and Sexual Abuse in the First Degree, Penal Law § 130.65(1) (subjecting another person to sexual contact by forcible conduct), in connection with an incident involving his estranged wife. (Dkt. No. 46 at 7, 152–55.) At his March 30, 2000, plea allocution, Petitioner admitted that on March 26, 1999, he tied his wife's wrists together behind her back and had sexual intercourse with her against her will. *Id.* at 229.

Cortland County Court Judge William F. Ames agreed to sentence Petitioner to a determinate sentence of three years to run concurrently with the four to twelve year sentence Petitioner was already serving and any sentence imposed under Indictment No. 98–82, and five years post-release supervision; waiver of the right to appeal except as to certain issues; performance of an HIV test; waiver of a sex offender risk assessment hearing; and an order of protection in favor of the victim for six years. (Dkt. Nos. 46 at 223; 46–1 at 136–140, 149–150.)

### C. Petitioner's Dissatisfaction with Defense Counsel and Motion to Withdraw His Guilty Plea Under Indictment No. 99–112

***6** When Petitioner appeared for sentencing on his guilty plea under Indictment No. 99–112 on May 31, 2000, Matthew Butler, from the Butler Law Firm, appearing as Petitioner's counsel, informed Judge Ames that Petitioner wanted an opportunity to address the Court. (Dkt. No. 46 at 238.) Petitioner told Judge Ames that he had not been informed before pleading guilty that he would have to swear and lie under oath to take this plea. *Id.* at 238–39. When Judge Ames cautioned Petitioner that he should express his concerns through his attorney because anything he said could be used against him at trial were the plea vacated, Petitioner informed the Court that he had not heard from his attorney since he entered the guilty plea. *Id.* at 239.

Judge Ames adjourned the sentencing because Petitioner requested an opportunity to talk to his attorney, David Butler

("Butler"), also of the Butler Law Firm. (Dkt. No. 46 at 242.) On June 1, 2000, Public Defender David J. Adinolfi, II ("Adinolfi"), Petitioner's defense counsel on Indictment No. 98–82, wrote to Assistant District Attorney Wendy Franklin ("ADA Franklin") informing her that he had spoken with Petitioner and the Butler Law Firm, and was advised by Petitioner that if his guilty plea on Indictment No. 99–112 were vacated, Petitioner would accept: (1) an *Alford* plea relative to Indictment No. 99–112, conditioned upon the previously agreed three year determinate sentence to run concurrently with the probation violation sentence; and (2) a plea to Attempted Rape in the Second Degree relative to Indictment No. 98–82, conditioned upon a sentence of one and a half to three years to run concurrently with the terms imposed for the probation violation and under Indictment No. 99–112. *Id.* at 240, 242.

When Petitioner reappeared for sentencing before Judge Ames on June 2, 2000, accompanied by his attorney, Butler informed the court that Petitioner had been in contact with a number of attorneys and had advised Butler that he was not satisfied with the services he had rendered at the plea. *Id.* at 244. According to Butler, Petitioner had indicated to him that he wanted to terminate Butler's services and potentially make a motion to withdraw his guilty plea. *Id.* Petitioner told the Court he wanted time to obtain another attorney, most likely Adinolfi, and to discuss moving to withdraw the plea with him. *Id.* at 244–47. Judge Ames adjourned sentencing until July 5, 2000. *Id.* at 247–48.

ADA Franklin responded to Adinolfi's June 1 st letter on the following day after sentencing had been adjourned. *Id.* at 250–51. Franklin informed Adinolfi that the People would accept only the sentence agreed to at the time of the guilty plea on Indictment No. 99–112. With regard to Indictment No. 98–82, the District Attorney would accept a plea to Rape in the Second Degree, provided Petitioner agreed to a full allocution of the crime; three and a half to seven years to run concurrently with the probation violation sentence and any sentence on Indictment No. 98–82; waiver of appeal rights; HIV test; order of protection for the victim for ten years; and registration as a sex offender with a waiver of the right to a risk level hearing. (Dkt. No. 46 at 251.)

***7** Thereafter, on June 14, 2000, Adinolfi filed a motion to withdraw Petitioner's guilty plea under Indictment No. 99–112. *Id.* at 252. Adinolfi filed a supplemental motion to withdraw on June 29, 2010.[6] *Id.* at 258. According to Petitioner's moving papers, his family had retained Butler to represent him on Indictment No. 99–112 in 1999. *Id.* at 261. In February of 2000, when Petitioner's family could not meet Butler's demands for additional money, Butler cut off communications with Petitioner, leading him to contact the Public Defender's Office in March of 2000, to find out if Butler was still representing him.

Petitioner claims that on the date of the plea, Butler met with him in a holding room at the courthouse and told him he was going to plead him out because Petitioner could not pay him an additional $4,500. *Id.* In two heated conversations, Butler instructed Plaintiff to plead guilty to sexual abuse pursuant to a plea bargain Butler had worked out. *Id.* Butler told Petitioner that the terms of the plea bargain were a three year determinate sentence to run concurrently with his sentence for the probation violation, a six year order of protection for his wife, and waiver of the right to appeal. (Dkt. No. 46 at 262.) According to Petitioner, he was a nervous wreck and was very frightened when he appeared before the court because he felt betrayed by his attorney, who had been paid $8,000 to take the case to trial. *Id.* Petitioner claims that when he attempted to speak with Butler during the plea allocution, Butler repeatedly told him to shut up and answer yes to the Judge's questions. *Id.* Petitioner contends he entered the plea under duress and as the result of coercion, without effective assistance of counsel, even though he wanted to take the case to trial because he was innocent of the charges. *Id.* Petitioner believed that his estranged wife, the sole witness for the prosecution, had no credibility, and he himself had witnesses who would testify about being told by her that she was setting Petitioner up for a fall out of concern he would expose her drug use and drug dealing and obtain custody of their three infant children. *Id.*

In a July 5, 2000, appearance before Judge Ames, Adinolfi argued that Petitioner was entitled to a hearing on his motion under CPL § 220.60(3), while the People took the position that because the motion was made pre-sentencing, court review was confined to the plea record. *Id.* at 266–270. Judge Ames adjourned the motion and asked counsel to submit law on the hearing issue for his consideration. *Id.* at 271–72. The People submitted an affirmation and letter-memorandum of law in opposition to Petitioner's motion to withdraw his guilty plea on July 6, 2000. *Id.* at 275–281. Petitioner's counsel submitted case law to the court on July 11, 2000. *Id.* at 282.

On the adjourned date, Judge Ames referenced a letter he had sent to counsel informing them that he felt he could decide the matter on the papers and was inclined to grant the defense request to withdraw the guilty plea. *Id.* at 287. The People had

responded to Judge Ames' letter with a July 25, 2000, letter advising the Court of a change in position with regard to a hearing on Petitioner's motion and requesting that a hearing be held. (Dkt. No. 46 at 282–85.) When Petitioner's counsel asked Judge Ames to issue an order vacating the plea in accordance with his letter during the appearance, Judge Ames indicated that his letter was not an order as much as what he was thinking. ADA Franklin reiterated the People's request for a hearing and Judge Ames ultimately agreed that a hearing would be held. *Id.* at 287–88.

**D. Petitioner's Withdrawal of His Motion to Withdraw His Guilty Plea Under Indictment No. 99–112 and His Guilty Plea Under Indictment No. 98–82**

***8** On July 31, 2000, the parties appeared before Judge Smith for oral argument on the People's motion for re-argument and reconsideration of an adverse discovery order, and Petitioner's motions to dismiss Indictment No. 98–82 and for disclosure of records. (Dkt. No. 46 at 325–27.) During the course of oral argument, Judge Smith learned about Indictment No. 99–112 and Petitioner's pending motion to withdraw his guilty plea. (Dkt. No. 46–1 at 15–16.) The Judge thereupon told counsel he wanted to see them in chambers. *Id.* Following the in-chambers conference, Judge Smith called Petitioner up to the bench and informed him that during his discussion with counsel, a disposition of the case had been proposed to the Court. *Id.* at 17. The Judge told Petitioner that he had informed Petitioner's counsel that for purposes of plea negotiations and disposition, he would consent to the proposal. *Id.*

Judge Smith described the proposed disposition to Petitioner as follows:

> Mr. Carpenter, there's several things involved here. First of all, if you were to enter a plea of guilty under this indictment, 98–82, if you were to enter a plea of guilty to the second count of that indictment which charges you with rape in the second degree, you would receive a sentence as a second felony offender. I am advised you are a second felony offender and you've already been adjudicated the same. I would impose a sentence of two to four years. That sentence of two to four years would run concurrent to a sentence you're now serving on a violation of probation. It would also involve thirdly, you withdrawing a motion that has apparently been made on your behalf in front of Judge Ames where you entered a plea of guilty to sexual abuse in the first degree in satisfaction of an indictment that charges you with sodomy in the first degree and for which you're to receive a sentence of three years determinate. And that all three sentences would run concurrently; that is, they would run at the same time. And it would also, fourthly involve you withdrawing all motions filed in this particular case. Agreed. Is that fairly stated, Mr. Adinolfi?

(Dkt. No. 46–1 at 17–18.) Judge Smith indicated that under the plea agreement, Petitioner would also be required to give up his right to appeal under Indictment Nos. 98–82 and No. 99–112. *Id.* The Court asked Adinolfi if Petitioner was willing to do that and Adinolfi responded in the affirmative. *Id.* at 19. When Judge Smith asked Petitioner if that was correct, Petitioner also responded in the affirmative. *Id.*

Petitioner accepted the plea agreement as explained to him in court. *Id.* at 17–27. Because of the prior nature of the proceedings involving Petitioner, Judge Smith insisted that the plea be under oath. *Id.* at 19–20. In his plea allocution on Indictment No. 98–82, Petitioner admitted to having engaged in sexual intercourse with an under fourteen year old female visitor at his home in April of 1998. (Dkt. No. 46–1 at 24–25, 28.) He conceded that the victim's grand jury testimony that Petitioner sat on the couch with her, pulled down his pants and engaged in sexual intercourse with her involving some degree of penetration was correct. *Id.* at 27–28.

**E. Petitioner's Motion to Withdraw his Guilty Plea on Indictment No. 98–82 and Sentencing by Judge Smith**

***9** On August 14, 2000, Petitioner sent a letter to the State of New York Commission on Judicial Conduct ("CJC") complaining about Judge Smith.[7] (Dkt. No. 46–1 at 33–35.) Petitioner claimed that Adinolfi had told him that Judge Smith made an off the record statement that if Petitioner did not

accept the plea agreement on Indictment No. 98–82 the Judge would:

> use his "power" to have the Administrative Judge remove Judge Ames from the other pending case, and after removal, he would consolidate both cases for trial. Justice Smith said that if I was convicted of both Indictments, he would give me severe sentences to run consecutively, and to run consecutive to the current 4–to–12 year sentence. He also made it clear to my attorney that he would make sure that I didn't have appellate issues if convicted.
>
> *Id.* at 34. Petitioner wrote that he was coerced by Judge Smith's threats into pleading guilty to a felony even though he was innocent of the charge. *Id.*

Petitioner sent a copy of his letter to the CJC to Adinolfi and asked him to use the facts set forth in the letter to prepare a motion to withdraw his plea and recuse Judge Smith. *Id.* at 36. In an August 16, 2000, letter to Petitioner, Adinolfi responded: "It does not appear to me that there are any non-frivolous issues on which to file motions for recusal or withdrawal of your Guilty Plea. Attorneys are ethically obligated not to file frivolous motions, so we cannot file the motions you have requested unless there are some non-frivolous issues." *Id.* at 37.

On August 21, 2000, Petitioner wrote to Judge Smith to inform him that Adinolfi had told him he would not move to withdraw the guilty plea and recuse the Judge on Petitioner's behalf. *Id.* at 49. Petitioner requested that Judge Smith appoint a Syracuse, New York attorney to represent him. *Id.* In an August 22, 2000, affirmation in reply to Petitioner's written request to relieve the Cortland County Public Defender's as his assigned counsel, Adinolfi stated that Petitioner and the Public Defender's Office had reached an impasse with regard to strategy moving forward in the criminal cases in County Court. (Dkt. No. 46–1 at 55.) The specific nature of the impasse was described as the firm belief held by the Public Defender's Office that Petitioner's request that motions be filed for vacatur and recusal was not the correct strategy at that time. *Id.* Adinolfi also noted that Petitioner's allegation that Adinolfi could be a witness regarding his *pro se* motion for vacatur and recusal might have "some merit." *Id.* Adinolfi concluded that there was good cause for the Public Defender's Office to be relieved as counsel for Petitioner. *Id.* at 56.

On August 30, 2000, Plaintiff made a *pro se* motion for an order:

> (1) Recusing Hon. Martin E. Smith on the ground that he is hopelessly biased and prejudiced against Defendant—the Court coerced, directly and indirectly, Defendant to plead guilty on July 31, 2000, to the only count contained in the Indictment;
>
> ***10** (2) Vacating Defendant's plea of guilty entered on or about July 31, 2000, on the ground that said plea was induced by threats of Hon. Martin E. Smith;
>
> (3) Assigning new counsel to the Defendant on the ground that the Cortland County Public Defender recently filed and served an "Affirmation" seeking to be relieved.

*Id.* at 69. In his August 30, 2000, affidavit in support of his motion, Petitioner referenced an August 18, 2000, affidavit he had sent to Judge Smith reiterating the circumstances of alleged coercion and averring:

> 9. Lastly, I have resisted a plea bargain since 1998, and but for the threats conveyed by my attorney and but for the comments that this Court made in my presence, I wouldn't have been induced to plead guilty to a crime that I am absolutely innocent of. Commendably, my attorney worked extremely hard on the defense of this case and I do not think that he wanted me to plead guilty, however, he was duty-bound to convey to me what the Court had said. He left the decision up to me, but I was *scared to death* of serving *life in prison* for a crimes that I did not commit .... (emphasis in original)

(Dkt. No. 46–1 at 62–65.) Petitioner also included Adinolfi's August 22, 2000, reply affirmation in support of his motion. *Id.* at 75–76. The People opposed the motion in its entirety. *Id.* at 90–95.

Petitioner's sentencing was held before Judge Smith on September 11, 2000. (Dkt. No. 46–1 at 153–161.) Adinolfi appeared as Petitioner's counsel. *Id.* at 153. The habeas record does not reflect the issuance of an order on Petitioner's motion to withdraw his guilty plea. However, it is apparent from the


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

sentencing transcript that the motion was denied in full. *Id.* at 153–161. When asked by Judge Smith if he wanted to say anything before sentence was imposed, Petitioner stated that the hospital records provided by the People revealed no indication of rape, and he had only taken the plea because of the fear of consolidation of the two indictments before Judge Smith. *Id.* at 158. Petitioner was sentenced as a second felony offender to two to four years to run concurrently with the sentence for probation violation.[8] *Id.* at 158–62. After imposing sentence, Judge Smith stated:

> I note, Mr. Carpenter, what you've just said to the Court, and I also note, as I've already alluded to this morning, that I find it beyond coincidence that you would plead guilty to sex abuse in the first degree and seek to withdraw your plea, then file—enter a plea of guilty to rape in the second degree and seeking withdrawal of your plea. And the basis of your arguments with regard to both is you were forced into doing so by your counsel. And except when I put you under oath and you pled guilty, you told me, under oath, that did not occur, so that speaks greatly in this Court's mind to your credibility, and in short, you have none with this Court.
>
> > It strikes me that your tactics, personal, legal tactics throughout the course of these proceedings has been nothing more—I say these proceedings, by reference, I mean including the proceedings, indictment in front of Judge Ames—nothing more than an effort on your part to engage in dilatory tactics, that is keep putting it off, putting it off, and maybe it will go away. That's the only way I can figure this ended up being the oldest indictment in Cortland County. All that being said, sentence is imposed.
>
> ***11** (Dkt. No. 46–1 at 158–59.)

Plaintiff filed a timely notice of appeal from the judgment of conviction based upon his guilty plea on Indictment No. 98–82. *Id* . at 164.

### F. Petitioner's Sentencing on his Guilty Plea under Indictment No. 99–112

By the time Petitioner was sentenced by Judge Smith under Indictment No. 98–82, he had already been sentenced by Judge Ames under Indictment No. 99–112. (Dkt. No. 46–1 at 118–148.) Judge Ames noted at the outset of the September 6, 2000, sentencing that he had received copies of August 17 and 21, 2000, letters Petitioner had sent Judge Smith. (Dkt. No. 46–1 at 38–39, 49.) In the August 17th letter, Plaintiff had informed Judge Smith that he intended to move to withdraw his guilty plea under Indictment No. 98–82 and had included a draft affidavit. *Id.* at 40–43. The August 21 st letter was the one in which Petitioner sought to have Adinolfi replaced with a Syracuse attorney on Indictment No. 98–82. *Id.* at 49.

At the sentencing, both Petitioner and Adinolfi argued that Adinolfi should be replaced as Petitioner's counsel in both criminal proceedings because attorney and client had an irreconcilable conflict regarding strategy going forward, and Adinolfi could be a witness in a hearing on Petitioner's motion to withdraw his plea under Indictment No. 98–82. *Id.* at 119–21. Carpenter also argued that Adinolfi had been non-responsive to his telephone calls and letters subsequent to Petitioner's guilty plea on Indictment No. 98–82. (Dkt. No. 46–1 at 127–28.) The People argued against allowing Petitioner to replace Adinolfi, and Judge Ames denied the request, failing to see any conflict that would serve as an impediment to the sentencing under Indictment No. 99–112. *Id.* at 129–31.

Judge Ames also concluded that unless the plea in Indictment No. 98–82 was withdrawn by Judge Smith or overturned on appeal, he was bound by Petitioner's agreement to withdraw his motion to withdraw his guilty plea under Indictment No. 99–112. *Id.* at 124. As a result, whether or not the plea on Indictment No. 99–112 could be withdrawn hinged on what happened with Petitioner's motion to withdraw his guilty plea before Judge Smith—the motion that was subsequently denied by Judge Smith on September 11, 2000.

Finding no impediment to going forward with sentencing, Judge Ames sentenced Petitioner under Indictment No. 99–112 to a determinate term of three years and post-release supervision for five years, in accordance with the plea agreement under which Petitioner had pled guilty to Sexual Abuse in the First Degree. *Id.* at 132, 136. The three year sentence was made concurrent with the sentence being served for the probation violation and any sentence rendered on Indictment No. 98–82. *Id.* at 137. The sentence also included an order of protection in favor of petitioner's wife; an HIV test; certification as a sex offender; and a waiver of appeal except as to the limited issues for which there is always a right to appeal. *Id.* at 138–39.

***12** Plaintiff filed a timely notice of appeal from the judgment of conviction based upon his guilty plea in Indictment No. 99–112. *Id.* at 165.

**G. CPL § 440.10 Motions to Vacate Both Convictions**

In December of 2009, Petitioner filed a *pro se* motion pursuant to CPL § 440.10 to vacate the judgment of conviction under Indictment No. 99–112. (Dkt. No. 46–2 at 10–134.) Petitioner raised numerous grounds including ineffective assistance of counsel and a claim that the People had engaged in fraudulent and illegal plea negotiations that tricked him into waiving his right to trial against his will.[9] *Id.* at 11–12. In February of 2010, Petitioner filed a *pro se* motion under CPL § 440.10 to vacate the judgment of conviction with regard to Indictment No. 98–82. *Id.* at 136–230; Dkt. No. 46–3 at 2. Among the numerous grounds raised by Petitioner was a claim that his plea had not been voluntary, knowing and intelligent. *Id.* at 137. In his notice of motion, Petitioner indicated that he believed his new attorney, Michael Cardinale, Esq. ("Cardinale"), would be joining him on the motion. (Dkt. No. 46–2 at 136.)

It appears from the record that Petitioner's *pro se* § 440.10 motions were superseded by an April 6, 2010, counseled § 440.10 motion filed by Cardinale seeking to have both judgments of conviction vacated. (Dkt. No. 46–3 at 3–132.) The grounds raised for vacatur of Petitioner's guilty plea on Indictment No. 99–112 included: (1) the plea allocution was insufficient in that the Court improperly delegated its authority to conduct the plea allocution to the prosecutor; (2) the plea allocution was insufficient in that it failed to establish each element of the offense to which Petitioner pleaded guilty; (3) the guilty plea was not knowing and voluntary inasmuch as Petitioner was forced by his attorney to make admissions and plead guilty because his attorney had informed him that he would not be able to provide him with a zealous defense since his legal bill had not been completely paid; and (4) the Court represented that the five year period of postrelease supervision would run concurrently with the four to twelve year sentence for probation violation, when the law required that the period commence upon his release from imprisonment. (Dkt. No. 46–3 at 7–15.)

The grounds asserted for vacatur of Petitioner's guilty plea on Indictment No. 98–82 included that: (1) Judge Smith lacked jurisdiction to adjudicate matters relating to Indictment No. 99–112, *i.e.,* requiring Petitioner to withdraw his motion to withdraw his guilty plea in that case, because he was temporarily assigned from Broome County only to handle Indictment No. 98–82; (2) Petitioner's guilty plea was not knowing and voluntary because he did not know at the time he pleaded guilty on Indictment No. 99–112 that neither the Court nor the New York State Department of Corrections could enforce the five year post-release supervision period to run concurrently with the probation violation sentence; and (3) Petitioner's guilty plea was not knowing and voluntary because he was coerced to withdraw his motion to withdraw his guilty plea under Indictment No. 99–112 by the duress of the circumstances. *Id.* at 16–21.

***13** The counseled § 440.10 motion was denied by Judge Ames on May 10, 2010. *Id.* at 146–50. Judge Ames rejected Petitioner's two arguments that the guilty plea under Indictment 99–112 was insufficient on the grounds that a § 440.10 motion was not the proper method for challenging the sufficiency of a plea made on the record, and the arguments were in any event without legal merit. (Dkt No. 46–3 at 147.) Judge Ames also rejected Petitioner's claim that his guilty plea on Indictment 99–112 was not voluntary and resulted from coercion by Butler. The claim was rejected based upon Petitioner's failure to provide any supporting evidence, as well as Petitioner's affirmative response when asked during his plea allocution whether he was satisfied with the services provided by Butler. *Id.* at 148.

Petitioner's argument that he was not given the sentences promised him in his plea agreements under Indictment Nos. 98–82 and 99–112 because of the timing of post-release supervision was also rejected. *Id.* at 148–49. Judge Ames found the argument to be without merit because the plea transcript revealed that the Court had agreed only that the three year determinate sentence would be concurrent and also because the argument was one that should be asserted on a direct appeal. *Id.* at 149; *see also* Dkt. No. 46 at 226.

The County Court also rejected Petitioner's claims relating to his guilty plea under Indictment No. 98–82. Judge Ames rejected Petitioner's claim that Judge Smith was without jurisdiction to require him to withdraw his motion to withdraw his guilty plea under Indictment No. 99–112 on the grounds that a § 440.10 motion was not the proper method of challenging the sufficiency of a plea made on the record. Judge Ames rejected the claim on the further grounds that requiring Petitioner's withdrawal of the motion in Indictment No. 99–112 did not constitute an exercise of jurisdiction over Indictment No. 99–112 by Judge Smith. *Id.* Judge Ames also rejected Petitioner's post-release supervision claim asserted with respect to Indictment No. 98–82. (Dkt. No. 46–3 at 149–50.)

The Appellate Division denied Petitioner's application to appeal from the denial of his § 440.10 motion on July 28, 2010. (Dkt. No. 46–3 at 188.)

**H. Petitioner's Direct Appeal from Both Judgments of Conviction**

1. *Delay in Granting Petitioner's Application to Proceed as a Poor Person and Appointing Appellate Counsel so that His Direct Appeals Could Be Perfected*

Plaintiff filed timely notices of appeal from the judgments of conviction under Indictments Nos. 98–82 and 99–112. (Dkt. No. 46–1 at 164–65.) By letter of October 24, 2002, the Appellate Division Clerk's Office sent Petitioner an application to proceed as a poor person on his appeals. (Dkt. No. 46–2 at 73.) Petitioner completed and executed the application on October 31, 2002, and submitted it to the Clerk. *Id.* at 20, 79–80.

Petitioner wrote to the Clerk's Office on November 23, 2004, requesting the dates of motions and decisions involving him in that Court. *Id.* at 74. The Clerk's Office responded with information on filings and decisions. *Id.* None of the information appears to have related to Petitioner's appeals from the judgments of conviction. *Id.* Petitioner continued to communicate with the Clerk's Office regarding his appeals without success. On May 27, 2009, Petitioner sent a letter to the Clerk's Office indicating that he had filed two notices of appeal and the October 31, 2002, application to proceed as a poor person. *Id.* at 72, 76. Petitioner noted that a copy of the application had been provided to him with a May 10, 2006, letter from the Clerk's Office. *Id.* at 72, 75. He wrote "I have relentlessly over the years have written this court for an decision on this application and have been evaded from the truth." (Dkt. No. 46–2 at 72.)

***14** In an August 4, 2010, letter responding to a June 12, 2010, letter from Petitioner, the Assistant Deputy Clerk in the Clerk's Office informed Petitioner that they were in the process of reviewing Clerk's Office files in an attempt to clarify the circumstances of his poor person application dated October 31, 2002. (Dkt. No. 1–4 at 8.) The letter included a request for all of Petitioner's correspondence to the Clerk's Office over the years regarding his poor person application. *Id.* Finally, on September 28, 2010, the Clerk's Office sent Petitioner a letter, informing him that his application to proceed as a poor person was being submitted for consideration by the Court on October, 4, 2010. (Dkt. No. 1 at 75.) On November 4, 2010, more than ten years after Petitioner's convictions, the Appellate Division issued Orders granting Petitioner leave to proceed as a poor person on both of his direct appeals and appointing appellate counsel to represent Petitioner on the appeals. [10] (Dkt. No. 46–3 at 190–91.)

2. *Petitioner's Direct Appeal*

Petitioner's combined direct appeal to the Appellate Division appears to have been perfected in or about August of 2011. (*See* Dkt. No. 46–3 at 192–252.) The issues raised on appeal with regard to both cases were: (1) whether Petitioner's guilty pleas were entered into in a voluntary, knowing, and intelligent manner; (2) whether the trial courts erred by failing to grant Petitioner's motions to withdraw his guilty pleas, or at the very least holding hearings on the issue; and (3) whether Petitioner's former attorneys rendered ineffective assistance of counsel warranting vacatur of the guilty pleas. (Dkt. No. 46–3 at 193.)

The Appellate Division affirmed both judgments of conviction on March 8, 2012. *See* *People v. Carpenter,* 93 A.D.3d 950, 939 N.Y.S.2d 658 (3d Dept.2012). On Petitioner's arguments regarding his guilty plea on Indictment No. 98–82, the Appellate Division found that the record clearly reflected "a voluntary, knowing and intelligent plea without any indication of coercion," and concluded that the plea had been properly entered and that the County Court had not abused its discretion in denying Petitioner's motion to withdraw his guilty plea. *Id.* at 660. The Court also rejected Petitioner's claim that he was denied ineffective assistance of counsel, finding that "[t]he fact that counsel did not join in defendant's motion to withdraw the plea does not constitute ineffective representation." *Id.* Petitioner's remaining claims regarding ineffective assistance of counsel with respect to Indictment No. 98–82 were found to implicate matters outside the record that were more properly addressed in the context of a CPL Article 440 motion. *Id* .

Petitioner's claim that his plea under Indictment No. 99–112 was not voluntary was found to be unpreserved for appeal because Petitioner had withdrawn his motion to withdraw his guilty plea as a part of his plea agreement on Indictment No. 98–82 and had not moved to vacate the judgment of conviction. *Id.* The Appellate Court concluded that Petitioner's claim that he was denied effective assistance of counsel implicated the voluntariness of his plea, and because Petitioner failed to move to withdraw the plea or vacate the judgment of conviction, the claim was also

unpreserved for review. *Id.* Petitioner's claim that Butler failed to adequately communicate with him and pressured him into pleading guilty was found not to be a proper subject for direct appeal because it involved matters outside the record. *Id.* at 661.

***15** The issues identified for review in Petitioner's application for leave to appeal to the Court of Appeals included: (1) whether his guilty pleas were entered into in a voluntary, knowing, and intelligent manner; (2) whether the trial courts erred in failing to grant his motions to withdraw his guilty pleas; and (3) whether his attorneys rendered ineffective assistance of counsel. (Dkt. No. 46–4 at 301–02.) The Court of Appeals denied leave to appeal on May 18, 2012. *See Carpenter,* 19 N.Y.3d 863, 947 N.Y.S.2d 411, 970 N.E.2d 434 (2012).

### I. Amended Habeas Petition Relative to Indictment Nos. 98–82 and 99–112

Petitioner filed an Amended Petition in No. 9:10–CV–1240 after the Appellate Division affirmed the judgments of conviction under Indictment Nos. 98–82 and 99–112, and the Court of Appeals denied leave to appeal. [11] (Dkt. No. 35.) The grounds for relief raised by Petitioner in his Amended Petition are: (1) Petitioner's motion to withdraw his guilty plea before Judge Smith and his § 440.10 motion to vacate his judgments of conviction before Judge Ames were improperly denied in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the Constitution; (2) the People failed to disclose exculpatory evidence in violation of Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments; (3) the trial judge violated Federal Rule of Criminal Procedure 11(e)(1) during an in chambers conference with counsel by engaging in threats of retaliation if Petitioner did not accept the plea agreement being offered, and Petitioner's attorney subsequently refused to provide legal services to him allowing the court to impose its will on Petitioner by coercing him to enter a guilty plea that was not voluntary, knowing, or intelligent, in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments; (4) Judge Smith lacked jurisdiction to require Petitioner to withdraw his motion to withdraw his guilty plea under Indictment No. 99–112 as a part of his plea agreement on Indictment No. 98–82; (5) the prosecutor improperly offered inducements on which she could not follow through by promising Petitioner that the five year post-release supervision imposed as a part of his plea agreement under Indictment No. 99–112 would run concurrently with the four to twelve year sentence for probation violation; and (6) Petitioner was deprived of effective assistance of counsel by both Butler and Adinolfi in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments. (Dkt. No. 35 at 4–7.)

### J. Habeas Petition Relative to Indictment No. 99–112

The grounds for habeas corpus relief set forth in Petitioner's Petition in No. 9:12–CV–957 are: (1) Petitioner's guilty plea was not knowing, intelligent or wilfully made in that his attorney forced him to plead guilty by refusing to provide trial services and indicating that he would intentionally lose if he was forced to take the case to trial in violation of Petitioner's Fifth, Sixth, and Fourteenth Amendment rights; (2) Petitioner was denied effective assistance of counsel in connection with his guilty plea in violation of the Fifth, Sixth, and Fourteenth Amendments because his counsel refused to provide representation at trial as agreed and instead acted as an advocate for the prosecution by using threats, malicious promises, coercion, and duress to force Petitioner to plead guilty; (3) Petitioner was improperly denied a hearing relating to non-record events on the § 440.10 motion made prior to the time the Appellate Division ruled that certain matters raised on Petitioner's direct appeals should be heard on a § 440.10 motion, and as a result has been left without an opportunity to seek relief; and (4) the trial court erred in denying Petitioner a hearing on his § 440.10 motion despite acknowledging that there were witnesses to non-record events leading up to his involuntary plea, and the Appellate Division erred in failing to recognize that Petitioner had filed a § 440.10 motion. (No. 9:12–CV–957, Dkt. No. 1.)

## III. STANDARD OF REVIEW

### A. Exhaustion Requirement under the Antiterrorism and Effective Death Penalty Act of 1996

***16** The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs applications of incarcerated state court defendants seeking federal habeas corpus relief. *See* 28 U.S.C. § 2254. Before a federal court may consider an application for habeas corpus relief pursuant to 28 U.S.C. § 2254, the petitioner must generally have exhausted all the remedies available in the courts of the state in which he or she was convicted. [12] 28 U.S.C. § 2254(b)(1)(A); *see also Cullen v. Pinholster,* 563 U.S. ––––, ––––, 131 S.Ct. 1388, 1399 (2011) ("Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief."); *Jones v. Murphy,* 694 F.3d 225, 246–47 (2d Cir.2012), *cert. denied,* ––– U.S. ––––, 133 S.Ct. 1247, 185

L.Ed.2d 192 (2013) ("Under AEDPA, a prisoner in custody pursuant to a state court judgment must generally exhaust state court remedies before seeking federal habeas corpus review.").

"Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoner's federal rights." [13] *Cornell v. Kirkpatrick,* 665 F.3d 369, 375 (2d Cir.2011) (citation omitted); *Daye v. Attorney General of State of N.Y.,* 696 F.2d 186, 191 (2d Cir.1982) (*en banc* ) (proper exhaustion requires that both the factual and legal premises of claim be "fairly presented" to the state court). "Passage through the state courts, in and of itself, 'is not sufficient.' *Picard [v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) ]. To provide the State with the necessary 'opportunity,' the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and 'giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.' *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)." [14] *Wilens v. Superintendent of Clinton Correc. Fac.,* No. 11–CV–1938 (JFB), 2014 WL 28995, at *5, 2014 U.S. Dist. LEXIS 182111, at * 13 (E.D.N.Y. Jan.2, 2014). [15] Petitioner has the burden of proving exhaustion. *Colon v. Johnson,* 19 F.Supp.2d 112, 119–20 (S.D.N.Y.1998) (citations omitted).

A claim that was not fairly presented to the state courts and does not satisfy the requirements of 28 U.S.C. § 2254(b)(1) may still be "deemed" exhausted by the federal court in a habeas proceeding "if it is clear that the state court would hold the claim procedurally barred." *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991); *see also* *Clark v. Perez,* 510 F.3d 382, 390 (2d Cir.2008) ("when a petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the federal habeas court should consider the claim to be procedurally defaulted.") (citation and internal quotation marks omitted).

***17** If a claim is procedurally defaulted, a federal habeas court may not review the claim on the merits unless the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he or she can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A petitioner may demonstrate cause with "a showing that the factual or legal basis for a petitioner's claim was not reasonably available to counsel, ... or that some interference by state officials made compliance impracticable, ... [or that] the procedural default is the result of ineffective assistance of counsel." *Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). Only if a petitioner can establish cause will a court proceed to consider prejudice, which requires a showing of "actual prejudice resulting from the errors of which [petitioner] complains." *United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (internal quotation marks omitted). A fundamental miscarriage of justice involves showing that the petitioner is actually innocent of the crime. *Sweet v. Bennett,* 353 F.3d 135, 141 (2d Cir.2003).

### B. Mixed Petition

A habeas petition containing both exhausted and unexhausted claims is a "mixed petition." *Rhines v. Weber,* 544 U.S. 269, 271, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). When presented with a mixed petition, a federal court may stay the petition and hold it in abeyance to give the petitioner an opportunity to exhaust all of his claims in state court. *Id.* at 276–77. However, the court should only do so where it "determines there was good cause for the petitioner's failure to exhaust." *Id.* Otherwise, a federal court must dismiss a mixed petition in its entirety on exhaustion grounds, *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), or allow petitioner to withdraw the unexhausted claims. Rhines, 544 U.S. at 278. In addition, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." [16] 28 U.S.C. § 2254(b) (2); *see also* *Pratt v. Greiner,* 306 F.3d 1190, 1197 (2d Cir.2002).

Petitioner's habeas petitions are both mixed petitions containing exhausted and unexhausted claims. As discussed in detail below, because the Court finds Petitioner's unexhausted claims to be without merit, no recommendation will be made to either stay one or both of the petitions while Petitioner exhausts, or to dismiss the petitions in their entirety.

### C. Federal Habeas Corpus Review

Under the AEDPA, an application for a writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

***18** 28 U.S.C. § 2254(d). Recognizing the principle that "[s]tate courts are adequate forums for the vindication of federal rights...., AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow,* 571 U.S. ——, —— 134 S.Ct. 10, 15–16 (2013).

"For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). Where AEDPA's deferential standard of review applies, "[a] state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence." *Bierenbaum v. Graham,* 607 F.3d 36, 48 (2d Cir.2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 1693, 179 L.Ed.2d 645 (2011) (citing 28 U .S.C. § 2254(e)(1)). "[A] state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen,* 558 U.S. 290, 293, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010). Claims not adjudicated on the merits in state court are not subject to the AEDPA deferential standard of review and are reviewed *de novo. See Cone v. Bell,* 556 U.S. 449, 472, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009).

In determining whether a state court has adjudicated a claim "on the merits," a federal habeas corpus court must classify the state court decision as either (1) fairly appearing to rest primarily on federal law or to be interwoven with federal law; or (2) fairly appearing to rest primarily on state procedural law. *Jimenez v. Walker,* 458 F.3d 130, 145 (2d Cir.2006). Decisions in the first category are deemed to have been made "on the merits" of the federal claim. *Id.*

A decision "on the merits" is contrary to clearly established federal law when it is either contrary to Supreme Court precedent on a question of law or opposite to a relevant Supreme Court case with materially indistinguishable facts.[17] *Williams v. Taylor,* 529 U.S. 362,405–06 (2000). A state court unreasonably applies federal law when it correctly identifies the governing legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner. *Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). "It is settled that a federal habeas corpus may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.' "[18] *Nevada v. Jackson,* U.S., —— U.S. ——, ——, 133 S.Ct. 1990, 1992, 186 L.Ed.2d 62 (2013) (quoting *Harrington v. Richter,* 562 U.S. ——, ——,131 S.Ct. 770, 786 (2011)). Where a claim has been adjudicated on the merits by a state court, federal habeas review is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen,* 131 S.Ct. at 1398.

***19** Federal habeas corpus review is limited to determining whether petitioner is in custody in violation of the Constitution, laws, or treaties of the United States.[19] *See* 28 U.S.C. §§ 2241(c), 2254(a); *see also Wainwright v. Goode,* 464 U.S. 78, 83, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983) ( "[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."). Federal habeas relief does not "lie for errors of state law." *Swarthout v. Cooke,* —— U.S. ——, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Richter,* 131 S.Ct. at 786; *see also Jean v. Greene,* 523 F. App'x 744, 747 (2d Cir.2013) ("Under AEDPA, the deference we ascribe to the determination of the state court is 'high[ ],' and we must give the state court's decision 'the benefit of the doubt.' ") (quoting *Cullen,* 131 S.Ct. at 1398).

## III. ANALYSIS OF CLAIMS ASSERTED BY PETITIONER IN NO. 9:10–CV–1240[20]

**A. Claim that Petitioner's Guilty Plea to Rape in the Second Degree Under Indictment No. 98–82 was not Voluntarily, Knowingly, and Intelligently Made**

Petitioner claims that he was coerced into pleading guilty as a result of threats made by Judge Smith during an in-chambers plea discussion with counsel regarding Indictment Nos. 98–82 and 99–112. (Dkt. No. 35 at 4–5.) According to Petitioner, Adinolfi informed him of Judge Smith's threats, and the threats induced him to plead guilty. (Dkt. No. 46–4 at 54.)

Petitioner asserted the claim that his guilty plea under Indictment No. 98–82 was not voluntarily, knowingly, and intelligently made in his direct appeal. *Id.* at 234–37. Respondent has conceded that the claim was exhausted in state court .[21] (Dkt. No. 44 at 30.)

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient knowledge of the relevant circumstances and likely consequences.' " *Bradshaw v. Stumpf,* 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005) (citing *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).[22] "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). A guilty plea must be voluntary, knowing, and intelligent "because a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination." *Parke v. Raley,* 506 U.S. 20, 29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1973). "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."[23] *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

1. *Petitioner's Guilty Plea*

A court may determine whether a defendant knowingly and voluntarily entered into a plea bargain by, among other things, his allocution statements. *United States v. Torres,* 129 F.3d 710, 715 (2d Cir.1997). Sworn statements made by a defendant in entering a guilty plea carry "a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). "[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge in accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings" to withdraw the plea or vacate the judgment of conviction based on the plea. *Id.* at 73–74.

***20** On Petitioner's direct appeal, the Appellate Division rejected his contention that his guilty plea was not intelligent, knowing, and voluntary because it was procured by duress from Judge Smith, finding that "[w]ith regard to the 1998 indictment, the record clearly reflects a voluntary, knowing and intelligent plea without any coercion. In fact, defendant stated during the colloquy that he had not been threatened or coerced into entering his plea. Accordingly, we find that the plea was properly entered...." *Carpenter,* 939 N.Y.S.2d at 660. The record of Petitioner's plea allocution supports the conclusion reached by the Appellate Division.

Judge Smith fully explained the terms of the plea agreement to Petitioner. (Dkt. No. 46–1 at 17–20.) After Petitioner was sworn in, the Judge informed him that by pleading guilty he would be giving up his rights to a trial by jury, to call witnesses to testify on his behalf, and to present a defense, and asked Petitioner whether he understood the rights he would be giving up. *Id.* at 21–22. Petitioner responded in the affirmative. *Id.* at 22. Petitioner acknowledged that no one had promised him anything other than the sentences proposed under Indictment Nos. 98–82 and 99–112. *Id.* at 22–23. The record from Petitioner's July 31, 2000, plea allocution reveals that Judge Smith questioned him further and Petitioner responded as follows:

> Court: Has anybody threatened you, forced you, coerced you in any way in order to get you to plead guilty?
>
> Defendant: No, your Honor.
>
> Court: Are you telling me you're pleading guilty after having conferred with your attorney?
>
> Defendant: Yeah.
>
> Court: And this plea that you're entering freely and voluntarily, this is what you want to do?
>
> Defendant: Yes, your Honor.
>
> Court: And are you satisfied with the services of your attorney in this case?
>
> Defendant: Yes, your Honor.

Court: Do you understand that ... your plea of guilty will have the same legal effect, this will mean exactly the same thing as if you did go to trial on August 14th and as a result at the end of that trial, a jury found you guilty of this charge, do you understand?

* * *

Defendant: Yes.

Court: Do you also realize, sir, by pleading guilty you're going to be admitting to me on April 26th, 1998, in Cortland County you engaged in sexual intercourse with a female who was less than 14 years old, specifically-

* * *

Court: ... Those are the legal admissions you make if you plead guilty, you understand that?

Defendant: Yes, your Honor.

*Id.* at 23–25. After Petitioner responded in the affirmative to Judge Smith's question whether Petitioner admitted having sexual intercourse with the victim, the Court accepted his plea of guilty to rape in the second degree. [24] *Id.* at 28.

2. *Circumstances Surrounding Petitioner's Guilty Plea*

While the voluntariness of a guilty plea "can be determined only by considering all of the relevant circumstances surrounding it," *Brady,* 379 U.S. at 750, "[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Hirsch,* 239 F.3d 221, 225 (2d Cir.2001) (citation and internal quotation marks omitted).

***21** In support of his *pro se* motion to vacate his guilty plea under Indictment No. 98–82 on the grounds it was made under duress, Petitioner claimed that he had always resisted pleading guilty because he was innocent and had only done so because of Judge Smith's threats. (Dkt. No. 46–4 at 55.) However, in a letter to ADA Franklin, dated June 1, 2000, nearly two months before Petitioner's guilty plea, Adinolfi stated that Petitioner had indicated to him that he would plead guilty to rape in the second degree on Indictment No. 98–82, conditioned upon a sentence of one and a half to three years, to run concurrently with his sentences on the probation violation and Indictment No. 99–112. (Dkt. No. 46 at 240.)

At his September 11, 2000, sentencing, Petitioner claimed his innocence was established by the victim's hospital records which did not establish penetration and showed no semen, no hair, no sexually transmitted disease, no trauma, and no indication of rape. [25] (Dkt. No. 46–1 at 158.) However, the records did reflect the presence of sperm consistent with Petitioner's DNA on the victim's underwear. (Dkt. No. 46 at 32–33, 43–44.) In addition, the Appellate Division, in reinstating the second degree rape charge dismissed by Judge Avery, concluded that there was legally sufficient evidence before the grand jury to support the element of penetration required for a rape indictment. *People v. Carpenter,* 268 A.D.2d 798, 702 N.Y.S.2d 228, 229 (3d Dep't 2000).

Petitioner also contends that an affirmation submitted by Adinolfi following Petitioner's guilty plea under Indictment No. 98–82 supports his claim that he was coerced to plead guilty by Judge Smith's threats. [26] (Dkt. No. 50 at 10.) In the affirmation submitted by Adinolfi, in which he requested that the Public Defender's Office be relieved as counsel for Petitioner in both cases, Adinolfi identified as one reason for the request that "[t]he defendant also alleges, possibly with some merit, that your affiant could be a witness regarding some of the claims in his *pro se* motions for vacatur and recusal of Hon. Martin Smith." (Dkt. No. 46–4 at 59.) Petitioner has interpreted Adinolfi's statement as support for his claim that Judge Smith made threats during the in-chambers conference with counsel. (Dkt. No. 50 at 10.) However, it appears that in his affirmation Adinolfi went no further than to agree that there was some merit in Petitioner's argument that he might be a witness, not that he would testify that Judge Smith had issued threats. That limited interpretation finds support in Adinolfi's refusal to file a motion to withdraw Petitioner's guilty plea on Indictment No. 98–82 and to recuse Judge Smith because there were no "non-frivolous issues on which to file motions for recusal or withdrawal of [Petitioner's] Guilty Plea," and "[a]ttorneys are ethically obligated not to file frivolous motions." [27] (Dkt. No. 46–1 at 36–37.)

3. *Court's Recommendation*

Evidence supporting Petitioner's self-serving statements contradicting his plea allocution adequate to overcome the strong presumption of verity of statements made by him in his plea allocution, *see Blackledge,* 431 U.S. at 74, is clearly

missing from the state court record. There is nothing in the state court record or relevant law that would render the state court's determination on Petitioner's guilty plea so erroneous that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Richter,* 131 S.Ct. at 786. Therefore, the Court recommends that Petitioner's claim that his guilty plea under Indictment No. 98–82 was not voluntary, knowing, and intelligent be denied. [28]

**B. Claim that Judge Smith Violated Federal Rule of Criminal Procedure 11(c)(1) Prohibiting the Court From Participating in Plea Discussions**

***22** Petitioner claims that Judge Smith violated Federal Rule of Criminal Procedure 11(c)(1) by actively participating in the plea discussions, and that his coercive tactics forced Adinolfi to quit representing Petitioner and forced him to plead guilty to a charge of which he was innocent under Indictment No. 98–22 and to agree to the withdrawal of his motion to withdraw his pending guilty plea under Indictment No. 99–112. (Dkt. Nos. 35 at 5; 35–1 at 10–14.)

Rule 11(c) (1), governing guilty pleas, prohibits judicial involvement in plea discussions. *United States v. Davila,* 569 U.S. ——, ——, 133 S.Ct. 2139, 2146, 186 L.Ed.2d 139 (2013). "[T]he prohibition was included out of concern that a defendant might be induced to plead guilty rather than risk displeasing the judge who would preside at trial." *Id.* Rule 11(c)(1) was adopted as a prophylactic measure. *Id.* at 2149. The Rule was not "impelled by the Due Process Clause or any other constitutional requirement." *Id.* There is no clearly established federal law providing otherwise.

Furthermore, Rule 11(c)(1) does not apply to state court judges. *McMahon v. Hodges,* 382 F.3d 284, 289 n. 5 (2d Cir.2004). State court judges in New York are permitted to participate in plea negotiations with defendants. *Id.* (citing *People v. Fontaine,* 28 N.Y.2d 592, 319 N.Y.S.2d 847, 268 N.E.2d 644 (1971)); *see also Bivens v. Poole,* 302 F. App'x. 598, 599 (9th Cir.2008) ( "[T]here is no clearly established federal law, as determined by the Supreme Court of the United States, prohibiting a state court's participation in plea negotiations"). Inasmuch as federal habeas review is limited to whether petitioner is in custody in violation of the Constitution, laws, or treaties of the United States, which does not include Rule 11(c)(1), the Court recommends that Petitioner's claim for violation of the Rule be denied.

**C. Ineffective Assistance of Counsel Claim on Indictment No. 98–82**

Petitioner has asserted an ineffective assistance counsel claim with respect to Adinolfi's legal representation on Indictment No. 98–82. (Dkt. No. 35.) Petitioner claims that Adinolfi quit representing him and refused to provide him with legal services at the time he pleaded guilty under the indictment before Judge Smith, thereby allowing the Judge to force his will on Petitioner by forcing him to plead guilty. *Id.* at 5, 7; Dkt. Nos. 35–1 at 2–3, 12; 50 at 41–42, 44.

On his direct appeal, Petitioner claimed that Adinolfi had provided ineffective assistance of counsel by: "(1) advising him to accept the plea deal based upon Judge Smith's threats and his political power; (2) acting at cross-purposes with Mr. Carpenter when Mr. Carpenter moved to withdraw his guilty plea; and (3) failing to adequately communicate with him after Mr. Carpenter's guilty plea was entered." *Id.* at 247–249. The Appellate Division rejected Petitioner's contention that Adinolfi's refusal to join in Petitioner's motion to withdraw his guilty plea constituted ineffective representation. *Carpenter,* 939 N.Y.S.2d at 660.

***23** The Court found that the remainder of Petitioner's ineffective assistance claims with regard to Adinolfi implicated matters outside the record more properly addressed in a CPL Article 440 motion. *Id.* Petitioner did not assert an ineffective assistance of counsel claim in the counseled CPL § 440.10 motion made and denied before his direct appeal and has made no further CPL § 440.10 motions. (Dkt. No. 46–3 at 3–21, 52–53.)

Respondent has argued that Petitioner's ineffective assistance of counsel claim against Adinolfi is unexhausted except as to his claim that Adinolfi refused his request to move for withdrawal of Petitioner's guilty plea, which is exhausted. [29] (Dkt. No. 44 at 30.) Respondent asserts that Petitioner's claims that Adinolfi advised him to accept the plea deal based upon Judge Smith's threats and his political power and failed to adequately communicate with him after his guilty plea was entered, are unexhausted because Petitioner has not filed a CPL § 440.10 motion subsequent to his direct appeal. *Id.* at 34.

The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const., amend VI. "[T]he right to counsel is the right to the effective

assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The Sixth Amendment right to counsel extends to the plea-bargaining process and sentencing. *Lafler v. Cooper,* 566 U.S. ––––, ––––,132 S.Ct. 1376, 1384 (2012). To prevail on an ineffective assistance of counsel claim in connection with a guilty plea, a habeas petitioner must satisfy the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires a showing that his or her counsel's performance was deficient, and that the deficient performance caused actual prejudice to the petitioner. [30] *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

Recently, in *Titlow,* ––– U.S. ––––, 134 S.Ct. 10, 13, 187 L.Ed.2d 348 (2013), the Supreme Court, reiterated the requirement that federal courts use a " 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." (quoting *Cullen,* 131 S.Ct. at 1403. In *Richter,* ––– U.S. ––––, ––––, 131 S.Ct. 770, 786, 178 L.Ed.2d 624, addressing the *Strickland* standard and its relationship to the AEDPA, the Supreme Court explained:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [*Strickland* ], 466 U.S. at 688[ ]. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.,* at 689[ ]. The challenger's burden is to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.,* at 687[ ].
>
> ***24** With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Id.* at 693[ ]. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.,* at 687[ ].
>
> "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. [356, 371], 130 S.Ct. 1473, 1485[ ] (2010).... Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge..... The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom." *Strickland,* 466 U.S., at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult [because] the standards created by *Strickland* and § 2254(d) are both "highly deferential" ... and when the two apply in tandem, review is "doubly" so.... Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. (some internal citations omitted).

1. *Refusal to File a Motion to Withdraw Petitioner's Guilty Plea* [31]

Adinolfi refused Petitioner's request to file a motion to withdraw his guilty plea and for Judge Smith's recusal on Indictment No. 98–82 because in his opinion, the motion would be frivolous. (Dkt. No. 46–1 at 36–37.) Effective assistance of counsel does not require the filing of every possible motion, rather only those that have a solid foundation. *United States v. Nersesian,* 824 F.2d 1294, 1322 (2d Cir.1987). "Counsel is certainly not required to engage in the filing of futile or frivolous motions." *Id.; see also Aparicio v. Artuz,* 269 F.3d 78, 99 (2d Cir.2001) ("The failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which Petitioner was entitled.") (quoting *Strickland,* 466 U.S. at 690) (additional citation omitted); *United States v. Caputo,* 808 F.2d 963, 967 (2d Cir.1987) (holding that "trial counsel.. exercised sound professional discretion by declining to make a plainly frivolous suppression motion"); *Bristol v. Superintendent,* No. 9:04–CV–1230 (FJS), 2008 WL 2097160, at *14, 2008 U.S. Dist. LEXIS 40388, at *43 (N.D.N.Y. May 19, 2008) (counsel's performance cannot be deemed deficient for failing to bring a frivolous motion).

***25** Unlike this Court, Adinolfi was involved in all of the relevant proceedings regarding Petitioner's guilty plea, had knowledge of non-record based matters, interacted with Petitioner and opposing counsel in connection to the guilty

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

plea, and was present at the in-chambers conference in which Judge Smith allegedly made the threats that Petitioner contends forced him to plead guilty. Adinolfi was, therefore, in a better position than this Court to determine that the motion Petitioner wanted him to make to withdraw the guilty plea was frivolous. *See Richter,* 131 S.Ct. at 788 (explaining why counsel's knowledge of the relevant proceedings warrants a deferential standard of review of claims of ineffective assistance of counsel).

Furthermore, the state court record is devoid of evidence supporting Petitioner's conclusory assertion that Judge Smith issued threats that coerced him to plead guilty, or any other factually or legally supported rationale for allowing Petitioner to withdraw his guilty plea. In sum, the state court record supports a finding that "[Adinolfi] properly declined to join in [Petitioner's] *pro se* motion to withdraw his plea since the motion lacked merit, and appointment new counsel was not required." *See Hines v. Miller,* 318 F.3d 157, 161, 163 (2d Cir.2003) ("[T]he [Supreme] Court has never specifically addressed a claim ... that [a] petitioner was denied his right to counsel because he was effectively unrepresented on his motion to withdraw his plea ... or as a claim that petitioner was denied the effective assistance of counsel because an actual conflict of interest [during a motion for plea withdrawal] adversely affected counsel's performance.") Therefore, applying the "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt," *Cullen,* 131 S.Ct. 1403, the Court recommends that Petitioner's claim that Adinolfi's refusal to join him in moving to withdraw his guilty plea violated his Sixth Amendment right to counsel be denied.

2. *Ineffective Assistance of Counsel Claims that are Not Record Based*

"To properly exhaust an ineffective assistance of trial counsel claim that relies on evidence outside the pretrial and trial record ... the petitioner must raise it as part of a motion to vacate judgment under CPL § 440.10 and then seek leave to appeal to the Appellate Division."[32] *Griffin v. Suffolk County,* No. 13–CV–4375 (JFB), 2013 WL 6579839, at *3, 2013 U.S. Dist. LEXIS 176421, at *7 (E.D.N.Y. Dec.16, 2013). Petitioner's counseled § 440.10 motion did not include a claim of ineffective assistance of counsel against Adinolfi regarding his representation of Petitioner on his guilty plea under Indictment No. 98–82, or Adinolfi's alleged failure to communicate with Petitioner after the plea was entered. (Dkt. No. 46–3 at 7–21.)

Inasmuch as those ineffective assistance claims were not raised in the § 440.10 motion and were not decided on the merits on Petitioner's direct appeal because they were not recordbased, *Carpenter,* 939 N.Y.S.2d at 660, Respondent is correct that the claims have not been exhausted. (Dkt. No. 44 at 34.) The Court also agrees with Respondent that those claims are not procedurally barred in state court. CPL § 440. 10, the proper vehicle for challenging ineffective assistance of counsel claims that rely on evidence outside the record, has no statute of limitations. *See Griffin,* 2013 WL 6579839, at *3. Section 440.10(3)(c) does allows a state court to deny a motion to vacate a judgment where "[u]pon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so." However, since denial is discretionary, the provision does not impose an absolute bar on successive motions. *See Bravo v. Unger,* No. 10 CV 5659(VB), 2014 WL 201472, at *3, 2014 U.S. Dist. LEXIS 6349, at *9 (S.D.N.Y. Jan.16, 2014). Therefore, however unlikely, it is not impossible that a state court would consider a § 440.10 motion regarding Petitioner's non-record based claims of ineffective assistance against Adinolfi.

***26** Even though Petitioner's claim may not be procedurally barred, because Petitioner cannot satisfy either prong of the *Strickland* standard, the claim is plainly without merit. Therefore, the Court has concluded that granting a stay of Petitioner's habeas proceeding so that he can attempt to exhaust the claim in a state court § 440.10 motion would be inappropriate. *See Rhines,* 544 U.S. at 277 (staying a mixed petition when unexhausted claims are "plainly meritless" is an abuse of discretion); *Gantt v. Martuscello,* No. 9:12–CV–657, 2014 WL 112359, at *7, 2014 U.S. Dist. LEXIS 183258, at *18 (N.D.N.Y. Jan.10, 2014) (an unexhausted claim that is not procedurally barred because it could be presented in a state court § 440.10 motion should be dismissed if it is without merit rather than allowing a petitioner to pursue it).

In his plea allocution, Petitioner answered in the affirmative when asked if he was satisfied with the services of his counsel, stated under oath that he was pleading guilty freely and voluntarily and that no one had forced or coerced him into it, and admitted his guilt. (Dkt. No. 46–1 at 28.) *See Blackledge,* 431 U.S. at 74.

On his direct appeal, Petitioner argued that Adinolfi had rendered ineffective counsel by advising him to accept the plea agreement under Indictment No. 98–82 because of

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Judge Smith's threats. (Dkt. No. 46–3 at 247–48.) However, Petitioner's brief contains no citation to the record supporting the claim that Adinolfi advised him to plead guilty. *Id.* at 1–61. In his Amended Petition and supporting Memorandum of Law in proceeding No. 9:10–CV–1240, Petitioner claims that Adinolfi quit on him after relaying Judge Smith's threats, despite Petitioner begging him to defend him at trial, leaving Petitioner to fend for himself with regard to the guilty plea. (Dkt. Nos. 35 at 5; 35–1 at 12.) In his Traverse, Petitioner contends that Adinolfi forced him to plead guilty. (Dkt. No. 50 at 44.) Neither claim finds support in the state court record.

In fact, Petitioner's non-record based claims that Adinolfi either advised or forced him to plead guilty are contradicted by Petitioner's August 18, 2000, affidavit in support of his *pro se* motion to withdraw his guilty plea under Indictment No. 98–82. In the affidavit, Petitioner wrote that "[c]ommendably, my attorney worked extremely hard on the defense of this case and I do not think he wanted me to plead guilty, however, he was duty-bound to convey to me what the Court had said. He left the decision up to me but I was *scared to death* of serving *life in prison* for crimes that I did not commit." (emphasis in original). (Dkt. No. 46–1 at 65.) *See Harris v. Hulihan,* No. 11 Civ. 3019(RA) (NIHD), 2012 WL 5265624, at *14, 2012 U.S. Dist. LEXIS 152361, at *38 (S.D.N.Y. Aug. 8, 2012) ("any advice about the likelihood of prevailing at trial is an important part of the decision-making process related to a plea offer.").

***27** Petitioner's non-record based claim that Adinolfi quit on him at the time of the plea on July 31, 2000, is also contradicted by the state court record. Petitioner's August 14, 2000, letter to Adinolfi asking him to prepare a motion to vacate the guilty plea reveals that Petitioner still considered Adinolfi to be his counsel after the guilty plea. *Id.* at 36. In addition, Petitioner's August 17, 2000, letter to Judge Smith identifies Adinolfi as his counsel on Indictment No. 98–82. *Id.* at 38. Although Adinolfi declined to make the motion, the letters clearly contradict Petitioner's claim that Adinolfi quit representing him on the day of the plea. *Id.* at 37.

Even if Adinolfi did advise Petitioner to plead guilty, Petitioner has failed to establish that Adinolfi's representation in connection with his guilty plea fell below an objective standard of reasonableness, *see Strickland,* 466 U.S. at 687–88, because under the circumstances, the plea bargain was quite favorable to Petitioner. Petitioner had been indicted on multiple counts under Indictment No. 98–82, and his plea bargain allowed him to plead to only one charge, almost certainly reducing the prison sentence that would have been imposed had he gone to trial and been convicted on all counts. (Dkt. No. 46–3 at 253–55.) In addition, the plea bargain allowed Petitioner to serve his sentence concurrently with the four to twelve year sentence he was already serving on the probation violation and his sentence under Indictment No. 99–112. *See Belle v. Superintendent,* No. 9:11–CV–0657 (NAM), 2013 WL 992663, at * 13, 2013 U.S. Dist. LEXIS 34481, at *36–37 (N.D.N.Y. Mar.13, 2013) (the highly favorable outcome as a result of the plea agreement was found to belie petitioner's ineffective assistance claims).

Finally, even assuming, *arguendo,* that Adinolfi's performance fell below an objective standard of reasonableness, habeas relief would not be warranted because of Petitioner's failure to show prejudice. "In the context of a guilty plea, the defendant must show a reasonable possibility that but for counsel's errors the outcome would have been different—*i.e.,* the accused would not have pled guilty and would likely have been acquitted at trial, or would have received a significantly more favorable sentence." *Belle,* 2013 WL 992663, at * 13 (citing *Hill v. Lockhart,* 474 U.S. 52, 59–60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). Plea negotiations had been ongoing between Adinolfi and the prosecution prior to the time Petitioner pleaded guilty, and Petitioner's guilty plea was not significantly different than the plea proposal to which Carpenter had agreed according to Adinolfi's June 1, 2000, letter to ADA Franklin. (Dkt. No. 46 at 240, 242.) Furthermore, while conviction may not have been certain, the finding of Petitioner's sperm on the victim's underwear does not allow for a finding that he would likely have been acquitted, or would have received a more favorable sentence. Moreover, there is no indication in the state court record that even if Adinolfi did fail to communicate adequately with Petitioner following his guilty plea, that failure prejudiced Petitioner in any way.

***28** In light of the foregoing, the Court recommends that Petitioner's unexhausted ineffective assistance of counsel claims relating to Adinolfi's representation on Indictment No. 98–82 be dismissed as entirely without merit.

### D. Claim that Judge Smith Lacked Jurisdiction to Require Petitioner to Withdraw His Motion to Withdraw his Guilty Plea Under Indictment No. 99–112

In his counseled § 440.10 motion, denied by Judge Ames, Petitioner argued that because the order of assignment from the Sixth Judicial District assigned Judge Smith to

act as the County Court Judge solely for the purpose of handling Indictment No. 98–82, Judge Smith went beyond his geographic jurisdiction in requiring Petitioner to withdraw his pending motion to withdraw his guilty plea under Indictment No. 99–112 as a part of his plea agreement under Indictment No. 98–82. (Dkt. No. 46–3 at 15–18.) Petitioner claims that, as a result, his guilty plea is null and void. *Id.*

Petitioner asserted the claim only in terms of state law, and Judge Ames, in rejecting the claim on the merits, gave no indication the federal constitution was implicated. (Dkt. No. 46–3 at 149.) Judge Ames found in the alternative that the claim was record based and should be raised on direct appeal. Petitioner did not include the claim on his subsequent direct appeal. *Id.* at 192–252.

Proper exhaustion requires that a prisoner alert the state court to the federal nature of a claim, so that the state courts will have a full opportunity to resolve any constitutional issues. *O'Sullivan,* 526 U.S. at 845. Since Petitioner presented the jurisdiction argument solely in state law terms, he failed to exhaust the claim for purposes of federal habeas review. Furthermore, the claim would be found procedurally barred by the state court because it is record-based, and Petitioner has offered no justification for his failure to raise it on the direct appeal. *See Perez,* 510 F.3d at 390 (when state court would find a petitioner's unexhausted claim to be procedurally barred, the federal habeas court should consider it to be procedurally defaulted .) Petitioner has not demonstrated cause for the default, since there is no apparent reason in the state court record why the claim could not have been raised on his direct appeal. *Coleman,* 501 U .S. at 750. In addition, Petitioner has failed to establish actual innocence. *See Sweet,* 353 F.3d at 141.

Petitioner's jurisdiction claim is also without merit. “A violation of [a state's] laws allocating ... jurisdiction among its various counties does not create a federal constitutional issue. As we stated in *United States v. Mancusi,* 415 F.2d 205, 209 (2d Cir.1969), ‘no federal court to our knowledge has ever granted a writ where a state court's asserted lack of jurisdiction resulted solely from provisions of state law.’ ”[33] *United States ex rel. Roche v. Scully,* 739 F.2d 739, 741–42 (2d Cir.1984). Therefore, Judge Ames determination of Petitioner's jurisdictional claim on the merits was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, and the Court recommends that Petitioner's jurisdiction claim be denied.

**E. Claim that the Prosecutor Used Improper Inducements to Convince Petitioner to Plead Guilty on Indictment No. 99–112**

***29** Petitioner claims that the prosecutor used improper promises as inducements to convince him to accept a plea agreement under Indictment No. 99–112 in violation of his due process rights under the Federal Constitution. (Dkt. Nos. 35 at 6; 35–1 at 18–22.) The plea agreement provided for a three year determinate sentence and five years of post-release supervision. (Dkt. Nos. 46 at 226; 46–1 at 264.) Petitioner contends he was told that both the three year determinate sentence and the five year post-release supervision would run concurrently with the four to twelve year sentence he was serving for the probation violation and whatever sentence was imposed under Indictment No. 98–82, with the post-release supervision period beginning after three years even if he were still incarcerated. (Dkt. Nos. 35 at 6; 46–1 at 320.) Petitioner later learned that under New York law, the post-release supervision period would not commence until he was released from incarceration.[34] (Dkt. No. 46–1 at 319–321.) Petitioner's claim spills over to Indictment No. 98–82 by virtue of his assertion that when Judge Smith discussed the requirement that Petitioner withdraw his motion to withdraw his guilty plea under Indictment No. 99–112, he promised Petitioner that his sentence under that indictment would be three years determinate without a five year period of post-release supervision. *Id.* at 20–21.

Petitioner did not raise the post-release supervision claim on his direct appeal. (Dkt. No. 46–3 at 192–252.) Petitioner did, however, raise the claim with regard to both indictments in his counseled § 440.10 motion. Respondent has argued that Petitioner failed to exhaust his postrelease supervision claim because the claim was asserted solely in state law terms. (Dkt. No. 44 at 32.) While it is true that Petitioner's counsel cited only state court decisions, *People v. De Cresente,* 64 A.D.2d 746, 406 N.Y.S.2d 933 (3d Dep't 1978), one of those decisions, clearly employed a constitutional analysis, relying on the Supreme Court decision in *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), in which the Court held that “when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled.” Moreover, in his supporting affirmation, Petitioner's counsel, echoing *Santobello,* argued that “[w]here the Court is a party to the plea bargain agreement and the sentence promised is one in which the Court is ‘powerless' to impose, the Defendant

should be given the benefit of the promise or permitted to withdraw his plea." (Dkt. No. 46–3 at 14.)

Judge Ames concluded that Petitioner's argument with regard to his guilty plea and sentence on Indictment No. 99–112 had no merit because:

> The transcript of the plea clearly shows that the Court said, "I am agreeing that I would go along with a determinate sentence of three years in a New York State correctional facility, with five years post-release supervision ... and that the *determinate sentence* would run concurrent with, meaning together, with the sentence you are currently serving on a probation violation" (Emphasis added). The Court promised that the three year *determinate sentence* would run concurrent, not that the five years post-release supervision would run concurrent. The defendant received his bargained for sentence and was not promised anything different. [35]

***30** *Id.* at 148–49; *see also* Dkt. No. 46 at 226.

The Judge also found to be without merit Petitioner's claim that his guilty plea under Indictment No. 98–82 should be vacated because Judge Smith promised a sentence of only three years determinate under Indictment No. 99–112. (Dkt. No. 46–3 at 148–49.) The claim was rejected on the merits based upon the fact that Judge Ames, who accepted Petitioner's guilty plea and imposed sentence under Indictment No. 98–82, had told Petitioner on the record in sentencing him under Indictment No. 99–112 that the sentence included a five year period of post-release supervision. *Id.* at 149.

There is no clearly established Supreme Court precedent that requires a state court judge to advise a defendant of mandatory post-release supervision before accepting a guilty plea. *See Facen v. Cully,* 787 F.Supp.2d 278, 284–85 (W.D.N.Y.2011); *Potter v. Green,* 04–CV–1343 (JS), 2009 WL 2242342, at *6, 2009 U .S. Dist. LEXIS 64230, at *19 (E.D.N.Y. July 24, 2009) ("[A]s indicated by several other district courts in this Circuit, there is no clearly established Supreme Court precedent that requires a state court judge to advise a defendant of mandatory PRS [post-release supervision] before accepting a guilty plea."); *see also Lockhart v. Chandler,* 446 F.3d 721, 724 (7th Cir.2006) ("There is no Supreme Court precedent for the proposition that a defendant must be advised of a term of MSR [mandatory supervised release] at the time he attempts to enter a plea of guilty. Quite the contrary, the Court has expressly declined to decide such an issue in the very similar context of parole. Therefore, [petitioner] faces an impossible hurdle in showing the state contradicted, or unreasonably applied, clearly established federal law as determined by the Supreme Court because the Court has expressly declined to decide the issue.") (citing *Lane v. Williams,* 455 U.S. 624, 630 n. 9, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982) ("We do not decide whether, to establish such a constitutional violation, respondents must claim that they in fact did not know of the parole requirement at the time they pleaded guilty or that they would not have pleaded guilty had they known of this consequence.")).

Furthermore, the state court record, as Judge Ames indicated in his rejection of Petitioner's post-release supervision claim on the merits, does reveal that the Court clearly indicated to Petitioner that it was the three year determinate sentence under Indictment No. 99–112 that would run concurrently with the other sentences, not the five year post-release supervision sentence. (Dkt. No. 46 at 226.) Therefore, the state court record does not support Petitioner's claim that he was promised by Judge Ames that the post-release supervision period would commence running after three years even if he was still incarcerated, or that he was promised by Judge Smith that the post-release supervision period would not be a part of his sentence under Indictment No. 99–112.

***31** Given the absence of Supreme Court precedent supporting Petitioner's due process argument, and the state court record showing that Petitioner was not promised that the five year post-release supervision period imposed under Indictment No. 99–112 would run concurrently with his probation violation prison term, the Court recommends that Petitioner's post-release supervision claim be denied.

### F. Claim of Prosecutorial Misconduct on Indictment No. 98–82

Petitioner claims that the prosecutors delayed in turning over exculpatory evidence—hospital records that in Petitioner's eyes disproved penetration—which would have mandated an affirmance by the Appellate Division of Judge Avery's order dismissing the second degree rape claim against Petitioner in Indictment No. 98–82. [36] (Dkt. No. 35 at 4, 7–9.) Petitioner argues that the prosecutorial misconduct resulted in the violation of his due process rights under the Federal Constitution. *Id.* Petitioner did not include the claim in either his counseled § 440.10 motion or on his direct appeal. (Dkt. Nos. 46–3 at 3–21, 52–53; 46–3 at 192–252.) Therefore the

claim is unexhausted. However, the claim may be deemed exhausted and procedurally defaulted because it is clear that the state court would hold the claim procedurally barred. *See Perez,* 510 F.3d at 390.

Even if Petitioner had exhausted his prosecutorial misconduct claim on the merits, federal habeas review would be precluded under *Tollett v. Henderson,* 411 U.S. 258, 266, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). In *Tollett* the Supreme Court "reaffirm[ed] the principle recognized in the *Brady* trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. [37] When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offence with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann [v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).]" [38] *See also Coward v. Bradt,* No. 9:11–CV–1362 (LEK/CFH), 2013 WL 6195751, at *15, 2013 U.S. Dist. LEXIS 168931, *32 (N.D.N.Y. Nov.27, 2013) (claim of prosecutorial misconduct prior to guilty plea barred under *Tollett); McCormick v. Hunt,* 461 F.Supp.2d 104, 111 (W.D.N.Y. Nov.20, 2006) ("[I]t is well-settled that '[a] defendant who pleads unconditionally guilty while represented by counsel may not assert independent claims relating to events that occurred prior to the entry of the guilty plea' ") (quoting *United States v. Coffin,* 76 F.3d 494, 497 (2d Cir.1996)).

Given the foregoing, the Court recommends that Petitioner's prosecutorial misconduct claim be denied

### G. Claim Regarding Petitioner's *Pro Se* Motion to Withdraw his Guilty Plea Under Indictment No. 98–82

***32** Petitioner's Amended Petition can be liberally construed to assert a claim that Judge Smith violated his right to due process by denying his motion to withdraw his guilty plea under Indictment No. 98–82 or, at the very least, by not holding an evidentiary hearing. (Dkt. Nos. 35 at 4; 35–1 at 3.) Petitioner asserted the claim on his direct appeal, arguing that the motion should have been granted, or at least a hearing should be held because of: "(1) his prompt request to withdraw the plea; (2) the threats made by Judge Smith that induced Mr. Carpenter's guilty plea; (3) his continuous statements of innocence; and (4) Mr. Adinolfi acted at cross-purposes with him with regard to this motion." (Dkt. No. 46–3 at 241.) The Appellate Division found that "the plea was properly entered and that County Court did not abuse its discretion in denying the motion to withdraw his plea without a hearing." *Carpenter,* 939 N.Y.S.2d at 660.

On his direct appeal, Petitioner failed to fairly present the federal constitutional nature of his claim, relying instead on state law. [39] Therefore, Petitioner's claim is unexhausted and procedurally defaulted, and Petitioner has failed to show cause for the default or actual innocence. *See Coleman,* 501 U.S. at 750.

The claim is without merit in any event. The Court has rejected Petitioner's claim that his plea under Indictment No. 98–82 was not voluntary, knowing, and intelligent, *see* Part III. A, *supra,* and relies upon the same reasoning in rejecting his claim with regard to his *pro se* motion to withdraw his guilty plea. [40] Furthermore, both federal and state precedent have established that a criminal defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea. *See Hines v. Miller,* 318 F.3d 157, 162 (2d Cir.2003) (collecting cases); *see also Reed v. Brown,* No. 10 Civ. 3072(PGG)(AJP), 2011 WL 498363, at *8–9, 2011 U.S. Dist. LEXIS 14147, at *31–36 (S.D .N.Y. Feb. 14, 2011) (collecting cases). The Court concluded in *Hines* that in light of the precedents, the failure to hold an evidentiary hearing on a motion to withdraw a guilty plea "does not offend a deeply rooted or 'fundamental' principle of justice." *Id.* at 162. *See Medina v. California,* 505 U.S. 437, 442–46, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) ("[W]e should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion, and its decision in this regard is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.") (citations and internal quotation marks omitted).

Under AEDPA's deferential standards and the Supreme Court's decision in *Medina,* the Appellate Division's determination on Petitioner's direct appeal that the County Court did not abuse its discretion in denying Petitioner's request for a hearing on his motion to withdraw his guilty plea was not an unreasonable application of clearly


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

established federal law. Therefore, the Court recommends that Petitioner's claim that denial of a hearing violated his due process rights be denied.[41]

**IV. ANALYSIS OF CLAIMS ASSERTED BY PETITIONER IN NO. 9:12–CV–957**

***33** In his Petition in No. 9:12–CV–957, Petitioner claims that his guilty plea was not voluntary, knowing, and intelligent because he was coerced to plead guilty by Butler; that he was denied effective assistance of counsel in connection with the guilty plea for the same reason; that he was improperly denied a hearing on his § 440.10 motion; and that the Appellate Division effectively overruled Judge Ames' denial of a hearing on Petitioner's § 440.10 motion,[42] erred in failing to recognize that Petitioner had filed a § 440.10 motion, and erred in failing to decide his plea-coercion and ineffective counsel claims even though Petitioner had preserved his claims by bringing a § 440.10 motion to vacate his guilty plea.[43] (No. 9:12–CV–957, Dkt. Nos. 1 at 4–5; 1–2 at 6–7, 21–22, 25–26, 30.)

**A. Petitioner's CPL § 440.10 Motion**

In his counseled § 440.10 motion to vacate his guilty plea under Indictment No. 00–112, made by Petitioner prior to the perfection of his direct appeal, he asserted a claim that his guilty plea was not knowing and voluntary inasmuch he was coerced by Butler to make admissions and plead guilty.[44] (Dkt. No. 46–3 at 11–12.) Petitioner alleged that in non-record communications prior to the plea, Butler told him that because he owed Butler money and could not complete payments under the retainer agreement, Butler would not represent him zealously, would not prepare adequately, and would not provide a reasonable defense if the case went to trial. (Dkt. No. 46–3 at 52.) Judge Ames declined to hold an evidentiary hearing and denied the motion. *Id.* at 148, 150. The Appellate Division denied leave to appeal.[45] *Id.* at 188. One of the grounds asserted by Petitioner in his habeas Petition in No. 9:12–CV–957 is that his § 440.10 motion was improperly denied because Judge Ames declined to order a hearing on the non-record communications between Butler and Petitioner that coerced Petitioner to plead guilty under Indictment No. 99–112.[46] (No. 9:12–CV–957, Dkt. No. 1 at 5.) Respondent concedes that Petitioner has exhausted his claim that his guilty plea under Indictment No. 99–112 was not voluntary, knowing, and intelligent. (Dkt. No. 44 at 31.)

In *Word v. Lord,* 648 F.3d 129, 132 (2d Cir.2011), the Second Circuit held that "alleged errors in a postconviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post-conviction mechanism for seeking relief."[47] *See Lackawanna County Dist. Attorney v. Coss,* 532 U.S. 394, 402, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001) (holding that the Constitution does not compel states to provide post-conviction proceedings for relief).

In *Lord,* the Court also acknowledged that a majority of its sister courts had accordingly concluded that procedural errors in state post-conviction proceedings do not provide a basis for redress. *Id. See, e.g., Lawrence v. Branker,* 517 F.3d 700, 717 (4th Cir.2008) ("[E]ven where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error in state post-conviction proceedings represent an attack on a proceeding collateral to detention and not the detention itself."); *Bell–Rey v. Roper,* 499 F.3d 752, 756 (8th Cir.2007) ("Because the Constitution does not guarantee the existence of state post-conviction proceedings ... an infirmity in a state post-conviction proceeding does not raise an issue cognizable in a federal habeas application.") (citations and internal quotation marks omitted).

***34** A number of district courts in this Circuit have relied upon *Lord* in ruling that claims that a trial court erred in not granting a hearing on a post-conviction motion do not implicate federal law and are not cognizable for habeas review. *See Simpkins v. New York,* No. 13–CV–3228 (JG), 2013 WL 2948082, at *1, 2013 U.S. Dist. LEXIS 83998, at *2 (E.D.N.Y. June 14, 2013) (claim that petitioner was denied "fair process" on his application for a writ of *coram nobis* is not proper under § 2254, which is not a vehicle for challenging deficiencies in state court post-conviction proceedings); *Peters v. Poole,* No. 03–CV–2919 (ARR), 2013 WL 6048994, at *11, 2013 U.S. Dist. LEXIS 162231, at *29–30 (E.D.N.Y. Nov.13, 2013) (finding petitioner's claim that summarily denying his request for a hearing on his ineffective assistance of counsel claim in a § 440.10 motion violated his due process rights in a state post-conviction proceeding not cognizable on federal habeas review); *Smalls v. Bradt,* No. 11–CV–0915 (MAT), 2012 WL 3722222, at *10, 2012 U.S. Dist. LEXIS 121419, at *31 (W.D.N.Y. Aug.27, 2012) (petitioner's claim that state court erred in denying his request for a hearing on his CPL § 330.30 state postconviction motion does not implicate federal law and is not cognizable for habeas review); *Strong v. Warden, Attica Correctional Facility,* No.

10 CV 3452(MKB), 2012 WL 1886957, at *5, 2012 U.S. Dist. LEXIS 72114, at *15–16 (E.D.N.Y. May 22, 2012) (petitioner's claim of a procedural right to a hearing on a post-conviction motion under CPL § 330.30 does not implicate federal law and is not cognizable for habeas review).

Those decisions all appear to assume that denial of a hearing on § 440.10 is a procedural determination. There is, however, a split among district courts in the Second Circuit as to whether denial of a hearing on a § 440.10 motion is procedural, in which case under *Lord,* Petitioner's claim would not be cognizable for habeas review, or constitutes a determination on the merits for purposes of habeas review. In *Garcia v. Portuondo,* 104 F. App'x 776, 779 (2d Cir.2004), an unreported decision without precedential value, the Second Circuit held that the state court's refusal to hold a hearing on the defendant's § 440.10 motion was a determination on the merits and, therefore, not procedurally barred as an "independent and adequate state procedural ground" preventing habeas review absent a showing of cause and prejudice. *Id.* at 778. The Court's determination was based upon CPL § 440.30(4)(c), which provides that a court presented with a motion to vacate a judgment pursuant to § 440.10, "[u]pon considering the merits of the motion, ... may deny it without conducting a hearing if ... [a]n allegation of fact essential to support the motion is conclusively refuted by unquestionable documentary proof." CPL § 440.30(4)(c) (2005).

District courts are divided as to whether denial of § 440.10 motion under § 440.30(4)(b) also constitutes a determination on the merits. Section 440.30(4)(b), which although not specifically cited in Judge Ames decision denying Petitioner's motion appears applicable, provides that "[u]pon considering the merits of the motion, the court may deny it without conducting a hearing if ... the motion is based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts, as required by subdivision one." CPL § 430.30(4)(b) (2005). *See, e.g., Giraldo v. Bradt,* No. 11–cv–2001 (JFB), 2012 WL 3835112, at *8–9, 2012 U.S. Dist LEXIS 126083, at *25–26 (E.D.N.Y. Sept. 5, 2012) (applying the reasoning in *Garcia* to denial of a § 440.10 motion under § 440.30(4)(b) and finding denial of a hearing to be a determination on the merits); *Williams v. Duncan,* No. 9:03–cv–568 (LEK/RFT), 2007 WL 2177075, at *14, 2007 U .S. Dist. LEXIS 103100, at *40 (N.D.N.Y. July 27, 2007) (holding that because "section 440.30(4) applies, by its own terms, only when a trial court denies a motion to vacate '[u]pon a consideration of the merits,' a denial pursuant to CPL § 440.30(4) is a decision on the merits."); *compare Williams v. McGinnis,* No. 04 Civ 1005(NGG), 2006 WL 1317041, at *10, 2006 U.S. Dist. LEXIS 29400, at *31 (E.D.N.Y. May 15, 2006) (holding that denial under § 440.30(4)(b) would be an independent and adequate state law procedural grounds due to the inadequacy of petitioner's papers).

***35** In this case, because Petitioner's claim that his guilty plea under Indictment No. 99–112 plea was not voluntary, knowing, and intelligent, and his related ineffective assistance of counsel claim with it, fail on both procedural [48] and substantive grounds, it is not necessary for the Court to take a position on the issue of whether denial of a hearing is procedural or on the merits. *See White v. West,* No. 04–CV–2886 (RRM), 2010 WL 5300526, at *24, 2010 U.S. Dist. LEXIS 128500, at *69 (E.D.N.Y. Dec.6, 2010) (court found it unnecessary to take a position on the issue because petitioner's claim failed on both procedural and substantive grounds).

The evidence submitted by Petitioner in support of the claim that he was coerced by Butler to plead guilty under Indictment No. 99–112 and essentially abandoned by Butler, was limited to his self-serving affidavit and a letter affidavit from his grandmother who had personal knowledge of the financial situation with Butler, but no personal knowledge of Butler's alleged coercion. [49] (Dkt. No. 46–3 at 52–53, 55–56.) Thus, the moving papers failed to include "sworn allegations substantiating or tending to substantiate all the essential facts," CPL § 440.30(4)(b), lending support to Judge Ames' denial of the motion on the merits without a hearing.

Moreover, Petitioner's affidavit, accusing Butler of coercing him to plead guilty, directly contradicts his plea allocution. In his plea allocution before Judge Ames, Petitioner acknowledged that he was ready to enter a guilty plea to Sexual Abuse in the First Degree and answered Judge Ames' questions in the following manner:

> Court: Have you discussed this plea with your attorney?
>
> Defendant: Yes, your honor.
>
> Court: Are you entering this plea with his advice and consent?
>
> Defendant: Yes.

Court: Are you satisfied with the services provided to you by Mr. Butler?

Defendant: Yeah.

* * *

Court: Is there any reason why you do not understand what's happening here today?

Defendant: No.

Court: Do you understand if you enter this plea you are confessing your guilt to this charge?

Defendant: Yes, your Honor.

Court: This is a class D violent felony offense, do you understand that?

Defendant: Yeah, I'm aware of that.

Court: ... I am agreeing that I would go along with a determinate sentence of three years in a New York state correctional facility, with five years postrelease supervision ... and that that determinate sentence would run concurrent with, meaning together with the sentence you are currently serving on a probation violation.

* * *

Court: Have any other promises been made to you other than what's been put on the record here today?

Defendant: No.

* * *

Court: Do you understand by pleading guilty you are giving up your right to have a jury trial?

Defendant: Yes.

Court: ... Do you understand if I accept your plea of guilty you can't raise any of [your] defenses either to the court or to the jury, do you understand that?

***36** Defendant: Yes.

Court: You can't come back here in three or four weeks and say "I changed my mind, I now want to have a trial and assert defenses I want the jury or the court to hear," do you understand that?

Defendant: I understand that.

Court: Has anyone threatened you to get you to plead guilty today?

Defendant: No, your Honor.

Court: Are you pleading guilty to this crime of your own free will?

Defendant: Yeah.

(Dkt. No. 46–3 at 47.) During the plea allocution Petitioner admitted to having tied his estranged wife's hands behind her back against her will and having engaged in sexual intercourse with her. *Id.* at 44–45.

As previously noted, sworn statements made by a defendant in entering a plea carry a "strong presumption of verity," *Blackledge,* 431 U.S. at 74, and "[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *Torres,* 129 F.3d at 715. At his plea allocution, Petitioner expressed satisfaction with Butler's legal representation and clearly answered no when Judge Ames asked him if anyone had threatened him to get him to plead guilty.

In addition, the guilty plea entered into by Petitioner was favorable to him. Plaintiff was indicted on four felonies under Indictment No. 99–112 and was allowed to plead guilty to only one. (Dkt. No. 46 at 152–55.) He was also allowed to serve the three year sentence imposed concurrently with his sentences for probation violation and under Indictment No. 98–82.

Finally, even after Butler was replaced by Adinolfi, and Petitioner's motion to withdraw his guilty plea under Indictment No. 99–112 was awaiting a hearing before Judge Ames, Petitioner agreed to withdraw his motion to withdraw his guilty plea as a part of his guilty plea under Indictment No. 98–82. (Dkt. No. 46–1 at 17–19.) The Court has already recommended rejection of Petitioner's claims that his guilty plea under Indictment No. 98–82, including the withdrawal of his motion, was not voluntarily, knowingly, and intelligently

and was not made with the effective assistance of Adinolfi as counsel.

In light of the foregoing, the Court concludes that there is nothing in the state court record or applicable law that would render Judge Ames' decision on Petitioner's § 440.10 motion so erroneous that "there is no possibility fairminded jurists could disagree it conflicts with [the Supreme] Court's precedents," *Richter,* 131 S.Ct. at 786, as to either the voluntary nature of Petitioner's guilty plea or the effectiveness of Butler's representation. Therefore, the Court recommends that Petitioner's claim that his guilty plea under Indictment No. 99–112 was not voluntary, knowing and intelligent be denied, and to the extent his § 440.10 motion can be construed to assert an ineffective assistance of counsel claim, that claim be denied as well.

**B. Petitioner's Direct Appeal**

***37** Among the claims raised by Petitioner on his direct appeal included that his guilty plea under Indictment No. 99–112 was not voluntary, knowing, and intelligent because he was coerced to plead guilty by Butler, and that Butler had provided ineffective assistance of counsel with regard to the plea. *Id.* at 193. The claims were based upon essentially the same factual allegations as Petitioner's § 440.10 motion. The Appellate Division found the claims were unpreserved for review on the appeal because Petitioner had withdrawn his motion to withdraw his guilty plea and had not moved to vacate the judgment of conviction. *Carpenter,* 939 N.Y.S.2d at 660. The Court also concluded that the factual basis of Petitioner's claim that Butler failed to adequately communicate with him and coerced him into pleading guilty involved matters outside of the record and was not properly the subject of a direct appeal. [50] *Id.* at 660–61.

1. *Determination that Petitioner's Plea Coercion and Ineffective Assistance of Counsel Claims Were Not Preserved for Appellate Review*

It is well-settled that a petitioner's federal claim may be procedurally barred from federal habeas review if the state court resolved the issue on an "adequate and independent" state procedural ground. [51] *Coleman,* 501 U.S. at 729–33; *see also Cone,* 556 U.S. at 465. ("It is well established that federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment."); *Harris v. Read,* 489 U.S. 255, 260, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (when the state court has explicitly relied upon a procedural default to dispose of a claim, there is an "adequate and independent state ground" for the judgment and federal habeas review is prohibited").

A state procedural rule is considered adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir.1999). To be independent, "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 261–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (internal quotation marks omitted).

The doctrine barring procedurally defaulted claims from being heard is not without exceptions and does not apply if the petitioner can show either: (1) "cause for the default and actual prejudice" attributed thereto; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750. " 'Cause' requires a showing that 'some objective factor external to the defense impeded counsel's efforts to raise the claim in state court' or that the basis for a claim was not reasonably available to counsel." *Brown v. Bradt,* No. 11–CV–972 (GLS/CFH), 2013 WL 1636070, at *11, 2013 U.S. Dist. LEXIS 55058, at *33–34 (N.D.N.Y. Mar.25, 2013) (quoting *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 127 (2d Cir.1995)). Unless a petitioner establishes cause, the question of prejudice is not reached. *Cotto v. Herbert,* 331 F.3d 217, 242–43 (2d Cir.2003). To show prejudice, a petitioner must demonstrate that the error by the state court worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski,* 316 F.3d 147, 152 (2d Cir.2003) (internal quotation marks omitted). A fundamental miscarriage of justice involves showing that the petitioner is actually innocent of the crime. *Sweet v. Bennett,* 353 F.3d 135, 141 (2d Cir.2003).

***38** "In determining whether New York's preservation rule constitutes an adequate state ground, [courts] look to the state's statutes and case law interpreting the rule." [52] *Richardson v. Greene,* 497 F.3d 212, 218 (2d Cir.2007). New York courts have long relied on the preservation requirement to deny challenges to guilty pleas and claims of ineffective assistance of counsel. *See, e.g., People v. Pascale,* 425 N.Y.D.2d 547, 547 (1980) ("The argument that the defendant should be relieved of his guilty plea was not raised by motion

in the court of first instance prior to conviction and therefore has not been preserved for our review."); *see also* *People v. Jones,* 114 A.D.3d 1080, 981 N.Y.S.2d 465 (3d Dep't 2014) (claim that guilty plea was coerced by court's alleged threat to defendant to illegally sentence him was unpreserved because he withdrew his motion to withdraw his plea and the record did not reveal that he moved to vacate the judgment); *People v. Hernandez,* 110 A.D.3d 919, 972 N.Y.S.2d 697, 698–99 (2d Dep't 2013) ("The defendant's contention that her plea of guilty was not knowing, voluntarily, and intelligently entered into is unpreserved for appellate review, since she did not move to withdraw her plea on the ground prior to the imposition of sentence."); *People v. Bressard,* 112 A.D.3d 988, 976 N.Y.S.2d 302, 304 (3d Dep't 2013) (defendant's challenge to voluntariness of his guilty plea is unpreserved "because the record fails to indicate that he moved to withdraw his plea or vacate the judgment of conviction"); *People v. Carthage,* 85 A.D.3d 1198, 925 N.Y.S.2d 894, 895 (2d Dep't 2011) ("defendant's contention that his plea was not knowing, voluntary and intelligent is unpreserved for appellate review since he did not move to withdraw his plea on that ground prior to sentencing"); *People v. Finn,* 63 A.D.3d 755, 879 N.Y.S.2d 720, 720 (2d Dep't 2009) ("defendant's contention that his plea of guilty was not knowing, voluntary, and intelligent is unpreserved for appellate review since he did not move to withdraw his plea of guilty prior to sentencing"); *People v. Douglas,* 38 A.D.3d 1063, 831 N.Y.S.2d 585, 586 (3d Dep't 2007) ("Defendant's challenges to the validity of his plea and to the effectiveness of defense counsel's representation as it impacts the voluntariness of his guilty plea are unpreserved for our review given his failure to move to withdraw his plea or vacate the judgment of conviction.").

Habeas courts in this Circuit have recognized that failure to move to withdraw a guilty plea or move to vacate a judgment of conviction constitutes an independent and adequate state procedural rule barring federal habeas review. [53] *See, e.g., Rojas v. Heath,* No. 11 Civ. 4322(CS)(PED), 2012 WL 5878679, at *7, 2012 U.S. Dist. LEXIS 166853, at *21 (S.D.N.Y. Oct. 18, 2012) (well-settled that preservation of challenges to the validity of a guilty plea for appeal in New York requires a motion to withdraw the plea or motion to vacate the judgment of conviction); *Garcia v. Boucaud,* No. 09 Civ. 5758(RJH)(GWG), 2010 WL 1875636, at *6, 2010 U.S. Dist. LEXIS 142951, at *18 (S.D.N.Y. May 11, 2010) (failure to withdraw a guilty plea before sentencing constitutes an independent and adequate ground for the state court decision); *Moore v. Lape,* No. 08–CV–0474 (MAT), 2010 WL 3522227, at *3, 2010 U.S. Dist. LEXIS 93372, at *7 (W.D.N.Y. Sept.8, 2010) ("[h]abeas courts in this Circuit held have held that the failure to move to withdraw a guilty plea before sentencing constitutes an adequate and independent state ground barring habeas review.").

***39** This Court too concludes that the Appellate Division determination that Petitioner failed to preserve his challenge to his guilty plea under Indictment No. 99–112 and his related ineffective assistance of counsel claim constitutes a procedural bar to habeas review of the claims by this Court absent a showing by Petitioner of cause for the default and prejudice or his actual innocence. The Court also finds that the Appellate Division did not apply the preservation rule in an exorbitant manner in this case. [54]

Petitioner blames his failure to move to withdraw his guilty plea on his having been coerced by Judge Smith and Adinolfi into agreeing to withdraw his pending motion as a part of his plea agreement under Indictment No. 98–82, and on Adinolfi's ineffective assistance of counsel. However, the Court has rejected Petitioner's coercion claim under Indictment No. 98–82, as well as his claim that Adinolfi failed to provide effective assistance of counsel in connection with the plea, *see* Part III. A and C, *supra,* and likewise rejects the circumstances of Petitioner's guilty plea under that indictment as good cause for the default in moving to withdraw his guilty plea under Indictment No. 99–112. Furthermore, the Court finds that Petitioner has not provided evidence of his actual innocence. To the contrary, he admitted guilt in his plea allocution. (Dkt. No. 46–1 at 23–25.)

2. *Merits*

Were the Court permitted to address the merits of Petitioner's direct appeal claims of plea coercion and ineffective assistance of counsel, they would fail on the merits for the reasons set forth in Part IV. A, *supra.*

Therefore, the Court recommends that Petitioner's direct appeal claims be denied.

**ACCORDINGLY,** it is hereby

**RECOMMENDED** that Petitioner's Amended Petition for a Writ of Habeas Corpus in No. 9:10–CV–1240 (Dkt. No. 35) be **DENIED,** and it is further

**RECOMMENDED** that Petitioner's for a Writ of Habeas Corpus in No. 9:12–CV–957 (No. 9:12–CV–957, Dkt. No. 1) be **DENIED,** and it is further

**RECOMMENDED** that no certificate of appealability should be issued with respect to any of Petitioner's claims in Nos. 9:10–CV–1240 and 9:12–CV–957 as he has not made "a substantial showing of the denial of a constitutional right" pursuant to 28 U.S .C. § 2253(c)(2). *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000); and it is hereby

**ORDERED** that the Clerk's Office provide Petitioner with copies of all unpublished decisions cited herein.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

***40** Filed March 28, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4105398

## Footnotes

1 *See also Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

2 *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U.S. v. Raddatz,* 447 U.S. 667, 676, n. 3, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

3 *See Mario,* 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed.R.Civ.P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly–Rate Emp. Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady,* 09–CV–0924, 2010 WL 3761902, at *1, n. 1 (N.D.N.Y. Sept.20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue,* 07–

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

CV–1077, 2010 WL 2985968, at *3 & n. 3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole,* 04–CV–0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan.18, 2006) (Sharpe, J.).

4 *See also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

1 Respondent has conceded that both proceedings are timely. (Dkt. No. 44 at 29–30.)

2 Petitioner's first filed habeas corpus proceeding, *Carpenter v. Unger,* No. 9:10–CV1240, has been designated as the lead case, and the parties have been directed to file all papers in proceedings No. 9:10–CV–1240 and No. 9:12–CV–957 under No. 9:10–CV–1240. *See* Text Order of August 20, 2012, in *Carpenter v. Unger,* No. 9:10–CV–1240.

3 The Amended Petition is identified as having been filed solely to seek habeas relief with regard to Indictment No. 98–82. (Dkt. No. 35 at 1). The claims in the Amended Petition that relate to Indictment No. 99–112 arise out of Petitioner's agreement to withdraw his motion to withdraw the guilty plea entered on Indictment No. 99–112 as a part of his guilty plea under Indictment No. 98–82. *Id.* at 5–7.

4 Unless otherwise indicated, docket references made herein refer to No. 9:10–CV–1240.

5 Petitioner was originally sentenced to a term of probation on a charge of Criminal Possession of a Controlled Substance in the Fourth Degree, Penal Law § 220.09. (Dkt. No. 46 at 214, 204.) The substance involved was crack cocaine. *Id.* at 214. At a probation violation hearing in Cortland County Court on June 15, 1999, Petitioner was found to have violated the terms of his probation by continuing to use crack cocaine and given an indeterminate sentence of four to twelve years, with a minimum of four years to be served. *Id.* at 172–73, 206–07, 211.

6 Petitioner initially moved to withdraw his guilty plea under CPL § 440.10. (Dkt. No. 46 at 252.) Petitioner's counsel filed the supplemental motion after determining that because no sentence had yet been imposed or judgment of conviction had yet been entered, the motion was properly made under CPL § 220.60(3), which provides in relevant part that "[a]t any time before the imposition of sentence, the court in its discretion may permit a defendant who has entered a plea of guilty to the entire indictment or to part of the indictment, ... to withdraw such plea, and in such event the entire indictment, as it existed at the time of such plea, is restored."

7 Plaintiff sent more than one letter to the CJC complaining about Judge Smith and claiming he had been coerced into pleading guilty. (Dkt. No. 46–1 at 57–58, 114–16.)

8 Petitioner also waived his right to appeal as a part of his guilty plea. (Dkt. No. 46–1 at 161.)

9 Petitioner claimed that the plea was fraudulent and illegal because Judge Ames told him that he would agree to a determinate sentence of three years and five years of post-release supervision which would run concurrently with the four to twelve year sentence for probation violation. (Dkt. Nos. 46–2 at 14.) In August of 2008, after learning that pursuant to Penal Law §§ 70.30(1) and 70.45.5(a), post-release supervision had to be calculated to commence upon his release from prison and would not, as he had thought, commence running as soon as he had served the three year determinate sentence, even though he was still incarcerated, Petitioner sought relief from the timing of the post-release supervision first from Judge Ames (Dkt. No. 46–1 at 203) and later in a proceeding under New York Civil Practice Rule and Laws Article 78, both without success. *Id.* at 235–329.

10 One of the issues raised by Petitioner in his original Petition in No. 9:10–CV–1240, filed on October 18, 2010, was that he had been deprived of a timely direct appeal from the judgment of conviction on Indictment No. 98–

82. (Dkt. No. 1 at 4.) The Second Circuit has recognized that a failure to exhaust may be excused where there has been "a substantial delay in the state criminal appeal process." *Cody v. Henderson,* 936 F.2d 715, 718 (2d Cir.1991); *see* 28 U.S.C. § 2254(b)(1)(B)(ii) (excusing failure to exhaust where circumstances render state corrective process ineffective to protect rights of petitioner). The Court finds the ten year delay of Petitioner's direct appeal attributable to clerical errors in the Appellate Division Clerk's Office very disturbing. However, despite the delay, Petitioner did have the opportunity to seek review of non-record based claims under § 440.10 motion and ultimately to seek direct review of the record based claims on both indictments, including those claims Judge Ames had determined were record based and not the proper subject of Petitioner's § 440.10 motion.

11 The Court is mindful that, as with all *pro se* pleadings, a habeas corpus petition that is filed *pro se* must be construed liberally. *See Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir.1983).

12 Exhaustion may be excused where it appears that "there is an absence of available state corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." *See* 28 U.S.C. § 2254(b)(1)(B)(i)-(ii).

13 The ways in which a state defendant may fairly present to the state courts the constitutional nature of his or her claims include: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye v. Attorney. General of State of N.Y.,* 696 F.2d 186, 194 (2d Cir.1982).

14 Petitioner must seek discretionary review where it is available at the highest state court and raise the same federal constitutional claims. *O'Sullivan,* 526 U.S. at 847–48.

15 Copies of unreported cases cited herein will be provided to Petitioner. *See Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009).

16 In *Rhines v. Weber,* 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), the Supreme Court determined it would be an abuse of discretion to stay a mixed petition when the unexhausted claims are "plainly meritless."

17 "Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decisions.' " *Lockyer v. Andrade,* 538 U.S. 63, 71, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). "[F]ederal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller,* 289 F.3d 36, 42 (2d Cir.2002). "[C]ircuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court ... and cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews,* ––– U.S. ––––, 132 S.Ct. 2148, 2155, 183 L.Ed.2d 32 (2012) (citation and internal quotation marks omitted).

18 *See also Cullen,* 131 S.Ct. at 1399 (The § 2254(d) standard of review is a " 'difficult to meet,' *Harrington v. Richter,* 562 U.S. ––––, ––––, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011), and 'highly deferential standard' [which] demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam* ).").

19 Petitioner has the burden of proving by a preponderance of the evidence that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *see also* *Smalls v. Batista,* 191 F.3d 272, 278 (2d Cir.1999).

20 Petitioner has claimed in both of his habeas proceedings that his guilty plea under Indictment No. 99–112 was not voluntary, knowing, and intelligent, and that he was entitled to a hearing on the claim asserted in his counseled CPL § 440.10. The Court will address those claims in its analysis of the Petition filed under No. 9:12–CV–957.

21 On his direct appeal, Petitioner did not identify a specific constitutional right as the basis for his claim that his guilty plea was not voluntarily, knowingly, and intelligently made, nor did he cite federal case law employing constitutional analysis. Respondent's concession of exhaustion is based on Petitioner having asserted the plea-coercion claim in “terms that brought to mind federal constitutional rights.” (Dkt. No. 44 at 30.) *See* *Daye,* 696 F.2d at 194 (identifying “assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution” as a way to fairly apprise the state court of the constitutional nature of a claim). Because Respondent has unequivocally conceded exhaustion, the Court need not determine whether petitioner adequately alerted the state courts to the federal nature of his plea-coercion claim for purposes of habeas review. *See* *Cornell v. Kilpatrick,* 665 F.3d 369, 376–77 (2d Cir.2011) (where respondent unequivocally conceded, albeit erroneously, that a habeas petitioner exhausted a claim in the state courts, exhaustion is deemed waived and the claim may be considered on the merits).

22 The requirement that a guilty plea be a voluntary and intelligent choice derives from the Fifth Amendment privilege against compulsory self-incrimination. *See* *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

23 A guilty plea is not coerced because a defendant is confronted with the threat of conviction and a severe punishment. *See* *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (“While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas.”) (citation and internal quotation marks omitted).

24 Petitioner requested an opportunity to speak with his counsel privately before admitting that he had sexual intercourse with the victim. (Dkt. No. 46–1 at 26.) Judge Smith granted the request. *Id.*

25 Petitioner claims he never would have pleaded guilty if he had seen the medical reports on the victim. (Dkt. No. 50 at 21.) However, the hospital records were turned over to defense counsel in February of 2000, and Petitioner did not plead guilty until July 31, 2000. (Dkt. Nos. 46 at 72; 46–1 at 20–28.)

26 *See* *Brady v. United States,* 397 U.S. 742, 751–52, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (a guilty plea is constitutionally valid where it is “motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged.”); *see also* *Gaines v. Murray,* No. 03–CV–016A, 2008 WL 4890249, at *5, 2008 U.S. Dist. LEXIS 94809, at 15 (W.D.N.Y. Nov.12, 2008) (“Every defendant involved in plea negotiations suffers the threat of conviction (often of greater charges or with a greater penalty) and must face such ‘difficult choices.’ ”) (citing *Bordenkircher,* 434 at 364).

27 A statement made by Adinolfi at Petitioner's sentencing before Judge Ames under Indictment No. 99–112 on September 6, 2000, might arguably be construed as contradicting, in part, his letter of August 16, 2000, to Petitioner. (Dkt. No. 46–1 at 121.) In explaining why he believed there was a conflict of interest preventing him from continuing to represent Petitioner, Adinolfi stated that:

> [O]ne of the motions that Mr. Carpenter would like to make and which may have some merit, I would be a witness to it, a vacator motion before Judge Smith. Judge Smith in conference pretty much aligned that case, I believe its 98–82, with this case, 99–112, in that he was saying that if a plea was not entered in that court—in his court, and if vacator were granted in this court, he might take both cases and consolidate them for trial. And since as I guess I would likely be a witness to a vacator motion that Mr. Carpenter's succeeding assigned counsel would make, I can't be his attorney any more.

*Id.* at 121–22. Adinolfi did not, however, describe Judge Smith's indication that he might consolidate the two cases for trial as a threat to Petitioner, nor did he suggest that Judge Smith had made any threats that could be found to have coerced Petitioner to plead guilty against his will. *Id.*

28 *See United States v. Davis,* 48 F. App'x 809, 811 (2d Cir.2002) ("During his plea allocution, [defendant] admitted his guilt under oath and in his own words, and stated that his plea was free and voluntary, that no threats or untoward promises had been made to induce his plea, and that he was satisfied with advice of counsel.... Although since his guilty plea [defendant] has consistently protested his innocence of the charges [and claims his counsel coerced him to plead guilty], a claim of innocence [and coercion by counsel] is not a basis for withdrawing a guilty plea unless supported by evidence.").

29 In the brief filed on Petitioner's behalf on his direct appeal, the sole reference to a federal constitutional right to the effective assistance of counsel was the statement "[t]he right to effective assistance of counsel is guaranteed by both the federal and state constitution" followed by a citation to *People v. Baldi,* 54 N.Y.2d 137, 444 N.Y.S.2d 893, 897, 429 N.E.2d 400 (1981), in which the New York Court of Appeals acknowledged a right to the effective assistance of counsel under the Sixth Amendment. (Dkt. No. 46–3 at 244.) Petitioner's argument of the issue was couched in state law terms and relied solely upon New York cases analyzing the claim under New York law and the New York Constitution, with no mention of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and no application of the analysis to be applied to Sixth Amendment ineffective assistance of counsel claims set forth therein. Thus, there is some doubt in the Court's mind whether Petitioner fairly presented a federally based ineffective assistance of counsel claim regarding Adinolfi to the state court on his direct appeal. *See Cornell,* 665 F.3d at 376 ("mere mention of ineffective assistance of counsel ... without more was insufficient to alert the New York courts to the possible federal basis of the claim.") (citation and internal quotation marks omitted); *Gantt v. Martuscello,* No. 9:12–CV–657 (MAD/CFH), 2014 WL 112359, at *9, 2014 U.S. Dist. LEXIS 183258, at *18 (N.D.N.Y. Jan.10, 2014) (finding a failure to exhaust ineffective assistance of counsel claim where petitioner had relied upon state cases that did not employ a federal constitutional analysis and did not cite federal cases employing the relevant constitutional analysis). Nonetheless, because Respondent has conceded exhaustion as to Adinolfi's refusal to move to withdraw Petitioner's guilty plea, the exhaustion requirement will be deemed waived as to that claim. *See Cornell,* 665 F.3d at 376–77 (exhaustion is waived when respondent unequivocally concedes exhaustion).

30 "Counsel should be strongly presumed to have rendered adequate assistance and made all decisions in the exercise of reasonable professional judgment." *Strickland,* 666 U.S at 690.

31 In his Traverse, Petitioner denies he is challenging Adinolfi's refusal to move to withdraw his guilty plea under Indictment No. 98–82 in habeas proceeding No. 9:10–CV–1240. (Dkt. No. 50 at 48.) Because of Petitioner's *pro se* status and because the claim was raised on Petitioner's direct appeal, the Court nonetheless considers it.

32 Claims are record-based "when a reviewing court could conclude that defendant's counsel was ineffective simply by reviewing the trial record without the benefit of additional background facts that would need to be developed through a post-conviction motion pursuant to CPL § 440.10." *Chatmon v. Mance,* No. 07–CV–

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

9655 (KMK)(GAY), 2011 WL 5023243, at *9 n. 5, 2011 U.S. Dist. LEXIS 121453, at *26 n. 5 (Oct. 20, 2011) (citation and internal quotation marks omitted).

33 New York State Constitution Art. 6, § 11(a) provides in relevant part that "[t]he county court shall have jurisdiction ... over all crimes and other violations of law," thus giving Judge Smith subject matter jurisdiction over the criminal indictments at issue. Art. 6, § 26(c) provides that "a judge of the county court may perform, the duties of his office or hold court in any county and may be temporarily assigned ... to the county court ... in any county outside the city of New York...." Judge Smith was temporarily assigned to Cortland County to handle Indictment No. 98–82. Judge Ames noted in deciding Petitioner's § 440.10 motion that it was not unusual to settle multiple indictments in a comprehensive plea agreement even when the indictments involved different courts and different judges, and the fact that Petitioner withdrew his pending motion under Indictment No. 99–112 as a part of his plea under Indictment No. 98–82 did not mean that Judge Smith assumed jurisdiction over Indictment No. 99–112. (Dkt. No. 46–3 at 149.)

34 In his Memorandum Decision and Order in Petitioner's New York Civil Practice and Rules Article 78 proceeding challenging DOCCS' calculation of his sentence providing for the post-release supervision period to commence after Petitioner's release from prison, Acting Supreme Court Justice Mark H. Fandrich denied the petition on the grounds that under Penal Law § 70.30(1)(a), concurrent sentences are not served separately but made into one single indeterminate sentence, and pursuant to Penal Law § 70.45(5)(a), post-release supervision begins upon a person's release from imprisonment. (Dkt. No. 46–1 at 319–21.) The Appellate Division affirmed in *Carpenter v. Corcoran,* 75 A.D.3d 1110, 903 N.Y.S.2d 291 (4th Dep't), *lv. denied,* 79 A.D.3d 698, 912 N.Y.S.2d 291 (2010).

35 Judge Ames also found that with regard to the claim under Indictment No. 98–82, a § 440.10 motion was not the proper method of challenging the sufficiency of a plea made on the record. (Dkt. No. 46–3 at 149–50.) The Judge relied on CPL § 440.10(2)(c) which requires the court to deny a motion where sufficient facts appear on the record to have permitted an adequate review of the issue on appeal and the defendant unjustifiably failed to take or perfect an appeal. While the Second Circuit has held that a state court's reliance on CPL § 440.10(2)(c) constitutes an adequate and independent state ground precluding federal habeas review, *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997), because Petitioner's direct appeal was delayed for ten years through no apparent fault of his own, the Court finds that he has established cause for the procedural default, *see Coleman,* 501 U.S. at 750, and will consider Judge Ames' denial on the merits.

36 The claim that the prosecution engaged in misconduct by delaying the production of the victim's hospital records that showed no evidence of penetration is record based, and Petitioner did not include the claim in his direct appeal. Petitioner moved for a *subpoena duces tecum* to obtain the Cortland Memorial Hospital records relative to the criminal charges. *Id.* at 69–71. ADA Franklin responded with a February 23, 2000, letter to Adinolfi informing him that she did not realize until she reviewed the motion for a *subpoena duces tecum* that he had not received the hospital records. *Id.* at 72. According to the letter, copies of the records were enclosed. *Id.* In an April 21, 2000, Decision and Order, Judge Avery issued the requested *subpoena duces tecum* to the hospital. *Id.* at 122–25. The records were also produced by Cortland Memorial Hospital on May 12, 2000. *Id.* at 126–33.

37 The *Brady* trilogy includes *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

38 The evidence in the state court record supports the conclusion that failure to disclose the hospital records in a timely manner was an oversight rather than prosecutorial misconduct in any event. (Dkt. No. 46–72.)

39 Petitioner failed to cite federal or state cases employing constitutional analysis, failed to assert the claim in terms that called to mind a protected constitutional right, failed to allege a factual pattern well within the mainstream of constitutional litigation. *See Daye,* 696 F.2d at 194.

40 *See also United States v. Torres,* 129 F.3d 710, 715 (2d Cir.1997) ("A defendant's bald statements that simply contradict what he said at plea allocations are not sufficient grounds to withdraw the guilty plea."); *United States v. Bonilla,* 17 F. App'x 11, 13 (2d Cir.2000) ( "This Circuit has consistently affirmed denials of motions to withdraw guilty pleas when the defendant's allegations are directly contradicted by his clear statements at allocution that contained sufficient factual detail about the offense.") (citation and internal quotation marks omitted).

41 In his Amended Petition in No. 9:10–CV–1240, Petitioner also claimed that his constitutional rights were violated because Judge Ames failed to hold a hearing on his postconviction counseled § 440.10 motion that would have allowed Petitioner to question Adinolfi about the off-record events that led to his involuntary guilty plea under Indictment No. 98–82. (Dkt. No. 35–1 at 4.) However, the Petitioner's claim that his guilty plea under that indictment was not voluntary or knowing involved the five years of post-release supervision, which was record based. (Dkt. No. 46–3 at 18–20.) Since that claim was record based, there would have been no need for Adinolfi's testimony on a § 440.10 motion. *See also* Part IV. A, *infra,* supporting denial of the claim.

42 Although the Appellate Division found that Petitioner's coercion and ineffective assistance of counsel claims which implicated matters outside the record were more properly addressed in a § 440.10 motion, there is no language in the Court's decision either explicitly or impliedly overruling Judge Ames' denial of a request for a hearing. *See Carpenter* 93 A.D.3d 950, 939 N.Y.S.2d 658. In fact, Judge Ames' denial of Petitioner's § 440.10 motion was not before the Appellate Division for review on the direct appeal. *See People v. Finn,* 63 A.D.3d 755, 879 N.Y.S.2d 720 (2d Dep't 2009).

43 Even if Petitioner were correct in his claim that the Appellate Division erred in finding that he had not moved to vacate the judgment of conviction, and thus erroneously applied New York law with respect to the preservation rule, habeas relief does not lie for mere errors of state law that do not otherwise constitute a violation of federal law. *See Swarthout,* 131 S.Ct. at 861. Such errors must rise to the level of the federal constitution or federal law for habeas relief to lie. Petitioner's claim is without merit in any event. The non-record challenges to his guilty plea and legal representation in his § 440.10 motion were not before the Appellate Division on the direct appeal, and the record on that appeal would not have placed the Appellate Division on notice of the § 440.10 motion, on which the Appellate Division had previously denied leave to appeal. *See Finn,* 879 N.Y.S.2d at 720 (finding defendant's challenge to her guilty plea was unpreserved because she had failed to move to withdraw the plea prior to sentencing even though she had made a § 440.10 motion to vacate the judgment of conviction because that motion was not properly before the Appellate Division on the direct appeal). Furthermore, since the Petitioner was statutorily foreclosed from obtaining review of record based claims on his § 440.10 motion, see CPL § 440.10(2), that motion would not have given the state courts "one full opportunity" to resolve the Petitioner's record based claims of plea coercion and ineffective assistance of counsel as required for exhaustion. *See O'Sullivan,* 526 U.S. at 845. In addition, because Petitioner failed to include the claimed errors by the Appellate Division in his application for leave to appeal to the Court of Appeals, those claims are unexhausted, and Petitioner has failed to show good cause for failure to exhaust or actual innocence. *See DeLee v. Graham,* No. 9:11–CV–653 (MAD/CFH), 2013 WL 3049109, at *7, 2013 U.S. Dist. LEXIS 84519 ( N.D.N.Y. June 17, 2013) (claims petitioner failed to include in his application for leave to appeal to the Court of Appeals are unexhausted).

44 The § 440.10 motion can also be liberally construed to assert an ineffective assistance of counsel claim intertwined with Petitioner's coercion claim. However, the ineffective counsel claim was not fairly presented as a federal claim and, as argued by Respondent, is unexhausted. (Dkt. No. 44 at 34–35. *See Gantt,* 2014 WL 112359, at *9 (failure to exhaust ineffective assistance of counsel claim where petitioner did not employ

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

a federal constitutional analysis or cite federal cases employing relevant constitutional analysis). The claim is, in any event, without merit given Petitioner's plea allocution indicating he was satisfied with Butler and the lack of evidence in the state court record showing that Butler's representation fell outside of "the wide range of professionally competent assistance" to which Petitioner was entitled. *Strickland,* 466 U.S. at 690. Furthermore, the highly favorable outcome as a result of the plea agreement—allowing a guilty plea to only one of four charges and a concurrent sentence—belies Petitioner's claim of ineffective counsel. *See Belle,* 2013 WL 992663, at * 13.

45 "Although New York's Criminal Procedure Law does not provide for an appeal as a matter of right from a decision denying a motion pursuant to Section 440.10, an aggrieved defendant can apply for leave to appeal from such a decision to the Appellate Division." *Diaz v. Conway,* No. 04 Civ. 5062(RMB)(HBP), 2008 WL 2461742, at * 16, 2008 U.S. Dist. LEXIS 46808 (S.D.N.Y. June 17, 2008). As a matter of federal constitutional law, there is no right to appeal from collateral criminal proceedings such as a § 440.10 motion. *See, e.g., Murray v. Giarratano,* 492 U.S. 1, 10, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989).

46 Butler has also asserted a claim that he was unconstitutionally denied a hearing on the § 220.60(3) motion in Indictment No. 99–112 that he withdrew as a part of his guilty plea under Indictment No. 98–82. (Dkt. No. 1 at 5.) Since the Court has recommended that Petitioner's coercion and ineffective assistance claims with regard to Indictment No. 98–82 be denied, it finds that the withdrawal of his motion to withdraw his guilty plea moots his claim regarding his § 220.60(3) motion. *See also Hines,* 318 F.3d at 162 (both federal and state precedent have established that a criminal defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea).

47 Before, *Lord,* a number of district courts in the Second Circuit had concluded that "habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings." *Jones v. Duncan,* 162 F.Supp.2d 204, 217–18 (S.D.N.Y.2001) (denying habeas relief on a claim that the trial court failed to hold an evidentiary hearing); *see also, e.g., Ferrer v. Superintendent,* 628 F.Supp.2d 294, 309 (N.D.N.Y.2008) ("Federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.")

48 If Petitioner's hearing claim is deemed procedural, it fails under *Lord,* 648 F.3d at 132.

49 Petitioner has submitted a report by a Robert Frost, allegedly retained by the Public Defender's Office, regarding an interview with a corrections officer at Cayuga Correctional Facility in which the officer claimed to have overheard an argument between Petitioner and Butler when he was transporting Petitioner to court. (Dkt. No. 1–4 at 17.) The report does not appear to have been a part of the state court record and may, therefore, not be considered by the Court. *See Cullen,* 131 S.Ct. at 1398–1401. The report is not particularly probative in any event.

50 Respondent has conceded that Petitioner exhausted his claim that his guilty plea was not knowingly, voluntarily, and intelligently made because it was coerced by Butler. (Dkt. No. 44 at 31.) Respondent asserts, however, that because the Appellate Division found that Petitioner's ineffective assistance of counsel claim involved matters outside of the record and was, therefore, not properly the subject of a direct appeal, the claim is unexhausted. *Id.* at 34–35. Petitioner's ineffective assistance argument is also likely not exhausted because on the direct appeal the argument was couched in state law terms and relied solely upon New York cases analyzing the claim under New York law and the New York Constitution, with no mention of the *Strickland* standards. *See generally* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Gantt,* 2014 WL 112359, r at *9. Inasmuch as the claims are procedurally barred from federal habeas review in any event, the Court finds it unnecessary to engage in a detailed analysis of the exhaustion issue.

51 In *Trevino v. Thaler,* ––– U.S. ––––, 133 S.Ct. 1911, 1917, 185 L.Ed.2d 1044 (2013), the Supreme Court noted its recognition in *Martinez v. Ryan,* ––– U.S. ––––, 132 S.Ct. 1309, 1315–16, 182 L.Ed.2d 272 (2012)

of both the "historic importance of federal habeas corpus proceedings as a method for preventing individuals from being held in custody in violation of federal law," and the "importance of federal habeas corpus principles designed to prevent federal courts from interfering with a State's application of its own firmly established, consistently followed, constitutionally proper procedural rules."

52 New York's preservation rule at CPL § 470.05(2) "require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error ." *Richardson,* 497 F.3d at 218 (citation and internal quotation marks omitted)

53 As with state court decisions, some federal preservation decisions specify that under New York law challenges to guilty pleas must be made by a pre-sentence motion to withdraw the plea, while others require that guilty pleas be challenged in a motion to withdraw under CPL § 220.60(3) or a motion to vacate the judgment of conviction under CPL § 440.10.

54 In *Lee v. Kemna,* 534 U.S. 362, 376, 381, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002), the Supreme Court concluded that in a limited category of "exceptional cases," when the state appellate court has applied a firmly established and regularly followed procedural ground in an "exorbitant" manner, so that the application of the ground was inadequate, federal courts are not barred from reviewing such a claim on the merits. The Second Circuit, in *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003), identified the following three factors for consideration in making the determination: "(1) whether the alleged procedural rule was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had 'substantially complied with the rule give the 'realities of trial.' and, therefore, whether demanding perfect compliance with the rule would serve a legitimate state interest." The Court has considered these factors in concluding that the procedural bar was not exorbitant in this case.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 11401853
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Vinod PATEL, Petitioner,
v.
Superintendent D. MARTUSCELLO, Respondent.

10 CV 5695 (CBA)(LB)
|
Signed 05/12/2015

**Attorneys and Law Firms**

Vinod Patel, Woodbourne, NY, pro se.

Tammy J. Smiley, District Attorney's Office of, Donald J. Berk, Mineola, NY, Kings County District Attorneys Office, for Respondent.

**REPORT AND RECOMMENDATION**

BLOOM, United States Magistrate Judge

***1** Petitioner, Vinod Patel, files this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his Nassau County conviction on one count of rape in the first degree, two counts of criminal sexual act in the first degree, and incest in the third degree. The Honorable Carol B. Amon referred this petition to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the petition for a writ of habeas corpus should be denied.

**BACKGROUND**

In 2006, petitioner was indicted in Nassau County on one count of rape in the first degree, two counts of criminal sexual act in the first degree, and one count of incest in the third degree. (ECF No. 8-3, "Plea Minutes", 2.) On November 30, 2006, petitioner pled guilty to all four counts. (Id. at 16.) During the plea allocution, petitioner admitted that he engaged in sexual intercourse with his biological daughter on March 1, 2004, in Nassau County. (Id. at 14-15.) Petitioner also stated that on September 5, 2005, in Nassau County, "I engaged in sexual conduct with my daughter," specifically that he placed his penis in his eleven-year-old daughter's mouth. (Id. at 13-14.) Petitioner admitted that he repeated this conduct on October 5, 2005. (Id. at 14.) After reviewing with petitioner the rights he would be waiving by pleading guilty, [1] the state court explained that in exchange for petitioner's guilty plea, he would be sentenced to a fifteen-year definite term, which would run concurrently with any sentence imposed in petitioner's pending Queen's County criminal action, followed by five years of post-release supervision (PRS). (Id. at 8-9, 11.) In addition, petitioner's counsel stated on the record that the U.S. Attorney s Office for the Eastern District of New York had agreed not to prosecute petitioner for "crimes arising out of these incidents" if petitioner was sentenced to fifteen years in prison on this indictment. [2] (Id. at 3-5.) After petitioner acknowledged that he had engaged in sexual acts with his eleven-year-old daughter (Id. at 13-14), the Court accepted petitioner's guilty plea and found that petitioner's plea was "voluntary and of his own free will." (Id. at 15-16.)

At petitioner's sentencing hearing on January 11, 2007, Manjula Patel, petitioner's wife as well as the victim's mother, made a statement. (ECF No. 8-23, "S." at 6-10.) Ms. Patel acknowledged that her husband "may have created some weird pictures with my daughter," but stated that "my husband did not have sex with my daughter" and that her daughter had made false statements to the investigators and the court. (Id. at 8.) Attached to Ms. Patel's written statement was a series of letters written by petitioner's daughter [3] stating that she had made false statements to the investigator, that "My dad never raped me," and that the "tears and findings in my medical report were not caused by my father, but from my constipation problems and bike riding accident." (ECF No. 1, Pet., 38-43.) However, the daughter's letters admitted that her father had taken pictures with her. (Id.) In light of Ms. Patel's statement, the court asked petitioner if he would like to withdraw his plea. (S. at 10.) After consulting with his attorney, petitioner said "no," and re-affirmed his plea stating that "[i]t's easier on my family." (Id. at 11.) Petitioner was sentenced, as he had agreed, to a determinate sentence of fifteen years to be followed by five years of PRS on one count of rape. (Id. at 18-19.) Petitioner was also sentenced to a determinate sentence of fifteen years plus five years of PRS on each count of criminal sexual act in the first degree, and to an indeterminate sentence of one and a third years to four years on one count of incest, both to run concurrently with the sentence on the rape count. (Id. at 19.) Finally, the state court issued an order of protection that petitioner would have no contact with his daughter until March 2024, subject to modification by the family court. (Id. at 17-18.)

***2** On September 10, 2009, petitioner filed his first *pro se* motion to vacate the judgment pursuant to N.Y. Crim. Proc. Law § 440.10. (ECF No. 8-24.) Petitioner argued that he received ineffective assistance of counsel, that his guilty plea was not knowing, voluntary, and intelligent, and that the police violated his *Miranda* rights. (Id.) On February 19, 2010, the Nassau County Supreme Court denied petitioner's motion to vacate the judgment (ECF No. 8-6); the Appellate Division subsequently denied petitioner leave to appeal (ECF No. 8-18). Petitioner moved for reconsideration of the denial of leave to appeal (ECF Nos. 8-9), which was also denied (ECF No. 8-11.).

On October 30, 2009, while his *pro se* § 440.10 motion was pending before the trial court, petitioner, represented by counsel, pursued a direct appeal of his conviction on three grounds: (1) that his plea was not voluntary, knowing, and intelligent; (2) that his sentence was excessive and should be modified; and (3) that the durations of his PRS and order of protection are excessive. (ECF No. 8-12.) Petitioner also submitted a *pro se* supplemental appellate brief reiterating that his guilty plea was not knowing, intelligent, and voluntary, and further arguing that he received ineffective assistance of trial counsel, that the prosecutor engaged in misconduct, and that he was denied his right to a preliminary hearing, speedy indictment, and trial.[4] (ECF No. 8-14.) On June 15, 2010, the Appellate Division denied petitioner's direct appeal. People v. Patel, 904 N.Y.S.2d 99 (App. Div. 2010). It found petitioner's claim that his plea was not knowing and voluntary "unpreserved" and "in any event" without merit. Id. at 100. The Appellate Division also held that petitioner's sentence was not excessive and that the trial court properly exercised its discretion in determining the length of petitioner's PRS and order of protection. (Id.) Finally, the Appellate Division found petitioner's ineffective assistance of counsel claim procedurally barred or, in the alternative, dehors the record, and summarily dismissed the other claims raised in petitioner's supplemental *pro se* brief. Id. at 101. Petitioner sought leave to appeal,[5] (ECF Nos. 8-19), and the Court of Appeals denied petitioner's request (ECF No. 8-22).

Petitioner filed the instant petition for a writ of habeas corpus on December 2, 2010. On May 9, 2013, petitioner requested a stay of these proceedings to exhaust several claims in state court. (ECF No. 18, 21.) The Court granted petitioner's request for a stay and administratively closed this case. (ECF No. 22-23.)

***3** On March 28, 2013, petitioner filed his second motion to vacate the judgment pursuant to N.Y. Crim. Proc. § 440.10. In his *pro se* motion, petitioner argued: (1) there was no probable cause to arrest him which was in violation of *Dunaway* and in violation of the Fourth and Fourteenth Amendments; (2) the criminal court should have conducted a probable cause determination because the felony complaint was uncorroborated and unsigned; (3) he was not informed of the nature of the charge in violation of the Sixth Amendment; and (4) the trial court should have conducted an evidentiary hearing on his first § 440.10 motion to explore his ineffective assistance of counsel claim. The Nassau County Supreme Court denied the motion to vacate and the Appellate Division denied leave to appeal. On July 11, 2014, the Court lifted the stay on this petition and allowed petitioner to file an amended petition, which he did on July 29, 2015. (ECF No. 35.) As petitioner incorporates his original petition by reference, the Court considers all claims raised in the original and amended petitions as well as all papers submitted by respondent in opposition and by petitioner in reply. (ECF Nos. 8, 10, 41, 49, 50.)[6] The amended petition thus raises all the grounds petitioner raised on direct appeal and in his post-convictions motions.

## DISCUSSION

### I. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, the reviewing court may only grant a habeas petition if petitioner's claim "was adjudicated on the merits in State court proceedings" and the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). An " 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, *and* (2) reduces its disposition to judgment.' " Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (quoting Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

A state court decision is "contrary to" clearly established federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' ' the state court arrived at an opposite result. Evans v. Fischer, 712 F.3d 125, 132 (2d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The Court cautions, however, that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410; see also Gravton v. Ercole, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable."). A federal habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

## II. State Law Claims

***4** Federal habeas review is limited to whether petitioner is in custody "in violation of the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 2241(c), 2254(a); see also Wainwright v. Goode, 464 U.S. 78, 83 (1983) ("[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."). "Federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (internal quotation marks omitted); see also Howard v. Walker, 406 F.3d 114, 121 (2d Cir. 2005) ("A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.").

Petitioner's claim that he was denied his right to a preliminary hearing and speedy indictment pursuant to N.Y. Crim. Proc. Law § 180.80 is a state law claim that is not cognizable on habeas review. See Strong v. Mance, 9:07-CV-0878 (NAM/GHL), 2010 U.S. Dist. LEXIS 39575, at *21 (N.D.N.Y. Apr. 2, 2010) ("there is no federal constitutional right to a preliminary hearing"); Alston v. Giambruno, 06-CV-6339(MAT), 2009 U.S. Dist. LEXIS 119045, at *15 (W.D.N.Y. Dec. 21, 2009) (stating that a violation of "§ 180.80 does not present a federal constitutional question"). Petitioner's speedy trial claim pursuant to N.Y. Crim. Proc. Law § 30.30 is also a state law claim for which habeas relief is unavailable. See Cooke v. Graham, 06-cv-3053 (DLI)(RER), 2009 U.S. Dist. LEXIS 89445, at *18 (E.D.N.Y. Sept. 28, 2009) (finding petitioner's speedy trial claim based on § 30.30 "not cognizable on federal habeas review"); Wilson v. Goord, No. 00 Civ. 4849 (LTS), 2004 U.S. Dist. LEXIS 1513, at *14 (E.D.N.Y. Feb. 6, 2004) (stating that petitioner "fail[s] to raise a constitution claim that is cognizable on federal habeas corpus review" where he "refers only to his statutory speedy trial right" under § 30.30).

## III. Exhaustion & Procedural Bar

A federal court may not grant a writ of habeas corpus unless a petitioner has exhausted the remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A). A petitioner exhausts state court remedies by fairly presenting each federal claim for relief to the highest state court capable of review. Baldwin v. Reese, 541 U.S. 27, 29 (2004); Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2005). "The purpose of the exhaustion requirement is to ensure that a state court is given the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.' " Jackson, 404 F.3d at 618 (quoting Pickard v. Connor, 404 U.S. 270, 275 (1971)). Consistent with this principle, "a state prisoner [must] present the state courts with the same claim he urges upon the federal courts." Pickard, 404 U.S. at 276.

Federal courts also have no authority to review state court decisions that rest upon independent and adequate state law grounds. Lee v. Kemna, 534 U.S. 362, 375 (2002); see also Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment 'rests on a state law ground that is independent of the federal question and adequate to support the judgment' ....") (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). "The rule applies with equal force whether the state-law ground is substantive or procedural." Lee, 534 U.S. at 375 (citing

Coleman, 501 U.S. at 729); accord Whitley v. Ercole, 642 F.3d 278, 285 (2d Cir. 2011). Federal habeas review of a claim is foreclosed where the state court has expressly relied on the petitioner's procedural default as an independent and adequate state law ground. Green, 414 F.3d at 294; Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). A petitioner may, nevertheless, obtain federal habeas review of a procedurally defaulted claim, if petitioner demonstrates either "cause for the default and prejudice," or that "failure to consider the claims will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Coleman, 501 U.S. at 748-50).

### IV. Guilty Plea & Ineffective Assistance of Counsel

#### A. Independent & Adequate State Law Ground

***5** Respondent argues that petitioner's instant challenge of his guilty plea is procedurally barred because the Appellate Division determined that the claim was "unpreserved for appellate review since [petitioner] failed to move to withdraw his plea." Patel, 904 N.Y.S.2d at 100 (citing N.Y. Crim. Proc. Law § 470.05(2)). Although New York's preservation rule is an independent state law ground, the Court "must still determine whether that state procedural ground is adequate to support the judgment" in this specific case. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006). "A state procedural bar is 'adequate' if it 'is firmly established and regularly followed by the state in question' in the specific circumstances presented in the instant case." Murden v. Artuz, 497 F.3d 178, 192 (2d Cir. 2007) (quoting Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006)). In determining adequacy, "[t]he relevant question is not whether the state court was 'right or wrong' in its decision, but rather whether its holding had a 'fair or substantial basis in state law.' " El Rhagi v. Artuz, 309 F.3d 103, 107 (2d Cir. 2002) (quoting Garcia v. Lewis, 188 F.3d 71, 77-78 (2d Cir. 1999)); accord Pocesta v. Bradt, 11-cv-916(ARR), 2012 U.S. Dist. LEXIS 140919, at *19-20 (E.D.N.Y. Sept. 27, 2012). [7]

Pursuant to N.Y. Crim. Proc. Law § 470.05, " '[i]n order to preserve a challenge to the factual sufficiency of a plea allocation there must have been a motion to withdraw the plea ... *or* a motion to vacate the judgment of conviction.' " People v. Louree, 869 N.E.2d 18, 21 (2007) (emphasis added) (quoting People v. Lopez, 525 N.E.2d 5, 6 (N.Y. 1986)); see also People v. Griffin, 899 N.Y.S.2d 771, 773 (App. Div. 2010) (finding petitioner's challenge to his guilty plea preserved "because it was raised in defendant's CPL 440.10 motion"); People v. McQueen, 868 N.Y.S.2d 421, 422 (App. Div. 2008) ("defendant's challenge to the voluntariness of his plea has been preserved for our review by his motion to vacate the judgment of conviction"). Therefore, although petitioner failed to move to withdraw his plea, he complied with the procedural rule and preserved his claim by raising it in his § 440.10 motion. Accordingly, the Appellate Division's finding of procedural bar does not preclude federal habeas review in this case. See Ariola v. LaClair, 07-CV-57 (GLS /VEB), 2008 U.S. Dist. LEXIS 109248, at *19 (N.D.N.Y. Feb. 20, 2008) (finding no procedural bar where petitioner's § 440.10 motion, broadly construed, challenged the voluntariness of his plea); see also Silverman v. Edwards, 69 Fed.Appx. 489, 491 (2d Cir. 2003) (reaching the merits of petitioner's claim after concluding that the Appellate Division "unevenly applied" the state procedural bar).

#### B. Merits

Although the Appellate Division found petitioner's claim to be procedurally barred, the Appellate Division also held that "[i]n any event, the record of the plea proceeding establishes that the plea was knowing and voluntary." Patel, 904 N.Y.S.2d at 100. The state court's alternative holding is an adjudication on the merits that is entitled to deference under the AEDPA. [8]

***6** A guilty plea waives important constitutional rights and thus is only valid if entered " 'voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences.' " Hanson v. Phillips, 442 F.3d 789, 798 (2d Cir. 2006) (quoting Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005)). To satisfy due process, "[a] guilty plea must be a 'voluntary and intelligent choice among the alternative courses of action open to the defendant.' " Wilson v. McGinnis, 413 F.3d 196, 198-99 (2d Cir. 2005) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). "A plea is 'intelligent' and 'voluntary' when a defendant had the advice of counsel, understood the consequences of his plea and the plea was not physically or mentally coerced." Heron v. New York, 98 Civ. 7941 (SAS), 1999 U.S. Dist. LEXIS 18907, at *12 (S.D.N.Y. Dec. 7, 1999) (citing Parke v. Raley, 506 U.S. 20, 20 (1992)). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " Hill v. Lockhart, 474 U.S. 52,


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

56 (1985) (citing McMann v. Richardson, 397 U.S. 759, 771 (1970)). In determining whether a plea meets the requisites of due process, courts examine "the totality of the relevant circumstances." Gervais v. United States, 08-CV-22, 2008 U.S. Dist. LEXIS 36766, at *14 (E.D.N.Y. May 5, 2008) (citing Willbright v. Smith, 745 F.2d 779, 780 (2d Cir. 1984) (per curiam)).

The record belies petitioner's instant claim that his plea was not knowing, voluntary, and intelligent. At the plea hearing, petitioner admitted, "I engaged in sexual conduct with my daughter" on September 12, 2005, and acknowledged that he placed his penis in his daughter's vagina. (Plea Minutes, 13.) He further admitted that on two occasions he had sexual intercourse with his biological daughter and also put his penis in her mouth. (Id. at 14.) After petitioner made these admissions, the state court reminded petitioner that he was under oath and asked petitioner if everything he had said was the truth; petitioner affirmed "Yes, sir." (Id. at 15.) Petitioner also acknowledged that no one had "made any threats or in any way tried to force" him to plead guilty. (Plea Minutes, 9-10). Petitioner's "statements made under oath at his plea allocution 'carry a strong presumption of verity' and are generally treated as conclusive in the face of the defendant's later attempt to contradict them." Adames v. United States, 171 F.3d 728, 732 (2d Cir. 1999) (citations omitted) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)); accord Garaventa v. Holder, 12-cv-1741 (CBA), 2013 U.S. Dist. LEXIS 32471, at *4 (E.D.N.Y. Mar. 8, 2013) (quoting Blackledge, 431 U.S. at 74).

Despite his allocution, petitioner attacks his plea arguing that his daughter's letters, his wife's statement, and his own statement at sentencing that he was pleading guilty because it was "easier for his family" render his plea involuntary. Although not explicitly stated, petitioner argues that his plea is involuntary because he is innocent. [9] However, the Constitution allows a defendant to plead guilty while maintaining his innocence. Edwards v. Carpenter, 529 U.S. 446, 448 (2000); see also Alford, 400 U.S. at 37 (holding that a defendant "may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime"). A "court can accept a guilty plea even when a defendant maintains his innocence, 'as long as there exists a strong factual basis for the plea.' " United States v. Reingold, 731 F.3d 204, 209 (2d Cir. 2013); accord Tang v. New York, 96-CV-5763 (JG), 1997 U.S. Dist. LEXIS 23468, at *9-10 (E.D.N.Y. Mar. 25, 1997) (citing Alford, 400 U.S. at 37). Here, petitioner did not maintain his innocence, but admitted his guilt under oath; petitioner's sworn statements provide more than an adequate factual basis to support his guilty plea. Tang, 1997 U.S. Dist. LEXIS 23468, at *13. Moreover, the record reflects that there were "photographs of the child, including her face, having sex with the defendant." (ECF No. 8-2, "H.", 6-7.) These photographs, which both Mrs. Patel and petitioner's daughter acknowledge were taken, also provide a sufficient factual basis for petitioner's guilty plea.

***7** Petitioner also alleges that his plea was involuntary because it was procured by duress and prosecutorial misconduct. A plea is voluntary if "it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988) (citing Brady v. United States, 397 U.S. 742, 750 (1970)); see also Machibroda v. United States, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). However, a voluntary plea does not require the "absence of benefits influencing the defendant to plead." United States v. Doe, 537 F.3d 204, 211 (2d Cir. 2008) (internal quotation marks omitted).While the possibility of federal prosecution " 'may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' " Walter v. Superintendent, 9:06-CV-0128 (GHL), 2008 U.S. Dist. LEXIS 68561, at *25 (N.D.N.Y. Sept. 4, 2007) (quoting Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)) (internal quotation marks omitted). In this case, the government's threat of additional prosecution neither constitutes improper conduct, Billie v. United States, 3:10-CV-1122 (JBA), 2013 U.S. Dist. LEXIS 83675, at *21 (D. Conn. June 13, 2013), nor renders the plea involuntary, Cobb v. Unger, No. 09-cv-0491 (MAT), 2013 U.S. Dist. LEXIS 31572, at *31-33 (W.D.N.Y. Mar. 5, 2013).

Petitioner further claims that his plea was unintelligent because he was unfamiliar with the criminal justice system. A plea is considered intelligent if " 'the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way.' " Manzullo v. People of New York, 07 CV 744 (SJF), 2010 U.S. Dist. LEXIS 32089, at *15 (E.D.N.Y. Mar. 29, 2010) (quoting Miller, 848 F.2d at 1320).

Petitioner is a naturalized citizen of the United States who resided in this country for approximately fifteen years prior to entering his guilty plea. (Pet., 12.) Petitioner speaks English and is educated; he holds a degree in civil engineering. (Plea Minutes, 7-8.) Petitioner has no history of mental illness and was not under the influence of any drugs or alcohol at the time of the plea. (Id. at 8.) At the plea hearing, the trial judge advised petitioner "if there's any question in your mind as to what you are doing, I want you to stop the proceedings and confer with your attorney so that you have a full understanding of everything that's going on here." (Id. at 7.) The trial judge then advised petitioner of the rights he would be waiving by pleading guilty and the consequences of his plea. (Id. at 8-13.) After explaining each right and consequence, the trial judge asked petitioner if he understood; each time petitioner responded "yes." (Id. at 8-13.) Although petitioner argues that his "yes" answer to each of these questions does not demonstrate an intelligent and knowing waiver of his rights, he offers no evidence to rebut the "strong presumption of verity" that he understood the consequences of his plea as he stated under oath at the plea proceedings. Blackledge, 431 U.S at 74; see also Rashid v. Kuhlman, 97 Civ. 3037 (RCC)(HBP), 2000 U.S. Dist. LEXIS 18227, at *46-47 (S.D.N.Y. May 26, 2000) (stating that a trial court's finding that the plea was knowing and voluntary is "presumptively correct" and "can be overcome only by clear and convincing evidence"), *adopted*, 2000 U.S. Dist. LEXIS 18212 (S.D.N.Y. Dec. 18, 2000).

Finally, petitioner claims that his plea was involuntary because he received ineffective assistance of counsel. [10] Where, as here, petitioner relied on the advice of counsel in entering his guilty plea, the voluntariness of the plea turns on whether petitioner received effective assistance of counsel. Burvick v. Brown, No 10-CV-5597 (JFB), 2013 U.S. Dist. LEXIS 95620, at *25 (E.D.N.Y. July 9, 2013) (citing Hill, 474 U.S. at 56 (1985)); see also Schwamborn v. United States, 492 F. Supp. 2d 155, 168 (E.D.N.Y. 2007) (noting that an inquiry into the voluntariness of a plea is "largely coextensive with an examination of the effectiveness of petitioner's defense counsel" in the plea process); cf. Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) ("Defendants have a Sixth Amendment right to counsel, a right that extends to the plea bargaining process.")

***8** Courts evaluate ineffective assistance of counsel claims related to the plea bargaining process under the two-part test established in Strickland v. Washington, 466 U.S. 668 (1984). Missouri v. Frye, 132 S. Ct. 1399, 1405 (2012) (citing Hill, 474 U.S. at 57). Under Strickland, "legal representation violates the Sixth Amendment if it falls 'below an objective standard of reasonableness,' as indicated by 'prevailing professional norms,' and the defendant suffers prejudice as a result." Chaidez v. United States, 133 S. Ct. 1103, 1107 (2013) (quoting Strickland, 466 U.S. at 687-88); see also Premo v. Moore, 131 S. Ct. 733, 739 (2011) ("To establish ineffective assistance of counsel a defendant must show both deficient performance by counsel and prejudice." (internal quotation marks omitted)). Under Strickland, defense counsel is " 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " Pinholster, 131 S. Ct. at 1403 (quoting Strickland, 466 U.S. at 690); accord Bierenbaum v. Graham, 607 F.3d 36, 50-51 (2d Cir. 2010). On habeas review, the Strickland standard becomes " 'doubly deferential' " as federal courts must give "both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 134 S. Ct. 10, 13 (2013) (quoting Pinholster, 131 S. Ct. at 1403); accord Richter, 131 S. Ct. at 788 (stating that the highly deferential Strickland standard is made "doubly so" on habeas review (internal quotation marks omitted)).

Additionally, where a defendant "has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on the defendant's sworn statements and hold him to them." Padilla v. Keane, 331 F.Supp.2d 209, 217 (S.D.N.Y. 2004) (citing Agyekum v. United States, 01 CV 5808, 2002 WL 1000950, at *5 (S.D.N.Y. May 16, 2002)), see also Blackledge v. Allison, 431 U.S. 63, 74 (1997) ("The subsequent presentations of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). Statements made under oath at a plea allocution "are generally treated as conclusive in the face of the defendant's later attempts to contract them." Mudd v. Connell, 08 CV 3896, 2008 WL 4840628, at *5 (S.D.N.Y. Nov. 6, 2008) (quoting Adames v. United States, 171 F.3d 728, 732 (2d Cir. 1999)).

Petitioner's conclusory allegations that his counsel failed to explain the consequences of his guilty plea and ascertain the validity of the threatened federal prosecution are contradicted by the record made at the plea and sentencing proceedings. Petitioner's self-serving statements do not undermine the strong presumption under Strickland that his counsel rendered

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Patel v. Martuscello, Not Reported in Fed. Supp. (2015)

effective assistance. During the plea proceedings, petitioner acknowledged that he had "completely discussed" the facts of the case with his attorney and that he was "satisfied in the manner in which [his] attorney has represented [him]." (Plea Minutes, 7-8.) [11] Nevertheless, petitioner now alleges that his counsel did not advise him that he would be subject to a SORA ("Sex Offender Registration Act") fee, an order of protection, sex offender registration, and PRS. Petitioner's allegation that his counsel did not inform him of these conditions is undermined by the fact that the Court stated these conditions on the record at his plea proceeding. The Court informed petitioner: "There will be a SORA registration fee of $50, a DNA fee of $50, a mandatory surcharge of $250, a crime victim assistance fee of $20, a supplemental sex offender's fee of $1,000, and a sexual offense registration fee of $50; do you understand that?" (Plea Minutes, 11-12.) The petitioner responded: "Yes."

***9** Petitioner s counsel also made a record of his communication with the United States Attorney's Office at the plea proceedings. Counsel stated that he had been in touch with Assistant United States Attorney (AUSA) Allen Bodie in the Eastern District of New York "[o]ver the course of the last few months." (Id. at 3.) Counsel further stated that AUSA Bodie was "aware of the allegations" against petitioner in state court and "of facts that have been developed during the course of the investigation." (Id.) AUSA Bodie had advised counsel that "the Eastern District of New York US Attorney's Office is prepared to prosecute Mr. Patel for a variety of crimes arising out of these incidents," but "assured" counsel that the U.S. Attorney's Office would forgo prosecution if petitioner pled guilty to the state court indictment and agreed to a fifteen-year sentence. [12] (Id. at 3-4.) The prosecutor confirmed petitioner's counsel's statements regarding the position of the U.S. Attorney's Office. (Id. at 4.) Thus, petitioner's instant allegations are contradicted by his own prior sworn statements as well as by the record made by his attorney. As petitioner fails to demonstrate that his counsel's performance fell below objective standards of reasonableness, [13] he fails to establish ineffective assistance of counsel.

Accordingly, the state court's decision on petitioner's claim of ineffective assistance of counsel and his claim regarding the constitutionality of his plea was not contrary to or an unreasonable application of clearly established Federal law.

### C. The Effect of Petitioner's Guilty Plea

A guilty plea represents a "break in the chain of events which has preceded it in the criminal process;" a defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006) (analyzing Tollett and explaining that a guilty plea "conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue"); Russell v. Heath, 10-CV-0585(TCP), 2013 U.S. Dist. LEXIS 150861, at *51 (E.D.N.Y. Oct. 18, 2013) (stating that when a defendant pleads guilty he forfeits all claims "unrelated to the plea process").

Consequently, petitioner's claim that his post-arrest statements were obtained in violation of Miranda is precluded. See Toliver v. Artus, No. 11-CV-1051MAT, 2013 U.S. Dist. LEXIS 886, at *28 (W.D.N.Y. Jan. 3, 2013) (noting that petitioner's Fifth Amendment claim is "waived by Petitioner's voluntary, knowing, and intelligent guilty plea"); Tineo v. Health, CV-09-3357 (SJF), 2012 U.S. Dist. LEXIS 135701, at *11 (E.D.N. Y Sept. 19, 2012) (stating that a petitioner may not challenge the pre-plea violations of constitutional rights unless state law provides otherwise); Perez v. Ercole, 09 Civ. 2180 (WHP)(KNF), 2010 U.S. Dist. LEXIS 63315, at *12-13 n.3 (S.D.N.Y. June 22, 2010) (noting that Tollett bars all non-jurisdictional claims unless state law permits a defendant to plead guilty without forfeiting his right to judicial review of specific constitutional issues). [14] For the same reason, petitioner's remaining claims of prosecutorial misconduct and a lack of probable cause to justify his arrest, including that the criminal court did not conduct a probable cause determination, cannot be reviewed by this Court. See e.g. D'Souza v. Hershberger, No. CV-91-0381, 1991 U.S. Dist. LEXIS 11300, at *5 (E.D.N.Y. Aug. 5, 1991) (finding petitioner's claim of prosecutorial misconduct "barred by the guilty plea"); Burvick v. Brown, 10-CV-5597 (JFB), 2013 U.S. Dist. LEXIS 95620, at *18 *(E.D.N.Y. July 9, 2013) (as petitioner pled guilty, his claim that there was no probable cause for his arrest cannot be reviewed by the Court). [15] Therefore, the state court's denial of petitioner's pre-plea claims was not contrary to or an unreasonable application of clearly established Federal law.

### V. Excessive Sentence

***10** Petitioner's instant excessive sentence claim is also based on state law; petitioner writes "*[w]ith New York State*

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

*Sentencing principles in mind*, a review of the circumstances attendant to this prosecution, shows that petitioner's sentence was excessive." (Pet., 11 (emphasis added).) Petitioner's claim that his sentence violates New York law is a state law claim that is not cognizable on habeas review and should be denied. Hudgins v. New York, No 07-CV-01862-(JFB), 2009 U.S. Dist. LEXIS 51539, at *26 (E.D.N. Y June 18, 2009) (stating that "to the extent that petitioner relies on state law as a ground for an excessive sentence claim, such claim is not cognizable on habeas review"). In so far as the instant petition can be broadly construed to raise a claim of excessive sentence under federal law, the claim is unexhausted as it was not "fairly presented" to the state court [16] and in any event, provides no basis for federal habeas relief.

Petitioner argues that his sentence to fifteen years of incarceration and the subsequent five years of PRS is excessive. In evaluating an excessive sentence claim, the Court must defer to the legislatively mandated terms of imprisonment. See Ewing v California, 538 U.S. 11, 22 (2003) ("federal courts should be reluctant to review legislatively mandated terms of imprisonment" (internal quotation marks omitted)); see also Smiley v. Artuz, 05-CV-1446 (SLT), 2010 U.S. Dist. LEXIS 91932, at *50 (E.D.N.Y. Sept. 1, 2010) ("a habeas court must grant considerable deference to legislatively mandated terms of imprisonment" (citing Hutto v. Davis, 454 U.S. 370, 374 (1982) (per curiam))). New York Penal Law classifies rape in the first degree and criminal sexual act in the first degree as class B violent felonies and mandates the imposition of a determinate sentence between five and twenty-five years. N.Y. Penal Law §§ 70.02(1),(3); accord N.Y. Penal Law § 70.80(4). New York law also mandates a minimum of five years of PRS upon conviction of a class B felony sex offense. N.Y. Penal Law §§ 70.45(2-a)(c), (5)(a). Thus, petitioner's sentence to fifteen years of incarceration and five years of PRS is within the range prescribed by New York law. [17] It is well settled that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam); see also Kohler v. Connolly, 12-CV-1137(JS), 2013 U.S. Dist. LEXIS 60089, at *15 (E.D.N.Y. Apr. 26, 2013) (stating that "[i]n the Second Circuit, an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law" (internal quotation marks omitted)); Mayen v. Artist, 06 Civ. 14261 (DC), 2008 U.S. Dist. LEXIS 41975, at *10 (S.D.N.Y. May 23, 2008) (holding that "an Eighth Amendment challenge to a sentence may not succeed unless a petitioner alleges that the sentence was outside a prescribed statutory range" (citing Hutto, 454 U.S. at 374)). The individual factors petitioner presents to argue for leniency "are simply not factors that this Court may consider for habeas relief." Acosta v. Giambruno, 326 F. Supp. 2d 513, 524 (S.D.N.Y. 2004); accord Monegro v. Greiner, 03 Civ. 2735 (NRB), 2004 U.S. Dist. LEXIS 1184, at *22 (S.D.N.Y. Jan. 27, 2004).

***11** Moreover, petitioner and his counsel specifically negotiated the fifteen-year term of incarceration and five years of PRS. The trial judge in this action originally indicated that he planned to sentence petitioner to eleven years of incarceration, despite the prosecution's request for a fifteen-year sentence. (H., 6-7.) Prior to taking petitioner's guilty plea, the trial court confirmed with petitioner's counsel: "You are the one who is asking me at this point in time to sentence Mr. Patel to 15 years; is that correct?" (Plea Minutes, 6.) Defendant's counsel explained that petitioner agreed to the longer, fifteen-year term of incarceration to avoid federal prosecution. (Id. at 3-4.) Petitioner also pled guilty to the longer term to ensure that his sentence would run concurrently with his sentence in a Queens County action for possession of child pornography. (Id. at 5-6.) The state judge specifically asked petitioner if he understood that in exchange for his plea the court would sentence him to a fifteen-year term of incarceration and five years of PRS supervision. (Id. at 11.) Petitioner said "yes." (Id.) Thus, petitioner's sentence is not only within the range prescribed by state law but also "the sentence that [petitioner], his lawyer, the prosecutors, and the trial court all agreed he would get." Mayen, 2008 U.S. Dist. LEXIS 41975, at *12; see also Acosta, 326 F. Supp. 2d at 524 (noting that petitioner "freely agreed" to the sentence he challenges as excessive). Accordingly, petitioner's claim is not cognizable on habeas review and should be denied.

### VI. Order of Protection [18]

Petitioner contests the duration of the order of protection imposed against him. Petitioner's claim is properly exhausted, but nevertheless, is not a basis for habeas corpus relief. An order of protection is "not a part of the sentence imposed," but rather is issued "incident to a criminal proceeding" to "safeguard the rights of victims and witnesses both prior to and after conviction." People v. Nieves, 811 N.E.2d 13, 18 (N.Y. 2004). Even if an order of protection is defective, it does not invalidate petitioner's sentence. Ray v. Bradt, 11-CV-400 (MKB)(LB), 2013 U.S. Dist. LEXIS 51573, at *18 (E.D.N.Y. Feb. 1, 2013); accord Dewall v. Superintendent, Mohawk

Corr. Facility, 05-CV-5583 (NGG) (RLM), 2008 U.S. Dist. LEXIS 65385, at *49 (E.D.N.Y. Aug. 20, 2008). New York law provides that upon conviction of a felony, a court may issue an order of protection, the duration of which may not exceed eight years from the expiration of the sentence of imprisonment. N.Y. Crim. Proc. Law § 530.12(5). Petitioner concedes that "the duration of the order of protection imposed by the court (to March 2024) was not unlawful." (Pet., 14.) Thus, there is no basis for the Court to consider petitioner's claim. See Dewall, 2008 U.S. Dist. LEXIS 65385, at *48 ("The first inquiry is whether the orders of protection were defective."). Nevertheless, petitioner asks the Court to reduce the length of the protection order to March 2012, when his daughter turned eighteen, because it is important in Hindu culture for petitioner to be involved in "brokering a marriage" for his daughter. While this may be an important concern for petitioner, it does not implicate a constitutional right and thus, habeas review is unavailable. Id. at *49 (stating that the "only relevant question" on habeas review is "whether Petitioner's constitutional rights were implicated by the defective order of protection"); accord Ray, 2013 U.S. Dist. LEXIS 51573, at * 18.

### VII. The State Court's Failure to Conduct an Evidentiary Hearing

Petitioner claims that he should be granted habeas relief because the state court failed to conduct an evidentiary hearing on his ineffective assistance of counsel claim, raised in his first CPL § 440.10 motion. Liberally construing petitioner's claim to implicate a federal right, he argues that the failure to conduct the hearing violates due process. "[A] due process challenge to New York's collateral post-conviction proceedings[ ] does not state a claim that is cognizable under federal habeas review." Word v. Lord, 648 F.3d 129, 131 (2d Cir. 2011). [19]

### VIII. Actual Innocence

***12** To the extent that petitioner raises a claim of actual innocence, it should be denied. "[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation ...." Herrera v. Collins, 506 U.S. 390, 400 (1993). First, even if habeas relief is available on a freestanding claim of innocence, the letters from petitioner's daughter cannot be described as "newly discovered evidence" as they were presented to the trial court at sentencing. Furthermore, "[w]hile a recanting victim presents a sympathetic scenario for a claim of actual innocence, we must not flinch from our duty to scrutinize *all* the evidence to assure ourselves of the recantation's reliability." Doe v. Menefee, 391 F.3d 147, 173 (2d Cir. 2004). Evidence of innocence consisting solely of written statements is "disfavored" because the "statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." Herrera, 506 U.S. at 417. Moreover, the letters themselves are unconvincing as they are inconsistent with petitioner's innocence; in one breath petitioner's daughter states that her father did not sexually abuse her and in the next, she admits that petitioner took sexually explicit pictures. Finally, the probative value of the daughter's letters is undermined by petitioner's sworn admission of guilt. Simply put, "this showing of innocence falls far short of that which would have to be made in order to trigger the sort of constitutional claim which we have assumed, *arguendo*, to exist." Id. at 418-19.

## CONCLUSION

Accordingly, it is respectfully recommended that the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. Because petitioner has not made a substantial showing of the denial of any constitutional right, it is recommended that no certificate of appealability should be issued. 28 U.S.C. § 2253; see Slack v. McDaniel, 529 U.S. 473 (2005) (discussing the standard for issuing a certificate for appealability); see also Lucidore v. N.Y State Div. of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000). It is further recommended that the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. U.S., 369 U.S. 438 (1962).

## FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140(1985).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 11401853

## Footnotes

1 Petitioner did not waive his right to appeal when he pled guilty. (Id. at 10.)

2 As addressed *infra*, petitioner could have been prosecuted for additional crimes based on the photographs.

3 By letter dated January 30, 2013, petitioner states that his daughter's letters were never discussed in the state court. (ECF No. 17.) Although petitioner's daughter's letters were not read into the record, the instant petition states that the letters were "annexed to the written statement that petitioner's wife submitted to the sentencing court." (Pet., 8-9). Furthermore, petitioner's counsel noted that he had investigated "statements by the victim in this case that appeared to be exculpatory." (S. at 13.)

4 In a single sentence in his conclusion, petitioner refers to a *Miranda* violation. (ECF No. 8-14, 38.)

5 Counsel filed a letter brief requesting leave to appeal the three grounds raised in the appellate brief filed by petitioner's counsel. (ECF No. 8-21.) Based on this submission, respondent argues that petitioner failed to present his claims regarding the intelligence of his plea, his right to a preliminary hearing, speedy trial and indictment, and prosecutorial misconduct to the New York Court of Appeals. However, counsel's motion for leave to appeal also states "I am enclosing Mr. Patel's pro se supplemental leave application." (Id., see also ECF No. 17.) Although petitioner's *pro se* application for leave to appeal is not included in the instant record, the Court declines to dismiss petitioner's supplemental claims for failure to exhaust and instead denies them on the merits. See 28 U.S.C. § 2254(b)(2) (granting federal courts discretion to deny a claim on the merits even if not properly exhausted).

6 An amended petition completely replaces the original. Strictly construed, the amended petition would have omitted claims raised in the original petition. However, while petitioner does not list all the claims in his amended petition, he refers to the claims raised in the original petition in the amended petition. As petitioner clearly intended to raise all of these claims, the Court construes the amended petition as also raising all the grounds stated in the original petition. As many of the grounds are detailed in the original petition, references to respondent's opposition are to the original opposition at ECF No. 10, unless otherwise stated.

7 The Clerk of Court is directed to send petitioner the attached copies of all unreported cases cited herein.

8 "[I]f a federal claim has not been adjudicated on the merits, AEDPA deference is not required." DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir. 2005). There is some disagreement amongst courts in this district whether an alternative holding constitutes an adjudication on the merits that is entitled to AEDPA deference. The court in Ojar v. Greene, 07-CV-3674 (JG), 2008 U.S. Dist. LEXIS 11744, at *33 (E.D.N.Y. Feb. 15, 2008) (citing Jimenez, 458 F.3d at 145) held that pursuant to Jimenez "a state court decision based on or interwoven with the merits of federal law which *also* contains a clear statement of reliance on state procedural bar," is not entitled to AEDPA deference even if the state procedural bar is inadequate. Other courts in this district have distinguished Jimenez and found that AEDPA deference applies to state court decisions where the procedural bar is inadequate and the state court found the claim "both barred and meritless." Clarke v. Goord, 07-CV-0366 (BMC), 2007 U.S. Dist. LEXIS 58795, at *10 (E.D.N.Y. Aug. 6, 2007). This Court is persuaded


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

that the analysis in Clarke more accurately follows Second Circuit precedent. In Zarvela v. Artuz, 364 F.3d 415, 417 (2d Cir. 2004), the Second Circuit found the state procedural bar inadequate, but nevertheless applied AEDPA deference because it found that the state court had "adjudicated [the claim] on the merits" when it ruled that petitioner's claim was "unpreserved, and, in any event, without merit." Nothing in Jimenez explicitly overrules Zarvela. Moreover, after Jimenez, in Bell v. Miller, 500 F.3d 149 (2d Cir. 2007), the Second Circuit discussed the deference due to state court decisions when the state procedural bar is found to be inadequate. The Second Circuit held that a "contrary-to-fact construction: '*if* the merits *were* reached, the result *would be* the same' " does not constitute adjudication on the merits, but indicated that an alternative holding like that found in Zarvela is entitled to AEDPA deference. Bell, 500 F.3d at 155. As the Appellate Division here ruled in the alternative like in Zarvela, the Court should consider the ruling an adjudication on the merits entitled to AEDPA deference.

9 The Court considers petitioner's claim of actual innocence in Section VIII infra.

10 Respondent argues that petitioner's ineffective assistance of counsel claim is procedurally barred because the Appellate Division denied it on procedural grounds stating "[b]y pleading guilty, the defendant forfeited his claim of ineffective assistance of counsel, raised in his supplemental pro se brief, to the extent that it does not directly involve the plea bargaining process." (Resp't Opp., 27-28 (quoting Patel, 904 N.Y.S.2d at 100)). However, petitioner's allegations that his counsel was deficient in failing to investigate the validity of the threatened federal prosecution and in failing to advise petitioner of the consequences of his guilty plea directly relate to the plea bargaining process. The Appellate Division acknowledged that "defendant's claim is based partially on matter dehors the record, which cannot be reviewed on direct appeal." Patel, 904 N.Y.S.2d at 101. Although the negotiations regarding the potential federal prosecution were discussed on the record, the advice petitioner may or may not have received from his counsel does not appear on the record. People v. Johnson, 882 N.Y.S.2d 706, 707 (App. Div. 2009); see also People v. Maldonado, 876 N.Y.S.2d 661, 662 (App. Div. 2009) ("[A]ny claim that defendant's decision to plead guilty was based upon counsel's advice ... deals with matters outside of the record and should be raised in a CPL article 440 motion.") "[W]here, as here, a defendant presents a mixed claim of ineffective assistance that depends, in part, upon matters that do not appear on the record ... the CPL 440.10 proceeding is the appropriate forum for reviewing the claim of ineffectiveness in its entirety." People v. Maxwell, 933 N.Y.S.2d 386, 388 (App. Div. 2011); see also Smith v. Fischer, 07 Civ. 2966, 2013 U.S. Dist. LEXIS 12618, at *19 (S.D.N.Y. Jan. 24, 2013) ("[I]f a defendant's claim is mixed, in order to properly review the allegations in their totality, a § 440.10 collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance of counsel...." (internal quotation marks omitted)). Petitioner properly raised the instant mixed claim of ineffective assistance of counsel in his § 440.10 motion, and raised the issue again in his motion for leave to appeal. Therefore, petitioner's ineffective assistance of counsel claim is exhausted and subject to habeas review.

11 Petitioner's trial counsel also made a full record at petitioner's sentencing that all "exculpatory leads were investigated, discussed with Mr. Patel, investigated with Mr. Patel, and when all was considered....[Mr. Patel and his attorney] concluded that a plea in this case was still the wisest and most reasonable way to go when the other alternative would be a trial." (S, 13.) Petitioner's counsel also stated at the sentencing that he had looked into the federal law charge that petitioner would be facing and explained to petitioner that he would face significantly greater exposure with the federal prosecution. (S, 13-14.) Trial counsel's full description of the investigation he undertook and his discussions with the petitioner further strengthen the presumption of effective assistance under Strickland.

12 At sentencing, counsel reiterated that the fifteen-year sentence was advantageous because petitioner "faced significantly greater exposure" under federal law. (S., 14.)

13 "[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. Thus, as petitioner fails to demonstrate deficient performance, the Court need not consider prejudice.

14 New York law provides an exception to Tollett; it provides that where the trial court denies a motion to suppress, it may be appealed notwithstanding the entry of a guilty plea. N.Y. Crim. Proc. Law § 710.70. Petitioner never sought to suppress his statements at the trial court level; thus, this exception does not apply here.

15 To the extent that petitioner is raising a separate claim that he was not fully informed of the nature of the charge against him in addition to the claim that his plea was not knowing and voluntary, it too would be waived by entry of petitioner's guilty plea.

16 On direct appeal, petitioner argued that his sentence was excessive, but made no reference to federal constitutional principles and only cited to New York case law. Since "the cases cited in support of Petitioner's argument that his sentence was excessive do not employ 'constitutional analysis' as is necessary to apprise the state court of a petitioner's federal constitutional claims," petitioner's claim is unexhausted. Witt v. Racette, 10 Civ. 9180 (JPO), 2012 U.S. Dist. LEXIS 111745, at *16 (S.D.N.Y. Aug. 7, 2012); see also Fernandez v. LaValley, 10 Civ. 7914 (JGK), 2011 U.S. Dist. LEXIS 110655, at *7 (S.D. NY. Sept. 28, 2011) ("Because the petitioner did not raise his harsh and excessive sentence claim in federal constitutional terms, it is unexhausted."); cf. Carvajal v. Artus, 633 F.3d at 104 (discussing how a petitioner may fairly present federal claims to a state court). Furthermore, petitioner's claim is not exhausted because he may still raise it in state court in a motion to set aside the sentence pursuant to N.Y. Crim. Proc. Law § 440.20. See Bester v. Conway, 778 F. Supp. 2d 339, 348-49 (W.D.N.Y. 2011) (finding petitioner's constitutional, excessive sentence claim unexhausted since petitioner could raise it in a § 440.20 motion); Naranjo v. Filion, 02 Civ. 5449 (WHP) (AJP), 2003 U.S. Dist. LEXIS 6287, at *28 (S.D.N.Y. Apr. 16, 2003) (collecting cases) (determining that petitioner failed to exhaust his constitutional, excessive sentence claim because he could still collaterally attack it in state court pursuant to § 440.20). Notwithstanding petitioner's failure to exhaust this claim, the Court should exercise its discretion and deny it on the merits as petitioner raises no colorable federal claim. 28 U.S.C. § 2254(b)(2); Greiner v. Wells, 417 F.3d 305, 317 n.14 (2d Cir. 2005); Naranjo, 2003 U.S. Dist. LEXIS 6287, at *30 (collecting cases).

17 Petitioner, citing to N.Y. Penal Law § 70.45(1), also argues that his sentence of five years PRS should not have been consecutive to his fifteen year jail term, but that his jail term and PRS together should not exceed fifteen years. However, § 70.45(1) specifically states that "[w]hen a court imposes a determinate sentence" it shall also impose "an *additional* period of post-release supervision." (emphasis added). Section 70.45(5) further explains that PRS "commence[s] upon the person's release from imprisonment." Thus, the imposition of a five year term of PRS, to commence after the fifteen-year determinate term of incarceration, complies with New York sentencing law and is not grounds for habeas relief.

18 At sentencing, the state court imposed an order of protection "subject to an appropriate finding by family court." (S. at 18.) The criminal court further stated "I am relinquishing ultimate jurisdiction of how long this order is to stay in full force and effect to a family court judge." (Id.) The record is silent as to whether the order of protection has been modified by the family court.

19 Some courts have held that a state court's failure to conduct an evidentiary hearing in certain circumstances *may* factor into whether or not this court finds that the state court's determination of the facts was "unreasonable" under the AEDPA. See e.g. Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014), As previously discussed, the record of the plea proceedings strongly supports the presumption that petitioner's

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

counsel was effective. Therefore, the state court's determination of petitioner's ineffective assistance of counsel claim was not unreasonable and did not require an evidentiary hearing.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 2058534
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Andre CHAPPERO, [1] Petitioner,
v.
Calvin WEST, Superintendent, Elmira Correctional Facility, Respondent.

No. 04 CV 8018(KMW)(DCF).
|
July 15, 2009.

West KeySummary

1 **Criminal Law** Indictment and information

A failure by counsel to raise a timely motion to dismiss a murder indictment based on pre-indictment delay did not constitute ineffective assistance of counsel. Evidence indicated that even if the motion had been timely it still likely would have been denied. The defendant failed to show that there was a reasonable probability that but for his counsel's delay in filing the motion to dismiss, the outcome of his proceeding would have been different.

6 Cases that cite this headnote

**Attorneys and Law Firms**

Mr. Andrew Chaparro, Coxsackie, NY, pro se.

*OPINION and ORDER*

KIMBA M. WOOD, District Judge.

***1** Pro se petitioner Andre Chappero ("Chaperro") seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his 1998 conviction in New York State Supreme Court, New York County. A jury convicted Chappero of one count of murder in the second degree, in violation of New York Penal Law § 125.25, and one count of criminal possession of a weapon in the second degree, in violation of New York Penal Law § 265.03.

Chappero asserts the following six claims as grounds for habeas relief: (1) his trial counsel provided ineffective assistance of counsel; (2) the nine years between the date of the crime and his indictment constituted an unconstitutional delay; (3) identification evidence should have been suppressed on the ground that the identification procedure was impermissibly suggestive and thus unconstitutional; (4) he was denied a fair trial as a result of an improper comment in the prosecutor's opening statement; (5) expert ballistics testimony should not have been admitted at trial because of a break in the chain of custody with respect to the physical evidence; and (6) the evidence presented at trial was insufficient as a matter of law to establish his guilt beyond a reasonable doubt.

On July 10, 2008, Magistrate Judge Debra Freeman issued a Report and Recommendation (the "Report"), familiarity with which is assumed. The Report concludes that each of Chapparo's six claims for habeas relief is without merit. On September 29, 2008, Chapparo filed timely objections to the Report. [2] For the reasons stated below, the Court ADOPTS the Report in its entirety, and DENIES Chappero's petition for a writ of habeas corpus.

I. *Standard of Review*

When reviewing a Report and Recommendation, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

The court must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997) (internal citations omitted).

However, to the extent that a party makes only conclusory or general objections, or simply reiterates the original arguments, the court will review those portions of the Report strictly for clear error. *See Pearson–Fraser v. Bell Atl.,* No. 01 Civ. 2343(WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan.6, 2003); *Vargas v. Keane,* No. 93 Civ. 7852(MBM), 1994 WL 693885 at *1 (S.D.N.Y. Dec.12, 1994). The court will also review for clear error portions of the Report to which the parties do not object. Fed.R.Civ.P. 72(b) advisory

committee's note; *see also Rodriguez v. Morton,* 2009 U.S. Dist. LEXIS 12470, *2, 2009 WL 414033 (S.D.N.Y. Feb. 13, 2009). When the court is reviewing for clear error, the court considers whether the section under review is free of any "clear error on the face of the record." Fed.R.Civ.P. 72(b) advisory committee's note; *Rodriguez,* 2009 U.S. Dist. LEXIS at *2, 2009 WL 414033.

II. *Analysis*

***2** Chapparo objects to the Report's recommendation that the Court reject his claims for habeas relief.[3] For the following reasons, the Court finds that Chapparo's five objections are without merit.

A. *Claim One: Ineffective Assistance of Counsel*

The Report recommends dismissing Chapparo's claim for ineffective assistance of counsel. The Report explains that to establish an ineffective assistance of counsel claim, a petitioner must show *both:* (1) that counsel's performance "fell below an objective standard of reasonableness," and (2) that there is a reasonable probabilty that, but for counsel's unprofessional errors, the result of the proceedings would have been different." (Report, at 20–21 (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) .) The Report concludes that Chapparo has failed to show that had his counsel made timely motions to dismiss the case for pre-indictment delay, the outcome of his case would have been different.[4] *Strickland,* F.3d at 688, 694.

Chapparo objects to this recommendation, claiming that the Report misconstrues his argument. According to Chapparo, the Report perceives him to be arguing that his counsel's performance as a whole was ineffective, whereas he is arguing that there was a single isolated error—the failure to raise a timely motion to dismiss the indictment—that rendered his counsel ineffective.

The Court finds that the Report does not misconstrue Chapparo's argument. The Report considers Chapparo's argument that his counsel's delay in raising the motion to dismiss constituted ineffective assistance of counsel, and rejects it. (Report, 20, 27–29.) The Report then concludes that even if the motion to dismiss had been made sooner, the motion still "would likely have been denied." (Report, at 21.) The Court adopts the Report's recommendation, finding that Chapparo has failed to show either in his briefing before Magistrate Judge Freeman or in his objections to the Report that there is a reasonable probability that but for his counsel's delay in filing the motion to dismiss, the result of his proceedings would have been different. Accordingly, the Court finds Chapparo's objection to the Report unpersuasive and DENIES his ineffective assistance of counsel claim.

B. *Claim Two: Pre-indictment Claim Is Not Procedurally Barred*

The Report recommends that the Court find that it is procedurally barred from reviewing Chapparo's claim that he was denied due process as a result of an unreasonable pre-indictment delay. Chapparo objects to this recommendation.

Federal habeas review is not available where a claim has already been decided by a state court, and the state court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Procedural rules, such as rules governing the timeliness of motions, constitute adequate and independent state law grounds. *See, e.g., Montalvo v. Annetts,* No. 02 Civ. 1056, 2003 U.S. Dist. LEXIS 22619, at *68–70, 2003 WL 22962504 (S.D.N.Y. Dec. 17, 2003).

***3** As the Report explains, the New York State Appellate Division (hereinafter, "Appellate Division") rejected Chapparo's claim that he was denied due process as a result of pre-indictment delay. The Appellate Division rejected this claim on the ground that his motion to dismiss the case was not filed within forty-five days of arraignment, as is required under state procedural rules, and that Chapparo did not establish good cause for this belated motion. Concluding that the Appellate Division stated an adequate and independent state law ground for rejecting Chapparo's due process claim, the Report recommends that the Court find that it is procedurally barred from reviewing the claim.

Chapparo objects to the Report's recommendation, arguing that New York Criminal Procedure Law ("NY CPL") § 255.20 permits, but does not require, the state court to deny the motion to dismiss on the ground that it is untimely. He contends that because the state court had the option of reaching the merits of the motion to dismiss even though it was untimely, the procedural bar discussed in the Report is inapplicable. Chapparo cites no decisions in support of this argument.

The Court finds Chapparo's objections unpersuasive. When the Appellate Division exercised its discretion not to hear the untimely motion, it was deciding the motion on an adequate and independent state law ground. The fact that this decision was within the state court's discretion is irrelevant for assessing whether this Court's review of the state court's decision is procedurally barred.

The Court agrees with the Report that the Appellate Division rejected Chapparo's due process claim on an adequate and independent state law ground, and that this Court is procedurally barred from reviewing the claim. Accordingly, Chapparo's claim the he was denied due process as a result an unreasonable pre-indictment delay is DENIED.

C. *Claim Three: Improper Identification*

The Report recommends dismissing Chapparo's claim that his Fourth Amendment rights were violated because the trial court failed to suppress identification evidence obtained from allegedly unduly suggestive procedures. Chapparo objects to this recommendation.

Pre-trial identification procedures violate due process where, considering the totality of the circumstances, they are so unnecessarily suggestive as to create "a very substantial likelihood of irreparable misidentification." *Mason v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) (internal quotations omitted).

Chapparo claims that the following two identification procedures caused the process to be constitutionally infirm: (1) the presence of a height chart in the photograph of Chapparo that was used for the initial photo array; and (2) the use of line-up participants who were of varying heights and weights. The Report concludes that, considering the totality of the circumstances, Chapparo has not made the necessary showing that these identification procedures were constitutionally defective.

***4** Chapparo objects to the Report, arguing that the Report fails to take into account the totality of the circumstances surrounding the identification procedure, specifically that the "procedure itself was volatile of petitioner's right to counsel." (Petitioner's Objections, at 4.)

In his briefing before Magistrate Judge Freeman, Chapparo did not argue that he had a right to counsel during the identification process. Because this argument was not raised in the briefing provided to Magistrate Judge Freeman, the Court declines to consider this argument now.[5] *Orix Fin. Servs. v. Thunder Ridge Energy, Inc.,* 2006 U.S. Dist. LEXIS 54673, *12–13 (S.D.N.Y. Mar. 7, 2006) ("The Court need not consider at the objection stage any legal argument not presented to the Magistrate Judge."). To the extent that Chapparo is arguing more generally that the Report does not adequately consider the totality of the circumstance, the Court finds this argument to be without merit.[6]

Accordingly, the Court finds that the Report correctly concludes that Chapparo failed to establish that his Fourth Amendment rights were violated when the trial court did not suppress the identification evidence at issue and DENIES this claim.

D. *Claim Four: Improper Admission of Evidence*

The Report recommends that the Court find that it is procedurally barred from hearing Chapparo's claim that the trial Court erred when it permitted expert ballistic testimony at his trial. The Report explains that Chapparo challenged the balistics testimony before the Appellate Division, but did not do so in federal constitutional terms. Therefore, the claims have not been exhausted. *See Daye v. Attorney Gen. of New York,* 696 F.2d 186, 191 (2d Cir.1982) (explaining that in order to exhaust a claim, the petitioner must articulate the claim in federal constitutional terms sufficient to alert the state court to the federal nature the claim).

In Chapparo's objections to this recommendation, he cites *Daye* and states generally that "in like fact situations, the [S]econd [C]ircuit [C]ourt of [A]ppeals has held that a habeas petitioner's constitutional claims has been fairly presented to the state courts." (Petitioner's objection, at 5.) Given the general nature of this objection and the absence of references to supporting decisions, the Court reviews the Report for clear error.

The Court finds the Report's conclusion that Chapparo has failed to exhaust his claim regarding the impermissible admission of expert ballistics testimony to be free of clear error on the face of the record. Accordingly, the Court DENIES Chapparo's claim.

E. *Claim Five: Insufficieny of the Evidence*

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

The Report recommends dismissing Chapparo's claim that the evidence presented by the prosecution is legally insufficient to establish Chapparo's guilt beyond a reasonable doubt.

Specifically, the Report addresses Chapparo's argument that "his identification revolved around the credibility of essentially one witness." (Report, at 41.) The Report describes the evidence presented to the jury, which included testimony of two additional witnesses placing Chapparo at the scene of the crime and holding a gun or shooting at a crowd. The Report explains that this constitutes ample corroborating evidence. [7]

***5** Chapparo in his objection to the recommendation reiterates the same argument that he made before Magistrate Judge Freeman—that the uncorroborated eyewitness testimony of one alleged witness is insufficient to support his conviction. The Court therefore reviews this objection for clear error.

The Court finds no clear error in the Report's analysis of Chapparo's claim that the evidence was insufficient to support a conviction. Accordingly, the Court DENIES this claim.

IV. *Conclusion*

For the reasons stated above, the Court adopts the Report in its entirety. [8] The Court DENIES Chapparo's Petition for a writ of habeas corpus (D.E.2).

A certificate of appealability will not issue because Chapparo has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); Fed. R.App. P. 22(b). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.

The Clerk of Court is directed to close this case; any pending motions are moot.

SO ORDERED.

**REPORT AND RECOMMENDATION**

DEBRA FREEMAN, United States Magistrate Judge.

**TO THE HONORABLE JUDGE KIMBA M. WOOD, CHIEF U.S.D.J.:**

*Pro se* petitioner Andre Chaparro ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254, following his 1998 state conviction. Upon a jury verdict after trial in the Supreme Court of the State of New York, New York County, Petitioner was found guilty of one count of murder in the second degree, in violation of New York Penal Law § 125.25, and one count of criminal possession of a weapon in the second degree, in violation of New York Penal Law § 265.03. Petitioner was sentenced to concurrent sentences of 20 years to life imprisonment for the murder count and four to 12 years imprisonment for the weapons possession count. He is currently incarcerated at Elmira Correctional Facility.

The petition, liberally construed, [1] asserts the following grounds for habeas relief:

(1) Petitioner's trial attorneys provided ineffective assistance of counsel;

(2) The nine years between the date of the crime and Petitioner's indictment constituted unconstitutional delay;

(3) Identification evidence, including identifications of Petitioner resulting from two photo arrays and a line-up, should have been suppressed on the ground that the identification procedures were impermissibly suggestive and thus unconstitutional;

(4) Petitioner was denied a fair trial as a result of improper comments by the prosecutor in his opening statement;

(5) Expert ballistics testimony should not have been admitted at trial because of a broken chain of custody with respect to the physical evidence; and

(6) The evidence presented at trial was insufficient as a matter of law to establish Petitioner's guilt beyond a reasonable doubt.

(*See* Memorandum of Law in Support of a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. 2254, dated Feb. 3, 2004 ("Pet.Mem.") at 4–18.)

***6** Respondent argues that the petition should be dismissed because Petitioner's claims are procedurally barred and/or without merit. (*See* Respondent's Memorandum of Law in Support of Answer Opposing Petition for a Writ of Habeas Corpus ("Resp.Mem.") at 21–70.) For the reasons set forth below, I recommend that the petition be dismissed in its entirety.

### *FACTUAL BACKGROUND*

According to the testimony presented by the prosecution at trial, on the evening of March 10, 1988, at the Regent Hotel (located at 104th Street and Broadway in Manhattan), a fight broke out that culminated in the shooting of Rodney Perry ("Perry"), also known as "Stinky." The prosecution claimed that Petitioner, also known as "Tito," had been the shooter. At trial, the prosecution presented the testimony of three witnesses who had participated in the fight: Ray Santiago ("Santiago"), who was 15 years old at the time of the events, and Taino Villaronga ("Taino") and his cousin, Adan Villaronga ("Adan"), who, at the time, were 16 and 14 years old, respectively. The prosecution also presented the testimony of an off-duty auxiliary police officer, Benjamin Gonzalez ("Gonzalez"), who saw Petitioner shoot Perry.

#### A. *Events Leading up to the Fight*

Earlier in the day, before the fight began, Santiago's sister told him that there had been a "misunderstanding" between her husband, Leonard Beauford ("Beauford"), and some "guys" at the Regent Hotel. (Transcript of trial dated Sept. 24, 1998 ("Tr."), at 350–51.) Santiago's sister was upset (*see id.* at 351 ("[s]he was hysterical about it")), and Santiago apparently understood that Beauford was planning to return to the hotel for a confrontation. Santiago told his sister that he would go to the hotel and speak to "the guys" (*see id.* at 351), although he explained at trial that his "plan was to make sure [Beauford] had a fair fight with whoever he had a beef with" (*id.* at 352).

Taino and Adan similarly testified to their understanding that Beauford planned to return to the hotel for a fight. Taino and Adan were together that morning (*id.* at 99), and Beauford came and told them that someone at the hotel had "slapped his girl" and then "tried to jump him" (*id.* at 153–54). Beauford asked Taino and Adan to "watch his back while he went back there." (*Id.* at 154.) Taino and Adan then talked about soliciting the help of some "guys" who were "older" and "bigger" than they were, to act as "back-up" for the anticipated fight. (*See id.* at 100.)

Taino and Adan accordingly went to the 109th Street apartment of Franklin Almonde ("Almonde"), a friend of Taino's mother and her "associate" in the drug business. (*Id.* at 102.) According to Taino, a friend of Almonde known as "Tito" (i.e., Petitioner) was also at the apartment. (*Id.* at 109.) Taino testified that he had met Tito through Almonde three or four times previously. (*Id.* at 110.) Taino further testified that Tito was "chubby"; "fair skinned"; had "black hair," a mustache or goatee; and appeared to be about 26 or 27 years old. (*Id.* at 114.) He also testified that Tito was wearing a fur coat that day. [2] (*Id.* at 114.)

***7** Taino explained to Almonde that Beauford "had a problem with some older guys." (*Id.* at 105, 106.) Taino told Almonde that there was supposed to be a fight that night, and asked him for help. (*Id.* at 106–07.) Taino also tried to grab a gun he saw in the apartment, but Almonde told Taino he was "too small for this" and that he would "take care of it." (*Id.* at 107, 114.) Taino and Adan left Almonde's apartment and waited downstairs "for a little bit." (*Id.* at 116.) It was Taino's recollection that Tito then came downstairs, and the three of them walked toward the Regent Hotel. (*Id.* at 116–17.) Taino and Adan walked together and talked about the fight, while, according to Taino, Tito was "in the distance" and not really walking "with" the cousins. (*Id.* at 117.)

Adan's version of these events differed somewhat, in that he testified that the cousins first "met up with" Tito as they left Almonde's building. (*Id.* at 157.) Adan testified that, at that point, they told Tito about Beauford's problem and that they were going to "watch his back." (*Id.* at 158.) According to Adan, when he and Taino explained to Tito that they were planning to confront boys who they thought would be about 18 or 19 years old, Tito responded that he was 21 years old, and that the other boys were "little kids." (*Id* at 159.) [3] Adan described Tito as wearing a fur coat, and as being heavier and taller than he was at the time. (*Id.* at 159–61.)

Once Santiago arrived at the hotel, he was introduced to Tito by Adan. (*Id.* at 352.) Santiago had never met Tito before, and, at the time of trial, he did not have a clear image in his mind of what Tito looked like. (*Id.* at 353.) Santiago recalled, however, that, on the day in question, Tito was wearing a big coat ("[m]aybe a fur coat or something" (*id.* at 353)), and that Tito was "much older" than he was (*id.* at 354).

Once the boys were at the hotel, Taino's mother pulled up in a car, told Taino to get inside the car, and, after he reluctantly agreed, the two drove away. (*Id.*) The other boys remained at the hotel, although Tito went into a restaurant called "Marita," which was connected to the hotel. (*Id.* at 162.)

#### B. *The Fight and the Shooting*

On 104th Street, in front of the hotel, Beauford again encountered the "kid" with whom he had originally had a "misunderstanding," as well as a group of that boy's friends. (*Id.* at 162–65.) Taino and the others who were with Beauford told him that "[t]he kid disrespected [him] earlier," and that he had to "do what [he] came here to do." (*Id.* at 121.) A fight then broke out between Beauford and the "kid" (*id.* at 164), and others who were with the "kid" joined in and "started to jump Beauford" (*id.* at 164–65, 169). Santiago testified that, when he saw that one of the boys was about to stab Beauford, he struck that would-be attacker with a golf club. (*Id.* at 356.) Adan testified that, eventually, 20 to 30 people were involved in the fight, and that it "spilled out into the street." (*Id.* at 169 .) According to Santiago, the fight "got out of hand" when "a lot of people came down from the hotel and it started getting ... crowded." (*Id.* at 355.)

***8** At some point, Beauford broke free and started running east on 104th Street, followed by the rest of the boys. (*Id.* at 165.) When a number of "kids" caught up to Beauford and started to "jump on" him again, Beauford's friends all "ran behind him to try and help him to take the kids off him." (*Id.* at 165.) All of the boys were involved in the fight when, according to Adan, Tito "came out of nowhere" (*id.* at 166–67), said something to the crowd like, "You want to fuck with us" (*id.* at 172), and "pulled out a gun and started shooting at the crowd" (*id.* at 167). Adan testified that Tito was the only person he saw with a gun. (*Id.*)

Once shots were fired, everyone started running on 104th Street—some ran east towards Amsterdam Avenue, and some ran west, back towards Broadway. (*See id.* at 173–74.) Adan testified that he then saw a "black guy," whom he had never seen before and who was later identified as Perry, run "right past Tito." (*Id.* at 175–76.) At that point, "more shots rang out," which Adan said were fired by Tito. (*Id.* at 176.) Santiago corroborated Adan's testimony by testifying that Tito, the man in the "big coat" to whom he had been introduced earlier, fired shots at an unknown black man who then ran to and up Amsterdam Avenue, towards 105th Street. (*Id.* at 359–60.)

At the time of the shooting, Gonzalez, an off-duty auxiliary police officer, was visiting his parents who lived on 104th Street between Amsterdam Avenue and Broadway. (*Id.* at 262.) He was in front of his parents' building when he noticed "a large group of teenagers" screaming and shouting in front of the Regent Hotel. (*Id.* at 263–65.) The group, which continued "shouting, arguing, ... [and] cursing," began moving towards him and paused right in front of him, although on the opposite side of the street. (*Id.* at 265.)

Gonzalez then saw Tito, whom he had known from the neighborhood for "several years," walking on Gonzalez's side of the street. (*Id.*) Although they were not friends, Gonzalez knew Tito by that name (which he called his "[s]treet name"), and testified that he was used to seeing him, on average, once or twice a day. (*Id.* at 266–67.) Gonzalez testified that, on that day, Tito was wearing a beige coat with either fur or sheepskin. (*Id.* at 329.) Gonzalez asked him what was going on, and Tito replied, "[W]e got a beef here," and "I have to do what I got to do." (*Id.* at 269.) Gonzalez testified that he told Tito, "[J]ust be careful man, think out what you do before you do it." (*Id.*)

Gonzalez watched Tito cross the street, and saw that, "[a]s he started crossing[,] he pulled out a weapon and opened fire" at a young man across the street. (*Id.* at 269–71.) Gonzalez testified that he could tell the man had been shot because his body "jigged." (*Id.* at 273.) Gonzalez saw the victim run towards Amsterdam Avenue and turn north; Tito initially followed him, shooting at him about four or five times, but then walked away, by heading east across 104th Street. (*Id.* at 271, 280–82.) Gonzalez did not see anyone else in the vicinity shooting a gun. (*Id.* at 281.)

***9** Later, after the police arrived, Gonzalez went to the area where he had seen the victim run. (*Id.* at 284.) He saw the man's body lying in the middle of the block, on Amsterdam Avenue, between 104th and 105th Streets. (*Id.* at 284–85.) At trial, Gonzalez identified a photograph of the victim as being the man he saw shot, and also identified Petitioner as "Tito." (*Id.* at 267–68, 285–86.)

### C. *The Investigation*

At about 9:00 p.m. on the night of the shooting, uniformed Police Officer Benjamin Fong was on radio patrol and received a transmission that someone had been shot on 104th Street and Amsterdam Avenue. (*Id.* at 130.) A few minutes later, Officer Fong found Perry's body in a pool of blood. (*Id.* at 130–32.) He called an ambulance, and the paramedics subsequently declared Perry dead. (*Id.* at 131.) Sergeant Patrick Vahey of the Housing Police also arrived in response to a radio run and secured the scene of the crime. (*Id.* at 384.) He was given five spent shell casings, a cartridge and two pieces of bullet, although he could not recall who gave them to him. (*Id.* at 386–88.)

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Detective Felix Marquez was assigned to handle the investigation into Perry's murder. He interviewed Gonzalez and learned the name "Tito" from him. (*Id.* at 467.) In the spring of 1988, about two months after the murder, Detective Marquez also learned, as a result of witness identifications from a photo array, that Petitioner was the same "Tito" as the shooter. (*Id.* at 467–68; Transcript of Hearing dated Jan. 6, 1998 ("1/6/98 Hearing Tr.") at 64.[4]) The detective was unsuccessful, though, in his efforts to find Petitioner, and he stopped searching for him at some point in 1989. (Tr. at 472.)

Sometime in 1997, nine years after the murder, Detective Marquez was assigned to the Cold Case Unit. (Tr. at 457.) At that time, having learned that Petitioner had been arrested in 1996 for an unrelated crime, the detective prepared a second photo array, which included a photograph of Petitioner from that recent arrest. (1/6/98 Hearing Tr. at 68; Transcript of Hearing dated Jan. 12, 1998 ("1/12/98 Hearing Tr.") at 9.) Detective Marquez showed both photo arrays to two witnesses. One witness identified Petitioner in both photo arrays and the other witness identified Petitioner in the earlier photo array, but not the more contemporary photo array. (1/6/98 Hearing Tr. at 20–25.)

On March 21, 1997, Detective Marquez went to Rikers Island, where Petitioner was then incarcerated, and interviewed him about the 1988 shooting. (*Id.* at 68.) Detective Marquez read Petitioner his *Miranda* rights, and Petitioner acknowledged that he understood those rights and waived his right to counsel. (Tr. at 474.) After being advised that the police were investigating a murder that occurred in 1988 on Amsterdam Avenue between 104th and 105th Streets, Petitioner made a statement, which the detective wrote down and Petitioner signed. (*Id.* at 480.) In that statement, Petitioner said that he had heard shots on the day in question and had seen people running towards him, so he ran up to 108th Street. (*Id.* at 478.) When Detective Marquez informed Petitioner that he had been looking for him, Petitioner replied that he had known this, but that he had not had any reason to speak to the detective and had gone to the Dominican Republic because he "had some problem with some girl." (*Id.* at 481.) Petitioner said he had returned to the United States "a couple of times" since 1990. (*Id.* at 507.)

***10** Four days after the interview, Petitioner participated in a line-up. (1/6/98 Hearing Tr. at 40.) The line-up was viewed by three witnesses, two of whom positively identified Petitioner as the individual who was involved in the shooting. (*Id.* at 44–47.)

### *PROCEDURAL HISTORY*

**A. *Petitioner's Indictment***

On March 27, 1997, Petitioner was indicted for one count of murder in the second degree, in violation of New York Penal Law § 125.25, and one count of criminal possession of a weapon in the second degree, in violation of New York Penal Law § 265.03. (*See* Resp. Mem. at 3.)

**B. *Motion To Suppress Identification Evidence***

On June 6 and June 12, 1998, a pre-trial combined *Huntley/Wade/Dunaway* hearing was held before the Honorable Michael J. Obus in the Supreme Court of New York, New York County.[5] The only aspect of those proceedings that is relevant to Petitioner's habeas petition involved Petitioner's motion to suppress identification evidence, specifically the identifications of Petitioner that resulted from each of the two photo arrays and the eventual line-up.

Based on the record of the suppression hearing, Detective Marquez prepared the first photo array in 1988, shortly after the murder. (1/6/98 Hearing Tr. at 63.) The photo array included a photograph of Petitioner from a 1984 arrest (*id.* at 64), together with photographs of five other Hispanic men with facial features similar to those of Petitioner. (*See* Order of Hon. Michael J. Obus, dated Mar. 9, 1998 ("3/9/98 Order") at 10.) The photographs were taken against different backgrounds, and only the photograph of Petitioner was taken in front of a height chart. (1/12/98 Hearing Tr. at 5–8.) According to the trial judge, however, the height chart was not actually visible from the photograph, given the way in which it was displayed. (*See* 3/9/98 Order at 10.) Detective Marquez showed the photo array to two witnesses (whose names were not disclosed at the suppression hearing, except *in camera* ), and both identified Petitioner as the shooter. (1/6/98 Hearing Tr. at 63–64; *see* 3/9/98 Order at 2.)

Detective Marquez prepared the second photo array in 1997. (*See* 3/9/98 Order at 2.) It contained a more recent photograph of Petitioner, and photographs of five fillers, who were different from those whose photographs appeared in the first photo array. (*See* 1/12/98 Order at 11.) Detective Marquez showed both the first and the second photo array to the same two witnesses who had identified Petitioner, nine years earlier, from the first photo array. (*See* 3/9/98 Order at 2.) The first witness positively identified Petitioner in both photo

arrays, and the second witness identified Petitioner in the first array only. (1/6/98 Hearing Tr. at 20–25.) In addition, on March 5, 1997, Detective Joseph Redican, who was working with Detective Marquez, showed both photo arrays to an inmate at Rikers Island. (*Id.* at 20–21.) From the first photo array, this inmate identified Petitioner as "the mother-fucker who pulled out on Stinky" (*see id.* at 20); he also selected Petitioner from the second photo array and said that he had just seen Petitioner at Rikers Island (*id.* at 22). Additionally, on March 6, 1997, Detective Redican showed the two photo arrays to a fourth witness. (*Id.* at 23, 35.) This witness identified Petitioner from the first photo array as the man who had been wearing a fur coat and had pulled out a gun and shot in the direction of "Stinky," but the witness was unable to identify Petitioner in the second array which included a more recent photograph. (*Id.* at 24–25.)

***11** Finally, the police conducted a line-up identification procedure on March 25, 1997. (*See* 3/9/98 Order at 4.) At the time of the line-up, Petitioner was 30 years old, approximately 5′6″ tall, and weighed 240 pounds. (1/6/98 Hearing Tr. at 56–59.) The five line-up "fillers" were between 23 and 36 years of age, ranged from 5′4″ to 6′1″ in height, and weighed between 150 and 250 pounds. (*Id.* at 56–59.) All six people in the line-up were seated. (*Id.* at 60.) The first two witnesses who had identified Petitioner from the photo arrays identified him again from the line-up. (*See* 3/9/98 Order at 5.) A third witness, however, who had not previously made a photo identification, failed to select any of the line-up participants. (*Id.*) In order to maintain the integrity of the line-up, Petitioner and the fillers remained in the same place, but were assigned different numbers when the second and third witnesses viewed the lineup. (*Id.* at 45.)

At the suppression hearing, Petitioner argued that the first photo array was unduly suggestive because Petitioner's photograph, unlike the others in the array, was a "mug shot" with a height chart in the background. (1/12/98 Hearing Tr. at 34.) Petitioner also argued that it was improper for the police to have shown witnesses both the first and second photo arrays, because he was the only person whose photograph appeared in both arrays. (*Id.* at 35 .) Finally, Petitioner argued that the individuals in the line-up were not all similar in terms of their height and weight, rendering the line-up procedure unfair. (*Id.* at 34.)

In a written decision dated March 9, 1998, the trial court denied Petitioner's suppression motion, finding that each of the identification procedures "was conducted properly without suggestion of any kind, and was a fair test of the ability of each witness to make an identification." (3/9/98 Order at 10.) The court addressed each of Petitioner's various arguments regarding the alleged suggestiveness of the procedures, and rejected them in turn. (*Id.* at 10–11.)

### C. *Motion To Dismiss for Unreasonable Pre-indictment Delay*

On March 16, 1998, one day before the commencement of his trial, Petitioner moved to dismiss the indictment on the ground of impermissible pre-indictment delay. Petitioner argued that he had been back in the United States in 1994, living within the five boroughs of New York City, yet law enforcement had not arrested him until 1997, nine years after the murder. The trial court denied the motion for being procedurally improper and untimely. (*See* Resp. Mem. Ex. C (minutes of Mar. 16, 1998 court proceedings) at 23–24.)

### D. *Trial and Sentence*

After Petitioner's first trial ended in a hung jury, Petitioner was tried a second time from September 24 to October 1, 1998. In his opening statement in the second trial, the prosecutor told the jury that the prosecution would call Greg Smith ("Smith"), a state prisoner, who would testify that he had taken part in the fight on the night of Perry's shooting and that he had seen the shooter. (*See* Trial Tr. at 88.) The prosecutor also stated that Smith would testify that he had recognized the shooter in a photo array in 1988, but that he might not be able to identify Petitioner in the courtroom. (*Id.*) The prosecution, however, never called Smith to testify.

***12** At trial, the prosecution's witnesses included Santiago, Taino, and Adan, who each described in detail the events of March 10, 1988. The prosecution also called Gonzalez, who provided an eye-witness account of the shooting and identified the shooter, "Tito," as Petitioner. The prosecution also called Linda Cordero, who testified that she was a member of Petitioner's family and that she also knew him as "Tito." In addition, the prosecution called Detective Fong (who described the crime scene), Detective Frank Nicolosi (who testified that the ballistics evidence collected from the scene of the shooting confirmed that the bullets were all of the same caliber and they had been fired from the same gun), Detective Marquez (who recounted Petitioner's 1997 statement to the police regarding his whereabouts during the shooting and during subsequent years), and Dr. Joseph Veress (who testified that the autopsy confirmed that Perry had been shot from a distance of more than two feet).

The defense did not call any witnesses, but read two stipulations by the parties. Essentially, the first stipulation provided that, if Detective Thomas McKenna had been called to testify by the defense, he would have testified that he took a written statement from Santiago on March 24, 1988, which Santiago signed, and in which Santiago stated, *inter alia,* that "[a]nother guy dressed in leather came and pulled a gun but he didn't shoot." (Tr. at 555.) The second stipulation recited that Detective Marquez had told prosecutors that, when he questioned Petitioner in 1997, Petitioner said that he had returned from the Dominican Republic in 1990. (*Id* . at 556.)

On October 1, 1998, the jury found Petitioner guilty of murder in the second degree and criminal possession of a weapon in the second degree. (*See* Trial Tr. at 692–93.) On December 1, 1998, the court sentenced Petitioner to concurrent sentences of 20 years to life for the murder count and four to 12 years on the weapons possession count. (*See* Sentencing Colloquy at 11–12.)

**E. *Direct Appeal***

Petitioner appealed his conviction to the Appellate Division, First Department. In a brief dated March, 2002, Petitioner asserted each claim that he now raises in his habeas petition. (*See* Resp. Mem. Ex. E (Brief for Appellant, dated March 2002).) On September 23, 1999, the Appellate Division affirmed Petitioner's conviction. *See People v. Chaparro,* 303 A.D.2d 277, 758 N.Y.S.2d 608 (1st Dep't 2003).

With respect to Petitioner's claim of pre-indictment delay (his second habeas claim), the Appellate Division held that Petitioner's

> eve-of-trial motion to dismiss on the ground of preindictment delay was properly denied as untimely, since the motion was based on events occurring prior to the criminal action, and since [Petitioner] did not establish good cause for his belated motion. In any event, the motion was lacking in merit because there is no indication of bad faith by law enforcement or specific prejudice to defendant. Defendant's flight to the Dominican Republic, and the fact that law enforcement authorities had no reason to be aware of his return to the United States, was the principal cause of the nine-year delay.

***13** *Chaparro,* 303 A.D.2d at 277, 758 N.Y.S.2d 608 (citations omitted).

As to Petitioner's ineffectiveness of counsel claim (his first habeas claim), the court held: "Similarly, trial counsel's failure to make a timely dismissal motion did not cause any prejudice to [Petitioner], since the motion had little or no chance of success. On the totality of the record, we conclude that defendant received meaningful representation." *Id.*

With respect to Petitioner's motion to suppress identification testimony (his third habeas claim), the Appellate Division held that Petitioner's "motion to suppress identification testimony was properly denied." *Id.* The court went on to find that

> [t]he photo array was not rendered impermissibly suggestive by the fact that defendant's photograph was the only one with a height chart in the background, since the photos were otherwise similar and since they were displayed in a format that concealed the height chart. The lineup was not rendered impermissibly suggestive by a minor weight discrepancy, where the perpetrator's weight was not a factor in the identification.

*Id.* (citations omitted)

Moving on to Petitioner's insufficiency of the evidence claim (his sixth habeas claim), the Appellate Division found that "[t]he verdict was based on legally sufficient evidence ... [and that] there [was] no basis for disturbing the jury's determinations concerning credibility." *Id.*

Then, with respect to Petitioner's prosecutorial misconduct claim (his fourth habeas claim), the court held that Petitioner "was not deprived of a fair trial by the prosecutor's reference in his opening statement to a witness who ultimately did not

testify. There was no evidence of bad faith and no possibility that the brief mention of the witness could have caused any prejudice." *Id.* (citations omitted).

Finally, while the Appellate Division did not specifically address Petitioner's claim that the trial court should have excluded expert testimony regarding the ballistics evidence (his fifth habeas claim), the court stated that it had "considered and rejected" Petitioner's remaining claims. *Id.*

On April 1, 2003, Petitioner sought leave to appeal the affirmance of his conviction to the Court of Appeals, seeking to raise "the six issues raised in the brief ... below," and referring the court to that brief "for an in depth analysis of these issues." (Resp.Mem.Ex. H.) The Court of Appeals denied leave to appeal on May 28, 2003. (*See* Resp. Mem. Ex. I.) The instant petition followed.

**F. *The Habeas Petition***

Petitioner timely filed his federal petition for a writ of habeas corpus on August 23, 2004. (*See* Pet.) [6] Respondent filed an opposition to the petition on May 16, 2005 (Memorandum of Law in Support of Answer Opposing Petition for a Writ of Habeas Corpus, dated May 16, 2005 (Dkt.8)), and Petitioner filed a reply on July 6, 2005 (Response to allegations of respondent's answer to the writ of habeas corpus, dated July 6, 2005 (undocketed)).

***DISCUSSION***

**I. *APPLICABLE LEGAL STANDARDS***

**A. *Exhaustion***

***14** A federal court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997). To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the "initial opportunity to pass upon and correct alleged violations of ... [the] prisoners' federal rights." *Picard,* 404 U.S. at 275 (citation omitted).

The standards for presenting federal constitutional claims to state courts are not so stringent as to require the recitation of "book and verse on the federal constitution." *Id.* at 278 (citation omitted). The state courts, however, must be "apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' " *Jones v. Vacco,* 126 F.3d 408, 413 (2d Cir.1997) (quoting *Daye v. Attorney Gen.,* 696 F.2d 186, 191 (2d Cir.1982) (*en banc* )) (alteration in original). Petitioners can ensure that state courts are "alerted to the fact that [they] are asserting claims under the United States Constitution," *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995), by presenting their claims in a fashion demonstrating either

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) [an] assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) [an] allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye,* 696 F.2d at 194; *accord Jackson v. Edwards,* 404 F.3d 612, 618–19 (2d Cir.2005); *see also Petrucelli v. Coombe,* 735 F.2d 684, 688 (2d Cir.1984). Once the state courts are apprised of the constitutional nature of a petitioner's claims, the exhaustion requirement is fulfilled when those claims have been presented to "the highest court of the pertinent state." *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994) (citing *Pesina v. Johnson,* 913 F.3d 53, 54 (2d Cir.1990)), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995).

**B. *Standard of Review***

Where a federal constitutional claim has been adjudicated on the merits by the state court, this Court must accord substantial deference to the state court's decision under the standard of review dictated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254(d); *see also Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir.2001) (noting that "adjudicated on the merits" means "a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground"). The relevant section of AEDPA provides that

> ***15** [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In addition, under AEDPA, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under AEDPA, a state court decision is "contrary to" clearly established federal law where the state court either applies a rule that "contradicts the governing law" set forth in Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision" and arrives at a different result.[7] *Williams,* 529 U.S. at 405–06. An "unreasonable application" of clearly established federal law occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to "a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade,* 538 U.S. 63, 73–76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). The state court's decision, however, "must have been more than incorrect or erroneous"—rather, "[t]he state court's application must have been 'objectively unreasonable.' " *Wiggins v. Smith,* 539 U.S. 510, 520–21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting *Williams,* 529 U.S. at 409).

## II. *PETITIONER'S CLAIMS*

### A. *Ineffective Assistance of Trial Counsel (Claim 1)*

Petitioner's first claim for habeas relief alleges that the performance of his trial counsel at both his first and second trials was constitutionally defective. (*See* Pet. Mem. at 4.) At his first trial, which ended in a hung jury, Petitioner was represented by Mimi Brill, Esq. At his second trial, which resulted in Petitioner's conviction, he was represented by Rachel Goldberg, Esq. Petitioner specifically contends that Ms. Brill was ineffective for failing to make a timely motion to dismiss for pre-indictment delay, arguing that, had such a motion been timely made, the court would have dismissed the case. (*See* Pet. Mem. at 4.) As to Ms. Goldberg, Petitioner contends that, had she re-filed the same motion before the second trial, the trial court would have dismissed his case at that time. (S*ee id.* at 5.)

Petitioner exhausted his ineffective assistance of counsel claim by raising it on his direct appeal. The Appellate Division rejected the claim in its entirety, holding that "trial counsel's failure to make a timely dismissal motion did not cause any prejudice to defendant since the motion had little or no chance of success." *See Chaparro,* 303 A.D.2d at 277, 758 N.Y.S.2d 608. As the Appellate Division adjudicated the claim on the merits, its determination is subject to review under AEDPA. *See* 28 U.S.C. § 2254(d).

***16** The right to counsel in criminal prosecutions is grounded in the Sixth Amendment. Because the Constitution "envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results [,] ... 'the right to counsel is the right to the effective assistance of counsel.' " *Strickland v. Washington,* 466 U.S. 668, 685–86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (quoting *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). Counsel can deprive a criminal defendant of this right "simply by failing to render 'adequate legal assistance.' " *Id.* at 686 (citation omitted). In order for counsel to be deemed constitutionally "ineffective," however, counsel's conduct must have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* Thus, to prevail on an ineffective assistance of counsel claim, Petitioner must show: (1) that counsel's performance "fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. The Court may reject an ineffective assistance of counsel claim for failure to satisfy either of these prongs of the *Strickland* standard, without reaching the other. *See id.* at 697.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

In this instance, there is no question that Petitioner cannot satisfy the second prong of the *Strickland* test. As explained fully below, there is no reason to believe that the outcome of Petitioner's case would have been different had counsel moved in a timely fashion to dismiss the charges based on pre-indictment delay, given that motion's apparent lack of merit. (*See infra* at 27–29 .) Indeed, the Appellate Division considered the merits of Petitioner's pre-indictment delay claim and found no basis for the claim. Thus the dismissal motion, even if it had been made sooner, would likely have been denied. As Petitioner cannot show the requisite prejudice to prevail on his ineffective assistance of counsel claim, the claim was properly rejected by the state court on that ground.

Moreover, there is a "strong presumption" that "counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland,* 466 U.S. at 689, and, in this case, it is apparent that Petitioner was ably defended by trial counsel. Petitioner's first trial resulted in a hung jury, and a review of the transcript of his second trial reveals that his counsel vigorously challenged the credibility of the prosecution's witnesses and highlighted weaknesses in the prosecution's identification evidence. (*See, e.g.,* Tr. 125, 208, 212–13, 309–10, 313–319, 324–25, 363, 370–71, 561–62, 566–76.) Taking the record as a whole, it simply cannot be said that either attorney's performance fell below objective standards of reasonableness. *See Cotto v. Lord,* No. 99 Civ. 4874(JGK), 2000 U.S. Dist. LEXIS 19015, at *52–53, 2001 WL 21246 (S.D.N.Y. Jan. 9, 2001) (explaining that a petitioner's claims of ineffective assistance of counsel should be assessed by looking at counsel's representation as a whole). For this reason, as well, Petitioner cannot prevail on his ineffective assistance claim and I recommend that it be dismissed.

**B. *Pre–Indictment Delay (Claim 2)***

***17** In his second claim, Petitioner asserts that he was denied due process as the result of an unreasonable pre-indictment delay. (*See* Pet. Mem. at 8.) Construed liberally, this claim constitutes a 14th Amendment challenge to the trial court's denial of Petitioner's motion to dismiss the indictment on the ground of delay and the Appellate Division's affirmance of that ruling. Petitioner raised this claim on his direct appeal, in constitutional terms, and it is therefore exhausted for purposes of habeas review.

In addressing this claim, the Appellate Division first rejected the claim on the ground that Petitioner had failed to follow New York State's procedural rules for presenting his motion to the trial court. *See Chaparro,* 303 A.D.2d at 277, 758 N.Y.S.2d 608 (finding that Petitioner's motion was "properly denied as untimely ... since defendant did not establish good cause for his belated motion"). Only then did the Appellate Division go on to make a determination on the merits, holding that, "[i]n any event, the motion was lacking in merit because there is no indication of bad faith by law enforcement or specific prejudice to the defendant." *Id.*

**1. *Having Been Decided by the State Court on an Independent and Adequate State Law Ground, this Claim Is Procedurally Barred.***

Federal habeas review is not available where a claim has already been decided by a state court, and the state court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In such a case, the state law ground need not be substantive. *Id.* It may also be procedural, such as the rejection of a claim as unpreserved under the state's established procedural rules. *See, e.g., Montalvo v. Annetts,* No. 02 Civ. 1056(LAK)(AJP), 2003 U.S. Dist. LEXIS 22619, at *68–70, 2003 WL 22962504 (S.D.N.Y. Dec. 17, 2003) (procedural rule was an adequate and independent state law ground).

This Court must look to the last reasoned state court opinion to determine whether the state court found Petitioner's claim to be procedurally defaulted under state law. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). To determine whether the state law ground on which the state court decision rested was "truly an *independent* basis for decision or merely a passing reference, such reliance on state law must be clear from the face of the opinion." *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000) (emphasis added) (internal quotation marks and citation omitted); *see also Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997) (explaining that, "in order to preclude federal review, the last state court to render judgment must clearly and expressly state that its judgment rested on a state procedural bar") (internal quotation marks and citation omitted). To be deemed *adequate,* the state procedural rule on which the court's decision was based must be a rule that is "firmly established and regularly followed" by the state in question, *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991), and must not have been "misapplied in [the petitioner's] case in particular," *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003) (internal quotation marks and citation omitted). If the decision of the Appellate Division was based

upon an independent and adequate state-law ground, the claim will be procedurally barred from federal habeas review.

***18** In this case, it is clear from the face of the Appellate Division's decision (which was the last reasoned state court opinion in this case) that the court rejected Petitioner's pre-indictment delay claim based on a state procedural rule. *See People v. Chaparro,* 303 A.D.2d 277, 758 N.Y.S.2d 608 (1st Dep't 2003). The Appellate Division held that "[Petitioner's] eve-of-trial motion to dismiss on the grounds of preindictment delay was properly denied as untimely, since the motion was based on events occurring prior to the criminal action, and since [Petitioner] did not establish good cause for his belated motion." *Id.* at 277, 758 N.Y.S.2d 608. This holding is an application of N.Y.Crim. Proc. L. § 255.20, which provides that pre-trial motions must be filed within 45 days of arraignment unless with due diligence the defendant could not have been aware of the issue or could not have reasonably raised it within the 45 days. The Appellate Division's rejection of the claim therefore rested on an "independent" state ground.[8] *See, e.g., Riley v. New York,* No. 01 Civ. 8051(DLC)(RLE), 2004 U.S. Dist. LEXIS 8653, at *12, 2004 WL 1089121 (S.D.N.Y. May 12, 2004) (Report and Recommendation) (federal habeas court was procedurally barred from reviewing claim that was defaulted in state court pursuant to the 45–day time limit in CPL § 255.20), *adopted by* 2004 U.S. Dist. LEXIS 10847 (S.D.N.Y. June 14, 2004).

Further, the state procedural rule requiring the timely filing of motions is firmly established in New York state law and regularly followed and is thus an "adequate" ground for the Appellate Division's rejection of Petitioner's claim. *See People v. Dean,* 74 N.Y.2d 643, 644, 542 N.Y.S.2d 512, 540 N.E.2d 707 (1989) (where "[d]efendant's motion to dismiss was made over three months after his arraignment and he did not request an extension of time," trial court properly denied the motion as untimely pursuant to CPL 255.20); *People v. Sheremet,* 41 A.D.3d 1038, 1040, 838 N.Y.S.2d 251 (3d Dep't 2007) ("A court may summarily deny any pretrial motions filed after the 45–day period." (citing CPL 255.20)); *People v. Sparer,* 293 A.D.2d 630, 631, 740 N.Y.S.2d 246 (2d Dep't 2002) (denying motion to dismiss indictment pursuant to CPL 255.20 where motion was not made within 45 days of arraignment); *People v. Graham,* 258 A.D.2d 387, 685 N.Y.S.2d 678 (1st Dep't 1999) (summary denial of motion was proper pursuant to CPL 255.20 where the 45–day period had elapsed); *see also People v. Davidson,* 98 N.Y.2d 738, 739, 751 N.Y.S.2d 161, 780 N.E.2d 972 (2002) ("The time restrictions fixed by CPL 255.20 are not casual. Rather, the deadlines imposed by the statute rest on the strong public policy to further orderly trial procedures and preserve scarce trial resources" (citations and quotation marks omitted)).

Finally, Petitioner has not shown that the state preservation rule was misapplied in his particular case. *See Cotto v. Herbert,* 331 F.3d at 240. As noted above, CPL § 255.20(1) provides that "all pre-trial motions shall be served or filed within forty-five days after arraignment." In this case, Petitioner was arrested and indicted in March 1997, and he necessarily knew by that time of the alleged "delay." Yet he did not file his motion until March of 1998, approximately one year later. Under the circumstances, the state court appropriately applied the state time-bar to his claim.

***19** On this record, the Appellate Division's ruling that Petitioner failed to preserve his pre-indictment delay claim was based on an adequate and independent state ground, and thus the claim is procedurally barred from review by this Court. In order to overcome such a procedural bar, Petitioner would have to demonstrate (1) both "cause and prejudice for the default," *Gray v. Netherland,* 518 U.S. 152, 162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) (citations omitted); *accord Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 633 (2d Cir.2001) (citations omitted), or (2) that "failure to consider the [defaulted] claim will result in a fundamental miscarriage of justice," *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (internal quotation marks and citations omitted).

"Cause" for a procedural default is established when "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier,* 477 U.S. 478, 488 (1986); *see also Ayuso v. Artuz,* No. 99 Civ. 12015(AGS)(JCF), 2001 U.S. Dist. LEXIS 2504, at *25, 2001 WL 246437 (S.D.N.Y. Mar. 7, 2001). "Prejudice" requires a petitioner to demonstrate that the alleged constitutional error worked to the petitioner's "actual and substantial disadvantage." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Here, although Petitioner argues that his trial counsel was ineffective for failing to raise his "delay" claim earlier, the Court has already determined that his counsel's conduct did not fall below constitutionally acceptable levels, and thus Petitioner cannot rely on his counsel's supposed failure as "cause" for his procedural default. Moreover, as discussed further below, Petitioner has not shown that his pre-indictment delay claim has merit, and that—if timely

raised—it would have resulted in the dismissal of the indictment against him; thus, Petitioner has not demonstrated the requisite "prejudice" to overcome the procedural bar.

Finally, Petitioner has not demonstrated that a "fundamental miscarriage of justice" would occur unless this Court were to review his claim. This exception to the procedural bar is quite narrow; it is "concerned with actual as compared to legal innocence ." *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). To meet this standard, a petitioner would have to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier,* 477 U.S. at 496. "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence —whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In this case, Petitioner has not come forward with any new evidence of actual innocence. Accordingly, this Court is barred from reviewing Petitioner's claim of pre-indictment delay.

**2. *The Claim, in Any Event, Is Without Merit.***

***20** Even if this claim were not procedurally barred, the claim would be subject to dismissal on the merits, under the standards set forth in AEDPA. Petitioner argues that he was denied due process because he was indicted nine years after the alleged crime. (*See* Pet. Mem. at 8.) The Appellate Division rejected this argument on the ground that "there [wa]s no bad faith by law enforcement or specific prejudice to the defendant." *Chaparro,* 303 at 277, 758 N.Y.S.2d 608. In particular, the court found Petitioner's flight to the Dominican Republic to be the reason for the nine-year delay, *see id.,* a factual finding that must be presumed correct under AEDPA, *see* 28 U.S.C. § 2254(e)(1). As Petitioner has not shown by clear and convincing evidence that this factual finding was in error, and, indeed, has made no specific showing of any bad faith by the prosecution or prejudice resulting from the delay, Petitioner's claim would necessarily fail.

"In *United States v. Marion,* the Supreme Court recognized that a pre-indictment delay may violate the Due Process Clause." *Georgison v. Donelli,* No. 04 Civ. 1444(DC), 2005 U.S. Dist. LEXIS 11363, at *20, 2005 WL 1384015 (S.D.N.Y. June 9, 2005) (citing 404 U.S. 307, 324, 30 (1971)). Yet "[i]n order to prevail on a claim of unconstitutional pre-indictment delay, a petitioner must show that he suffered actual prejudice as a result of the delay and that the delay was an intentional device to gain a tactical advantage." *Denis v. Upstate Corr. Facilty,* 361 F.3d 759, 760 (2d Cir.2004) (citing *Marion,* 404 U.S. at 324); *see also United States v. Mejias,* 552 F.2d 435, 443 (2d Cir.1997) (defendant failed to show that pre-indictment delay was a violation of due process). The petitioner bears a "heavy burden" in making such a claim. *United States v. Cornielle,* 171 F.3d 748, 752 (2d Cir.1999).

Here, Petitioner has not demonstrated that the prosecution intentionally delayed his indictment to gain a "tactical advantage." The Appellate Division found otherwise, based on a record that reflects that law enforcement tried and failed to locate Petitioner after he left this country for the Dominican Republic, and that it learned only belatedly of Petitioner's return. *See Chaparro,* 303 A.D.2d at 277, 758 N.Y.S.2d 608. Plaintiff has offered no evidence of bad faith to refute this presumptively correct finding.

Further, Petitioner has failed to make any particularized showing that he suffered "actual prejudice" from the delay. *See Denis,* 361 F.3d at 760; *see also United State v. Castellano,* 610 F.Supp. 1359, 1385 (S.D.N.Y.1985) (holding that, to prevail on a claim of "prejudice," a petitioner must particularize his harm, and that "[t]he passage of time, the attendant loss of evidence, and the dimming of witnesses' memories, is insufficient by itself to show prejudice"). Petitioner argues that the nine-year delay in this case prevented the adequate preparation of his case, asserting that it caused "the loss of witnesses who could have verified his claim that he was not the Tito that witnesses proclaimed to have done the shooting." (Pet. Mem. at 9.) Petitioner, however, has not shown that any particular evidence was lost or that any particular witness was unavailable on account of the delay. *See Cornielle,* 171 F.3d at 752 ("[P]rejudice is commonly demonstrated by the loss of documentary evidence or the unavailability of a key witness."). Petitioner's generalized reference to difficulties that would have equally burdened both the prosecution and the defense is insufficient.

***21** Lastly, Petitioner has offered no support for the proposition that the pre-indictment delay in his case was so long that, standing alone, it should be deemed prejudicial. Where an indictment is brought within the statute of limitations, "there is a presumption that the [petitioner] was not prejudiced." *Georgison,* 2005 U.S. Dist. LEXIS 11363, at *21, 2005 WL 1384015 (citing *Cornielle,* 171 F.3d at 752); *see also Stoner v. Graddick,* 751 F.2d 1535, 1544 (11th Cir.1985) (in the absence of proof of actual prejudice, "a guidepost for judging impermissible delay is the statute

of limitations”). Here, Petitioner was charged with murder, for which there is no statute of limitations. *See* N.Y.Crim. Proc. L. § 30.10(2)(a). Under the circumstances, and in the absence of any detailed showing by Petitioner of bad faith or actual prejudice, the Appellate Division's rejection of Petitioner's pre-indictment delay claim was neither contrary to, nor an unreasonable application of federal law, and I therefore recommend that the claim be dismissed.

### C. *Unduly Suggestive Identification Procedures (Claim 3)*

In his third claim, Petitioner challenges his conviction by asserting that the trial court violated his Fourth Amendment rights by failing to suppress identification evidence which, according to Petitioner, resulted from the use of unduly suggestive procedures. (*See* Pet. Mem. at 11.) The Appellate Division rejected this claim on the merits, and thus the claim is exhausted and subject to review by this Court under the deferential standard set out in AEDPA.

Pre-trial identification procedures violate due process where, considering the totality of the circumstances, they are so unnecessarily suggestive as to create “a very substantial likelihood of irreparable misidentification.” *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1997) (quoting *Simmons v. U.S.,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). When evaluating the totality of the circumstances surrounding a pre-trial identification procedure, courts consider several factors, including “the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.” *Neil v. Biggers,* 409 U.S. 188, 200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), *see also Manson,* 432 U.S. at 114. These factors are weighed against the “corrupting effect” of any suggestive identification. *Manson,* 432 U.S. at 114.

In challenging the identification procedures used in this case, Petitioner has not argued that the witnesses lacked the opportunity to view the shooter during the crime, were inattentive at that time, gave inaccurate prior descriptions of the shooter, were uncertain as to their identifications, or made identifications that were in doubt because of the passage of time. Rather, Petitioner's argument relates to the fairness of the selection of the photographs used in the photo arrays and of the fillers used in the line-up. More specifically, Petitioner complains about the presence of a height chart in the photograph of him that was used in the initial photo array and the use of line-up participants who were of varying heights and weights. (*See* Pet. Mem. at 12.)

***22** Neither of Petitioner's arguments are persuasive. As to the first photo array, the trial court found that the height chart in Petitioner's photograph was “not reveal[ed], much less emphasize[d],” further found that the other photographs used in the array were all of “young Hispanic men with similar facial features” to Petitioner, and concluded that the photo array provided a “fair test of the ability of each witness to make an identification.” (*See* Resp. Mem. Ex. A at 10.) The Appellate Division agreed that the photographs used in this photo array were “displayed in a format that concealed the height chart,” and that the photographs were otherwise similar. *Chaparro,* 303 A.D.2d at 278, 758 N.Y.S.2d 608. [9]

As to the line-up procedure, although Petitioner complains that the height of the participants varied, he concedes that all were seated during the identification process (*see* Resp. Mem. Ex. E, at 41), which presumably lessened any emphasis on height. As to any variations in weight, the trial court found that such variations did not render the line-up procedure unduly suggestive, given the substantial similarity of the facial appearances of the participants and the fact that Petitioner's weight had substantially increased over time, “as well as the absence of any indication that the shooter's weight was a significant factor in the identification.” (Resp. Mem. Ex. A, at 11.) The Appellate Division did not disturb these factual findings, holding that “[t]he lineup was not rendered impermissibly suggestive by a minor weight discrepancy, where the perpetrator's weight was not a factor in the identification.” *Chaparro,* at 278, 758 N.Y.S.2d 608.

All of the factual findings of the state court must be presumed correct in the absence of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), and, here, Petitioner has not come forward with any evidence, much less clear and convincing evidence, to challenge the findings previously made. Accepting the state court's factual findings as this Court then must, it is apparent that neither the photo arrays nor the line-up were constitutionally defective.

A line-up is only unduly suggestive if the defendant “meets the description of the perpetrator previously given by the witness and the other lineup participants obviously do not.” *Raheem v. Kelly,* 257 F.3d 122, 133 (2d Cir.2001). Precise similarity among participants in a photo array or line-up is not required to satisfy constitutional concerns.

*See* *Priester v. Strack,* No. 98 Civ. 7960(LAK), 2001 WL 980563, at *4 (S.D.N.Y. Aug.23, 2001) (noting that "[t]he Constitution's due process clause does not require that an accused be surrounded at a lineup by persons nearly identical in appearance"); *accord* *United States v. Reid,* 517 F.2d 953, 956 n .15 (2d Cir.1975). In this case, where the participants in the identification procedures apparently had similar facial features; where the challenged "height chart" on the first photo array was concealed; and where the participants in the line-up were seated and their challenged differences in weight were "minor," there is no basis for concluding that any of the procedures created "a very substantial likelihood of irreparable misidentification." *Manson,* 432 U.S. at 116. Accordingly, this Court cannot conclude that the decision of the Appellate Division rejecting Petitioner's claim that the identification procedures were unduly suggestive was either contrary to, or an unreasonable application of federal law, and I recommend that this claim be dismissed.

**D. *Prosecutorial Misconduct (Claim 4)***

***23** Petitioner's fourth claim alleges that he was denied his constitutional right to a fair trial because the prosecutor mentioned in his opening statement a witness who was never called to testify. (Pet. Mem. at 14.) Petitioner exhausted this claim by raising it on his direct appeal. [10] The Appellate Division denied the claim on the ground that there was "no evidence of bad faith and no possibility that the brief mention of a witness could have caused prejudice." *Chaparro,* 303 A.D.2d at 278, 758 N.Y.S.2d 608. As the Appellate Division adjudicated the claim on the merits, its determination is subject to review under AEDPA. *See* 28 U.S.C. § 2254(d).

In order for Petitioner to prevail on his allegations of prosecutorial misconduct, he would have to show that the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *see also* *Herrera v. Senkowski,* 77 Fed. Appx. 549, 551 (2d Cir.2003) ("The Supreme Court has held that prosecutorial misconduct violates due process when it is so prejudicial as to render the trial 'fundamentally unfair.' " (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 645, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974))); *Tankleff v. Senkowski,* 135 F.3d 235, 252 (2d Cir.1998) (prosecutor's actions must be "so egregious as to violate the defendant's due process rights" (citations omitted)). Accordingly, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

Petitioner asserts that the prosecutor engaged in misconduct by failing to produce Smith as a trial witness after informing the jury, in his opening statement, that Smith had been a participant in the fight and had identified Petitioner in a line-up. (*See* Pet. Mem. at 14–15.) In the absence of any evidence of bad faith, however, the prosecutor's statement cannot be viewed as severe misconduct. According to the prosecutor, he initially had every intention of calling Smith to testify, but then decided, as the trial progressed, to "streamline his presentation" by withdrawing a witness who "provided no evidence that could not come from another source." (*See* Resp. Mem. at 58–59.) This Court's review of the trial record provides no basis to question that explanation, and Petitioner offers none. Indeed, it appears from the record that the initially promised testimony by Smith would have been largely duplicative of the evidence actually provided at trial by Taino, Adan, Santiago, and Gonzalez.

Moreover, even if the prosecutor's statement was improper, the trial court's instructions to the jury were likely sufficient to cure any resulting prejudice to Petitioner. *See, e.g., Tankleff v. Senkowski,* 135 F.3d at 253 ("looking at all the circumstances, we conclude that the standard instructions given by the trial court were probably sufficient to cure any harm that the prosecutor's misstatements may have caused."); *Crawford v. Keane,* No. 00 Civ. 6672(DC), 2001 U.S. Dist. LEXIS 11739, at *17, 2001 WL 913947 (S.D.N.Y. Aug. 13, 2001) ("the jury charge cured any effect that inappropriate prosecutorial comments might have had on the jury." (citation omitted)). In this case, the court instructed the jury that its decision was to be drawn from the evidence presented during the trial and that the opening and closing statements did not constitute evidence. (*See* Trial Tr. at 76, 91, 647–48.)

***24** Finally, in the circumstances of this case, it cannot be said that the prosecutor's statement "so infected the trial with unfairness as to make the resulting conviction a denial of due process." The prosecutor did not tout Smith's anticipated testimony "as a crucial part of the prosecution's case," and thus " 'it is hard ... to imagine that the minds of the jurors would be so influenced by such incidental statements during this long trial that they would not appraise the evidence objectively and dispassionately.' " *Frazier v. Cupp,* 394 U.S. 731, 736, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (quoting *United States v. Socony–Vaccum–Oil Co.,* 310 U.S. 150, 239, 60 S.Ct. 811, 84 L.Ed. 1129 (1940)). Further, the record

contained substantial evidence of Petitioner's guilt, including the testimony of several witnesses who placed "Tito" on the scene in the possession of a gun, Petitioner's own statement that he was in the vicinity of the shooting, and Gonzalez's eyewitness identification of Petitioner as the shooter. Overall, based on the totality of the evidence, it is unlikely that the prosecutor's cursory comments about an uncalled witness would have substantially affected the jury's verdict.

For all these reasons, the Appellate Division did not unreasonably apply or act contrary to clearly established federal law in concluding that the prosecutor's comment in his opening statement did not deprive Petitioner of a fair trial. Accordingly, I recommend that Petitioner's prosecutorial misconduct claim be dismissed.

**E. *Improper Admission of Evidence (Claim 5)***

In his fifth claim, Petitioner alleges that the trial court erred by permitting expert ballistics testimony, when the prosecution failed to establish a sufficient chain of custody for the ballistics evidence. (*See* Pet. Mem. at 16.)

**1. *The Claim Is Unexhausted and Procedurally Barred.***

While, on his direct appeal, Petitioner challenged the ballistics testimony and related expert testimony, he did not do so in federal constitutional terms (*see* Ex. E at 53–55), and therefore the claim is unexhausted. *See* *Daye,* 696 F.2d at 191 (claim must be articulated in federal constitutional terms sufficient to alert the state court to the federal nature of the claim); *see also* *Jones v. Vacco,* 126 F.3d 408, 413 (2d Cir.1997) ("presentation of the claim must have been likely to alert the court to the claim's federal nature." (quotation marks omitted)); *Blazic v. Henderson,* 900 F.2d 534, 537 (2d Cir.1990) (a petitioner must present both the factual and the legal premises of the claim to the state courts).

Where federal habeas claims are unexhausted, but the petitioner no longer has any available avenue to pursue those claims in state court, this Court will "deem" the claims exhausted. *See* *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380; *Bossett,* 41 F.3d at 828–29; *Grey v. Hoke,* 933 F.2d 117, 120–21 (2d Cir.1991). Here, Petitioner could have raised his unexhausted claim in constitutional terms on his direct appeal to the Appellate Division, but he did not do so, and he is not now entitled to a second direct appeal. *See* *Jimenez v. Walker,* 458 F.3d 130, 149 (2d Cir.2006) (remedies in New York State courts no longer available because "[petitioner] has already taken his one direct appeal, and [his] claim is procedurally barred from consideration in a collateral attack on his conviction"), *cert denied,* 549 U.S. 1133, 127 S.Ct. 976, 166 L.Ed.2d 740 (2007). Petitioner is also foreclosed from raising the claims collaterally in a Section 440.10 motion. *See* N.Y.Crim. Proc. L. § 440.10(2)(c) (barring collateral review of claims that could have been raised on direct appeal). Nor can he seek state review of these claims pursuant to either a writ of error *coram nobis, see* *People v. Gordon,* 183 A.D.2d 915, 584 N.Y.S.2d 318 (2d Dep't 1992) (*coram nobis* relief only available for claims of ineffective assistance of appellate counsel) (citation omitted), or a state writ of habeas corpus, *see* *People ex rel. Allah v. Leonardo,* 170 A.D.2d 730, 565 N.Y.S.2d 331 (3d Dep't 1991) (state writ of habeas corpus unavailable where claim could have been raised on direct appeal) (citations omitted). Thus, Petitioner now has no procedural recourse to New York's courts to advance this unexhausted claim.

***25** Where a claim is deemed exhausted because of a state procedural bar, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." *Gray,* 518 U.S. at 162; *see also* *Carmona,* 243 F.3d at 633. Petitioner's unexhausted claim is therefore procedurally barred from habeas review by this Court, and cannot be reviewed unless Petitioner can overcome the procedural bar, by showing either cause for failing properly to raise the claim in state court and prejudice resulting from the alleged constitutional error, or that the failure to address the claim on habeas would result in a fundamental miscarriage of justice. *See* *Coleman,* 501 U.S. at 750; *see generally supra* at 25–27. In this instance, Petitioner has not satisfied either standard. He has not shown—and cannot show—that the factual or legal basis for his defaulted claim was not reasonably available at the time of his direct appeal. Nor has Petitioner alleged, and there is no evidence suggesting, that his failure to raise the claim on direct appeal resulted from either interference by state officials or ineffective assistance of appellate counsel. [11] Petitioner has also not shown any probability that this Court's failure to review his claim would result in a fundamental miscarriage of justice, as he has again offered no evidence, scientific or otherwise, showing his actual innocence.

For these reasons, Petitioner has not demonstrated that he can overcome the procedural bar to this Court's consideration of his one unexhausted claim, and I therefore recommend that the Court should dismiss this claim as procedurally defaulted.

**2. *In Any Event, the Claim Lacks Merit.***

Regardless of Petitioner's failure to exhaust his fifth habeas claim (his claim that the trial court's allegedly improper admission of expert testimony deprived him of a fair trial), Petitioner cannot prevail on this claim. Even where evidence is improperly admitted at trial, habeas relief is only available if the admission of the evidence rendered the petitioner's trial so fundamentally unfair as to deny him due process. *See* *Estelle v. McGuire,* 502 U.S. 62, 67–68, 75, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (noting that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). "Due process guarantees that a criminal defendant will be treated with 'that fundamental fairness essential to the very concept of justice. In order to declare a denial of it [a court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.' " *United States v. Valenzuela–Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) (quoting *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166 (1941)); *see also* *Zarvela v. Artuz,* 364 F.3d 415, 418 (2d Cir.2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner can show that the error deprived [him] of a fundamentally fair trial." (quotation marks and citation omitted)); *Rosario v. Kuhlman,* 839 F.2d 918, 925 (2d Cir.1988) (a petitioner must demonstrate that the alleged evidentiary error was so prejudicial that it deprived him of a *"fundamentally fair* trial.").

***26** In this case, Petitioner offers no support for a claim that the expert ballistics testimony was so substantial or crucial that its admission at trial deprived him of a fundamentally fair trial. Viewing the record as a whole, it is apparent that the ballistics evidence—including the expert testimony—was neither necessary for a conviction nor the focus of the trial. This evidence merely showed that the various shell casings collected from the scene of the crime had been fired by the same gun, and that the bullets found in Perry's body "were consistent with being fired from the shell casings." (*See* Resp. Mem. Ex. E, at 21.) The case, however, did not hinge on these questions; rather the critical issue at trial was whether Petitioner was the same "Tito" who was seen shooting Perry. If the jury credited the prosecution's evidence that Petitioner was the person who shot Perry, then the fact that all the bullets came from the same gun would not have added significant additional strength to the prosecution's case. [12] Particularly in light of the eyewitness testimony of Gonzalez, who knew Petitioner and identified him at trial as the shooter, it cannot be said that the admission of the ballistics evidence fatally infected the conduct of the trial, rendering the trial so unfair as to violate Petitioner's due process rights.

Under the circumstances, Petitioner has no constitutional basis to challenge the trial court's admission of the expert ballistics testimony, and even if Petitioner's due process claim were not procedurally defaulted, it would still be subject to dismissal.

**F. *Sufficiency of the Evidence (Claim 6)***

In his final claim, Petitioner asserts that the evidence presented by the prosecution was legally insufficient to establish Petitioner's guilt beyond a reasonable doubt. (*See* Pet. Mem. at 18.) Petitioner exhausted this claim by raising it on direct appeal, where it was rejected on the merits. Specifically, the Appellate Division found that the jury's verdict "was based on legally sufficient evidence" and that "there [was] no basis upon which to disturb its determinations," *Chaparro,* 303 A.D.2d at 278, 758 N.Y.S.2d 608, findings to which this Court should now defer under ADEPA.

Petitioner's insufficient evidence claim is a federal due process claim, *see* *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (The Due Process Clause of the Fourteenth Amendment prohibits conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [Petitioner] is charged"), but "[i]n challenging the sufficiency of the evidence to support his conviction," Petitioner again "bears a heavy burden," *United States v. Giraldo,* 80 F.3d 667, 673 (2d Cir.1996), *abrogated on other grounds by* *Muscarello v. United States,* 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Such an inquiry "does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt,' " rather "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318–19 (citations omitted); *see also United States v. Kwong,* 14 F.3d 189, 193 (2d Cir.1994) (A court "must view the evidence, whether direct or circumstantial, in the light most favorable to the government, crediting every inference that could have been drawn in its favor."). In making this determination, "pieces of evidence must be viewed in conjunction, not in isolation." *United States v. Podlog,* 35 F.3d 699, 705 (2d Cir.1994) (citation omitted).

***27** In this case, Petitioner was convicted of second degree murder and second degree criminal possession of a weapon. To convict Petitioner of murder, a jury must have found that Petitioner intentionally caused the death of another person, *see* N.Y. Penal Law § 125.25, and, in order to convict him of the weapons possession count, a jury must have found that Petitioner possessed any loaded firearm, *see* N.Y. Penal Law § 265.03. Given the record of Petitioner's trial, there was ample evidence for a jury to convict Petitioner on both counts.

Petitioner appears to argue that the evidence presented at trial was legally insufficient to establish his identity. In particular, he argues that his identification "revolved around the credibility of essentially one witness," i.e., Gonzalez, who saw the shooting and identified Petitioner at trial. (*See* Pet. Mem. at 56.) Yet " 'the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction,' " *Edwards v. Jones,* 720 F.2d 751, 755 (2d Cir.1983) (quoting *United States v. Danzey,* 594 F.2d 905, 916 (2d Cir.1979)), and thus Gonzalez's testimony, standing alone, was sufficient to sustain the verdict against Petitioner. Moreover, that testimony was buttressed by the other evidence presented by the prosecution: Santiago, Adan, and Taino all placed someone known as "Tito" at the scene of the crime; two of them testified to seeing that individual holding a gun or shooting at the crowd; a member of Petitioner's own family confirmed that Petitioner was known by the name "Tito"; and Petitioner himself signed a statement in which he admitted his presence near the location of the shooting, as well as his subsequent departure to the Dominican Republic. As the "identity" element of a crime may be inferred through circumstantial evidence, *see Kwong,* 14 F.3d at 193, the jury would have been entitled to infer from all this evidence—and certainly in combination with Gonzalez's eye-witness account—that Petitioner was the shooter.

Further, the fact that the jury chose to credit the testimony of the prosecution's witnesses rather than Petitioner's version of the events, or resolved inconsistencies in favor of the prosecution, does not undermine the reliability of the jury's verdict. *See Bossett,* 41 F.3d at 830 ("the jury is exclusively responsible for determining a witness' credibility") (internal quotation marks and citation omitted); *United States v. Strauss,* 999 F.2d 692, 696 (2d Cir.1993); *Gruttola v. Hammock,* 639 F.2d 922, 928 (2d Cir.1981); *Vera v. Hanslmaier,* 928 F.Supp. 278, 284 (S.D.N.Y.1998). "The role of this Court is clear: '[f]ederal habeas courts are not free to reassess the facts specific to credibility judgments by juries or to weigh conflicting testimony. On collateral review, this Court must presume that the jury resolved any questions of credibility in favor of the prosecution.' " *Vera,* 928 F.Supp. at 284 (quoting *Anderson v. Senkowski,* No. CV–92–1007 (CPS), 1992 WL 225576, at *3 (E.D.N.Y. Sept.3, 1992)).

***28** In sum, viewing all of the evidence in the light most favorable to the prosecution, a rational jury could easily have found that the essential elements of the crime had been proven beyond a reasonable doubt. The Appellate Division therefore did not act contrary to, or unreasonably apply, clearly established federal law in concluding that the verdict against Petitioner was based upon legally sufficient evidence. Accordingly, I recommend that Petitioner's claim challenging the sufficiency of the evidence be dismissed.

## *CONCLUSION*

For all of the foregoing reasons, I recommend that the petition for a writ of habeas corpus be dismissed in its entirety. Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Kimba M. Wood, United States Courthouse, 500 Pearl Street, Room 1610, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Wood. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL

RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in Fed. Supp., 2009 WL 2058534

## Footnotes

1 The record contains two different spellings of petitioner's name: Chappero and Chaperro. The Court uses the former because this is the spelling used by the petitioner in his filings.

2 The Respondent did not file objections to the Report or respond to Chapparo's objections.

3 Chapparo does not object to the Report's recommendation that his claim of prosecutorial misconduct should be dismissed. Because the Court finds no clear error in the Report's recommendation, the Court denies this claim.

4 The Court may reject an ineffective assistance of counsel claim for failure to satisfy either of these prongs, without reaching the other prong. (Report, at 21 (quoting *Strickland,* 466 U.S. at 697).)

5 Even if Chapparo had not waived the argument that the identification procedure violated his right to counsel, the Court would deny Chapparo's claim. Chapparo's argument is procedurally barred because he failed to raise this argument before the Appellate Division. *Gonzalez v. Sullivan,* 934 F.2d 419, 422 (2d Cir.1991).

Chapparo's argument also fails on the merits. The right to counsel does not attach at a photographic identification. *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1972). The right to counsel at a line-up only attaches when the Defendant has already been indicted. *In re Grand Jury Subpoena Served upon Doe,* 781 F.2d 238, 244 (2d Cir.1986) Chapparo was not indicted until after the line-up.

6 The Report notes that when considering the totality of the circumstances, a court should consider a multitude of factors as set forth in *Neil v. Biggers,* 409 U.S. 188, 200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The Report does so when it states that "Petitioner has not argued that the witnesses lacked the opportunity to view the shooter, were inattentive at the time, gave inaccurate prior descriptions of the shooter, were uncertain as to their identifications, or made identifications that were in doubt because of the passage of time. (Report, at 30.)

7 The Report notes that even if the testimony of the eyewitness had been the only evidence presented, the evidence at trial still may have been sufficient to support the conviction. *Edwards v. Jones,* 720 F.2d 751, 755 (2d Cir.1983) ("[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction.")

8 The Court finds the remainder of the Report, to which Chapparo has not objected, free of clear error on the face of the record.

1 *See* *Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir.1995) ("The complaint of a *pro se* litigant is to be liberally construed in his favor.") (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir.1983) (where a petitioner is proceeding *pro se* and "lack[s] expertise," the Court "should review [his] habeas petition[ ] with a lenient eye").

2 Taino admitted he could not identify anyone in the courtroom as the person who had been in Almonde's apartment and that he had not been able to identify "Tito" in the photographs he had been shown by the District Attorney two days earlier. (Tr. 114.)

3 Adan acknowledged during his testimony that he had not testified about this conversation with Tito at Petitioner's first trial, which ended in a hung jury. (*Id.* at 207.)

4 The copy of this hearing transcript that has been provided to the Court is missing certain pages.

5 This hearing was held pursuant to: (1) *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), to determine whether any statements made by Petitioner should be suppressed; (2) *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), to determine whether Petitioner's pretrial identification was the result of impermissibly suggestive procedures; and (3) *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), to determine whether there was probable cause for Petitioner's arrest.

6 Although the Court's docket reflects a filing date of October 12, 2004 (*see* Dkt. 2), a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the court, *see Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), and this Court will therefore deem the petition to have been filed on August 23, 2004, the date when Petitioner signed the petition. *See, e.g., Rhodes v. Senkowski,* 82 F.Supp.2d 160, 165 (S.D.N.Y.2000). The petition is thus timely, as it should be considered to have been filed within one year of the date (August 28, 2003) when Petitioner's conviction became final for purposes of habeas review, *i.e.,* 90 days after the Court of Appeals denied Petitioner's application for leave to appeal. 28 U.S.C. § 2244(d) (1)(A) (2000).

7 The Supreme Court has emphasized that "clearly established Federal law" refers only to the " 'holdings, as opposed to the dicta, [of the Supreme Court's] decisions as of the time of the relevant state-court decision.' " *Carey v. Musladin,* 549 U.S. 70, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (quoting *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)); *see also Rodriguez v. Miller,* 499 F.3d 136, 140 (2d Cir.2007) ("*Musladin* admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions."). Thus, a principle of constitutional law "grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court" cannot provide the basis for habeas relief. *Id.* (citing *Musladin* ).

8 While the Appellate Division also stated "in any event, the motion was lacking in merit because there is no indication of bad faith by law enforcement or specific prejudice to [Petitioner]," this does not alter the fact that the court primarily rested its decision on an independent, state procedural ground. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990) (where a state court expressly relies on a procedural default in rejecting the claim, but also notes that it would reject the claim on the merits as well, federal habeas review remains procedurally barred); *see also Jimenez v. Walker,* 458 F.3d 130, 138, 145 (2d Cir.2006) (a claim is decided on an independent state ground where the state court decision fairly appears to rest primarily on state procedural law).

9 While Petitioner argued at the suppression hearing that his identification was also unfair because his was the only photograph to appear in both photo arrays (*see* 1/12/98 Hearing Tr. at 35), he did not raise such a claim in his brief to the Appellate Division (*see* App. Br. 39–42), or in his habeas petition (*see* Pet. Mem. 11–14).

10 As discussed above, a claim has been exhausted once it has been "fairly presented" to the state courts. *Smith v. Duncan,* 411 F.3d 340, 349 (2d Cir.2005). A habeas petitioner fairly presents a claim where he relies on state cases employing constitutional analysis in a similar factual situation. *Daye v. Attorney General of New York,* 696 F.2d 186, 194 (2d Cir.1982). Here, Petitioner's appellate brief relied on *People v. De Tore,*

34 N.Y.2d 199, 207, 356 N.Y.S.2d 598, 313 N.E.2d 61 (1974), a state case that employed a constitutional analysis to a similar fact pattern. *See id.* (citing *Frazier v. Cupp,* 394 U.S. 731, 735–736, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969)).

11 As Petitioner cannot show cause for his procedural default, this Court need not reach the question of whether Petitioner can show prejudice. *See* *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

12 Although Petitioner offered a stipulation at trial that Santiago had initially given a statement indicating that another person, aside from Tito, had a gun at the scene (*see supra* at 14), there was no suggestion in Santiago's purported statement, or in any other evidence adduced at trial, that anyone but Tito had actually fired a gun.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 3269139
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Leitscha Ponce DE LEON, Petitioner,
v.
UNITED STATES of America, Respondent.

No. 6:18-cr-06094-FPG, No. 6:19-cv-06886-FPG
|
Signed 06/17/2020

**Attorneys and Law Firms**

Katelyn M. Hartford, U.S. Attorney's Office, Rochester, NY, for Petitioner.

DECISION AND ORDER

FRANK P. GERACI, JR., Chief Judge

**INTRODUCTION**

***1** *Pro se* Petitioner Leitscha Ponce De Leon ("Petitioner") filed a motion under 28 U.S.C. § 2255, challenging her conviction and sentence in this Court. ECF No. 276. For the reasons set forth below, the motion is DENIED.

**BACKGROUND**

**I. The Plea and Sentencing**

On July 12, 2018, Petitioner and three co-defendants were charged in a multi-count Indictment (ECF No. 73) based on their involvement in a drug-trafficking conspiracy that lasted from 2015 to 2018. Petitioner was charged in Count 1 with conspiracy to possess with the intent to distribute 5 kilograms or more of a mixture and substance containing cocaine and 1 kilogram or more of a mixture and substance containing heroin, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A), in violation of 21 U.S.C. § 846. She was charged in Count 2 with knowingly and unlawfully possessing firearms in furtherance of a drug-trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.

On July 30, 2018, Petitioner appeared before the Court with her attorney, Jason E. Abbott, Esq. ("Defense Counsel"), pursuant a written Plea Agreement and entered a guilty plea to Count 1 of the Indictment. *See* Plea Agreement, ECF. No. 360-1. The parties agreed in the Plea Agreement that United States Sentencing Guidelines ("Guidelines") §§ 2D1.1(a)(5) and 2D1.1(c)(3) applied to the offense of conviction and provided for a base offense level of 34. In addition, they agreed to the application of several specific offense characteristics—a two-level increase pursuant to Guidelines § 2D1.1(b)(l) for possession of a dangerous weapon, and a two-level increase pursuant to Guidelines § 2D1.1(b)(12) for maintaining a premises to manufacture and distribute a controlled substance—that yielded an adjusted offense level of 38. Plea Agreement ¶¶ 6-8. The parties further agreed that, at sentencing, Respondent would not oppose the application of the two-level downward adjustment of Guidelines § 3El.l(a) for acceptance of responsibility, and would move the Court to apply the additional one-level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of 35. *Id.* ¶ 9. With Petitioner's criminal history category of I, and the total offense level of 35, the Plea Agreement contemplated that her sentencing range would be a term of imprisonment of 168 to 210 months, a fine of $40,000 to $10,000,000, and a period of supervised release of 5 years. *Id.* ¶¶ 10-11. The Plea Agreement also contained an express waiver of Petitioner's rights to appeal and collaterally attack the sentence if the Court imposed a sentence within the agreed-upon sentencing range. *Id.* ¶¶ 18-19.

At the July 30, 2018 proceeding, the Court first confirmed that Petitioner was not taking any medications or experiencing any conditions that affected her mental state. The Court obtained Petitioner's assurance that she had not been threatened or coerced into pleading guilty, and that she was satisfied with Defense Counsel's representation. Transcript of July 30, 2018 Plea Proceeding ("Plea Tr."), ECF No. 360-1 at 5-6. The Court reviewed and confirmed that Petitioner understood the trial rights she was giving up by pleading guilty and the substance of the charge to which she was pleading guilty, as well as that the charge carried a mandatory minimum of 10 years' imprisonment and a maximum life term. *Id.* at 6-10.

***2** The Court then asked Petitioner to explain "in [her] own words" how the conspiracy worked. Plea Tr. at 10. Petitioner stated that "[her] role was to make shipments of cocaine from Rochester to Puerto Rico," that she arranged at least 25 such shipments, and that she did this by communicating with her co-conspirators and others in Puerto Rico, and by sending money via mail and wire transfer. *Id.* at 10-11. Petitioner then allocuted to the factual bases of Count 1. *Id.* at 11-15.

The Court next discussed and reviewed with Petitioner the Guidelines' effect on her potential sentence. Petitioner confirmed that she understood and agreed with each of the increases to her base offense level. Plea Tr. at 15-18.

The Court also confirmed Petitioner's understanding that if it imposed a sentence of 168 months' imprisonment in accordance with the Plea Agreement, she was "waiving or giving up [her] right to appeal that sentence." Plea Tr. at 18-19. When the Court asked her if there was anything about the Agreement she did not understand, Petitioner responded, "No, sir." *Id.* at 20. Petitioner then executed the Plea Agreement in open court. *Id.* The Court read the charge set forth in Count 1 of the Indictment and Petitioner entered her guilty plea to that charge. *Id.* at 20-21.

Finally, the Court summarized the plea proceeding, including Petitioner's representations to the Court about her understanding of the charge to which she was pleading guilty, the rights she was waiving, and her satisfaction with Defense Counsel's services. Plea Tr. at 21-27. The Court also recited the factual averments Petitioner had made in support of her guilty plea to Count 1. *Id.* at 22-27. The Court concluded that, based on all of Petitioner's statements under oath, her plea was "in all respects knowing and voluntary," that she "did articulate a factual basis for the plea," and therefore the Court "accept[ed] the plea of guilty." *Id.* at 27.

On November 28, 2018, the Court sentenced Petitioner to 168 months' imprisonment, in accordance with the Plea Agreement. *See* Sentencing Transcript ("Sent. Tr.") at 10, ECF No. 360-1. Respondent moved to dismiss Count 2, and the Court dismissed that charge. *Id.* at 14. Judgment (ECF No. 124) was entered on November 30, 2018.

Petitioner did not pursue a direct appeal.

**II. Motion to Vacate Pursuant to 28 U.S.C. § 2255**

On November 29, 2019, Petitioner filed the instant *pro se* Motion to Vacate (ECF No. 276) asserting that her plea was involuntary (Ground One); she was denied the effective assistance of counsel (Ground Two); and that her conviction was obtained based on evidence seized in violation of the Fourth Amendment (Ground Three).

At the Government's request (ECF No. 285), the Court ordered Defense Counsel to file an affidavit responding to Petitioner's allegations (ECF No. 286). The Court specifically directed Defense Counsel to address (1) the content of his discussions with Petitioner regarding the plea, including what options she had and whether she understood the plea agreement and chose to plead guilty; (2) his observations of and discussions with Petitioner on the day of the plea hearing concerning her willingness, capacity, and ability to plead guilty; (3) his discussions with Petitioner concerning his ability to try the case and the possible sentence she faced if she went to trial; (4) his alleged coercion of Petitioner; (5) the nature and extent of his investigation into the identified suppression issue and Petitioner's mental capacity; (6) his discussions with Petitioner regarding the withdrawal of the guilty plea; and (7) his discussions with Petitioner regarding the filing of a notice of appeal. ECF No. 286.

***3** Defense Counsel responded on February 5, 2020. *See* Declaration of Jason E. Abbott, Esq. ("Abbott Decl."), ECF No. 322. Petitioner filed an Affidavit in response on February 27, 2020. *See* ECF No. 334.

## DISCUSSION

**I. 28 U.S.C. § 2255**

Title 28 U.S.C., Section 2255 ("§ 2255") provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Accordingly, relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun,*

73 F.3d 8, 12 (2d Cir. 1995) (internal quotations and citation omitted).

A defendant seeking to challenge a criminal conviction collaterally through a § 2255 motion "must overcome the threshold hurdle that the challenged judgment carries with it a presumption of regularity[,]" *Williams v. United States*, 481 F.2d 339, 346 (2d Cir. 1973) (citation omitted), and must bear the burden of proof that a constitutional violation occurred, *id.* (citation omitted). It is well settled that "the scope of review on a § 2255 motion should be 'narrowly limited' in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (quoting *Bokun*, 73 F.3d at 12).

Rule 4(b) of the Rules Governing § 2255 Proceedings further provides that '[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.' " *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b)); *see also*, *e.g.*, *Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir. 2001) (district court not required to hold hearing before deciding § 2255 motion based on ineffective assistance of counsel claim alleging that counsel prevented petitioner from testifying, where petitioner made only general allegations and record contained affidavit from counsel explaining why petitioner did not testify).

## II. Ground One: Involuntariness of the Guilty Plea

Petitioner asserts that her guilty plea was not knowing, voluntary, and intelligent because (1) "several medications to manage her chronic medical conditions ... caused her to experience side effects which included confusion, agitation, memory difficulty and problems with concentration," which she experienced at the plea hearing; and (2) Defense Counsel coerced her into pleading guilty by telling her that if she did not enter a plea, she would be "charged with additional crimes that would lead to a harsher sentence." *See* ECF No. 276, Attachment 1.

### A. Legal Standard for Evaluating the Voluntariness of a Guilty Plea

***4** The long-settled standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (collecting cases). As the Supreme Court has explained, "[a] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady v. United States*, 397 U.S. 742, 755 (1970) (quotation and footnote omitted); *accord*, *e.g.*, *Bousley v. United States*, 523 U.S. 614, 619 (1998).

A reviewing court "must ... take into account admissions made by the defendant at [her] plea hearing, for '[s]olemn declarations in open court carry a strong presumption of verity.' " *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). "[S]ubsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74; *accord* *Gonzalez*, 722 F.3d at 131.

### B. Grounds for Finding Involuntariness

The Court first considers Petitioner's argument that her medications caused confusion and agitation and thus prevented her from making a knowing, voluntary, and intelligent decision to plead guilty. "Before accepting a guilty plea, 'the district judge [must] determine whether the defendant understands the nature of the charge against him and whether he is aware of the consequences of the plea.' " *United States v. Frayler*, 229 F.3d 1136, 2000 WL 1459722, at *3 (Table) (2d Cir. 2000) (unpublished op.) (quoting *United States v. Rossillo*, 853 F.2d 1062, 1064 (2d Cir. 1988)). "In particular, if the defendant indicates that [s]he is taking medication or has a condition that may require medication, the court should ensure that defendant retains the ability to understand the proceedings and enter a truly voluntary plea." *Id.*; *see* *Rossillo*, 853 F.2d at 1064-66 (reversing conviction where, "[a]lthough the district court personally interrogated Rossillo, an on-the-record determination was not made concerning whether Rossillo was under the influence of

any medication, drug or intoxicant[;]" "[i]Instead, when the district judge asked Rossillo for a response to its question, the court simply alluded to defendant's heart condition. Judge Bramwell never received a definitive 'yes' or 'no' answer from defendant")).

Here, the Court questioned Petitioner and made "an on-the-record determination," *Rossillo*, 853 F.3d at 1066, that Petitioner was not experiencing any side-effects from any of her medications, which she had last taken two days prior to the plea hearing:

THE COURT: Ok. Are you currently taking any medications or drugs?

THE DEFENDANT: Not today, but yes. I didn't take none today.

THE COURT: Okay. How recently have you taken anything?

THE DEFENDANT: The night before yesterday.

THE COURT: What was that?

THE DEFENDANT: Vistaril; and last night I took my Paramax.

THE COURT: What's that for?

THE DEFENDANT: For my seizures.

THE COURT: Okay. Are either one of those medications affecting your ability to understand these proceedings?

THE DEFENDANT: No, sir.

THE COURT: Okay. Do you have any other health or medical condition affecting your ability to understand these proceedings?

THE DEFENDANT: No, sir.

Plea Tr. at 5-6. As the foregoing excerpt makes clear, Petitioner, in her own words, declared under oath that the medications she was taking did not interfere with her ability to understand the proceeding.

***5** Later, in summarizing what was said during the proceeding, the Court noted that Petitioner was "taking some medications," but had "not taken the medication at least within the last 24 hours;" that "both medications she takes she indicates do not affect her ability to understand these proceedings in any way;" and she had "no other health or medical condition affecting her ability to understand these proceedings." Plea Tr. at 25. Petitioner never contested the accuracy of Court's statements about the lack of any impediment to her ability to fully comprehend, and participate in, the proceedings.

The Court turns next to Petitioner's argument that her plea was not knowing, voluntary, or intelligent because Defense Counsel coerced her into pleading guilty by informing her that if she did not do so, she would be charged with additional crimes that carried harsher penalties. Again, these belated assertions are controverted by the record of the plea proceeding. First, at the outset of the hearing, the Court confirmed that Petitioner was making the decision to plead guilty of her own free will:

THE COURT: Is anybody forcing you, coercing you or threatening you to enter a plea of guilty?

THE DEFENDANT: No, sir.

THE COURT: Have you had a chance to review this agreement with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with his representation?

THE DEFENDANT: Yes, sir.

Plea Tr. at 6.

Later, the Court noted that "[n]obody's forcing her, coercing her or threatening her to enter a plea of guilty[,]" that she declared "she's had the opportunity to review this agreement with her attorney Mr. Abbott," and that she is "satisfied with his representation." *Id.* at 21. At no time during the proceeding did Petitioner dispute the Court's characterization of her statements. Her belated assertions in this motion are insufficient to overcome the presumption of truthfulness accorded to her previous statements under oath, in open court, that her plea was not the product of coercion or threats by anyone. "These in-court statements are afforded a 'strong presumption of verity,' " *Delutro v. United States*, No. 11-CV-2755 CBA, 2014 WL 4639198, at *8 (E.D.N.Y. Sept. 16, 2014) (quoting *Gonzalez*, 722 F.3d at 130–31), "and create a 'formidable barrier' to habeas relief," *id.* (quoting *Blackledge*, 431 U.S. at 74).

Petitioner's "claims of coercion fail because even if this Court accepted [her] allegations regarding [counsel]'s conduct as true, [her] in-court statements conclusively indicate that the alleged conduct did not result in a coerced plea." *Id.* (citing *United States v. Doe*, 537 F.3d 204, 213 (2d Cir. 2008)) (holding that "the district court did not abuse its discretion in declining to hold an evidentiary hearing on the defendant's motion [to withdraw plea]" where "the defendant's unequivocal admissions under oath contradict his conclusory assertions of fearfulness"); *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution 'carry a strong presumption of verity,' and are generally treated as conclusive in the face of the defendant's later attempt to contradict them[.]' ") (internal quotation and citation omitted). Moreover, the fact that Petitioner waited until the day before the statute of limitations expired before seeking to vacate her sentence "severely undercuts [her] argument that [s]he pleaded guilty involuntarily." *Doe*, 537 F.3d at 213 ("[T]he fact that the defendant waited five months to file his motion [to withdraw] strongly supports the district court's finding that his plea was entered voluntarily.").

### III. Ground Two: Ineffective Assistance of Trial Counsel

***6** Petitioner asserts a host of alleged errors by Defense Counsel—that he "failed to conduct a reasonable investigation by failing to request relevant FBI notes, DEA 6 reports, ATF reports and police reports which contained evidence of the illegal search and seizure of [Petitioner]'s home"; "failed to investigate [Petitioner]'s mental capacity to plead guilty despite [her] confusion, agitation, history of chronic medical problems and her history of prescribed medications with side effects"; "failed to seek a continuance at the July 30, 2018 plea hearing despite [Petitioner]'s objections and her visible confusion and agitation in the court room"; failed to move to withdraw Petitioner's guilty plea despite her "multiple requests"; failed to file a notice of appeal despite her "repeated requests" and "despite the Court's order preserving [Petitioner]'s right to appeal"; and "coerced" her guilty plea "to conceal his unpreparedness for trial." ECF No. 276, Attachment 2. Defense Counsel has responded to Petitioner's vague and conclusory accusations of deficient representation in a detailed Declaration. ECF No. 232. As discussed further below, the Court concludes, based on the record before it, none of Petitioner's claims warrants relief under Section 2255.

#### A. Legal Standard for Evaluating Ineffectiveness Claims

To succeed on a claim of ineffective assistance of counsel, the petitioner must fulfill the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), by showing that "(1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Contino v. United States*, 535 F.3d 124, 128 (2d Cir. 2008). In the context of a conviction by guilty plea, the petitioner affirmatively must show that, but for counsel's deficient representation, she "would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

#### B. Counsel's Alleged Errors

##### 1. Failure to Investigate Fourth Amendment Issue Based on Search and Seizure

Respondent argues that Petitioner's ineffectiveness claim based on Defense Counsel's failure to conduct a reasonable investigation into the search and seizure of her home is barred from habeas review under the doctrine of *Tollett v. Henderson*, 411 U.S. 258 (1973), because it concerns an alleged constitutional violation antecedent to the guilty plea. *See* ECF No. 360 at 18-19.

"A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea." *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996). Rather, the defendant "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutionally acceptable] standards." *Tollett*, 411 U.S. at 267. "In other words, it is immaterial whether the defendant's independent claims have merit; the court's sole concern is whether the guilty plea was 'made intelligently and voluntarily with the advice of competent counsel.' " *Le v. Bezio*, No. 1:11-CV-0647 MAT, 2014 WL 5819729, at *4 (W.D.N.Y. Nov. 10, 2014) (quoting *Tollett*, 411 U.S. at 265; citing *Coffin*, 76 F.3d at 497–98).

As this Court has already found, Petitioner intelligently and voluntarily elected to plead guilty. Petitioner's claim

that Defense Counsel erred in failing to litigate a Fourth Amendment issue does not relate to his advice to her regarding the decision to plead guilty and therefore are barred under *Tollett*. *See* *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997).

**2. Failure to Investigate Petitioner's Competency**

Petitioner alleges that Defense Counsel was ineffective because, despite being aware of her "confusion," "agitation," and "chronic medical problems," he failed to investigate whether she had the mental capacity to plead guilty. Respondent counters that "absent any objective indication that [Petitioner] suffered from mental illness," Defense Counsel "cannot be deemed ineffective for failing to pursue an avenue that seemed unlikely." Resp. Mem. at 21 (citations omitted).

The Supreme Court explained in *Hill* that "where the alleged error of counsel is a failure to investigate ..., the determination whether the error 'prejudiced' the defendant by causing [her] to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." 474 U.S. at 59–60; *see also*, *e.g.*, *Panuccio v. Kelly*, 927 F.2d 106, 109 (2d Cir. 1991) ("The likelihood that an affirmative defense will be successful at trial and an assessment of the probable increase or reduction in sentence relative to the plea if the defendant proceeds to trial are clearly relevant to the determination of whether an attorney acted competently in recommending a plea.").

***7** Defense Counsel was "aware that the Petitioner suffers from several potentially debilitating health issues," and he "personally visited [her] ... in jail numerous times (in lieu of a telephone conference or by letter) to discuss her case and plea agreement" in order "to ensure, at least in [his] mind, that she fully understood the nature of the proceedings and to ensure that [their] conversations regarding the same could unfold in real-time, with all her questions answered, to the best of [her] ability." Abbott Decl. ¶¶ 5, 8. While Defense Counsel recalled "having to go over multiple aspects of her case over the course of several different jail visits because [she] did not remember earlier conversations[,]" by the time of the plea hearing, he "was satisfied, based on repetition, that the Petitioner understood and could recall all the critical aspects of her case and the terms of the plea agreement." *Id.*

The Court finds that Petitioner has failed to satisfy either the "prejudice" or "performance" prong of the *Strickland/Hill* inquiry. There is nothing in the record to establish that further investigation, such as having Petitioner undergo a psychiatric examination, would have led to the discovery of any information that might have caused Defense Counsel to alter his recommendation that she plead guilty. As set forth in his Declaration, Defense Counsel recognized that Petitioner experienced difficulties with her memory, but he took appropriate steps to address those issues and to ensure he was fulfilling his professional obligations to Petitioner. This claim of ineffective assistance accordingly does not merit habeas relief.

**3. Failure to Seek a Continuance**

Petitioner faults Defense Counsel for failing to seek a continuance when she became confused and agitated at the plea hearing, allegedly due to her mental health issues and medications. This contention is refuted by Defense Counsel's Declaration, in which he stated as follows:

> [T]here was a point during the plea hearing where a break was taken due to the Petitioner's agitation. My recollection is that this agitation began during the factual portion of her plea colloquy, during which the Petitioner was reluctant to talk about her involvement in the subject drug conspiracy, as well as the actions of other coconspirators. During this break, the Petitioner was informed that, if she was unable to admit to the factual allegations contained in the plea agreement, then the Government would rescind the plea agreement and her case would proceed as indicted. On July 12 and July 28, [2018,] the Petitioner and I reviewed the "final" factual allegations that would have to be admitted to under the plea agreement. During these meetings, the Petitioner also indicated that she did

> not want to say the names of any alleged co-conspirators, to which I stated, as I also stated on the day of the plea hearing, that this was required under the terms of the plea agreement and that, if she was unable to admit to the factual allegations in the plea agreement, including discussing the actions of coconspirators, then the Government would rescind the plea offer and her case would proceed as indicted.

Abbott Decl. ¶ 5. Following the brief recess, the proceedings resumed, and Petitioner completed her plea allocution.

Petitioner has not established how the outcome of her criminal case would have been more favorable to her had Defense Counsel requested a continuance of the plea proceeding. Moreover, Defense Counsel had no basis to request a continuance, given that Petitioner's plea colloquy continued without incident and, as the Court has already found, Petitioner was fully capable of understanding the proceeding and making a knowing, intelligent, and voluntary decision to plead guilty.

### 4. Failure to Move to Withdraw the Plea

Petitioner claims that Defense Counsel was ineffective because he allegedly ignored her multiple requests to move to withdraw her guilty plea. Defense Counsel avers, "I did not have any discussions with the Petitioner regarding the withdrawal of the guilty plea, and I have no recollection of the Petitioner ever contacting me regarding the same." Abbott Decl. ¶ 9.

***8** "[A] district court may permit withdrawal of a guilty plea prior to sentencing 'upon a showing by the defendant of any fair and just reason.' " *United States v. Gonzalez*, 970 F.2d 1095, 1099-100 (2d Cir. 1992) (quoting Fed. R. Crim. P. 32(d)). "Although this standard implies that motions to withdraw prior to sentence should be liberally granted, *see United States v. Russell*, 686 F.2d 35, 38 (D.C. Cir. 1982), a defendant who seeks to withdraw [her] plea 'bears "the burden of satisfying the trial judge that there are valid grounds for withdrawal, taking into account any prejudice to the government." ' " *Gonzalez*, 970 F.2d at 1099-100 (quoting *United States v. Quinones*, 906 F.2d 924, 928 (2d Cir. 1990) (quoting *United States v. Michaelson*, 552 F.2d 472, 475 (2d Cir. 1977)), *cert. denied*, 498 U.S. 1069 (1991)). "The fact that a defendant has a change of heart prompted by [her] reevaluation of either the Government's case against [her] or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *Id.* (citing *United States v. Figueroa*, 757 F.2d 466, 475 (2d Cir. 1985) ("The reasons urged by Figueroa to support his withdrawal motion boil down to a change of heart prompted by a reevaluation of the government's case against him; but these do not constitute sufficient justification to overturn the district court's broad discretion in this area."); *Michaelson*, 552 F.2d at 476 ("Michaelson's change of mind after the trial of his co-defendants had ended and after he had seen the Pre-Sentence Report is simply not sufficient reason to require the district judge to grant the motion."); footnote omitted)).

Petitioner entered her plea "voluntarily, fully knowing the possible consequences of such a plea; [s]he also admitted in open court that [s]he had been involved in the narcotics distribution operation." *Figueroa*, 757 F.2d at 475 (citation omitted). She does not now advance any reasons or facts suggesting that withdrawal of the plea would have been "fair or just" so as to warrant exercise of the Court's discretion under Fed. R. Crim. P. 32(d). Indeed, a review of the sentencing transcript yields no hint that Petitioner was having "buyer's remorse" about her decision to plead guilty. Even assuming for the sake of argument that Petitioner had asked Defense Counsel to file a motion to withdraw her guilty plea, she provided him no colorable grounds on which to do so. Defense Counsel did not act in a professionally unreasonable manner by declining to make a motion that had no likelihood of success, and Petitioner was not prejudiced by the failure to make such a motion.

### 5. Failure to File a Notice of Appeal

Petitioner asserts that Defense Counsel failed to file a notice of appeal despite her request to do so. Defense Counsel disputes that Petitioner made such a request.

In *Campusano v. United States*, 442 F.3d 770 (2d Cir. 2006), the Second Circuit endorsed the "application of the [*Roe v.*] *Flores-Ortega*[, 528 U.S. 470, 483-84 (2000)] presumption [of prejudice] to post-waiver situations[,]" 442 F.3d at 775, that is, where the defendant has agreed to waive his appellate rights. Thus, "[w]hen a defendant claims that his attorney

failed to file a requested notice of appeal," the Second Circuit has dictated that "the following proceedings will ensue: (1) a hearing before the district court pursuant to § 2255 to determine whether the client requested the appeal; (2) an appeal from the district court's ruling, should either party seek one; and (3) a direct appeal if the defendant did in fact request that a notice of appeal be filed." *Campusano*, 442 F.3d at 776. Although the Second Circuit "require[s] the district court to hold a hearing without assessing the merits of the requested appeal[,]" *id.* at 776, it has clarified that "the district court has discretion to determine if a testimonial hearing will be conducted." *Id.* (citing *Chang*, 250 F.3d at 85 (noting that the Supreme Court has held that, "although a hearing may be warranted, that conclusion does not imply that a movant must always be allowed to appear in a district court for a full hearing"); other citation omitted). The source of the district court's discretion is Section 2255 itself, which permits the court substantial latitude in deciding whether " 'allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.' " *Chang*, 250 F.3d at 85 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)); citing *Machibroda*, 368 U.S. at 495 n.4 (relying on 28 U.S.C. § 2255, which expressly provides that the "court may entertain and determine such motion without requiring the production of the prisoner at the hearing") (quotation omitted).

***9** "Thus, where, as here, a Section 2255 petitioner alleges ineffective assistance of counsel, but [her] factual assertions are contradicted by 'a detailed affidavit from trial counsel credibly describing the circumstances[,]' *Chang*, 250 F.3d at 85, relevant to the claim, there is no per se requirement that a full testimonial hearing be held." *Douchette v. United States*, No. 6:10-CR-06058-MAT, 2017 WL 2931385, at *5 (W.D.N.Y. July 10, 2017) (citing *Chang*, 250 F.3d at 85; *Nicholson v. United States*, 566 F. Supp.2d 300, 304-05 (S.D.N.Y. 2008) (detailed attorney affirmations contradicting § 2255 petitioner's claim that he asked his lawyers to file a notice of appeal were sufficient to obviate the need for an evidentiary hearing, particularly since petitioner offered no reply to those affirmations); *Florez v. United States*, No. CV-00-5073(DGT), 2007 WL 162764, at *4 (E.D.N.Y. Jan. 18, 2007) ("The determinative issue is whether or not [the § 2255 petitioner] directed [his lawyer] to file a notice of appeal. A review of the papers submitted by the parties, including a detailed affidavit from [the lawyer], are sufficient to decide this issue; a full testimonial hearing is unnecessary.")).

In his Declaration, Defense Counsel avers that Petitioner never asked him to file a notice of appeal:

> I did not have any discussions with Petitioner regarding the filing of a notice of appeal, and I have no recollection of the Petitioner ever contacting me regarding the same. During the pendency of the criminal case, the Petitioner and I had several conversations that, by entering into the plea agreement, she would be giving up her right to appeal. My recollection is also that during the plea hearing and the sentencing hearing the Petitioner was reminded of the same by the Court.

Abbott Decl. ¶ 10. As Defense Counsel notes, Petitioner, as part of the Plea Agreement which she signed, expressly waived the right to appeal or collaterally attack the sentence. *See* Plea Agreement ¶¶ 18, 19. The Plea Agreement includes an attestation by Petitioner that she read and understood the Agreement's terms. And, at the plea hearing, Petitioner confirmed under oath that she understood that she was waiving her right to appeal or collaterally attack the sentence. Plea Tr. at 18-19.

Petitioner has offered nothing to rebut Defense Counsel's detailed Declaration or to undermine the validity of her explicit and knowing appellate rights waiver, made in writing and verbally under oath. For instance, Petitioner has failed to provide any specific details about the alleged conversation with Defense Counsel, such as the date on which it took place and where it occurred, what Defense Counsel said in response to the alleged request, what issues Petitioner wanted Defense Counsel to have raised on direct appeal, "an explanation as to why these issues were meritorious or at least colarable, or suggestions as to how to overcome the preclusive effect of the appellate rights waiver in [her] knowing, intelligent and voluntary plea agreement." *Douchette*, 2017 WL 2931385, at *5. "Having reviewed the pleadings, submissions, and related documents of record, the Court concludes that any further evidentiary hearing in this action would 'add little or nothing to the written submissions.' " *Id.* (quoting *Chang*, 250 F.3d at 86).

**6. Coercion**

Petitioner contends that Defense Counsel ignored her communications to him, both prior to and at the plea proceeding, that she did not want to accept a plea deal and that she wanted to proceed to trial. She claims Defense Counsel coerced her into accepting the plea by telling her that if she did not plead guilty, the Government would levy additional criminal charges against her that would result in a harsher sentence.

As discussed above, Petitioner's allegations of coercion are belied by her sworn statements at the plea proceeding and are not entitled to any credence. In contrast to her belated and vague assertions, Defense Counsel's Declaration contains specific details about his advice to Petitioner regarding the consequences of turning down the plea offer:

> ***10** I did not "insist" that the Petitioner plea to anything. What I cautioned the Petitioner ... is that, if she did not accept the plea agreement, then it would be withdrawn. I also told the Petitioner that, should the offer be withdrawn, she would also be facing a weapons charge that could result in a harsher sentence, should she be convicted at trial. Notably, the Indictment did charge the Petitioner with a firearms charge under 18 U.S.C. § 924(c)(1)(A). A weapons charge was not included as part of the negotiated plea agreement.

Abbott Decl. ¶ 7.

In fact, as Defense Counsel noted, the Indictment did charge Petitioner, in Count 2, with a violation of 18 U.S.C. § 924(c)(1)(A)(i). That statutory section provides as follows:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i) be sentenced to a term of imprisonment of not less than 5 years....

18 U.S.C. § 924(c)(1)(A)(i). Where applicable, the prescribed five-year minimum sentence for possession set forth in 18 U.S.C. § 924(c)(1)(A)(i) "must run consecutively to any other term of imprisonment, including the term imposed for the predicate crime of violence or drug trafficking." *United States v. Tejada*, 631 F.3d 614, 617 (2d Cir. 2011) (citing 18 U.S.C. § 924(c)(1)(D)(ii)).

Thus, had Petitioner proceeded to trial on the full Indictment, and had she been convicted of Count 2 as well as Count 1, the Court would have been *required* to impose a sentence of 5 years' imprisonment for the Count 2 conviction. *See id.* Moreover, this sentence would be *required* to be served consecutively to, not concurrently with, whatever term of imprisonment was imposed for the Count 1 conviction. *See id.* However, as part of the Plea Agreement, the Government moved to dismiss, and the Court dismissed, Count 2. This was a significant benefit conferred by the Plea Agreement. In sum, there was nothing inaccurate or misleading about Defense Counsel's statements to Petitioner regarding the criminal charges and sentencing exposure she would face if she did not accept the guilty plea. The Court finds that Petitioner's claim of being threatened and coerced lacks a colorable factual basis.

**IV. Ground Three: Fourth Amendment Violation**

Petitioner contends that the search and seizure of her apartment in January 2018 was unreasonable under the Fourth Amendment because several of the same police officers who responded to the break-in at her residence in December 2017 were also involved in the search and seizure, and that these officers have been found to have engaged in misconduct and evidence tampering. This claim fails for several reasons.

First, this Fourth Amendment claim—which does not relate to the voluntariness of Petitioner's guilty plea—cannot provide a basis for habeas relief. *See*, *e.g.*, *LaMarco v. United States*, 336 F. Supp.3d 152, 166 (E.D.N.Y. 2018) ("The Petitioner entered a guilty plea in this matter and to the

extent that the Petitioner's grounds for relief do not relate to the validity of the plea itself, but are veiled attacks on antecedent constitutional violations, relief under Section 2255 is precluded."). Generally, a guilty plea "conclusively resolves the question of factual guilt support the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006). If the defendant's admission of guilt is valid, she "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267. In light of the Court's finding that Petitioner's guilty plea was knowing, voluntary, and intelligent, her Fourth Amendment claim cannot form the basis for relief under § 2255. *See* Czernicki v. United States, 270 F. Supp. 2d 391, 393 (S.D.N.Y. 2003) ("[B]ecause the petitioner knowingly, voluntarily, and intentionally pleaded guilty ..., the petitioner's claims relating to the alleged unconstitutionality of the prior search and seizure are not a basis to vacate or modify his sentence.") (citation omitted).

***11** Second, the Fourth Amendment claim is barred by the valid collateral attack waiver in the Plea Agreement. *See* Plea Agreement ¶¶ 18-19. The waiver foreclosed Petitioner her from collaterally challenging her sentence if it fell within the stipulated range. *See id.* The Second Circuit has held such waivers enforceable. *See* United States v. *Salcido–Contreras*, 990 F.2d 51, 53 (2d Cir. 1993) (*per curiam*) ("In no circumstance ... may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless."). Here, Petitioner was sentenced to 168 months' imprisonment, at the bottom end of the range contemplated by the parties. Therefore, the collateral attack waiver operates to bar her Fourth Amendment claim. *See* *Czernicki*, 270 F. Supp.2d at 393.

Third, the Fourth Amendment claim is procedurally defaulted because Petitioner did not raise it on direct appeal, and she has not shown cause for the default and prejudice attributable thereto. *See* *Campino v. United States*, 968 F.2d 187, 191 (2d Cir. 1992) (defendant did not show cause for, or prejudice from, failure to raise claim of illegal seizure of evidence on direct appeal where defendant knew of claim at time of appeal). In particular, she cannot rely on her claim of ineffective assistance of Defense Counsel as "cause," because, as discussed above, the Court has found that it lacks merit. *See* *Kalani v. United States*, No. 02 CIV. 8663 (SAS), 2002 WL 31453094, at *4 (S.D.N.Y. Oct. 31, 2002) ("Because Kalani's ineffective assistance of trial counsel claims are meritless, ... Kalani's appellate counsel was not ineffective for failing to raise such claims on appeal. Accordingly, appellate counsel's conduct cannot serve as cause for Kalani's procedural default [of Section 2255 claim].") (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (holding that ineffective assistance can establish cause for a procedural default only if it is itself an independent constitutional claim)).

A petitioner unable to meet both the cause and prejudice prongs may collaterally attack a conviction only if she can establish that a serious constitutional error "has probably resulted in the conviction of one who is actually innocent." *Bousley*, 523 U.S. at 623 (quotation omitted). Petitioner has not come forward with any evidence that she is actually innocent of the drug-trafficking charge to which she pleaded guilty. Because the Court has concluded that Petitioner's guilty plea is valid, and because the Court has not been presented with evidence suggesting that Petitioner is not in fact guilty, she cannot overcome the procedural default based on a claim of actual innocence. *E.g.*, *Ferrer v. Superintendent*, 628 F. Supp.2d 294, 310 (N.D.N.Y. 2008).

## CONCLUSION

For the foregoing reasons, the Motion to Vacate (ECF No. 276) is DENIED. Because Petitioner has not made "a substantial showing of the denial of a constitutional right[,]" 28 U.S.C. § 2253(c)(2), the Court DENIES a certificate of appealability. The Clerk of Court is directed to close the civil case associated with Petitioner's motion (6:19-cv-06886).

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 3269139

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 7050432
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Lance ELY, Petitioner,
v.
John B. LEMPKE, Respondent.

No. 09 Civ. 5836(RA)(HBP).
|
Oct. 18, 2012.

*REPORT AND RECOMMENDATION*

PITMAN, United States Magistrate Judge.

***1** TO THE HONORABLE RONNIE ABRAMS, United States District Judge,

I. *Introduction*

Petitioner Lance Ely seeks, by his *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, an Order vacating a judgment of conviction imposed on November 27, 2003 after a jury trial, by the Supreme Court of the State of New York, New York County (Grella, J.), for one count of burglary in the second degree, in violation of New York Penal Law Section 140.25(2) (Petition for a Writ of Habeas Corpus, filed Jun. 25, 2009 (Docket Item 2) ("Petition") at 1). Pursuant to that judgment, petitioner was sentenced as a persistent violent felony offender to a indeterminate term of imprisonment of twenty years to life. Petitioner is currently incarcerated pursuant to that judgment.

For the reasons set forth below, I respectfully recommend that the petition be denied.

II. *Facts*

A. *Facts Giving Rise to Petitioner's Conviction*

Petitioner's conviction arises from a burglary that took place in March 2003. The evidence offered at trial established the following facts.

On March 28, 2003, Donna Bubash resided in a fifthfloor apartment located in lower Manhattan (Tr.[1] 27). At approximately 2:00 p.m ., Bubash came out of the bathroom of her apartment and discovered petitioner in her bedroom, holding her purse (Tr. 28–29). Bubash asked petitioner to identify who he was and why he was there, and he replied that he was a messenger (Tr. 29). Upon further inquiry, however, petitioner asked Bubash to let him leave, promising not to "do this again" (Tr. 32). Bubash took her purse back from petitioner, and escorted him out of her apartment (Tr. 30–31). Petitioner was detained by construction workers from a neighboring apartment until the police arrived (Tr. 36–37, 111–12, 120). In petitioner's shoulder bag, the police found a screwdriver and an employee identification card from a messenger service for which petitioner had formerly worked (Tr. 113–16, 122–23).

Petitioner was charged with burglary in the second degree possession of burglar's tools in violation of New York Penal Law Sections 140.25(2) and 140.35, respectively (Petition 1; Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, filed Dec. 14, 2009 (Docket Item 7) ("Opp'n Memo.") at 2).

B. *Trial Court Proceedings*

Petitioner's trial began on September 15, 2003 (Tr. 1). The prosecution's case largely consisted of testimony establishing the foregoing events. Petitioner presented no evidence is his defense (Tr. 196–97).

The jury found petitioner guilty of burglary in the second degree (Tr. 308).[2]

On November 17, 2003, petitioner appeared for sentencing (S. Tr.[3] 1). The prosecutor submitted a statement that petitioner had been previously convicted of two or more felonies (S. Tr. 2–3). Petitioner did not dispute his prior felony convictions, arguing instead that the sentencing proceeding was illegal under *Apprendi v. New Jersey,* 530 U.S. 466 (2000), because the Court was relying on information not presented to the jury in determining his sentence (S. Tr. 3–4). The Court, rejecting petitioner's arguments, determined that petitioner was a persistent violent felony offender and sentenced him to an indeterminate term of twenty years to life (S. Tr. 14–16).

C. *Post–Conviction Proceedings*

1. *Direct Appeal*

***2** Petitioner, assisted by counsel, appealed his conviction to the Appellate Division of the Supreme Court for the First Department. Petitioner asserted three claims on appeal:

1. Appellant was denied his due process right to a fair trial by the prosecutor's pervasive misconduct in (a) mischaracterizing the defense, vouching for the People's witness, and expressing his personal belief in appellant's guilt; (b) introducing testimony tending to establish appellant's propensity to commit burglary and exploiting it during his summation. U.S. Const. Amend. XIV; N.Y.S. Const. Art I, § 6.

2. Appellant's sentence of twenty years to life imprisonment as a persistent violent felon pursuant to P.L. § 70.08 and C.P.L. § 400 .16 violated his rights to notice of the charges against him, to a jury trial and to due process of law, as the enhanced sentence was premised upon the existence of two violent predicate convictions, were the existence of the prior convictions was neither submitted to a jury not contained in an indictment. U.S. Const. Amends. VI & XIV; N.Y. Const., Art 1, §§ 2, 6, Art. VI, § 18; *Apprendi v. New Jersey,* 530 U.S. 466 (2000).

3. In light of appellant's tragic family history and his failure to cause anyone physical harm during the commission of a crime, appellant's sentence of 20 years of life is excessive.

(Brief for Defendant–Appellant, dated April 2006 ("Pet.App.Br."), annexed as Exhibit A to Declaration in Opposition to the Writ of Habeas Corpus, filed Dec. 14, 2009 (Docket Item 8) ("Opp'n Decl.") at 2).

The Appellate Division affirmed petitioner's conviction on November 27, 2007, stating, in pertinent part:

> The court properly exercised its discretion in denying defendant's mistrial motion, made on the ground that a portion of the prosecutor's summation shifted the burden of proof. The remarks in question were responsive to defendant's summation and did not mislead the jury as to the appropriate burden of proof. As to defendant's remaining summation claims, and his related evidentiary argument, there was nothing in the prosecutor's conduct that was so egregious as to warrant reversal (see *People v. Overlee,* 236 A.D.2d 133 [1997], lv. denied 91 N.Y.2d 976 [1998]; *People v. D'Alessandro,* 184 A.D.2d 114, 118–119 [1992], *lv denied* 81 N.Y.2d 884 [1993] ).
>
> Defendant's constitutional challenge to the procedure under which he was adjudicated a persistent violent felony offender is without merit (see *Almendarez–Torres v. United States,* 523 U.S. 224 [1998] ). We perceive no basis for reducing the sentence.

*People v. Ely,* 45 A.D.3d 466, 466, 845 N.Y.S.2d 734, 734 (2007).

Petitioner, again assisted by counsel, sought leave to appeal to the New York Court of Appeals (Letter to the Honorable Judith S. Kaye, dated Dec. 7, 2007, annexed as Exhibit D to Opp'n Decl., at 1). The Court of Appeals denied petitioner's application without opinion on March 26, 2008. *People v. Ely,* 10 N.Y.3d 810, 886 N.E.2d 809, 857 N.Y.S.2d 44 (2008).

2. *Motion to Vacate and Motion to Re-sentence*

***3** By a *pro se* motion dated August 13, 2007, filed in New York Supreme Court, petitioner sought to vacate the judgment of the Trial Court pursuant to New York Criminal Procedure Law Sections 440.10 and 440.30 (Notice of Motion to Vacate Judgment Pursuant to CPL § 440.10 & 440.30, dated Aug. 13, 2007 ("Pet. Mot. to Vacate"), annexed as Exhibit F to Opp'n Decl., at 1). Petitioner articulated his claims in this motion as follows:

(i) no probable cause was shown during the preliminary hearing concerning justification for continued incarceration due to a lack of prima facie evidence [*sic* ] (CPL § 140.30[4] & CPL § 70.10[1][2]; and CPL § 190.30;

(ii) the Prosecutor as a matter of law did not have legal control and jurisdiction over a "bona fide" "Complainant Affiant" claiming to be a victim as required by section 37–a, and 39 of the General Construction Law;

(iii) that as a result of the prosecution willfully and knowingly making a direct presentation before the grand jury with less than hearsay information which could not be corroborated as required, and such evidence having no probative value the Grand Jury Proceedings are defective and [l]egally inadequate as a matter of law to sustain a vote to indict. See CPL 210.35(5); and 70.10[1]; and

(iv) the Prosecutor committed prosecutorial misconduct in violation of their code of Ethics and defendant right of access to section 440.10, and 440.30 [*sic* ];

(v) and the court's imposed surcharge must be made null and void when no record exist[s] to substantiate any victim or gain from the commission of a crime [*sic* ] the defendant is alleged to have benefit from in absence of a required hearing [*sic* ] (CPL § 400.40[1] ), and remission of any imposed fine, restitution, reparation or surcharge must be adjusted accordance with section 430 .20, subd. (2).

(Pet. Mot. to Vacate at 2).

In a separate motion, dated August 16, 2007 and also filed in New York Supreme Court, petitioner sought re-sentencing pursuant to New York Criminal Procedure Law Sections 420.30(2) and 420.10(1) (Notice of Motion for Re–Sentence Pursuant to CPL § 420.30(2), dated Aug. 16, 2007 ("Pet. Mot. to Re-sentence"), annexed as Exhibit G to Opp'n Decl., at 1). Petitioner realleged the fifth ground from his motion to vacate, namely, that the imposition of a mandatory surcharge of $210.00 without an administrative hearing was an error, and requested that the surcharge be remitted back to him (Pet. Mot. to Re-sentence at 1).

In a decision dated February 15, 2008, the Supreme Court (Pickholz, J.) denied petitioner's motion to remit the mandatory surcharge and crime assistance fee of $210.00, holding that it was not a "fine" for purposes of New York Criminal Procedure Law Section 400.30 and, thus, no hearing was required (Decision, dated Feb. 15, 2008, annexed as Exhibit I to Opp'n Decl., at 1–2). In a separate decision dated February 28, 2008, the Supreme Court (Pickholz, J.) denied the remainder of the claims raised in petitioner's motion to vacate because petitioner "could have raised each of these claims upon appeal, as they are apparent from the face of the record" (Decision, dated Feb. 28, 2008, annexed as Exhibit H to Opp'n Decl., at 3). Alternatively, the Court denied the claims as meritless (Decision, dated Feb. 28, 2008, annexed as Exhibit H to Opp'n Decl., at 4).

***4** Petitioner's application for leave to appeal from these two decisions was denied by the Appellate Division without opinion on July 1, 2008. *People v. Ely,* 2008 N.Y. Slip. Op. 76499(U) (1st Dep't July 1, 2008). On August 28, 2008, the Court of Appeals denied petitioner's application for leave to appeal from the Appellate Divisions's decisions. *People v. Ely,* 11 N.Y.3d 736, 894 N.E.2d 658, 864 N.Y.S.2d 394 (2008).

3. *Writ of Error Coram Nobis*

On June 26, 2009, petitioner filed a *pro se* petition for a writ of error coram nobis in the Appellate Division, First Department (Notice of Application for Writ of Error Coram Nobis, dated June 19, 2009, annexed as Exhibit N to Opp'n Decl., at 1). Petitioner alleged that his appellate counsel was ineffective for neglecting to raise three issues: (1) the failure to remove a juror who had demonstrated a "strong bias" against petitioner by "making faces and expressing other behaviors indicative of bias," (2) the Trial Court's refusal to entertain petitioner's arguments about why he wanted to replace his trial counsel, and (3) that the failure of the prosecution to disclose fingerprint reports from the crime scene violated its obligations under *People v. Rosario,* 9 N.Y.2d 286, 290–91, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961) and *Brady v. Maryland,* 373 U.S. 83 (1963) (Memorandum of Law in Support of Writ of Error Coram Nobis ("Coram Nobis Memo."), dated June 19, 2009, annexed as Exhibit N to Opp'n Decl., at 2–7). On October 29, 2009, the Appellate Division denied the petition without opinion. *People v. Ely,* 2009 N.Y. Slip. Op. 87159(U) (1st Dep't Oct. 29, 2009). The Court of Appeals denied leave to appeal on January 21, 2010. *People v. Ely,* 13 N.Y.3d 940, 922 N.E.2d 919, 895 N.Y.S.2d 330 (2010).

D. *The Pending Petition*

Petitioner, proceeding *pro se,* filed the pending petition on June 25, 2009, asserting claims drawn from both his appellate brief and his motion to vacate (Petition 7–8). Petitioner argued that (1) he was denied the due process right to fair trial by prosecutorial misconduct; (2) his sentence as a persistent violent felony offender violated the Sixth Amendment under *Apprendi;* (3) his sentence was excessive due to his "tragic family history" and failure to cause anyone physical harm during a crime; (4) no probable cause was shown during the preliminary hearing determining whether his continued incarceration was justified; (5) the prosecutor did not have control over a "bona fide complainant affiant"; (6) the prosecution "committed prosecutorial misconduct in violation of their code of ethics and defendant [*sic* ] right of access to section § 440.10 & 440.30"; and (7) the mandatory surcharge of $210 .00 imposed at sentencing was improper (Petition 7–8).

In a motion dated November 20, 2009, petitioner moved to "stay and/or amend" his petition to assert several new claims, chief among them a claim that his rights under the Confrontation Clause of the Sixth Amendment were violated by the prosecution's failure to call two members of the New York Police Department's ("NYPD") Evidence

Collection Team as witnesses to testify about fingerprint analysis conducted at the crime scene (Notice of Motion for Stay and/or Amend Petition Under Fed. R. Civ. Proc. 15(a), filed Nov. 25, 2009 (Docket Item 6) ("Pet. Mot. to Amend") at 5). Petitioner argued that in light of *Melendez–Diaz v. Massachusetts,* 557 U.S. 305 (2009), a Confontation Clause case decided after his original petition was filed that petitioner claimed "established a clarification of constitutional law that applies retroactively," a stay of the habeas proceedings was warranted to allow for the exhaustion of the claim in state court (Memorandum of Law in Support of Pet. Mot. to Amend, filed Nov. 25, 2009 (Docket Item 6) ("Pet. Mot. To Amend Mem.") at 1–2).

***5** Petitioner also sought to amend his habeas corpus petition to include several additional claims, including (1) an allegation of juror misconduct in violation of New York Criminal Procedure Law Section 270.35; (2) a claim that the Trial Court improperly disregarded his desire for new counsel; (3) a claim that the prosecution committed *Rosario* and *Brady* violations that were "entwined" with the Confrontation Clause claim; (4) a reiteration of the claim that his sentence as a persistent violent felony offender violated the Sixth Amendment, and (5) a claim that his sentence violated the Eighth Amendment and "recent public policy consideration[s]" (Pet. Mot. to Amend at 6–7). Respondent opposed petitioner's motion on December 16, 2009 (Docket Item 10).

On April 16, 2010, respondent submitted a letter application requesting that the decision on petitioner's habeas corpus petition be held in abeyance in light of the New York Attorney General's plan to seek rehearing *en banc* of the Second Circuit's decision in *Besser v. Walsh,* 601 F.3d 163 (2d Cir.2010), which held that New York's persistent felony offender statute ("PFO Statute"), the statute under which petitioner was sentenced, was unconstitutional under the Sixth Amendment (Letter from Respondent, dated Apr. 15, 2010 (undocketed), at 1–2). On April 22, 2010, I granted respondent's application to hold the matter in abeyance "pending the resolution of the petition for rehearing *en banc"* of the *Besser* decision (Docket Item 11).

On April 30, 2010, the Second Circuit granted *en banc* review of the *Besser* decision.

On September 13, 2010, the Honorable Paul A. Crotty, United States District Judge, to whom this matter was then assigned, issued an Order, which stated, in pertinent part:

> In light of the memo-endorsement issued by Magistrate Judge Henry Pitman April 22, 2010, the Clerk of Court is directed to terminate the Petitioner's motion (document # 6) to stay and/or motion to correct the Petition under FRCP 15(a). The motion is subject to reinstatement pending the resolution of the petition for rehearing *en banc* of the decision in *Besser v. Walsh,* Docket No. 07–1599pr.

(Docket Item 12).

On October 21, 2010, in *Portalatin v. Graham,* 624 F.3d 69, 94 (2d Cir.2010) (*en banc), cert. denied,* 131 S.Ct. 1691 (2011), the Second Circuit vacated the panel opinion in *Besser,* and held that the New York PFO Statute was constitutional.

Petitioner never moved to reinstate his motion to stay and/or amend after the petition for rehearing *en banc* was resolved, in accordance with Judge Crotty's September 13, 2010 Order. Thus, the claims described therein have been abdandoned. Nevertheless, due to petitioner's *pro se* status, the absence of prejudice to respondent, and in the interest of completeness, I shall address all of petitioner's claims below.

## III. *Analysis*

### A. *Standard of Review*

Before a federal court can issue a writ of habeas corpus, a petitioner must overcome a "difficult to meet[ ] ... and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt ." *Cullen v. Pinholster,* ––– U.S. ––––, ––––, 131 S.Ct. 1388, 1398 (2011) (citations and internal quotation marks omitted). Specifically, habeas relief may be granted only when the state court's decision:

> ***6** (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or

28 U.S.C. § 2254(d).

The Supreme Court has explained the alternative standards set forth in subparagraph one as follows:

First, we have explained that a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). See also *Early v. Packer,* 537 U.S. 3, 7–8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (*per curiam* ) ....

Second, [petitioner] can satisfy § 2254(d) if he can demonstrate that the [State] Court's decision involved an "unreasonable application" of clearly established law. As we have explained:

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. See *Bell v. Cone,* 535 U.S. 685, 698–699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Williams, supra,* at 411, 120 S.Ct. 1495. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti,* 537 U.S. 19, 24–25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam* ).

*Price v. Vincent,* 538 U.S. 634, 640–41 (2003); *accord Waddington v. Sarausad,* 555 U.S. 179, 190 (2009); *Brown v. Payton,* 544 U.S. 133, 141 (2005); *see also Lockyer v. Andrade,* 538 U.S. 63, 70–72 (2003); *Bierenbaum v. Graham,* 607 F.3d 36, 47–48 (2d Cir.2010); *Hoi Man Yung v. Walker,* 468 F.3d 169, 176 (2d Cir.2006); *Hawkins v. Costello,* 460 F.3d 238, 242–43 (2d Cir.2006); *Brown v. Artuz,* 283 F.3d 492, 500–01 (2d Cir.2002).

In addition to the definition of "unreasonable application" set forth above, a state court may unreasonably apply Supreme Court precedent "if the state court unreasonably extends a legal rule established by the Supreme Court or if it unreasonably fails to extend a legal rule to a context in which the rule reasonably should apply." *Serrano v. Fischer,* 412 F.3d 292, 296–97 (2d Cir.2005). "Unreasonableness is determined by an 'objective' standard." *Gersten v. Senkowski,* 426 F.3d 588, 607 (2d Cir.2005), *quoting Williams v. Taylor,* 529 U.S. 362, 409 (2000); *Hawkins v. Costello, supra,* 460 F.3d at 242–43.

Both the "contrary to" and "unreasonable application" clauses "restrict[ ] the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams v. Taylor, supra,* 529 U.S. at 412; *accord Parker v. Matthews,* —— U.S. ——, ——, 132 S.Ct. 2148, 2155–56 (2012). "[C]learly established [f]ederal law ... refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin,* 549 U.S. 70, 74 (2006) (internal quotation marks omitted); *accord Thaler v. Haynes,* 559 U.S. 43, ——, 130 S.Ct. 1171, 1173 (2010) ("A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court."); *see Greene v. Fisher,* 132 S.Ct 38, 44 (2011). "That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller,* 289 F.3d 36, 42 (2d Cir.2002); *accord Davis v. Grant,* 532 F.3d 132, 140 (2d Cir.2008). "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." *Yung v. Walker,* 341 F.3d 104, 110 (2d Cir.2003); *accord DelValle v. Armstrong,* 306 F.3d 1197, 1200 (2d Cir.2002).

***7** A ruling that is clearly erroneous is not necessarily a ruling that constitutes an unreasonable application of federal law. *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003) (The "objectively unreasonable" and "clear error" standards "are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Davis v. Grant,* 532 F.3d 132, 140 (2d Cir.2008); *Cotto v. Herbert,* 331 F.3d 217, 248 (2d Cir.2003). However, " 'the increment [of error beyond clear error] need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.' " *Brisco v. Ercole,* 565 F.3d 80, 88 (2d Cir.2009), *quoting Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000).

To be entitled to the deferential standard of review under either sub-paragraph of subsection 2254(d), the state courts must have resolved the petitioner's claims "on the merits." *Cotto v. Herbert, supra,* 331 F.3d at 230; *see also Ryan v. Miller,* 303 F.3d 231, 245 (2d Cir.2002) ("[I]n order for this deferential standard of § 2254 to apply, we must first determine that the state court considered [petitioner's claim] on its merits."); *Sellan v. Kuhlman,* 261 F.3d 303, 309–10 (2d Cir.2001).

The Second Circuit has instructed habeas courts to "classify" a state court decision as either: (1) "fairly appearing to rest primarily on federal law or to be interwoven with federal law"; or (2) "fairly appearing to rest primarily on state procedural law." *Jimenez v. Walker,* 458 F.3d 130, 145 (2d Cir.2006). "If the state court's decision falls into the first category, and does not 'contain a clear statement of reliance on a state procedural bar,' the decision must be treated as having been made on the merits." *Mateo v. Fishkill Corr. Fac.,* No. CV04–3420 (DGT), 2007 WL 2362205 at *5 (E.D.N.Y. Aug. 14, 2007), *quoting Jimenez v. Walker, supra,* 458 F.3d at 138. To make this classification, courts in this circuit examine "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." *Jimenez v. Walker, supra,* 458 F.3d at 145 n. 16.

Here, upon examining these three factors, I conclude that the Appellate Division adjudicated the merits of petitioner's prosecutorial misconduct claim when it found that "[t]he court properly exercised its discretion in denying defendant's mistrial motion, made on the ground that a portion of the prose-cutor's summation shifted the burden of proof," and that as to "defendant's remaining summation claims, and his related evidentiary argument, there was nothing in the prosecutor's conduct that was so egregious as to warrant reversal." *People v. Ely, supra,* 45 A.D.3d at 466, 845 N.Y.S.2d at 734. Although the language is slightly conclusory, it does address the substance of petitioner's claim and does not remotely suggest that the decision rests on a procedural basis. My conclusion is not altered by the fact that the Appellate Division did not explicitly refer to the Fourteenth Amendment, or relevant federal case law. *See Sellan v. Kuhlman, supra,* 261 F.3d at 312 (noting that a state court decision may be deemed on the merits "even if the state court does not explicitly refer to ... relevant federal case law"); *Cheng Kang Shi v. Connolly,* 06 CV 2093(NG)(RLM), 2007 WL 4380276 at *6 (E.D.N.Y. Dec. 13, 2007) ("AEDPA's deferential standard of review applies even if the state court did not explicitly refer to either the federal claim or to relevant federal case law.") (internal quotation marks omitted). I also conclude that the Appellate Division adjudicated the merits of petitioner's *Apprendi* claim when it found that "Defendant's constitutional challenge to the procedure under which he was adjudicated a persistent violent felony offender is without merit," and cited relevant federal case law. *People v. Ely, supra,* 45 A.D.3d at 466, 845 N.Y.S.2d at 734, *citing Almendarez–Torres v. United States,* 523 U.S. 224 (1998).

***8** Because the Appellate Division adjudicated petitioner's prosecutorial misconduct claim and *Apprendi* claim on the merits, the Appellate Division's decision on this claims are entitled to the deferential standard of review set forth in 28 U.S.C. § 2254(d).

1. *Prosecutorial Misconduct Claim* [4]

Petitioner first asserts that misconduct by the prosecutor violated his Due Process right to a fair trial (Petition 7; Pet.App. Br. at 34–50). Specifically, petitioner claims that during summation, the prosecution mischaracterized the defense and shifted the burden of proof by stating that defense counsel had conceded that petitioner was knowingly and unlawfully in Bubash's apartment:

> [PEOPLE]: You see burglary in the second degree has elements and I am required to prove those elements to you beyond a reasonable doubt.
>
> I am not going to instruct you on them. I am just going to go through them one by one. That's the law. That's where I choose to start. So I have to prove first of all, that the [petitioner] knowingly and unlawfully entered a dwelling, all right. That's a non-issue, all right.
>
> [DEFENSE]: Objection. T
>
> HE COURT: Overruled.
>
> [PEOPLE]: No question that apartment 5–C is a dwelling. That's where Ms. Donna Bubash makes her residence. That's where Eve Gardner makes her residence. That's where they live and that's where they work.
>
> No question that the entry to the apartment was unlawful. Ms. Bubash sat up there and told you that he didn't have permission or authority to.
>
> [DEFENSE]: Objection, judge.

THE COURT: It's argument. But ultimately, it's going to be there jury's decision as to what the facts are.

[PEOPLE]: It's conceded by the defense that the [petitioner] was in the apartment. So again, there is no question that he entered the apartment and entered sort of understates what he did.

(Tr. 244–45; Petition 7).

Petitioner also argues that the prosecution "denigrated" defense counsel by commenting negatively on his emphasis in summation on testimonial inconsistencies. Petitioner cites the following portion of the prosecution's summation in support of this argument:

[PEOPLE]: Inconsistencies among witnesses. [Defense counsel] made a lot of that and allow me to address it. This case does not turn on whether Donna Bubash had a towel around her head; had a towel around her body. It doesn't turn on whether Eve Gardner let the police up; doesn't turn on whether how many people were situated in the lobby; how many construction workers those are ....

The arguments about inconsistencies are really designed to take your focus away from what really went on inside of the apartment ....

(Tr. 255–56; Petition 7).

Petitioner next cites the following passage and argues that the prosecution improperly vouched for the credibility of Bubash by stating that in order to acquit defendant, the jury would have to believe that Bubash was lying:

[PEOPLE]: And here is what's really the heart and meat of this case: For you to find the [petitioner] not guilty in this case, you have to believe that Donna Bubash is lying.

***9** [DEFENSE]: Objection.

[PEOPLE]: Not mistaken.

[DEFENSE]: Objection.

THE COURT: Overruled.

(Tr. 257; Petition 7).

Relying on the following comments, petitioner then argues that the prosecutor expressed a personal belief in petitioner's guilt:

[PEOPLE]: [Petitioner] has got a right to a fair trial and he got a fair trial.

[DEFENSE]: Objection, judge.

THE COURT: Overruled.

[PEOPLE]: Fair trial also—with a fair trial also comes a fair verdict, a verdict means the truth and the truth in this case is that this man is guilty of burglary in the second degree and you should find him so.

Thank you.

(Tr. 260–61; Petition 7).

Finally, petitioner argues that throughout the trial, the prosecution improperly elicited testimony regarding the screwdriver and expired employee ID recovered from petitioner's bag, and then improperly "exploited" this testimony in summation in a manner that suggested that petitioner had a propensity to commit criminal acts (Petition 7; Pet.App. Br. at 40–44). For example, during summation the prosecution stated:

[PEOPLE]: The screwdriver, what is he doing carrying a screwdriver? It's used to tighten screws, to loosen screws, to take things apart.

It's not used by messengers, okay. Messengers carry radios. Messengers carry bags and he did have a bag.

Messengers carry chains to secur[e] bicycles and things of that sort. You ever hear of a messenger carrying a screwdriver, no because they don't because he wasn't there as a messenger, okay. The screwdriver is something that you use if you want to pry open a door, pry open a window, to gain access to something that's locked. That's why the screwdriver was in the bag; more physical evidence of his intent to commit a crime.

Luckily for him. [DEFENSE]: Objection.

THE COURT: Overruled.

(Tr. 249).

A prosecutor's comments or argument during trial will justify habeas relief only when they "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986), *quoting* *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974);

*Bossett v. Walker, supra,* 41 F.3d at 829 (2d Cir.1994) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus 'is the narrow one of due process, and not the broad exercise of supervisory power.' "), *quoting Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir.1990), *quoting Darden v. Wainwright, supra,* 477 U.S. at 181. *Accord Greer v. Miller,* 483 U.S. 756, 765 (1987) ("To constitute a due process violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' "), *quoting United States v. Bagley,* 473 U.S. 667, 676 (1985).

In order to justify federal habeas relief, a petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments ... had a substantial and injurious effect or influence in determining the jury's verdict. Habeas relief is not appropriate when there is merely a 'reasonable possibility' that trial error contributed to the verdict." *Bentley v. Scully,* 41 F.3d 818, 824 (2d Cir.1994), *quoting Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993); *Escobar v. Senkowski,* 02 Civ. 8066(LAK) (THK), 2005 WL 1307939 at *16 (S.D.N.Y. May 26, 2005) (same), *quoting Tankleff v. Senkowski,* 135 F.3d 235, 252 (2d Cir.1998).

***10** When a prosecutor is found to have engaged in improper conduct, Courts in this Circuit have considered the following non-exhaustive factors in assessing whether prosecutorial misconduct resulted in actual prejudice to a criminal defendant: "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." *Bentley v. Scully, supra,* 41 F.3d at 824, *citing Gonzalez v. Sullivan,* 934 F.2d 419, 424 (2d Cir.1991); *see also United States v. Millar,* 79 F.3d 338, 343 (2d Cir.1996); *Floyd v. Meachum, supra,* 907 F.2d at 355; *United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir.1981). These mitigating factors are present here.

Here, the prosecution's statements during summation were not improper. First, the prosecution's use of the phrase "non-issue" to refer to certain elements of burglary was clearly meant to convey the strength of the evidence against petitioner, and not a suggestion that any element would not have to be proven beyond a reasonable doubt. Indeed, immediately after the prosecution used the phrase, it proceeded to discuss at length the testimony that established each element of the crime (Tr. 245–61). Second, the prosecution's comment on the defense's reliance on inconsistencies in testimony cannot be fairly said to have "denigrated" defense counsel; the statements were directed at defense counsel's arguments, not at him personally, and there was simply no disparaging, excessively rhetorical, or even mildly abusive language that suggests otherwise. Moreover, it is not improper for an attorney to argue that his or her adversary's arguments are a diversionary tactic. *See United States v. Lee,* 123 F. App'x 439, 441 (2d. Cir2005); *Everett v. Fischer,* 00–CV6300(NG), 2002 WL 1447487 at *3 (E.D.N.Y. July 3, 2002). Third, the prosecutor's statement that acquittal would require the jury to "believe that Donna Bubash is lying" was permissible argument in light of the nature of the case and defense counsel's preceding summation, which attacked Bubash's credibility. As the Trial Court correctly noted, the case was not one of mistaken identity-petitioner did not dispute that he was inside the apartment with Bubash—and thus, the Court was within its discretion in allowing the prosecution to emphasize this aspect of the case in its arguments:

> [THE COURT]: Let's say that the [petitioner] for argument's sake testified and let's say he said that he worked for a certain company on that day? Well, then the argument would be he either did or he didn't. He is not mistaken about that. He is either telling the truth or he isn't and along those lines, I let that argument stand.

(Tr. 268–69). Finally, the petitioner's argument that the prosecutor injected his personal beliefs into his summation is untenable. The passage petitioner cites contains no use of the pronoun "I" or any other rhetorical device that would imply the prosecutor was attempting to bolster the case with his own views or the prestige of his office. Thus, the Trial Court was correct in overruling all of defense counsel's summation objections on the ground that the prosecution was engaging in permissible argument (Tr. 244–61), and in re-emphasizing this point in denying petitioner's post-summation motion for a mistrial (Tr. 266–70). *See United States v. Miller,* 116 F.3d 641, 682–83 (prosecutor's comment that defendants were "guilty on all counts," made at the conclusion of summation, did not constitute improper vouching).

***11** The prosecution's elicitation of testimony relating to the screwdriver and the ID card, and subsequent reference to the items during summation, were also not improper attempts

to demonstrate petitioner's criminal propensity. The Trial Court denied suppression of the contents of petitioner's bag, including the screwdriver and the ID card, and explicitly noted that the prosecution was "at liberty to elicit testimony with regard to the search and seizure of the bag and its contents" (Tr. 2–3). Thus, it was well within the bounds of fair argument for the prosecutor to elicit testimony about these items, and to argue during summation that petitioner was carrying these items, for which no reasonable explanation was offered, for criminal purposes.

However, even assuming, *arguendo,* that the prosecutor's statements were improper, when viewed in the context of the defense argument that preceded them and given the mitigating factors set forth below, these comments individually and cumulatively did not substantially prejudice petitioner and, thus, do not warrant habeas relief. *United States v. Modica, supra,* 663 F.2d at 1181 ("A prosecutor's improper summation results in a denial of due process when the improper statements cause substantial prejudice to the defendant.").

First, the prosecutor's statements was not severe. The allegedly improper comments were brief and relegated entirely to summation, an area in which the prosecution enjoys broad leeway. *United States v. Edwards,* 342 F.3d 168, 181 (2d Cir.2003) ("The government has broad latitude in the inferences it may reasonably suggest to the jury during summation."), *quoting United States v. Zackson,* 12 F.3d 1178 (2d Cir.1993). In addition, the Appellate Division found that the prosecution's alleged burden-shifting statement was a fair response to defense counsel's summation, and that there was nothing in the prosecutor's remaining conduct "that was so egregious as to warrant reversal." *People v. Ely, supra,* 45 A.D.3d at 466, 845 N.Y.S.2d at 734; *accord Tankleff v. Senkowski, supra,* 135 F.3d at 253 ("[T]he severity of the prosecutor's misconduct in [petitioner's] case was mitigated by the brevity and fleeting nature of the improper comments."); *Escobar v. Senkowski, supra,* 2005 WL 1307939 at *15 ("[A] prosecutor's improper comments during summation must be more than short and fleeting, but must instead be so numerous and, in combination, so prejudicial that a new trial is required.") (internal quotation marks omitted). Brief and limited instances of improper argument by the prosecution during its summation do not ordinarily warrant habeas relief. *Donnelly v. DeChristoforo, supra,* 416 U.S. at 646 ("isolated passages" of prosecutor's argument, while improper, did not merit habeas relief); *Kaiser v. New York,* 394 U.S. 280, 281 n. 5 (1969) (same).

Second, the Trial Court instructed the jury both before and at several points during summations that each party's closing statement was merely argument and that the jury could accept or reject these arguments (Tr. 226–27, 245, 247, 258, 270). The Trial Court also provided a detailed charge to the jury on each element of burglary in the second degree (Tr. 293–96). A jury is "presumed to follow their instructions[,]" *Richardson v. Marsh,* 481 U.S. 200, 211 (1987), and the record discloses no reason why this presumption should not apply here. *See Wicks v. Miller,* 05 Civ. 5341(JGK), 2007 WL 1434992 at *6 (S.D.N.Y. May 15, 2007) (Koeltl, D.J.) (jury not unduly influenced by prosecutor's comments concerning the evidence during opening statement where trial court instructed jury that only its recollection of the evidence controlled).

***12** Third, petitioner's conviction was certain absent the prosecutor's comment because the prosecution presented substantial evidence of petitioner's guilt. Bubash testified that she found petitioner inside her bedroom holding her purse, and that he falsely claimed to be a courier delivering a package (Tr. 28–30). Although petitioner claimed to work for Federal Express, he had no uniform or any other documentation to support this contention, and soon told Bubash that he would not "do this again" (Tr. 29, 32). A carpenter who was working in the next apartment and the arresting officer offered testimony as to petitioner's failure to offer any credible explanation for his presence in the building (Tr. 108–41). The arresting officer offered additional testimony about the items recovered from petitioner's bag, which included a six inch, flat head screwdriver, a tool commonly used in burglaries (Tr. 113). Finally, petitioner's former manager at Supreme Systems, a courier service, testified that petitioner had been terminated as a courier two months prior to the incident in question (Tr. 180–92). Thus, given the overwhelming evidence of guilt presented at trial, coupled with the fact that the prosecutor's comments were extremely limited, petitioner has failed to established that, if the prosecutor's arguments were improper, they had a substantial or injurious effect or influence on the jury's verdict. *See Bentley v. Scully, supra,* 41 F.3d at 825 ("Because of the compelling evidence in the prosecution's case against [petitioner], as well as the fact that the prosecutor's summation comments were both brief and isolated, we find that [petitioner] has failed to demonstrate that the prosecutor's misconduct had a substantial or injurious effect on the jury's verdict.").

Finally, when analyzing the prosecution's improper argument during summation for possible substantial or injurious

effect or influence on the jury's verdict, the prosecution's comments cannot be examined in isolation. Rather, the prosecution's arguments must be reviewed in the context of the defense's summation that preceded it. *See, e.g., Shannon v. Senkowski,* 00 Civ. 2865(NRB), 2000 WL 1683448 at *7 (S.D.N.Y. Nov. 9, 2000) (Buchwald, D.J.) ("In determining the unfairness caused by a prosecutor's improper comments, courts must consider the comments in the broader context of the entire argument before the jury." (internal quotation marks omitted)); *see also Greer v. Miller, supra,* 483 U.S. at 765–66, *quoting Darden v. Wainwright, supra,* 477 U.S. at 179 ("It is helpful as an initial matter to place [the prosecution's] remarks in context.... The prosecutors' comments must be evaluated in light of the defense argument that preceded it...."). Improper argument by the prosecution during summation—although not excused—is less likely to be found actually prejudicial to the trial's fairness where the defense's summation invites the prosecution's response. "The idea of 'invited response' is used not to excuse improper comments, but to determine their effect on the trial as a whole." *Darden v. Wainwright, supra,* 477 U.S. at 182; *see also Escobar v. Senkowski, supra,* 2005 WL 1307939 at *14 (noting "that where the defense's summation invites a particular response from the prosecution, such a response is less likely to jeopardize the trial's fairness"). Here, the defense's summation specifically raised the issue of intent, suggesting that petitioner, given his voluntary departure from Bubash's apartment once confronted, lacked the intent to commit burglary (Tr. 235). This, in turn, invited the prosecution to proffer some explanation in response during its summation. Indeed, the Appellate Division, in addressing petitioner's burden-shifting claim, noted that "[t]he remarks in question were responsive to defendant's summation and did not mislead the jury as to the appropriate burden of proof." The defense's summation also attacked Bubash's credibility and raised other testimonial inconsistences amongst the prosecution's witnesses (227–40), further inviting a response.

***13** Thus, there was nothing improper in the prosecution's closing argument. Even if there were, when viewed in the context of the defense argument that preceded it, the prosecution's arguments did not have a substantial and injurious effect on the trial's fairness, and thus do not warrant habeas relief.

2. *Apprendi Claim* [5]

Petitioner's next ground for habeas relief is that the sentence imposed on him pursuant to New York's PFO Statute violated his Sixth Amendment right to a jury trial, on the theory that the sentencing judge engaged in impermissible judicial factfinding in determining that petitioner was a persistent felony offender (Petition 7; Pet.App. Br. at 50–55).

In *Portalatin v. Graham, supra,* 624 F.3d at 72, decided after petitioner filed his petition, the Second Circuit, sitting *en banc,* unequivocally upheld the constitutionality of New York's PFO Statute. Thus, it is now clear that New York's PFO Statute does not violate *Apprendi. Jones v. Heath,* 10 Civ. 8644(RJS)(FM), 2012 WL 2673649 at *2 (S.D.N.Y. July 5, 2012) (Sullivan D.J.) ("[T]here is no question that *Portalatin* remains the law of this Circuit and binding on this Court."); *Garvin v. Artist,* 08 Civ. 5285(PAC)(FM), 2012 WL 1428904 at *6 (S.D.N.Y. Apr. 25, 2012) (Crotty D.J.); *Mason v. Duncan,* 02 Civ. 5729, 2011 WL 2518964 at *2 (S.D.N.Y. June 23, 2011) (Wood, D.J.).

Thus, petitioner's claim that his sentence under New York's PFO Statute violated the Sixth Amendment cannot provide a basis for relief.

3. *Excessive Sentence Claim*

Petitioner's next ground for habeas relief is that the sentence imposed on him was excessive (Petition 7; Pet.App. Br. at 56–60).

In his habeas petition and appellate brief, petitioner does not specify the Constitutional right he believes has been violated by his "excessive" sentence. Rather, Petitioner's appellate brief argues only that the sentence was excessive because petitioner has a troubled family history and has never caused anyone physical harm during the commission of any crime. Petitioner's habeas petition and appellate brief do not, however, contend that his sentence violates any right protected by federal law. Petitioner did not, therefore, properly exhaust his state court remedies with respect to any constitutional claim concerning his sentence, and his state law claim that his sentence should be reduced in the interests of justice is not cognizable. *See Stallings v. Woods,* 04 CV 4714(RLM), 2006 WL 842380 at *22 (E.D.N.Y. Mar. 27, 2006), *citing Medina v. Greene,* 03 Civ. 8646(DC), 2004 WL 2809196 at *4 (S.D.N.Y. Dec. 7, 2004) (Chin, then D.J., now Cir. J.) (petitioner "did not fairly present the excessive sentence claim in federal constitutional terms" by appealing to the Appellate Division's power under N.Y.Crim. Proc. Law § 440.15, to reduce an excessive sentence in the interest of justice); *Rivera v. Greiner,* 272 F.Supp.2d 197, 201 (E.D.N.Y.2003); *see also White v. Keane,* 969 F.2d 1381, 1383

(2d Cir.1992) (*per curiam* ), *citing McCleskey v. Zant,* 499 U.S. 467 (1991); *and Rose v. Lundy,* 455 U.S. 509 (1982).

***14** Although petitioner has not explicitly argued either here or in state court that his sentence violated his rights under the United States Constitution, even if I read the petition as raising an Eighth Amendment claim, as petitioner proposes in his motion to amend, there is no merit to this claim. [6] A sentence violates the Eighth Amendment when the sentence is "grossly disproportionate" to the crime committed or when the sentence imposed "shocks the collective conscience of society." *United States v. Gonzalez,* 922 F.2d 1044, 1053 (2d Cir.1991); *see Kennedy v. Louisiana,* 554 U.S. 407, 420–21 (2008); *Atkins v. Virginia,* 536 U.S. 304, 311 (2002); *see also Lockyer v. Andrade, supra,* 538 U.S. at 73–76; *Harmelin v. Michigan,* 501 U.S. 957, 1001 (1991); *United States v. Snype,* 441 F.3d 119, 152 (2d Cir.2006); *United States v. Romano,* 825 F.2d 725, 731 (2d Cir.1987); *Pressley v. Bennett,* 235 F.Supp.2d 349, 368–69 (S.D.N.Y.2003) (Berman, D.J.); *Calderon v. Keane,* 97 Civ. 2116(RCC) (JCF), 2002 WL 1205745 at *14 (S.D.N.Y. Feb. 21, 2002) (Francis, M.J .) (Report & Recommendation), *adopted,* 2003 WL 22097504 (S.D.N.Y. Sept. 9, 2003) (Duffy, D.J.); *Sutton v. Herbert,* 39 F.Supp.2d 335, 337 (S.D.N.Y.1999) (Conner, D.J.).

Petitioner was convicted of burglary in the second degree, a class C felony, which required the Trial Court to sentence him as a persistent violent felony offender to an indeterminate term of incarceration with a minimum of between sixteen and twenty-five years and a maximum of life. *See* N.Y. Penal Law §§ 140.25(2); 70.08; 70.02(1)(b); 70.45(2)(e); N.Y.Crim. Proc. Law § 400.16. Petitioner was ultimately sentenced to a term of twenty years to life (Petition 1). A sentence within the range established by state law, as the sentence here clearly was, is ordinarily not subject to an Eighth Amendment challenge. *See White v. Keane, supra,* 969 F .2d at 1383 ("No federal constitutional issue is presented where ... the sentence is within the range prescribed by state law."); *Diaz v. Herbert,* 317 F.Supp.2d 462, 479–80 (S.D.N.Y.2004) (Marrero, D.J.); *Mayo v. Burge,* 02 Civ. 10192(NRB), 2003 WL 21767767 at *6 (S.D.N.Y. July 30, 2003) (Buchwald, D.J.); *Brown v. Goord,* 02 Civ. 2122(NRB), 2002 WL 31093611 at *5 (S.D.N.Y. Sept. 13, 2002) (Buchwald, D.J.); *Espinal v. Barkely,* 95 Civ. 1214(HB), 1996 WL 673833 at *1 (S.D.N.Y. Nov. 20, 1996) (Baer, D.J.); *Rodriguez v. O'Keefe,* 96 Civ.2094(LLS), 1996 WL 428164 at *7 (S.D.N.Y. July 31, 1996) (Stanton, D.J.), *aff'd mem.,* 122 F.3d 1057 (2d Cir.1997).

As stated by the Supreme Court, a habeas court will find that a state-law sentence is "grossly disproportionate" and violates the Eighth Amendment only "in the 'exceedingly rare' and 'extreme' case ." *Lockyer v. Andrade, supra,* 538 U.S. at 73, *quoting Harmelin v. Michigan, supra,* 501 U.S. at 1001; *accord Ewing v. California,* 538 U.S. 11, 21 (2003); *United States v. Snype, supra,* 441 F.3d at 152; *Whitlatch v. Senkowski,* 344 F.Supp.2d 898, 905–07 (W.D.N.Y.2004); *Vasquez v. Walker,* 01 Civ. 8032(AKH), 2004 WL 594646 at *5 (S.D.N.Y. Mar. 25, 2004) (Hellerstein, D.J.); Ayala v. People, 03 Civ. 2762(AKH), 2004 WL 527035 at *5 (S.D.N.Y. Mar. 16, 2004) (Hellerstein, D.J.); *Williams v. Philips,* 02 Civ. 5811(DC), 2003 WL 21961127 at *8 (S .D.N.Y. Aug. 18, 2003) (Chin, then D.J., now Cir. J.). Other courts have reviewed sentences imposed pursuant to recidivist sentencing statutes for comparable or less serious offenses and have uniformly upheld such sentences as consistent with the Eighth Amendment. *Ewing v. California, supra,* 538 U.S. 11 (sentence of 25 years to life imposed on recidivist for stealing three golf clubs not cruel and unusual); *Lockyer v. Andrade, supra,* 538 U.S. 77 (sentence of 25 years to life for stealing $150 worth of videotapes not cruel and unusual); *Rummel v. Estelle,* 445 U.S. 263 (1980) (sentence of life imprisonment for third-time felon who had, over the course of nine years, committed three larcenies with loss amounts of $80.00, $28.36 and $120.75, respectively, not cruel and unusual punishment).

***15** Thus, petitioner's excessive sentence claim does not provide any basis for habeas corpus relief.

4. *Confrontation Clause Claim*

Petitioner's next ground for habeas relief is that the prosecution's failure to call two members of the NYPD Evidence Collection Team to testify regarding a possible fingerprint report violated the Confrontation Clause of the Sixth Amendment as construed by *Melendez–Diaz v. Massachusetts, supra,* 557 U.S. at 305 (Pet. Mot. to Amend at 6–7). Because this claim was never raised in state court, it is likely barred from habeas corpus review. Even assuming, however, that the claim was preserved, it is entirely without merit.

At some point during trial, communication between the prosecution and defense counsel revealed that two members of the NYPD Evidence Collection Team, Officers Stewart and Alfani, had dusted the crime scene for fingerprints after petitioner's arrest (Tr. 148–49). A memo book entry of Officer Stewart, indicating "negative results," or that

no fingerprints had been lifted, was turned over to the defense during trial (Tr. 155–56). The prosecution was unable to ascertain, after a search was conducted, whether any additional documentation, such as a fingerprint report, existed (Tr. 148–73). To resolve this evidentiary lacuna, the prosecution and defense entered into a stipulation that no fingerprints had been found in Bubash's apartment. [7] Neither Officer Stewart nor Officer Alfani was called to testify by the prosecution, and no fingerprint-related materials were ever offered into evidence by the prosecution.

Petitioner argues that the prosecution's failure to call Officers Stewart and Alfani prevented "the defense from exploring the fingerprint report and memo book," items that were "exculpatory and material to petitioner's guilt or innocence" (Pet. Mot. to Amend Mem. at 2). Petitioner further argues that the failure to call the officers as witnesses "prevented the defense from exploring the possibility that the analysts lacked proper training or had poor judgment or from testing their 'honest [*sic* ], proficiency, and methodology' " (Pet. Mot. to Amend Mem. at 2)

In *Melendez–Diaz,* a narcotics case, the Supreme Court held that the admission of certificates of laboratory analysis, in lieu of the live testimony of the analysts who prepared them, violated a defendant's Sixth Amendment right to be confronted with the witnesses against him. *Melendez–Diaz v. Massachusetts, supra,* 557 U.S. at 307–09. The certificates of laboratory analysis, which were sworn to before a notary public and detailed the results of tests conducted on substances recovered from the defendant, were held to be within the "core class of testimonial statements" contemplated by *Crawford v. Washington,* 541 U.S. 36 (2004). *Melendez–Diaz v. Massachusetts, supra,* 557 U.S. at 310. The Court ultimately held that "[t]he Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits." *Melendez–Diaz v. Massachusetts, supra,* 557 U.S. at 329.

***16** Petitioner ignores the fact that *no* fingerprint evidence —either testimonial or documentary—was offered against him. As noted above, due to the prosecution's difficulty in ascertaining whether a fingerprint report even existed, the prosecution and defense stipulated that no fingerprint evidence was recovered from the scene of the crime, a stipulation that actually favored petitioner. Thus, since no hearsay evidence concerning fingerprints was offered against petitioner, there is no Confrontation Clause issue.

Therefore, petitioner's Confrontation Clause claim cannot serve as a basis for habeas corpus relief.

5. *Rosario and Brady Claims*

Petitioner next asserts are that the prosecution violated his rights under *People v. Rosario,* [8] *supra,* 9 N.Y.2d at 290–91, 173 N.E.2d at 884, 213 N.Y.S.2d at 452, and *Brady v. Maryland, supra,* 373 U.S. at 83, by failing to turn over a report of fingerprint analysis conducted at the crime scene (Pet. Mot. to Amend at 6–7).

First, to the extent petitioner is asserting a *Rosario* violation he has alleged only a state law claim which is not even cognizable in a federal habeas corpus proceeding. *See Landy v. Costello,* 141 F.3d 1151, 1151 (2d Cir.1998) ("To the extent that this claim is based on a *Rosario* violation, it must fail, because a habeas petition can only be granted to remedy some violation of federal law; the obligation to turn over Rosario material arises under state law."); *see also Bynum v. Duncan,* 02 Civ. 2124(RWS), 2003 WL 296563 at *9 n. 5 (S.D.N.Y. Feb. 12, 2003) (Sweet, D.J.); *Clark v. Portuondo,* 00 Civ. 2491(DAB)(RLE), 2002 WL 31553502 at *2–*3 (S.D.N.Y. Nov. 13, 2002) (Ellis, M.J.) (Report & Recommendation); *Johnson v. Filion,* 232 F.Supp.2d 98, 100 (S .D.N.Y.2002) (Berman, D.J.); *Senor v. Greiner,* 00–CV–5673JG, 2002 WL 31102612 at *12 (E.D.N.Y. Sept. 18, 2002); *Johnson v. State,* 01 Civ. 4219(GEL), 2002 WL 1974048 at *1–*2 (S.D.N.Y. Aug. 26, 2002) (Lynch, then D.J., now Cir. J.).

Petitioner's *Brady* claim must also be rejected. The standards applicable to a collateral attack on a conviction based on a putative *Brady* violation were succinctly set forth by the Honorable Lewis A. Kaplan, United States District Judge, in *Lamberti v. United States,* 22 F.Supp.2d 60, 66–67 (S.D.N.Y.1998), *aff'd without published opinion* sub nom., *Badalamenti v.. United States,* 201 F.3d 430 (2d Cir.1999):

> In order to establish a *Brady v. Maryland* violation, the defendant must show that (1) the government suppressed favorable evidence, and (2) the evidence the government suppressed was material. A defendant cannot satisfy the suppression requirement if the defendant, directly or through counsel, "either knew, or should have known, of the essential facts permitting him to take advantage of [that] evidence." As for the materiality requirement, "favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

different." "A 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome' of the case."

***17** (footnotes and citations omitted). *See also* *Banks v. Dretke,* 540 U.S. 668, 691 (2004); *Strickler v. Greene,* 527 U.S. 263, 281–82 (1999); *Tankleff v. Senkowski,* 135 F.3d 235, 250–51 (2d Cir.1998); *Leake v. Senkowski,* 01 Civ. 7559(SHS) (GWG), 2004 WL 1464889 at *19 (S.D.N.Y. June 30, 2004) (Gorenstein, M.J.) (Report & Recommendation).

Here, the Trial Court conducted an extensive colloquy with counsel, in which it became apparent that it was unlikely that fingerprints were lifted from the crime scene, or that a fingerprint report even existed (Tr. 148–73). For example, the prosecutor made the following representation to the Court:

> [PEOPLE]: It's my understanding that there were no lifts taken at all and I base that conclusion on an entry in a memo book that I discovered after this issue arose yesterday. And I also base that conclusion after a phone call to the print laboratory where these prints that if they are lifted, they are compared to see if there is a match or to identify the person who left the print and they have no record of any prints being submitted.
>
> So I think we know what happened here. I think they went to the apartment, the police that is, went to the apartment and they dusted for fingerprints and they didn't lift anything.
>
> THE COURT: Okay.
>
> [PEOPLE]: And there may or may not be a report about that. So that's where we stand.

(Tr. 149–50). The prosecution went on to describe the steps that had been taken to locate a fingerprint report, and the fact that none had been located (Tr. 154–55). After hearing from counsel, the Court noted that "it appear[ed] that no report was generated" (Tr. 159) and "the absence of [petitioner's] fingerprints ... [is] not *Brady* material" (Tr. 161). It goes without saying that there is no duty under *Brady* to furnish or create exculpatory information that does not exist. *Caswell v. Racetti,* 11–CV–0153 MAT, 2012 WL 1029457 at *11 (W.D.N.Y. Mar. 26, 2012). Even if a fingerprint report did exist, however, the issue was resolved by the favorable stipulation cited above. The stipulation, which stated that "no fingerprints were found" at the scene of the crime, completely negates any claim of prejudice by the petitioner (Tr. at 196).

Thus, neither petitioner's *Rosario* claim nor his *Brady* claim afford a basis for relief.

6. *Substitution of Counsel Claim*

Petitioner next claims that he is entitled to habeas corpus relief because the Trial Court refused to allow him to articulate his desire for new counsel (Pet. Mot. to Amend at 6).

The standards applicable to a substitution of counsel claim were succinctly set forth by the Honorable Michael A. Telesca, United States District Judge, in *Muhammad v. Artus,* 08–CV–0216 (MAT), 2010 WL 3092165 at *5 (W.D.N.Y. Aug. 5, 2010):

> The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. However, "the right to choose one's own counsel is not absolute." *United States v. Jones,* 381 F.3d 114, 119 (2d Cir.2004) (citations omitted). Rather, "[t]he Sixth Amendment guarantees a criminal defendant an effective advocate, not necessarily the advocate of his or her choosing." *Id.* (citation omitted). "Because the right to counsel of one's choice is not absolute, a trial court may require a defendant to proceed to trial with counsel not of defendant's choosing; although it may not compel defendant to proceed with incompetent counsel." *United States v. Schmidt,* 105 F.3d 82, 89 (2d Cir.1997).
>
> ***18** Whether or not to permit substitution of counsel is within the discretion of the trial judge and turns on the facts of the case. *See* *McKee v. Harris,* 649 F.2d 927, 931 (2d Cir.1981). It is not sufficient for a defendant simply to request a new lawyer. "[A] defendant seeking substitution of assigned counsel ... must afford the court with legitimate reasons for the lack of confidence." *McKee,* 649 F.2d at 932. " 'In order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict.' " *Id.* at 931 (quoting *United States v. Calabro,* 467 F.2d 973, 986 (2d Cir.1972)).
>
> In evaluating whether a trial court abused its discretion in denying a defendant's motion for substitution of counsel, the Second Circuit has looked at the following factors: the timeliness of the defendant's motion; adequacy of the trial court's inquiry into the defendant's complaint about counsel; and whether the attorney/client conflict

> was " 'so great that it had resulted in total lack of communication preventing an adequate defense.' " *United States v.. Simeonov,* 252 F.3d 238, 241 (2d Cir.2001) (quoting *Morris v. Slappy,* 461 U.S. 1, 13, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)); *accord United States v. John Doe No. 1,* 272 F.3d 116, 122 (2d Cir.2001).

*Muhammad v. Artus, supra,* 2010 WL 3092165 at *5.

At several points during trial, petitioner expressed dissatisfaction with his trial counsel (Tr. 2, 5–10, 173–77). However, at no point did petitioner provide evidence of legitimate reasons for the substitution of counsel, such as a conflict of interest or a complete breakdown of communication. Although petitioner did have a right to proceed without incompetent counsel, there is simply no evidence to suggest that his trial counsel was incompetent; indeed, after petitioner's trial counsel read a prepared statement from petitioner to the Court alleging various misconduct, the Court commended defense counsel on his performance:

> THE COURT: I find that [defense counsel's] representation of the defendant has been performed on the highest level of competency and advocacy, been knowledgeable and zealous trial advocate [*sic* ].
>
> He's made all the arguments, motions, objections and actions that I would have anticipated were appropriate in the defense of the defendant and there is nothing in the application that was just made that is of a factual or evidentiary nature that substantiates any of the complaints, charges, or criticisms that the defendant has leveled in this matter.

(Tr. at 173–77). The Court went on to construe petitioner's written statements as a motion for a mistrial, which it denied (Tr. 176–77). There is no indication in the record that petitioner ever made a formal application to substitute his trial counsel, or that his trial counsel prevented him from doing so. Even if petitioner's written statement could be construed as a motion to substitute counsel, however, in light of the laudatory comments cited above and the absence of evidence to the contrary, its denial was not an abuse of discretion.

***19** Thus, petitioner cannot obtain habeas relief on the ground that he was denied the right to substitute his trial counsel.

B. *Petitioner's Procedurally Barred Claims*

A number of petitioner's other claims must be rejected because they are procedurally barred.

A habeas petitioner's constitutional claim can be procedurally barred if it has not been asserted in state court proceedings in accordance with state procedural requirements and the state courts rely on that violation of state procedural requirements to reject the claim. As the Court of Appeals for the Second Circuit has explained:

> The independent and adequate state ground doctrine first arose in the context of direct appeals to the Supreme Court from final judgments of the state courts. Under that doctrine the Supreme Court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Moreover, "[t]his rule applies whether the state law ground is substantive or procedural." *Id.*
>
> * * *
>
> The doctrine also applies in the context of federal courts reviewing applications for a writ of habeas corpus .... [I]nvoking principles of comity and federalism ... federal habeas courts faced with an independent and adequate state ground of decision defer in the same manner as does the Supreme Court on direct review.
>
> *Garcia v. Lewis,* 188 F.3d 71, 76 (2d Cir.1999); *see also Beard v. Kindler,* 558 U.S. 53, ——, 130 S.Ct. 612, 614 (2009) ("A federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.") (inner quotations omitted); *Cone v. Bell,* 556 U.S. 449, —— 129 S.Ct. 1769, 1780 (2009) (same); *Bierenbaum v. Graham,* 607 F.3d 36, 47–48 (2d Cir.2010) (same); *Cotto v. Herbert,* 331 F.3d 217, 238–39 (2d Cir.2003); *Rhagi v.. Artuz,* 309 F.3d 103, 106 (2d Cir.2002), *citing Coleman v. Thompson, supra,* 501 U.S. at 729–31 ("[I]t is settled law that an independent and adequate state law ground for a state court conviction cannot be disturbed on habeas."); *Brown v. State of New York,* 04–CV–1087 (NG)(VVP), 2006 WL 3085704 at *2 (E.D.N.Y. Oct. 30, 2006) ("When a habeas corpus petitioner defaults a federal claim in state court ... by failing to preserve the claim for state appellate review ..., the independent and adequate state ground doctrine bars

> federal habeas corpus review."); *Rivera v. Moscicki,* 03 Civ. 5810(SAS), 2005 WL 2347840 at *2 (S.D.N.Y. Sept. 22, 2005) (Scheindlin, D.J.) ("A federal court generally may not review a state court decision that expressly relies on a procedural default as an independent and adequate state ground for dismissal.").

***20** Dismissal of a claim on the ground that consideration of the merits is precluded by an adequate and independent state procedural ground is appropriate where the last reasoned state court decision expressly relies on a state procedural bar:

> In *Harris [v. Reed,* 489 U.S. 255 (1989) ], the Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris,* 489 U.S. at 263, 109 S.Ct. 1038 (internal quotation marks omitted). We apply the *Long/Harris* presumption to the last "reasoned state judgment" .... *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

*Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000). *See also Galarza v. Keane, supra,* 252 F.3d at 637 ("We have repeatedly stated that in order for federal habeas review to be procedurally barred, a state court must actually have relied on a procedural bar as an independent basis for its disposition of the case, and the state court's reliance on state law must be unambiguous and clear from the face of the opinion.").

As long as the state court relies on a procedural bar as an independent basis for its decision, a claim will be procedurally barred on federal habeas review even where a state court addresses the merits of the claim in the alternative. As the Court of Appeals for the Second Circuit has noted:

> This court has held that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim ." *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990); *Harris,* 489 U.S. at 264 n. 10, 109 S.Ct. at 1044 n. 10 ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding"); *Wedra v. Lefevre,* 988 F.2d 334, 338–39 (2d Cir.1993).

*Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir.1996). *See also Robles v. Superintendent of Elmira Fac.,* 07 Civ. 596(LBS), 2007 WL 2600857 at *3 n. 3 (S.D.N.Y. Aug. 30, 2007) (Sand, D.J.); *Ashley v. Burge,* 05 Civ. 4497(JGK), 2006 WL 3327589 at *5 n. 5 (S.D.N.Y. Nov. 3, 2006) (Koeltl, D.J.).

However, even where the last reasoned decision of the state court expressly rejects a federal constitutional claim on a state procedural ground, federal habeas corpus review will not be precluded if (1) the state procedural ground is not independent and adequate, *see Jimenez v. Walker,* 458 F.3d 130, 138 (2d Cir.2006); *Monroe v. Kuhlman,* 433 F.3d 236, 241–42 (2d Cir.2006); *Cotto v. Herbert, supra,* 331 F.3d at 238–39; (2) there is cause for and prejudice from petitioner's failure to assert his claims in accordance with state procedural law, or (3) a failure to consider the claim would result in a fundamental miscarriage of justice. *Schlup v. Delo,* 513 U.S. 298, 324–27 (1995); *Coleman v. Thompson, supra,* 501 U.S. at 748–50; *Harris v. Reed,* 489 U.S. 255, 262 (1989); *Green v. Travis,* 414 F.3d 288, 294 (2d Cir.2005). To establish a fundamental miscarriage of justice, a habeas petitioner must show that a constitutional violation probably resulted in his conviction despite his actual innocence. *United States v. Olano,* 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); *Sweet v. Bennett,* 353 F.3d 135, 141 (2d Cir.2003) ( [A] "habeas petitioner may avoid [a procedural] default ... by showing ... that failure to consider the claim will result in miscarriage of justice, *i.e.,* the petitioner is actually innocent.").

***21** Here, the New York Supreme Court rejected the claims petitioner made in his motion to vacate, including his lack of probable cause claim, his "bona fide complainant affiant" claim, and his prosecutorial ethics claim, finding that petitioner "could have raised each of these claims upon appeal, as they are apparent from the face of the record," and citing New York Criminal Procedure Law Section 440.10(2)(c), [9] which precludes motions to vacate based on claims that could have been raised on direct review (Decision, dated Feb. 28, 2008, annexed as Exhibit H to Opp'n Decl., at 3–4).

Because the Appellate Division and the Court of Appeals both subsequently denied petitioner leave to appeal without opinion, *People v. Ely,* 2008 N.Y. Slip Op. 76499(U) (1st Dep't Jun. 26, 2008); *People v. Ely, supra,* 11 N.Y.3d at 736, 894 N.E.2d at 658, 864 N.Y.S.2d at 394, the New York Supreme Court was the "last state court rendering a judgment" on this claim. *Harris v. Reed, supra,* 489 U.S. at 262; *see Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991) ( "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or

rejecting the same claim [are presumed to] rest upon the same ground."). Thus, the New York Supreme Court's rejection of petitioner's claims gives rise to a procedural bar to federal habeas review.

There can be no question that New York Criminal Procedure Law Section 440.10(2)(c) constitutes an adequate and independent ground for the denial of petitioner's claims. *Clark v. Perez,* 510 F.3d 382, 393 (2d Cir.2008); *Aparicio v. Artuz,* 269 F.3d 78, 93; *Davis v. Mantello,* 42 F. App'x 488, 490 (2d Cir.2002); *Felton v. Muzzuca,* 98 Civ. 4567(RJS), 2012 WL 4462009 at *7 (S.D.N.Y. Sept. 27, 2012) (Sullivan, D.J.).

Petitioner could overcome this procedural bar by demonstrating either (1) cause for and prejudice from petitioner's failure to assert his claim in accordance with state procedural law or (2) that a failure to consider the claim would result in a fundamental miscarriage of justice. *Schlup v. Delo, supra,* 513 U.S. at 324–27; *Coleman v. Thompson, supra,* 501 U.S. at 748–50; *Harris v. Reed, supra,* 489 U.S. at 262; *Green v. Travis, supra,* 414 F .3d at 294. Petitioner has not, however, even attempted to meet either standard.

Accordingly, petitioner's lack of probable cause claim, his "bona fide complainant affiant" claim, and his prosecutorial ethics claim should be dismissed as procedurally barred.

C. *Petitioner's Other Non–Cognizable State Law Claims*

Petitioner's remaining claims do not provide a basis for habeas corpus relief because they allege violations of state law and do not allege a violation of any federally protected right.

It is fundamental that habeas corpus relief is available in federal court only when an individual is incarcerated in violation of a federally protected right. 28 U.S.C. § 2254(a); *Swarthout v. Cooke,* ––– U.S. ––––, ––––, 131 S.Ct 859, 861 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (internal quotation marks omitted)); *Howard v.. Walker,* 406 F.3d 114, 121 (2d Cir.2005) (noting that a claim that a conviction was obtained in violation of state law is not cognizable in federal court); *see also Adams v. Greiner,* 02 Civ. 6328(GEL), 2004 WL 912085 at *2 (S.D.N.Y. Apr. 29, 2004) (Lynch, D.J .) ("Habeas corpus is not an extension of the appeals process in the state court. Rather, it is a remedy for violations of a defendant's rights under the federal constitution, and a very narrow remedy at that."). Violations or errors of state law or procedure generally do not constitute grounds for habeas review. *Swarthout v. Cooke, supra,* 131 S.Ct at 861; *Estelle v. McGuire,* 502 U.S. 62, 68, *citing Lewis v. Jeffers,* 497 U.S. 764, 780 (1990) *and Pulley v.. Harris,* 465 U.S. 37, 41 (1984).

1. *Juror Misconduct Claim*

***22** Petitioner claims that the court erroneously failed to discharge a juror who was making faces at him, in violation of New York Criminal Procedure Law Section 270.35 (Pet. Mot. to Amend at 6). However, such a claim is purely one of state law, and is thus not cognizable on federal habeas corpus review. *Faria v. Perez,* 04–CV–2411 (RRM), 2012 WL 3800826 at *11–*12 (E.D.N.Y. Sept. 2, 2012) (allegedly sleeping juror); *Linnen v. Poole,* 766 F.Supp.2d 427, 469 (W.D.N.Y.2011) ("Habeas courts in this Circuit have routinely rejected claims that a trial court improperly delegated its duties under C.P.L. § 270.35 on the basis that such claims involve only a matter of state procedural law and do not present a federal constitutional question."); *Williams v. LaClair,* 08 Civ. 11354(SAS)(JCF), 2010 WL 129810 at *4 (S.D.N.Y. Jan. 13, 2010) (Scheindlin, D.J.) (adopting Report & Recommendation of Francis, M.J .).

Thus, petitioner's juror misconduct claim cannot provide a basis for habeas corpus relief. [10]

2. *Improper Fines Claim*

Petitioner also claims that certain mandatory fees, totaling $210 .00, were imposed on him in violation of New York Criminal Procedure Law Section 400.30, which requires fines to be based upon the gain or benefit that the defendant derived from the crime (Petition 8). Plainly, this claim is purely one of state law, and is thus not cognizable on habeas corpus review. Additionally, "[s]ince petitioner is not 'in custody' because of his non-payment, or inability to pay, the mandatory assessment fee, habeas corpus relief is unavailable." *Hendricks v. Senkowski,* 92 Civ. 320(LBS), 1993 WL 33417 (S.D.N.Y. Feb. 4, 1993) (Sand, D.J.), *citing* 28 U.S.C. § 2254(a).

Thus, petitioner's fees claim cannot serve as a basis for habeas corpus relief. [11]

IV. *Conclusion*

Accordingly, for all the foregoing reasons, I respectfully recommend that the petition be denied in all respects.

In addition, because petitioner has not made a substantial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued. 28 U.S.C. § 2253. To warrant the issuance of a certificate of appealability, "petitioner must show that reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Middleton v. Attorneys Gen.,* 396 F.3d 207, 209 (2d Cir.2005) (*per curiam* ) (citation and internal quotation marks omitted); *see also Love v. McCray,* 413 F.3d 192, 195 (2d Cir.2005) (*per curiam* ). For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that petitioner's federal rights were not violated.

I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith. *See Coppedqe v. United States,* 369 U.S. 438, 445 (1962).

V. *Objections*

***23** Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Ronnie Abrams, United States District Judge, 500 Pearl Street, Room 620, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Abrams. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS ***WILL*** RESULT IN A WAIVER OF OBJECTIONS AND ***WILL*** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v.Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–238 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 7050432

## Footnotes

1 "Tr." refers to the trial transcript.

2 The possession of burglar's tools charge was dismissed on defendant's motion prior to summations (Tr. 212–13).

3 "S. Tr." refers to the sentencing transcript.

4 Respondent concedes that petitioner's prosecutorial misconduct claim is exhausted (Opp'n Memo. at 19).

5 Respondent concedes that petitioner's *Apprendi* claim is exhausted (Opp'n Memo. at 20).

6 Although any federal claim concerning petitioner's sentence is unexhausted, I may, nevertheless, consider the claim on the merits to deny the claim. 28 U.S.C. § 2254(b)(2).

7 The full stipulation was read to the jury as follows:

> [PEOPLE]: Ladies and gentlemen, if a police officer from the New York City Police Department Evidence Collection Team would have testified here, that officer would say that the areas of apartment 5–C including People's No. 9, in evidence, the bag, were analyzed for fingerprint evidence and that no identifiable fingerprints were found.

(Tr. at 196).

8 In *People v. Rosario,* the New York Court of Appeals held, as a matter of state law, that a criminal defendant is entitled to the prior statements of the prosecution's witnesses in order to determine if the testimony of such witnesses in court departs from their prior statements. The holding in *Rosario* has been codified in N.Y.Crim. Proc. Law § 240.45.

9 New York Criminal Procedure Law Section 440.10(2)(c) provides that a court must deny a motion to vacate a judgment when:

> Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

10 It is also likely that petitioner's juror claim is moot, given that, during petitioner's trial, defense counsel withdrew any objection as to the alleged misbehaving juror:

> [DEFENSE]: Judge, I have had discussions with the defendant regarding the juror who he though might have made a face at him at one point.
>
> After yesterday's session, she appeared to be—we are not making any application as to her. We are satisfied with her as a sworn juror.
>
> We are not asking that she be relieved, removed. I am sorry.

(Tr. at 177–78).

11 The claim is also without merit. As the New York Supreme Court explained:

> CPL 400.30 requires the sentencing court to hold a hearing in order to determine the extent of the gain prior to imposing the fine. The mandatory surcharge and crime victim assistance fee are not fines within the meaning of CPL 400.30, however, and have nothing to do with the amount of gain that a defendant may have derived. They are, rather, fixed fees which are set by statute (see Penal Law 60.35). The statute does not require the sentencing court to hold a hearing prior to imposing the fees.

(Decision, dated Feb. 15, 2008, annexed as Exhibit I to Opp'n Decl., at 1–2).

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 544070
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Lance ELY, Petitioner,
v.
John B. LEMPKE, Respondent.

No. 09 Civ. 5836(RA)(HBP).
|
Feb. 11, 2013.

*ORDER ADOPTING REPORT AND RECOMMENDATION*

RONNIE ABRAMS, District Judge.

***1** The Court hereby adopts the thorough and well-reasoned Report and Recommendation of Magistrate Judge Pitman, dated October 18, 2012, to which no objection has been filed. Accordingly, the petition for a writ of habeas corpus is denied and the action is dismissed with prejudice. The parties' failure to file written objections, after Judge Pitman warned that such failure would result in a waiver of objections and would preclude appellate review, precludes appellate review of this decision. *See Caidor v. Onondaga County,* 517 F.3d 601 (2d Cir.2008).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 544070

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 7053582
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Bruce FLYNN, Petitioner,
v.
J. COLVIN, Superintendent, Mid-State Correctional Facility, Respondent.

No. 9:13-cv-01247-JKS
|
Signed 12/05/2016

**Attorneys and Law Firms**

Bruce Flynn, Elmira, NY, pro se.

Paul B. Lyons, Thomas B. Litsky, New York State Attorney General—New York Office, New York, NY, for Respondent.

MEMORANDUM DECISION

JAMES K. SINGLETON, JR., Senior United States District Judge

***1** Bruce Flynn, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Flynn is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Elmira Correctional Facility. Respondent has answered the Petition, and Flynn has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On October 14, 2009, Flynn was charged with second-degree burglary, second-degree criminal use of a firearm, second-degree unlawful imprisonment, and second-degree menacing. On January 6, 2010, Flynn appeared before the Clinton County Court to plead guilty to second-degree burglary and second-degree criminal use of a firearm in full satisfaction of all outstanding charges. On direct appeal of his conviction, the New York Appellate Division described the following facts underlying the charges against Flynn and his subsequent guilty plea:

> In October 2009, in relation to an incident involving his former paramour, [Flynn] was arrested and arraigned in Town Court. At that time, [Flynn] was apparently represented by attorney Marcia Moss, who apparently had been assigned to him by Town Court. The following week, an indictment was filed and [Flynn] was charged with burglary in the second degree, criminal use of a weapon in the second degree, unlawful imprisonment in the second degree and menacing in the second degree. When [Flynn] was arraigned in County Court, he stated to the court that he did not want Moss to represent him, and he submitted an application for assigned counsel as an indigent. County Court determined that, based on his income, [Flynn] was not eligible for assigned counsel as an indigent; the court then entered a plea of not guilty on [Flynn's] behalf and directed [Flynn] to seek retained counsel. At a subsequent appearance, [Flynn] submitted a second application for assigned counsel, which was denied by the court. At [Flynn's] next appearance, after [Flynn] stated that he had been unable to secure counsel because he had been denied access to the telephone and writing materials, County Court adjourned the matter and directed that [Flynn] be provided with access to a telephone and writing materials. The court also ordered [Flynn] to undergo a psychiatric evaluation pursuant to [New York Criminal Procedure Law ("CPL") ] article 730.
>
> In late November 2009, County Court arranged for attorney Matthew Favro to represent [Flynn], although the record is not clear as to how that came about. [Flynn] thereafter appeared in court with Favro and confirmed that he had accepted Favro as his attorney. The following month, after reviewing the report of the CPL article 730 examination, County Court found [Flynn] fit to stand trial and Favro thereafter filed various motions and notices on [Flynn's] behalf, including a notice of an affirmative defense of mental disease and defect. Ultimately, on January 6, 2010, [Flynn]—still represented by Favro—pleaded guilty to burglary in the second degree and criminal use of a weapon in the second degree in full satisfaction of the indictment and waived his right to appeal. On [Flynn's] behalf, during the plea hearing, Favro withdrew the notice of an affirmative defense of mental disease and defect.
>
> ***2** Throughout January 2010, [Flynn] sent various pro se requests to County Court, including a request to withdraw his plea and a request to have Favro removed as his counsel, although [Flynn] subsequently withdrew those motions. At a subsequent appearance, however, [Flynn], Favro and attorney Edward Narrow executed a consent to change attorneys so that Narrow could represent defendant. Narrow then requested an adjournment of the sentencing

> and filed a motion to withdraw [Flynn's] plea. County Court denied the motion and thereafter sentenced [Flynn] in accordance with the plea agreement to concurrent prison terms of 10 years, with 2½ years of postrelease supervision, for each of his convictions.

*People v. Flynn*, 939 N.Y.S.2d 16, 167-68 (N.Y. App. Div. 2012).

Through counsel, Flynn appealed his conviction, arguing that the trial court should have granted his motion to withdraw his plea. According to Flynn, Moss's representation of him was not properly terminated until he personally retained Narrow. He therefore alleged that everything that occurred between his arraignment in county court in October 2009 and his retention of Narrow in February 2010—including the entry of his guilty plea—was done in violation of his right to counsel because Moss was not present. Flynn contended that Favro's representation of him did not cure his deprivation of counsel because it was "not achieved through any recognized practice" and, in any event, Favro's representation was ineffective. Flynn also filed a *pro se* supplemental brief arguing that he was denied his right to counsel at arraignment. The Appellate Division unanimously affirmed the judgment against Flynn in its entirety in a reasoned opinion issued on February 23, 2012. *Flynn*, 939 N.Y.S.2d at 169. Flynn filed a counseled application for leave to appeal, which was summarily denied on August 9, 2012. *People v. Flynn*, 975 N.E.2d 918, 918 (N.Y. 2012).

Proceeding *pro se*, Flynn moved to vacate the judgment under CPL § 440.10. In that motion, Flynn argued that: 1) Moss was ineffective because she failed to arrange for Flynn to testify before the grand jury; 2) Favro did not provide competent advice regarding the State's plea offer or make a record of Moss's alleged deficiencies; 3) Flynn was denied his right to testify in the grand jury; 4) Flynn was denied his right to obtain private counsel; 5) the prosecution altered a cassette recording made by Flynn when they transferred that recording to CD; 6) his guilty plea was not voluntary, knowing, or intelligent; and 7) the prosecution committed a *Brady* [1] violation. The county court denied the motion on both procedural grounds and on the merits in a reasoned, unpublished opinion issued on April 11, 2011. Flynn sought leave to appeal. The Appellate Division granted the leave application and appointed counsel to represent Flynn on appeal. By letter dated August 29, 2011, Flynn advised that court that he wished to withdraw that appeal. The Appellate Division granted Flynn's request to withdraw and discontinue that appeal.

Flynn then filed a second *pro se* CPL § 440.10 motion, in which he contended that: 1) the search of his home was invalid; 2) the county court "failed" him by appointing Favro and allowing him to withdraw Flynn's affirmative defense of mental disease or defect and not holding a hearing on his motion to withdraw his plea; 3) the prosecution withheld *Brady* material; and 4) Favro was ineffective for a variety of reasons. The county court denied the motion on both procedural grounds and on the merits. Flynn sought leave to appeal and to expand the record. The Appellate Division denied the requests without comment on April 25, 2013.

***3** Again proceeding *pro se*, Flynn filed a motion for a writ of error coram nobis in the Appellate Division on the ground that he had received the ineffective assistance of appellate counsel. According to Flynn, appellate counsel Alexander Lesyk was ineffective because he did not raise claims that: 1) the police violated Flynn's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), by questioning him after he invoked his right to counsel; 2) the police perpetrated fraud because they did not list a cassette tape on the consent form; 3) the police coerced him to sign the consent-to-search form by depriving him of his medication for diabetes; and 4) counsel Favro was ineffective because he: a) advised Flynn that the cassette tape constituted damaging evidence that could be used against him at trial, b) did not move to suppress the tape, and c) did not consult with independent mental health professionals about Flynn's fitness to stand trial. The Appellate Division summarily denied the motion by order dated August 10, 2012. Flynn sought reargument, alleging that certain inmate law clerks who had helped draft his motion were extorting him and retaliating against him by filing defective papers. The Appellate Division denied reargument on June 27, 2013. Flynn then filed a motion to renew and reargue, which was also denied without comment on July 17, 2013. Flynn also filed a separate "motion for voiding writ of error coram nobis," which the Appellate Division likewise denied on August 21, 2013. Flynn sought leave to appeal the denial of his coram nobis motion, which the Court of Appeals denied on November 19, 2012. *People v. Flynn*, 981 N.E.2d 289, 289 (N.Y. 2012).

Flynn timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on July 31, 2013. 28 U.S.C. § 2244(d)(1)(A).

II. GROUNDS RAISED

In his *pro se* Petition before this Court, Flynn raises a number of grounds for relief. For ease in referring to Flynn's claims, the Court will follow the liberal construction and renumbering of claims used in Respondent's answer; namely, Flynn argues that: 1) he was denied his right to testify before the grand jury; 2) he was denied his right to counsel at his arraignment; 3) he was denied due process when counsel Moss conducted his preliminary hearing in his absence; 4) he was denied his right to counsel when the police questioned him after his arrest; 5) his guilty plea was unlawfully induced; 6) counsel Favro was ineffective for a number of reasons; 7) the prosecution failed to turn over exculpatory information and withheld *Rosario* [2] material; 8) the court denied him poor person status to prevent him from hiring an investigator and obtaining an independent mental health examination; 9) he involuntarily signed a consent-to-search form; 10) his waiver of the right to appeal was unknowing and involuntary because counsel did not explain the consequences of that waiver; 11) his right to counsel was violated because, after Favro was assigned to represent him, he had to appear in court without Favro for purposes of determining whether he qualified for the appointment of counsel; 12) he was denied his right to counsel because Moss represented him when the court assigned Favro to represent him; 13) he was denied due process because counsel did not ask for, and the trial court did not order, a competency hearing before he pled guilty; and 14) the trial court abused its discretion when it denied without conducting a hearing Flynn's motion to withdraw his guilty plea.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona*, 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

***4** In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

A. Exhaustion

Respondent correctly contends that Flynn has failed to exhaust a number of his claims. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).

Flynn did not present the following claims to the Court of Appeals: 1) the county court denied him poor person status to prevent him from hiring an investigator and obtaining an independent mental health examination; 2) his waiver of the right to appeal was unknowing and involuntary because counsel did not explain the consequences of that waiver; 3) he was denied due process because counsel did not ask for, and the trial court did not order, a competency hearing before he pled guilty; 4) his right to counsel was violated because, after Favro was assigned to represent him, he had to appear in court without Favro for purposes of determining whether he qualified for the appointment of counsel; 5) he was denied due process when counsel Moss conducted his preliminary hearing in his absence; 6) he was denied his right to testify before the grand jury; and 7) counsel Favro was ineffective for failing to challenge the sufficiency of the evidence. Likewise, although he claimed on direct appeal that the county court abused its discretion when it denied his motion to withdraw his guilty plea and without holding a hearing and that he was denied his right to counsel because Moss represented him when the court assigned Favro, he raised these claims with reference only to state law and did not raise them in federal constitutional terms.

***5** Accordingly, these claims are unexhausted. Further, his unexhausted claims are procedurally barred. *See Grey*, 933 F.2d at 120-21. Because Flynn may not now return to state court to exhaust these claims, the claims may be deemed exhausted but procedurally defaulted from habeas review. [3] *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

B. Merits

1. *Tollett* Bar

It is well settled that a guilty plea represents a "break in the chain of events which has preceded it in the criminal process," and a defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). " 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.' " *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (quoting *Tollett*, 411 U.S. at 267); *see United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non jurisdictional defects in the prior proceedings."). The *Tollett* bar also applies to "ineffective assistance claims relating to events prior to the guilty plea." *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996); *see also People v. Thomas*, 768 N.Y.S.2d 519, 520 (N.Y. App. Div. 2003) (holding that a claim of ineffective assistance of counsel, based on counsel's failure to challenge the indictment, was waived as the alleged failures did not undermine the voluntariness of defendant's guilty plea).

By voluntarily pleading guilty, Flynn forfeited his right to bring claims premised on errors that the trial court made or actions that his counsel should have taken prior to the plea process. The *Tollett* bar thus forecloses the majority of claims raised in Flynn's Petition, including the following claims: 1) he was denied his right to testify before the grand jury; 2) he was denied his right to counsel at his arraignment; 3) he was denied due process when counsel Moss conducted his preliminary hearing in his absence; 4) he was denied his right to counsel when the police questioned him after his arrest;

6) counsel Favro was ineffective for a number of reasons; 8) the court denied him poor person status to prevent him from hiring an investigator and obtaining an independent mental health examination; 9) he involuntarily signed a consent-to-search form; 11) his right to counsel was violated because, after Favro was assigned to represent him, he had to appear in court without Favro for purposes of determining whether he qualified for the appointment of counsel; and 12) he was denied his right to counsel because Moss represented him when the court assigned Favro to represent him.

***6** Some district courts within this Circuit have opined that an individual's right to receive *Brady* material cannot be waived, however, notwithstanding the existence of a valid guilty plea. *See* *United States v. Sapia*, No. 02 CIV 649, 2002 WL 620483, at *9 n. 4 (S.D.N.Y. Apr. 18, 2002) (citation omitted), *remanded on other grounds* *Sapia v. United States*, 108 Fed.Appx. 661 (2d Cir. Aug. 4, 2004); *see also* *Brown v. Berbary*, No. 01-CV-6500, 2004 WL 1570258, at *4-5 (W.D.N.Y. June 16, 2004); *Fambo v. Smith*, 433 F.Supp. 590 (W.D.N.Y.) (passim), aff'd, 565 F.2d 233 (2d Cir. 1977). These courts have concluded that, where a *Brady* claim may be construed as an attack on the voluntariness of a defendant's plea, it survives the entry of his guilty plea. *See* *Tollett*, 411 US. at 267. The Court will therefore also consider the merit of Ground 7, which alleges that a *Brady* violation affected the voluntariness of his plea.

2. Remaining Claims

The following claims fall outside the *Tollett* bar and will be addressed in turn: 5) his guilty plea was unlawfully induced; 7) the prosecution failed to turn over exculpatory information and withheld *Rosario* material; 10) his waiver of the right to appeal was unknowing and involuntary because counsel did not explain the consequences of that waiver; 13) he was denied due process because counsel did not ask for, and the trial court did not order, a competency hearing before he pled guilty; and 14) the trial court abused its discretion when it denied without conducting a hearing Flynn's motion to withdraw his guilty plea.

a. *Involuntary plea*

Flynn argues that his guilty plea was unlawfully induced, unknowing, and involuntary. When a guilty plea is not "voluntary and knowing, it has been obtained in violation of due process and is therefore void." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969) (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). Because a guilty plea is a waiver of certain constitutional rights, it must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749.

Flynn alleges that he was lied to about the length and content of the tape recording of the incident and was not given a police incident report. But Flynn provides nothing more than his unsupported assertions in support of this claim. It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief. *See, e.g.*, *Skeete v. New York*, No. 1:03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief.").

Moreover, the Appellate Division reasonably concluded that Flynn's plea was voluntarily, intelligently, and knowingly made. The appellate court stated:

> Here, [Flynn] made no statements inconsistent with guilt, indicated that he understood that he was forfeiting various rights by pleading guilty and, through his attorney, acknowledged that he was waiving any potential affirmative defenses that may have been available to him. Although [Flynn] indicated that he was taking medication for his mental health disorder, he specifically stated that the medication did not affect his ability to understand the proceedings. In short, there is nothing on this record to indicate that [Flynn's] guilty plea was anything but knowingly, voluntarily and intelligently entered.

***7** *Flynn*, 939 N.Y.S.2d at 169 (citations and footnote omitted).

That conclusion is fully supported by the record, and precludes any relief on that claim here.

b. *Unknowing waiver of right to appeal*

Flynn next contends that his waiver of his right to appeal was invalid because his attorney did not inform him of the consequences of signing the waiver of appeal. The waiver form, however, indicates that he "discussed [the waiver of appeal] with [his] attorney, and [was] advised of all [his] legal rights in this matter." In any event, Flynn appealed from his conviction, and the Appellate Division did not deem his appeal waived. *See Flynn*, 939 N.Y.S.2d at 166.

c. *Brady violation*

Flynn also alleges that the prosecution withheld evidence in violation of *Brady*. "To establish a *Brady* violation, a petitioner must show that (1) the undisclosed evidence was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was prejudiced as a result of the failure to disclose." *Mack v. Conway*, 476 Fed.Appx. 873, 876 (2d Cir. 2012) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

In support of his claim, Flynn identifies only a cassette tape recording that he made of the incident and which the police seized from his home. Contrary to Flynn's assertions, the record does not indicate that the prosecution withheld the tape. Indeed, in his second CPL § 440.10 motion, Flynn stated that his attorney had played a portion of that recording to him.

d. *Failure to hold competency hearing before accepting plea*

Flynn additionally contends that the trial court should have conducted a full competency hearing prior to accepting his guilty plea. "A criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel or plead guilty unless he does so 'competently and intelligently.' " *Godinez v. Moran*, 509 U.S. 389, 398 (1993). The standard for determining competency to stand trial and competency to plead guilty are the same. *Id.* at 399. The determination turns on whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Id.* at 396 (citation omitted).

The Due Process Clause does not require a competency hearing in every case; a hearing is required only if the court has "reasonable cause" to believe that the defendant has a mental defect rendering him incompetent. *United States v. Nichols*, 56 F.3d 403, 414 (2d Cir. 1995); *see Pate v. Robinson*, 383 U.S. 375-76 (1966) (holding that the failure of a trial court to hold a competency hearing *sue sponte* may violate due process if there is sufficient evidence to cast doubt upon a defendant's competency). There are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." *Silverstein v. Henderson*, 706 F.2d 361, 369 (2d Cir. 1983) (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)). "Reviewing courts should consider the indicia of incompetence that were before the trial judge, which may include a defendant's history of erratic or irrational behavior, bizarre courtroom conduct, defense counsel's expression of doubt about the client's competence, or medical reports." *Smith v. Rock*, 554 F. Supp. 2d 505, 519 (S.D.N.Y. 2008) (citations omitted).

***8** Here, two certified medical examiners interviewed Flynn and submitted examination reports pursuant to New York CPL Article 730 which indicated that Flynn did not as a result of mental disease or defect lack capacity to understand the proceedings against him or assist in his defense. Prior to accepting his plea, the court confirmed that, although Flynn was taking psychiatric medicine, it did not affect his ability to understand his defense counsel, the proceedings, and the nature of the plea agreement. Solemn declarations in open court carry a strong presumption of verity, and "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). He also gave coherent and clear responses to the court's questioning during the plea allocution. Flynn did not exhibit any bizarre or irrational behavior which might have alerted the court to the possibility that he could not understand the proceedings or rationally aid in his own defense. Here, there are no indications, other than Flynn's own assertions after the fact, that he could not understand the proceedings or assist in his own defense. This claim therefore provides no basis for relief.

e. *Denial of motion to withdraw plea without conducting a hearing*

Finally, Flynn claims that the trial court erred in denying his motion to withdraw his plea without conducting a hearing. As discussed above, however, this Court rejects his claim that his plea was not voluntary, knowing, and intelligent, and relies upon the same reasoning in rejecting his claim with regard to his motion to withdraw his guilty plea. Furthermore, both federal and state precedent have established that a criminal defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea. *See Hines v. Miller*, 318 F.3d 157, 162 (2d Cir. 2003) (collecting cases); *see also Reed v. Brown*, No. 10 Civ. 3072, 2011 WL 498363, at *8-9 (S.D.N.Y. Feb. 14, 2011) (collecting cases). The Second Circuit determined in *Hines* that the failure to hold an evidentiary hearing on a motion to withdraw a guilty plea "does not offend a deeply rooted or 'fundamental' principle of justice." *Hines*, 318 F.3d at 162; *see also Medina v. California*, 505 U.S. 437, 442-46 (1992) ("[W]e should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion, and its decision in this regard is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.") (citations and internal quotation marks omitted).

Under AEDPA's deferential standards and the Supreme Court's decision in *Medina*, the Appellate Division's determination on direct appeal that the county court did not abuse its discretion in denying Flynn's motion to withdraw his guilty plea without holding a hearing was not an unreasonable application of clearly established federal law. Therefore, Flynn is not entitled to relief on this claim.

C. Evidentiary Hearing

Flynn further requests in his Traverse an evidentiary hearing on all of his claims. The Supreme Court made clear in *Pinholster* that "review under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996). "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams v. Taylor*, 529 U.S. 420, 437 (2000) (quoted with approval in *Pinholster*, 131 S. Ct. at 1401); *see Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (noting that the basic structure of federal habeas jurisdiction is designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions); *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977) ("[T]he state trial on the merits [should be] the 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing.") "If the state-court decision 'identifies the correct governing legal principle' in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.' " *Pinholster*, 131 S. Ct. at 1399 (quoting *Williams*, 529 U.S. at 413). As the Supreme Court noted, "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id.* Although under *Pinholster* an evidentiary hearing in a federal habeas proceeding is not absolutely precluded, *Pinholster* also made clear that the discretion to grant a request for an evidentiary hearing is cabined by § 2254(e)(2), *id.* at 1400-01, which provides:

> ***9** If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Flynn's request in this case does not meet that standard. Nor, based upon the record before this Court, can it be said that the state courts precluded him from developing

the factual basis for his claim. *See Pinholster*, 131 S. Ct. at 1417 n.5 (Sotomayer, J., dissenting) (assuming that the majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop the facts was the fault of the state court itself). Moreover, AEDPA requires that, in addition to showing diligence in state court, a petitioner must allege a colorable claim for relief in order to obtain an evidentiary hearing. *See Schriro v. Landrigan*, 550 U.S. 465, 474-45 (2007). As discussed above, Flynn has failed to assert a colorable claim for relief as to any of his claims. Accordingly, this Court also must deny Flynn's request for an evidentiary hearing.

V. CONCLUSION

Flynn is not entitled to relief on any ground raised in his Petition and is not entitled to an evidentiary hearing.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.' " (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 7053582

## Footnotes

1 *Brady v. Maryland*, 373 U.S. 83 (1963). The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law.

2 *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961). The term "*Rosario*" is a shorthand reference to the rules of mandatory discovery in criminal cases under New York law.

3 This Court has the discretion, but is not obligated, to stay these proceedings and hold the unexhausted claims in abeyance pending exhaustion in the state courts. *Day v. McDonough*, 547 U.S. 198, 209 (2006); *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005). Even if Flynn could establish the requisite good cause for failing to exhaust his claims, which does not appear from his filings, *Rhines* would still require that the Court deny his stay request because, as discussed *infra*, the claims are "plainly meritless." *Rhines*, 544 U.S. at 277. Likewise, a stay would be futile because, as discussed *supra*, a New York court would deny the claims as procedurally defaulted.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 10727421
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Benjamin HORTON, Petitioner,
v.
Earl BELL, Respondent.

9:21-CV-262 (GLS/ATB)
|
Signed March 30, 2023

**Attorneys and Law Firms**

BENJAMIN HORTON, Petitioner, pro se.

PRISCILLA STEWARD, Assistant Attorney General, for Respondent.

**REPORT-RECOMMENDATION**

ANDREW T. BAXTER, UNITED STATES MAGISTRATE JUDGE

***1** Petitioner, currently incarcerated at Clinton Correctional Facility, filed this petition pursuant to 28 U.S.C. § 2254, challenging a 2016 judgment of conviction in Saratoga County Court, based on his guilty plea to one count of a Criminal Sexual Act in the First Degree. (Petition ("Pet.") at 1) (Dkt. No. 1).[1] This matter has been referred to me for Report and Recommendation by United States Senior District Judge Gary L. Sharpe, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

Pursuant to a plea agreement, petitioner was sentenced to serve a twenty-year sentence of imprisonment, to run concurrently with a twenty-five-year sentence from Schenectady County, with twenty years of post-release supervision. (SSR. at 324-28). The Appellate Division, Third Department unanimously affirmed petitioner's conviction, and the New York Court of Appeals denied leave to appeal. *People v. Horton*, 173 A.D.3d 1342 (3d Dep't 2019), *lv. denied*, 34 N.Y.3d 932, 133 N.E.3d 401 (2019).

Petitioner raises the following claims for this court's review:

1. Petitioner was unlawfully interrogated by a child protective services worker without receiving a *Miranda* warning.
2. The government failed to disclose *Brady* material.
3. Petitioner received ineffective assistance of counsel.
4. Petitioner's sentence was illegal and excessive as a matter of law, and the procedure used at the sentencing hearing to determine petitioner's sentence violated his due process rights.
5. The Saratoga County conviction violated the federal double jeopardy Clause.
6. The government improperly "brought up his past which was over 23 years old to make this case."
7. Petitioner was improperly subjected to an unlawful controlled call.
8. The grand jury indictment evidence was not legally sufficient.
9. Petitioner was denied his right to appear before the grand jury.
10. Petitioner's guilty plea was constitutionally deficient because the guilty plea was not knowingly, voluntarily, or intelligently entered.

(Pet. at 9-28). Respondent has filed an answer to the petition, together with the pertinent state court records and a memorandum of law. (Dkt. Nos. 12, 13, 14). For the following reasons, this court agrees with respondent and will recommend dismissal of the petition.

## DISCUSSION

### I. Relevant Facts

Respondent has included a detailed description of the facts and procedural history of this case. (Dkt. No. 12-1 at 2-12). The court will summarize and supplement the facts as necessary for clarity and to discuss the grounds raised by petitioner.

#### A. Schenectady County Prosecution

On August 24, 2016, petitioner was sentenced to an indeterminate prison term of twenty-five years to life, for two counts of Predatory Sexual Assault after being convicted by a jury in Schenectady County.

**B. Saratoga County Pretrial Court Proceedings**

***2** In January 2015, petitioner was arrested for crimes alleged to have occurred in Saratoga County on or about April 23, 2015 through April 24, 2015 and in May of 2015. On December 18, 2015, a Saratoga County grand jury returned a nine-count indictment charging petitioner with multiple counts of Predatory Sexual Assault Against a Child, multiple counts of Predatory Sexual Assault, Sexual Abuse in the First Degree, and Endangering the Welfare of a Child, occurring, on or about, April 23, 2015 through April 24, 2015. (SSR. 145-47). The Saratoga County grand jury also charged petitioner with Predatory Sexual Assault Against a Child, Predatory Sexual Assault, and Endangering the Welfare of a Child, occurring, on or about, May of 2015. (SSR. 148-49). Petitioner was arraigned on December 22, 2015, where he was represented by public defender Oscar L. Schreiber. (SSR. 248-55). At a May 11, 2016 *Huntley* hearing, Saratoga County Judge James Murphy adopted the April 19, 2016 *Huntley* hearing ruling from Schenectady County Judge Matthew Sypniewski. (SSR. 331). The ruling suppressed petitioner's oral statements made at the Schenectady police department to Investigator DeLuca and Detective McCabe as part of the prosecution's case in chief, but not for cross-examination if the petitioner chose to testify. (SSR. 331-32).

**C. Saratoga County Plea and Sentencing Proceedings**

On August 25, 2016, petitioner agreed to plead guilty to the lesser included offense of Criminal Sexual Act in the First Degree in full satisfaction of the nine-count indictment. (SSR. 311-12). The agreed upon disposition included a twenty year sentence to run concurrently with petitioner's Schenectady County sentence, and a post-release supervision period of five to twenty years. (SSR. 312-13). At the August 25th proceeding, petitioner then confirmed to the court that he understood the terms of the proposed plea agreement, and that he wished to plead guilty. (SSR. 313). The plea agreement also required petitioner to waive his right to appeal, and a written appeal waiver was signed by petitioner.[2] (SSR. 140, 312).

During the plea allocution, petitioner acknowledged that he had conferred with his attorney and had sufficient time to go over his decision to plead guilty. (SSR. 313-14). Petitioner confirmed that no one threatened or forced him, in any way, to plead guilty, and that he was pleading guilty freely and voluntarily. (*Id.* at 314-15). He further confirmed that he was not being treated for any "understanding disabilities" and that the medication he was currently taking had "nothing to do with understanding." (*Id.* at 314). Petitioner stated that he understood that by pleading guilty, he was forever giving up his rights to offer any defenses to the charges and the other rights attendant to a jury trial. (*Id.* at 315-16). He also acknowledged that he read, understood, and signed a waiver of right to appeal. (*Id.* at 316).

Petitioner then confirmed that, by pleading guilty to a Criminal Sexual Assault in the First Degree, he was admitting that on or about April 23, 2015 through April 24, 2015, he had oral sexual contact with a person less than thirteen years old while he was over the age of eighteen years old. (SSR. 318-19). The court accepted the petitioner's guilty plea, and adjourned the matter for sentencing. (SSR. 318-20).

Petitioner appeared for sentencing with public defender Oscar L. Schreiber on October 20, 2016. (SSR. 323-30). The government asked the court to impose the agreed upon disposition, and requested post-release supervision for a period of twenty years. (*Id.*). Petitioner, through counsel, argued that a shorter term of post-release supervision was appropriate given petitioner's advanced age upon release. (*Id.* at 327). Mr. Schreiber further represented that petitioner was remorseful for his actions and looking forward to availing himself of the opportunities and programs in state prison. (*Id.*). Ultimately, the court imposed the originally contemplated disposition, followed by twenty years of post-release supervision. (*Id.* at 327-28).

**D. Direct Appeal**

***3** Petitioner filed both a counseled brief (SSR. at 118-32) and a pro se supplemental brief (SSR. at 347-69) on direct appeal to the Third Department Appellate Division. Petitioner's counseled brief raised the following arguments: (1) the guilty plea was not knowing, voluntary, or intelligent, (2) counsel was ineffective for failing to move to dismiss the Saratoga County charges based on double jeopardy grounds and for failing to discuss petitioner's available defenses on the record, (3) petitioner's sentence was harsh and excessive, and (4) the conviction violated the prohibition against double jeopardy. (SSR. at 124-30). Petitioner's pro se supplemental brief raised the following additional arguments: (1) petitioner was entrapped by a child protective services worker into

making a statement, (2) he was improperly subject to a police-arranged controlled call from the victim's mother, (3) counsel was ineffective for failing to investigate the case and failing to secure petitioner's testimony before the grand jury, (4) the indictment was facially insufficient, (5) petitioner's plea was not knowing, intelligent, or voluntary, and (6) the conviction violated his double jeopardy rights. (SSR. 347-69).

On June 13, 2019, the Appellate Division unanimously affirmed the judgment of conviction. *People v. Horton*, 173 A.D.3d 1342 (3d Dep't 2019). On August 22, 2019, the Court of Appeals denied petitioner's pro se application for leave to appeal. *People v. Horton*, 34 N.Y.3d 932, 133 N.E.3d 401 (2019).

### E. Postjudgment Motions

On September 20, 2020, petitioner filed a pro se motion pursuant to New York Criminal Procedure Law ("CPL") § 440.10, asserting that (1) the government violated their *Brady* disclosure obligations, (2) petitioner was denied his right to testify before the grand jury, (3) the grand jury proceedings were defective and the evidence was legally insufficient to sustain the indictment, (4) petitioner's statements to a child protective services worker were unlawfully obtained and should have been suppressed, (5) counsel was ineffective in connection with the guilty plea and for other reasons, (6) the conviction violated his double jeopardy rights, and (7) his guilty plea was not knowing, voluntary, and intelligent. (SSR. at 584-687).

The Saratoga County trial court denied petitioner's § 440.10 motion on February 5, 2021. (SSR. at 790-97). On March 2, 2021, petitioner's motion to reargue the denial of the § 440.10 motion was similarly denied. (SSR. at 811).

## II. Generally Applicable Law

### A. Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

The AEDPA provides that, when a state court has adjudicated the merits of a petitioner's constitutional claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also, e.g., Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008). This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011) (citations omitted).

To determine whether a state-court decision is contrary to clearly established Supreme Court precedent, the federal court must consider whether the state court decision " 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Id.* at 182 (quoting *Williams v. Taylor*, 529 U.S. 362, 406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)) (alterations in original). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *See Williams*, 529 U.S. at 413, 120 S.Ct. 1495; *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000).

***4** Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo*. *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001). Finally, the Supreme Court has held that circuit and district court decisions do not constitute "clearly established Federal Law, as determined by the Supreme Court." *Parker v. Matthews*, 567 U.S. 37, 40, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012). Instead, circuit court decisions may illustrate the "possibility" of fairminded disagreement, sufficient to justify denying the writ. *White v. Woodall*, 572 U.S. 415, 422 n.3, 134 S.Ct. 1697, 188 L.Ed.2d 698 (2014).

### B. Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, ... thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state

court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

> A habeas petitioner has a number of ways to fairly present a claim in state court without citing "chapter and verse" of the Constitution, including "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."

*Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982)).

Where a petitioner has failed to exhaust his claims, but he cannot return to state court, petitioner's claims are then "deemed" exhausted, but barred by procedural default. *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994). The merits of such a procedurally defaulted claim may not be reviewed by a federal court unless the petitioner can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that the constitutional violation has resulted in the conviction of one who is "actually innocent." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). The actual innocence prong is referred to as the fundamental miscarriage of justice exception. *Rivas, supra*. "[C]ause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), *superseded by statute on other grounds, United States v. Gonzalez-Largo*, No. 2:07-cr-0014, 2012 WL 3245522, at *2 (D. Nev. Aug. 7, 2012). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

### C. Adequate and Independent State Ground Doctrine

A federal judge may not issue a writ of habeas corpus if an adequate and independent state law ground justifies the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), *abrogated on other grounds by Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). A federal habeas court generally will not consider a federal issue if the last state court decision to address the issue "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002)). This rule applies whether the independent state law ground is substantive or procedural. *Id.* When the independent and adequate state ground supporting a habeas petitioner's custody is a state procedural default, additional concerns come into play. *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), *holding modified on other grounds by Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012); *see also Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)) ("[P]rocedural default in the state court will ... bar federal habeas review when the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.") (internal quotation marks omitted).

***5** There are certain situations in which the state law basis for decision will not be considered "adequate": (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546; (2) where the state procedural rule was not "firmly established and regularly followed," *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-49, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984)); and (3) where the prisoner had "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so. *Wainwright v. Sykes*, 433 U.S. at 87, 97 S.Ct. 2497. In certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. at 376, 122 S.Ct. 877).

In order to find that the application of a generally sound rule is exorbitant, the court considers (1) whether the alleged procedural violation was actually relied upon by the state court and whether perfect compliance with the state rule would have changed the court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner "substantially complied" with

the rule given the realities of trial and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).

## III. Analysis of Petitioner's Claims

### A. Voluntariness of Guilty Plea

On habeas review, petitioner argues that his guilty plea was not knowing, voluntary, and intelligent. (Pet. at 4). He has cited several different bases on which he contends the court should find in his favor with respect to this issue, some of which were raised in his direct appeal and some in his collateral motions for relief. The court will address each of petitioner's contentions in turn.

#### 1. Challenges on Direct Appeal

In his direct appeal to the Appellate Division, petitioner raised a challenge to the voluntariness of his guilty plea in his counseled brief on the grounds that petitioner was coerced into making the plea. (SSR. 123-24). In his pro se reply brief to the Appellate Division, petitioner raised a new ground that he was mentally unfit to enter a plea due to a lack of proper medication. (SSR. 430-32). Petitioner not only alleges that these medications affected his ability to comprehend the plea, but also that he informed his attorney about his lack of proper medication. (SSR. 430-32). The Appellate Division noted the "[d]efendant made no statements during the plea colloquy that cast doubt on his guilt or otherwise called the voluntariness of his plea into question[.]" (USR. 2). They ultimately found that petitioner failed to preserve these claims because he did not file "an appropriate post-allocution motion to withdraw his plea." (USR. at 2).

New York courts "routinely and regularly require defendants to make a motion ... to withdraw their guilty plea or to vacate the judgment in order to preserve for appeal any claim relating to the validity of the plea itself." *Snitzel v. Murry*, 371 F. Supp. 2d 295, 301 (W.D.N.Y. 2004) (citing cases). It is well settled that the Appellate Division's reliance on this state procedural rule constitutes an "adequate and independent" ground for its decision. *See Hill v. Colvin*, No. 9:16-CV-1301 (MAD), 2018 WL 736013, at *13 (N.D.N.Y. Feb. 6, 2018) (collecting cases). Accordingly, this constitutes a procedural default of petitioner's claims.

As previously discussed, procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he or she is actually innocent. Here, petitioner has failed to allege, let alone establish, cause for this procedural default, any resulting prejudice, or a fundamental miscarriage of justice that would occur if this court fails to consider these claims. Accordingly, petitioner's challenges to the voluntariness of his guilty plea as raised in his direct appeal may be dismissed. *See Irvis v. Haggat*, No. 9:12-CV-1538 (FJS/TWD), 2015 WL 6737031, at *9 (N.D.N.Y. 2015).

#### 2. Collateral Challenges

***6** In his CPL § 440.10 motion, petitioner argued that he was mentally unfit to enter a guilty plea because he was not properly medicated. (SSR. 606-08). In support of his claim, petitioner provided evidence of various medications that were prescribed to him between December 20, 2018 and March 4, 2019.[3] (SSR. 609)

In the § 440.10 decision, the trial court first noted that the Appellate Division, on direct appeal, had already ruled upon petitioner's claim that his guilty plea was involuntary, triggering a mandatory bar to reconsideration pursuant to CPL § 440.10(2)(a). (SSR. 797). Next, the trial court rejected, on the merits, petitioner's claim that his plea was involuntary, noting that petitioner's claim "that he was 'not on his proper medications' " was contradicted by his statements and other proof contained in the record. (SSR. at 797). Specifically, Judge Murphy found that petitioner had a full opportunity to consult with his attorney, and engaged in an extensive plea colloquy with the court, which did not cast doubt upon his guilt or competence. (*Id.*). The court relied on petitioner's representation that he understood the nature of the plea agreement, along with petitioner's statement to the court that "he did not suffer from any illness or impairment from any medication that otherwise would make it difficult to understand the plea proceedings." (*Id.* at 797).

The trial court's decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent. "The Due Process Clause ... requires an affirmative showing that a defendant's plea is entered both knowingly and voluntarily before the trial court may accept the plea." *Hill v. Colvin*, 2018 WL 736013, at *14 (citing *inter alia* *Godinez v. Moran*,


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

509 U.S. 389, 400, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *De Leon v. United States*, No. 6:18-CR-06094, 2020 WL 3269139, at *4 (W.D.N.Y. June 17, 2020) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (collecting cases)). "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (quotation and footnote omitted)).

***7** In evaluating whether a plea was knowing and voluntary, a court may consider, "among other things, [a petitioner's] allocution statements." *Carpenter v. Unger*, Nos. 9:10-CV-1240;Nos. 9:12-CV-0957 (GTS/TWD), 2014 WL 4105398, at *19 (N.D.N.Y. Aug. 20, 2014) (citing *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)). In this case, the transcript of the proceeding at which petitioner ultimately pled guilty establishes that the trial court engaged in a lengthy colloquy with petitioner before accepting his guilty plea. After confirming his desire to accept the government's offer, petitioner was asked a series of questions about the nature of his plea. (Plea Hearing at 4-9; SSR. at 313-19). Petitioner confirmed that he was not under the influence of any alcohol, drugs, or other medication that affected his ability to understand the proceedings. (Plea Hearing at 5; SSR. at 314). He further testified that he only took medication for "depression and all that. Anxiety." (Plea Hearing at 5; SSR. at 314). He also represented that no one had pressured him, coerced him, or made any threats which caused him to enter into the plea. (Plea Hearing at 5-6; SSR. at 314-15). Petitioner acknowledged that, in pleading guilty, he was forfeiting numerous rights including his right to a jury trial, to confront his accusers, and to testify on his own behalf. (Plea Hearing at 6-7; SSR. at 315-16). Petitioner also acknowledged that he read, understood, and signed a written waiver of the right to appeal. (Plea Hearing at 7; SSR. at 316). Then, under oath, petitioner pled guilty and stated, "I had oral sexual contact with a person less than 13 years old." (Plea Hearing at 9-10; SSR. at 318-19). He acknowledged that his plea was made "freely and voluntarily," and that he understood he did not have to plead guilty. (Plea Hearing at 5-6; SSR. at 314-15). He also expressed that he was satisfied with the representation of his attorney. (Plea Hearing at 4-5; SSR. at 313-14).

Petitioner's sworn testimony directly contradicts his present contention that his guilty plea was not made knowingly and voluntarily. With respect to his allegations of 'coercion,' petitioner's statements under oath that he was pleading guilty of his own free will, in the absence of any coercion, are afforded a " 'strong presumption of verity' ... and create a 'formidable barrier' to habeas relief." *De Leon v. United States*, 2020 WL 3269139, at *5 (internal citations omitted); *see also* *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution 'carry a strong presumption of verity,' and are generally treated as conclusive in the face of the defendant's later attempt to contradict them[.]") (citations omitted).

The same is true to the extent that petitioner claims his plea was not knowingly entered or understood. As for petitioner's contention that his lack of proper medication impacted his ability to understand the plea proceedings, petitioner has not offered any proof of the same, or that he would have rejected the plea agreement and pursued trial but for his alleged mental status. *Thomas v. New York*, No. 17-CIV-910, 2019 WL 8326684, at *7 (S.D.N.Y. Oct. 23, 2019), *report and recommendation adopted*, 2020 WL 1505551 (S.D.N.Y. Mar. 30, 2020); *Royster v. Perez*, No. 08-CV-13, 2009 WL 1505278, at *4 (E.D.N.Y. May 28, 2009) ("[T]he Supreme Court has not held that a state court must specifically inquire into a defendant's history of mental illness or medication regimen ... [and] the state court's factual determination that the petitioner's plea was voluntary is presumed to be correct absent clear and convincing to the contrary."); *People v. Thomas*, 132 A.D.3d 423, 423 (1st Dep't 2015). *Cf.* *Harrison v. Thompson*, No. 9:20-CV-705 (MAD/ATB), 2021 WL 1599121, at *6 (N.D.N.Y. Apr. 23, 2021) (guilty plea was not involuntary where petitioner "failed to produce any proof that he was under the influence of drugs during the time of his plea, or that he would have rejected the plea agreement and proceeded to trial had he not been under the influence of marijuana.").

As petitioner's present assertions that his guilty plea was not knowingly and voluntarily entered are "wholly contradicted by the record[,] ... they are insufficient to entitle petitioner to relief." *Woods v. Superintendent*, No. 9:19-CV-505 (GLS), 2020 WL 3642311, at *9 (N.D.N.Y. July 6, 2020) (citing

*Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)). Accordingly, petitioner's request for habeas relief on this basis should be denied.

**B. Grand Jury**

Petitioners makes two claims regarding the grand jury: (1) the evidence before the grand jury was legally insufficient to support the indictment and (2) he was denied his right to testify before the grand jury. Petitioner's grand jury claims are not cognizable on habeas review because they are based entirely on New York statutory law. Indictment by a grand jury is a right granted by the New York State Constitution (N.Y. Const. Art. 1, § 6), and there is no corresponding right to a grand jury found in the United States Constitution. *See Branzburg v. Hayes*, 408 U.S. 665, 688, n. 25, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (the right to "indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment[.]"); *LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002) (noting the Fifth Amendment right to an indictment by a grand jury does not apply to the states as it is not incorporated by the due process clause of the Fourteenth Amendment).

***8** Federal habeas corpus relief is not a vehicle for federal courts to "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Instead, habeas review is limited to "deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* Accordingly, claims based on alleged defects in state grand jury proceedings are not cognizable on habeas review. *See e.g.*, *Rivers v. Costello*, No. 9:08-CV-107 (TJM/RFT), 2011 WL 4592041, at * 9 (N.D.N.Y. Sept. 9, 2011) (petitioner's claim regarding the validity of evidence presented to the grand jury "does not present a federal question and is therefore not cognizable on federal habeas review.") (emphasis in original). Thus, the petition should be denied with respect to this claim.

**C. Sentencing**

Petitioner contends that his sentence was "illegal, harsh, and excessive" and an "abuse of discretion by [the] trial court judge." (Pet. at 11). The Eighth Amendment prohibits the infliction of "cruel and unusual punishment." U.S. Const. Amend. VIII. "In the context of noncapital cases, the Eighth Amendment forbids only extreme sentences which are 'grossly disproportionate' to the crime of conviction ... [which] is 'applicable only in the exceedingly rare and extreme case.' " *Mendoza v. Miller*, No. 9:04-CV-1270 (LEK), 2008 WL 3211277, at *4 (N.D.N.Y. Aug. 6, 2008) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 72-73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). "Whether [p]etitioner presents his claim as a violation of the Eighth Amendment by it being 'cruel and unusual' or 'harsh and excessive,' the fact remains that '[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law.' " *Brown v. Jones*, No. 9:18-CV-0815(LEK/CFH), 2021 WL 1294139, at *10 (N.D.N.Y. Apr. 7, 2021) (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)); *see also Taylor v. Connelly*, 18 F. Supp. 3d 242, 268 (E.D.N.Y. 2014) ("An excessive sentence claim may not provide grounds for habeas corpus relief where a petitioner's sentence is within the range prescribed by state law.").

Here, under N.Y. Penal Law § 70.02(3)(a), petitioner was exposed to a maximum of twenty-five years imprisonment for his conviction by guilty plea to a Criminal Sexual Act in the First Degree. Ultimately, the court sentenced petitioner to a term of twenty years of imprisonment, which "is within the range prescribed by [the Penal Law]." *White*, 969 F.2d at 1383. Since the sentence imposed was plainly within the statutory limits, and, thus, was also not grossly disproportionate to the crime, petitioner is not entitled to habeas relief on this basis.

**D. Ineffective Assistance of Counsel**

Petitioner raises several bases on which he contends habeas relief is warranted due to the ineffective assistance of trial counsel. (Pet. at 17-18, Traverse at 19-24). In his direct appeal, petitioner raised such claims against counsel for failing to seek dismissal of the indictment on double jeopardy grounds and failing to discuss petitioner's available defenses on the record. (SSR. at 125-27). In response to those claims raised by petitioner in his direct appeal, the Appellate Division held that petitioner's ineffective assistance of counsel claims relating to the voluntariness of his guilty plea were unpreserved for review, in the absence of a post-allocution motion by petitioner seeking to withdraw his guilty plea on those grounds. (USR. at 3). To the extent petitioner raised other ineffective assistance counsel claims on direct appeal, the Appellate Division found these claims to be "barred by [petitioner's] guilty plea." (U.S.R. at 3).

In his CPL § 440.10 motion, petitioner asserted defense counsel (1) failed to facilitate his testimony before the grand jury; (2) failed to investigate the victim's history of psychiatric treatment, and use of "mind altering medication" that could

affect the credibility of the witness; (3) failed to move for dismissal based on a 2013 criminal case that was dismissed in favor of petitioner; and (4) failed to learn petitioner was not receiving his bipolar medication while awaiting trial in jail. (SSR. 605-07). Upon review, the trial court denied petitioner's motion procedurally and on the merits. (SSR. at 796). Procedurally, the claims were subject to the mandatory procedural bar of CPL § 440.10(2)(a) because they were raised and determined on direct appeal, except to the extent the claims affected the knowing, intelligent, and voluntary nature of his guilty plea. (SSR. 796).

***9** The trial court also held that these claims were "subject to a discretionary bar under CPL § 440.10(3)(b), because the [c]ourt addressed them at the ... *Huntley* hearing, and allowed defendant and counsel the opportunity to discuss the claims before defendant withdrew them. (*Id.*). When considering petitioner's claims on their merits, the trial court found "nothing in the plea colloquy or record provided ... lends support to [petitioner's] claims that he received ineffective assistance" and that "the record confirm[ed] the voluntariness of this very advantageous plea." (*Id.*). The trial court also found the record "indicate[d] defendant's expressed and unequivocal satisfaction with counsel's representation." (*Id.*).

The relevant federal law governing ineffective assistance of counsel was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To succeed on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland.* First, the defendant must show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth amendment." *Hudson v. New York*, No. 07-CV-1327, 2007 WL 3231970, at *2-3 (E.D.N.Y. Oct. 30, 2007) (citing *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. 2052). Under this prong, "[j]udicial scrutiny of counsel's performance must be highly deferential ... a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. 2052 (internal quotation marks and citations omitted).

Second, the defendant must satisfy the prejudice prong set forth in *Strickland* by showing that any deficiencies in counsel's performance actually prejudiced the defendant. *Id.* at 692-93. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.* at 694.

Upon review of a habeas petition claiming ineffective assistance of counsel, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction[.]" *Paige v. Lee*, 99 F. Supp. 3d 340, 345 (E.D.N.Y. 2015) (quoting *Harrington v. Richter,* 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)). Therefore, to the extent a habeas petitioner must show both that counsel's performance was unreasonable and that the state court's decision to the contrary was unreasonable, a "doubly deferential" standard of judicial review applies to ineffective assistance of counsel claims analyzed under 28 U.S.C. § 2254(d)(1). *Santana v. Capra*, 284 F. Supp. 3d 525, 538 (S.D.N.Y. 2018) (citing *Knowles v. Mirzayance,* 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009)).

### 1. Claims Barred by Guilty Plea

For the following reasons, this court finds that petitioner's ineffective-assistance-of-counsel claims are procedurally barred or they otherwise do not support habeas relief. To begin, it is well-established that a voluntary guilty plea that is knowingly, intelligently, and voluntarily entered constitutes a waiver of non-jurisdictional defects occurring prior to entry of the plea. *Rodriguez v. New York State Dep't of Parole*, No. 9:18-CV-0928 (GLS/ML), 2021 WL 3888256, at *5 (N.D.N.Y. July 30, 2021) (citing *United States ex rel. Glenn v. McMann*, 349 F.2d 1018, 1019 (2d Cir. 1967)). As the Supreme Court has explained, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

***10** In this case, petitioner's guilty plea effectively waived all ineffective-assistance-of-counsel claims relating to events prior to entry of the plea. *See United States v. Coffin*, 76 F.3d 494, 497-98 (2d Cir. 1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea."); *see also Morris v. Smith*, No. 9:13-CV-1441 (GLS/RFT), 2015 WL 13745077, at *5 (N.D.N.Y. July 29, 2015), *report and recommendation adopted*, 2016 WL 4532160 (N.D.N.Y. Aug. 30, 2016). Thus, petitioner's arguments that defense counsel should have moved to dismiss the indictment against petitioner, failed to secure petitioner's testimony before the grand jury, failed to discuss petitioner's available defenses on the record, and failed to properly investigate the case, are all precluded from habeas review.

### 2. Claims Related to Voluntariness of Guilty Plea

The Second Circuit has "recognized that failure to move to withdraw a guilty plea or move to vacate a judgement of conviction constitutes an independent and adequate state procedural rule barring federal habeas review" of ineffective assistance of counsel claims concerning the voluntariness of the plea. *Irvis v. Haggat*, No. 9:12-CV-1538 (FJS/TWD), 2015 WL 6737031, at *9 (N.D.N.Y. 2015). Accordingly, petitioner's ineffective-assistance-of-counsel claims related to the voluntariness of his guilty plea are procedurally defaulted.

### 3. Review of the Merits

To begin, petitioner's habeas claims regarding counsel's representation are particularly suspect, to the extent that petitioner informed the court during the plea that he was satisfied with counsel's representation. (Plea Hearing at 5; SSR. at 12-13). Petitioner faced the possibility of multiple life sentences, but counsel was able to secure a twenty year sentence that ran concurrently to petitioner's sentence in Schenectady County. (Penal Law §§ 70.00, 130.96; SSR. at 311-13). Furthermore, counsel engaged in appropriate motion practice, effectively cross-examined the People's suppression hearing witness, secured the suppression of petitioner's statement to police, and made a cogent argument for the suppression of his statements to CPS. (SSR. 259-309). Petitioner has also failed to establish that his attorney's advice and representation reflected anything other than a strategic attempt to reduce petitioner's sentence. *See United States v. Melhuish*, 6 F.4th 380, 393 (2d Cir. 2021) (quoting *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009)) ("Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel.").

Even if the court were to find that the performance of petitioner's counsel fell below an objective standard of reasonableness, petitioner's claims would still fail as he has not demonstrated the "prejudice" required by the second prong of the *Strickland* test. In other words, he has not shown "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)) (internal quotation marks omitted). Moreover, the petitioner "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *United States v. Kimber*, 777 F.3d 553, 563 n.1 (2d Cir. 2015) (internal quotation marks omitted).

A petitioner's "conclusory, self-serving statement that, but for counsel's alleged ineffectiveness, he would have gone to trial, does not by itself establish prejudice under *Strickland*." *Linares v. Smith*, No. 15-CV-5442, 2020 WL 3545119, at *6 (E.D.N.Y. June 30, 2020) (citing *Calderon v. United States*, 953 F. Supp. 2d 379, 385 (E.D.N.Y. 2013)). Thus, petitioner's conclusory assertion that he would have gone to trial but-for counsel's conduct is insufficient to establish prejudice under *Strickland*.

### E. <u>Other Claims Barred by Appellate Waiver/Guilty Plea</u>

***11** Petitioner's remaining claims include that: (1) he was unlawfully interrogated by a child protective services worker without being advised of his *Miranda* rights; (2) the government violated their *Brady* obligations; (3) the government improperly discussed petitioner's past conduct; (4) petitioner was improperly subjected to a controlled call during the investigation of the case; and (5) the conviction subjected him to double jeopardy. For the reasons discussed below, petitioner's remaining claims are barred by his written waiver of appeal and/or his guilty plea.

"[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.' " *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (quoting *Tollett v. Henderson*, 411 U.S. at 267).

A defendant may execute an appellate waiver as a plea condition, which generally precludes both direct and collateral review. *United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995); *Pollack v. Hobbs*, 98 F. Supp. 2d 287, 291 (E.D.N.Y. 2000), *aff'd.*, 8 F. App'x. 37, 2001 WL 388061 (2d Cir. 2001). The waiver is valid if executed voluntarily and intelligently, and with the advice of counsel, and the sentence is within the agreed-upon range. *Bello v. People*, 886 F. Supp. 1048, 1054 (W.D.N.Y. 1995). The Appellate Division found petitioner's appellate waiver was knowingly, intelligently, and voluntarily made. (USR. 2). At the plea, petitioner affirmed that he understood that he was waiving his right to appeal, that the right to appeal was a separate and distinct right from all of his other rights, and that he signed the waiver voluntarily, knowingly, and of his own free will. Therefore, petitioner's waiver of his right to appeal was constitutional and it precludes review of petitioner's remaining claims.

Thus, petitioner's remaining claims are all barred by his guilty plea and appellate waiver.[4] *Hayes v. Inserra*, 11 Civ. 1365, 2014 U.S. Dist. LEXIS 184858, at *54-47 (S.D.N.Y. Mar. 18, 2014) (citing cases) (finding "*Brady* claim[s] that concern allegedly undisclosed impeachment material" are waived by a guilty plea); *Bridgefourth v. Artus*, 475 F. Supp. 2d 261, 269 (W.D.N.Y. 2007) (finding a *Miranda* allegation regarding conduct antecedent to the guilty plea is waived); *Padilla v. Bradt*, No. 13-CV-7908, 2015 WL 394090, at *8 (S.D.N.Y. Jan. 29, 2015) (holding defective indictment claims fall under the *Tollet* rule that a petitioner may only attack the voluntary and intelligent character of the plea); *United States v. Leyland*, 277 F.3d 628, 632 (2d Cir. 2002) (holding that "[t]o preserve his [double jeopardy] claims, [petitioner] needed to raise his double jeopardy argument before pleading guilty").

**F. Motion to Stay**

On March 8, 2023, while his petition for habeas relief was still pending review, petitioner submitted to this court a "notice" that he is filing a § 440 motion with Saratoga County Court "[t]o have evidence and new evidence ... be on the Record ... and to try to get a new judgment or vacate this case on the facts that there is not any legal evidence for a conviction and ... [petitioner] had disabilit[ies] that made him unable to comprehend and make any judgment[s.]" (Dkt. No. 71).

***12** To the extent petitioner intended the notice to serve as a motion for a stay, such a motion would be denied because its format does not comply with the local rules. *See* N.D.N.Y.L.R. 7.1(b). Therefore, liberally construing petitioner's letter, petitioner is seeking permission to file a motion for a stay.

However, petitioner's request is denied because even if he files a properly formatted motion, it would be unsuccessful. When a district court is presented with a "mixed petition" containing both exhausted and unexhausted claims, it may dismiss the petition without prejudice or retain jurisdiction over the petition and stay further proceedings pending exhaustion of state remedies. *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005). This "stay and abeyance" procedure should be "available only in limited circumstances" where the petitioner can show both (1) "good cause" for failing to "exhaust his claims first in state court" and (2) that his unexhausted claims are not "plainly meritless." *Id.* at 277.

The petition presently before this court contains only exhausted claims. To the extent any of the claims in petitioner's most recent § 440 motion are new, petitioner has not presented this court with a sufficient basis for granting a stay. *See Hall v. Woods*, No. 7:07-CV-9264, 2012 WL 2864505, at *5 (S.D.N.Y. July 12, 2012) ("Since Hall's petition currently contains only exhausted claims, the Court cannot treat his petition as 'mixed' for purposes of considering a stay under *Rhines*. Hall's request for a stay is therefore premature. In order to assert his new ... unexhausted claim, Hall must move to amend his petition[.]") (citations omitted); *Spells v. Lee*, No. 1:11-CV-1680, 2011 WL 2532907, at *1 (E.D.N.Y. June 23, 2011) (concluding that petitioner's motion to stay was "premature" because his "petition contain[ed] only exhausted claims" and he had not yet filed a motion to amend the petition to add the unexhausted claim); *Mills v. Girdich*, No. 1:03-CV-0341, 2008 WL 4371362, at *1 (W.D.N.Y. Sept. 17, 2008).

Accordingly, to the extent petitioner wishes to include the claims raised in his most recent § 440 motion in his pending petition, he cannot do so through a motion to stay. Instead, he would need to move to amend his petition. However, a motion to amend filed prior to the exhaustion of petitioner's state court remedies would also be denied as futile. *See Simpson v. Yelich*, No. 9:18-CV-0417 (GTS/TWD), 2018 WL 4153928,

at *3 (N.D.N.Y. Aug. 30, 2018) (citations omitted) (denying motion to amend a petition to add an admittedly unexhausted claim as futile). Therefore, even if petitioner had presented a proper motion to amend, it would be denied as futile.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 10727421

## Footnotes

1 Citations to the petition refer to the pagination generated by the court's electronic filing system ("CM/ECF"). Citations to the sealed state court record ("SSR.") and unsealed state record ("USR.") refer to their original pagination.

2 In petitioner's motion to reargue his § 440.10 motion, petitioner makes a novel argument that he did not actually sign the waiver of appeal because the waiver's signature is not what his signature ordinarily looks like. (SSR. 808). He further argues that even if he did sign the form, the signature is abnormal because of his lack of medication. (*Id.*). The trial court denied petitioner's motion to reargue. (SSR. 811).

3 Petitioner provided various psychiatric progress notes from December of 2018 to March of 2019. (SSR. at 613-16). As petitioner pled guilty on August 25, 2016, these progress notes do not offer compelling evidence for petitioner's state of mind at the time of plea. Furthermore, the progress notes do not indicate if petitioner was prescribed these medications during the time he entered the plea or if his ability to comprehend would be impacted by an inability to take the allegedly prescribed medications.

Petitioner also provided medication fact sheets for Vistaril, Lithium, Trilafon, Wellbutrin, and Remeron. (SSR. 635-39). These medication fact sheets only generally explain what the medication can be prescribed for, but does not include any information connecting the medication with the petitioner. (*Id.*).

4 The *Lefkowitz* exception to the *Tollett* rule does not apply because petitioner pled guilty before the court ruled on his suppression motion. *Latham v. Harris*, 78 Civ. 5067, 1979 U.S. Dist. LEXIS 10903, at *8-9 (S.D.N.Y. July 19, 1979).

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1341091
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Benjamin HORTON, Petitioner,
v.
Earl BELL, Respondent.

9:21-cv-262 (MAD/MJK)
|
Signed March 29, 2024

**Attorneys and Law Firms**

Benjamin Horton, Dannemora, NY, Pro Se.

Priscilla I. Steward, New York State Attorney General - New York Office, New York, NY, for Respondent.

**SUMMARY ORDER**

Mae A. D'Agostino, United States District Judge

***1** Pending is an objection to a Report-Recommendation (R&R), (Dkt. No. 77), which recommends, among other things, that petitioner pro se Benjamin Horton's petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 be denied and dismissed, (Dkt. No. 72). For the reasons set forth below, the R&R is adopted in its entirety.

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Here, Horton's objection consists of generalized complaints about, among other things, his mental health and corresponding inability to understand, and innocence. [1] (Dkt. No. 77.) Horton makes no attempt to specifically fault the R&R.

For example, throughout his objections, Horton continues to allege that his plea was not knowingly and voluntarily made because of various mental health issues he suffers from and his inability to understand the nature of the proceeding. (Dkt. No. 77 at 2-4.) The R&R, however, noted that Horton failed to offer any proof in support of these assertions or that he would have rejected the plea agreement and pursued trial but for his alleged mental status. Horton's objections simply repeat these conclusory allegations that the R&R correctly found to be insufficient to warrant habeas relief. *See Harrison v. Thompson*, No. 9:20-cv-705, 2021 WL 1599121, *6 (N.D.N.Y. Apr. 23, 2021) (holding that the petitioner's guilty plea was not involuntary where he "failed to produce any proof that he was under the influence of drugs during the time of his plea, or that he would have rejected the plea agreement and proceeded to trial had he not been under the influence of marijuana"); *Royster v. Perez*, No. 08-CV-13, 2009 WL 1505278, *4 (E.D.N.Y. May 28, 2009) ("[T]he Supreme Court has not held that a state court must specifically inquire into a defendant's history of mental illness or medication regimen ... [and] the state court's factual determination that the petitioner's plea was voluntary is presumed to be correct absent clear and convincing to the contrary"). As the R&R correctly concluded, since Horton's present assertions that his guilty plea was not knowingly and voluntarily entered are "wholly contradicted by the record[,] ... they are insufficient to entitle petitioner to relief." *Woods v. Superintendent*, No. 9:19-cv-505, 2020 WL 3642311, *9 (N.D.N.Y. July 6, 2020) (citing *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)).

***2** Similarly, the R&R found that a substantial portion of Horton's claims are procedurally defaulted and that Horton failed to show cause for the default and actual prejudice or that the denial of habeas relief would result in a fundamental miscarriage of justice. (Dkt. No. 72 at 12-16.) In his objections, Horton still fails to address the fact that he procedurally defaulted on these claims. As the R&R correctly determined, many of Horton's claims were rejected by the state courts on independent and adequate state law grounds and Horton has failed to provide a basis to excuse him from the procedural default. *See Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quotation omitted).

Having reviewed the remaining claims in the petition, the Court finds that the R&R thoroughly examined the several bases for habeas relief alleged by Horton and explained why

all were either procedurally defaulted, not cognizable on habeas review, barred by his guilty plea and appellate waiver, or failed on the merits. (Dkt. No. 72 at 12-28.) Upon careful review, the R&R, which is well reasoned, is free from clear error and is, therefore, adopted in its entirety.

Accordingly, it is hereby

**ORDERED** that the Report-Recommendation (Dkt. No. 72) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Horton's petition (Dkt. No. 1) is **DENIED** and **DISMISSED**; and it is further

**ORDERED** that no certificate of appealability pursuant to 28 U.S.C. § 2253(c) shall issue; and it is further

**ORDERED** that Horton's letter motion requesting a subpoena (Dkt. No. 88) is **DENIED** as moot; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to the parties in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1341091

## Footnotes

1 Despite his contention that he is "innocent of this crime," (*see, e.g.*, Dkt. No. 77 at 13), the court does not consider Horton's objection to claim "actual innocence" within the meaning of *Rivas v. Fischer*, 687 F.3d 514, 539-40 (2d Cir. 2012), which was not previously argued by him.

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2002 WL 1974048
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Joseph JOHNSON, Petitioner,
v.
STATE of New York, Respondent.

No. 01 CIV. 4219(GEL).
|
Aug. 26, 2002.

**Synopsis**
Following conviction by a jury for unlawful possession of cocaine and a firearm, prisoner sought writ of habeas corpus. The District Court, Lynch, J., held that: (1) testimony given by detective at prior civil trial in which defendant's landlord sought to evict him could not have been Brady material that prosecution should have given to defendant in connection with subsequent criminal trial; (2) detective's alleged "testimony" in support of a search warrant application, including answers that detective might have given in response to questions by the magistrate issuing the warrant, was not Brady material that prosecution should have given to defendant; and (3) prosecutorial misconduct that occurred when prosecutor mentioned photographs taken during execution of search warrant and the $563 seized from defendant, despite knowing that both items had been lost and could not be introduced into evidence and despite judge's order not to mention the photographs, was not prejudicial to defendant.

Petition denied.

West Headnotes (5)

**[1]** **Habeas Corpus** Discovery and Disclosure

Rosario claim, which refers to requirement that prosecution make available its witnesses' prior statements in their entirety to defendant for purposes of cross-examination, is one of state law that is not subject to review under a petition for a federal writ of habeas corpus.

7 Cases that cite this headnote

**[2]** **Criminal Law** Diligence on Part of Accused; Availability of Information

Testimony given by detective at prior civil trial in which defendant's landlord sought to evict defendant could not have been Brady material that prosecution should have given to defendant in connection with subsequent criminal trial, where defendant, who was present at the civil trial and personally cross-examined detective in that proceeding, was fully aware of the contents of the testimony.

**[3]** **Criminal Law** Other Particular Issues

Detective's alleged "testimony" in support of a search warrant application, including answers that detective might have given in response to questions by the magistrate issuing the warrant, was not Brady material that prosecution should have given to defendant, where the minutes of the proceeding were no longer available, and nothing even remotely suggested that detective said anything that would have been useful to the defense.

1 Case that cites this headnote

**[4]** **Criminal Law** Evidence Excluded

**Criminal Law** Matters Not Sustained by Evidence

Alleged prosecutorial misconduct that occurred when prosecutor mentioned photographs taken during execution of search warrant and the $563 seized from defendant, despite knowing that both items had been lost and could not be introduced into evidence and despite judge's order not to mention the photographs, was not prejudicial to defendant, where defense counsel, seeking to undermine credibility of police investigation, cross-examined detective about loss of photos, and trial court instructed jury that it could draw adverse inference against prosecution from the failure to introduce the money into evidence.

1 Case that cites this headnote

**[5]** **Criminal Law** Failure to Call Witness or Produce Evidence

Trial court's failure to give missing witness instruction regarding prosecution's failure to call other police officers who participated in search was not error, where the testimony made clear to jury that other witnesses were available, and defense counsel was free to argue to jury that prosecution's failure to call the witnesses undermined prosecution's case.

1 Case that cites this headnote

**Attorneys and Law Firms**

Joseph Johnson, pro se, for petitioner.

Eliot Spitzer, Attorney General of the State of New York, (Nicola N. Grey, Assistant Attorney General, of counsel), for respondent.

OPINION AND ORDER

LYNCH, District J.

***1** Joseph Johnson seeks habeas corpus, challenging his conviction by a jury for unlawful possession of cocaine and a firearm and his resulting sentence of one to three years in prison. [1] Johnson argues that he was denied a fair trial because of the withholding of prior statements of witnesses, prosecutorial misconduct, and the failure of the trial court to give a missing witness instruction. Because he has not shown any violation of his federal constitutional rights, the petition will be denied.

I. *Facts*

The evidence of Johnson's guilt was overwhelming. Johnson was arrested in an apartment where the police, executing a search warrant, found four triple-beam scales and several crack pipes all containing cocaine residue, a jar of lactose, a 9 mm. handgun, and a plastic bag containing 1800 milligrams of cocaine. Johnson admitted to the police that he lived in the apartment, and his name was on the mail box. Police also recovered personal items and identification belonging to Johnson from the bedroom of the apartment.

II. *Procedural Issues*

The State argues that this Court should not reach the merits of any of Johnson's claims, because he did not exhaust the remedies available to him in the state courts, as required by 28 U.S.C. § 2254(b)(1)(A). More specifically, the State points out that all of Johnson's arguments on his direct appeal were made in terms of state law, and that he therefore failed to present any argument in terms of federal constitutional law.

In fact, Johnson's pro se petition raises in this Court precisely the same arguments he made through counsel on his direct appeal, and phrases them no more in specifically federal terms here than he did in the state courts. Because Johnson's claims closely resemble claims that could be made under federal law, and because the rejection of the state-law claims under identical or more liberal state law makes clear that the state courts would correctly find no merit to the analogous federal claims, it is more efficient to address Johnson's arguments on the merits than to waste the time of the state courts by requiring exhaustion. This more efficient course is explicitly permitted by 28 U.S.C. § 2254(b)(2).

III. *Johnson's Arguments*

A. *Rosario* Claims

**[1]** Johnson's first argument is that he was "prejudiced by the People's failure to provide *Rosario* materials." (Pet. at 5.) The reference is to *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), which requires the prosecution to make available its witnesses' prior statements in their entirety to a defendant for purposes of cross-examination. The Appellate Division rejected this argument, in the following terms:

> We reject defendant's claim that the [trial] court failed to properly and sufficiently address four *Rosario* claims. We agree with the court that two of the statements did not constitute *Rosario* material. In another instance, defendant received the remedy he requested and, in the final instance, he chose not to make a sufficient record and sought no sanction.

***2** *People v. Johnson,* 257 A.D.2d 439, 439, 684 N.Y.S.2d 513, 514 (1st Dep't 1999).

*Rosario* announces a principle of discovery under state law that is not required by the Constitution. Thus, it is well settled that a *Rosario* claim is "one of state law that is not subject to review under a petition for a federal writ of habeas corpus." *United States ex rel. Butler v. Schubin,* 376 F.Supp. 1241, 1247 (S.D.N.Y.1974), *aff'd,* 508 F.2d 837 (2d Cir.1975). Construing Johnson's pro se complaint liberally, it could be understood to raise a claim under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), since Johnson alleges that he was hampered in cross-examining a witness, Detective Warren Lockley, by the unavailability of certain prior statements. But Johnson makes no showing that the prosecutor wrongfully suppressed any prior witness statements that were in the government's possession, let alone that any of the statements in question were materially exculpatory, or would have cast the slightest doubt on Lockley's testimony.

**[2]** Johnson's habeas petition refers to two prior statements made by Lockley. The first was testimony given by the detective at a civil trial in which Johnson's landlord sought to evict him. The trial court found that this was not *Rosario* material because it was never in the possession of the prosecutor and apparently no longer existed at the time of the trial. But whatever the ruling as a matter of state law, the civil trial testimony could not have been *Brady* material since Johnson, who not only was present at the civil trial but personally cross-examined Lockley in that proceeding, was fully aware of the contents of the testimony.

**[3]** The second statement referenced in the petition is Lockley's "testimony" in support of a search warrant application. The reference is not to Lockley's affidavit, which was available to the defense, but to answers he may have given in response to questions by the magistrate issuing the warrant. In rejecting an attack on the warrant, the state court found that the minutes of the proceeding were no longer available, and the trial judge further found that in his long experience on the bench, police officers rarely gave substantive testimony in such proceedings. At any rate, there is nothing in the record that remotely suggests that Lockley said anything in seeking the warrant that would have been useful to the defense, or that casts any doubt on the court's finding that the statement was not in the possession of the prosecution. [2]

Accordingly, Johnson's *Rosario* claims provide no basis for finding a violation of constitutional rights.

B. Prosecutorial Misconduct

**[4]** Johnson argues that the prosecutor's "conduct throughout the trial was prejudicial" to his defense. But none of the incidents referred to in the petition or in Johnson's brief on direct appeal, taken singly or together, constitute the sort of " 'egregious misconduct ... amount[ing] to a denial of constitutional due process" ' that alone raises a federal constitutional issue. *Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir.1990) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 647–48, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). *See also Blissett v.. LeFevre,* 924 F.2d 434, 440 (2d Cir.1991) (same).

***3** Specifically, Johnson objects that in his opening statement, the prosecutor mentioned photographs taken during the execution of a search warrant and money ($563) seized from the defendant, despite knowing that both items had been lost and could not be introduced into evidence, and indeed despite an order from the judge not to mention the photographs. However, the judge gave the specific curative instruction requested by the defense. Moreover, the defendant could not have been prejudiced by the mention of the photos, as the defense counsel, seeking the obvious tactical benefit of undermining the credibility of the police investigation, cross-examined Lockley about the taking and loss of the photos. The trial court also instructed the jury that it could draw an adverse inference against the prosecution from the failure to introduce the money into evidence. Particularly given the modest sum involved, it is difficult to see how the defendant could have been prejudiced.

To succeed in a habeas claim based on prosecutorial misconduct, the petitioner must demonstrate "that he suffered actual prejudice because the prosecutor's [conduct] had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v.. Scully,* 41 F.3d 818, 824 (2d Cir.1994). Johnson can come nowhere near such a showing. The evidence against him was overwhelming; the prosecutor's actions, while regrettable, were not terribly prejudicial; and the trial court took prompt and effective curative actions. There is no basis for disturbing the judgment.

C. Missing Witness Instruction

**[5]** Johnson argues that it was error for the trial court not to give a missing witness instruction regarding the prosecution's failure to call the other police officers who participated in the search. But an error with respect to jury instruction presents only a question of state law unless the error was so serious that it deprived defendant of a fair trial. *Sams v. Walker,* 18 F.3d 167, 171 (2d Cir.1994). *See also* *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Appellate Division found that the failure to give the instruction was not erroneous at all. *People v. Johnson,* 257 A.D.2d at 439–40, 684 N.Y.S.2d at 514. Any claim that the failure to give the instruction at issue here "so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), would be frivolous. The testimony made clear to the jury that other witnesses were available, and defense counsel was free to argue to the jury that the prosecution's failure to call the witnesses undermined the prosecution's case.

CONCLUSION

For the foregoing reasons, the petition for habeas corpus is denied. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 111–13 (2d Cir.2000).

***4** SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 1974048

## Footnotes

1 Johnson was sentenced on June 6, 1994. Although he has now completed his sentence, because he did not begin serving it until the completion of his direct appeal, he was in custody when the instant petition was filed.

2 Though Johnson refers to "an extraordinary amount of *Rosario* violations" (Pet. at 5), these are the only statements referred to specifically in the petition. On direct appeal, he raised two other *Rosario* claims. With respect to the third, the judge granted the extraordinary remedy of striking the witness's entire testimony because certain material had not been turned over. There was no showing that any of the material was impeaching or exculpatory, and as the witness's testimony was stricken, no prejudice could have resulted. The Appellate Division ruled that the fourth matter had not properly been preserved, and this independent state-law ground of decision precludes habeas review.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 2882610
Only the Westlaw citation is currently available.
For Online Publication Only
United States District Court, E.D. New York.

Christopher KATTIS, Petitioner,
v.
Mark ROCKWOOD, Superintendent Gouverneur Correctional Facility, Respondent.

19-CV-06916 (JMA)
|
Signed June 7, 2024

**Attorneys and Law Firms**

Christopher Kattis, Beacon, NY, Pro Se.

Marcia R. Kucera, Karla L. Lato, Suffolk County District Attorney, Riverhead, NY, for Respondent.

**MEMORANDUM & ORDER**

AZRACK, United States District Judge:

***1** Pro se Petitioner Christopher Kattis moves under 28 U.S.C. § 2254 to vacate his convictions for sexually abusing his minor stepdaughter that resulted from his guilty plea in New York State Supreme Court, Suffolk County. (See generally Am. Pet. for Writ of Habeas Corpus ("Amended Petition"), ECF No. 49.) Petitioner contends that the indictment underlying those convictions was jurisdictionally defective and unconstitutional because it failed to provide adequate notice of the offense. (See id. at 6.) For the reasons set forth below, the Amended Petition is DENIED.

## I. BACKGROUND

### A. Facts

#### 1. Petitioner's Convictions

In September 2016, a grand jury in Suffolk County, New York indicted Petitioner for Course of Sexual Conduct Against a Child in the First Degree and Second Degree, in violation of N.Y. PENAL LAW §§ 130.75(1)(b) and 130.80(1)(b). (ECF No. 50-10 at 1.) Those charges were brought alongside two misdemeanor charges for Endangering the Welfare of a Child, in violation of § 260.10(1). (Id.) All charges concerned Petitioner's sexual conduct with his stepdaughter, then under thirteen years old, in Suffolk County between approximately April 2015 and March 1, 2016. (Id. at 2-3.)

The same month Petitioner was indicted in Suffolk County, a grand jury in Nassau County, New York indicted Petitioner for Course of Sexual Conduct Against a Child in the Second Degree in violation of § 130.80(1)(b). See People v. Kattis (Kattis II), 147 N.Y.S.3d 428, 428 (App. Div. 2nd Dep't 2021). That charge similarly concerned Petitioner's sexual conduct with his stepdaughter but was based on events that occurred in Nassau County between approximately March 1, 2016 and September 1, 2016. See id. at 428-29.

On May 12, 2017, Petitioner pled guilty to all charges in the Suffolk County case. (See Plea Hr'g Tr., ECF No. 50-19 6:6-23:8.) Petitioner stated on the record that he pled guilty knowingly and voluntarily, of his own free will and free of threats or coercion, understanding the rights waived by pleading guilty, and with the expectation that he would receive concurrent sentences for the convictions resulting in ninety months of incarceration and eighteen years of post-release supervision. (See id. 7:12-12:13, 14:9-18:24.) The court informed Petitioner three times that the Suffolk County prosecution was independent of the then-pending criminal case in Nassau County; Petitioner's counsel confirmed that understanding. (See id. 12:14-14:4.) Petitioner allocuted to the offense conduct—that, during the charged period and in Suffolk County, Petitioner subjected his minor stepdaughter to pornographic videos and subjected her to two or more acts of oral and anal sex. (See id. 19:2-21:11.) The court then accepted Petitioner's guilty plea. (See id. 21:12-22:1.)

On May 31, 2017—nineteen days after he pled guilty in the Suffolk County case—Petitioner pled guilty to the charge against him in Nassau County. Kattis II, 147 N.Y.S.3d at 428.

In July 2017, Petitioner was sentenced in the Suffolk County case. (See Sentencing Hr'g Tr., ECF No 50-20.) At the start of that proceeding, Petitioner reaffirmed his guilt for the crimes to which he pled guilty in Suffolk County. (See id. 2:23-4:2.) Though the government recommended a harsher sentence, the court imposed the bargained-for sentence discussed at the plea hearing: ninety months of incarceration and eighteen years of post-release supervision. (See id. 4:3-7:16.)

***2** The following month, Petitioner was sentenced in the Nassau County case to four years of incarceration and five

years of post-release supervision. (Karla Lato Aff., ECF No. 50 ¶ 28.) The court imposed that sentence to run concurrently with the longer sentence imposed in the Suffolk County case. (Id.)

**2. Petitioner's Efforts To Overturn His Convictions**

In January 2018, Petitioner moved to vacate his Suffolk County convictions and set aside his sentence under N.Y. CRIM. PROC. LAW §§ 440.10(1)(h) and 440.20 based on (1) ineffective assistance of counsel before, but not in connection with, his plea, and (2) the supposed "illegal[ity]" of the sentence. (See State Ct. R. Part 1, ECF No. 50-21 at 122-39.) In August 2018, the Supreme Court, Suffolk County denied Petitioner's motion as "based upon unsubstantiated and conclusory allegations" and otherwise barred by his plea waiver. (See id. at 119-20 & n.3.)

In March 2019, Petitioner again moved to vacate his Suffolk County convictions under § 440.10(1)(h), this time based on a violation of double jeopardy rights. (Karla Lato Aff., ECF No. 50 ¶ 34.) In June 2019, the Supreme Court, Suffolk County denied the motion as procedurally and substantively deficient. (See State Ct. R. Part 1, ECF No. 50-21 at 346.) The Appellate Division, Second Department denied leave to appeal that decision. (See State Ct. R. Part 2, ECF No. 50-22 at 227; see also Karla Lato Aff., ECF No. 50 ¶ 35 ("This was the only CPL 440 determination that was appealed.").)

Petitioner's direct appeal of his Suffolk County convictions was also unsuccessful. (See, e.g., State Ct. R. Part 1, ECF No. 50-21 at 157-81 (Petitioner's opening appellate brief).) The Appellate Division, Second Department affirmed those convictions in July 2021. People v. Kattis (Kattis I), 146 N.Y.S.3d 839, 839 (App. Div. 2nd Dep't 2021). The court rejected Petitioner's arguments that (1) the Suffolk County indictment was jurisdictionally defective and unconstitutional for failing to provide adequate notice of the full time period for the offense conduct; (2) the alleged deficiency in the indictment rendered the guilty plea not knowingly, voluntarily, and intelligently made; and (3) certain convictions should be reversed as duplicitous. See id. The Appellate Division reasoned that the first and second arguments were meritless, and the third argument was barred by Petitioner's guilty plea. See id. The New York Court of Appeals denied leave to appeal that decision. People v. Kattis, 37 N.Y.3d 1060 (2021), reconsideration denied, 37 N.Y.3d 1162 (2022).

Petitioner, however, succeeded in his direct appeal of his Nassau County conviction. In July 2021, the Appellate Division, Second Department reversed the Nassau County conviction because "the indictments in both counties, viewed together, alleged a single continuing and uninterrupted offense against the same alleged victim" and therefore "constitutional double jeopardy principles precluded a second conviction, in Nassau County, after the Suffolk County criminal action terminated in a conviction by plea of guilty." Kattis II, 147 N.Y.S.3d at 429.

Finally, in December 2021, Petitioner again moved to vacate his Suffolk County convictions under § 440.10(1)(h) based on ineffective assistance of counsel. (See State Ct. R. Part 1, ECF No. 50-21 at 230-36.) In February 2022, the Supreme Court, Suffolk County denied the motion as procedurally and substantively deficient. (See id. at 216-20.)

**B. Procedural History**

***3** Petitioner filed his petition for a writ of habeas corpus ("Petition") in this Court in December 2019. (ECF No. 1.) The Petition challenged Petitioner's Suffolk County convictions on the grounds that (1) the indictment was jurisdictionally deficient, (2) double jeopardy principles prohibited that prosecution, and (3) Petitioner did not knowingly and voluntarily enter his guilty plea and appellate waiver. (See id. at 7, 10, 15, 17, 22.) Thereafter, the Court stayed this case pending Petitioner's appeals of his convictions, Petitioner withdrew his Petition, and the Court dismissed this case. (See Aug. 14, 2020 Order; ECF Nos. 29-30.) Petitioner later moved to reinstate this case. (ECF No. 36.) The Court accordingly vacated its prior dismissal Order. (See ECF Nos. 36, 45.) After obtaining leave to do so, Petitioner filed the Amended Petition, which only reasserted the first ground raised in the original Petition. (ECF No. 49.) Respondent responded to the Amended Petition. (ECF No. 50.) Finally, Petitioner filed a memorandum of law in support of the Amended Petition, which (among other things) confirmed that Petitioner withdrew the second and third grounds raised in the original Petition, namely, his double jeopardy arguments and his challenge to his guilty plea and appellate waiver. (See ECF No. 52 at 17.)

## II. LEGAL STANDARDS

**A. Overview of the AEDPA**

Congress enacted the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners." Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring). Under the AEDPA, a prisoner may file a habeas petition "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To make that showing, the petitioner must demonstrate: (1) the exhaustion of state remedies, (2) the absence of a procedural bar, and (3) the satisfaction of the AEDPA's deferential review of state court decisions. See id. § 2254.

**B. AEDPA Standard of Review**

To determine the merits of a habeas corpus claim for a petitioner in state custody, federal courts apply the standard of review set forth in 28 U.S.C. § 2254 to the "last reasoned decision" by the state court. McCray v. Capra, 45 F.4th 634, 640 (2d Cir. 2022) (quoting Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991)). Under that standard, the state court's adjudication of the claim must have either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). The Supreme Court has "often emphasized that 'this standard is difficult to meet' 'because it was meant to be.' " Sexton v. Beaudreaux, 585 U.S. 961, 965 (2018) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)). "The petitioner bears the ultimate burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Epps v. Poole, 687 F.3d 46, 50 (2d Cir. 2012) (citing Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997)).

"The Supreme Court has instructed that [the AEDPA]'s 'contrary to' and 'unreasonable application of' clauses have independent meaning." Carmichael v. Chappius, 848 F.3d 536, 544 (2d Cir. 2017) (citing Williams, 529 U.S. at 404-05). A state court decision is "contrary to clearly established federal law when it 'applies a rule that contradicts the governing law set forth in Supreme Court caselaw or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.' " McCray, 45 F.4th at 640 (quoting Lockyer v. Andrade, 538 U.S. 63, 73 (2003)) (alterations omitted). This standard "refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Id. (quoting Yarborough v. Alvarado, 541 U.S. 652, 660-61 (2004)) (brackets omitted). "A decision is an 'unreasonable application' of clearly established federal law 'if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.' " Jordan v. Lamanna, 33 F.4th 144, 150 (2d Cir. 2022) (quoting Williams, 529 U.S. at 413) (brackets omitted).

***4** Granting relief under § 2254(d)(1) is appropriate "only 'where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents." McCray, 45 F.4th at 640 (quoting Harrington, 562 U.S. at 102); see Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question ... is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). In other words, the state court's ruling "must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' " Shoop v. Hill, 586 U.S. 45, 48, (2019) (per curiam) (quoting Harrington, 562 U.S. at 103). The AEDPA thus "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66 (2011) (per curiam)).

Under the "unreasonable determination of the facts" clause of § 2254(d)(2), a federal court must "presume the correctness of state courts' factual findings unless [the petitioner] rebut[s] this presumption with 'clear and convincing evidence.' " Schriro, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)). A state court's findings of fact will be upheld "unless objectively unreasonable in light of the evidence presented in the state court proceeding." Lynn v. Bliden, 443 F.3d 238,

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

246-47 (2d Cir. 2006) (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). Thus, "§ 2254(d)(2) requires that [federal courts] accord the state trial court substantial deference. If 'reasonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's determination.' " Brumfield v. Cain, 576 U.S. 305, 314 (2015) (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)) (alterations omitted).

### C. Petitioner's Pro Se Status

As noted above, Petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated. Epps, 687 F.3d at 50; Jones, 126 F.3d at 415. Given his pro se status, the Court construes Petitioner's submissions liberally and interprets them "to raise the strongest arguments that they suggest." United States v. Pilcher, 950 F.3d 39, 44 (2d Cir. 2020) (per curiam) (quoting McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam)). This policy is "driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." McLeod, 864 F.3d at 156 (emphasis added; internal quotation marks omitted). This liberal interpretation of Petitioner's submissions, however, "does not exempt [Petitioner] from compliance with relevant rules of procedural and substantive law." E.g., United States v. Starling, 76 F.4th 92, 99 (2d Cir. 2023) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)); see Faretta v. California, 422 U.S. 806, 834 n.46 (1975) (similar).

## III. DISCUSSION

Petitioner argues that the indictment underlying his Suffolk County prosecution was jurisdictionally defective for failing to provide constitutionally sufficient notice of the offense because it alleged the offense conduct spanned only eleven months (from April 2015 to March 1, 2016) when in fact the offense conduct continued for an additional six months. (See ECF No. 49 at 6.) This challenge fails for several reasons.

"Habeas corpus is not available to test the sufficiency of the [state court] indictment." U.S. ex rel. Mintzer v. Dros, 403 F.2d 42, 43 (2d Cir. 1967) (citing U. S. ex rel. Tangredi v. Wallack, 343 F.2d 752, 753 (2d Cir. 1965) (per curiam)). This is because "indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment ...." Branzburg v. Hayes, 408 U.S. 665, 688 n.25 (1972) (citing Hurtado v. California, 110 U.S. 516 (1884)); see Alexander v. Louisiana, 405 U.S. 625, 633 (1972); LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002). Thus, "[a]lleged defects in the indictment would ... not be cognizable on a petition for habeas corpus because there is no federal constitutional right to an indictment in a state court criminal case." Guerrero v. LaManna, 325 F. Supp. 3d 476, 484 n.2 (S.D.N.Y. 2018) (citing United States ex rel. Curtis v. Warden of Green Haven Prison, 463 F.2d 84, 87 (2d Cir. 1972)); see, e.g., Proctor v. McCarthy, No. 19-CV-2988, 2023 WL 4562405, at *2 (S.D.N.Y. July 17, 2023) (rejecting habeas corpus petition as not cognizable because it asserted the state court indictment was jurisdictionally deficient); Jackson v. Comm'n of New York State Dep't of Correction & Cmty. Supervision, No. 18-CV-00270, 2023 WL 2435754, at *2 (E.D.N.Y. Feb. 3, 2023) (same); Mirrer v. Smyley, 703 F. Supp. 10, 11-12 (S.D.N.Y. 1989) (rejecting habeas corpus petition concerning state court grand jury deficiencies as not premised on a federal constitutional right), aff'd, 876 F.2d 890 (2d Cir. 1989).

***5** "[E]ven if the state law claims were cognizable in a federal habeas petition, they would, in any event, be barred under federal law by the petitioner's guilty plea." Guerrero, 325 F. Supp. 3d at 484. [1]

> When the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

United States v. Broce, 488 U.S. 563, 569 (1989); see Tollett v. Henderson, 411 U.S. 258, 267 (1973); Whitehead v. Senkowski, 943 F.2d 230, 233 (2d Cir. 1991). As an exception to that general rule, a defendant who pleads guilty may bring a habeas corpus challenge to the conviction that contests "the very power of the State to bring [him] into court to answer the charge" in the first place. Blackledge v. Perry, 417 U.S. 21, 30 (1974); see Menna v. New York, 423 U.S. 61, 62 n.2 (1975)

(per curiam) ("[A] plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute."). That is, "a guilty plea does not bar a [habeas petition] 'where on the face of the record the court had no power to enter the conviction or impose the sentence.' " Class v. United States, 583 U.S. 174, 181 (2018) (quoting Broce, 488 U. S. at 569).[2] That is not the case here. Even if the Suffolk County indictment was somehow constitutionally deficient for not charging that Petitioner's conduct continued for an additional six months, such a shortcoming would not "lay in the State's power to bring any indictment at all." Broce, 488 U.S. at 575. Petitioner acknowledges that fact. (See ECF No. 52 at 6 (asserting that the indictment should have "allege[d] the commission of the entire 17-month time period"). Indeed, the indictment's alleged deficiency could "have been 'cured' through a new indictment." Class, 583 U.S. at 181 (quoting Blackledge, 417 U.S. at 30). Petitioner's guilty plea therefore forecloses the instant challenge to his convictions. See Tollett, 411 U.S. at 266-67 (holding that a defendant's guilty plea foreclosed his habeas corpus claim that an unconstitutionally selected grand jury issued the indictment); United States v. Hansel, 70 F.3d 6, 8 (2d Cir. 1995) ("[A]ny error in the grand jury proceedings must be considered harmless in light of Hansel's guilty plea."); see also Haring v. Prosise, 462 U. S. 306, 321 (1983) (explaining that a defendant's guilty plea rendered earlier constitutional issues "irrelevant to the constitutional validity of the conviction" under habeas corpus review).

***6** While the Court concludes that Petitioner's challenge to the sufficiency of the state court indictment is not cognizable (and is barred by his guilty plea), the undersigned notes that some district court decisions have held that a habeas corpus petition may assert that a state court indictment "f[ell] below basic constitutional standards." Miller v. New York, No. 15-CV-2741, 2019 WL 1232085, at *4 (E.D.N.Y. Mar. 15, 2019) (quoting Mackenzie v. Portuondo, 208 F. Supp. 2d 302, 313 (E.D.N.Y. 2002)). Even under the standard applied by these courts—which tracks the standard used to test the sufficiency of federal indictments—Petitioner's claim falls short. An indictment is "constitutionally sufficient if 'it charges a crime [1] with sufficient precision to inform the defendant of the charges he must meet and [2] with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." United States v. Logan, 845 F. Supp. 2d 499, 518 (E.D.N.Y. 2012) (quoting DeVonish v. Keane, 19 F.3d 107, 108 (2d Cir. 1994)); see United States v. Resendiz-Ponce, 549 U.S. 102, 108 (2007); Crews v. Miller, No. 19-CV-2091, 2019 WL 4861421, at *12 (E.D.N.Y. Sept. 30, 2019). Thus, "indictments are not required to do anything more 'than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.' " United States v. Skelos, 988 F.3d 645, 659 (2d Cir. 2021) (quoting United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013)) (emphasis added). An indictment "need not be perfect, and common sense and reason are more important than technicalities." United States v. Benjamin, 95 F.4th 60, 66 (2d Cir. 2024) (quoting United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998)).

Under those principles, Petitioner's challenge to the Suffolk County indictment fails on the merits. The undersigned agrees with the Appellate Division, Second Department that the indictment—which specified the time, place, and conduct of the charged crimes and allowed Plaintiff to obtain vacatur of his subsequent Nassau County conviction on double jeopardy grounds—was constitutionally sufficient.[3] (See Suffolk Cnty. Indictment, ECF No. 50-10); Kattis I, 146 N.Y.S.3d at 839 (rejecting challenge to Suffolk County indictment); Kattis II, 147 N.Y.S.3d at 429 (reversing Nassau County conviction because "constitutional double jeopardy principles preclude[ ] a second conviction"); Lanfranco, 313 F.3d at 120 (reversing grant of habeas corpus petition predicated on an alleged variance from the offense conduct date in an indictment because the petitioner "was on notice" of the criminal conduct "[r]egardless of the date provided in the original indictment"); see also United States v. McGee, 564 F.3d 136, 142 (2d Cir. 2009) (holding that the government need only prove a defendant committed a crime on a date "reasonably near" the "on or about" date alleged in an indictment (internal quotation marks omitted)).[4]

## IV. CONCLUSION

***7** The Court has considered all of Petitioner's arguments and found them meritless. Accordingly, the Amended Petition is DENIED.

A certificate of appealability shall not issue because Petitioner has not made a substantial showing that he was denied any constitutional rights. See 28 U.S.C. § 2253(c)(2). The Court certifies that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Kattis v. Rockwood, Not Reported in Fed. Supp. (2024)

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 2882610

## Footnotes

1 While Petitioner affirmatively withdrew the claim that his guilty plea was not knowing, intelligent, and voluntary (see ECF No. 52 at 17), he asserted elsewhere in his reply memorandum that his guilty plea was "not constitutionally obtained voluntarily, knowingly, and intelligently" given the alleged deficiency in the indictment. (Id. at 5.) As explained below, however, Petitioner's challenge to the indictment is meritless. And even if the indictment was deficient for the reasons Petitioner propounds, that is an independent issue from the validity of Petitioner's guilty plea. To successfully challenge the validity of a guilty plea, Petitioner must demonstrate that his plea was not "a voluntary and intelligent choice among the alternative courses of action open to [him]." North Carolina v. Alford, 400 U.S. 25, 31 (1970). "[A] plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988) (citing Brady v. United States, 397 U.S. 742, 750 (1970)). Petitioner's plea was intelligently made because "[h]e was advised by competent counsel, he was made aware of the nature of the charge against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties." Brady, 397 U.S. at 756; (see generally, Plea Hr'g Tr., ECF No. 50-19.) Petitioner's plea was voluntary because he "makes no claim that his plea was obtained through coercion, whether in the form of force or threats. And during his plea colloquy he explicitly disclaimed having received any promises" apart from the court's conditional promise to sentence Petitioner as it ultimately did. United States v. Delvalle, 94 F.4th 262, 266 (2d Cir. 2024); (see Plea Hr'g Tr., ECF No. 50-19 at 6:21-18:24.). The undersigned accordingly agrees with the Appellate Division, Second Department that Petitioner's guilty plea was sufficient. See Kattis I, 146 N.Y.S.3d at 839. Petitioner's suggestion that his plea was not knowing and voluntary because his offense conduct, in fact, spanned a longer time period than the time period charged in the indictment is absurd.

2 Under this principle, a defendant who pleads guilty may thereafter assert that the statute underlying his conviction is unconstitutional, see Class, 583 U.S. at 176, that the Double Jeopardy Clause of the Constitution barred the indictment, see Menna, 423 U.S. at 62-63, or that the commencement of a prosecution was vindictive in violation of the Due Process Clause of the Constitution. See Blackledge, 417 U.S. at 30-31; cf. Broce, 488 U.S. at 576 (holding that guilty pleas foreclosed double jeopardy challenges to indictments because the arguments required looking beyond the "indictments and the existing record" and necessitated "contradicting th[e] indictments").

3 Petitioner's argument that the Suffolk County indictment impermissibly "divid[ed] an uninterrupted time period of an offense into separate periods to be able to charge" the same conduct "under separate indictments" fails. (ECF No. 50-10 at 7-9.) As the reversal of the Nassau County conviction makes clear, double jeopardy principles shield Petitioner from a second prosecution based on the offense at issue in the Suffolk County indictment. See Kattis II, 147 N.Y.S.3d at 429.

4 Relatedly, "courts in this Circuit have consistently upheld indictments with broad timespans in child sex abuse cases because young victims often do not remember the exact date of when an alleged offense occurred." Errington v. Warden Bedford Hills Corr. Facility, No. 17-CV-00258, 2019 WL 3556683, at *11 (W.D.N.Y. Aug.

5, 2019) (internal quotation marks omitted) (collecting cases), aff'd, 806 F. App'x 76 (2d Cir. 2020); see also Valentine v. Konteh, 395 F.3d 626, 632 (6th Cir. 2005) ("This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements." (collecting cases)).

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2004 WL 26306
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Alberto MARTINEZ, Petitioner,
v.
Joseph J. COSTELLO, Superintendent, Mid–State Correctional Facility, and Eliot Spitzer, Attorney General of the State of New York, Respondents.

No. 03 Civ. 2763(GEG).
|
Jan. 5, 2004.

**Synopsis**
**Background:** Defendant convicted of criminal possession of a controlled substance in the second degree brought a pro se petition for a writ of habeas corpus.

**Holdings:** The District Court, Gorenstein, United States Magistrate Judge, held that:

[1] determination that defendant was not entitled to withdraw his guilty plea on the ground that it was unknowing was not unreasonable;

[2] defendant had no federal constitutional right to an evidentiary hearing on his motion to withdraw his guilty plea; and

[3] trial court did not violate defendant's right to counsel when it failed to appoint new counsel to represent defendant on his motion to withdraw the guilty plea.

Petition denied.

West Headnotes (3)

[1] **Habeas Corpus** Arraignment and Plea

State court's determination that defendant's "vague and conclusory allegations of innocence, [and] lack of comprehension" did not entitle him to withdraw his guilty plea, on the ground that it was unknowing, was not unreasonable, thus precluding habeas relief; statements defendant made during his plea allocution demonstrated that the plea was entered with full knowledge of the charge and the consequences of pleading guilty, and the statements he made during the plea allocution controlled over unexplained statements in his affidavit in support of a withdrawal motion. 28 U.S.C.A. § 2254(d).

23 Cases that cite this headnote

[2] **Criminal Law** Withdrawal

**Habeas Corpus** Arraignment and Plea

Defendant had no federal constitutional right to an evidentiary hearing on his motion to withdraw his guilty plea, and thus, state appellate court's decision upholding the failure to hold such a hearing was not contrary to, or an unreasonable application of, clearly established Federal law, as required for habeas relief. 28 U.S.C.A. § 2254(d).

10 Cases that cite this headnote

[3] **Criminal Law** Particular Cases

Trial court did not violate defendant's right to counsel when it failed to appoint new counsel to represent defendant on his motion to withdraw a guilty plea; the defendant failed to provide any explanation for attempting to withdrawal his plea when he was given a chance to speak before sentencing or through a pre-sentence motion, and there were no allegations that his attorney attempted to coerce him. U.S.C.A. Const. Amend. 6.

3 Cases that cite this headnote

*OPINION AND ORDER*

GORENSTEIN, Magistrate J.

***1** Following a plea of guilty to one count of Criminal Possession of a Controlled Substance in the Second Degree

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

in New York County Supreme Court, Alberto Martinez was sentenced as a second felony offender to a prison term of six years to life. He now brings this petition for writ of habeas corpus *pro se* pursuant to 28 U.S .C. § 2254. The parties have consented to the exercise of jurisdiction over this petition by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons below, the petition is denied.

I. *BACKGROUND*

In March 1998, Martinez was indicted for Criminal Possession of a Controlled Substance in the First Degree and related charges in connection with a drug sale turned shoot-out which occurred in Martinez's apartment. *See* Martinez's Appellate Brief, dated May 2001 ("App.Brief") (annexed to Petition for Writ of Habeas Corpus, filed April 22, 2003 (Docket # 2) ("Petition")), at 3; Plea: Tr. 3, 7–9. During this incident, Martinez was shot in the face and three other participants also sustained gunshot wounds. App. Brief at 3; Respondents' Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus, filed September 3, 2003 (Docket # 11) ("Resp.Opp."), at 2.

On August 19, 1999, Martinez appeared with counsel before the Honorable Ronald A. Zweibel of the New York County Supreme Court for a pre-trial hearing. *See generally* Transcript of Plea Hearing Conducted August 19, 1999 (Docket # 10). Martinez was represented by Alfredo Hernandez, a court-appointed lawyer. Petition at 1. Apparently, plea discussions had been ongoing over the entire one-and-a-half-year period since the case was first indicted. (Plea: Tr. 3). Defense counsel stated to the court that he had "had extensive conversations with Mr. Martinez" and that he had explained to Martinez that various people had made statements against him; Felix Pabon, a participant in the crime, would likely testify against him; cocaine had been recovered from outside Martinez's apartment; and his fingerprints had been lifted from one of the bricks of cocaine. (Plea: Tr. 3). If convicted as charged, Martinez faced a minimum sentence of fifteen years to life, (Plea: Tr. 2), and a maximum of twenty-five years to life, (Plea: Tr. 5). Nonetheless, defense counsel reported that Martinez had been "completely recalcitrant" in participating in the plea discussions. (Plea: Tr. 3).

As of August 19, 1999, all other individuals involved in the incident had pled guilty. (Plea: Tr. 4). The Assistant District Attorney stated on the record that she was offering Martinez a sentence of six years to life in return for a plea of guilty to Criminal Possession of a Controlled Substance in the Second Degree in full satisfaction of the indictment. (Plea: Tr. 3–4, 7). She made it clear that this was the best offer she was allowed to make and that the offer would be revoked as soon as the pre-trial hearing began. (Plea: Tr. 9). She explained her offer based on the facts that "this defendant arranged a drug deal for three kilos of cocaine, in a residential area.... As a result ... four people were shot.... He has three prior felony convictions." (Plea: Tr. 7–8).

***2** After consulting with Martinez, defense counsel reported to the court that Martinez was rejecting the offer and was prepared to proceed with the hearing. (Plea: Tr. 9). The first witness was called to the stand but before he could be sworn in, defense counsel asked the court to "hold on just a second" so he could consult with Martinez. (Plea: Tr. 10). Thereafter, Martinez's counsel stated that Martinez was withdrawing his plea of not guilty and entering a plea of guilty. (Plea: Tr. 10–11).

During the subsequent allocution, Martinez acknowledged that he had discussed his case and plea with his attorney, that he understood he was waiving certain constitutional rights, and that he was pleading guilty of his own free will. (Plea: Tr. 11–12). The court asked him: "Are you pleading guilty because you are, in fact, guilty of this crime?" Martinez replied "Yes, sir." (Plea: Tr. 12).

The court asked Martinez if he understood that a plea had the same effect as if he had been convicted after a trial, to which Martinez responded that he did. (Plea: Tr. 12–13). Martinez also stated that he understood the charge he was pleading to and that no one had forced him to enter into the plea. (Plea: Tr. 13). The court then repeated the nature of the charge—Criminal Possession of a Controlled Substance in the Second Degree—and the following colloquy ensued:

> THE COURT: It is alleged that the defendant[ ], Alberto Martinez[,] ... in the County of New York, on or about March 15th, 1998, knowingly and unlawfully possessed one or more preparations, compounds, mixtures and substances containing a narcotic drug; to wit, cocaine, and said preparations, compounds, mixtures and substances are of an aggregate weight of two ounces or more. Do you plead guilty to that charge?
>
> THE DEFENDANT: Yes, sir.

(Plea: Tr. 13–14). The clerk officially recorded the plea and the case was scheduled for sentencing on September 1, 1999. (Plea: Tr. 14–15).

A few days later, Martinez filed a *pro se* motion to withdraw his plea that annexed an affidavit. *See* Notice of Motion, dated August 24, 1999, and Affidavit of Alberto Martinez, dated August 25, 1999 ("Martinez Aff.") (both annexed as Ex. A to Resp. Opp.). Both the Notice of Motion and affidavit were "fill-in-the-blank" forms inasmuch as lines appear where case-specific information, such as the defendant's name, docket number, and dates, needs to be filled in. Martinez filled in some of these lines but left blank a large space provided for him to fill in the specific facts supporting his motion. Martinez Aff. ¶ 5.

The affidavit form states that the affiant is "not fully aware of the circumstances involved when he made such guilty plea," that he "plead [sic] guilty for reasons which are outside the record," that "he was unaware of the fact[ ] that he has a good meritorious defense to the prosecution," and that "he is not guilty of the offense." Martinez Aff. ¶¶ 4–7. The affidavit also contained a statement that "defendant ... was fully aware of the consequences of his plea of guilty." *Id.* ¶ 6. Martinez's counsel later explained that this was a typographical error and that Martinez meant he was *not* fully aware, as the context of the statement implies. *See* Sentencing: Tr. 4; App. Brief at 6 n. 3.

***3** On September 1, 1999, prior to sentencing, Judge Zweibel considered Martinez's motion to withdraw his plea. *See generally* Transcript of Hearing on Motion to Withdraw Plea & Sentencing Hearing Conducted September 1, 1999 (Docket # 9), at 2–8. Defense counsel indicated that the *pro se* motion "puts me in a situation where it would be a conflict of interest for me to remain on this case, an irreconcilable interest [sic]." (Sentencing: Tr. 3). He explained:

> Anyway, I did not encourage this motion. I cannot join this motion in good conscience ... and I certainly wouldn't start to feel that I'm in a position to effectively argue such a motion considering a very extensive record that I made on the last date ... regarding the proof in this case, the consequences to the Defendant and what his options were....
>
> So, I have not joined in this motion. This is a pro se motion. I don't know if it would be in conflict. Clearly, I cannot in good conscience argue this particular motion. I think my client stands to be seriously prejudiced if this motion were granted.

(Sentencing: Tr. 4–5). He further stated:

> As I said, I feel that I'm at a conflict of interest with this particular motion to withdraw, and I think the Court should make a ruling as to whether to relieve me on this matter regarding this particular motion and have another attorney, maybe, make an effective argument for him on this matter, since I don't feel that I can make an argument, and it may be to his prejudice that he doesn't have an attorney to argue this withdrawal.

(Sentencing: Tr. 6–7). The trial court declined to allow defense counsel to withdraw and to appoint Martinez a new attorney. (Sentencing: Tr. 7) ("I see no basis for you to be discharged on the basis of this motion that was presented to me. I see no merit whatsoever to this motion, and that application is denied to relieve you, counsel.").

With respect to the underlying motion to withdraw the plea, the trial court examined the papers submitted by Martinez and observed that "[t]hese are boiler plate papers that are prepared within the prison system." (Sentencing: Tr. 4). Further, the court found the assertions made in Martinez's affidavit to be "contrary to the full allocution he made the other day." (Sentencing: Tr. 5–6). The trial judge agreed with the prosecutor's statement that "[t]he only question [is] whether [the plea] was knowing and voluntary, and it was one of the most extensive plea allocutions and discussions on the record, prior to allocution, that I've had since I've been with the District Attorney's Office." (Sentencing: Tr. 7–8).

Before he was sentenced, Martinez was invited to address the court. He stated only: "I don't have any drugs, and I don't know anything about any drugs." (Sentencing: Tr. 11). He was then sentenced to the agreed-upon term of six years to life imprisonment. (Sentencing: Tr. 11).

In May 2001, through newly-assigned counsel, Martinez appealed his conviction, arguing that the "trial court erred in refusing to relieve counsel, who stated that he had a conflict of interest, and in summarily denying Mr. Martinez'[s] motion to withdraw his plea." App. Brief at 6. The conviction was unanimously affirmed by the Appellate Division, First Department, on December 11, 2001. *People v. Martinez,* 289

A.D.2d 70, 733 N.Y.S.2d 867 (1st Dep't 2001). The Appellate Division stated:

> ***4** The court properly exercised its discretion in denying defendant's motion to withdraw his guilty plea without a hearing and without appointing new counsel. Defendant was afforded a sufficient opportunity to present his assertions by means of his written motion, upon which he did not elaborate, and the court gave the motion proper consideration (*see People v. Frederick,* 45 N.Y.2d 520, 410 N.Y.S.2d 555, 382 N.E.2d 1332 [ (1978) ]; *People v. Colon,* 283 A.D.2d 193, 724 N.Y.S.2d 600 [ (1st Dep't 2001) ] ). The motion consisted of vague and conclusory allegations of innocence, lack of comprehension and ineffective assistance of counsel, which the court described as "boilerplate papers that are prepared within the prison system." The court, which had also accepted the guilty plea, was entitled to rely on the plea colloquy, which contradicted defendant's assertions.

*Id.* at 70, 733 N.Y.S.2d 867. Thereafter, Martinez sought leave to appeal to the New York Court of Appeals, which was denied on March 27, 2002. *People v. Martinez,* 97 N.Y.2d 757 (2002).

Martinez is currently incarcerated at the Mid–State Correctional Facility in Marcy, New York. He timely filed this petition for writ of habeas corpus arguing that he was deprived of his right to due process of law and his right to conflict-free counsel when the trial court summarily denied his motion to withdraw his guilty plea without appointing new counsel. *See* Petition at 2–3. Martinez exhausted his state law remedies by presenting the constitutional nature of his claims to each available level of the state courts. *See Daye v. Attorney Gen.,* 696 F.2d 186, 190–92 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984).

## II. *DISCUSSION*

### A. *Standard of Review*

Under the Antiterrrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Second Circuit has held that "adjudication on the merits" requires only that the state court base its decision on "the substance of the claim advanced, rather than on a procedural, or other, ground." *Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir.2001). Furthermore, it is not necessary for the state court to refer to any federal claim or any federal law for AEDPA's deferential standard to apply. *Id.* at 312. In light of the Appellate Division's decision in this case, it is clear that Martinez's claims were adjudicated on the merits. Accordingly, the state court's decision will be reviewed under the standard laid out in 28 U.S.C. § 2254(d).

***5** In *Williams v. Taylor,* the Supreme Court held that a state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives" at a different result. 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). *Williams* also held that habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409.

### B. *The Merits of Martinez's Claims*

Martinez argues that his Sixth and Fourteenth Amendment rights were violated when the state court denied his motion to withdraw his plea without appointing new counsel to represent him on the motion. *See* Petition at 2–3, 5–6. The petition appears to raise three claims: (1) the plea was entered unknowingly, in violation of the Due Process Clause; (2) Martinez was denied due process by the state court's failure to hold a hearing on his motion; and (3) the state court's failure to appoint new counsel to represent him on his motion denied Martinez his right to conflict-free counsel. Martinez bases his claims on the allegations in his affidavit and on defense counsel's statements that he had a conflict of interest with regard to the allegations made in the motion and therefore

could not argue the motion on Martinez's behalf. *See id.* at 4–5. Each claim is addressed separately.

1. *Unknowing Guilty Plea*

**[1]** The Due Process Clause of the Fourteenth Amendment requires that a guilty plea be knowingly and voluntarily entered. *E.g., Boykin v. Alabama,* 395 U.S. 238, 242–43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A plea is made knowingly when it is entered " 'with [an] understanding of the nature of the charge and the consequences of the plea." ' *Santobello v. New York,* 404 U.S. 257, 261 n. 1, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (quoting Fed.R.Crim.P. 11).

Martinez does not contend that the plea colloquy itself reflects an improperly entered plea. Rather, Martinez relies on his motion to withdraw his plea, in which he stated that he "plead [sic] guilty for reasons which are outside of the record ... and was [not] fully aware of the consequences of his plea of guilty and also ... he was unaware of the fact[ ] that he has a good meritorious defense." Martinez Aff. ¶ 6. He also stated that he was "not guilty of the offense(s) to which he plead [sic] guilty." *Id.* ¶ 7.

***6** Case law reflects that assertions of this kind are insufficient to negate the existence of a valid plea. As the Supreme Court has noted, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal...." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *accord Singh v. Kuhlman,* 1996 WL 337283, at *3 (S.D.N.Y. June 19, 1996). As already noted, the affidavit containing these statements was a fill-in-the-blank form and Martinez never provided any details explaining—let alone substantiating—any of the conclusory assertions contained in the affidavit. Furthermore, the affidavit completely contradicts Martinez's own statements during his plea allocution. *Compare* Martinez Aff. ¶¶ 4, 6–7, *with* Plea: Tr. 11–15. As for Martinez's contention of having a "meritorious defense," Martinez Aff. ¶ 6, there is no indication anywhere in the record that such a defense actually existed. Indeed, defense counsel stated on the record before the plea:

> I don't think he has much of a defense on [this case], because, after all, he would have to testify in this case to make out the defense that he has and I've advised him he has a criminal record here and that will be made known to the jurors in this case, that he has a criminal record, and that will seriously effect his credibility, in addition to the proof that the prosecution has here, that he at some point possessed the narcotics in this case.

(Plea: Tr. 6). Martinez's motion to withdraw did not elaborate on any new possible defense he had discovered or indicate that he could substantiate his claim of innocence.

Martinez's statements during his plea allocution demonstrate that the plea was knowing in that it was entered with full knowledge of the charge and the consequences of pleading guilty. *See Santobello,* 404 U.S. at 261. The statements Martinez made during the plea allocution control over the unexplained statements in his affidavit. *See Singh,* 1996 WL 337383, at *3. The state court's determination that Martinez's "vague and conclusory allegations of innocence, [and] lack of comprehension" were nothing more than "boilerplate" and "contradicted defendant's assertions," *Martinez,* 289 A.D.2d at 70, 733 N.Y.S.2d 867, was neither contrary to, nor did it involve an unreasonable application of, any clearly established federal law.

2. *Motion to Withdraw Guilty Plea*

**[2]** The next question raised by Martinez is whether he was entitled to an evidentiary hearing on his motion to withdraw his guilty plea. A recent case from the Second Circuit, *Hines v. Miller,* 318 F.3d 157 (2d Cir.), *cert. denied,* 538 U.S. 1040, 123 S.Ct. 2089, 155 L.Ed.2d 1075 (2003), is almost precisely on point. In *Hines,* the petitioner pled guilty in state court and thereafter sought to withdraw his plea, claiming that his attorney coerced him into accepting the plea and that he was innocent of the crime. *Id.* at 159. Defense counsel asked to be relieved and for new counsel to be appointed to represent the petitioner on the motion. *Id.* The trial court, however, denied the *pro se* motion without holding a hearing and without appointing new counsel, noting that the petitioner had inculpated himself when he entered the plea and stated during the plea allocution that no one had forced him to plead guilty. *Id.*

***7** In seeking federal habeas review of his conviction, the petitioner in *Hines* argued that the failure to hold a hearing on his motion to withdraw his plea violated due process. 318 F.3d at 161. The Second Circuit held, however, that "a defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea." *Id.* at 162; *accord Cosey v. Walsh,* 2003 WL 1824640, at *3 (S.D.N.Y. Apr.8, 2003); *Thomas v. Senkowski,* 968 F.Supp. 953, 956 (S.D.N.Y.1997). Thus, "the failure to hold an evidentiary hearing ... does not offend a deeply rooted or 'fundamental' principle of justice." *Hines,* 318 F.3d at 162 (quoting *Medina v. California,* 505 U.S. 437, 445, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992)). The failure to hold a hearing is especially understandable in Martinez's case where petitioner "did nothing more than contradict his own statements at the time he entered the plea," *Hutchings v. Herbert,* 260 F.Supp.2d 571, 581 (W.D.N.Y.2003).

In light of the lack of a federal constitutional right to an evidentiary hearing in this situation, the Appellate Division's decision upholding the failure to hold such a hearing was not "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d).

3. *Ineffective Assistance of Counsel/Motion to Substitute Counsel*

**[3]** Martinez also argues that the trial court violated his right to counsel when it failed to appoint new counsel to represent him on his motion to withdraw his plea. *See* Petition at 5–6. *Hines* considered the same issue in the context of petitioner's argument that he was denied effective assistance of counsel by his attorney's failure to represent him on his motion to withdraw his plea. 318 F.3d at 162–64. As is true here, the petitioner in *Hines* based his motion in part on the ground that his attorney had an actual conflict of interest. *Id.*

The *Hines* court noted that such claims can be analyzed two ways: either (1) "as a claim that petitioner was denied his right to counsel because he was effectively unrepresented on his motion to withdraw his plea," or (2) "as a claim that petitioner was denied the effective assistance of counsel because an actual conflict of interest adversely affected counsel's performance." *Id.* at 163 (citations omitted). The Supreme Court has not clarified which analysis courts should apply, but *Hines* observed that the Second Circuit has applied the ineffective-assistance-of-counsel analysis and has "generally decided the case on the basis of whether the underlying motion had sufficient merit to create an actual conflict of interest or present a 'plausible alternative defense strategy.' " *Id.* (citations omitted); *see, e.g., United States v. Davis,* 239 F.3d 283, 285–88 (2d Cir.2001); *Lopez v. Scully,* 58 F.3d 38, 41–43 (2d Cir.1995); *Fluitt v. Superintendent, Green Haven Corr. Facility,* 480 F.Supp. 81, 86 (S.D.N.Y.1979) (Weinfeld, J.). *Hines* also noted that "numerous reviewing courts, irrespective of the analysis employed, have affirmed the denial of a withdrawal motion despite the failure to appoint new counsel." 318 F.3d at 164 (citing cases). *Hines* ruled against the petitioner in that case, holding that there was "no basis for concluding ... that the Appellate Division's decision here constituted an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States." *Id.*

***8** *Hines* governs the instant case. If anything, there was more information in the record in *Hines* as to the petitioner's explanation for attempting to withdrawal his guilty plea. *See* 318 F.3d at 159. Here, there is no such information and Martinez failed to provide any when he was given a chance to speak before sentencing or through the pre-sentence motion. In addition, unlike *Hines,* there are no allegations that Martinez's attorney attempted to coerce him. What is left is a patently meritless submission that obviously could not meet the standard of a motion with "sufficient merit to create an actual conflict of interest or present a 'plausible alternative defense strategy,' " *Hines,* 318 F.3d at 163. Thus, the trial court properly concluded that there was no need to appoint new counsel.

Because the Appellate Division's determination upholding this decision was not contrary to, or an unreasonable application of, any clearly established federal law, it must be upheld.

*Conclusion*

For the foregoing reasons, the petition is denied. In addition, because Martinez has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). The Court also certifies, pursuant to 28 U.S.C.1915(a)(3), that any appeal from the judgment would not be taken in good faith.

The Clerk is requested to enter judgment and close this case.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 26306

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 785690
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Carpeah NYENEKOR, Petitioner,
v.
The State of NEW YORK, et al., Respondents.

No. 09 Civ. 8719(DAB).
|
Feb. 25, 2014.

*ADOPTION OF REPORT AND RECOMMENDATION*

DEBORAH A. BATTS, District Judge.

***1** This matter is before the Court upon the October 29, 2013 Report and Recommendation of United States Magistrate Judge Lisa Margaret Smith (the "Report"). Judge Smith's Report recommends that the Court deny Petitioner's Petition for a Writ of Habeas Corpus. (Report 1, 22.)

"Within fourteen days after being served with a copy [of a magistrate judge's Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b)(2); accord 28 U.S.C. § 636(b)(1)(C). The Court may adopt those portions of the Report to which no timely objection has been made, as long as there is no clear error on the face of the record. *DiPilato v. 7–Eleven, Inc.,* 662 F.Supp.2d 333, 339 (S.D.N.Y.2009). "[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onondaga County,* 517 F.3d 601, 604 (2d Cir.2008) (*quoting Small v. Sec'y of Health & Hum. Servs.,* 892 F.2d 15, 16 (2d Cir.1989)). This rule applies to *pro se* parties so long as the magistrate's report "explicitly states that failure to object to the report within [fourteen (14) ] days will preclude appellate review ....“ *Small,* 892 F.2d at 16.

Despite being advised of the procedure for filing objections in Judge Smith's Report, and warned that failure to file timely objections would preclude appellate review (Report 22–23), Petitioner has filed no objections to the Report. Nor has any other Party filed objections to the Report. Having reviewed the Report, and finding no clear error on the face of the record, *see* 28 U.S .C. § 636(b)(1)(B), it is hereby ORDERED AND ADJUDGED that the Report and Recommendation of United States Magistrate Judge Lisa Margaret Smith, filed October 29, 2013, be and the same hereby is APPROVED, ADOPTED, and RATIFIED by the Court in its entirety. Petitioner's Petition for a Writ of Habeas Corpus is DISMISSED.

Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED.

***REPORT AND RECOMMENDATION***

LISA MARGARET SMITH, United States Magistrate Judge.

**TO: THE HONORABLE DEBORAH A. BATTS, UNITED STATES DISTRICT JUDGE**

***I. INTRODUCTION***

Carpeah Nyenekor (hereinafter "Petitioner") seeks, by his *pro se* petition, a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging (1) his pre-trial commitments to the New York State Office of Mental Health (hereinafter "OMH"), which resulted from findings that he lacked capacity to stand trial, as well as (2) his October 29, 2009, convictions and sentences entered in New York State County Court, Orange County (Berry, J.). *See* Docket Entry # 4, Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Petitioner pleaded guilty to a number of narcotics and weapons charges in satisfaction of three criminal indictments. The County Court judge sentenced petitioner to determinate, concurrent terms of three and one-half years imprisonment as well as three years post-release supervision. The issues presented are whether (1) petitioner, prior to trial, was improperly committed to the custody of OMH as a legally incompetent criminal defendant; (2) petitioner voluntarily entered into the plea agreement; and (3) the County Court judge improperly sentenced petitioner. *See id.* at 4–8. Petitioner's claims are moot or procedurally defaulted; thus, I respectfully recommend that the application for a writ of habeas corpus be denied and the petition be dismissed.

***II. FACTS AND PROCEDURAL HISTORY***

***2** Petitioner, a Liberian-born man, was charged, in three separate indictments, with multiple state felony drug counts and one weapons count in County Court for the County of Orange, State of New York. The charges stemmed from his (1) September 2006 arrest in Newburgh, NY, for the possession of illegal narcotics; (2) December 2006 arrest in Newburgh, NY, for the possession of illegal narcotics and a firearm; and (3) January 2007 arrest for the possession of illegal narcotics.

In February, 2007, a grand jury indicted petitioner on one count of criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 220.16(1)) and one count of criminal possession of a controlled substance in the fourth degree (N.Y. Penal Law § 220.09(1)) in relation to his January 2007 arrest. Docket Entry # 21, Attach. 2, Exh. 1, Indictment. In March, 2007, a grand jury returned a separate indictment, charging petitioner with one count of criminal possession of a controlled substance in the fourth degree (N.Y. Penal Law § 220.09(1)) based upon his September 2006 arrest. Docket Entry # 21, Attach. 2, Exh. 3, Indictment. In April, 2007, a grand jury separately indicted petitioner on one count of criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02(1)) and one count of criminal possession of a controlled substance in the seventh degree (N.Y. Penal Law § 220.03), stemming from his December 2006 arrest. Docket Entry # 21, Attach. 2, Exh. 8, Indictment. County Court, Orange County (Berry, J.), arraigned petitioner on all three indictments, and he pleaded not guilty to the counts. Upon the State's motion, and over petitioner's objection, the County Court judge consolidated the cases stemming from the February 2007 indictment and the April 2007 indictment pursuant to New York Criminal Procedure Law (hereinafter "C.P.L.") § 200.20(2)(c). Docket Entry # 21, Attach. 2, Exh. 16, Decision and Order.

The State thereafter superseded the February 2007 indictment, charging petitioner with one count of criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 220.16(1)) and one count of criminal possession of a controlled substance in the fifth degree (N.Y. Penal Law § 220.06(5)). Docket Entry # 21, Attach. 3, Exh. 20, Indictment.

Thereafter, the County Court judge, upon a request by petitioner's counsel, ordered petitioner to undergo a psychiatric examination, pursuant to C.P.L, § 730.30, to determine whether he had sufficient mental capacity to stand trial.[1] Supplemental Exh. 21, Order for Psychiatric Examination. Following the examination, the Department of Mental Health—Orange County Community Mental Health Center filed an examination report with the court, opining that petitioner lacked legally competency to stand trial. Supplemental Exh. 27, Examination Report. On November 28, 2007, the County Court judge found petitioner to lack legal competency to stand trial, adjudicated him an incapacitated person, and committed him to the custody of OMH for treatment for a period not to exceed one year. Supplemental Exh. 28–30, Orders of Commitment. Upon such commitment, OMH housed petitioner at the Mid–Hudson Forensic Psychiatric Center (hereinafter "the MHFPC").

***3** On December 31, 2007, the MHFPC issued a notification of fitness to proceed, stating that petitioner's capacity had been restored, and, consequently, he was competent to stand trial. The County Court judge accordingly restored the matters to the trial calendar. However, in February 2008, again upon the request of petitioner's counsel, the County Court judge ordered a second competency evaluation of petitioner and placed him back in the custody of OMH, Supplemental Exh. 33–35, Order for Psychiatric Examination. In April 2008, the County Court judge again adjudicated petitioner incompetent to stand trial and issued new orders of commitment. Supplemental Exhs. 37–39, Orders of Commitment.

While housed at the MHFPC, petitioner, proceeding pro se, launched a number of attacks on his confinement. In March 2008, he sought a state writ of habeas corpus in the Second Department of the New York Supreme Court Appellate Division, alleging that the County Court judge had essentially sentenced him to a term of imprisonment without conviction. Docket Entry # 21, Attach. 4, Exh. 41, Pet. for Writ of Habeas Corpus. Petitioner also claimed that the State prevented him from testifying in any of the grand jury proceedings. The Appellate Division, insofar as is relevant, denied the application for a writ of habeas corpus and dismissed the petition. *People ex rel. Nyenkor v. County Court, Orange County,* 2008 N.Y. Slip Op. 73079(U) (2d Dept.2008).

In May 2008, petitioner, again proceeding *pro se,* commenced two state habeas corpus proceedings in the Second Department of the New York Supreme Court Appellate Division, again challenging his "unconstitutional and forceful confinement to" MHFPC in violation of his state statutory right to a speedy trial. Docket Entry # 21, Attach. 6, Exh. 49, Petitions for Writs of Habeas Corpus. Petitioner filled

the applications with nonsensical and conclusory allegations, such as:

> The people failure to prosecute the petitioner in a 16, 17, and 18 months old case wherein they've lost their jurisdiction. When plaintiff move for Recussal [sic] and change of venue to the Supreme Court of New York from the County Court. Petitioner was illegally confined to [MHFPC] without a single metal [sic] impairement [sic] for exercise his right to be release pursuant to CPL 180.80, 190.80, CPL 190.50, and CPL 30.30, 210.20. IN retaliation for his defense The trial Judge wrote out a sentiment and plea with 2 racist psychologist to endorse his opinion to have plaintiff committed under a Fraudulent act ... when Petitioner is Competent ...
>
> No black man should be denied his mandated right to be Fraudulently harass, abuse, by a racist-impartial Judge because the petitioner challenge a Constitutionally mandated right protected by Law.

*Id.* The Appellate Division, insofar as is relevant, denied the applications and dismissed the petitions. Docket Entry # 21, Attach. 6, Exh. 52, August 25, 2008, Dec & Order on Mot; Docket Entry # 21, Attach. 6, Exh. 57, September 30, 2008, Mot. Dec.

***4** Petitioner appealed as of right to the New York State Court of Appeals from the Appellate Division orders dismissing his habeas petitions. The New York State Court of Appeals dismissed the appeals on the ground that they did not lie, because no substantial constitutional question was directly involved. *People ex rel. Nyenekor v. Dubois,* 11 NY3d 893 (2008); *People ex rel. Nyenekor v. Healy,* 11 NY3d 893 (2008). When petitioner later moved in the New York State Court of Appeals for leave to appeal from the Appellate Division orders, the Court of Appeals denied the motions. *People ex rel. Nyenekor v. Dubois,* 12 NY3d 703 (2009); *People ex rel. Nyenekor v. Healy,* 12 NY3d 703 (2009).

On June 10, 2008, MHFPC issued a notice of fitness to proceed, indicating that petitioner's capacity had been restored. Supplemental Exh. 48, Notification of Fitness to Proceed. Accordingly, petitioner's cases were restored to the trial calendar. On July 23, 2008, at the request of petitioner's counsel and the State, the County Court judge held another hearing on petitioner's competency to stand trial. On September 9, 2008, the County Court judge found that petitioner "is and remains an incapacitated person, as a result of his severe delusions and anti-social personality disorder," adding that it was "clear that [petitioner] [was] unable to assist in his defense." Supplemental Exh. 54, Dec. & Order. The judge again committed petitioner to the custody of OMH.

In January 2009, petitioner filed the instant petition for a writ of habeas corpus, seeking, among other things, to challenge his detention at the MHFPC. Docket Entry # 2, Petition. The petition set forth sixteen grounds upon which petitioner sought relief, including that the State imposed a "[d]eath sentence ... without trial in violation of the 6th, 8th and 14th Amends, U.S.C." Docket Entry # 2, Petition at 4. He thereafter filed two additional § 2254 petitions. *See* 09 Civ. 8720; 09 Civ. 8721.[2]

On March 20, 2009, MHFPC notified the County Court judge that petitioner remained incapacitated and applied for a further order of retention. Supplemental Exh. 67, Application for Order of Retention. Supreme Court, Orange County (De Rosa, J.), subsequently issued an order permitting MHFPC to administer certain medications to petitioner over his objection. Supplemental Exh. 72, Final Order. On September 18, 2009, MHFPC notified the County Court that petitioner was mentally fit to proceed to trial. Supplemental Exh. 74, Notification of Fitness to Proceed. Accordingly, the County Court restored his cases to the criminal calendar, and he was transferred to the Orange County Jail.

By order dated October 15, 2009, the United States District Court for the Southern District of New York (Preska, C.J.) consolidated petitioner's three federal habeas proceedings. Docket Entry # 3. Noting the lack of clarity as to "petitioner's specific constitutional challenges to his incarceration" and as to "whether he has fully exhausted all available state court remedies," the court directed him to file one amended petition concerning all three proceedings. *Id.* at 4. The court gave a detailed description of the exhaustion requirements of 28 U.S.C. § 2254 and directed petitioner to "provide as much detail as possible about the pleadings he has filed in the state courts, including what documents he filed, where he filed them, the grounds raised therein, and how they were adjudicated by the state courts." *Id.* at 4. The court explained that, "[i]f petitioner has not exhausted his state court remedies and is alleging the existence of extraordinary circumstances that would warrant this Court's intervention, he must explain the basis for such a claim." *Id.* at 4–5.

***5** On October 29, 2009, petitioner, while represented by counsel, pleaded guilty in both of the cases pending in state court. In satisfaction of the three indictments, petitioner


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

entered guilty pleas to one count of attempted criminal possession of a controlled substance in the third degree, attempted criminal possession of a weapon in the third degree, and criminal possession of a controlled substance in the fourth degree. He waived his right to appeal in both cases. Docket Entry # 21, Attach. 3, Exhs. 76–78, Waivers of Right to Appeal.

Petitioner amended his federal habeas petition in compliance with the order issued by Chief Judge Preska. Docket Entry # 4, Amended Petition. In addition to reasserting challenges to his confinement at the MHFPC, the amended petition raised a number of new claims, including contentions as to the validity of his guilty pleas and the imposed sentences.

On December 2, 2009, the County Court judge sentenced petitioner as a second felony offender to concurrent definite terms of three and one-half years imprisonment, as well as three years postrelease supervision. The prison term was imposed as time served. Subsequent to the pleas, petitioner apparently filed timely notices of appeal from the judgments of conviction. Docket Entry # 41, Respondent's Affirm in Opp. to Petition at 9. He did not, however, perfect such appeals.

In April 2010, petitioner moved in County Court, pursuant to C.P.L. § 440.10 and § 440.20, to vacate the judgment and sentences. Docket Entry # 21, Exh. 79, Not. of Mot. to Vacate Sentence and Judgment. Petitioner alleged that the County Court judge sentenced him to three years post-release supervision, "in direct violation of the [p]lea agreement between [petitioner] and the [State] which require[d] [petitioner] to [only] plea guilty in exchange for three years sentence of time serve[d]." *Id.* He also argued that the State produced no evidence of his guilt at trial. Petitioner additionally contended that his attorney failed to inform him of the immigration consequences of his plea. Affid. In Supp. Of Mot to Vacate Judgment. Petitioner claimed that he suffered immigration consequences as a result of the plea, and, therefore, his attorney's failure to inform him of the potential of such consequences amounted to the ineffective assistance of counsel.

On July 12, 2010, the County Court judge denied the motion on the basis that petitioner "failed to provide the Court with the transcript of his plea allocution to support his conclusory claim that he was not advised that his sentence would include a term of post-release supervision." Docket Entry # 21, Attach. 8, Exh. 81, Dec. and Order. Petitioner appealed as of right from the County Court's decision and order denying his motion to vacate his plea and sentence. The Second Department of the New York Supreme Court Appellate Division, however, dismissed petitioner's appeal from such order on the basis that it was not "appealable as of right and leave to appeal ha[d] not been granted." Docket Entry # 21, Attach. 8, Exh. 84, Dec & Order of Mot (citing C.P.L. §§ 450.10 and 450.15). Petitioner did not move for leave to appeal to the Appellate Division from the County Court decision and order denying his motion to vacate his plea and sentence. On November 13, 2011, petitioner was released on parole.

***III. DISCUSSION***

***6** By way of his amended petition, petitioner asserts thirteen grounds upon which he seeks relief. His claims generally concern (1) the County Court judge's orders finding him incompetent to stand trial and committing him to the care and custody of OMH, (2) the grand jury proceedings, (3) the voluntariness of his pleas, and (4) his sentences. The undersigned agrees with the State that petitioner's claims are moot or procedurally defaulted, and, therefore, I recommend that they must be dismissed.

**A. The Standard of Review**

"Habeas review is an extraordinary remedy." *Bousley v. United States,* 523 U.S. 614, 621 (1998) (citing *Reed v. Parley,* 512 U.S. 339, 354 (1994)). To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), 28 U.S.C. § 2254.

Under AEDPA, a state prisoner must exhaust all state remedies before a federal court may consider his or her petition for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor,* 404 U.S. 270, 275 (1971). Exhaustion is required because, in the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *See Coleman v. Thompson,* 501 U.S. 722, 731 (1991); *see also Daye v. Attorney Gen. of the State of New York,* 696 F.2d 186, 190–91 (2d Cir.1982). The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C. § 2254:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant....
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether a claim has been sufficiently exhausted. *See Klein v. Harris,* 667 F.2d 274, 282 (2d Cir.1981). First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts. *Picard,* 404 U.S. at 275–76. "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' " *Jones v. Vacco,* 126 F.3d 408, 413 (2d Cir.1997) (quoting *Daye,* 696 F.2d at 191). In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature." *Daye,* 696 F.2d at 192. The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief. *Klein,* 667 F.2d at 282 (internal citations omitted). A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in similar factual situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation. *See Daye,* 696 F.2d at 186; *Irving v. Reid,* 624 F.Supp. 787, 789 (S.D.N.Y.1985).

***7** Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. *See Klein,* 667 F.2d at 282. Otherwise, the claim cannot be considered exhausted. *Id.* A petitioner who fails to exhaust state remedies by pursuing a direct appeal may however satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. *See id.; see also Johnson v. Metz,* 609 F.2d 1052, 1055–56 (2d Cir.1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to C.P.L. § 440.10). If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial. *Klein,* 667 F.2d at 282–83.

After a petitioner has met the threshold requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if such custody was the result of a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a state court has decided a claim on the merits, the federal court must apply AEDPA's deferential standard of review. *See Torres v. Berbary,* 340 F.3d 63, 67–68 (2d Cir.2003). Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if [it] arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law." *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000). An "unreasonable application" of Supreme Court precedent is one that "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.,* at 413. While "it is clear that the question is whether the state court's application of clearly established federal law was objectively unreasonable, the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is less clear." *Torres,* 340 F.3d at 68–69 (internal quotation marks and citations omitted); *see Williams,* 529 U.S. at 409. "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Id.,* at 410. Therefore, to establish the objective unreasonableness of a holding, a petitioner "must identify some increment of incorrectness beyond error." *Torres,* 340 F.3d at 68–69 (internal quotation marks and citations omitted). When evaluating whether a decision is "based on an unreasonable determination of the facts in light of the evidence", 28 U.S.C. § 2254(d)(1), the factual findings of state courts are presumed to be correct. *Nelson v. Walker,* 121 F.3d 828, 833 (2d Cir.1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

***8** A federal court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman,* 501 U.S. at 729. For instance, federal habeas review of a federal claim is unavailable where "a state court declined to [address such claim] because the prisoner had failed to meet a state procedural requirement." *Id.* at 730. Such procedural bar provided the state "independent and adequate state grounds" to dismiss the petitioner's claim, and federal courts are ever mindful of the notions of "comity and federalism." *Harris v. Reed,* 489 U.S. 255, 260 (1989); *Coleman,* 501 U.S. at 730. Restated, "an adequate and independent finding of a procedural default will bar federal habeas review of the federal claim." *Harris,* 489 U.S. at 262.

A petitioner can overcome a procedural default through a showing of cause for the default and prejudice resulting therefrom. *Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir.2001); *see Coleman,* 501 U.S. at 748–50. For instance, a petitioner may establish cause through a showing of "lack of counsel, incapacity, or some interference by officials." *Id.* at 744. Additionally, "[a] habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he [or she] is actually innocent of the crime for which he [or she] has been convicted." *Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir.2002); *see Schlup v. Delo,* 533 U.S. 298, 321 (1995).

**B. Petitioner's Challenge to the Competency Determinations**

During the pendency of petitioner's criminal cases, he spent significant periods of time committed to the custody of OMH and confined at the MHFPC based upon determinations by the County Court judge that he lacked the legal competency to stand trial. Petitioner asserts that he has never lacked mental capacity and now hopes to challenge the numerous New York state court orders (1) adjudicating him a legally incompetent individual, (2) committing him to the custody of OMH, and (3) permitting OMH to administer psychiatric medication over his objection. He asserts that the New York state courts did not afford him sufficient due process to challenge or appeal such determinations, thereby violating his rights under the sixth, eighth, and fourteenth amendments to the United States Constitution. *See* Docket Entry # 4, Amended Petition at 4. He also claims that the psychological evaluations were conducted in an arbitrary and racially discriminatory manner. *Id.* at 6. The State correctly counters that, because petitioner has been released from the MHPFC, the claim no longer presents an Article III case or controversy, and, therefore, the issues are moot. Docket Entry # 21, Attach. 1, Respondent's Mem. of Law at 3.

An individual's "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas,* 441 U.S. 418, 425 (1979). A federal petition for a writ of habeas corpus, following the exhaustion of all available state remedies, is the proper vehicle by which an individual can challenge his or her involuntary commitment or retention in a mental institution. *Buthy v. Commissioner of Office of Mental Health of New York State,* 818 F.2d 1046, 1051 (2d Cir.1987).

***9** Article III, § 2 of the United States Constitution limits federal courts to adjudicating only ongoing cases or controversies—a requirement that "subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v.*

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Continental Bank Corp., 494 U.S. 472, 477 (1990). Therefore, "[t]o invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* at 477; *United States v. Mercurris,* 192 F.3d 290, 293 (2d Cir.1999). A case becomes moot "when the issues presented are no longer 'live' or the parties 'lack a legally cognizable interest in the outcome.' " *Blackwelder v. Safnauer,* 866 F.2d 548, 551 (2d Cir.1989) (quoting *Murphy v. Hunt,* 455 U.S. 478, 481 (1982)).

Petitioner is no longer subject to any of the orders that he seeks to challenge because he has been released from the custody of OMH. Further, the County Court judge cannot place petitioner back in the custody of OMH pursuant to C.P.L, § 730.40 in these cases because petitioner has pleaded guilty and was sentenced. Because this Court cannot now release petitioner from such custody, there is no "actual injury which is likely to be redressed by a favorable judicial decision," *Mercurris,* 192 F.3d at 293, sufficient to satisfy Article III, and, thus, the issue is moot. *See Hunter v. Gipson,* 534 F.Supp.2d 395, 399 (W.D.N.Y.2008) (petitioner's federal habeas challenge to a state court order confining him for competency evaluation in the context of a state criminal prosecution is mooted by his release from such confinement and the termination of the state criminal proceeding).

In addition, because petitioner pleaded guilty in both criminal cases, he cannot now challenge the competency determinations and related orders which came prior to the plea. *United States v. Coffin,* 76 F.3d 494, 497 (2d Cir.1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He [or she] may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he [or she] received from counsel was not within [acceptable] standards.' " (quoting *Tollett v. Henderson,* 411 U.S. 258, 267(1973) [alteration in original] )). In sum, because petitioner's arguments are moot, the Court cannot now address their merits, and, accordingly, I respectfully recommend that the claims be dismissed.

**C. Petitioner's Challenges to his Pleas and Sentences**

Petitioner also raises an array of other claims concerning the pre-trial proceedings, the voluntariness of his guilty pleas, and the sentences imposed. Insofar as petitioner raises arguments concerning events preceding his guilty pleas, he contends that (1) the State improperly prevented him from testifying in or presenting evidence in any of the grand jury proceedings, (2) the grand juries were not drawn from a fair cross section of the community, (3) the State violated his right to a speedy trial under the United States Constitution and C.P.L. § 30.30, (4) the State brought the underlying prosecutions beyond the statute of limitations, and (5) the County Court judge improperly deprived him of his right to proceed pro se. *See* Docket Entry # 4, Amended Petition at 4–8. Such claims are barred from federal habeas review by petitioner's guilty pleas.

***10** In the context of a conviction reached by guilty plea, "[t]he focus of a federal habeas inquiry is in the nature of the advice [of counsel] and the voluntariness of the plea, not the existence of a antecedent constitutional infirmity." *Tollett,* 411 U.S. at 266; accord *Whitehead v. Senkowski,* 943 F.2d 230, 233 (2d Cir.1991). Because petitioner pleaded guilty in open court, he may not now "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea[s]." *Tollett,* 411 U.S. at 267. Therefore, petitioner's claims concerning the grand jury proceedings, the denial of his application to proceed pro se, his right to a speedy trial, and the statute of limitations are barred unless he successfully attacks "the voluntary and intelligent character of the guilty plea[s]." *Id.; see Coffin,* 76 F.3d at 497.

Petitioner challenges the validity of his guilty pleas, essentially arguing that he did not enter the subject guilty pleas and waivers of appeal voluntarily. *See* Docket Entry # 4, Amended Petition at 8. He avers that the County Court judge, the prosecutor, and his defense counsel coerced him into pleading guilty by keeping him confined in perpetuity at the MHFPC as a legally incompetent defendant unless he entered such pleas and waived his rights to appeal. *See id.* Petitioner cites no evidence, in or outside of the record, to support such conclusory allegations. In opposition, the State argues that petitioner's claim is not properly exhausted, but it essentially asks the court to deem the claim exhausted and procedurally defaulted. Docket Entry # 21, Attach. 1, Respondent's Mem. of Law at 12–13. Although petitioner's claim is unexhausted, the Court will deem it exhausted because petitioner is without available remedy in state court. However, petitioner's failure to adequately raise the claim on direct appeal or by collateral attack constitutes a procedural default, and, consequently, the claim should be dismissed. *See Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991).

In addressing the exhaustion requirement of § 2254(b), "a federal habeas court need not require that a federal claim be

presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris,* 489 U.S. at 263 n. 9. In such a situation, the court may deem the claim exhausted because the petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991).

Here, petitioner has not "fairly presented," *Picard,* 404 U.S. at 275–76, his federal constitutional claim challenging the voluntariness of his guilty pleas on direct appeal or collateral attack in a manner sufficient to alert the state courts of its federal nature, and, consequently, the claim is unexhausted. *See Daye,* 696 F.2d at 192. Despite waiving his rights to appeal, petitioner "retain[ed] the right to challenge the legality of the sentence or the voluntariness of the plea." *People v. Seaberg,* 74 N.Y.2d 1, 10 (1989); *People v. Hansen,* 95 N.Y.2d 227, 231 n. 2 (2000) ("A defendant may raise, after a guilty plea, certain constitutional claims such as the voluntariness of a plea"). [3] In New York, even in the presence of a waiver of appeal, "an unfair bargain or one coerced to conceal error or misconduct ... is subject to vacatur on direct appeal or by appropriate posttrial proceedings." *Seaberg,* 74 N.Y.2d at 11. Petitioner relies on no evidence outside of the record to support his claim that the County Court judge, the prosecutor, and his attorney coerced him to plead guilty; thus, the charge could have been raised on direct appeal. Although petitioner filed a timely notice of appeal from the judgment, he never perfected such direct appeal to the Appellate Division of the Supreme Court, and, as discussed infra, any effort to now do so would be rejected as untimely. Further, petitioner has not brought the claim before any New York court by means of a collateral attack on his conviction. Although petitioner did move to vacate the judgment, pursuant to C.P.L. § 440.10, he did not argue that his plea had been coerced; instead he argued that (1) he did not have full knowledge of the consequences of his pleas, asserting that his attorney failed to apprise him of the likely resulting immigration consequences; (2) the State produced no evidence of his guilt at trial; and (3) his attorney failed to argue that he did not resist arrest. Affid. in Supp. of Mot to Vacate Judgment. Petitioner also failed to appeal his conviction to New York's highest court. *See Klein,* 667 F.2d at 282. Accordingly, his claim is unexhausted and therefore is not eligible for federal habeas review.

***11** New York procedural rules afford petitioner no remedies on his claim. According to the rules of the Second Department of the Appellate Division, petitioner was required to perfect his appeal within nine months of the filing of his notice of appeal, 22 NYCRR 670.8(f), which petitioner had to have filed within thirty days of the imposition of the sentence. C.P.L. § 460.10(1)(a). The County Court judge sentenced petitioner on December 2, 2009, meaning that his notice of appeal was filed not later than January 2, 2010. Therefore, the date by which petitioner must have perfected his appeal was October 2, 2010, a date which has long since come and gone. Consequently, any attempt to now perfect such appeal would be rejected as untimely. State collateral review of the claim pursuant to C.P.L. § 440.10 is barred because petitioner could have raised it (1) on direct appeal, *see* C.P.L. § 440.10(2)(c) (barring review of a claim that could have been raised on direct appeal), or (2) in his previous motion to vacate the judgment. *See* C.P.L. § 440.10(3)(c) (permitting dismissal of a claim that the defendant could have but failed to raise in a previous motion made pursuant to C.P.L. § 440.10). Therefore, petitioner's return to state court on the current claim would bear no fruit. Because petitioner has no "remedies available" in New York state courts, this Court will deem his claim exhausted for purposes of presenting it in a federal habeas petition. *See Harris,* 489 U.S. at 263 n. 9; *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *See Grey,* 933 F.2d at 120–21.

New York has an "interest in the integrity of its rules and proceedings and the finality of its judgments, an interest that would be undermined if the federal courts were too free to ignore procedural forfeitures in state court." *Reed v. Ross,* 468 U.S. 1, 10 (1984). "Each State's complement of procedural rules facilitates this complex process, channeling, to the extent possible, the resolution of various types of questions to the stage of the judicial process at which they can be resolved most fairly and efficiently." *Id.* at 10. "Failure to raise a claim on appeal reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to review trial error, and 'undercut[s] the State's ability to enforce its procedural rules.' " *Murray v. Carrier,* 477 U.S. 478, 491 (1986) (quoting *Engle v. Isaac,* 456 U.S. 107, 129(1982)). Accordingly, petitioner's failure to raise his claim on direct appeal or collateral attack, although he was able to do so, bars it from full state court review, thereby barring it from federal habeas review. *See Clark v. Perez,* 510 F.3d 382, 393 (2d Cir.2008) (state court's dismissal of claim on collateral attack pursuant to C.P.L. § 440.10(2)(c) constituted an adequate state procedural bar to federal habeas review of the claim); *Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir.2001); *Grey,* 933 F.2d at 120; *Kimbrough v. Bradt,* 949 F.Supp.2d 341, 2013 WL 2545379 (N.D.N.Y.2013) ( "Where a petitioner has failed to exhaust his federal claims, but the state court to which

he must present those claims would find them procedurally barred, a federal habeas court must deem the claims to be exhausted and procedurally defaulted."); *Pettigrew v. Bezio,* 2012 WL 1714934 W.D.N.Y.2012) (petitioner's habeas challenge to voluntariness of his guilty plea was procedurally defaulted because he failed to raise the record-based claim on direct appeal, without justification, and a collateral attack would be dismissed for failure to raise the claim on direct appeal).

***12** Further, petitioner makes no showing of cause and prejudice or actual innocence sufficient to excuse his procedural default of the claim. *See Murray,* 477 U.S. at 489–97. In the section of the petition form labeled "Timeliness of Petition," petitioner stated: "I have no exhaustion remedy nor a time limit as the State Court of Appeal denied me these rights under the 4th, 6th, 8th, 13th, and 14th Amendments due process clause which invoke Federal Court Jurisdiction to hear my petition." Docket Entry # 4, Amended Petition at 9. Such conclusory assertion is not sufficient to excuse his failure to properly raise his claim in state court.

Petitioner also argues that his sentences, which consisted of three and one-half years in prison and three years post-release supervision, were improper because they exceeded the terms promised by the County Court judge prior to entry of his guilty pleas. *See id.* Petitioner claims that the judge promised him three years imprisonment, with no term of post-release supervision, prior to the entry of his guilty pleas. A challenge to the legality of a sentence survives a valid waiver of appeal. *Callahan,* 80 N.Y.2d at 280–81, and, therefore, petitioner could have raised this claim on direct appeal but failed to do so. Further, despite raising the subject claim in his motion, pursuant to C.P.L. § 440.20, to vacate his sentences, petitioner failed to properly move for leave to appeal from the County Court judge's order denying his motion to vacate the sentence. Accordingly, the claims are unexhausted. Any direct appeal from the judgment or motion for leave to appeal from the denial of petitioner's C.P.L. § 440.20 motion are procedurally barred as untimely, and, consequently, petitioner is without remedy in state court. Therefore, the Court deems the claim exhausted and, like his challenge to the validity of his guilty pleas, the claim is procedurally defaulted. *See Clark,* 510 F.3d at 393; *Grey,* 933 F.2d at 120. Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that petitioner's claims are procedurally defaulted and should be dismissed.

### *IV. CONCLUSION*

For the reasons stated above, 1 conclude, and respectfully recommend that Your Honor should conclude, that the application for a writ of habeas corpus be denied and the petition be dismissed. As the petition presents no questions of substance for review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue. *Rodriguez v. Scully,* 905 F.2d 24 (2d Cir.1990) (*per curiam* ); *Alexander v. Harris,* 595 F.2d 87, 90–91 (2d Cir.1979). I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. § 1915(a) that an appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438 (1962).

### *NOTICE*

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed.R.Civ.P. 72(b), the parties shall have fourteen (34) days, plus an additional three (3) days, pursuant to Fed.R.Civ.P. 6(e), or a total of seventeen (17) days, *see* Fed.R.Civ.P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Deborah A. Batts at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, N.Y. 10007, and to the Chambers of the undersigned at the Hon. Charles L. Brieant Jr. Federal Building and Courthouse, 300 Quarropas Street, White Plains, New York, 10601. Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

***13** Requests for extensions of time to file objections must be made to Judge Batts, and should not be made to the undersigned.

### All Citations

Not Reported in F.Supp.3d, 2014 WL 785690

## Footnotes

1 Due process prohibits the conviction of a legally incompetent individual. *Pate v. Robinson,* 383 U.S. 375, 378 (1966). To be deemed legally competent to stand trial, a criminal defendant must have (1) "sufficient present ability to consult with his [or her] lawyer with a reasonable degree of rational understanding" and (2) "a rational as well as factual understanding of the proceedings against him [or her]." *Dusky v. United States,* 362 U.S. 402, 402 (1960). Due process requires that a judge, upon learning of a reason to question a defendant's competency, afford the defendant an adequate hearing on the issue of his or her competency to stand trial. *Pate,* 383 U.S. at 387.

New York's procedural framework for assessing a criminal defendant's mental capacity to stand trial is set forth in C.P.L. § 730.10 et seq. A court "must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person." C.P.L. § 730.30(1). Upon the issuance of such an order, a qualified psychiatrist or psychologist evaluates the defendant and submits his or her findings to the court and parties. C.P.L. §§ 730 .20(1), (5). In some circumstances, the court may hold a hearing on the issue. C.P.L. § 730.20(2). Where the court determines "that the defendant is an incapacitated person, ... such court must issue a final or temporary order of observation committing him or her to the custody of the commissioner for care and treatment in an appropriate institution ..." C.P.L. § 730.40(1)

2 One of the submissions took the form of a 42 U.S.C. § 1983 complaint. Because it contained challenges to petitioner's detention resembling those in his § 2254 petitions, the District Court treated it as a § 2254 petition.

3 In some instances, a defendant, who has waived his right to appeal must first move in the trial court, pursuant to C.P.L. § 440.10, to vacate the judgment prior to challenging the voluntariness of a guilty plea on direct appeal. *See* *People v. Lopez,* 71 N.Y.2d 662, 665–66 (1988); *People v. Hilliard,* 39 AD3d 1021, 1022 (3d Dept.2007); *People v. Peterson,* 35 AD3d 1195, 1196 (4th Dept.2006) ("Although the contention of defendant that his plea was not knowingly, voluntarily or intelligently entered survives the waiver of the right to appeal, by failing to move to withdraw his plea or to vacate the judgment, defendant failed to preserve that contention for our review" (internal citations omitted)); *People v. DeJesus,* 248 A.D.2d 1023 (4th Dept.1998). Such requirement ensures that "the trial court [has] the opportunity to address the perceived error and to take corrective measures, if needed." *Lopez,* 71 N.Y.2d at 665–66. Upon the denial of the motion to vacate the judgment, the defendant may then raise the issue before the Appellate Division of the Supreme Court through (1) a direct appeal from the judgment of conviction, *see* C.P.L. § 450.10(1), or (2) a motion for leave to appeal to the Appellate Division from the order denying the motion to vacate a judgment of conviction. *See* C.P.L. § 450.15(1). However, where, at the time of the plea, the trial court is on notice of the dispute concerning its voluntariness but fails to sufficiently inquire as to the issue, the defendant need not move to vacate the judgment prior to a direct appeal because the trial court judge was already afforded a full opportunity to cure the alleged deficiency. *Lopez,* 71 N.Y.2d at 666. Here, petitioner claims that the County Court judge coerced him to involuntarily plead guilty. Petitioner's claim that the County Court judge coerced him into pleading guilty against his will is based upon the knowledge and acts of that judge. Therefore, a motion, pursuant to C.P.L. § 440.10, to vacate the judgment on voluntariness grounds before that same judge would not have enlightened the judge with further information leading to a reconsideration of the voluntariness of the guilty pleas. Such a motion would have been fruitless and, thus, unnecessary to preserve the claim.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 5550047
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Lillian RIVERA, Petitioner,
v.
Sabrina KAPLAN, Respondent.

17-CV-2257 (RA)(SN)
|
Signed 07/20/2020

**Attorneys and Law Firms**

Lillian Rivera, Bedford Hills, NY, pro se.

Paul Bernard Lyons, New York, NY, for Respondent.

**REPORT AND RECOMMENDATION**

SARAH NETBURN, United States Magistrate Judge.

***1 TO THE HONORABLE RONNIE ABRAMS:** Petitioner Lillian Rivera, proceeding *pro se*, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 2 (the "Petition"). Rivera is serving an aggregate sentence of twenty-five years after being convicted of conspiracy in the second degree, criminal possession of a controlled substance in the first and third degrees, and criminal sale of a controlled substance in the third degree. In support of the Petition, Rivera raises numerous arguments concerning purported violations of her constitutional rights. On April 10, 2018, the Honorable Ronnie Abrams referred the Petition to me for a report and recommendation. ECF No. 15. Because I find that each of Rivera's arguments is either procedurally barred, non-cognizable, or without merit, I recommend the Court dismiss the Petition in its entirety.

**BACKGROUND**

**I. Investigation and Pretrial Proceedings**

Beginning in June 2007, the New York City Police Department investigated a large-scale cocaine dealing operation led by Rivera. See ECF No. 21-7 at 88–89, 95–99. On July 11, 2008, a New York County grand jury charged Rivera, along with co-defendants Mario Bracero, William Rivera, Candido Gonzalez, Aaron Gonder, Joseph Ramirez, and Benny Garay, with Conspiracy in the Second Degree (N.Y. Penal Law § 105.15) based on conduct from August 29, 2007, through March 7, 2008. See ECF No. 21-2 at 29–40. Rivera was also charged, either alone or with one or more co-defendants, with one count of Criminal Possession of a Controlled Substance in the First Degree (N.Y. Penal Law § 220.21(1)); five counts of Criminal Sale of a Controlled Substance in the Third Degree (id. § 220.39(1)); six counts of Criminal Possession of a Controlled Substance in the Third Degree (id. § 220.16(1)); two counts of Criminal Possession of a Controlled Substance in the Fourth Degree (id. § 220.09(1)); and two counts of Criminal Possession of a Controlled Substance in the Fifth Degree (id. § 220.06(5)). ECF No. 21-2 at 52-60.

In May 2009, before trial, Rivera moved to suppress any testimony or physical evidence obtained through video surveillance, pen registers, or recordings of telephone conversations obtained through wiretaps. See ECF No. 21-2 at 88. Rivera also moved to suppress any evidence of physical property—including testimony about such property—allegedly seized from her upon arrest. Id. On August 5, 2009, New York County Supreme Court Justice Gregory Carro denied Rivera's suppression motions without a hearing. Id. at 74–87. Briefly, in denying the motion to suppress evidence obtained through video surveillance, Justice Carro held that because the investigative surveillance cameras used were focused exclusively on public areas, Rivera could not make the required showing of a legitimate expectation of privacy. Id. at 77. With respect to evidence obtained by wiretapping, Justice Carro held, among other things, that the warrant authorizing the wiretapping met the exhaustion standard set forth under C.P.L. § 700.15(4) based on the affidavits of New York Police Department Detectives David Salvador and John McSherry. Id. at 78–79. Justice Carro also held that the warrant authorizing the use of a pen register and the collection of cell site location data was constitutional because the authorization was of reasonable duration and described with particularity and also because Rivera did not allege a reasonable expectation of privacy in her cell site location data. Id. at 83. Finally, with regard to the motion to suppress physical evidence, Justice Carro held that Rivera's application presented only a "general claim" attacking the "underlying basis" of the search warrants leading to the seizure of the physical evidence and that such an unsupported objection was grounds for denial of the motion. Id. at 84–87.

**II. Trial**

***2** The trial of Rivera, Benny Garay, and Mario Bracero began on April 6, 2010, before Justice Carro in the Supreme Court of the State of New York, New York County. See ECF No. 21-6 at 96. On the second day of voir dire, Bracero pleaded guilty. Id. at 257–61, 269–276.

**A. The Prosecution's Case** [1]

In 2007, the New York City Police Department ("NYPD") initiated an investigation into a possible cocaine dealing operation based in the Dyckman Housing Project on the Upper West Side of Manhattan. See Tr. at 95–100, 1365–69, 1426 – 30, 1715–19.[2] The investigation consisted of undercover purchases of crack cocaine, surveillance, wiretapping, and analysis of cell site location information. For example, Undercover Officer 0096 ("UC 96") carried out several purchases of crack cocaine from Rivera: on November 14, 2007, UC 96 purchased ten "twists" of crack from Rivera for $100; on November 19, 2007, UC 96 purchased 16 "clips" from Rivera for $160; on December 3, 2007, UC 96 exchanged $20 for 20 twists of crack from Rivera; and, on December 10, 2007, UC 96 purchased ten clear bags of powdered cocaine from Rivera for $200. Tr. at 546–52, 558–77, 583–87, 614.

In February 2008, the NYPD obtained eavesdropping warrants for a cell phone belonging to Julian Silva, whom the investigation revealed supplied cocaine to Rivera. ECF No. 21-3 at 164 n.7; ECF No. 21-4 at 93. On March 7, 2008, surveillance and intercepted telephone calls revealed that Rivera planned to procure a kilogram of cocaine from Silva that afternoon. Tr. at 1833–44. After additional surveillance and communication between officers, Detective Salvador, along with other NYPD detectives, concluded that Rivera and Silva's cousin were consummating the cocaine sale at a location near the Dyckman Houses. Tr. at 1868, 1873–76, 1878, 1999. Detectives followed Rivera and Garay as they traveled together in one car from Rivera's apartment building at 2181 Wallace Avenue to the nearby transaction location and back. Id.

Upon returning to her apartment building, Rivera exited a car driven by Garay and entered the building, at which time detectives observed her holding a "white and blue bag" in the shape of a rectangle. Tr. at 1751–55, 1769–71. Garay parked and followed Rivera into the building. Tr. at 1755. About thirty minutes later, Garay emerged from the building, got back in the car, and drove a short distance before Detectives Salvador and Hourican stopped him, arrested him, frisked him, and placed him in the detectives' car. Tr. at 1448-53, 1887–90. Detective Hourican later searched Garay and recovered a quantity of cocaine wrapped in a dollar bill, as well as $2,478 in cash. Tr. at 1456-59, 1485–87, 1615–17. At about the same time, Detective McLoughlin observed Rivera leave the building, walking her dog. Tr. at 1755–56. He immediately notified Detective Salvador, who drove around the block, saw Rivera with her dog, and arrested her. Tr. at 1453–54, 1476, 1891–93. Detectives immediately searched Rivera and recovered cash, a set of keys, a wallet, and "personal papers." Tr. at 1477–79, 1487–90, 1495–96, 1898–99, 1912–17.

***3** Shortly thereafter, Detective Salvador and other officers executed a search warrant at Apartment 1L at 2181 Wallace Avenue (the "Apartment"), where they found Rivera's brother, William Rivera, whom they also arrested. Tr. at 1758, 1903–04, 1923–27, 1934–37, 2065–66. The officers determined that one of the keys recovered from Rivera upon arrest opened a padlock to a bedroom in the Apartment. See Tr. at 1905, 1911, 1922. Officers searched the bedroom and found a brick of cocaine wrapped in plastic and concealed in a shoebox, as well as drug-packaging materials and multiple items associated with Rivera including her clothing, personal papers, and photographs. Tr. at 1467–68 1904–05, 1908–10, 1922, 2039–40. The same day, Detective Salvador also arrested three other individuals whom the investigaion linked to the Apartment, including one individual from whom undercover officers had made cocaine purchases. Tr. at 91–92.

**B. The Jury Verdict and Sentence**

On May 13, 2010, the jury returned a verdict convicting Rivera of conspiracy in the second degree, criminal possession of a controlled substance in the first and third degrees, and five counts of criminal sale of a controlled substance in the third degree. See ECF No. 21-2 at 28; ECF No. 21-9 at 743–49. On June 23, 2010, Justice Carro sentenced Rivera to an indeterminate term of imprisonment of 5 to 15 years on the conspiracy count, to run consecutively to a determinate prison term of 20 years and 5 years of post-release supervision on the first-degree drug possession count, along with lesser concurrent terms on the remaining drug counts, for an aggregate sentence of 25 years. ECF No. 21-9 at 787–88.

**V. Post-Conviction Proceedings**

**A. Direct Appeal**

Rivera, by counsel, timely appealed her conviction to the Appellate Division, First Department on the following grounds: (1) the evidence presented at trial was insufficient to support Rivera's possession conviction, which was against the weight of the evidence; (2) the trial court erroneously denied Rivera a pretrial hearing to determine whether there was probable cause for her arrest and whether the physical evidence from her apartment was lawfully obtained; (3) her sentence of twenty-five years was unduly harsh and excessive; (4) the state court erroneously denied Rivera's motion for a severance, based on statements made during Rivera's co-defendant's summation; (5) the state court improperly admitted evidence including testimony and physical evidence portraying Rivera, and her co-conspirators, as violent; (6) the trial court erred by admitting evidence obtained by wiretapping; (7) the prosecution improperly withheld from the defense and only belatedly produced certain documents; and (8) the trial court erred by closing the courtroom to the public during the testimony of certain undercover officers, violating Rivera's right to a public trial. See ECF No. 21-3 at 134 through ECF No. 21-4 at 71.

The Appellate Division unanimously affirmed Rivera's judgment of conviction. People v. Rivera, 128 A.D.3d 473 (1st Dep't 2015), lv. denied, 27 N.Y.3d 1005 (2016). The Appellate Division held that the verdict was based on legally sufficient evidence and was not against the weight of the evidence, as "[t]he evidence, including intercepted communications and circumstantial proof, amply demonstrate[d] that [petitioner], the leader of a large-scale drug trafficking operation, personally acquired a kilogram of cocaine." Id. at 473. The Appellate Division also found that the trial court had properly denied, without a hearing, the suppression motion in connection with Rivera's arrest and the search of her apartment, as well as the suppression motion as to the wiretap warrants. Id. at 473–74.

The Appellate Division also held that the trial court properly exercised its discretion in denying Rivera's end-of-trial severance motion based on Garay's allegedly antagonistic defenses presented on summation. Id. The Appellate Division found that Rivera's motion was untimely, that she had failed to show good cause for her failure to make a timely motion, and that she had failed to demonstrate that her and Garay's defenses had become so antagonistic as to require separate trials. Id. at 474. Regarding Rivera's arguments related to the improper admission of certain evidence, the Appellate Division held that the trial court "properly exercised its discretion in receiving the various items of evidence challenged by [Rivera], and none of [the] evidence deprived her of a fair trial." Id. The Appellate Division further found that Rivera had "not established that she was prejudiced by any late disclosure of discovery material." Id. Finally, the Appellate Division "perceive[d] no basis for reducing [Rivera's] sentence." Id. at 475.

***4** Rivera filed an application for leave to appeal her conviction to the New York Court of Appeals. ECF No. 21-4 at 246–55. On April 5, 2016, the Court of Appeals denied leave. People v. Rivera, 27 N.Y.3d 1005 (2016) (table decision).

**B. Motion to Vacate Under CPL § 441.10**

Rivera, acting *pro se*, filed a motion to vacate her conviction under CPL § 440.10 on April 5, 2017 (the "440 Motion"). ECF No. 21-4 at 266. Rivera raised numerous arguments in support of her motion, specifically: (1) the trial court improperly denied her severance motion; (2) the trial court violated her right to confront witnesses by admitting various evidence consisting of hearsay; (3) the trial court and the prosecutor acted as "unsworn witnesses" against her, in violation of her "right to a fair trial"; (4) certain testimony violated the presumption of innocence; (5) multiple exhibits were admitted in violation of various evidentiary rules; (6) her trial counsel was ineffective for various reasons; (7) the trial court and the prosecutor engaged in misconduct in connection with the criminal complaint and search warrants; (8) the trial court improperly denied a hearing regarding her motion to suppress the search warrants; (9) the trial court improperly composed the jury by using an alternate juror; (10) the admission of wiretaps violated her Fourth Amendment rights; (11) the prosecutor violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose evidence of Garay's proffer session with the prosecution; (12) the prosecutor improperly employed evidence of criminal charges that had terminated in Rivera's favor; and (13) the trial court failed to act on Rivera's mid-trial complaints about her counsel.

On October 4, 2017, Justice Carro issued a decision denying Rivera's motion in its entirety. In sum, the 440 Court found that most of Rivera's claims were record-based and barred under CPL § 440.10(2)(c) because Rivera did not raise them on direct appeal. See ECF No. 21-5 at 148–51. In the alternative, the 440 Court also found that all of the claims were meritless, describing in some detail the deficiencies in the claims.

### C. *Habeas Corpus* Petition Under 28 U.S.C. § 2254

Rivera filed the Petition on March 27, 2017. See ECF No. 2. [3] In July 2017, this Court granted Rivera's request for a stay of the proceedings to allow her to file the 440 Motion. ECF No. 8. When the 440 Motion was denied, this Court lifted the stay and entered a briefing schedule for Respondent's opposition and Rivera's reply. ECF No. 12. In June 2018, the Court granted another motion to stay this habeas proceeding pending resolution of Rivera's request for leave to appeal the denial of her 440 Motion. ECF No. 25. The Appellate Division denied that application and on November 7, 2018, this Court lifted the stay on this proceeding. ECF Nos. 26–27. Respondent filed an amended opposition to Rivera's petition on January 22, 2019 (ECF No. 32, "Resp. Mem."), and Rivera filed an amended reply on March 25, 2019 (ECF Nos. 40–41).

## DISCUSSION

***5** *Pro se* submissions, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). In the context of a petition for a writ of habeas corpus, "[i]f a *pro se* litigant pleads facts that would entitle [her] to relief, that petition should not be dismissed because the litigant did not correctly identify the statute or rule of law that provides the relief [s]he seeks." Thompson v. Choinski, 525 F.3d 205, 209 (2d Cir. 2008). In adhering to this standard, I interpret Rivera's Petition "to raise the strongest arguments that [it] suggest[s]." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted). Rivera's *pro se* status, however, "does not exempt [her] from compliance with relevant rules of procedural and substantive law." Id. at 477 (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

Rivera's argument in support of the Petition is nearly word for word the argument she presented in the brief supporting her 440 Motion. Compare ECF No. 2, with ECF No 21-4 at 270–300, ECF No. 25-1 at 1–22. First, Rivera claims that the trial court improperly declined to hold an evidentiary hearing on a motion to suppress her arrest (lacking probable cause) and the search of her apartment. Second, Rivera claims that the trial court improperly denied her motion to suppress wiretap evidence. Third, Rivera argues that the trial court improperly denied the severance motion she made at the close of Garay's summation. Fourth, Rivera argues that the People failed to timely disclose certain information in violation of Brady. Fifth, Rivera argues that trial court's admission of hearsay evidence on multiple occasions violated her right to confront witnesses against her. Sixth, Rivera argues that certain testimony and exhibits were impermissibly admitted at trial. Seventh, Rivera claims ineffective assistance of counsel for her lawyer's failure to object to the admission of certain evidence and for failing to adopt her *pro se* severance motion. Finally, Rivera contests her sentence.

## I. Legal Standards

### A. Timeliness

A state prisoner must seek habeas relief within one year after her conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). This period is tolled during the time when "a properly filed application for State post-conviction or other collateral review ... is pending." 28 U.S.C. § 2244(d)(2). "The time that an application for state post-conviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." Evans v. Chavis, 546 U.S. 189, 191 (2006) (alterations omitted).

On April 5, 2017, New York Court of Appeals denied Rivera's motion seeking leave to appeal the denial of her direct appeal, and her conviction became final on July 4, 2017, when her time for filing a petition for *certiorari* with the U.S. Supreme Court expired. See Clay v. United States, 537 U.S. 522, 532 (2003) (interpreting timeliness under § 2255); see also Supreme Court Rule 13(1) (providing a defendant 90 days following the affirmance of a conviction by the New York Court of Appeals, or the denial of a certificate for permission to appeal, to seek a writ of certiorari). Thus, Rivera's November 15, 2017 Petition was timely filed.

### B. Exhaustion and Procedural Default

As a state prisoner seeking federal habeas relief pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Rivera must show that she has exhausted her Petition's claims by presenting both the factual and legal premises of her claims to the state court. Baldwin v. Reese, 541 U.S. 27, 29 (2004); see also Daye v. Attorney Gen., 696 F.2d 186, 191 (2d Cir. 1982) (en banc). The Court of Appeals has set forth a two-part inquiry to determine exhaustion. See Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005). "First, a federal court must examine whether applicable state court remedies remain available to the petitioner." Id. "Second, ... the federal court must assess whether the petitioner 'properly

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

exhausted those [state] remedies, *i.e.*, whether [petitioner] has fairly presented his [or her] claims to the state courts,' such that the state court had a fair opportunity to act." Id. (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).

***6** To satisfy the exhaustion requirement applicable to habeas actions in New York, a petitioner must have articulated the federal nature of her claims in an appeal to the Appellate Division and then in an application seeking leave to appeal filed with the New York Court of Appeals. See Galdamez, 394 F.3d at 74. In doing, a petitioner may not rely solely on general principles of fairness, but instead must refer to specific constitutional provisions or concepts, even if minimally. See Reid v. Senkowski, 961 F.2d 374, 376 (2d Cir. 1992) (per curiam). "A [petitioner] may, however, fairly present the substance of a federal constitutional claim to the state court without citing book and verse on the federal constitution." Daye, 696 F.2d at 192 (internal quotation marks omitted). Exhaustion simply requires that "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Id.

"The procedural default doctrine protects the integrity of the exhaustion rule, ensuring that state courts receive a legitimate opportunity to pass on a petitioner's federal claims and that federal courts respect the state courts' ability to correct their own mistakes." Id. at 73. Under the doctrine of procedural default, a petitioner cannot claim to have exhausted her remedies "by dint of no longer possessing 'the right under the law of the State to raise, by any available procedure, the question presented,' if at some point the petitioner had that right but failed to exercise it." Id. at 74 (quoting 28 U.S.C. § 2254(c)).

Where a petition contains both exhausted and unexhausted claims, the Court may (1) dismiss the entire petition without prejudice; (2) deny the entire petition on the merits; (3) allow the petitioner to proceed only with any exhausted claims; or (4) in limited circumstances, stay the petition to permit the petitioner to exhaust the unexhausted claims. See 28 U.S.C. § 2254(b)(2); Rhines v. Weber, 544 U.S. 269, 277–278 (2005). A stay "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Id. at 277.

### C. Adequate and Independent State Grounds

"Federal courts considering habeas corpus petitions are generally barred from reviewing the decisions of state courts insofar as those decisions are predicated on adequate and independent state procedural grounds." Messiah v. Duncan, 435 F.3d 186, 195 (2d Cir. 2006). Under New York Criminal Procedure Law § 470.05(2), a defendant must make a contemporaneous objection to an alleged error to preserve that error for appellate review. People v. Jackson, 29 N.Y.3d 18, 22 (2017). Further, "the preservation requirement compels that the argument be 'specifically directed' at the alleged error." People v. Gray, 86 N.Y.2d 10, 19 (1995) (quoting People v. Cona, 49 N.Y.2d 26, 33 n.2 (1979)). Failure to preserve a claim through a contemporaneous objection constitutes an independent and adequate state procedural ground for denying a claim. Downs v. Lape, 657 F.3d 97, 103–04 (2d Cir. 2011). Where a state has rendered a decision pursuant to an adequate and independent state law ground, a federal court will refrain from reviewing the judgment unless the prisoner can demonstrate (1) cause for her default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

### D. Merits Review

Under the AEDPA, where a state court has adjudicated a claim on the merits, a federal court may grant a writ of habeas corpus to a state prisoner only where the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

***7** 28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established federal law when the state court "applies a rule that contradicts the governing law set forth in" a Supreme Court opinion or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405–06 (2000). Federal law is "clearly established" when it is expressed in "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." Howes v. Fields, 565 U.S. 499, 505 (2012) (internal quotation marks omitted). When a petitioner raises an issue that the Supreme Court has not "squarely address[ed]" or "clear[ly] answer[ed]," habeas relief is unavailable. Wright v. Van Patten, 552 U.S. 120, 125–26 (2008).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

A state court's decision is "unreasonable" when the decision is "more than incorrect or erroneous" and is "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003). A petitioner must demonstrate that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). Notwithstanding this deferential standard, federal courts must independently evaluate whether a constitutional violation has occurred. See Wright v. West, 505 U.S. 277, 305 (1992) (O'Connor, J., concurring) ("We have always held that federal courts, even on habeas, have an independent obligation to say what the law is.").

## II. Rivera's Claims

### A. Denial of Rivera's Motion to Suppress

Rivera claims that the trial court violated her constitutional rights by denying—without a hearing—her motion to suppress evidence obtained from her arrest, a subsequent search of apartment 1L [4] at 2181 Wallace Avenue in the Bronx, NY (the "Apartment"), and the wiretaps.

### 1. Background

On March 7, 2008, police executed a search warrant on the Apartment based on Detective Salvador's affidavit and found $5,000 and one kilogram of cocaine. Earlier that day, Detective Salvador and Detective Torres had arrested Rivera, suspecting she had acquired a kilogram of cocaine. ECF No. 21-8 at 646–47. Before trial, on May 13, 2009, Rivera moved to suppress, among other things, the items recovered from the Apartment and from her person upon arrest. Justice Carro denied the motion without a hearing. In his written opinion, Justice Carro stated that the probable cause for Rivera's arrest had been established based on her alleged involvement in a conspiracy to sell and possess cocaine. Justice Carro also held that because the Detective Salvador's allegations established that Rivera's connection to the apartment was rooted solely in activities related to the cocaine-dealing enterprise, Rivera's expectation of privacy in the premises was not objectively reasonable for purposes of the Fourth Amendment. The Appellate Division, denying Rivera's motion on direct appeal, stated:

> ***8** The court properly denied [Rivera's] suppression motion without granting a hearing. With regard to the search of [Rivera's] person, the issues are similar to those raised on the co-defendant's unsuccessful appeal to this Court, and we similarly reject [Rivera's] arguments. With respect to the execution of a search warrant at the apartment where the kilogram of cocaine was found, the motion court correctly determined that [Rivera] did not establish standing, and alternatively did not establish any legal basis for challenging the validity of the warrant.

Rivera, 128 A.D.3d at 473–74 (citing People v. Garay, 107 A.D.3d 580, 581 (1st Dep't 2013), aff'd, 25 N.Y.3d 62 (2015)). The Court of Appeals denied Rivera's application for leave to appeal. People v. Rivera, 27 N.Y.3d 1005 (2016) (table decision). Rivera later challenged the trial court's decision in her § 440.10 motion, which the 440 Court denied, finding that the claim had already been addressed on direct appeal. See ECF No. 21-5 at 149.

### 1. Arrest and Search Warrant

In this Petition, Rivera claims—as she did on direct appeal —that the trial court violated her constitutional rights by denying, without a hearing, her motions to suppress: (1) evidence recovered from her person following her arrest and (2) evidence recovered from the search of the Apartment. Rivera argues her arrest lacked probable cause and the search warrant both lacked probable cause and was based on false information. In addition, the Petition asserts (as does Rivera's § 440.10 motion) that the search warrant application for the Apartment relied in part "upon Petitioner's prior bad acts that had actually terminated in her favor," in violation of the sealing requirements of CPL § 160.50.

First, these claims are barred from habeas review under Stone v. Powell, 428 U.S. 465, (1976). "[W]here the State has provided an opportunity for full and fair litigation of the Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 481–82. Stone applies to all Fourth Amendment claims—such as challenges to arrests or searches based on less than probable cause—and applies regardless of the nature of the evidence a defendant seeks to suppress. See Cardwell v. Taylor, 461 U.S. 571, 572–73 (1983) (per curiam). This is so even where a petitioner frames her grounds for relief without explicitly referring to the Fourth Amendment. See Salcedo v. Smith, 05-cv-3497 (JGK), 2006 WL 1644700, at *3 n.1 (S.D.N.Y. June 13, 2006) ("If the substance of the claim is a Fourth Amendment claim, Stone applies even if the claim is also characterized as a due process claim."); Ferron v. Goord, 255 F. Supp. 2d 127, 132-33 (W.D.N.Y. 2003) ("[Petitioner] cannot avoid the outcome required by Stone by phrasing his Fourth Amendment claim in terms of a due process violation").

The Court of Appeals has developed a standard to determine when a state prisoner has been denied the opportunity to litigate required under Stone. See Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992). Under this standard, collateral review of Fourth Amendment claims in habeas petitions is appropriate only in two instances: (1) if the state provides no corrective procedures at all to redress Fourth Amendment violations; or (2) where the state provides the process but in fact the defendant is precluded from using it by reason of an unconscionable breakdown in that process. Id.

Courts in this Circuit have expressly approved New York's procedure permitting a criminal defendant to file a pre-trial motion under N.Y. Crim. Pro. Law § 710.10 to suppress evidence unlawfully seized as an "opportunity" to litigate Fourth Amendment claims. Id. at 70 n.1 (quoting Holmes v. Scully, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)). The denial of a motion for an evidentiary hearing does not, by itself, negate the fact that adequate state law procedures exist. See Amin v. Hulihan, 10-cv-2293 (PKC), 2016 WL 6068128, at *8 (E.D.N.Y. Oct. 13, 2016).

***9** Rivera was provided a full opportunity to litigate her challenges under the Fourth Amendment to her arrest and the searches of her person and the Apartment. Rivera does not challenge that she was not given an "opportunity" to litigate her claims— nor could she: she filed a pretrial motion to suppress (raising all but one of these claims [5]) pursuant to Section 710.60, which was adjudicated on the merits. Rivera has also not established that there was an "unconscionable breakdown in the underlying process." Capellan, 975 F.2d at 70. "The focus of [that] inquiry ... is on 'the existence and application of the corrective procedures themselves' rather than on the 'outcome resulting from the application of adequate state court corrective procedures.' " Singh v. Miller, 104 F. App'x 770, 772 (2d Cir. 2004) (quoting Capellan, 975 F.2d at 71). Such a breakdown may be found only if there is a sufficiently egregious "disruption or obstruction of a state proceeding." Capellan, 975 F.2d at 70. Rivera's claim should therefore be denied as non-cognizable under Stone v. Powell.

Second, the Petition may be interpreted to assert arguments not presented in Rivera's Appellate Division brief, including the argument that the search warrant applications relied in part "upon [Rivera's] prior bad acts that had actually terminated in her favor" in violation of CPL § 160.50. Pet. Mem. at 40-43. The 440 Court held that the claims were procedurally barred under CPL § 440.10(2)(c). See ECF No. 21-5 at 149–50. These claims—which Rivera raised for the first time in her 440 Motion—should be denied to the extent Rivera bases her arguments on alleged violations of state law only. See, e.g., Hodge v. Griffin, 13-cv-1977 (LTS) (JCF), 2014 WL 2453333, at *11 n.4 (S.D.N.Y. June 2, 2014); Afrika v. Conway, 06-cv-0280T (MAT), 2011 WL 582618, at *8 (W.D.N.Y. Feb. 9, 2011).

**2. Wiretap Evidence**

As in her direct appeal, Rivera's Petition argues that police wiretaps authorized during the course of the investigation were invalid on constitutional, as well as state and federal statutory, grounds because the warrant applications failed to establish that wiretaps were necessary to the investigation. Pet. Mem. at 50–52; ECF No. 21-4 at 44–55. Therefore, according to Rivera, admission of the evidence obtained by wiretapping violated her "right to a fair trial and due process" under the "4 th , 6 th , and 14 th " Amendments. Id. at 50. Both the Appellate Division and the 440 Court denied these claims on procedural grounds and on the merits.

By applications dated December 11 and 13, 2007, the People applied for and received eavesdropping warrants for two of Rivera's cell phones. ECF No. 21-3 at 1, 158–61; ECF No. 21-4 at 149–51. In the months following, the People applied for and received a number of additional eavesdropping warrants for the same cell phones. The successful applications for the subsequent warrants incorporated by reference the two initial applications. See Resp. Mem. at n.22.

On May 13, 2009, Rivera filed a motion to suppress evidence obtained as the result of wiretaps and the fruits thereof, arguing, among other things, that the warrant applications failed to establish the wiretaps' necessity under CPL § 700.15(4). See ECF No. 21-2 at 95–106. The trial court denied the motion, finding that Detectives Salvador and McSherry's affidavits supporting the applications had established that "conventional investigative methods had yielded limited information and reasonably appeared to be unlikely to produce the evidence necessary to accomplish the investigation's goals, or were too dangerous to employ." ECF No. 21-2 at 78. Indeed, Detective Salvador's affidavit thoroughly detailed the nature of Rivera's alleged criminal conduct, the objectives of the police's investigation and the investigative steps the police had taken prior to applying for a wiretap warrant, and the reasons the investigation's goals could not be reached without the requested wiretaps. See id. at 81–82, 118–57. Detective McSherry's application stated in part that Rivera had possessed a firearm and been suspected of threatening, shooting, or robbing several people who later refused to testify against her. See id. at 160–63.

***10** Rivera appealed the trial court's denial of her motion to suppress. The Appellate Division denied Rivera's claim, holding that the wiretap applications "established that normal investigative procedures had been tried and had failed, or reasonably appeared to be unlikely to succeed or too dangerous to employ." Rivera, 128 A.D.3d at 474 (citations omitted). Rivera raised nearly the same claim in her 440 Motion, which Justice Carro denied because the claim had been raised and denied on direct appeal. See ECF No. 21-5 at 149–51 (citing CPL § 440.10(2)(a)).

Rivera argues that the wiretaps were invalid under the Fourth, Sixth, and Fourteenth Amendments because the police did not satisfy the "necessity" or "exhaustion" requirement under CPL § 700.15(4). Rivera's claim should be denied. First, Rivera had a full and fair opportunity to litigate her claims regarding the eavesdrop warrants. Rivera presented her claims to the trial court, where Justice Gregory Carro rejected the claims in a reasoned and well-supported written opinion. Rivera appealed the decision and the Appellate Division also denied her claims. Rivera does not argue that she received no opportunity to litigate her claims. Rather, she seeks to re-litigate the issue through this Petition. Rivera is, however, barred under Stone from obtaining further review of this claim in a federal habeas proceeding. See Capellan, 975 F.2d at 70; McPhail, 707 F.2d at 69–70; see also Hickey v. Conway, 03-cv-350, 2005 WL 1660115, at *5-6 (N.D.N.Y. July 6, 2005) (barring a petitioner's "Fourth Amendment claim based upon the authorities' alleged failure to comply with the 'necessity' requirement of [CPL] § 700.15" from review on federal habeas proceeding); Highsmith v. Donnelly, 99-cv-495A (RJA) (VEB), 2004 WL 1071246, at *8 (W.D.N.Y. Mar. 30, 35 2004). Second, Rivera's claim that the warrants did not comport with the requirements set forth by CPL § 700.15(4) is not cognizable on federal habeas review because it asserts a violation of state law. See, e.g., Swarthout v. Cooke, 562 U.S. 216, 219 (2011); Highsmith, 2004 WL 1071246, at *9 (denying wiretapping claim brought under CPL § 700.15(4)).

Reading the Petition liberally in light of Rivera's *pro se* status, the Court also interprets it to raise a federal statutory claim that the wiretaps were unnecessary. Pet. Mem. at 52–53. Rivera's Petition appears to refer to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. §§ 2510 *et seq.* ("Title III"), to support her "necessity" claim. Id. at 53. Rivera's Title III claim should also be denied because (1) Rivera did not exhaust the federal statutory claim in state court; and (2) it fails on the merits.

First, Rivera did not refer to Title III in her 440 Motion and did not raise a claim under Title III on direct appeal. In her direct appeal, Rivera cited Title III in support of her state statutory claim, arguing that CPL § 700.15(4) conformed to Title III's "necessity" requirement. See ECF No. 21-4 at 46–47. Rivera's application for leave to appeal to the Court of Appeals correspondingly omitted any reference to Title III, phrasing the appellate question as: "Whether the prosecution establish[ed] that an eavesdropping warrant was necessary to meet the goals of the investigation? U.S. Const. amends. IV, XIV; N.Y. Const. art. I, § 12." ECF No. 21-4 at 255. Therefore, Rivera did not present her Title III claim fairly to the Court of Appeals. See Jordan v. Lefevre, 206 F.3d 196, 199 (2d Cir. 2000) ("We conclude ... that arguing one claim in [petitioner's] letter while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction.").

***11** Rivera's Title III claim is unexhausted and defaulted in state court because she no longer has a venue in which to raise it. See Grey v. Hoke, 933 F.2d 117, 120-21 (2d Cir. 1991); CPL § 440.10(2)(c). A procedural default such a failure to exhaust will "bar federal habeas review of the federal claim, unless the ... petitioner can show 'cause' for the default and 'prejudice attributable thereto,' " or demonstrate that "failure

to consider the federal claim will result in a 'fundamental miscarriage of justice.' " Coleman v. Thompson, 501 U.S. 722, 749–50 (1991). Here, Rivera has not argued cause for the default or shown prejudice attributable thereto. Rivera has also failed to demonstrate that declining to consider the Title III claim will result in a "fundamental miscarriage of justice."

Second, Rivera's claim that the wiretap evidence was admitted in violation of Title III should, in any case, be denied on the merits. In order for a federal court to review a violation of a federal statute on a habeas claim, a petitioner must establish that the "claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' " and that the error " 'present(s) exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.' " Davis v. United States, 417 U.S. 333, 346 (1974) (quoting Hill v. United States, 368 U.S. 424, 428 (1979)). A violation of Title III is a federal claim subject to this standard. See Gjelaj v. Ercole, 09-cv-3126 (KMW) (PED), 2012 WL 4450983, at *15 (S.D.N.Y. Feb. 9, 2012), report and rec. adopted, 2012 WL 4435299 (S.D.N.Y. Sept. 26, 2012); Lord v. Lambert, 347 F.3d 1091, 1094 (9th Cir. 2003); accord Reed v. Farley, 512 U.S. 339, 353–54 (1994).

Title III requires that wiretap applications include a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. See United States v. Lambus, 897 F.3d 368, 394 (2d Cir. 2018) (citing 18 U.S.C. §§ 2518(1)(c)). The requirement that there be disclosure as to the use, success, and potential success of other investigative techniques, however, does not mean "that any particular investigative procedures [must] be exhausted before a wiretap may be authorized." United States v. Miller, 116 F.3d 641, 663 (2d Cir. 1997).

Rivera has not established that the police violated Title III by failing to establish that the wiretaps were appropriate under the statute, or that any such violation caused a "complete miscarriage of justice." The warrant applications relied on two thorough affidavits: one from Detective Salvador, describing in detail the investigative methods that the police had already undertaken and the reasons the wiretaps were necessary (see ECF No. 21-2 at 118–57), and one from Detective McSherry, describing how the investigation could make only limited use of confidential informants because they feared retribution by Rivera, based on prior instances in which she had used force or threats of force to control the alleged drug organization (see id. at 159–63). There is no basis to conclude that the Appellate Division's rejection of Rivera's claim was either contrary to, or an unreasonable application of, federal law. Rivera has also failed to suggest that the procedural violations she alleges—that the wiretaps were impermissibly authorized—"undermined the reliability of her conviction." See Gjelaj, 2012 WL 4450983, at *16. Rivera's wiretap claims therefore do not present "exceptional circumstances where the need for the remedy afforded by habeas corpus is apparent." Id. at 15 (internal quotation marks omitted).

***12** Finally, Rivera claims that the wiretaps were "illegally obtained being that the affidavits in support thereof relied upon charges that had terminated in her favor pursuant to CPL § 160.50." Rivera argues her trial was fundamentally unfair in violation of the 6th and 14th Amendments as a result. See Pet. at ¶ 12(D); Pet. Mem. at 48. This claim should also be denied. Even if the trial court's ruling violated CPL § 160.50, Rivera's claim would not warrant federal habeas review because that statute "does not implicate a defendant's federal or state constitutional rights." Afrika, 2011 WL 582618, at *8; see also Hodge, 2014 WL 2453333, at *11 n.4. Accordingly, I conclude that Rivera is not entitled to habeas relief on this claim.

**B. Denial of Rivera's Severance Motions**

Rivera claims she raised a *pro se* pretrial motion under CPL § 200.40 to sever her trial from that of co-defendant Garay, despite the "antagonism in their defenses," which counsel raised again upon Garay's summation. Rivera argues that the trial court violated her 6th Amendment right to a fair trial by declining to address or denying these motions, respectively. See Pet. Mem. at 2–6. The Appellate Division, considering the severance motion Rivera raised during summations, denied the claim as untimely because Rivera did not raise the motion to sever until after Garay's summation. Rivera, 128 A.D.3d at 474. In the alternative, the Appellate Division denied the claim on the merits. Id.

**1. Rivera's Pretrial *Pro Se* Motion**

Rivera filed a *pro se* motion dated August 29, 2008, requesting severance under CPL § 200.40(1) "to avoid a lengthy adjournment process – in that [Rivera's] co-defendants could incriminate [Rivera] further." ECF No. 21-3 at 113. Respondent represents that it found no record of the trial court deciding Rivera's *pro se* motion. Resp. Mem. at 42. In an omnibus motion prepared by counsel and filed May 13,

2009, Rivera moved to sever her trial on the ground that she might be prejudiced if out-of-court statements by unnamed co-defendants were introduced at trial. ECF No. 21-2 at 109–10. On August 5, 2009, the court denied the omnibus motion, finding that the only statements to the police that the People intended to introduce at trial did not implicate Rivera. Id. at 87.

I find that the trial court implicitly denied the *pro se* motion when it ruled on Rivera's omnibus motion. See People v. Boodrow, 42 A.D.3d 582, 583 (3d Dep't 2007) (finding a trial court "implicitly" ruled on a defendant's standalone motion to dismiss by ruling on the motion only when made as part of an omnibus motion). Regardless, Rivera cannot establish that she was prejudiced by the trial court's alleged failure to address the motion. No statements of the type referenced by Rivera's Petition—out-of-court statements by unnamed co-defendants that implicated Rivera—were introduced at trial. Accordingly, I recommend the Court deny Rivera's claim that the trial court improperly declined to rule on her *pro se* pretrial severance motion.

**2. Rivera's Post-Summation Motion**

Throughout the course of the trial, Rivera's counsel raised multiple suggestions that a severance motion may have been appropriate. See ECF No. 21-7 at 121–25, 131–35, 376. Rivera did not formally move for severance during the trial until after Garay's summation, however. During Garay's summation, counsel directed the jurors to focus on the "lack of evidence" implicating Garay, which was "so much more powerful" than the evidence that had been presented. ECF 21-9 at 576. Garay's counsel argued that the case was "all about" Rivera and the drug organization, with which Garay—who was merely "dragged into [the] case" because of his "association" with Rivera—had no ties. Id. Over Rivera's objection, Garay's counsel also argued on summation that other defendants answered to Rivera, who was the "boss of them." Id. at 585. Garay's counsel pointed out, by contrast, that Rivera did not "boss" or order Garay around. Id. at 585–86, 589. Additionally, Garay's counsel drew the jury's attention to the lack of surveillance evidence against Garay, who, in contrast to his co-defendants, appeared in no "surveillance video committing crimes," and could be heard in only five out of thousands of recorded conversations. Id. at 582–83.

***13** After Garay's summation, Rivera moved for severance because Garay's "entire summation" was that Rivera was "guilty" whereas Garay was not. Id. at 617–18. The trial court responded that the severance application was "[w]ay to[o] late now." Id. at 617. Rivera's counsel argued that Garay's summation prompted the motion, id. at 617–19, but the trial court nonetheless denied it, finding that Garay's "counsel's arguments were basically this is what the People are going to allege is proof against" Rivera, which differed from the proof against Garay. Id. at 619. The trial court also denied Rivera's request for a mistrial based on its denial of the severance motion. ECF No. 21-9 at 733–36. The trial court held that Garay's argument to the jury—that he "had no knowledge and was not part of an organization, if [the jury] find[s] one"–was not inconsistent with Rivera's position. Id. Rivera renewed her severance motion at sentencing and the trial court denied it once again. Id. at 755–57.

On direct appeal, the Appellate Division held that the trial court properly exercised its discretion in denying Rivera's end-of-trial severance motion based on allegedly antagonistic defenses. First, the Appellate Division held that the motion was untimely, and Rivera "failed to show good cause for her failure to make a timely motion, or good cause for the trial court to nevertheless entertain the motion in the exercise of its discretion." Rivera, 128 A.D.3d at 474. Second, the Appellate Division held that Rivera failed to demonstrate that her defense and that of Garay "had become so antagonistic as to require separate trials," and that "the references to [Rivera] in [Garay's] summation were not so prejudicial as to deny [Rivera] a fair trial, and any error in denying the severance motion was harmless." Id. (citing People v. Cardwell, 78 N.Y.2d 996 (1991); People v. Mahboubian, 74 NY2d 174, 183 (1989)).

Federal habeas review of a state conviction is prohibited if a state court judgment is based on an "adequate and independent state ground," such as a state procedural bar rule governing the timeliness of motions. Chappero v. West, 04-cv-8018 (KMW)(DCF), 2009 WL 2058534, at *2 (S.D.N.Y. July 15, 2009). A federal court will therefore refrain from reviewing the judgment unless the prisoner can demonstrate (1) cause for her default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. Federal habeas review is foreclosed "even where ... the state court, although expressly relying on procedural default, has ruled in the alternative on the merits of the federal claim." Matthews v. Artuz, 97-cv-3334 (DC), 1999 WL 349694, at *3 (S.D.N.Y. May 27, 1999) (declining to review habeas claim where severance

motion was raised on direct appeal and disposed of on the ground of untimeliness under CPL § 255.20(1)).

The Appellate Division rejected Rivera's motion for severance on the ground that her motion was not filed within forty-five days of arraignment, as is required under state procedural rules, and that Rivera did not establish good cause for the belated motion raised formally only at the close of Garay's summation. Rivera, 128 A.D.3d at 474. When the Appellate Division denied the untimely motion, it decided the motion on an adequate and independent state law ground. See Chappero, 2009 WL 2058534, at *3; Artuz, 1999 WL 349694, at *3. This claim is therefore not a proper basis for habeas relief unless Rivera can demonstrate (1) cause for the default and (2) actual prejudice suffered as a result of the alleged violation of federal law. See Coleman, 501 U.S. at 750. Here, the Appellate Division found:

> [Rivera] was in a position to ascertain the codefendant's planned defense long before trial. At the very least, [Rivera] could have made the motion after hearing [Garay's] opening statement. [6] However, she made no such motion, and merely suggested to the court that a severance might hypothetically prove to be necessary. After [Garay's] summation, [Rivera] finally moved for a severance that would have necessitated a mistrial at the end of a five-week trial. There is no merit to [the] claim that she was surprised by [Garay's] summation.

***14** Rivera, 128 A.D.3d at 474 (citation omitted). Having failed to establish cause for the default, [7] and having made no showing of prejudice resulting therefrom, this Court cannot review the claim on a federal habeas proceeding. Accordingly, I recommend denying Rivera's claim the she was deprived of a fair trial as the result of the denial of her severance motion.

In the alternative, Rivera's claims stemming from the denial of any motions for severance should be denied on the merits. Under New York law, severance of criminal trials is required "where the core of each defense is in irreconcilable conflict with the other and where there is a significant danger, as both defenses are portrayed to the trial court, that the conflict alone would lead the jury to infer defendant's guilt." People v. Cardwell, 78 N.Y.2d 996, 997–98 (1991) (internal quotation marks omitted). Severance is compelled only when defenses are "not only antagonistic but also mutually exclusive and irreconcilable," such that "[t]he jury could not have credited both defenses." People v. Mahboubian, 74 N.Y.2d 174, 185 (1989)). Otherwise, an application for severance is left to the discretion of the trial judge. See CPL § 200.40(1).

Rivera argues that the trial court violated her rights under the 6th and 14th Amendments by denying her post-summation motion to sever her case from Garay's, despite the "antagonism in their defenses." The Appellate Division denied the claim on the merits in the alternative, holding that Rivera "failed to demonstrate that her defense and that of [Garay] had become so antagonistic as to require separate trials," and that "the references to [Rivera] in [Garay's] summation were not so prejudicial as to deny [Rivera] a fair trial, and any error in denying the severance motion was harmless." Rivera, 128 A.D.3d at 474 (citations omitted). I agree with the Appellate Division's assessment.

Rivera and Garay's defenses were not fundamentally "irreconcilable" or "mutually exclusive." On summation, Rivera argued that the People had failed to establish the existence of a drug-dealing conspiracy. For his part, Garay argued that even if the People had proven that such a conspiracy existed, he was not part of it. The jury could have "credited both defenses," for example, by finding that a drug-dealing conspiracy did not exist—thereby acquitting both defendants as to that count. See Mahboubian, 74 N.Y.2d at 184. To the extent that Garay's summation referenced the People's evidence, and accepted for the sake of argument that Rivera was the boss of a drug-dealing organization, such comments did not render the two defenses mutually exclusive. Given that Rivera's severance claim should be denied on the merits under New York law, her habeas claim must also fail, as Rivera has not established that the Appellate Division's decision unreasonably applied clearly established Supreme Court law. [8] See Zarvela v. Artuz, 364 F.3d 415, 417 (2d Cir. 2004) ("When a claim is adjudicated on the merits by the state courts, a federal court's habeas review considers whether the state court ruling 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' " (quoting 28 U.S.C. § 2254(d)(1)).

***15** Accordingly, I recommend the Court deny Rivera's claims based on any denials of her motions for severance.

**C. Alleged Brady Violation**

Construing Rivera's *pro se* Petition to raise the strongest claims it suggests, I interpret it to allege that the People violated their discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose the substance of Garay's "proffer session" and by failing to disclose a typographical error in Rivera's criminal complaint. See Pet. Mem. at 36–38, 44, 53–54.

First, the claim is unexhausted but procedurally defaulted because Rivera did not raise it in her leave application to the Court of Appeals. Although Rivera argued in her leave application that the People had withheld certain documents, she omitted any reference to Garay's proffer statement. Instead, Rivera framed the question presented for appeal as: "Whether Ms. Rivera [was] prejudiced by the late disclosure of vital police tactical reports and evidence vouchers? U.S. Const. amends. V, XIV; N.Y. Const. art. I, § 6." ECF No. 21-4 at 255. Arguing one claim in a leave application letter while attaching an appellate brief without explicitly alerting the New York Court of Appeals to each claim raised does not necessarily fairly present such claims. See, e.g., Jordan v. Lefevre, 206 F.3d 196, 198–99 (2d Cir. 2000). However, even if the Court were to deem the Petition exhausted, the claim should be denied on the merits.

A habeas petitioner has the burden of establishing that the state appellate court's denial of a Brady claim was contrary to, or an unreasonable application of, clearly established Supreme Court law. See 28 U.S.C. § 2254(d)(1). To establish a violation under Brady, a defendant must show that: (1) the evidence at issue is favorable to her because it is either exculpatory or impeaching; (2) the government suppressed that evidence; and (3) the defendant was thereby prejudiced. See Strickler v. Greene, 527 U.S. 263, 281–82 (1999). In accordance with the first prong, a habeas claim alleging a Brady violation should be denied on the merits where a petitioner is unable to demonstrate the exculpatory nature of the evidence at issue. See Jones v. Conway, 442 F. Supp. 2d 113, 128 (S.D.N.Y. 2006). Additionally, under the third prong of a Brady analysis, a petitioner must show that the undisclosed evidence was material and favorable to her. Boyette v. Lefevre, 246 F.3d 76, 90 (2d Cir. 2001) (citing United States v. Bagley, 473 U.S. 667, 682 (1985)). "Undisclosed 'evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " United States v. Payne, 63 F.3d 1200, 1209 (2d Cir. 1995) (quoting Bagley, 473 U.S. at 682)).

**1. The Substance of Garay's Proffer Session**

Rivera argues that if the prosecutor had turned over the contents of Garay's proffer statement, she could have submitted it to the court, which then "would have realized that the defenses were, in fact, antagonistic requiring severance pursuant to CPL § 200.40." Pet. Mem. at 53–54. On direct appeal, Rivera raised the claim and the Appellate Division denied it, finding that Rivera "[had] not established that she was prejudiced by any late disclosure of discovery material." Rivera, 128 A.D.3d at 474.

***16** At trial, the prosecutor complained that Garay's counsel exploited the cross-examination of Detective Salvador by eliciting testimony implying that Garay had no connection to certain individuals, when in fact, Detective Salvador had been instructed not to testify to the contents of Garay's proffer statement, which would not be admitted. See ECF No. 21-7 at 372. The prosecutor argued that in doing, Garay had opened the door to admission of his proffer statement. Id. The trial court stated that while it assumed that Garay's proffer agreement said that "nothing [in it] [could] be used against" Garay, it would be admissible if Garay's counsel opened the door by—for example—asking questions about the contents of the proffer statement and then withdrawing them. Id. at 375–76. At the time, Rivera's counsel stated that if "any part of [Garay's] proffer" were admitted into evidence, severance would be warranted; however, Rivera's counsel did not indicate it had been previously unaware of the proffer or that the proffer had been improperly withheld. Id. at 372–76.

As to the first Brady prong, Rivera has not established that Garay's proffer statement was favorable to her, let alone how Garay's proffer statement could have been "exculpatory or impeaching." Further, there is nothing in the record to support Rivera's assessment that disclosure of the Garay's proffer statement would have exonerated her. At trial, the court noted that, at most, what would have "come out" on the two questions previously flagged by the prosecutor was that "this defendant [Garay] knew other defendants." Id. at 376. This statement does not establish that the proffer contained evidence exculpating Rivera. Rivera similarly has not established the third prong: prejudice. In order to establish prejudice, Rivera needed to show that the undisclosed proffer statement was material—*i.e.*, that had the prosecutor

disclosed the proffer statement, the result of the proceeding would have been different.

**2. Error in the Criminal Complaint**

Rivera alleges that the criminal complaint, prepared based on information provided by Detective Salvador, erroneously described her Wallace Avenue apartment as unit 1M rather than 1L. Rivera contends that the People violated Brady by failing to alert Rivera to this mistake prior to trial. First, the claim is not cognizable. "Habeas review is not available for purported defects in a felony complaint that have been rendered harmless by a sound superseding indictment and conviction." Thompson v. Artus, 10-cv-1443, 2013 WL 6408354, at *12 (E.D.N.Y. Dec. 6, 2013). Second, this claim is without merit. Rivera does not allege that the complaint was not timely produced. Moreover, there is no obligation under Brady to highlight information contained in documents produced to the defendant. Finally, evidence is not "suppressed" under Brady if a defendant "either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." DiSimone v. Phillips, 461 F.3d 181, 197 (2d Cir. 2006) (internal quotation marks omitted). Because Rivera knew the unit number of the Apartment, the prosecutor could not have suppressed evidence of the same. Accordingly, I recommend the Court deny this claim.

**D. Admission of Evidence Allegedly Violating Rivera's Confrontation Clause Rights**

Rivera asserts, as she did in her CPL § 440.10 motion, that her "right to confrontation was violated by way of inadmissible hearsay on numerous occasions." Pet. ¶ 12(B); Pet. Mem. at 6–19, 34–36. As in Rivera's 440 Motion, the claim should be denied.

First, to the extent Rivera's claim rests on the inadmissibility of evidence as hearsay, the claim is barred from habeas review. The hearsay rule is a product solely of state law as applied in state court proceedings, and habeas review is limited to claims of federal law. 28 U.S.C. § 2254(a); see also Parson v. People of the State of New York, 13-cv-5745 (WHP) (MHD), 2014 WL 11201527, at *6 (S.D.N.Y. Dec. 30, 2014), report and rec. adopted, 2016 WL 1248962 (S.D.N.Y. Mar. 24, 2016). Even if the statements were improperly admitted, "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." Rosario v. Kuhlman, 839 F.2d 918, 925 (2d Cir. 1988) (citing Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983)). Rather, courts will issue a writ of habeas corpus only where "[t]he petitioner can show that the error deprived [her] of a fundamentally fair trial." Id. Rivera has not met that burden here.

***17** Second, the claim is barred from habeas review because the 440 Court found that the claim was procedurally barred, as the purported errors were contained in the trial record but Rivera did not raise the claim on direct appeal as required. See ECF No. 21-5 at 150. This constitutes an adequate and independent state bar to habeas review. See Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003). Habeas review is therefore inappropriate because Rivera has not demonstrated cause for the default, prejudice attributable thereto, or a fundamental miscarriage of justice. Coleman, 501 U.S. at 749–50. While Rivera argued in her 440 leave application that her trial counsel's failure to object was "cause" to excuse her default on direct appeal, Rivera could still have raised them on her (counseled) direct appeal by urging the Appellate Division to exercise its discretion to address the claims on the merits in the interest of justice. See CPL § 470.15(6)(a). Furthermore, as explained below, Rivera's ineffective counsel claims are meritless, and a meritless claim of ineffective counsel claim cannot serve as the "cause" to excuse a procedural default. See McCleskey v. Zant, 499 U.S. 467, 494 (1991). Finally, as described below, the claim should be rejected on its merits, meaning that Rivera cannot show "prejudice" permitting habeas review.

Third, the claim should be denied on the merits. The Confrontation Clause provides that the rights of an accused include the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Clause reflects a preference for face-to-face confrontation at trial, see Maryland v. Craig, 497 U.S. 836, 843–47 (1990), and was designed to guard against the admission of "testimonial statements against the accused" that do not give the accused an opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 56 (2004). In particular, the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Id. at 53–54. The Confrontation Clause's prohibition consists of two elements. First, it bars the use at trial only of "testimonial statements" by out-of-court declarants, a term that is limited to statements made by declarants with "an[ ] awareness or expectation that their statements might later be used at trial." United States v. Goldstein, 442 F.3d 777, 785 (2d. Cir. 2006). Second, the Confrontation Clause "does not bar

the use of testimonial statements for the purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 59 n.9 (2004) (citing Tennessee v. Street, 471 U.S. 409, (1985)).

Rivera claims that Undercover 0043 ("UC 43") and Detective Salvador's testimony about observations and conversations during the investigation, and the People's introduction of transcripts of wiretaps as well as narcotics purchased during the investigation, violated the Confrontation Clause because Rivera did not have the opportunity to cross-examine certain individuals. See Pet. Mem. at 6–19, 34–36. The Confrontation Clause, however, only bars the use at trial of "testimonial statements" by out-of-court declarants, meaning "a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings." United States v. Saget, 377 F.3d 223, 228 (2d Cir. 2004). The determinative factor for whether a declarant's statements are "testimonial statements" for purposes of the Confrontation Clause is the declarant's awareness or expectation that his or her statements may later be used at a trial; therefore, there is no Confrontation Clause violation when a defendant cannot cross-examine a declarant whose statements were unknowingly made to an undercover informant or secretly captured by a wiretap. See id. at 229 ("[A] declarant's statements to a confidential informant, whose true status is unknown to the declarant, do not constitute testimony within the meaning of Crawford .. .."); United States v. Farhane, 634 F.3d 127, 162-63 (2d Cir. 2011); United States v. Burden, 600 F.3d 204, 225 (2d Cir. 2010). Furthermore, statements by co-conspirators made in furtherance of a conspiracy are admissible as co-conspirator declarations and do not implicate the Confrontation Clause. See Crawford, 541 U.S. at 56 ("statements [made] in furtherance of a conspiracy" are "by their nature ... not testimonial," and thus do not implicate the Confrontation Clause). Therefore, the Court should deny Rivera's claims about Confrontation Clause violations to the extent they contest the introduction of wiretapped recordings of statements made by Rivera or her co-defendants, or testimony by UC 43 regarding conversations with Rivera or her co-defendants. Because physical evidence such as narcotics purchased by an undercover officer is not a "declaration" subject to procedural limitations imposed by the Confrontation Clause, Rivera's claim as to the admission of that evidence should also be denied on the merits.

***18** Rivera also claims that the People violated the Confrontation Clause by eliciting Detective Salvador's testimony that he observed Rivera and Rivera's co-defendant, Mario Bracero, shopping (Pet. Mem. at 8-10); his testimony that the undercover officer showed Salvador narcotics (without testifying about what the undercover said) (Pet. Mem. at 10– 12); his testimony that he saw a woman give Bracero what appeared to be narcotics (Pet. Mem. at 11); and his testimony describing a particular photograph (Pet. Mem. at 22-23). The Confrontation Clause only applies to out-of-court "statements," not to trial testimony describing out-of-court conduct not intended as an assertion. See Fed. R. Evid. 801(a) (" 'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."). Therefore, Rivera's Confrontation Clause claims challenging the admission of this various evidence should be denied.

Finally, Rivera claims violations of the Confrontation Clause where Detective Salvador refreshed his recollection of the arrests based on police reports (Pet. Mem. at 45) and where he testified that Detective McLoughlin informed him of Garay's location just before the arrest (Pet. Mem. at 16-17). The Confrontation Clause "does not bar the use of testimonial statements for the purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 59 n.9. There is no violation where the testimony simply completes a narrative or is offered to explain a police officer's actions. See, e.g., Burgess v. Sheahan, 16-cv-1461 (AJN), 2018 WL 2186409, at *3 (S.D.N.Y. May 11, 2018). Therefore, Rivera's claim as to these alleged Confrontation Clause violations should be denied because the challenged evidence merely explained Detective Salvador's actions.

**E. Juror Replacement**

Next, Rivera asserts, as she did in her CPL § 440.10 motion, that the trial court violated her right to the jury of her choice by using an alternate juror after the original juror called in sick. Pet. Mem. at 45–46. The claim should be denied because it does not present a federal claim cognizable on habeas review. See Forino v. Lee, 10-cv-5980 (MKB), 2016 WL 7350583, at *9 (E.D.N.Y. Dec. 19, 2016) ("Courts in this Circuit have held that a trial court's dismissal of an unavailable juror involves only an application of state law and alone does not present a federal constitutional question cognizable on habeas review."); accord, e.g., Green v. Kirkpatrick, 16-cv-1407 (FJS), 2017 WL 4174794, at *3 (N.D.N.Y. Sept. 19, 2017).

In the alternative, the claim should be denied as procedurally barred. The 440 Court found that the claim was barred under CPL § 440.10(2)(c) because it was record-based and "could have been raised on appeal." ECF No. 21-5 at 150. CPL § 440.10(2)(c) constitutes an adequate and independent state ground barring habeas review. See, e.g., Sweet, 353 F.3d at 141. Rivera has not alleged either cause to excuse her default or prejudice arising therefrom. Coleman, 501 U.S. at 749-50. The claim should accordingly be barred from habeas review on adequate and independent state law grounds.

**F. Admission of Prior-Crimes Evidence**

Rivera argues that "[t]he trial court abused its discretion by allowing certain portions of testimony, which had been objected to, suggesting that Petitioner had a prior criminal history, in violation of CPL § 160.50." Pet. Mem. at 34–35. On direct appeal, Rivera raised a nearly identical claim, arguing that the trial court violated her Fifth and Fourteenth Amendment rights by admitting a recorded conversation in which Rivera used terms such as "get it popping" and "earning your stripes," and by allowing the People's witnesses to explain to the jury the meanings of those terms. See ECF No. 21-4 at 31–33. Specifically, the People introduced recorded conversations from a different 2007 federal investigation in which Rivera could be heard making statements about another individual, including references to "cutting throat," Rivera's "stripes" or "earning your stripes," and Rivera's readiness to "get it popping." See, e.g., ECF No. 21-4 at 175. Two witnesses for the People also essentially explained that "cutting throat" referred to stealing customers, earning your stripes referred to an individual's reputation, and "get it popping" meant to shoot someone or something. Id. at 176–77. Given this, Rivera argues that, although she was not charged with a violent crime, the prosecution had attempted "to portray her as [a] violent individual with a criminal predisposition." Id. at 32–33.

***19** The Appellate Division denied the claim, finding that "[t]he [trial] court properly exercised its discretion in receiving the various items of evidence challenged by [Rivera], and none of this evidence deprived her of a fair trial." Rivera, 128 A.D.3d at 474. Rivera also asserted the claim in her 440 Motion, which the 440 Court denied, finding the claim was procedurally barred because it had already been denied on direct appeal and that the testimony had not "deprived [petitioner] of a fair trial." ECF No. 21-5 at 150.

First, insofar as Rivera claims a violation of CPL § 160.50 (that the People referenced criminal proceedings that had terminated in Rivera's favor), such claim is non-cognizable on the ground that it is based solely on state law. See, e.g., Hodge v. Griffin, 13-cv-1977, 2014 WL 2453333 (LTS) (JLC), at *11 n.4 (S.D.N.Y. June 2, 2014); Afrika v. Conway, 06-CV-0280T (MAT), 2011 WL 582618, at *7-8 (W.D.N.Y. Feb. 9, 2011). Similarly, Rivera's claim, to the extent it challenges the admission, under state evidentiary rules, of testimony regarding uncharged "bad acts," is non-cognizable because it does not implicate clearly established federal law. See Arena v. Kaplan, 952 F. Supp. 2d 468, 483 (E.D.N.Y. 2013).

Second, the claim should be denied because Rivera cannot show that the Appellate Division's decision was contrary to, or an unreasonable application of, "clearly established Federal law[ ] as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has expressly declined to decide whether admitting evidence of uncharged crimes violates a defendant's due process rights. See Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991). The Court therefore cannot grant Rivera relief on this claim. See Vargas v. Walsh, 10-cv-7604 (DAB)(GWG), 2011 WL 1900115, at *5 (S.D.N.Y. Apr. 14, 2011) ("Courts have routinely held that federal habeas corpus relief is unavailable to challenge the admission of propensity or 'prior bad acts' evidence because there is no clearly established Supreme Court law barring the practice. For this reason alone, the petition fails."), report and rec. adopted, Vargas v. Walsh, 2011 WL 1900148 (S.D.N.Y. May 18, 2011). Accordingly, the Court should deny Rivera's claim regarding the admission of prior bad acts.

**G. Admission of Evidence from Unsworn Witnesses**

Rivera also claims several constitutional violations based on the trial court's admission of various evidence offered by the People. Specifically, she challenges the: (1) use of unsworn witnesses, such as the presiding trial judge and the prosecutor (Pet. Mem. at 17-19); (2) "prejudicial testimony which was contrary to the presumption of innocence" (Pet. at ¶ 12(C); Pet. Mem. at 6-7, 10–12, 19–21); and (3) the "improper submission of prejudicial evidence," in the form of various trial exhibits (Pet. Mem. at 22-27). These claims should be denied.

First, the claims should be denied as procedurally barred on adequate and independent state law grounds. See Carvajal v. Artus, 633 F.3d 95, 107 n.6 (2d Cir. 2011). Rivera raised these claims in her 440 Motion, which the 440 Court denied as procedurally barred because the claimed errors appeared on the record but were not raised on direct appeal. See ECF No. 21-5 at 150. There is no dispute that the claimed errors

are record-based or that CPL § 440.10(2)(c) constitutes an adequate and independent state ground barring habeas review. See, e.g., Sweet, 353 F.3d at 141.

A procedural default will "bar federal habeas review of the federal claim, unless the ... petitioner can show 'cause' for the default and 'prejudice attributable thereto,' " or demonstrate that "failure to consider the federal claim will result in a 'fundamental miscarriage of justice.' " Coleman, 501 U.S. at 749–50. The only "cause" Rivera asserts for her procedural default is her trial counsel's ineffectiveness for, among other things, failing to object to certain errors complained of here. Rivera's claim of ineffective assistance of counsel is meritless (as described in Section H, *infra*), and therefore cannot serve as the cause to excuse a procedural default. See McClesky v. Zant, 499 U.S. 467, 494 (1991). Absent a demonstration of cause, the Court need not evaluate the "prejudice attributable thereto" or whether "failure to consider the federal claim will result in a 'fundamental miscarriage of justice' ". Coleman, 501 U.S. at 749-50. In any event, as explained below, Rivera's claims that the trial court violated her right to a fair trial by admitting various evidence is meritless under both state and federal law such that they are barred from habeas review on adequate and independent state law grounds.

***20** Alternatively, the claims should be denied on the merits. I address Rivera's three claims in turn.

First, Rivera describes instances in which the prosecutor or the court asked prosecution witnesses leading questions or questions that purportedly mischaracterized prior testimony and argues that this use of the prosecutor as "an unsworn witness" amounts to a violation of her right to confront witnesses against her. See Pet. Mem. at 17-19. In particular, Rivera argues that the prosecutor acted as a witness on two occasions: (1) when she framed a question by, in part, summarizing Detective Salvador's prior testimony; and (2) when, after Detective Salvador testified that "11006 calls in a period of 12 days" were made on target cell phone 8, the prosecutor asked, "You mean 1,106 calls?"; and (3) when, in response to defense counsel's objection, the trial judge rephrased a direct examination question of Detective Salvador. See Pet. Mem. at 18.

"An attorney acts as an unsworn witness when" she has "first-hand knowledge of the events presented at trial .. .. Moreover, [her] role as advocate may give [her] client an unfair advantage, because the attorney can subtly impart to the jury [her] first-hand knowledge of the events without having to swear an oath or be subject to cross examination." United States v. Locascio, 6 F.3d 924, 933 (2d Cir. 1993).

Here, however, the jury was not led to believe that, based on their questions to Detective Salvador, the prosecutor or the Court had "first-hand knowledge" of the facts. The questions themselves did not suggest any facts not otherwise in evidence. As such, I do not find the trial court inappropriately admitted evidence in violation of the rule prohibiting the use of unsworn witnesses. Furthermore, Rivera offers no basis upon which I conclude that these questions affected the verdict of the lengthy trial. As the 440 Court held, "none of the testimony alleged to be prejudicial deprived the defendant of a fair trial." ECF No. 21-5 at 150. Therefore, I find that the evidentiary rulings singled out by Rivera do not merit habeas relief, as they were not "so extremely unfair" that they "violate[d] fundamental conceptions of justice." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)); accord McKinnon v. Superintendent, Great Meadow Corr. Fac., 422 F. App'x 69, 73 (2d Cir. 2011).

Second, Rivera argues, as in her CPL § 440.10 motion, that her "right to a fair trial was violated by way of prejudicial testimony which was contrary to the presumption of innocence." Pet. ¶ 12(C); Pet. Mem. at 6–7, 10–12, 19–21. The prejudicial testimony in question refers to: (1) Detective Salvador's testimony that the narcotics allegedly purchased from Rivera was cocaine; and (2) that the People's witnesses referred to Rivera as the "boss" of an organization it had not established existed.

When evidence is apparently irrelevant or lacks a foundation, the trial court has discretion to admit the evidence conditionally upon counsel's representation that a necessary connection to other evidence in the record will be made. See United States v. Coplan, 703 F.3d 46, 81 (2d Cir. 2012). If the connection is not made, the opponent may later move to strike the evidence. Id. Here, Rivera's counsel objected to testimony referring to Rivera's "organization," arguing that the testimony improperly assumed facts not in evidence. Justice Carro overruled the objection, stating that he assumed that the prosecutor would "connect it up," and ruling that, "if there is never any proof of that, I will strike it from the record." ECF No. 21-7 at 129–30. There is no dispute that the People eventually established a prima facie case that the co-conspirators were part of a drug-dealing organization, and that the drugs found in the Apartment and purchased during the investigation were cocaine, as

the jury convicted Rivera of the conspiracy and drug counts. Moreover, the Appellate Court affirmed, finding that "[t]he evidence, including intercepted communications and circumstantial proof, amply demonstrate[d] that [Rivera], the leader of a large-scale drug trafficking operation, personally acquired a kilogram of cocaine." Rivera, 128 A.D.3d at 473. Therefore, Rivera has not established that the questions were improper or prejudicial.

***21** Finally, Rivera asserts, as she did in her CPL § 440.10 motion, that her right to a fair trial was violated by the introduction of certain "prejudicial" exhibits. See Pet. Mem. at 22–27. In support of this claim, Rivera asserts a variety of grounds including that the exhibits lacked the proper foundation, were irrelevant, were introduced for improper purposes, or consisted of demonstrative exhibits that mischaracterized the record. These are, however, all state-law evidentiary issues that are not properly reviewed by a federal habeas proceeding. See Estelle, 502 U.S. at 67–681. To the extent that petitioner asserts that the exhibits somehow violated her right to confront witnesses, those claims are addressed in Section D, *supra*. In any case, Rivera has also not established that the admission of any of the exhibits was "so extremely unfair" that it "violate[d] fundamental conceptions of justice." Dunnigan, 137 F.3d at 125. This claim should therefore be denied in its entirety. See Ortiz, 2013 WL 5775695, at *4 n.1.

### H. Ineffective Assistance of Counsel

Rivera claims that her trial counsel was ineffective for numerous reasons. See Pet. at ¶ 12(A); Pet. Mem. at 2, 4–5, 11–13, 25, 27–35. The 440 Court denied Rivera's ineffectiveness of counsel claim in its entirety, finding that Rivera's "experienced" attorney "ably" provided her meaningful representation at trial. ECF No. 21-5 at 150. The 440 Court's decision was not an unreasonable application of clearly established Supreme Court law. Rivera's claim for ineffective assistance of counsel should therefore be denied.

To establish a federal claim of ineffective assistance of trial counsel, a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694 (1984). The first prong of the Strickland test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Under the second prong of the test, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. See also Gueits v. Kirkpatrick, 612 F.3d 118, 122–23 (2d Cir. 2010). An ineffective assistance claim asserted in a habeas petition is analyzed under the "unreasonable application" clause of AEDPA because it is "past question that the rule set forth in Strickland qualifies as clearly established Federal law, as determined by the Supreme Court of the United States." Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006), as amended (May 19, 2006). A habeas petitioner asserting ineffective assistance of counsel must therefore show both that counsel's performance was unreasonable under the two-pronged Strickland test and that the state court's decision to the contrary was unreasonable. 28 U.S.C. § 2254(d)(1); Knowles v. Mirzayance, 556 U.S. 111, 123, 129 (2009).

Rivera bases her ineffective assistance of counsel claim on several alleged faults of her trial lawyer, Robert Jaffe. I address the two most substantial claims of counsel's alleged ineffectiveness individually and then proceed to analyze the remainder of the various claims asserted.

#### 1. Severance Motion

Rivera argues ineffective assistance of counsel based on counsel's failure to "adopt" Rivera's *pro se* pretrial severance motion and for failing to request a severance "until the bitter end of summation." See Pet. at ¶ 12(A); Pet. Mem. at 2–6, 28. However, Rivera's counsel asserted substantially the same severance claim in the omnibus pretrial motion, which, as explained above, the trial court denied. Compare ECF No. 21-3 at 112–13 with ECF No. 21-2 at 109–10; see ECF No. 21-2 at 87. Furthermore, the Appellate Division denied Rivera's severance claim on the merits. See Rivera, 128 A.D.3d at 474 (Rivera "failed to demonstrate that her defense and that of her codefendant had become so antagonistic as to require separate trials"). Accordingly, the 440 Court, in ruling on Rivera's claim of ineffective assistance of counsel, explained in light of the Appellate Division's denial of the severance motion, "[i]t also follows that defense counsel's failure to adopt [Rivera's] earlier *pro se* motion for severance cannot be considered ineffective." ECF No. 21-5 at 149. Even so, because Rivera's *pro se* severance motion would have had little chance of success (given the denial of the omnibus motion, asserting the same claim), "trial counsel cannot have provided ineffective assistance for failing to make such a motion." Santana v. Capra, 284 F. Supp. 3d 525, 543 (S.D.N.Y. 2018) (citing United States v. Kirsh,

54 F.3d 1062, 1071 (2d Cir. 1995)). For the same reason, Rivera cannot establish a reasonable probability that counsel's decision to assert the motion as part of the omnibus motion, as opposed to adopting the *pro se* motion, affected the verdict. Accordingly, I recommend the Court deny habeas relief as to this claim.

**2. Objection to Discovery Violations and Motion for Sanctions**

***22** Rivera further claims that counsel: (1) "failed, until the middle of trial, to object to the People's failure to turn over" certain police tactical reports; (2) failed to move for sanctions or to request a curative charge based on that failure; and (3) failed to preserve the discovery claim by specifically citing CPL §§ 240.20 and 240.45. See Pet. Mem. at 33–34. The Appellate Division denied the underlying discovery claim, finding that Rivera had "not established that she was prejudiced by any late disclosure of discovery material." Rivera, 128 A.D.3d at 474. Accordingly, as the 440 Court explained, in light of the Appellate Division's decision, "[i]t therefore follows that defense counsel could not be found ineffective for failing to object to the ... late disclosure." See ECF No. 21-5 at 150 (citing Rivera, 128 A.D.3d at 474)). It follows that Rivera's habeas claim should be denied for the same reason. See Santana, 284 F. Supp. 3d at 543 ("Trial counsel's failure to make an unmeritorious objection does not constitute defective performance."). Similarly, a motion for sanctions against the People for failing to disclose the evidence would have failed because the underlying claim was without merit. Finally, there is no basis to Rivera's complaint that counsel failed to preserve the discovery claim for appeal because the Appellate Division did not find the claim unpreserved, and instead ruled on its merits. Rivera, 128 A.D.3d at 474. The ineffectiveness claim based on certain discovery objections and the failure to move for sanctions should therefore be denied.

**3. Remaining Ineffectiveness Claims**

Rivera's remaining arguments are based on counsel's purported failures to object to certain evidence. Specifically, Rivera alleges that counsel failed to object to: testimony or other evidence that purportedly violated the presumption of innocence or the Confrontation Clause, exhibits that were unauthenticated or otherwise lacked foundation, and testimony suggesting that Rivera had a criminal history. To the extent these underlying complaints are themselves meritless for reasons described elsewhere in this Report and Recommendation, counsel cannot be faulted for choosing not to object on those grounds. See, e.g., Aparicio v. Artuz, 269 F.3d 78, 99 n.10 (2d Cir. 2001). Furthermore, contrary to Rivera's claims, her trial counsel did make contemporaneous objections on several of the grounds asserted here. See, e.g., ECF No. 21- 7 at 399–401 (Rivera's objection to Salvador's testimony about wiretaps on presumably hearsay grounds); ECF No. 21-9 at 264 (Rivera's objection to phone calls between Julian Silva his associate). For these reasons, Rivera's claim of ineffective assistance of counsel should be denied.

In any case, Rivera has not established a reasonable probability that any of counsel's alleged errors affected the verdict. As the Appellate Division observed, "[t]he evidence, including intercepted communications and circumstantial proof, amply demonstrate[d] that [Rivera], the leader of a large-scale drug trafficking operation, personally acquired a kilogram of cocaine." Rivera, 128 A.D.3d at 473. And as the 440 Court recognized, the Appellate Division expressly ruled that Rivera was not denied a fair trial by the admission of evidence Rivera deemed "prejudicial." ECF No. 21-5 at 150. Therefore, I find that Rivera has not established either prong of the Strickland test and the 440 Court's denial of the ineffective counsel claim did not unreasonably apply the Strickland test. Accordingly, the claim should be denied.

**J. Substitution-of-Counsel**

Rivera also claims that the trial court improperly failed to acknowledge the ineffectiveness of counsel claim she raised during trial. [9] This, Rivera argues, deprived her of—among other things—the opportunity to call certain witnesses, in violation of her Sixth and Fourteenth Amendment rights. Pet. Mem. at 54–57.

First, the claim should be denied as procedurally barred. The 440 Court held that the claim was procedurally barred under CPL § 440.10(2)(c) because "the ... colloquy" in which Rivera's voiced complaints about her counsel was on the record, so the claim should have been raised on direct appeal. See ECF No. 21-5 at 151. CPL § 440.10(2)(c) constitutes an adequate and independent state law ground barring federal habeas relief. See Sweet, 353 F.3d at 141. Rivera has offered no "cause" for not raising the claim on direct appeal. See Coleman, 501 U.S. at 749–50. Moreover, as explained below, because the claim should be denied on the merits, Rivera cannot establish either prejudice or a fundamental miscarriage of justice if the Court declines to

review the claim. Accordingly, the claim should be denied as procedurally barred.

***23** The claim should also be denied on the merits. During trial, a defendant may only substitute counsel upon a showing of "unusual circumstances," such as a complete breakdown of communication or an irreconcilable conflict. United States v. Schmidt, 105 F.3d 82, 89 (2d Cir. 1997). "Where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction." Norde v. Keane, 294 F.3d 401, 412 (2d Cir. 2002). However, while the Sixth Amendment affords a right to competent appointed counsel in criminal cases, "a trial court may require a defendant to proceed to trial with counsel not of defendant's choosing." United States v. Oberoi, 547 F.3d 436, 458 (2d Cir. 2008) (internal citation and quotation marks omitted). If the reasons for a defendant's request to substitute counsel are known to the court, "the court may rule without more." United States v. Simeonov, 252 F.3d 238, 241 (2d Cir. 2001) (citation and internal quotation marks omitted; emphasis omitted).

Towards the close of the five-week trial, Rivera raised numerous complaints about her representation. For example, Rivera interrupted proceedings to state that her lawyer was "refusing to help" her; "not listening" to her; not filing motions at her direction; and "not telling [her] story." See ECF No. 21-9 at 176–80. The court excused the jury and responded that Rivera's counsel was "doing a fine job," at which time Rivera submitted her own written motion, apparently for a change of venue. Id. at 178. The court later denied that motion as untimely. Id. at 245. Rivera also stated that the entire case against her was based in retaliation for a lawsuit she had previously won against the District Attorney. See id. at 177–78. During a break later that day, the court gave Rivera an opportunity to be heard on her substitution of counsel claims, at which time Rivera reiterated that her lawyer was "refusing to help" her, and that the case against her was nothing more than an effort by the prosecutor to "retaliate" against her. Id. at 244–47. Rivera also requested the court appoint an "independent federal prosecutor" and allow her to call additional witnesses. Id. The court advised Rivera that she could take the stand if she wished, and informed her that counsel was in the best position to determine whether to call certain witnesses. Id. at 246.

Rivera has not established, based on this record, that there was an irreconcilable difference or breakdown in communication justifying the substitution of counsel during the fifth week of trial. As the 440 Court found, the trial court's "responses to [Rivera's] complaints were proper, and [Rivera] received 'ample opportunity' to be heard both orally and in writing." ECF No. 21-5 at 151. The claim should be denied accordingly.

### K. Excessive Sentence

Rivera argues that her aggregate sentence of 25 years' imprisonment: (1) was "unduly harsh and excessive" under state law because she had no prior felony convictions; and (2) violated the Eighth Amendment, because it "shocks the conscience." Pet. Mem. at 57.

#### 1. State Law Claim

In her direct appeal, Rivera did not raise an Eighth Amendment claim, but rather asserted a state law claim that the Appellate Division should exercise its discretionary power under CPL § 470.15 to reduce her sentence "in the interest of justice." See ECF No. 21-4 at 18–24, ECF No. 21-4 at 222–25. The Appellate Division denied the claim, finding no basis to reduce Rivera's sentence. Rivera, 128 A.D.3d at 475. Even interpreting the Petition to raise the same claim, the claim should be denied as non-cognizable, as "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992). Rivera does not claim that the sentence falls outside the range prescribed by state law. Indeed, Rivera's sentence falls within the permissible range authorized by state statute. See, e.g., N.Y. Penal Law § 70.00. Accordingly, her state-law sentencing claim is not cognizable and should be denied.

#### 2. Eighth Amendment Claim

***24** Rivera's Eighth Amendment claim is unexhausted but not defaulted because although she raised only a state law excessive sentence claim on direct appeal, she could still raise an Eighth Amendment claim in a 440.20 motion. See Koso v. Attorney Gen. of New York, 12-cv-1723 (JMA), 2015 WL 1286014, at *4 (E.D.N.Y. Mar. 20, 2015); cf. Thomas v. Greiner, 111 F. Supp. 2d 271, 276 (S.D.N.Y. 2000) (Eighth Amendment claim for an excessive sentence was unexhausted where petitioner raised only state statutory claim on 440.10 motion because 440.20 motion was still available). However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Dismissal on the merits is only appropriate where the claim is "plainly meritless" or "patently frivolous." See Williams v. Artus, 691 F. Supp. 2d 515, 526

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

(S.D.N.Y. 2010) ("If the unexhausted claims are 'plainly meritless,' the district court can dismiss these claims on the merits.") (citation omitted).

Rivera contests her sentence under the Eighth Amendment's prohibition against cruel and unusual punishment, which forbids sentences that are "grossly disproportionate" to the crime. See Lockyer v. Andrade, 538 U.S. 63, 71–73 (2003). For purposes of habeas review, there is no precise definition of "gross disproportionality;" however, in non-capital cases, successful challenges to the proportionality of particular sentences are "exceedingly rare." Id. at 73 (citation omitted). Rivera was sentenced to an aggregate sentence of 25 years for, among other things, running a large cocaine-dealing operation. Rivera has not demonstrated that this sentence is grossly disproportionate such that it is an "unreasonable application of clearly established Federal law." White v. Woodall, 572 U.S. 415, 419 (2014). Accordingly, Rivera's claims regarding sentencing should be denied.

## CONCLUSION

Because Rivera's claims do not warrant habeas relief, I recommend DENYING the Petition. I further recommend that the Court decline to issue a certificate of appealability because Rivera has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c), and appellate review is therefore not warranted. Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005).

* * *

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be addressed to the Honorable Ronnie Abrams and filed with the Clerk of the Court, with courtesy copies mailed to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Abrams. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

### All Citations

Not Reported in Fed. Supp., 2020 WL 5550047

## Footnotes

1 The relevant facts are presented in the light most favorable to the verdict. See Garbutt v. Conway, 668 F.3d 79, 80 (2d Cir. 2012). The Defense provided no testimony at trial. Additional facts are presented throughout this Report and Recommendation where relevant.

2 The citations in this section are to the pages of the trial transcript ("Tr."), which Respondent filed as multiple exhibits to the Response. See ECF Nos. 21-7, 21-8, 21-9.

3 In support of the Petition, Rivera submits a Memorandum of Law (ECF No. 2 at 11-60, ECF No. 2-1 at 1–7, cited herein as "Pet. Mem."). Citations to both the Petition and to Rivera's Memorandum of Law are to the original page numbers.

4 The search warrant correctly described the target apartment address as "1L" where the felony complaint mistakenly described the target apartment address as "1M." Compare ECF No. 21-5 at 774–75, with ECF No. 21-2 at 67.

5 Rivera's sole argument raised in this Petition and not at the pretrial stage—that the search warrant applications relied in part "upon Petitioner's prior bad acts that had actually terminated in her favor" in violation of CPL § 160.50—is also non-cognizable on habeas review because it alleges a violation of state law only, as explained herein.

6 During opening statements, Garay's counsel told the jury that Garay belonged to a group of people who had "absolutely nothing to do with" the alleged drug organization at the heart of the People's case against Rivera. ECF No. 21-7 at 61–64.

7 Rivera also suggests that her trial counsel's ineffectiveness was the "cause" for her failure to timely file a severance motion. See ECF No. 2 at 4. This claim is addressed in Section H, *infra*, and should be denied for reasons explained therein.

8 Some courts in this Circuit have also held that claims based on the denial of severance motions are subject to the more demanding "fundamental fairness" standard upon federal habeas review. Under that standard, a petitioner seeking habeas relief based upon the denial of a severance motion must, "at a minimum, demonstrate 'that [she] was so severely prejudiced by the joinder as to have been denied a fair trial.' " Anderson v. Lempke, 11-cv-8240 (NSR)(PED), 2015 WL 4104605, at *13 (S.D.N.Y. July 6, 2015) (quoting Grant v. Hoke, 921 F.2d 28, 31 (2d Cir. 1990)); see also Shodunke v. County of Queens, 07-cv-329 (RJD), 2009 WL 5172895, at *2 (E.D.N.Y. Dec. 30, 2009). Under either the fundamental fairness standard or the generally applicable standard of the AEDPA, I find Rivera's claim should be denied.

9 Whether Rivera specifically requested new counsel is not apparent, but in light of Rivera's status as a *pro se* litigant, I interpret the Petition to raise the argument suggested.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 3572880
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Lillian RIVERA, Petitioner,
v.
Sabrina KAPLAN, Respondent.

No. 17-CV-2257 (RA) (SN)
|
Signed August 19, 2022

**Attorneys and Law Firms**

Lillian Rivera, Bedford Hills, NY, Pro Se.

Paul Bernard Lyons, New York State Office of the Attorney General, New York, NY, for Respondent.

ORDER ADOPTING REPORT AND RECOMMENDATION

RONNIE ABRAMS, United States District Judge:

***1** In this petition for a writ of habeas corpus (the "Petition") filed pursuant to 28 U.S.C. § 2254, Lillian Rivera challenges her conviction, following a jury trial, for conspiracy in the second degree, criminal possession of a controlled substance in the first and third degrees, and criminal sale of a controlled substance in the third degree. Each of these charges stemmed from a large-scale cocaine dealing operation led by Rivera. Following her trial, she directly appealed to the New York Supreme Court's Appellate Division, which upheld her conviction; she then moved to vacate her conviction pursuant to New York Criminal Procedure Law § 440.10, also without success. [1] Rivera subsequently filed the instant Petition, which this Court referred to Magistrate Judge Sarah Netburn for a Report and Recommendation (the "Report"). Judge Netburn has recommended dismissing each of Rivera's claims, and Rivera has filed objections. The Court assumes the parties' familiarity with the facts, as outlined in detail in the Report. For the reasons that follow, the Court adopts the Report in its entirety and dismisses the Petition.

## LEGAL STANDARDS

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). In doing so, it may "adopt those portions of the recommendation to which 'specific, written objection' is made, as long as those sections are not clearly erroneous." *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (quoting Fed. R. Civ. P. 72(b)). "A magistrate judge's decision is clearly erroneous only if the district court is left with the definite and firm conviction that a mistake has been committed." *Stenson v. Heath*, No. 11-CV-5680 (RJS), 2015 WL 3826596, at *2 (S.D.N.Y. 2015). [2] A court must, by contrast, undertake a *de novo* review of those portions of a report to which specific objections have been made. *See* § 636(b)(1)(C); *Greene*, 956 F. Supp. at 513. "Objections of *pro se* litigants are generally accorded leniency and construed to raise the strongest arguments that they suggest." *Quinn v. Stewart*, No. 10-CV-8692 (PAE) (JCF), 2012 WL 1080145, at *4 (S.D.N.Y. Apr. 2, 2012).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that when a state court has previously adjudicated the merits of a petitioner's habeas claim, a federal district court may grant relief only where the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § (d)(2). *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) (noting that § 2254(d) is "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions"). A state court decision is "contrary" to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision constitutes an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* Federal habeas courts must also "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' " *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting § 2254(e)(1)).

***2** Moreover, a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment," *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," *id.* at 750. Procedural default precludes habeas review when "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005).

Finally, a federal court may not grant habeas relief unless a petitioner has exhausted her claims. Exhaustion requires an individual to "fairly present" her claims to the state courts, that is, to "present[ ] the essential factual and legal premises of [her] federal constitutional claim to the highest state court capable of reviewing it." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014). Although she need not "cite chapter and verse of the Constitution," she must express her claim "in terms that are likely to alert the state courts to the claim's federal nature." *Id.*

**DISCUSSION**

Rivera's Petition alleges the following: the state trial court violated her Fourth Amendment rights by denying, without a hearing, her motion to suppress evidence obtained from her arrest, a search of her apartment, and a wiretap; the state trial court violated her right to a fair trial by admitting certain exhibits and testimony and by denying her motions to sever her trial from that of her co-defendant; the state trial court violated her Confrontation Clause rights by admitting certain hearsay evidence; the prosecution failed to timely disclose allegedly exculpatory information in violation of *Brady v. Maryland*; her trial counsel was constitutionally ineffective by failing to object to the admission of certain evidence and by failing to adopt her *pro se* severance motion; and the state trial court's sentence was constitutionally excessive. In a 52-page Report, Judge Netburn reviewed Rivera's claims and found that each one either was unexhausted, was procedurally barred, failed on the merits, or suffered from multiple of these defects.

Rivera filed a Notice of Objections in which she appears to object to virtually the entirety of the Report. Namely, she challenges: (1) the determination that her Fourth Amendment claim is both procedurally defaulted and incognizable on habeas review; (2) the determination that her Title III claim challenging the admission of wiretap evidence is both unexhausted and fails on the merits, as well as the legal standard that the Report employed in reviewing that claim; (3) the determination that she has procedurally defaulted her severance claim, has not shown cause or prejudice excusing that default, and that the severance claim fails on the merits; (4) the determination that her *Brady* claim is unexhausted and fails on the merits; (5) the determination that her Confrontation Clause claim is procedurally barred and fails on the merits; (6) the determination that her juror-replacement claim is procedurally barred and fails on the merits; (7) the determination that her unsworn-witness claim is procedurally barred and fails on the merits; (8) the determination that her ineffective assistance of counsel claim is procedurally barred and fails on the merits; and (9) the determination that her Eighth Amendment claim fails on the merits. The Court has reviewed each of Rivera's objections to the Report and concludes that none of them have merit.

***3** As an initial matter, the Court notes that several of Rivera's objections constitute perfunctory or conclusory responses to the Report's findings, or repeat the arguments made in her initial Petition. Those objections will be reviewed only for clear error. *See* *Alfaro v. Capra*, No. 13-CV-5867 (RA) (GWG), 2016 WL 6778798, at *2 (S.D.N.Y. Nov. 14, 2016) ("Because Petitioner merely reiterates his original arguments raised before the magistrate judge, the Court reviews the Report for clear error."); *Barratt v. Joie*, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) (explaining that when a petitioner "makes only conclusory or general objections, or simply reiterates [her] original arguments, the Court reviews the Report and Recommendation only for clear error"); *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition."); *Pinkney v. Progressive Home Health Servs.*, No. 06-CV-5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008) ("[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal."). [3]

***Fourth Amendment Claim*** [4]

***4** Rivera first objects to the Report's determination that her Fourth Amendment claim, which challenges the denial of her suppression motion without a hearing, is incognizable on habeas review pursuant to *Stone v. Powell*, 428 U.S. 465 (1976), as well as the Report's decision not to instead analyze this claim as a cognizable due process claim. *See* Objections at 2. "As a general rule, Fourth Amendment claims are not reviewable by the federal courts when raised in a petition brought under § 2254 unless the [petitioner] shows that he or she has not had a full and fair opportunity to litigate that claim in the state court." *Graham v. Costello*, 299 F.3d 129, 133-34 (2d Cir. 2002). Accordingly, such claims are reviewable on habeas only "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

The Court agrees with the Report's finding that Rivera had a full and fair opportunity to litigate her suppression motion, which renders her Fourth Amendment claim incognizable. As to *Capellan*'s first prong, New York's corrective procedures to remedy Fourth Amendment violations have been deemed "facially adequate." *See id.* at 70 n.1. As to its second prong, an "unconscionable breakdown" in a facially adequate corrective mechanism occurs only "where the petitioner demonstrates that no state court conducted a reasoned method of inquiry into relevant questions of fact and law, or any inquiry at all into the Fourth Amendment claim." *Washington v. Walsh*, No. 10-CV-7288 (RJS), 2015 WL 4154103, at *18 (S.D.N.Y. July 9, 2015). Rivera cannot demonstrate as much here, as the record indicates that she raised her Fourth Amendment claim before both the state trial court and the Appellate Division, and that both courts conducted an inquiry into the merits of that claim. *See* SR 84-87 (state trial court finding that Rivera's "conclusory allegations ... do not supply a factual basis for suppression" of property recovered from her person during her arrest, that Rivera likely did not have a reasonable expectation of privacy in the premises that were searched, and that Rivera had failed to present a legal issue as to the facial invalidity of the search warrants); SR 607 (Appellate Division affirming all aspects of the trial court's decision). [5]

Rivera appears to challenge in particular the state trial court's decision not to hold a hearing before denying the suppression motion—but "the absence of a suppression hearing, in and of itself, does not rise to the level of an unconscionable breakdown in the underlying process." *Harrison v. Smith*, No. 05-CV-5953 (JGK), 2012 WL 3822211, at *2 (S.D.N.Y. Sept. 4, 2012). *Accord Clanton v. LaClair*, No. 14-CV-4551 (ER) (MHD), 2015 WL 13832649, at *11-12 (S.D.N.Y. Nov. 4, 2015), *adopted by* 2019 WL 4688725 (finding that the state court's decision not to hold an evidentiary hearing pursuant to *Franks v. Delaware* did not constitute an unconscionable breakdown); *Kirk v. Burge*, 646 F. Supp. 2d 534, 545 (S.D.N.Y. 2009) (finding that the state court's decision not to hold a *Mapp/Dunaway* hearing did not constitute an unconscionable breakdown). Moreover, as Judge Netburn rightly observes, "[i]f the substance of the claim is a Fourth Amendment claim, *Stone* applies even if the claim is also characterized as a due process claim." *Salcedo v. Smith*, No. 05-CV-3497 (JGK), 2006 WL 1644700, at *3 n.1 (S.D.N.Y. June 13, 2006). There was thus no error in treating Rivera's claims challenging the validity of various searches as arising under the Fourth Amendment rather than under the Due Process Clause.

***Title III Claim***

The Court next turns to Rivera's Title III claim, in which she argues that evidence obtained from wiretaps of her cell phones was admitted in violation of that federal statute, thus infringing on her rights to due process and a fair trial.

***5** As an initial matter, the Report employed the correct legal standard in assessing this claim. In *Hill v. United States*, 368 U.S. 424 (1979), the Supreme Court explained that habeas review of an alleged violation of a federal statute is cognizable only when the claim asserts "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *Id.* at 428. Rivera contends that this standard applies only to individuals who are in federal custody, such as the habeas petitioner in *Hill*. *See* Objections at 3-4. But the Supreme Court's subsequent "decisions assume that *Hill* controls collateral review—under both §§ 2254 and 2255—when[ever] a federal statute, but not the Constitution, is the basis for the postconviction attack." *Reed v. Farley*, 512 U.S. 339, 353-54 (1994). *Cf. Reilly v. Warden, FCI Petersburg*, 947 F.2d 43, 44-45 (2d Cir. 1991) (per curiam) (explaining that §§ 2254 and 2255 "have the same operative effects" and "the same operative limitations, at least with regard to the magnitude and nature of the error required to sustain

a collateral attack"). Thus, assuming without deciding that Title III provides an independent ground for habeas relief separate from the Fourth Amendment, *see Gjelaj v. Ercole*, No. 09-CV-3126 (KMW) (PED), 2012 WL 4450983, at *15 (S.D.N.Y. Feb. 9, 2012), *adopted by* 2012 WL 4435299 (explaining that the Second Circuit has not yet decided whether Title III claims constitute an independent basis for federal habeas relief), [6] the Report is correct that *Hill* governs such claims.

Nor are Rivera's objections to the Report's Title III merits analysis availing. As relevant here, Title III requires that a wiretap application include "details as to the particular offense that has been, is being, or is about to be committed" and state whether "other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(b)-(c). *See United States v. Lambus*, 897 F.3d 368, 394 (2d Cir. 2018). District courts in this Circuit are split as to when a Title III violation might result in such a miscarriage of justice. One court has suggested that any "conviction based on evidence obtained in violation of [the] statute is fundamentally defective and results in a miscarriage of justice." *Cruz v. Alexander*, 477 F. Supp. 516, 521 (S.D.N.Y. 1979), *appeal dismissed*, 622 F.2d 573 (2d Cir. 1980). Others, by contrast, have "concluded that even substantial violations of the procedures mandated by Title III are not cognizable on habeas review." *Gjelaj*, 2012 WL 4450983, at *15 (citing *Hussong v. Warden*, 623 F.2d 1185, 190-91 (7th Cir. 1980), and *Barbosa v. Bissonnette*, 434 F. Supp. 2d 25, 34-35 (D. Mass. 2006)). *See also Lord v. Lambert*, 347 F.3d 1091, 1095 (9th Cir. 2003) (holding that alleged violations of Title III did not result in a fundamentally unfair proceeding or a miscarriage of justice because the petitioner had received a full and fair hearing on his suppression claim and other trial evidence established the reliability of the evidence obtained through the wiretap).

Rivera asserts that the wiretap application failed to comply with Title III in two ways: first, because the detective who submitted an affidavit in support of the application "admitted that ... [prior] investigative methods had proved to be fruitful at the time of such [wiretap] application," and second, because the affidavits supporting the wiretap application failed to include "details of the offense that has been, is being, or is about to be committed." Objections at 4. Both arguments are unavailing. In denying Rivera's motion to suppress the wiretap evidence, the state trial court found that the supporting affidavit adequately explained that "conventional investigative methods, while productive, [had] yielded limited information and reasonably appeared to be unlikely to produce the evidence necessary to accomplish the goals of the investigation," such as capturing the contents of conversations between certain individuals, or were "too dangerous to employ." SR 78. That these prior investigations had produced "limited" evidence does not mean that those investigations were "fruitful" or had succeeded. Moreover, Title III does not require that "any particular investigative procedures must be exhausted before a wiretap may be authorized"; it requires only "disclosure as to the use, success, and potential success of other investigative techniques." *United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997). *See also United States v. Tomero*, 462 F. Supp. 2d 565, 570 (S.D.N.Y. 2006) ("Section 2518(3)(c)'s exhaustion requirement is far from an insurmountable hurdle. The government must demonstrate only that normal investigative techniques would prove difficult."). The affidavit supports the state trial court's finding, as it explains in detail how a variety of traditional investigative techniques, such as confidential informants, physical surveillance, and phone billing records, had been used to some success but would be insufficient to achieve the ultimate objectives of the investigation, and how other techniques, such as a grand jury, DMV and criminal history checks, and search warrants, would similarly be unhelpful at the then-present stage of the investigation. *See* SR 139-50. Similar affidavits have been repeatedly approved as compliant with Title III. *See, e.g.*, *United States v. Villarman-Oviedo*, 325 F.3d 1, 10-11 (1st Cir. 2003); *Tomero*, 462 F. Supp. 2d at 570-71; *United States v. Burford*, 755 F. Supp. 607, 613 (S.D.N.Y. 1991). Rivera's second argument is meritless as the affidavit describes, in significant detail, the drug conspiracy that was "being ... committed" and of which Rivera was ultimately convicted, including Rivera's involvement in that conspiracy. *See* SR 123-39. [7] Without any indication that a Title III violation occurred, Rivera's claims based on that statute cannot prevail. And even if Rivera had shown such a violation, the Court finds that any erroneous admission of evidence did not result in a complete miscarriage of justice or deprive Rivera of the rudimentary demands of fair procedure. *See Hill*, 368 U.S. at 428.

***Severance Claim***

***6** The Court next considers Rivera's objection to the Report's recommended dismissal of her claim that her right to a fair trial was violated when the state trial court declined to sever her trial from that of her co-defendant's. As an initial matter, it notes that Rivera raised multiple severance motions

on multiple grounds, not all of which have been preserved. First, she filed a *pro se* motion before trial requesting severance to prevent her co-defendants from "incriminating [her] further." SR 282-83. Second, her defense counsel filed an omnibus motion before trial that included a motion to sever on the same ground—that Rivera's Confrontation Clause rights would be violated by the introduction of out-of-court statements of her co-defendant. *Id.* at 109-10. Third, and most relevant here, trial counsel made an oral motion to sever after the summation of Rivera's co-defendant, Benny Garay, arguing that the summation was prejudicial to Rivera because Garay's counsel had asserted that Rivera was the leader of the conspiracy. *See* Trial Tr. at 2255-57.[8] The state trial court never appeared to address Rivera's *pro se* motion, but it denied the omnibus motion before trial, finding that the statements the prosecution intended to introduce from co-defendants did not implicate Rivera. *See* SR 87. As to the post-summation severance motion, although the state trial court's initial response to counsel's application was merely that it was "way to[o] late now," Trial Tr. at 2255, the court then appeared to deny that motion on the merits, observing that "[co-]counsel's arguments were basically this is what the People are going to allege is proof against this person. Look how different it is on the proof they show on another [defendant]," *id.* at 2257. The trial court then denied counsel's subsequent motion for a mistrial on this ground. *Id.* at 2370-73. In denying a mistrial, the court again concluded that Garay's defense "wasn't an inconsistent defense with [that of] Ms. Rivera" and that Garay's summation had "just pointed out the evidence to the jury so they wouldn't confuse who the evidence pertained to, not that it was truthful evidence, [or that] it was accurate evidence." *Id.* at 2373.

On direct appeal, Rivera challenged only the denial of the post-summation severance motion and the denial of the corresponding motion for a mistrial. *See* SR 388-95. The Appellate Division affirmed on two grounds. First, although Rivera's counsel had, throughout trial, repeatedly attempted to reserve his right to make a severance motion if and when Garay's defense became so antagonistic with Rivera's that it prejudiced Rivera, *see* Trial Tr. at 131-32, 376, the court held that the "motion was untimely," and that good cause for the untimeliness had not been shown because Rivera's counsel had been "in a position to ascertain the codefendant's planned defense long before trial," SR at 608. Second, it held that Rivera had "failed to demonstrate that her defense and that of her codefendant had become so antagonistic as to require separate trials" and that the references to Rivera in Garay's summation "were not so prejudicial as to deny defendant a fair trial" such that "any error in denying the severance motion was harmless." *Id.* at 608-09. The § 440 court, in turn, concluded that the claim was procedurally barred because it had been raised and decided on the merits on direct appeal. *Id.* at 813 (citing N.Y. C.P.L. § 440.10(2)(a)).

Without commenting on the Appellate Division's untimeliness finding the Court concludes that its dismissal of Rivera's severance claim on the merits was not an unreasonable application of federal law. A habeas petitioner challenging the denial of a severance motion must show, at minimum, prejudice sufficient to warrant relief under Federal Rule of Criminal Procedure 14 or its state counterpart. *See* *Grant v. Hoke*, 921 F.2d 28, 31 (2d Cir. 1990); Fed. R. Crim. P. 14(a) ("If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."). The Second Circuit has explained that even when there is "considerable antagonism" between defenses, habeas relief is not warranted unless a jury, "in order to believe the core testimony offered on behalf of [a co-defendant], must necessarily have disbelieved the defense offered on behalf of [the petitioner]" such that the resulting trial was "fundamentally unfair." *Grant*, 921 F.2d at 32. During Garay's summation, his counsel asserted—over Rivera's counsel's objection—that Rivera was "the boss" of the other members of the alleged conspiracy, and that all other individuals "answer[ed]" to her. Trial Tr. at 2223. Notwithstanding these isolated comments at summation, Court agrees with the Report that a jury could believe both Garay's defense and Rivera's defense—such as, for instance, by concluding that the Government had not proved the existence of a conspiracy at all. *See* Report at 28. Moreover, given the overwhelming evidence that was presented during trial establishing Rivera's leadership role in the conspiracy, the Court is inclined to conclude that counsel's statements at summation did not prejudice Rivera. Accordingly, the state court's decision that Rivera was not deprived of a fair trial was not an unreasonable application of federal law.

***Brady Claim***

***7** Next, Rivera objects to the Report's recommended dismissal of her *Brady* claim. Her objection, however, merely reiterates her earlier argument that she was prejudiced by the prosecution's withholding of the fact that her co-defendant had a proffer session because had she known this fact earlier, she would have timely raised and ultimately prevailed on a

severance motion. *See* Objections at 7. She does not even purport to argue why the withheld information from the proffer agreement was favorable to her, as is required to state a *Brady* claim, *see* *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Indeed, given the fact that Rivera's counsel posited that severance would be warranted if any part of the proffer were admitted into evidence, *see* Trial Tr. at 372-76, it seems more likely the case that the contents of the proffer were harmful to her defense. In any event, because Rivera's objection merely reiterates her Petition's initial arguments, the Court reviews the Report's ruling on her *Brady* claim for clear error and finds none.

***Confrontation Clause Claim***

Turning to Rivera's objections to the Report's recommended dismissal of her Confrontation Clause claim, the Court agrees with the Report's finding that an adequate and independent state ground bars review of this claim. "New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record." *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) (citing N.Y. C.P.L. § 440.10(2)(c)). A state court's invocation of § 440.10(2)(c) to deny a claim is recognized as an adequate and independent state law ground that bars habeas review of that claim. *See, e.g.*, *Clark v. Perez*, 510 F.3d 382, 390-91 (2d Cir. 2008); *Felder v. Goord*, 564 F. Supp. 2d 201, 215 (S.D.N.Y. 2008); *Brown v. McKinney*, 358 F. Supp. 2d 161, 170 (E.D.N.Y. 2005). Because Rivera did not raise a Confrontation Clause claim on her direct appeal, *see* SR 317-435, despite such a claim being available on the existing record, the § 440 court properly determined that it was compelled to deny the claim when Rivera belatedly raised it, *see id.* at 639-50, 813; nor may this Court review it.

Rivera argues that this claim is not procedurally barred because "there is no longer an availability of state court corrective action." Objections at 7. But this language describes the standard for exhaustion, not procedural default. *See, e.g.*, *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) ("[I]f the petitioner no longer has remedies available in the state courts under 28 U.S.C. § 2254(b), we deem the claims exhausted."). Rivera also suggests that her trial counsel's ineffectiveness suffices as cause for this procedural default. Objections at 7. But she was represented by new counsel on her direct appeal, and does not argue that her direct appeal counsel was ineffective, *cf.* *Moseley v. Scully*, 908 F. Supp. 1120, 1128 (E.D.N.Y. 1995), *aff'd*, 104 F.3d 356 (2d Cir. 1996) (finding that § 440.10(2)(c) did not bar habeas review when a petitioner was represented by the same allegedly ineffective counsel at trial and on direct appeal); this warrants dismissal of her claim.

***Juror-Replacement Claim***

Rivera next objects to the Report's recommendation to dismiss her claim challenging the use of an alternate juror at trial after an original juror called in sick. The Report is correct, however, that this claim is procedurally barred under § 440.10(2)(c) because, as the § 440 court concluded, it was record-based and could have been, but was not, raised on Rivera's direct appeal. *See* SR 814-15. Moreover, the Report properly concluded that this claim raises only a state law issue, not a violation of federal law that is cognizable on habeas review. *See* *Hughes v. Phillips*, 457 F. Supp. 2d 343, 368 (S.D.N.Y. 2006). In disputing this determination, Rivera cites the Fifth Amendment's Double Jeopardy Clause, as well as *Illinois v. Somerville*, 410 U.S. 458 (1973), and *United States v. Jorn*, 400 U.S. 470 (1971), both of which concern the application of double jeopardy to a mistrial—but she does not explain how the replacement of a juror during trial, without more, implicates that doctrine here. The Court therefore agrees that this claim is without merit.

***Unsworn-Witness Claim***

***8** Rivera also objects to the Report's recommended dismissal of her claim that the trial judge and prosecutor improperly acted as "unsworn witnesses" against her. In doing so, however, she admits that her objections mirror in her initial Petition. *See* Objections at 9 ("With respect to the merits of Petitioner's claim, Petitioner objects on the ground that the admission of this evidence is a violation of clearly established Federal law, as indicated in Petitioner's initial petition."). The Court finds that this objection is conclusory as it merely repeats the arguments already made to Judge Netburn, and thus warrants only clear error review. Conducting such review, there is no clear error in the Report's findings that the claim both is procedurally barred under § 440.10(2)(c) and fails on the merits.

***Ineffective Assistance of Counsel Claim***

The Court next turns to Rivera's ineffective assistance of counsel claim. To prevail on such a claim, a petitioner must show both that counsel's performance "fell below an objective standard of reasonableness" and that the petitioner was prejudiced by that unreasonable performance. *Strickland*

v. Washington, 466 U.S. 668, 688, 694 (1984). To show prejudice, a petitioner must demonstrate a "substantial" likelihood that, but for counsel's errors, the result of the trial would have been different. Harrington, 562 U.S. at 111-12; Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005). The Report recommended denying this claim both on procedural grounds and on the merits. In objecting to the Report's merits analysis, Rivera merely repeats her petition's initial argument in conclusory terms, without objecting to any specific finding of the Report. *See* Objections at 9 ("Petitioner avers that she has, in fact, met both prongs of the *Strickland* standard."). This is a generalized objection that repeats the arguments initially made to Judge Netburn, and therefore does not warrant *de novo* review. Nor, on conducting clear error review, does the Court find any clear error in Judge Netburn's recommendation that Rivera's ineffective assistance claim be dismissed on the merits.

Rivera also objects to the Report's findings regarding her "substitution-of-counsel" claim, which stands on slightly different footing than her traditional ineffective assistance of counsel claim. This allegation stems from Rivera's repeated complaints, at trial, that her lawyer was "refusing to help" her; "not listening" to her; not filing motions at her direction; and "not telling [her] story." Trial Tr. at 1813-17, 1886. She asserts that the trial court improperly failed to acknowledge these complaints, thus depriving her of her Sixth Amendment rights. The Report recommended denying this claim as procedurally barred pursuant to § 440.10(2)(c) and on the merits. As an initial matter, the Court agrees that this claim is procedurally barred, as the § 440 court explicitly concluded that the basis for this argument was available on the record but not raised on Rivera's direct appeal. *See* § 440.10(2)(c); SR 815; Report at 47.

This claim also fails on the merits. Where, as here, "a defendant articulates the reasons for [her] request for new counsel [at trial], the failure of a trial judge to inquire into that request is a procedural irregularity, which may not itself be a basis for granting habeas relief." Norde v. Keane, 294 F.3d 401, 412 (2d Cir. 2002). "Instead, in order to succeed on this Sixth Amendment claim, the petitioner must demonstrate that [s]he was harmed by the trial judge's failure to inquire." *Id.* Here, the record shows that the state trial court appropriately inquired into Rivera's request to substitute counsel (to the extent her statements at trial can be generously construed as such a request). After Rivera voiced her complaints, the court gave her an opportunity to be heard outside the jury's presence; she elaborated that her lawyer was "refusing to help" her and that the case against her was nothing more than an effort by the prosecutor to "retaliate" against her. Trial Tr. at 1882-83. She also requested the court appoint an "independent federal prosecutor" and allow her to call additional witnesses. *Id.* The court advised Rivera that she had the right to testify in order to "tell her story," but that her attorney could not testify on her behalf for that purpose. *Id.* at 1883-84. The court also told Rivera that her counsel was in the best position to determine whether to call witnesses. *Id.* at 1883. He then appeared to deny her motion by stating, "We are doing the trial." *Id.* at 1885. The § 440 court rejected Rivera's resulting claim on the merits, determining that the state trial court's responses were "proper" and that Rivera received "ample opportunity" to be heard on her complaints. SR 815. The Court agrees with Judge Netburn that this conclusion did not constitute an unreasonable application of clearly established federal law. *See* Report at 49.

***Eighth Amendment Claim***

***9** Finally, Rivera objects to the Report's recommendation that her Eighth Amendment claim, which challenges her sentence as excessive, be dismissed. Her argument, however, cites either inapplicable caselaw on vindictive prosecution, *see* Objections at 11 (citing United States v. Goodwin, 457 U.S. 368 (1982)),[9] or New York state cases that cannot be the source of controlling federal law that would warrant habeas relief, *see id.* (citing People v. Broadie, 332 N.E.2d 338 (N.Y. 1975)). Nor does she otherwise establish how her 25-year sentence is grossly disproportionate to her offense of conviction such that an Eighth Amendment challenge might be successful, *see* Harmelin v. Michigan, 501 U.S. 957, 963 (1991). Accordingly, her Eighth Amendment claim cannot prevail.

***

The Court has reviewed all the remaining portions of the thorough and well-reasoned Report for clear error and finds none.

**CONCLUSION**

For the foregoing reasons, the Court adopts the Report in its entirety and dismisses Rivera's Petition. Because Rivera has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not be

issued, in accordance with Judge Netburn's recommendation. *See* 28 U.S.C. § 2253(c)(2).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3572880

## Footnotes

1 § 440.10 provides that a defendant may move the court that entered a judgment to vacate that judgment on multiple potential grounds, including that the "judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States." N.Y. C.P.L. § 440.10(1)(h).

2 Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes.

3 For some claims that the Report recommends dismissing on multiple grounds, the Court chooses for efficiency to adopt only one of those dispositive findings. *See* *Dunham v. Travis*, 313 F.3d 724, 729-30 (2d. Cir. 2002) (explaining that "hurdling the procedural questions to reach the merits of a habeas petition is justified" when the merits are "easily resolvable against the habeas petitioner, whereas the procedural-bar issue involves complicated issues of state law"); *Green v. Legoney*, No. 09-CV-0747 (SAS), 2012 WL 5278465, at *8 (S.D.N.Y. Oct. 25, 2012) (disposing of a claim on the merits "in the interests of judicial economy"); *Totesau v. Lee*, No. 19-CV-6992 (PKC), 2022 WL 1666895, at *19 n.30 (E.D.N.Y. May 25, 2022) ("This Court declines to address the procedural default because the merits of the underlying claims are easily resolved against Petitioner."). In particular, because "[f]ederal courts disagree as to whether a New York state court's reliance on CPL § 440.10(2)(a) constitutes a procedural bar that precludes federal habeas review," *Jiang v. Larkin*, No. 12-CV-3869 (PGG) (SN), 2016 WL 1718260, at *22 & n.6 (S.D.N.Y. Apr. 28, 2016) (collecting cases, including conflicting Second Circuit authority), the Court elects to deny certain claims on the merits rather than addressing the applicability of that state law provision as a procedural bar.

4 In her objection with respect to this claim, Rivera appears to argue that Judge Netburn erroneously concluded that New York Criminal Procedure Law § 160.50—which, as relevant here, requires sealing prior criminal proceedings that terminated in a defendant's favor—constituted an adequate and independent ground for the dismissal of her Fourth Amendment claim. *See* Objections at 1 ("Petitioner objects to Magistrate Netburn's assertion that CPL 160.50 contained adequate and independent state grounds."). This argument misreads the relevant portion of the Report: Judge Netburn found instead that to the extent Rivera's Petition relies on an alleged violation of § 160.50, it fails because violations of state law, without more, are not cognizable on habeas review. *See* Report at 18 ("[T]he Petition may be interpreted to assert ... that the search warrant applications relied in part upon Rivera's prior bad acts that had actually terminated in her favor in violation of CPL § 160.50 ... These claims ... should be denied to the extent Rivera bases her arguments on alleged violations of state law only.") (alterations, citations, and quotation marks omitted); *see also id.* at 38. There is no error in this holding. *See* *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."). To the extent Rivera's objections may be read to argue instead that the alleged violation of § 160.50 violated her federal due process rights, *see id.* at 23, 38-39, Judge Netburn is correct that this argument also fails because the Supreme Court has not yet determined whether the admission of "prior crimes" evidence to show propensity runs afoul of the Due Process Clause, and Rivera has not otherwise argued how the allegedly erroneous admission of such evidence denied her the right to a fair trial. *See* *Estelle*, 502 U.S. at 75 n.5. Indeed, Rivera appears to acknowledge this in her objections.

*See* Objections at 9 ("Regarding Rivera's initial contention that her trial was fundamentally unfair due to the improper admission of prior bad acts which violated her right to Due Process, Petitioner agrees to abandon this claim ... due to the fact that there is no Supreme Court precedent on this issue in a Habeas proceeding."). Finally, to the extent these arguments were not presented to the state courts despite being apparent from the record, they are procedurally barred under § 440.10(2)(c). *See* Report at 18; SR 813-14.

5 Citations to "SR" refer to the state court records, which may be found at ECF 21.

6 *But see* *Pobliner v. Fogg*, 438 F. Supp. 890, 892 (S.D.N.Y. 1977); *Zagarino v. West*, 422 F. Supp. 812, 819 (E.D.N.Y. 1976) (both finding that *Stone v. Powell* bars Title III claims to the same extent as Fourth Amendment claims).

7 Rivera objects to a second affidavit submitted by another detective in support of the wiretap application—which described several purported incidents showing Rivera's alleged propensity for violence in order to establish that other investigative procedures would be too dangerous—on the ground that the proceedings regarding those prior bad acts terminated in her favor. *See* SR 159-63. But Title III requires only that a wiretap application be supported by details "of the offense that has been, is being, or is about to be committed," which the primary affidavit amply supplied.

8 Citations to "Trial Tr." refer to the state court trial transcript, which may be found at ECF 21.

9 Rivera does not purport to raise a claim of vindictive prosecution in violation of her due process rights, nor does the Court discern any such claim in her Petition.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 582467
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Frank R. STEVENSON, Petitioner,
v.
Superintendent Michael CAPRA, Respondent.

17-CV-5251 (MKB)
|
Signed 01/26/2018

**Attorneys and Law Firms**

Frank R. Stevenson, Ossining, NY, pro se.

Ruth Elizabeth Ross, Kings County Dictrict Attorney's Off., Brooklyn, NY, Kings County District Attorneys Office, New York State Attorney Generals Office, for Respondent.

**MEMORANDUM & ORDER**

MARGO K. BRODIE, United States District Judge:

***1** Petitioner Frank R. Stevenson, proceeding *pro se* and currently incarcerated at Sing Sing Correctional Facility, brings the above-captioned habeas corpus petition pursuant to 28 U.S.C. § 2254, in which he alleges that he is being held in state custody in violation of his federal constitutional rights. (Pet., Docket Entry No. 1.) Petitioner's claims arise from a judgment of conviction in New York State Supreme Court, Kings County, for rape in the first degree, sexual abuse in the first degree, and endangering the welfare of a child. (Pet. ¶ 4.) Currently before the Court is Petitioner's motion to hold his habeas petition in abeyance while he pursues a motion to vacate his conviction pursuant to New York Criminal Procedure Law ("C.P.L.") section 440.10 in state court. (Pet. Mot. Stay ("Pet. Mot."), Docket Entry No. 14.) For the reasons set forth below, Petitioner's motion is denied without prejudice.

**I. Background**

On May 8, 2013, Petitioner was convicted of rape in the first degree, sexual abuse in the first degree, and endangering the welfare of a child. (Pet. ¶ 4.) The Appellate Division, Second Department affirmed the conviction on June 17, 2015. *People v. Stevenson*, 11 N.Y.S.3d 646, 129 A.D.3d 998 (App. Div. 2015). The New York Court of Appeals denied leave to appeal on December 28, 2015. *People v. Stevenson*, 26 N.Y.3d 1092, 44 N.E.3d 947 (2015). On September 30, 2016, Petitioner filed a motion in New York State Supreme Court, Kings County pursuant to C.P.L. section 440.10, seeking to vacate the judgment of conviction, arguing, *inter alia*, that he was deprived of his right to effective trial counsel for trial counsel's failure to retain a medical expert to offer testimony on Petitioner's behalf. (Pet. ¶ 10.) On April 7, 2017, Petitioner's motion was denied. *People v. Stevenson*, Kings County Ind. No. 945/11 (Decision and Order dated Apr. 7, 2017). Petitioner sought leave to appeal from the Appellate Division, Second Department, which leave was denied on August 10, 2017. *People v. Stevenson*, A.D. Case No. 2017-05066 (App. Div. 2017).

On September 28, 2017, Petitioner filed a timely habeas petition with the Court, which petition includes five claims that have been exhausted in state court, and three claims which Petitioner concedes are currently unexhausted. (*See* Pet. ¶¶ 19–21.) On October 20, 2017, Respondent filed a letter with the Court, arguing that the petition should be dismissed without prejudice as a mixed petition of exhausted and unexhausted claims, or in the alternative, that Petitioner should be permitted to withdraw the petition in order to exhaust the unexhausted claims, or amend the petition by removing the unexhausted claims. (Resp't Letter dated Oct. 20, 2017, Docket Entry No. 20.)

On December 14, 2017, Petitioner filed the instant motion, requesting that the Court hold his petition in abeyance while he pursues the three unexhausted claims in state court through a second motion to vacate his conviction pursuant to section 440.10. (Pet. Mot. 1.) On the same day he filed his motion to hold the petition in abeyance, Petitioner filed a second motion pursuant to section 440.10 in New York State Supreme Court, Kings County. (*See* Mot. to Vacate J., annexed to Pet. Mot., Docket Entry No. 14-1.)

**a. Facts relating to Petitioner's unexhausted claims**

***2** The following facts are taken from the petition and the moving papers from Petitioner's second motion to vacate his conviction pursuant to section 440.10, which motion is attached to his motion for a stay and abeyance. Petitioner claims that "during the pendency of his initial [section 440.10] motion to vacate" his conviction, Petitioner "discovered a copy" of an affidavit filed by the prosecution prior to his trial, indicating that nine pages of medical records reflecting

the victim's examination after one of the incidents of sexual abuse (the "Medical Records") "were to be disclosed to the defense...." (Aff. in Supp. of Mot. to Vacate J. ("Section 440 Aff.") ¶ 5, annexed to Pet. Mot., Docket Entry No. 14-1; Pet. ¶¶ 19–21; *see also* Perry A. Cerrato Aff., annexed to Pet. as Ex. 1.) However, according to Petitioner, only six pages were turned over to his defense counsel. (Section 440 Aff. ¶ 5; Pet. ¶¶ 19–21.) Petitioner asserts that, based on this discovery—to which he alerted his attorney—"post-conviction counsel could have withdrawn [the motion] and pursue[d] a *Brady* claim" based on trial counsel's failure to detect this issue, "but [post-conviction counsel] elected not to do so." (Section 440 Aff. ¶ 5.) Petitioner argues that the prosecution's failure to turn over the three purportedly withheld pages in advance of his trial gives rise to (1) a claim under *Brady v. Maryland*, 373 U.S. 83, 83 (S.Ct. 1194, 10 L.Ed.2d 215 1963), (2) a Sixth Amendment claim for ineffective assistance of trial counsel for failure to raise this issue, and (3) a Sixth Amendment claim for ineffective assistance of counsel due to his post-conviction counsel's failure to raise the first and second claims during his post-conviction proceedings in state court. [1] (Pet. ¶¶ 19–21.)

**II. Discussion**

When a habeas petition is a "mixed" one—that is, one containing both exhausted and unexhausted claims—a district court has discretion to hold the petition in abeyance to permit a petitioner to exhaust the unexhausted claims, provided that the "petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that [he] engaged in intentionally dilatory litigation tactics." *Rhines v. Weber*, 544 U.S. 269, 278, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). The Court considers whether Petitioner's three unexhausted claims meet the factors set forth in *Rhines* warranting a stay of his habeas petition.

**a. Petitioner's Brady claim is meritless**

In a criminal prosecution, the government has a constitutional obligation to disclose material, exculpatory evidence to the defendant. *See Brady*, 373 U.S. at 87, 83 S.Ct. 1194. Under *Brady*, the government has a constitutional duty to disclose favorable evidence to the accused where such evidence is "material either to guilt or to punishment." *Strickler v. Greene*, 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting *Brady*, 373 U.S. at 87, 83 S.Ct. 1194). A *Brady* violation consists of three factors: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching"; (2) "that evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) "prejudice must have ensued." *Id.* at 281–82, 119 S.Ct. 1936. Evidence is material and prejudice results if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). A "reasonable probability" of a different result exists where the nondisclosure "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). "A reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the evidence, only that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial." *Smith v. Cain*, 565 U.S. 73, 75, 132 S.Ct. 627, 181 L.Ed.2d 571 (2012) (quoting *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555) (internal quotation marks omitted).

Here, Petitioner's *Brady* claim is without merit. Petitioner has put forth no evidence supporting his claim that the prosecution did not provide all documents necessary to comply with its *Brady* obligations, including all nine pages of the Medical Records. Nor has Petitioner persuaded the Court that the allegedly withheld material may contain exculpatory or impeaching evidence. Finally, Petitioner has provided no basis to infer that he was prejudiced by any failure to provide the additional pages. Petitioner's bare assertion that trial counsel "could have used the withheld material to strengthen the defense" falls short of suggesting a "reasonable probability" of a different result at trial. *See Washington v. Walsh*, No. 10-CV-7288, 2015 WL 4154103, at *21 (S.D.N.Y. July 9, 2015) (finding no *Brady* violation where "the petitioner has failed to explain how the contents of the [withheld evidence] are favorable to his position or specify how he was prejudiced by their being withheld, aside from a conclusory assertion that he 'could [have] made valuable use' of them") (adopting report and recommendation).

***3** Moreover, Petitioner's submissions reflect a belief that withheld evidence alone is sufficient to find a *Brady* violation regardless of the evidence's materiality. (*See* Pet. ¶ 21 ("Petitioner only has evidence the document's [sic] were withheld (hospital records Exhibit), and is not allowed to speculate what it is or may qualify as in regard to materiality although Petitioner's claim is borne out of evidence not suspicion...."); *see also* Mem. in Supp. of Mot. to Vacate J.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

("Section 440 Mem.") 10, annexed to Pet. Mot., Docket Entry No. 14-1 ("To whatever degree of materiality the missing, 'withheld' pages may turn out to be, it can be assumed to be of use to the defense ... unless the People prove otherwise.").) However, it is *Petitioner's* burden to establish not only that the pages withheld would have been favorable to his case, but that they are sufficiently material to "undermine[ ] confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555; *see also Ranta v. Bennett*, No. 97-CV-2169, 2000 WL 1100082, at *18 (E.D.N.Y. May 23, 2000) ("[I]t is not enough to warrant habeas relief to conclude that the newly discovered evidence, *if* credited by the jury, would have changed the result of the trial. Rather, the burden is on petitioner to 'convince' the court that there is a 'reasonable probability' that the jury would have been so affected." (citing *Strickler*, 527 U.S. at 289, 119 S.Ct. 1936)), *aff'd*, 189 Fed.Appx. 54 (2d Cir. 2006). While Petitioner's *Brady* claim may be more specific than other petitioners' "conclusory allegations that the government 'suppressed' or 'concealed' evidence," *Martinez v. Phillips*, No. 04-CV-8617, 2009 WL 1108515, at *26 (S.D.N.Y. Apr. 24, 2009), it is indistinguishable in its lack of support. *See Cornelius v. Cuomo*, No. 15-CV-1644, 2016 WL 4411417, at *3 (S.D.N.Y. Aug. 18, 2016) ("It is well established that the mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas relief." (quoting *Mallet v. Miller*, 432 F.Supp.2d 366, 378 (S.D.N.Y. 2006))).

The Court recognizes that Petitioner does not have, nor has he claimed to have seen, the additional pages of the Medical Records. However, a petitioner asserting a *Brady* violation is not excused from raising a colorable claim simply because he is unable to obtain the allegedly withheld evidence. *See, e.g., Pudelski v. Wilson*, 576 F.3d 595, 615 (6th Cir. 2009) (rejecting *Brady* claim based on state's failure to produce police report because "[i]t is simply not reasonable to conclude that ... hypothetical uses of the report, based on absolute speculation as to the contents of a report we have not seen, could even come close to meeting the burden that the law places on the petitioner to show that the police report contained material evidence"); *Bell v. Napoli*, No. 08-CV-9900, 2010 WL 8039333, at *21 (S.D.N.Y. Aug. 24, 2010) (rejecting *Brady* claim based on unproduced surveillance tape because "[h]aving never actually seen the tape, [the petitioner's] assertion that it would show that he did not 'display' what reasonably could have been perceived to be a firearm is mere speculation"), *report and recommendation adopted*, No. 08-CV-9900, 2011 WL 6097729 (S.D.N.Y. Dec. 7, 2011).

Moreover, any likelihood that the additional pages are material is further diminished in light of the inconsiderable role medical evidence played at Petitioner's trial. As the record demonstrates, Dr. Madhu Voddi, a medical specialist in child abuse employed at the Brooklyn Child Advocacy Center where the victim was examined, and who reviewed the Medical Records, testified that the examination did not yield *any* physical indications of sexual abuse. (Trial Tr. at 238:17–269:20, Docket Entry No. 13.) As Dr. Voddi's testimony on cross-examination made clear, the conclusion made by the victim's examiners that sexual abuse had occurred was made on the basis of the victim's own statements, and in view of the fact that a lack of abnormal physical findings "doesn't preclude child sexual abuse." (Tr. 248:19–20.) Defense counsel asked Dr. Voddi:

> Defense Counsel: What you're telling this jury is that in spite of the fact there wasn't one single physical indication of abnormality to [the victim's] genitalia, the fact that she had made a complaint was sufficient alone for a finding of or diagnosis of child sexual abuse. Yes or No?
>
> The Witness: Yes.

(*Id.* at 256:8–13.) In addition, in his summation, Petitioner's trial counsel pointed repeatedly to the lack of any medical evidence corroborating the accusations against Petitioner. (*Id.* at 298–316, 119 S.Ct. 1936.) This was also noted by the state court in denying Petitioner's initial motion to vacate his conviction pursuant to section 440.10. The state court observed that Petitioner's trial counsel "elicited testimony from [the prosecution's] expert establishing that there was nothing in the victim's physical examination that corroborated her complaint" and that "the jury was well aware that Dr. Voddi's diagnosis of sexual assault was exclusively based upon the victim's statement and the assumption that it is true ... and not based upon any physical evidence." *People v. Stevenson*, Kings County Ind. No. 945/11 (Decision and Order dated Apr. 7, 2017). Therefore, even assuming that the additional pages of the Medical Records revealed a completely unremarkable physical examination, they would be entirely consistent—and therefore cumulative—of the evidence presented at trial. *United States v. Malachowski*, 623 Fed.Appx. 555, 558 (2d Cir. 2015) (affirming district court's finding that "withheld evidence pertaining to government witness ... was cumulative of impeachment evidence that was presented at trial" and therefore did not rise to the level of a *Brady* violation). Only a chain of inferences—several supported only by Petitioner's bald assertions—could lead to

the conclusion that the government withheld evidence that could have rendered a different result at trial. Petitioner's *Brady* claim is therefore meritless and does not warrant the imposition of a stay. [2]

**b. Ineffective assistance of trial and post-conviction counsel**

***4** "The Sixth Amendment right to counsel is the right to effective assistance of counsel." *Buck v. Davis*, 580 U.S. ——, ——, 137 S.Ct. 759, 775, 197 L.Ed.2d 1 (Feb. 22, 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *see also Premo v. Moore*, 562 U.S. 115, 121, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011). "A defendant who claims to have been denied effective assistance must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice." *Buck*, 580 U.S. at ——, 137 S.Ct. at 775 (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). Prejudice has been defined by the Supreme Court as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 775. "Recognizing the 'tempt[ation] for a defendant to second guess counsel's assistance after conviction or adverse sentence,' ... counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *Cullen*, 563 U.S. at 189, 131 S.Ct. 1388 (alteration in original) (quoting *Strickland*, 466 U.S. at 689–90, 104 S.Ct. 2052); *see also Bierenbaum v. Graham*, 607 F.3d 36, 50–51 (2d Cir. 2010) (stating that the *Strickland* standard is "highly deferential" to eliminate the "distorting effects of hindsight"). On habeas review, "the question is not whether counsel's actions were reasonable ... [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105, 131 S.Ct. 770. "Surmounting *Strickland*'s high bar is never an easy task." *Id.* (citing *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010)).

Because Plaintiff is unable to show that the three additional pages of Medical Records are material—that is, that they suggest a reasonable probability of a different verdict, Plaintiff cannot show that the alleged failures of his trial counsel and post-conviction counsel to detect this issue caused him the prejudice necessary to prove a violation of his Sixth Amendment right to effective assistance of counsel. "A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." *Bagley*, 473 U.S. at 674–75, 105 S.Ct. 3375; *see also Miller v. Angliker*, 848 F.2d 1312, 1321 (2d Cir. 1988) ("[W]e note that the Supreme Court has considered the concept of materiality (or 'prejudice' to the defendant) to be the same for claims of withheld evidence as for claims of ineffective assistance of counsel." (citations omitted)) In addition, while an error by post-conviction counsel may in some cases supply the necessary "cause" to overcome a procedural default, Petitioner cannot assert a separate claim for ineffective assistance of post-conviction counsel, because "a prisoner does not have a constitutional right to counsel in state postconviction proceedings...." *Davila v. Davis*, 582 U.S. ——, ——, 137 S.Ct. 2058, 2062, 198 L.Ed.2d 603 (June 26, 2017) (citing *Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

Because Petitioner has failed to demonstrate that his unexhausted claims are not "plainly meritless," the Court declines to address the other *Rhines* factors, specifically, whether Petitioner has shown "good cause" or whether a stay is unwarranted because he has engaged in intentionally dilatory litigation tactics. *Rhines*, 544 U.S. at 277–78, 125 S.Ct. 1528.

**III. Conclusion**

For the foregoing reasons, the Court denies Petitioner's motion to hold his habeas petition in abeyance without prejudice. [3] *See Larweth v. Conway*, No. 04-CV-0050, 2007 WL 57780, at *2 (W.D.N.Y. Jan. 5, 2007) (denying motion to stay mixed petition "without prejudice to re-filing upon a[n] adequate showing pursuant to *Rhines*, 544 U.S. at 277, 125 S.Ct. 1528, that (1) there is good cause for petitioner's failure to exhaust the new claims, and (2) that the claim is not 'plainly meritless' "). Petitioner may seek to amend the petition by removing the unexhausted claims. *Rhines*, 544 U.S. at 278, 125 S.Ct. 1528 ("[I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." (citation omitted)).

***5** SO ORDERED.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**All Citations**

Not Reported in Fed. Supp., 2018 WL 582467

## Footnotes

1 Since his discovery of the allegedly withheld pages, Petitioner has made subsequent requests through New York's Freedom of Information Law, N.Y. Pub. Off. Law § 84 *et seq.* ("FOIL"), to obtain the three additional pages. (*See* Letters dated June 5, 2017 and July 4, 2017, annexed to Pet. Mot. as Ex. 2.) New York state's FOIL office has declined Petitioner's requests, claiming that the materials are exempt from disclosure on various legal grounds, including that they are documents relevant to pending judicial proceedings, and documents that identify the victim of a sex offense. (*See* Letters dated June 20, 2017 and July 17, 2017, annexed to Pet. Mot. as Ex. 2.)

2 Prior to filing his motion to hold his habeas petition in abeyance with this Court, and his second motion to vacate his conviction pursuant to section 440.10 in the state court, Petitioner filed a letter dated October 31, 2017, arguing that the merits of his unexhausted claims should be heard on habeas review, and citing two Supreme Court decisions in support of his position. (Pet. Letter dated Oct. 31, 2017 at 1–2, Docket Entry No. 7) (citing *Strickler v. Greene*, 527 U.S. 263, 264, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) and *Trevino v. Thaler*, 569 U.S. 413, 418, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013).) However, as Petitioner acknowledges, these decisions discuss the ways in which a petitioner whose claims have procedurally defaulted may nonetheless demonstrate "cause" in order to have them considered on habeas review. Even assuming—as some district courts have—that factors tending to show "cause" in the procedural default context would be sufficient to demonstrate "good cause" under *Rhines*, *see, e.g.*, *Davidson v. Capra*, No. 15-CV-9840, 2016 WL 6248449, at *2 (S.D.N.Y. Oct. 26, 2016), the decisions Petitioner cites do not eliminate the necessary inquiry into the merits of his claims under the *Rhines* test. *See* *Strickler*, 527 U.S. at 295, 119 S.Ct. 1936 (holding that although the petitioner "satisfied two of the three components of a constitutional violation under *Brady*," he "has not shown that there is a reasonable probability that his conviction or sentence would have been different had the[ ] materials been disclosed" and "therefore cannot show materiality under *Brady* or prejudice from his failure to raise the claim earlier"); *see also* *Trevino*, 569 U.S. at 429, 133 S.Ct. 1911 (holding that a petitioner may demonstrate cause if a procedural default was caused by post-conviction counsel's failure to raise an ineffective assistance of counsel claim in a scheme where it is difficult to do so on direct appeal, but remanding to determine "whether [the petitioner's] claim of ineffective assistance of trial counsel is substantial or whether [the petitioner's] initial state habeas attorney was ineffective").

3 The Court notes that Petitioner's second motion to vacate his conviction pursuant to section 440.10 also appears to contain claims that are not currently in his habeas petition. (*See generally* Mem. in Supp. of Mot. to Vacate J. ("Section 440 Mem."), annexed to Pet. Mot., Docket Entry No. 14; *see also* Pet. Mot. 1 ("Petitioner humbly request [sic] this Court grant a 'Stay and Abeyance' in order for the Petitioner to exhaust his Motion to Vacate Judgment pursuant to CPL [section] 440.10, which contains claims alleging *Napue* and *Brady* violations as well as an 'actual innocence' claim.").) The Court notes that any claims not in the petition cannot be reviewed by the Court, and Petitioner would therefore need to seek amendment of the petition in order to preserve review of any such claims. *See* *Texidor v. Artus*, No. 06-CV-7173, 2007 WL 754645, at *1 n.4 (S.D.N.Y. Mar. 14, 2007) (reviewing a motion to stay and finding that, where a petitioner who filed a post-conviction motion in state court included a claim not currently in his habeas petition, the petitioner "would have to amend the petition to add it if, in fact, the claim were viable"). The Court, however, expresses no view at this time as to whether such amendment would be permitted.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 582467
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Frank R. STEVENSON, Petitioner,
v.
Superintendent Michael CAPRA, Respondent.

17-CV-5251 (MKB)
|
Signed 01/26/2018

**Attorneys and Law Firms**

Frank R. Stevenson, Ossining, NY, pro se.

Ruth Elizabeth Ross, Kings County Dirict Attorney's Off., Brooklyn, NY, Kings County District Attorneys Office, New York State Attorney Generals Office, for Respondent.

**MEMORANDUM & ORDER**

MARGO K. BRODIE, United States District Judge:

***1** Petitioner Frank R. Stevenson, proceeding *pro se* and currently incarcerated at Sing Sing Correctional Facility, brings the above-captioned habeas corpus petition pursuant to 28 U.S.C. § 2254, in which he alleges that he is being held in state custody in violation of his federal constitutional rights. (Pet., Docket Entry No. 1.) Petitioner's claims arise from a judgment of conviction in New York State Supreme Court, Kings County, for rape in the first degree, sexual abuse in the first degree, and endangering the welfare of a child. (Pet. ¶ 4.) Currently before the Court is Petitioner's motion to hold his habeas petition in abeyance while he pursues a motion to vacate his conviction pursuant to New York Criminal Procedure Law ("C.P.L.") section 440.10 in state court. (Pet. Mot. Stay ("Pet. Mot."), Docket Entry No. 14.) For the reasons set forth below, Petitioner's motion is denied without prejudice.

## I. Background

On May 8, 2013, Petitioner was convicted of rape in the first degree, sexual abuse in the first degree, and endangering the welfare of a child. (Pet. ¶ 4.) The Appellate Division, Second Department affirmed the conviction on June 17, 2015. *People v. Stevenson*, 11 N.Y.S.3d 646, 129 A.D.3d 998 (App. Div. 2015). The New York Court of Appeals denied leave to appeal on December 28, 2015. *People v. Stevenson*, 26 N.Y.3d 1092, 44 N.E.3d 947 (2015). On September 30, 2016, Petitioner filed a motion in New York State Supreme Court, Kings County pursuant to C.P.L. section 440.10, seeking to vacate the judgment of conviction, arguing, *inter alia*, that he was deprived of his right to effective trial counsel for trial counsel's failure to retain a medical expert to offer testimony on Petitioner's behalf. (Pet. ¶ 10.) On April 7, 2017, Petitioner's motion was denied. *People v. Stevenson*, Kings County Ind. No. 945/11 (Decision and Order dated Apr. 7, 2017). Petitioner sought leave to appeal from the Appellate Division, Second Department, which leave was denied on August 10, 2017. *People v. Stevenson*, A.D. Case No. 2017-05066 (App. Div. 2017).

On September 28, 2017, Petitioner filed a timely habeas petition with the Court, which petition includes five claims that have been exhausted in state court, and three claims which Petitioner concedes are currently unexhausted. (*See* Pet. ¶¶ 19–21.) On October 20, 2017, Respondent filed a letter with the Court, arguing that the petition should be dismissed without prejudice as a mixed petition of exhausted and unexhausted claims, or in the alternative, that Petitioner should be permitted to withdraw the petition in order to exhaust the unexhausted claims, or amend the petition by removing the unexhausted claims. (Resp't Letter dated Oct. 20, 2017, Docket Entry No. 20.)

On December 14, 2017, Petitioner filed the instant motion, requesting that the Court hold his petition in abeyance while he pursues the three unexhausted claims in state court through a second motion to vacate his conviction pursuant to section 440.10. (Pet. Mot. 1.) On the same day he filed his motion to hold the petition in abeyance, Petitioner filed a second motion pursuant to section 440.10 in New York State Supreme Court, Kings County. (*See* Mot. to Vacate J., annexed to Pet. Mot., Docket Entry No. 14-1.)

### a. Facts relating to Petitioner's unexhausted claims

***2** The following facts are taken from the petition and the moving papers from Petitioner's second motion to vacate his conviction pursuant to section 440.10, which motion is attached to his motion for a stay and abeyance. Petitioner claims that "during the pendency of his initial [section 440.10] motion to vacate" his conviction, Petitioner "discovered a copy" of an affidavit filed by the prosecution prior to his trial, indicating that nine pages of medical records reflecting

the victim's examination after one of the incidents of sexual abuse (the "Medical Records") "were to be disclosed to the defense...." (Aff. in Supp. of Mot. to Vacate J. ("Section 440 Aff.") ¶ 5, annexed to Pet. Mot., Docket Entry No. 14-1; Pet. ¶¶ 19–21; *see also* Perry A. Cerrato Aff., annexed to Pet. as Ex. 1.) However, according to Petitioner, only six pages were turned over to his defense counsel. (Section 440 Aff. ¶ 5; Pet. ¶¶ 19–21.) Petitioner asserts that, based on this discovery—to which he alerted his attorney—"post-conviction counsel could have withdrawn [the motion] and pursue[d] a *Brady* claim" based on trial counsel's failure to detect this issue, "but [post-conviction counsel] elected not to do so." (Section 440 Aff. ¶ 5.) Petitioner argues that the prosecution's failure to turn over the three purportedly withheld pages in advance of his trial gives rise to (1) a claim under *Brady v. Maryland*, 373 U.S. 83, 83 (S.Ct. 1194, 10 L.Ed.2d 215 1963), (2) a Sixth Amendment claim for ineffective assistance of trial counsel for failure to raise this issue, and (3) a Sixth Amendment claim for ineffective assistance of counsel due to his post-conviction counsel's failure to raise the first and second claims during his post-conviction proceedings in state court. [1] (Pet. ¶¶ 19–21.)

**II. Discussion**

When a habeas petition is a "mixed" one—that is, one containing both exhausted and unexhausted claims—a district court has discretion to hold the petition in abeyance to permit a petitioner to exhaust the unexhausted claims, provided that the "petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that [he] engaged in intentionally dilatory litigation tactics." *Rhines v. Weber*, 544 U.S. 269, 278, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). The Court considers whether Petitioner's three unexhausted claims meet the factors set forth in *Rhines* warranting a stay of his habeas petition.

**a. Petitioner's Brady claim is meritless**

In a criminal prosecution, the government has a constitutional obligation to disclose material, exculpatory evidence to the defendant. *See* *Brady*, 373 U.S. at 87, 83 S.Ct. 1194. Under *Brady*, the government has a constitutional duty to disclose favorable evidence to the accused where such evidence is "material either to guilt or to punishment." *Strickler v. Greene*, 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting *Brady*, 373 U.S. at 87, 83 S.Ct. 1194). A *Brady* violation consists of three factors: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching"; (2) "that evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) "prejudice must have ensued." *Id.* at 281–82, 119 S.Ct. 1936. Evidence is material and prejudice results if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). A "reasonable probability" of a different result exists where the nondisclosure "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). "A reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the evidence, only that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial." *Smith v. Cain*, 565 U.S. 73, 75, 132 S.Ct. 627, 181 L.Ed.2d 571 (2012) (quoting *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555) (internal quotation marks omitted).

Here, Petitioner's *Brady* claim is without merit. Petitioner has put forth no evidence supporting his claim that the prosecution did not provide all documents necessary to comply with its *Brady* obligations, including all nine pages of the Medical Records. Nor has Petitioner persuaded the Court that the allegedly withheld material may contain exculpatory or impeaching evidence. Finally, Petitioner has provided no basis to infer that he was prejudiced by any failure to provide the additional pages. Petitioner's bare assertion that trial counsel "could have used the withheld material to strengthen the defense" falls short of suggesting a "reasonable probability" of a different result at trial. *See* *Washington v. Walsh*, No. 10-CV-7288, 2015 WL 4154103, at *21 (S.D.N.Y. July 9, 2015) (finding no *Brady* violation where "the petitioner has failed to explain how the contents of the [withheld evidence] are favorable to his position or specify how he was prejudiced by their being withheld, aside from a conclusory assertion that he 'could [have] made valuable use' of them") (adopting report and recommendation).

***3** Moreover, Petitioner's submissions reflect a belief that withheld evidence alone is sufficient to find a *Brady* violation regardless of the evidence's materiality. (*See* Pet. ¶ 21 ("Petitioner only has evidence the document's [sic] were withheld (hospital records Exhibit), and is not allowed to speculate what it is or may qualify as in regard to materiality although Petitioner's claim is borne out of evidence not suspicion...."); *see also* Mem. in Supp. of Mot. to Vacate J.

("Section 440 Mem.") 10, annexed to Pet. Mot., Docket Entry No. 14-1 ("To whatever degree of materiality the missing, 'withheld' pages may turn out to be, it can be assumed to be of use to the defense ... unless the People prove otherwise.").) However, it is *Petitioner's* burden to establish not only that the pages withheld would have been favorable to his case, but that they are sufficiently material to "undermine[ ] confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555; *see also Ranta v. Bennett*, No. 97-CV-2169, 2000 WL 1100082, at *18 (E.D.N.Y. May 23, 2000) ("[I]t is not enough to warrant habeas relief to conclude that the newly discovered evidence, *if* credited by the jury, would have changed the result of the trial. Rather, the burden is on petitioner to 'convince' the court that there is a 'reasonable probability' that the jury would have been so affected." (citing *Strickler*, 527 U.S. at 289, 119 S.Ct. 1936)), *aff'd*, 189 Fed.Appx. 54 (2d Cir. 2006). While Petitioner's *Brady* claim may be more specific than other petitioners' "conclusory allegations that the government 'suppressed' or 'concealed' evidence," *Martinez v. Phillips*, No. 04-CV-8617, 2009 WL 1108515, at *26 (S.D.N.Y. Apr. 24, 2009), it is indistinguishable in its lack of support. *See Cornelius v. Cuomo*, No. 15-CV-1644, 2016 WL 4411417, at *3 (S.D.N.Y. Aug. 18, 2016) ("It is well established that the mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas relief." (quoting *Mallet v. Miller*, 432 F.Supp.2d 366, 378 (S.D.N.Y. 2006))).

The Court recognizes that Petitioner does not have, nor has he claimed to have seen, the additional pages of the Medical Records. However, a petitioner asserting a *Brady* violation is not excused from raising a colorable claim simply because he is unable to obtain the allegedly withheld evidence. *See, e.g., Pudelski v. Wilson*, 576 F.3d 595, 615 (6th Cir. 2009) (rejecting *Brady* claim based on state's failure to produce police report because "[i]t is simply not reasonable to conclude that ... hypothetical uses of the report, based on absolute speculation as to the contents of a report we have not seen, could even come close to meeting the burden that the law places on the petitioner to show that the police report contained material evidence"); *Bell v. Napoli*, No. 08-CV-9900, 2010 WL 8039333, at *21 (S.D.N.Y. Aug. 24, 2010) (rejecting *Brady* claim based on unproduced surveillance tape because "[h]aving never actually seen the tape, [the petitioner's] assertion that it would show that he did not 'display' what reasonably could have been perceived to be a firearm is mere speculation"), *report and recommendation adopted*, No. 08-CV-9900, 2011 WL 6097729 (S.D.N.Y. Dec. 7, 2011).

Moreover, any likelihood that the additional pages are material is further diminished in light of the inconsiderable role medical evidence played at Petitioner's trial. As the record demonstrates, Dr. Madhu Voddi, a medical specialist in child abuse employed at the Brooklyn Child Advocacy Center where the victim was examined, and who reviewed the Medical Records, testified that the examination did not yield *any* physical indications of sexual abuse. (Trial Tr. at 238:17–269:20, Docket Entry No. 13.) As Dr. Voddi's testimony on cross-examination made clear, the conclusion made by the victim's examiners that sexual abuse had occurred was made on the basis of the victim's own statements, and in view of the fact that a lack of abnormal physical findings "doesn't preclude child sexual abuse." (Tr. 248:19–20.) Defense counsel asked Dr. Voddi:

> Defense Counsel: What you're telling this jury is that in spite of the fact there wasn't one single physical indication of abnormality to [the victim's] genitalia, the fact that she had made a complaint was sufficient alone for a finding of or diagnosis of child sexual abuse. Yes or No?
>
> The Witness: Yes.

(*Id.* at 256:8–13.) In addition, in his summation, Petitioner's trial counsel pointed repeatedly to the lack of any medical evidence corroborating the accusations against Petitioner. (*Id.* at 298–316, 119 S.Ct. 1936.) This was also noted by the state court in denying Petitioner's initial motion to vacate his conviction pursuant to section 440.10. The state court observed that Petitioner's trial counsel "elicited testimony from [the prosecution's] expert establishing that there was nothing in the victim's physical examination that corroborated her complaint" and that "the jury was well aware that Dr. Voddi's diagnosis of sexual assault was exclusively based upon the victim's statement and the assumption that it is true ... and not based upon any physical evidence." *People v. Stevenson*, Kings County Ind. No. 945/11 (Decision and Order dated Apr. 7, 2017). Therefore, even assuming that the additional pages of the Medical Records revealed a completely unremarkable physical examination, they would be entirely consistent—and therefore cumulative—of the evidence presented at trial. *United States v. Malachowski*, 623 Fed.Appx. 555, 558 (2d Cir. 2015) (affirming district court's finding that "withheld evidence pertaining to government witness ... was cumulative of impeachment evidence that was presented at trial" and therefore did not rise to the level of a *Brady* violation). Only a chain of inferences—several supported only by Petitioner's bald assertions—could lead to

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

the conclusion that the government withheld evidence that could have rendered a different result at trial. Petitioner's *Brady* claim is therefore meritless and does not warrant the imposition of a stay. [2]

**b. Ineffective assistance of trial and post-conviction counsel**

***4** "The Sixth Amendment right to counsel is the right to effective assistance of counsel." *Buck v. Davis*, 580 U.S. ——, ——, 137 S.Ct. 759, 775, 197 L.Ed.2d 1 (Feb. 22, 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *see also Premo v. Moore*, 562 U.S. 115, 121, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011). "A defendant who claims to have been denied effective assistance must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice." *Buck*, 580 U.S. at ——, 137 S.Ct. at 775 (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). Prejudice has been defined by the Supreme Court as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 775. "Recognizing the 'tempt[ation] for a defendant to second guess counsel's assistance after conviction or adverse sentence,' ... counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *Cullen*, 563 U.S. at 189, 131 S.Ct. 1388 (alteration in original) (quoting *Strickland*, 466 U.S. at 689–90, 104 S.Ct. 2052); *see also Bierenbaum v. Graham*, 607 F.3d 36, 50–51 (2d Cir. 2010) (stating that the *Strickland* standard is "highly deferential" to eliminate the "distorting effects of hindsight"). On habeas review, "the question is not whether counsel's actions were reasonable ... [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105, 131 S.Ct. 770. "Surmounting *Strickland*'s high bar is never an easy task." *Id.* (citing *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010)).

Because Plaintiff is unable to show that the three additional pages of Medical Records are material—that is, that they suggest a reasonable probability of a different verdict, Plaintiff cannot show that the alleged failures of his trial counsel and post-conviction counsel to detect this issue caused him the prejudice necessary to prove a violation of his Sixth Amendment right to effective assistance of counsel. "A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." *Bagley*, 473 U.S. at 674–75, 105 S.Ct. 3375; *see also Miller v. Angliker*, 848 F.2d 1312, 1321 (2d Cir. 1988) ("[W]e note that the Supreme Court has considered the concept of materiality (or 'prejudice' to the defendant) to be the same for claims of withheld evidence as for claims of ineffective assistance of counsel." (citations omitted)) In addition, while an error by post-conviction counsel may in some cases supply the necessary "cause" to overcome a procedural default, Petitioner cannot assert a separate claim for ineffective assistance of post-conviction counsel, because "a prisoner does not have a constitutional right to counsel in state postconviction proceedings...." *Davila v. Davis*, 582 U.S. ——, ——, 137 S.Ct. 2058, 2062, 198 L.Ed.2d 603 (June 26, 2017) (citing *Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

Because Petitioner has failed to demonstrate that his unexhausted claims are not "plainly meritless," the Court declines to address the other *Rhines* factors, specifically, whether Petitioner has shown "good cause" or whether a stay is unwarranted because he has engaged in intentionally dilatory litigation tactics. *Rhines*, 544 U.S. at 277–78, 125 S.Ct. 1528.

**III. Conclusion**

For the foregoing reasons, the Court denies Petitioner's motion to hold his habeas petition in abeyance without prejudice. [3] *See Larweth v. Conway*, No. 04-CV-0050, 2007 WL 57780, at *2 (W.D.N.Y. Jan. 5, 2007) (denying motion to stay mixed petition "without prejudice to re-filing upon a[n] adequate showing pursuant to *Rhines*, 544 U.S. at 277, 125 S.Ct. 1528, that (1) there is good cause for petitioner's failure to exhaust the new claims, and (2) that the claim is not 'plainly meritless' "). Petitioner may seek to amend the petition by removing the unexhausted claims. *Rhines*, 544 U.S. at 278, 125 S.Ct. 1528 ("[I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." (citation omitted)).

***5** SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 582467

## Footnotes

1 Since his discovery of the allegedly withheld pages, Petitioner has made subsequent requests through New York's Freedom of Information Law, N.Y. Pub. Off. Law § 84 *et seq.* ("FOIL"), to obtain the three additional pages. (*See* Letters dated June 5, 2017 and July 4, 2017, annexed to Pet. Mot. as Ex. 2.) New York state's FOIL office has declined Petitioner's requests, claiming that the materials are exempt from disclosure on various legal grounds, including that they are documents relevant to pending judicial proceedings, and documents that identify the victim of a sex offense. (*See* Letters dated June 20, 2017 and July 17, 2017, annexed to Pet. Mot. as Ex. 2.)

2 Prior to filing his motion to hold his habeas petition in abeyance with this Court, and his second motion to vacate his conviction pursuant to section 440.10 in the state court, Petitioner filed a letter dated October 31, 2017, arguing that the merits of his unexhausted claims should be heard on habeas review, and citing two Supreme Court decisions in support of his position. (Pet. Letter dated Oct. 31, 2017 at 1–2, Docket Entry No. 7) (citing *Strickler v. Greene*, 527 U.S. 263, 264, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) and *Trevino v. Thaler*, 569 U.S. 413, 418, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013).) However, as Petitioner acknowledges, these decisions discuss the ways in which a petitioner whose claims have procedurally defaulted may nonetheless demonstrate "cause" in order to have them considered on habeas review. Even assuming—as some district courts have—that factors tending to show "cause" in the procedural default context would be sufficient to demonstrate "good cause" under *Rhines*, *see, e.g.*, *Davidson v. Capra*, No. 15-CV-9840, 2016 WL 6248449, at *2 (S.D.N.Y. Oct. 26, 2016), the decisions Petitioner cites do not eliminate the necessary inquiry into the merits of his claims under the *Rhines* test. *See Strickler*, 527 U.S. at 295, 119 S.Ct. 1936 (holding that although the petitioner "satisfied two of the three components of a constitutional violation under *Brady*," he "has not shown that there is a reasonable probability that his conviction or sentence would have been different had the[ ] materials been disclosed" and "therefore cannot show materiality under *Brady* or prejudice from his failure to raise the claim earlier"); *see also Trevino*, 569 U.S. at 429, 133 S.Ct. 1911 (holding that a petitioner may demonstrate cause if a procedural default was caused by post-conviction counsel's failure to raise an ineffective assistance of counsel claim in a scheme where it is difficult to do so on direct appeal, but remanding to determine "whether [the petitioner's] claim of ineffective assistance of trial counsel is substantial or whether [the petitioner's] initial state habeas attorney was ineffective").

3 The Court notes that Petitioner's second motion to vacate his conviction pursuant to section 440.10 also appears to contain claims that are not currently in his habeas petition. (*See generally* Mem. in Supp. of Mot. to Vacate J. ("Section 440 Mem."), annexed to Pet. Mot., Docket Entry No. 14; *see also* Pet. Mot. 1 ("Petitioner humbly request [sic] this Court grant a 'Stay and Abeyance' in order for the Petitioner to exhaust his Motion to Vacate Judgment pursuant to CPL [section] 440.10, which contains claims alleging *Napue* and *Brady* violations as well as an 'actual innocence' claim.").) The Court notes that any claims not in the petition cannot be reviewed by the Court, and Petitioner would therefore need to seek amendment of the petition in order to preserve review of any such claims. *See Texidor v. Artus*, No. 06-CV-7173, 2007 WL 754645, at *1 n.4 (S.D.N.Y. Mar. 14, 2007) (reviewing a motion to stay and finding that, where a petitioner who filed a post-conviction motion in state court included a claim not currently in his habeas petition, the petitioner "would have to amend the petition to add it if, in fact, the claim were viable"). The Court, however, expresses no view at this time as to whether such amendment would be permitted.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 672740
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

UNITED STATES of America,
v.
Peter MILITELLO, Defendant.

13-CR-165-A
|
Signed March 10, 2026

**Attorneys and Law Firms**

Michael Jason Adler, Mary C. Baumgarten, Mary C. Kane, DOJ-United States Attorney's Office, Buffalo, NY, for United States of America.

## DECISION AND ORDER

RICHARD J. ARCARA, UNITED STATES DISTRICT COURT

***1** Before the Court are numerous *pro se* motions, primarily in the form of handwritten letter requests, filed by Defendant Peter Militello, who was previously convicted, upon a plea of guilty, of violating of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). Militello's motions were all filed in the wake of a federal indictment, returned years after Militello's plea and sentence, which charged Drug Enforcement Administration (DEA) Special Agent (SA) Joseph Bongiovanni, with corruption involving his efforts to protect certain drug traffickers who were his acquaintances and/or who were paying him money. *See*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1. SA Bongiovanni was the case agent in Militello's case.

Militello's pending *pro se* motions consist of the following: (1) a motion to reopen his case, dismiss his conviction, and suppress evidence which he claims was gathered SA Bongiovanni who was corrupt (Dkt. 110); (2) a motion seeking to have his sentence reduced on the ground that he would not have pleaded guilty had he known that SA Bongiovanni was corrupt (Dkt. 111);[1] (3) a motion for discovery, an evidentiary hearing, disclosure, and release of *Brady* material relating to DEA SA Bongiovanni (Dkt. 121); (4) a motion to appoint counsel (Dkt. 122); (5) a motion for *in forma pauperis* status (Dkt. 123); and (6) a motion to reduce his sentence "pursuant to § 2255," based upon a subsequent change in the law which he claims would reduce his maximum sentence principally from a term of imprisonment of 30 years to a term of imprisonment of 20 years. (Dkt. 149).[2]

For the reasons which follow, all Militello's motions are **DENIED**.

## I. BACKGROUND

### A. Procedural History

On June 11, 2013, DEA SA Bongiovanni signed a criminal complaint charging Militello with knowingly, intentionally and unlawfully possessing with intent to distribute, and distributing heroin and cocaine base, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). Dkt. 5.[3] The complaint describes six different surveilled and audio recorded controlled purchases of heroin and cocaine base that an undercover police officer (an officer other than Bongiovanni) made from Militello during January and February of 2010. *Id*. The complaint also describes how Militello, after being taken into custody on February 25, 2010, and advised of his *Miranda* warnings, admitted his drug trafficking activities and signed a consent to search his hotel room, where agents discovered additional quantities of drugs. *Id*. The complaint further indicates that Militello executed a waiver of speedy arraignment form on February 25, 2010, and was released from custody. *Id*.

***2** The complaint further describes how several years later, on May 25, 2013, a cooperating source (CS) with the DEA was used to make a controlled purchase of heroin from Militello. *Id*. Subsequent laboratory testing revealed that the substance Militello sold to the CS on May 25, 2013, contained fentanyl. *Id*. During a recorded conversation with the CS at the time of that controlled purchase, Militello discussed how he, in the presence of the CS a couple of days prior, on May 23, 2013, sold heroin to another individual (identified as "R.R."), which R.R. ingested and died. *Id*.

On June 6, 2013, Militello was arrested, and following his arrest, and the administration of *Miranda* warnings, Militello admitted to DEA agents, *inter alia*, that he had been selling heroin for years, that he knew the heroin currently being sold contained fentanyl, and that on May 23, 2013, he sold R.R. the drugs which resulted in R.R.'s overdose death. *Id*.

On May 1, 2015, Militello waived indictment and pleaded guilty, pursuant to a written plea agreement, to a one-count Superseding Information which charged him with possessing with intent to distribute, and distributing fentanyl and heroin, in violation of Title 21, United States Code, Section 841(a)(1). Dkt. 41, 42, 43. Prior to his plea of guilty, the government filed an Information pursuant to 21 U.S.C. § 851, which provided that upon a "conviction of a violation of Title 21 of the United States Code providing for increased punishment in the event of one or more prior final convictions for a felony drug offense," the United States intended to rely, as the basis for the imposition of increased punishment, upon Militello's prior felony conviction, on or about January 16, 2007, in the Erie County Court, Erie County, New York, Docket Number 360-2006, for Criminal Possession of a Narcotic Drug in the fourth degree, in violation of NYS Penal Law § 220.09, subd. 1. Dkt. 40.

In his plea agreement, Militello admitted, *inter alia*, that on May 23, 2013, he distributed heroin and fentanyl to R.R., who died after ingesting such drugs. *Id*., ¶5(a), (c), and (d). In fact, Militello's DNA was confirmed by forensic analysis to be: on the bags of fentanyl he sold to R.R. that were found next to R.R.'s body following his death, on May 23, 2013; on the bags of drugs which the CS bought from him on May 25, 2013; and on the bags of drugs which were seized from Militello at the time of his arrest on June 6, 2013 . Dkt. 74, p.20.

Militello further agreed that "[p]ursuant to Sentencing Guidelines § 1B1.2(a), his sentencing range for imprisonment and a fine shall be determined as if the defendant was convicted of a violation of Title 21, United States Code, Sections 841(a)(l) and 841(b)(l)(C) alleging that death resulted from use of the substance." Dkt. 43, ¶7. Consequently, the plea agreement calculated Militello's guidelines sentencing range for imprisonment to be 360 months, *see*, Dkt. 43, ¶11, and further provided that Militello agreed to waive his right to appeal or collaterally attack any sentence imposed by the Court that was within or less than that sentencing range of 360 months. Dkt. 43, ¶23.

On November 4, 2015, Militello was, consistent with the terms and conditions of his plea agreement, sentenced principally to a term of imprisonment of 360 months. Dkt. 54; *Minute Entry*, dated 11/4/15.

On November 17, 2015, Militello filed a Notice of Appeal. Dkt. 56. On May 15, 2017, the Second Circuit Court of Appeals, citing the appellate waiver provision set forth in Militello's plea agreement, issued a mandate dismissing Militello's appeal. Dkt. 76.

**B. The Bongiovanni Prosecution**

***3** Nearly four years after Militello was sentenced, DEA SA Bongiovanni, the primary case agent in Militello's case, was charged, on October 31, 2019, in an eleven count indictment with various crimes including: conspiracy to defraud the United States; bribery; conspiracy to distribute controlled substances; destruction, alteration, and falsification of records; and making false statements. *See*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1.

The charges against Bongiovanni generally involved allegations that Bongiovanni corruptly used his position as a DEA SA to shield certain friends and associates from criminal investigations. *See*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1, pp. 5-9. The indictment alleged that he did so by:

receiving bribes; providing sensitive law enforcement information (including information about the existence of investigations, the status of investigations, the identity of cooperators, and specific law enforcement techniques being used); utilizing law enforcement deconfliction databases as a means to obtain notice of law enforcement investigations involving those he was seeking to protect; feigning legitimate investigations involving those he was protecting; and falsifying reports and documents. *Id*. All of these activities were undertaken in furtherance of his effort to protect his friends, associates, and coconspirators from investigation, arrest, prosecution, and potential incarceration. *Id*.

While Militello's name is referenced in the Bongiovanni indictment, it appears in the context of Militello being falsely identified by Bongiovanni as a DEA Confidential Source who provided certain information regarding a specific DEA File, *i.e.*, DEA Case File #C2-13-0026, that Bongiovanni was alleged to have opened exclusively to protect drug traffickers, friends, and associates who were paying Bongiovanni bribes. *See*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1, pp. 11-14, 17, 26. Notably, the indictment also alleged unequivocally that the "Peter Millitello was not the source in DEA Case Number C2-13-0026." *Id*., p. 26. Beyond the foregoing, the allegations of misconduct or criminality committed by SA Bongiovanni had nothing to do with his involvement in the investigation or prosecution of Militello.

In fact, during Bongiovanni's trial, the government subpoenaed Militello to testify as a government witness. *See*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 789, 790, 1064, 1065. Transcripts from that trial reveal that on February 28 and February 29, 2024, the government sought to ask three questions to Militello, who was represented, for purposes of his being subpoenaed to testify, by attorney Judith A. Kubiniec, Esq. *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1065, p. 5. Those questions were: (1) "Were you ever an informant for Joseph Bongiovanni?", *id.*, p. 5; (2) "[D]id the defendant, Joseph Bongiovanni, arrest you?", *id.*, p. 8; and (3) "Are you serving 30 years in prison in connection with [Joseph Bongiovanni]'s arrest of you?" *Id*. Militello, contrary to the advice of his attorney, *see*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1065, pp. 5-6, and despite being repeatedly directed to do so by the Court, *see*, *id.*, pp. 6, 8, 10-14, refused to answer the government's questions. *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1064, pp. 4-8. Consequently, Judge Vilardo held Militello in the civil contempt of court for the duration of trial. *Id.*, p. 7; *see also*, Dkt. 790.

***4** On April 12, 2024, a jury returned a verdict convicting Bongiovanni of two counts of the indictment which charged him with obstruction of justice and making a false statement. The jury acquitted him on one obstruction count and was unable to reach a verdict on the remaining counts. *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 867.

Approximately four months later, in August of 2024, Bongiovanni's was retried on eleven open counts. On October 10, 2024, a second jury returned a verdict convicting Bongiovanni on seven of those counts, including bribery conspiracy, drug trafficking, obstruction, and false statement charges. *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1283, 1285. On January 21, 2026, Judge Vilardo sentenced Bongiovanni principally to concurrent terms of imprisonment of 60 months on each of the nine counts of which he was ultimately convicted. *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1664, 1674.

**C. Militello's First Habeas Petition**

Prior to SA Bongiovanni's ever being charged, Militello, on October 9, 2018, filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255. Dkt. 79. This Court dismissed that § 2255 as untimely. Dkt. 83. Following the dismissal of his first § 2255 motion, Militello filed three successive *pro se* motions seeking appointment of counsel. Dkt. 84, 86, and 88. This Court denied each of those motions. Dkt. 85, 87, 89. While Militello filed a Notice of Appeal relative to this Court's denial of his third motion for appointment of counsel, *see*, Dkt. 91, the Second Circuit, on January 28, 2021, issued a mandate denying Militello's motion for the appointment of counsel and dismissing the appeal upon its finding that it "lacks an arguable basis either in law or in fact." Dkt. 105.

**D. The Instant Motions** [4]

After being held in contempt for refusing to testify at Bongiovanni's first trial, Militello, since April of 2024, has filed six different *pro se* motions in which he seeks to attack his conviction, his sentence, or both. Dkt. 110, 111, 121, 122, 123, 149.

First, on April 3, 2024, Militello filed a *pro se* motion styled as an "omnibus motion." Dkt. 110. In it, Militello seeks various forms of relief based upon the allegations set forth in Bongiovanni's 2019 indictment. *See*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1. Specifically, Militello's motion requests: (1) that his case be "reopened," Dkt 110. pp. 4-7; (2) that his case be dismissed based on newly discovered evidence that establishes a due process violation, *id*., pp. 8-10; and/or (3) that the evidence against him be suppressed. *Id*., pp. 10-12. In his motion, Militello cites the fact that he is mentioned in Bongiovanni's indictment and the fact that the government subpoenaed him to testify at Bongiovanni's (first) trial. Dkt. 110, p. 3, ¶¶3-4. He also alleges, in conclusory fashion, that in 2010 and 2013, Bongiovanni and possibly other DEA agents "shook [him] down" to obtain money from him. Dkt. 110, pp. 2-3, ¶¶1-2. Militello further claims that when he failed to pay Bongiovanni the money he promised him, Bongiovanni, on June 6, 2013, "tracked [Militello] down and arrested [him] …using falsified information." Dkt. 110, p.3, ¶2. Militello's motion seeks to analogize his situation to that of another individual, Tyshawn Brown, who like Militello, was charged with drug trafficking crimes as part of an investigation being led by DEA SA Bongiovanni. Dkt. 110, pp. 4-7; *see*, *United States v. Tyshawn Brown*, WDNY Case # 19-CR-222-W. Unlike Militello, however, who pleaded guilty and was sentenced long before the investigation of Bongiovanni ever even commenced, [5] Brown's indictment was pending at the same time as Bongiovanni's indictment, and as part of his pretrial motions, Brown requested *Brady/Giglio* material specifically pertaining to Bongiovanni. *United States v.*

*Tyshawn Brown*, WDNY Case # 19-CR-222-W, Dkt. 23, pp. 12-19.

***5** On June 13, 2024, Militello filed a second *pro se* handwritten letter requesting a "reduced sentence due to the fact that [he] would have never signed a plea agreement with all of this mounting, exculpatory evidence that had been brought to light by the government involving corrupt D.E.A. Agent Bongiovanni." Dkt. 111.

On August 2, 2024, Militello filed a third *pro se* handwritten letter in which he seeks discovery and an evidentiary hearing regarding DEA SA Bongiovanni's conduct and the fact that "Robert Kaiser," who served as a CS in Militello's case, was also called to testify as a government witness against SA Bongiovanni. *See*, Dkt. 121. Militello alleges that "in light of this newly discovered evidence of the lead investigator in my case Joseph Bongiovanni, my plea agreement was not knowing and voluntary and the government also has a[n] obligation to turn over *Brady* and *Giglio* material." Dkt. 121, p.2. Specifically, Militello seeks "an evidentiary hearing so as to produce the type of evidence necessary to demonstrate that there were occurrences of misconduct by an officer that predated [Militello]'s plea such that they would have altered his decision to plead guilty." *Id*.

On August 8, 2024, Militello filed a handwritten letter seeking the appointment of counsel, *see*, Dkt. 122, and on August 23, 2024, Militello filed a handwritten letter seeking to be granted *in forma pauperis* (IFP) status. Dkt. 123.

Most recently, Militello, on December 23, 2025, filed a handwritten motion requesting a "2255 sentence reduction" based upon a change in the law which he claims reduces his maximum possible sentence from 30 years to 20 years. Dkt. 149.

**II. DISCUSSION**

Except for his most recent motion seeking a sentence reduction "pursuant to § 2255" based upon an "intervening change in the law," *see*, Dkt. 149, p.1, Militello does not cite any procedural rule or law authorizing his other five *pro se* motions/letters which seek varying forms of relief that include: (1) reopening of his case, *see*, Dkt. 110, pp. 4-7; (2) dismissal of his case, *see*, Dkt. 110, pp. 8-10; (3) the suppression of evidence, *see*, Dkt. 110, pp. 10-12; (4) a reduction of his sentence on the grounds that he "would have never signed a plea agreement with all of this mounting exculpatory evidence that has been brought to light by the government involving corrupt DEA Agent Bongiovanni," *see*, Dkt. 111; (5) an evidentiary hearing to produce evidence to demonstrate that there were occurrences of misconduct by Bongiovanni that predated his plea that would have altered his decision to plead guilty, *see*, Dkt. 121; (6) the appointment of counsel, *see*, Dkt. 122; and (7) a grant of IFP status, see, Dkt. 123. Despite Militello's failure largely to provide the procedural rule upon which he relies as authorizing his motions, because Militello is proceeding *pro se*, the Court will nevertheless construe his pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). As the Second Circuit has recently recognized:

> ***6** It is well-established that federal courts sometimes will ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category. 28 U.S.C. § 2255(a) governs claims of the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence. In determining whether a motion was made under section 2255, we look to the relief sought in the motion rather than what label the movant used.

*United States v. Duron*, No. 24-963, 2025 WL 3702751, at *1 (2d Cir. Dec. 22, 2025)(citations, alterations, and quotations omitted).

Considering the various forms of relief Militello seeks and construing his requests in the light most favorable to him, the Court, will analyze his motions under any and all procedural rules that might arguably be invoked to afford him the relief he seeks. Thus, his motions will be examined as requesting: (1) a new trial, pursuant to Rule 33 (Dkt. 110, 121); (2) withdrawal of his guilty plea, pursuant to Rule 11 (Dkt. 110, 121); (3) an order vacating, setting aside, or correcting his

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

sentence, pursuant to 28 U.S.C. § 2255 (Dkt. 110, 111, 121); and (4) a sentence reduction, pursuant to the First Step Act and 28 U.S.C. § 2255 (Dkt. 149). In addition, the Court will also address his ancillary motions requesting appointment of counsel (Dkt. 122) and the granting of IFP status (Dkt. 123).

### A. Motion for a New Trial – Rule 33(Dkt. 110, 111, and 121)

First, the Court liberally construes Militello's motions at Dkt. 110, 111, and 121 as seeking a new trial pursuant to Federal Rule of Criminal Procedure 33. Under this rule, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). Such motion may be made upon any grounds within fourteen days of the verdict. *Id.* 33(b)(2). Otherwise, a motion may only be made based on newly discovered evidence and must be filed within three years of "the verdict or finding of guilty." *Id.* 33(b)(1).

At the outset, the Court observes that it has serious doubts whether relief under Rule 33 is even available to those, like Militello, who have pleaded guilty and not gone to trial. *See*, *United States v. Nkanga*, 450 F. Supp. 3d 491, 494 (S.D.N.Y. 2020)("Rule 33(a) is simply inapplicable because [Defendant] pleaded guilty and did not go to trial."). Although the Second Circuit has apparently not specifically decided this issue, other Courts of Appeals, including both the First, Fourth, Fifth, Sixth, Ninth, and Tenth Circuit have all held a Rule 33 motion for a new trial does not provide the appropriate vehicle to bring a post-conviction claim to revoke a guilty plea. *See*, *United States v. Strom*, 611 F. App'x 148, 149 (4th Cir. 2015)("By its express terms, Rule 33 is confined to those situations in which a trial has been had." [citation omitted]) ; *United States v. Gilliam*, No. 02-6163, 2003 WL 22435662, at *2 (6th Cir. Oct. 23, 2003)("Rule 33 is simply inapplicable in the context of a guilty plea where, by definition, the conviction was not obtained pursuant to a trial."); *United States v. Graciani*, 61 F.3d 70, 78 (1st Cir. 1995) ("A defendant who enters a guilty plea cannot thereafter use Rule 33 as a wedge to undo his acknowledgement that he committed the offense."); *United States v. Collins*, 898 F.2d 103, 104 (9th Cir. 1990)(" Rule 33 applies only to cases in which a trial has occurred.")(per curiam); *United States v. Lambert*, 603 F.2d 808, 809 (10th Cir. 1979)( "the validity of a guilty plea cannot be questioned by way of a motion for new trial."); *Williams v. United States*, 290 F.2d 217, 218 (5th Cir. 1961)(per curiam); *see also*, *United States v. Evans*, No. 4:14-CR-97 ALM/KPJ, 2018 WL 6981230, at *1 (E.D. Tex. Dec. 18, 2018), *report and recommendation adopted*, No. 4:14-CR-97, 2019 WL 137594 (E.D. Tex. Jan. 7, 2019)(collecting cases).

***7** Notwithstanding the foregoing, even assuming *arguendo*, that Rule 33 might properly be applied in a situation in which an individual—like Militello—has pleaded guilty, the Rule does not afford him any relief. Militello's first motion seeking to attack his conviction, *i.e.*, Dkt. 110, was filed on April 3, 2024. His judgment became final on May 15, 2017, the date on which the Second Circuit issued its mandate dismissing his direct appeal. Dkt. 76; *see*, *United States v. Camacho*, 370 F.3d 303 (2d Cir. 2004)( Rule 33(b)(1)'s three-year time limit for filing such motion begins to run on the date on which the Court of Appeals issues its mandate on defendant's direct appeal); *United States v. Allen*, No. 09-CR-329-A, 2025 WL 2916981, at *2 (W.D.N.Y. Oct. 14, 2025)(same). Thus, the earliest of his pending motions, *see*, Dkt. 110, a motion filed on April 3, 2024, was filed nearly seven years after his judgment became final on May 15, 2017, *see*, Dkt. 76, well-outside of Rule 33(b)(1)'s three-year window.

Nevertheless, this Court, in construing Militello's claim in a light most favorable to him, has reviewed the Docket in this case and noticed that on March 20, 2020, Militello filed a handwritten "letter motion" with the Clerk of Court in which he requested that he was entitled to a new trial or reduction in sentence based upon the fact that SA Bongiovanni had then-recently been indicted. Dkt. 84, p. 2. However, even assuming *arguendo*—(1) that such motion, and the newly-discovered evidence set forth therein, *i.e.*, derogatory information regarding the DEA Agent overseeing his case, could be construed as bringing Militello's claims regarding SA Bongiovanni's misconduct within Rule 33(b)(1)'s three-year time period running from the date on which his judgment became final; and (2) that Rule 33 can be applied to those, like Militello who pleaded guilty—this Court determines that such claim would still fail on the merits.

"The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir.2001). "For a trial judge to grant a Rule 33 motion, he must harbor 'a real concern that an innocent person may have been convicted.' " *United States v. Guang*, 511 F.3d 110, 119 (2d Cir. 2007) (quoting *United States v. Parkes*, 497 F.3d 220, 232 (2d Cir. 2007)). Further, courts "must exercise the Rule 33 authority

'sparingly' and in 'the most extraordinary circumstances.' " *Ferguson*, 246 F.3d at 134 (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)).

Here, the Court has no "real concern that an innocent person may have been convicted" or that Defendant's guilty plea reflects any injustice. *Parkes*, 497 F.3d at 232 (quoting *Ferguson*, 246 F.3d at 134). Militello asserts that he would not have pleaded guilty had he known what he characterizes as the derogatory *Brady/Giglio* information regarding SA Bongiovanni. Dkt. 110, pp.4-7; Dkt. 121, pp.1-3. However, the Government investigation of Bongiovanni did not commence until July 2018, over three years after Militello's guilty plea and over two-and-one-half years after Militello was sentenced. *See*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1551, p.51; Dkt. 1603, pp.11-15, 19-22. Thus, at the time of Militello's plea and sentence, the government possessed no undisclosed derogatory information regarding SA Bongiovanni, and therefore, there was no *Brady/Giglio* violation relative to such information.

Moreover, the nature of the misconduct and crimes committed by SA Bongiovanni does not diminish the reliability of the evidence underlying Militello's conviction. As noted, the evidence developed in the Bongiovanni investigation revealed that Bongiovanni corruptly used his official position to shield certain friends and associates from criminal investigations. As it pertains to Militello, the allegations and evidence demonstrated that Bongiovanni falsely identified Militello as a confidential source of information in a particular DEA File (*i.e.*, DEA Case File #C2-13-0026) that pertained to individuals that Bongiovanni was attempting to protect. The evidence presented at Bongiovanni's trial demonstrated that he did so in order that he could use Militello's arrest in this case as a justification to support his claim that his investigation of those individuals who were the targets/subjects of that file (*i.e.*, the individuals that Bongiovanni was seeking to protect) could no longer be pursued as his purported informant (Militello) had been arrested.

***8** Stated simply, aside from the fact that Bongiovanni himself may have been corrupt, there is no evidence to suggest that there was any impropriety in the investigation of Militello or the evidence collected against him. To the contrary, and as admitted to by Militello himself under oath at the time of his plea, he had distributed the heroin and fentanyl to R.R., that R.R ingested and that resulted in R.R.'s death. He further admitted in the factual basis of his plea agreement: that he sold narcotics to a DEA cooperator, and that he had been selling drugs for all his "whole life." Moreover, forensic DNA testing confirmed that Militello's DNA was on the bags of fentanyl that were found near R.R.'s body following R.R.'s death, the bags of fentanyl Militello sold to the DEA cooperator, and those recovered from Militello's person at the time of his arrest. Finally, notably absent from any of Militello's submissions is any claim of innocence. Under all these circumstances, this Court has no "real concern that an innocent person may have been convicted." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009). Accordingly, even if the Court we to conclude that Rule 33 could be applied to his situation, it affords Militello no relief, and to the extent his motions may be read as seeking relief under that rule, such motions are **DENIED**.

**B**. **<u>Withdrawal of His Guilty Plea – Rule 11</u> (Dkt. 110, 111, and 121)**

The Court next construes his submissions as, in the alternative, seeking to withdraw his guilty plea pursuant to Rule 11 of the Federal Rules of Criminal Procedure, as he alleges that had he received information about SA Bongiovanni he would not have entered into the plea agreement. *See* Dkt. 110, 111, and 121.

Pursuant to Rule 11(e) of the Federal Rules of Criminal Procedure, "[a]fter the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack." Fed. R. Crim. P. 11(e); *see also United States v. James*, 307 F. App'x 503, 505 (2d Cir.2009) (summary order) ("[Defendant] is not entitled to withdraw a guilty plea after sentencing if that sentence has not been vacated."). The present motion is clearly made after sentencing, and the sentence has not been vacated. Further, Militello waived his right to appeal or to attack his conviction collaterally. In fact, that issue was addressed by the Second Circuit on Militello's direct appeal, in which the Court of Appeals dismissed such appeal relying upon the provisions of his plea agreement which forbade him from appealing or collateral attacking his conviction. Dkt. 76. Militello was advised prior to entering his plea of the finality of his decision, as well as his waiver of the right to appeal or collaterally attack the conviction, Dkt. 74, pp. 26-27, and that in so doing, he was "waiving the right to challenge the sentence in the event that in the future, he becomes aware of a previously unknown fact … which [he] believes would justify a decrease in his sentence." *Id.* , p. 27.

Accordingly, to the extent Militello's motions may be construed as requests to withdraw his guilty plea pursuant to Rule 11 of the Federal Rules of Criminal Procedure, such requests are unavailing, and his motions are **DENIED**.

### C. Motion to Vacate, Set Aside, or Correct Sentence (Dkt. 110, 111, 121)

Alternatively, this Court may also construe Defendant's motions filed at Dkt. 110, 111, and 121, as seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

If his requests are individually or collectively treated as a motion[s] to vacate pursuant to 28 U.S.C. § 2255, Militello must carry the burden of proof of establishing his entitlement to the relief he seeks by a preponderance of the evidence. *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000). However, as the Second Circuit has already concluded in its Mandate dismissing the direct appeal, *see*, Dkt. 76, Militello, as part of his plea agreement, gave up his right to appeal his conviction. *Id*. Because those very same provisions of his plea agreement similarly indicated that Militello was also waiving his right collaterally to attack his sentence, he cannot carry his burden as he has knowingly, intelligently, and voluntarily relinquished his right to the relief he seeks. [6]

#### 1. Procedural Default

***9** Under the procedural default doctrine, a guilty plea may not be collaterally attacked unless first challenged on direct review; if a defendant fails to do so, the § 2255 claim is considered procedurally defaulted. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). The purpose of this doctrine is to promote the "important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Accordingly, claims that are not raised on direct appeal are deemed "procedurally defaulted." *Bousley*, 523 U.S. at 622. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.' " *Id*. (citations omitted).

Here, nowhere in any of his many post-conviction motions filed in this case does Militello claim that he is actually innocent. In this context, actual innocence means "factual innocence[.]" *Bousley*, 52 3 U.S. at 623. "[M]ere legal insufficiency" is not enough to meet this standard. *Id*. Militello's failure to allege his is factually innocent is understandable in view of the evidence he admitted to, under oath, at the time of his plea. As already noted, that evidence included that he distributed heroin and fentanyl to R.R., that R.R ingested that heroin and fentanyl; and that as a result of ingesting the heroin and fentanyl provided by Militello, R.R. died. Militello further admitted: that he sold narcotics to a DEA cooperator; that he had been selling drugs for all his "whole life;" and that forensic DNA testing confirmed that Militello's DNA was: on the bags of fentanyl that were found near R.R.'s body following R.R.'s death, on the bags of fentanyl that Militello sold to a DEA cooperator, and on the bags discovered on his person at the time of his arrest.

Thus, to escape procedural default of his claim, Militello is left with attempting to establish cause and prejudice. While Militello can establish the former, he cannot establish the latter. With respect to cause, "[t]he Supreme Court has stated that 'cause'...must be something external to the petitioner, something that cannot be fairly attributed to him." *United States v. Pipitone*, 67 F.3d 34, 38 (2d Cir. 1995) (quotations and citations omitted); *see also Gupta v. United States, 913 F.3d 81, 84 (2d Cir. 2019)* ("In order to demonstrate cause, a defendant must show some objective factor external to the defense...such that the claim was so novel that its legal basis [was] not reasonably available to counsel" (alteration in original) (quotations and citations omitted)). Here, Militello can establish cause. Because the derogatory information regarding SA Bongiovanni was unknown to the Defendant (and the prosecution) at the time of his direct appeal, neither he nor his attorney could have raised it on direct appeal. *See*, *United States v. Silverio*, No. 22-CR-15 (PKC), 2024 WL 4528160, at *3 (S.D.N.Y. Oct. 18, 2024)("'Cause' may be shown by, for example, a legal or factual basis that was not available during the time the defendant could have made a direct appeal.").

Despite being able to establish cause for his failure to raise the issue on direct appeal, Militello cannot establish that he suffered any actual prejudice because of Bongiovanni's actions or criminal conduct. "Actual prejudice means that the error alleged in the § 2255 motion 'worked to [a defendant's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' " *United States v. Heatley*, No. 15-CV-9534 (LAP), 2024 WL 4451962, at *3 (S.D.N.Y. Oct. 9, 2024), *certificate of appealability denied*, No. 24-3111, 2025 WL 3531942 (2d Cir. June 18, 2025)(quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)

and *United States v. Frady*, 456 U.S. 152, 170 (1982)). A mere "possibility of prejudice" is insufficient. *Frady*, 456 U.S. at 170. When challenging a guilty plea, a defendant must show that the error was a "fundamental defect which inherently result[ed] in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Williams v. United States*, No. 10 CR 431-08 (CM), 2017 WL 532469, at *3 (S.D.N.Y. Feb. 3, 2017) (internal quotation omitted). Where, as here, the conviction is based upon a guilty plea, "prejudice has been defined to require a defendant to 'show that there is a reasonable probability that, but for the error, he would not have pleaded guilty.' " *Heatley*, 2024 WL 4451962, at *3 (quoting *United States v. Dussard*, 967 F.3d 149, 156 (2d Cir. 2020)).

***10** The Government's obligation to disclose *Brady* materials is pertinent to the accused's decision to plead guilty; the defendant is entitled to make that decision with full awareness of favorable (exculpatory and impeachment) evidence known to the Government. *See United States v. Avellino*, 136 F.3d 249, 255 (2d Cir.), *reh'g denied*, 136 F.3d 262 (2d Cir.1998). Here, it cannot be said that the derogatory information regarding Bongiovanni upon which Militello relies was known to the government at the time of his plea, because the record demonstrates that the Government did not become aware of such information until long after Militello pleaded guilty and was sentenced. In the context of withdrawal of a guilty plea because of newly disclosed Government information, "evidence is considered material where 'there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial.' " *Id*. at 256 (quoting *Tate v. Wood*, 963 F.2d 20, 24 (2d Cir.1992)). This test is objective, involving an inquiry into the likely persuasiveness of the undisclosed information. *See id*.

Here, although the undisclosed information was not known to the government at the time of Militello's plea, even if it was, it does nothing to detract from the overwhelming evidence of Militello's drug trafficking activities or his role in providing the drugs which resulted in R.R.'s death. Moreover, as part of its plea agreement with Militello, the government agreed to dismiss the Superseding Indictment, *see*, Dkt. 25, that was pending against him. Dkt. 43, ¶16. Count 8 of that Superseding Indictment charged Militello under the so-called "death results" provisions of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), for his role in distributing the heroin and fentanyl that resulted in the death of R.R. *See*, Dkt. 25, p. 5. The remaining counts charged nine additional counts alleging violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *Id*. In view of his prior felony drug conviction, had Militello been convicted under Count 8 of the Superseding Indictment, he would have faced a maximum term of imprisonment of life. *See*, 21 U.S.C. § 841(b)(1)(C). For each other count Militello would have faced a maximum term of 30 years. *Id*. In entering the plea agreement that he did, Militello, by receiving a three-level downward adjustment for acceptance of responsibility, reduced his total offense level from 43 to 40, which, at a criminal history category of VI, reduced his sentencing range for imprisonment from "life" to "360 months to life." Moreover, in not requiring Militello to plead to Count 8, which alleged the "death results" enhancement on 21 U.S.C. § 841(b)(1)(C), Militello received the further benefit of reducing the statutory maximum term of imprisonment he faced from life to 30 years. *See*, Dkt. 43, ¶1. Under these circumstances, and considering the strength of the evidence against him, this Court is unable to conclude that there is a "reasonable probability that, but for the error, he would not have pleaded guilty.' " *Heatley*, 2024 WL 4451962, at *3 (quoting *United States v. Dussard*, 967 F.3d at 156).

Beyond the strong evidence of Militello's guilt and the significant benefits he received from his plea of guilty is the lack of any evidence that Bongiovanni's misconduct and criminal acts—which "involved tipping drug dealers about police investigations…[and] did not involve falsely accusing or framing defendants," *see*, *Bell v. United States*, 296 F.3d 127, 129 (2d Cir. 2002), did nothing to undermine the integrity of the Militello investigation or the reliability of the overwhelming evidence against him. Consequently, the Court finds that Militello cannot establish actual prejudice sufficient to overcome the fact that he has procedurally defaulted on his claim.

**2. <u>Second or Successive Motion</u>**

Even if this Court were to conclude that Militello had not procedurally defaulted on his various motions, he faces yet another barrier to this Court granting him the relief he seeks. That barrier is the bar on second or successive § 2255 motions. In this regard, the Court notes that Militello, on October 9, 2018, previously filed a motion to vacate pursuant to § 2255. *See*, Dkt. 79. This Court denied that motion as untimely on January 23, 2019. Dkt. 83.

***11** A dismissal of a habeas corpus petition as untimely constitutes an adjudication on the merits and renders a subsequent petition successive. *See Villanueva v. United States*, 346 F.3d 55, 61 (2d Cir. 2003)("a habeas or §

2255 petition that is properly dismissed as time-barred under AEDPA constitutes an adjudication on the merits for successive purposes."); *United States v. Adams*, No. 15-CR-410 (LAK), 2025 WL 1636249, at *2 (S.D.N.Y. June 9, 2025)(same). Thus, Militello's various requests for relief, if treated as § 2255 petitions, must also be viewed as a second or successive petition. *See Corrao v. United States*, 152 F.3d 188, 191 (2d Cir. 1998) (holding that § 2255 is second or successive when a prior motion was adjudicated on the merits).

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) strictly limits the filing of a second or successive § 2255 petition. *See Jones v. Hendrix*, 599 U.S. 465, 469 (2023). Pursuant to AEDPA, a petitioner may not file a successive habeas petition under 28 U.S.C. § 2255 unless such petition is certified by a panel of the Second Circuit to "contain: '(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.' " *Adams v. United States*, 372 F.3d 132, 135 (2d Cir. 2004) (quoting 28 U.S.C. § 2255(h)). As the Supreme Court recently recognized, "§ 2255(h)(1) permits a second or successive § 2255 motion if the petitioner identifies 'newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense.' " *Bowe v. United States*, ---U.S.---, 146 S. Ct. 447, 463–64 (2026).

Here, although Militello does not characterize his requests for relief as being filed pursuant to 28 U.S.C. § 2255(h), in view of the nature of the relief sought and the claim raised, *i.e.*, newly discovered evidence regarding the misconduct and criminal conduct committed by DEA SA Bongiovanni the primary case agent in his case, the Court determines that they may reasonably be construed as requests under that section. If they are, then they amount to second or successive motions that have not been certified by the Second Circuit.

In this Court's view, although Militello's claims "satisfy[y] the requirement of a prima facie showing of new evidence," he "fails to make a prima facie showing that 'no reasonable factfinder' would have convicted him had the evidence been available." *Bell v. United States*, 296 F.3d at 129 (Second Circuit found that petitioner was not entitled to consideration of his successive postconviction motion on the basis of newly discovered evidence that his conviction was secured through the use of false or perjured testimony; although petitioner made a prima facie showing that his claim is based on newly discovered evidence, his application did not make a prima facie showing that no reasonable factfinder would have found him guilty of the offense). As the *Bell* Court recognized in finding petitioner's showing to be insufficient to establish that no reasonable factfinder would have found him guilty of the offense and denying his request to file a successive petition:

> ***12** The misconduct for which [the law enforcement officer] was convicted involved tipping drug dealers about police investigations; so far as [Petitioner] reveals, it did not involve falsely accusing or framing defendants.
>
> In order to determine whether [Petitioner]'s trial was impermissibly tainted by [the law enforcement officer]'s misconduct, we would need to know more about the circumstances of [Petitioner]'s conviction. If the evidence against [Peitioner] was overwhelming and substantiated by witnesses who were not involved in criminal activity, the fact that [the law enforcement officer] himself engaged in unrelated criminal activity, if that be the case, might not warrant further habeas corpus review of [Petitioner]'s conviction. Conversely, if [Petitioner]'s testimony was key to the conviction, and in particular if there are reasons to believe that [the law enforcement officer] perjured himself in [Petitioner]'s case, then further consideration of habeas relief may be appropriate. Because [Petitioner]'s application contains insufficient information to make that determination, it must be denied.

*Bell*, 296 F.3d at 129. This Court believes that the same rationale also applies to Militello's case—perhaps with even greater force in view of Militello's knowing and voluntary plea of guilty and his admissions at the time of such plea. Militello cites no newly discovered evidence which negates his guilt but only evidence which impugns the integrity of the agent overseeing his investigation. In this Court's view, Militello's showing falls far short of establishing by clear and convincing evidence that no reasonable factfinder would have found him guilty. "[Militello] pleaded guilty and his sworn statements in support of his guilty plea 'carry a strong presumption of verity,' *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), which his present assertions do not overcome." *Donato v. United States*, No. 18-1630, 2018 WL 11321474, at *1 (2d Cir. June 28, 2018). As the Second Circuit observed in *Donato*:

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

> Despite Petitioner's contrary arguments, the proffered new evidence does not exculpate him but, at most, provides a basis for impeaching [a] prosecution witness....For much the same reason that the Constitution does not require "pre-guilty plea disclosure of impeachment information," *United States v. Ruiz*, 536 U.S. 622, 629 (2002), the post-conviction identification of such information is hardly sufficient to allow a defendant who pleaded guilty to satisfy § 2255(h)(1).

*Donato*, 2018 WL 11321474, at *1.

Assuming *arguendo* that his motions are appropriately considered as requests brought pursuant § 2255, Militello bears the burden of proof by a preponderance of the evidence. *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000). However, as the Second Circuit has already concluded in its Mandate dismissing Militello's direct appeal, *see*, Dkt. 76, he, as part of his plea agreement, gave up his right to appeal his conviction. *Id*. (wherein Second Circuit dismissed Militello's appeal because he failed to "demonstrate[ ] that the waiver of his appellate rights is unenforceable under *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000)."). Because those very same provisions of his plea agreement endorsed by the Second Circuit in dismissing Militello's direct appeal apply with equal force and effect to Militello's waiver of his right collaterally to attack his sentence, he cannot carry his burden of establishing his entitlement to relief. [7] Indeed, "[a] waiver of the right to collaterally attack a conviction is presumptively enforceable." *Cook v. United States*, 84 F.4th 118, 122 (2d Cir. 2023). Courts "will not enforce" a "plea agreement's collateral-attack waiver" in "only five circumstances": "(1) where the waiver was not made knowingly, voluntarily, and competently; (2) where the sentence was based on constitutionally impermissible factors, such as ethnic, racial, or other prohibited biases; (3) where the government breached the agreement containing the waiver; (4) where the district court failed to enunciate any rationale for the defendant's sentence; and (5) where the waiver was unsupported by consideration." *Id.* at 121-22 (citation modified). This Court finds that none of those factors are present here.

***13** Finally, and as already mentioned, this Court generally does not have jurisdiction to address a successive motion without authorization from the Second Circuit and is required to transfer such a motion to the Second Circuit if doing so is in the interest of justice. *See* 28 U.S.C. Sections 2255(h) and 2244(b)(3); *see also Liriano v. United States*, 95 F.3d 119, 123 (2d Cir.1996). "However, a district court need not transfer the second or successive motion if it is wholly without merit; the court should instead dismiss the motion if it is clear that the narrow set of factual predicates for relief on a second or successive section 2255 petition have not been made out." *Acosta v. United States*, 197 F. Supp. 3d 553, 556 (S.D.N.Y. 2016) (quoting *Avendano v. United States*, No. 02–CV–1059, 2014 WL 7236036, at *2 (S.D.N.Y. Dec. 19, 2014)).

To proceed with a successive motion based upon "newly discovered evidence," Militello must demonstrate that his request contains "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." See, 28 U.S.C. § 2255(h)(1). Because this Court, for the reasons set forth above, determines that Militello cannot meet his burden under that standard, this Court declines to transfer his letter requests as second or successive motions because they are "wholly without merit." *United States v. Severino*, No. 01 CR. 302 (JFK), 2022 WL 4008231, at *2 (S.D.N.Y. Sept. 2, 2022); *see also*, *United States v. Peebles*, No. 09-CR-331-A, 2026 WL 157524, at *7 (W.D.N.Y. Jan. 21, 2026)("transfer is unnecessary where the second or successive habeas corpus application is wholly without merit.").

Accordingly, to the extent Militello's motions filed at Dkt. 110, 111, and 121, are properly construed as requests under § 2255, they are also **DENIED**.

**D. <u>Motion To Reduce Sentence</u>(Dkt. 149)**

Militello next argues that he is entitled to a sentence reduction under the First Step Act. Dkt. 149. Section 404 of the First Step Act "addressed the retroactive application of the Fair Sentencing Act's reforms." *United States v. Johnson*, 961 F.3d 181, 185 (2d Cir. 2020). More specifically,

> Section 404 of the First Step Act authorizes district courts to reduce sentences they previously imposed for a "covered offense," which the statute defines as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing.

*United States v. Johnson*, 961 F.3d at 183.

However, Militello's conviction under the Superseding Information was under 21 U.S.C. § 841(b)(1)(C), the penalties for which were not modified by section 2 or 3 of the

Fair Sentencing Act. As the Supreme Court has recognized, a conviction under 21 U.S.C. § 841(b)(1)(C) is not a "covered offense" under Section 404 of the First Step Act. *See*, *Terry v. United States*, 593 U.S. 486, 494 (2021).

To be sure, the First Step Act changed the requirements for an enhanced sentence under the penalty provisions set forth in 21 U.S.C. §§ 841(b)(1)(A) and 841(b)(1)(B). Specifically, for those penalty provisions, the definition of a qualifying offense under § 851 was changed from "a felony drug offense" to one for "a serious drug felony." According to Militello, since his New York State felony drug did not constitute a "serious drug felony," the maximum sentence for his conviction, which was under 21 U.S.C. § 841(b)(1)(C) should not have been increased from twenty to thirty years.

***14** Assuming for the sake of argument that Militello's conviction for Criminal Possession of a Narcotic Drug in the Fourth Degree, a Class C felony under New York Penal Law § 220.09, does not constitute a "serious drug felony," it unquestionably does constitute a "drug felony." The penalty provision applicable to Militello's conviction under the Superseding Information to which he pleaded guilty, *i.e.*, 21 U.S.C. § 841(b)(1)(C), was not altered by the First Step Act. That statute continues to provide, as it did at the time that Militello was sentenced, for an increase in the statutory maximum penalty from 20 to 30 years where defendant has a final "prior conviction for a felony drug offense." *See generally*, *Reid v. United States*, No. 12-CR-200-A, 2024 WL 3904569, at *11, n. 5 (W.D.N.Y. Aug. 22, 2024). Since Militello's prior drug felony conviction provided a proper basis to enhance his maximum sentence under § 841(b)(1)(C) —both at the time he was sentenced and following the passage of the First Step Act—his claim is frivolous. Even if considered as a second or successive § 2255 petition, because the request is entirely without merit, there is no need to transfer it to the Second Circuit. *See*, *United States v. Peebles*, 2026 WL 157524, at *7; *United States v. Severino*, 2022 WL 4008231, at *2.

In view of the foregoing, any claim that the First Step Act affords Militello sentencing relief based upon a change in the law is patently frivolous and is **DENIED**.

**E. Motion for Appointment of Counsel (Dkt. 122)**

Militello has also asked the Court to appoint counsel to represent him on his current claims. There is no constitutional right to representation by counsel in habeas corpus proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). When reviewing a request for appointment of counsel, the Court first considers whether petitioner's claims are "likely to be of substance." *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). The Court will consider other factors only if the movant meets this threshold requirement. *Id.* at 61–62. Here, for the reasons set forth above, this Court determines that Militello's claims are all without merit. Since his claims lack substance, Militello's motion for appointment of counsel, *see*, Dkt. 122, is **DENIED**.

**F. Motion to Proceed *in Forma Pauperis*(Dkt. 123)**

Militello has also filed a motion to proceed *in forma pauperis*. Dkt. 123. That motion, for the reasons set forth above, is also **DENIED**.

**III. CONCLUSION**

For the foregoing reasons, Militello's motions (Dkt. 110, 111, 121, 122, 123, and 149) are all **DENIED**. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis status* is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). Finally, the Court observes that it strongly suspects that Militello, in filing his motions, may have purposely avoided characterizing them as motions brought pursuant to 28 U.S.C. § 2255 in an effort to avoid having them characterized as second or successive motions filed without prior permission from the Second Circuit Court of Appeals. Accordingly, Militello is cautioned that any future motions seeking to attack his conviction or sentence filed without prior permission from the Second Circuit will be summarily denied by this Court.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2026 WL 672740

**Footnotes**

1 Such motion (Dkt. 111) was in the form of a letter directed to Hon. Lawrence J. Vilardo, a different Judge on this Court.

2 The Court notes that the Government filed three relatively brief memoranda in response to Militello's various pending *pro se* motions. *See*, Dkt. 120, 144, and 151. The Court notes its disappointment in the Government's failure to engage in a more fulsome exploration of the factual context of Militello's claims viz-a-vis the prosecution of SA Bongiovanni, as the Court itself was forced to conduct a searching review of the Docket in the Bongiovanni case in order fully to assess Militello's *pro se* claims. *See*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V.

3 References herein, unless otherwise indicated, are to Docket Entries, in *United States v. Militello*, 13-CR-165-A.

4 While Militello currently has six *pro se* motions pending, see, Dkt. 110, 111, 121, 122, 123, 149, the Docket in his case demonstrates that since he pleaded guilty and was sentenced in late-2015, Militello has filed over 20 *pro se* motions or letter requests seeking various forms of relief from this Court, *see*, Dkt. 57, 58, 77, 79, 84, 86, 88, 93, 94, 96, 101, 106, 110, 111, 121, 122, 123, 124, 137, 140, 141, and 149, and has twice unsuccessfully appealed this Court's rulings to the Second Circuit. *See*, Dkt. 76, 105.

5 As reflected in the testimony adduced at Bongiovanni's trial, the government's investigation of Bongiovanni did not commence until after the April 18, 2017, arrest of a marijuana trafficker named Ronald Serio, a marijuana dealer that was one of the individuals that Bongiovanni was charged with attempting to protect. *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1551, pp.39-40. Specifically, it wasn't until a July 20, 2018, proffer that Serio first advised law enforcement that Bongiovanni was engaged in criminal conduct. *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1551, p.51; *see also*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1603, pp.11-15, 19-22 (testimony of Homeland Security Investigations [HSI] SA Curtis Ryan, lead case agent in *Bongiovanni* investigation). As SA Ryan testified, prior to such proffer, the thought of investigating SA Bongiovanni never entered his mind before that day. *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1603, p.13. Thus, the Bongiovanni investigation began on July 20, 2018, over 3 years *after* Militello's May 1, 2015, plea in this case.

6 Following the issuance of the Second Circuit's Mandate dismissing his direct appeal, Militello, on Mach 20, 2020, April 27, 2020, and May 5, 2020, filed three successive motions seeking the appointment of counsel. Dkt. 84, 86, and 88. In each motion, Militello, citing the then-recent indictment of SA Bongiovanni, sought to have counsel appointed to represent him. In each motion, Militello, citing the charges against Bongiovanni, alleged that based upon “false statements” made by Bongiovanni, Militello was “coerced into accepting a plea bargain for 30 years.” *See*, Dkt. 84, p. 2; Dkt. 86, p. 1. Following each motion, this Court denied Militello's request for appointment of counsel, citing the fact that there was no proceeding before the Court at that time and that the allegations set forth in Militello's motions were conclusory. Dkt. 85, 87, and 89. Militello appealed this Court's denial of his motion to appoint counsel to the Second Circuit. Dkt. 91. On January 28, 2021, the Second Circuit denied Militello's motion for appointment of counsel and dismissed his appeal “because it ‘lacks an arguable basis either in law or in fact.’ ” Dkt. 105.

7 Following the issuance of the Second Circuit's Mandate dismissing his direct appeal, Militello, on Mach 20, 2020, April 27, 2020, and May 5, 2020, filed three successive motions seeking the appointment of counsel. Dkt. 84, 86, and 88. In each motion, Militello, citing the then-recent indictment of SA Bongiovanni, sought to have counsel appointed to represent him. In each motion, Militello, citing the charges against Bongiovanni, alleged that based upon “false statements” made by Bongiovanni, Militello was “coerced into accepting a plea

bargain for 30 years." *See*, Dkt. 84, p. 2; Dkt. 86, p. 1. Following each motion, this Court denied Militello's request for appointment of counsel, citing the fact that there was no proceeding before the Court at that time and that the allegations set forth in Militello's motions were conclusory. Dkt. 85, 87, and 89. Militello appealed this Court's denial of his motion to appoint counsel to the Second Circuit. Dkt. 91. On January 28, 2021, the Second Circuit denied Militello's motion for appointment of counsel and dismissed his appeal "because it 'lacks an arguable basis either in law or in fact.' " Dkt. 105.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 4154103
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Dexter WASHINGTON, Petitioner,
v.
James WALSH, Respondent.

No. 10–cv–7288 (RJS)(JCF).
|
Signed July 8, 2015.
|
Filed July 9, 2015.

*ORDER*

RICHARD J. SULLIVAN, District Judge.

***1** Dexter Washington ("Petitioner") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 2 (the "Petition" or "Pet.")), challenging his conviction in New York Supreme Court, New York County, on two counts of burglary in the first degree, one count of robbery in the first degree, one count of robbery in the second degree, and one count of resisting arrest, for which he was sentenced as a predicate felon to twenty-five years of imprisonment. Now before the Court is the Report and Recommendation of the Honorable James C. Francis IV, Magistrate Judge, recommending that the Petition be denied. (Doc. No. 13 (the "Report" or "Rep.").) For the reasons set forth below, the Court adopts the Report in its entirety and denies the Petition.

## I. LEGAL STANDARD

A federal court may grant habeas corpus relief only if a claim that was adjudicated on the merits in state court (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Clearlyestablished Federal law means the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Green v. Travis,* 414 F.3d 288, 296 (2d Cir.2005) (internal quotation marks omitted). A state court decision is "contrary to" such a holding only where the state court "either "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite result].' " *Lainfiesta v. Artuz,* 253 F.3d 151, 155 (2d Cir.2001) (quoting *Williams v. Taylor,* 529 U .S. 362, 402 (2000)). An " 'unreasonable application' of those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall,* 134 S.Ct. 1697, 1702 (2014) (internal quotations omitted). A federal court should grant habeas relief only if "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting *Harrington v. Richter,* 131 S.Ct. 770, 786–87 (2011)).

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989). A court may accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Greene v. WCI Holdings Corp.,* 956 F.Supp. 509, 513 (S.D.N.Y.1997) (citing Fed.R.Civ.P. 72(b) and *Thomas v. Arn.* 474 U.S. 140, 149 (1985)). When a party makes specific objections to a magistrate judge's findings or legal conclusions, the court must undertake a de novo review of the objections. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *United States v. Male Juvenile,* 121 F.3d 34. 38 (2d Cir.1997). However, "to the extent ... that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error ." *DiPilato v. 7–Eleven, Inc.,* 662 F.Supp.2d 333, 339 (S.D.N.Y .2009) (quoting *IndyMac Bank, F.S.B. v. Nat 'l Settlement Agency, Inc.,* No. 07–cv–6865 (LTS), 2008 WL 4810043, at *1 (S.D.N.Y. Oct. 31, 2008)). A magistrate judge's decision is clearly erroneous only if the district court is "left with the definite and firm conviction that a mistake has been committed." *SEC v. Cobalt Multifamily Investors I, Inc.,* 542 F.Supp.2d 277, 279 (S.D.N.Y.2008) (quoting *Chen v. Bd. of Immigration Appeals,* 435 F.3d 141, 145–46 (2d Cir.2006)).

***2** Courts are to read pro se filings liberally and interpret them "to raise the strongest arguments that they suggest." *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006) (internal

quotation marks omitted). "Nonetheless, even a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *DiPilato,* 662 F.Supp.2d at 340 (quoting *Pinkney v. Progressive Home Health Sen's.,* No. 06–cv–5023 (LTS), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008)).

II. DISCUSSION

The relevant facts and procedural history relating to the Petition are set forth in detail in the Report. Petitioner makes nine arguments, including that: (1) the evidence at trial was legally insufficient to support his conviction; (2) he did not have a "full and fair" probable cause hearing; (3) the prosecutor failed to disclose material evidence to him; (4) he was denied the right to represent himself pro se; (5) his pretrial and appellate counsel were ineffective; (6) the trial court should have conducted an independent source hearing prior to trial; (7) the prosecutor changed her theory of the case, thus denying him a fair and impartial trial; (8) the trial judge improperly interfered in the trial; and (9) he was improperly sentenced. (Rep. at 1.) Judge Francis thoroughly addressed and rejected each of these arguments in the Report. Petitioner now objects to all but one of the Report's rejections-that the trial judge impermissibly interfered in his trial-and makes the additional objections that he is entitled to a default judgment and that the Supreme Court's decision in *Alleyne v. United States,* 133 S.Ct. 2151 (2013) entitles him to immediate release. The Court addresses each objection in turn.

A. Insufficiency of the Evidence

Petitioner argues that the evidence at trial was insufficient to support the findings of guilt for first degree burglary because the victim, Ms. Sanchez, did not suffer a "physical injury." (Doc. No. 16 ("Obj.") at 6.) Petitioner also asserts that there was insufficient evidence to support his convictions for first and second degree robbery because the prosecution did not prove that Ms. Sanchez suffered a "serious physical injury." (*Id.*) However, just as in his Petition, Petitioner misstates the injury requirement for second degree robbery. (Pet. at 12–17.) Like first degree burglary, second degree robbery only requires that the victim suffer a "physical injury." N.Y. Penal Law §§ 140.30, 160.10. Moreover, while "serious physical injury" is an element of first degree robbery, a conviction may nonetheless stand where the prosecution has proven the use or threatened use of a "dangerous instrument." which is what it did here. N.Y. Penal Law §§ 160.15.

As for the sufficiency of the evidence introduced at trial, Judge Francis found that the injuries suffered by Ms. Sanchez —"redness, cuts, and swelling in the face, a black eye. pain in her jaw and face, and back pain requiring the ongoing use of a cane"—were more than sufficient to qualify as "physical injury" as required to prove first degree burglary or second degree robbery. (Rep. at 19.) The Report also found that the kitchen knife Petitioner used to threaten and intimidate Ms. Sanchez constituted a "dangerous instrument." (*Id.* at 21.) Petitioner objects to these findings on the grounds that witnesses gave inconsistent testimony about the extent of Ms. Sanchez's injuries, that Ms. Sanchez's testimony was "self-serving," and that Ms. Sanchez's testimony was not conclusive. (Obj. at 5–9.) However, because Petitioner's objection "simply reiterates the original arguments" he made to Judge Francis, the Court reviews the Report's finding for clear error and finds none. *DiPilato,* 662 F.Supp.2d at 339. Furthermore, under de novo review, the Court agrees with the Report's conclusion that there was sufficient evidence to establish that Ms. Sanchez suffered a "physical injury" and that Petitioner used a "dangerous instrument." Accordiingly, the Court adopts the Report's recommendation and rejects Petitioner's claim.

B. Probable Cause Hearing

***3** Petitioner next argues that he did not receive a "full and fair" opportunity to litigate his Fourth Amendment claims because of an "unconscionable breakdown" in the state court proceedings. (Rep. at 23–24 (citing *Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992).) Specifically, he argues that (1) the money and jewelry found in his pocket were not suppressed despite inconsistent testimony from the arresting officer. Detective Yarbrough, (2) the prosecution was not penalized for failing to produce the notes and police recordings related to Detective Yarbrough's testimony prior to the hearing, (3) standby counsel and the prosecution infringed his efforts to represent himself, and (4) the prosecution was able to withdraw its request for an identification hearing on the ground that no "police arranged identification" occurred. (Rep. at 24–25 .) Judge Francis found that Petitioner's allegations failed to rise to the level of dysfunction necessary to qualify as an "unconscionable breakdown," and in any event, the fact that Petitioner was able to raise these same

objections on direct appeal demonstrates that there was no "unconscionable breakdown" in the state court proceedings. (Rep. at 25.)

Petitioner's objections to this aspect of the Report simply rehash the arguments he made in his Petition or are challenges to the outcome of the probable cause hearing, and therefore only warrant clear error review. (Obj. at 11–17.) However, even after conducting a de novo review, the Court finds that Petitioner did receive a "full and fair" opportunity to litigate his Fourth Amendment claims and that Petitioner's right to represent himself was not infringed. As Judge Francis aptly stated, "the courts* failure to agree with the [P]etitioner does not equate to an 'unconscionable breakdown' " in the proceedings. (Rep. at 25.) Furthermore. Petitioner fully participated in the probable cause hearing by raising objections, conducting cross-examination, and raising his objections again on appeal, where they were considered and denied. Accordingly, the Court adopts the Report's findings with respect to Petitioner's Fourth Amendment claim.

C. *Brady* Violations

Petitioner next asserts that the prosecution violated its "constitutional duty to disclose favorable evidence to the accused where such evidence is material either to guilt or to punishment." as established in *Brady v. Maryland,* 373 U.S. 83 (1963), by failing to turn over eight pieces of evidence, including: (1) the complete recording of police radio transmissions relied on by Detective Yarbrough, (2) the notes relating to Detective Yarbrough's testimony, (3) photographs of Ms. Sanchez's injuries, (4) other photographs introduced by the prosecutor at trial, (5) Ms. Sanchez's criminal record, (6) the "Chief Complaint" report of the responding Emergency Medical Technician ("EMT"), (7) proof of the prosecutor's agreement with a friend of the victim who was a fact witness, and (8) an arresting officer's notes. (Rep. at 27.) Judge Francis found that the prosecutor did not violate her *Brady* obligations with respect to any of these pieces of evidence. Petitioner's objections to the Report are the same arguments that he made to Judge Francis. Because the Court will not allow a party, even when pro se. to have "a second bite at the apple by simply relitigating a prior argument," the Report's conclusions are entitled to clear error review. *DiPilato,* 662 F.Supp.2d at 340. Finding none, the Court adopts them. Indeed, even under de novo review, the Court would adopt the Report's conclusions in full.

***4** With respect to the complete recordings of police radio transmissions relied on by Detective Yarbrough, Judge Francis found that the evidence was not "material." such that *Brady* compelled its disclosure, because the identification evidence against Petitioner was so overwhelming that he could not show a "reasonable probability of a different result" had he received the complete recordings. (Rep. at 28–29 (citing *DiSimone v. Phillips,* 461 F.3d 181, 196 (2d Cir.2006) (internal citations omitted)).) Petitioner persists in arguing that the recording was important and that there was not overwhelming evidence of his identification at the scene of the crime. (Obj. at 20–21.) Reviewing Petitioner's objection de novo, it is clear that there was overwhelming evidence to support his identification at the scene of the crime.

Petitioner next asserts that the prosecution violated its *Brady* obligations by failing to turn over the notes relating to Detective Yarbrough's testimony. Judge Francis found there was no *Brady* violation because Petitioner never specified how the notes were exculpatory or would be useful for impeachment. (Rep. at 29–30 .) Furthermore, because there was overwhelming identification evidence, Judge Francis found that there was no prejudice from their being withheld. (*Id.*) Once again, Petitioner simply reiterates the argument made in the Petition—that the notes were important to the prosecution's case. (Obj. at 21–23.) However, as previously stated, the Court agrees with Judge Francis that there was overwhelming identification evidence introduced at trial. Moreover, Petitioner has failed to specify how the notes were exculpatory or would be useful for impeachment.

Petitioner further asserts that the prosecution's failure to turn over photographs of Ms. Sanchez's injuries breached its *Brady* obligations. Judge Francis found that the photos *were* in fact produced to Petitioner before Ms. Sanchez testified, and further concluded that they were compelling evidence *against* Petitioner. (Rep. at 30.) Petitioner's objections (Obj. at 23–24) merely repeat the arguments made in his Petition, and the Court finds them just as unpersuasive as Judge Francis did. The trial record reflects that the prosecution provided the photos to Petitioner before Ms. Sanchez testified, and furthermore the photos were, if anything, supportive of the prosecution's case, not Petitioner's.

Petitioner next contends that the prosecution violated its *Brady* obligation by failing to produce other photographs introduced by the prosecution at trial. Judge Francis found that the photos were not exculpatory or useful for

impeachment and that Petitioner failed to explain how he was prejudiced by their being withheld. (Rep. at 30–31.) Petitioner continues to assert that the photos were highly prejudicial because they bolstered the prosecution's case. (Obj. at 25.) The Court finds that the Report correctly rejected Petitioner's claims since Petitioner has not demonstrated how any of the photos qualified as *Brady* material.

***5** With respect to the prosecution's failure to disclose Ms. Sanchez's criminal record, Judge Francis found there was no *Brady* violation because no criminal record existed for Ms. Sanchez. (Rep. at 31.) Petitioner maintains in his objections that the prosecution is lying about Ms. Sanchez's criminal record and that had the truth been handed over, he could have impeached Ms. Sanchez. (Obj. at 26.) However, Petitioner still has offered no evidence to support his argument and points to no facts or authority that Judge Francis overlooked. Accordingly, the Court finds that the Report appropriately rejected this claim.

Petitioner next asserts that the prosecution failed to produce a copy of the responding EMT's "Chief Complaint" report. Judge Francis found that Petitioner could not have been prejudiced by the alleged non-production because the information in the "Chief Complaint" report was contained in a similar report that Petitioner did receive from the same EMT. (Rep. at 32–33.) Furthermore, the information in the report given to Petitioner corroborates Ms. Sanchez's testimony, and is therefore not favorable to Petitioner nor grounds for impeachment. (Rep. at 34.) In his objections, Petitioner merely reargues that the information in the EMT's "Chief Complaint" report was material, but does not contest the Report's findings that he timely received a nearly identical report from the same EMT or that the report corroborated Ms. Sanchez's testimony and therefore supported the prosecution's case. (Obj. at 27.) Accordingly, the Court agrees with Judge Francis that Petitioner has not established a *Brady* claim on the alleged non-production of the EMT's "Chief Complaint" report.

With respect to the prosecution's agreement to relocate a fact witness who was a friend of the victim's out of concern for the witness's safety, Judge Francis found the prosecution did not violate *Brady* because the trial transcript clearly shows that Petitioner was informed of the agreement during the witness's testimony. (Rep. at 34–35.) In objecting to the Report. Petitioner again reiterates the same failed arguments he made in his Petition. (Obj. at 27.) After reviewing the trial record, the Court concludes that Petitioner was informed of the prosecution's agreement with the witness and rejects Petitioner's claim.

Finally, Petitioner asserts that the prosecution failed to turn over an arresting officer's notes. Judge Francis found that the Petitioner could not make out a viable *Brady* claim because he failed to articulate how the notes were exculpatory or would have been useful for impeachment, or how he was prejudiced given the overwhelming identification evidence introduced at trial. (Rep. at 35–36.) Petitioner continues to argue conclusorily that the notes were important and that there were inconsistencies between the notes and witness testimony. (Obj. at 28.) Nevertheless, he offers no specifics, and instead merely rehashes arguments previously made to Judge Francis. Furthermore. Petitioner patently fails to specify how this alleged non-production violated his *Brady* rights. Accordingly, as with all of Petitioner's alleged *Brady* claims, the Court adopts the Report's conclusions and denies the Petition.

### D. Right to Self–Representation

***6** Petitioner next argues that his right to proceed pro se was violated because standby counsel, appointed by the trial court, constantly interfered with his representation. (Pet. at 64–67.) Alternatively, Petitioner argues that the trial court forced him to represent himself. (*Id.*) Judge Francis concluded that Petitioner's standby counsel did not so interfere with his representation as to constitute a constitutional violation. He found that both times standby counsel tried to interrupt Petitioner during the trial, the jury was not present and the trial judge stopped standby counsel immediately. (Rep. at 39.) Judge Francis concluded that this conduct did not infringe on Petitioner's right to self-representation because it did not interfere with his ability to try the case the way he wanted or prejudice the jury's view of him. (*Id.*) The Report also found that the trial court did not force Petitioner to represent himself pro se. In fact, the record reflects that after Petitioner complained about his appointed counsel, the trial court asked if Petitioner wanted a new lawyer or to represent himself, and that Petitioner insisted on proceeding pro se. (Rep. at 38.) The trial court questioned Petitioner extensively to ensure that he understood what he was doing and was capable of representing himself, warned him repeatedly of the consequences, and eventually permitted him to proceed, albeit with standby counsel. (Rep. at 38.) Therefore, Judge Francis determined that Petitioner was not forced to proceed pro se against his will.

Petitioner's objections simply restate the unavailing arguments made in the Petition. Having reviewed the record, the Court agrees with Judge Francis, whether under clear error or de novo review, and rejects Petitioner's claim.

E. Ineffective Assistance of Counsel

In his Petition, Petitioner raised ineffective assistance of counsel claims for both his trial and appellate counsel. With respect to his trial counsel, he contends that his lawyer failed to (1) object to the indictment, (2) secure Petitioner's testimony before the grand jury, and (3) communicate with him for a period of time prior to trial. (Pet. at 70–72, 77–79.) With respect to his appellate counsel, he contends that his lawyer failed to raise numerous meritorious arguments on appeal. (Pet. at 81–89.) The Report rejected these arguments on the grounds that they failed to meet the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984), which requires that (1) "counsel's representation fell below an objective standard of reasonableness." *id.* at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

Specifically, Judge Francis found that while Petitioner's appointed counsel may not have moved to dismiss his indictment, Petitioner himself did. Therefore, Judge Francis concluded there could be no ineffective assistance of counsel because there is no "reasonable probability" that "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. Judge Francis also rejected Petitioner's claim regarding his lawyer's failure to secure his testimony before the grand jury, noting that Petitioner did not articulate why the presentation he asserts he would have given to the grand jury would have been more convincing than that which he gave to the trial jury, particularly in light of the lower burden of proof for the prosecution at that stage. (Rep. at 44.) Therefore, Judge Francis concluded that Petitioner failed to demonstrate that "there is a reasonable probability" that "the result of the proceeding would have been different" but for counsel's alleged errors. *Strickland,* 466 U.S. at 694. Similarly, Judge Francis found that while the appointed trial counsel may not have communicated with Petitioner for some period of time between the indictment and the suppression hearing. Petitioner still managed to file several pro se motions during that time, which challenged the validity of his indictment and the representation he was receiving from trial counsel. Once again, Judge Francis determined that Petitioner had failed to demonstrate how more regular contact with his counsel pretrial would have resulted in a different outcome. (Rep. at 45–46.) Finally, Judge Francis determined that Petitioner's appellate counsel was not ineffective, since his representation did not fall "below an objective standard of reasonableness," *Strickland,* 466 U.S. at 688, and in any event, the arguments he would have made-namely, that the prosecution violated Petitioner's *Brady* rights in myriad ways, that the trial evidence was insufficient to support his convictions, and that the prosecution withheld evidence of Ms. Sanchez's criminal record-were meritless, and thus raised no "reasonable probability" that "the result of the proceeding would have been different" but for counsel's alleged errors, *id.* at 694. (Rep. at 48.)

***7** In objecting to the Report. Petitioner continues to argue that his appointed trial counsel was ineffective because he failed to secure his appearance at the grand jury proceeding, failed to challenge his indictment, and failed to file motions on his behalf. (Obj. at 31–34.) Petitioner also persists in arguing that his appellate counsel was ineffective because he "flat-out refused to raise many meritorious claims." although Petitioner fails to identify what exactly any of those waived claims were. (Obj. at 36.) The arguments raised by Petitioner in his objections are thus identical to those he made in his Petition. Under both clear error and de novo review, the Court concludes that Petitioner has failed to satisfy either prong of the *Strickland* standard, and that the Report correctly rejected Petitioner's ineffective assistance claims.

F. Independent Source Hearing

Petitioner next contends that his due process rights were denied because he did not receive a full and fair independent source hearing for in-court identifications made during the suppression hearing and at trial. (Pet. at 92–96 citing *United States v. Wade,* 388 U.S. 218 (1967).) Despite the fact that the Petition asserted *Wade* as the basis for this claim, Judge Francis concluded that Petitioner meant to challenge the trial court's decision to permit various witnesses for the prosecution to identify him as the perpetrator without giving him notice of the bases for those identifications. (Rep. at 49 n. 4.) Because the law that gives Petitioner the right to obtain such notice is N.Y.Crim. Proc. Law § 710.30. the Report rejected Petitioner's claim as not being cognizable on federal habeas review. (Rep. at 50.)

Petitioner objects that he did not argue in his Petition that the prosecution violated N.Y.Crim. Proc. Law § 710.30, but rather asserted that the prosecution denied him a "full and fair" *Wade* hearing. (Obj. at 38.) Petitioner was not entitled to a *Wade* hearing, however, because as Judge Francis concluded, there is no evidence that any police-arranged identifications were introduced-directly or indirectly-at trial. (Rep. at 50.) Petitioner maintains that two witnesses were shown photo arrays, but he has presented no evidence to support such a contention. The trial testimony that he cites in favor of his argument merely establishes that these two witnesses made statements to a detective at the police station-not that either witness saw a photo array or that any other police-arranged identification procedure took place with those witnesses. Accordingly, the Court concludes that Petitioner has failed to demonstrate the need for a *Wade* hearing, and that the trial court therefore made no error in denying him such a hearing.

E. Theory of the Case

Petitioner next asserts that the prosecution changed the theory of the case during trial, thereby depriving him of fair notice of the charges against him, (Pet. at 96–99.) Judge Francis rejected this claim because the "core" of the prosecution's case remained the same from indictment to conviction. The prosecution's theory was always that Petitioner posed as a delivery person to trick Ms. Sanchez into granting him access to her apartment, that once she opened the door he assaulted her, and that once she was immobilized he proceeded to take her jewelry and money. (Rep. at 52.) While the details of the prosecution's case changed slightly over time-for example, whether Petitioner posed as a delivery man or a Federal Express worker, and whether Petitioner was working with co-conspirators or working alone to trick Ms. Sanchez into granting him access to her apartment-the change in emphasis did not undermine Petitioner's ability to mount a defense to the main thrust of the charges against him, namely, that Petitioner illegally gained entry to Ms. Sanchez's apartment and while inside assaulted her and robbed her. (Rep. at 53.) *See United States v. Kelly,* Fed. App'x 194. 197 (2d Cir.2010) (holding that the prosecution has "significant flexibility" in how it presents its case).

***8** Because Petitioner merely objects to the Report's finding on the same grounds that he raised in his Petition (Obj. at 40–42), without any elaboration or specificity, the Report's conclusion is entitled to clear error review. However, no matter the standard of review, the Court agrees with Judge Francis that Petitioner has failed to demonstrate that the prosecution's theory of the case changed so much over time that Petitioner was unable to mount a defense to the charges against him. Accordingly, the Court adopts the Report's rejection of Petitioner's claim.

F. Sentencing

Petitioner next argues that he was deprived of due process because his sentence was based on false, misleading, and incomplete information, (Pet. at 107–08.) Specifically, Petitioner challenges the fact that the trial judge adjudicated him a "second violent felony offender," which significantly increased his sentence. (*Id.*) The Report rejected this argument, finding that the prosecution put forth evidence of his prior conviction and incarceration, and that Petitioner did not contest that he was previously convicted of a violent felony or that he was in fact incarcerated during the periods alleged by the prosecution. (Rep. at 56.)

Petitioner's objection merely reiterates his contention that information in the sentencing report was misleading or false because it included inconsistent testimony and was incomplete. (Obj. at 44–49.) Specifically, Petitioner asserts that the prosecution's predicate felony statement incorrectly stated that Petitioner was housed at the Elmira Correctional Facility from 1992 to 1996, when in fact he was housed at Wende Correctional Facility at that time (Obj. at 45), and that the presentence report overstated the extent of Ms. Sanchez's injuries (Obj. at 48). But Petitioner still does not contest the fact that he has a prior conviction, that he was previously incarcerated for that conviction, or that such a conviction qualified him to be sentenced as a "second violent felony offender." Therefore, the Court adopts the Report's rejection of this claim under both clear error and de novo review, since the alleged inaccuracies in the sentencing report have no bearing on the trial court judge's finding that Petitioner was a "second violent felony offender."

I. Default Judgment

Petitioner now contends for the first time that Judge Francis lacked jurisdiction to accept Respondent's opposition to the petition because it was filed after the deadline that Judge Francis initially imposed on Respondent. (Obj. at 2.) The law is clear that Judge Francis has the "inherent power and responsibility to manage [his] docket so as to achieve the

orderly and expeditious disposition of cases." *In re World Trade Center Disaster Site Litigation,* 722 F.3d 483, 487 (2d Cir.2013) (citation omitted). This power includes the ability to grant parties extensions when appropriate, which is exactly what Judge Francis did here (Doc. No. 7), and Petitioner has offered nothing to suggest that Judge Francis abused that power. Thus, the Court rejects this objection.

J. *Alleyne v. United States*

***9** After Petitioner filed his objections to the Report, Petitioner filed a supplemental motion in support of his petition. In it. Petitioner argues that the Supreme Court's recent decision in *Alleyne v. United States* entitles him to "immediate release" because the jury did not find beyond a reasonable doubt that the crimes he was charged with were "violent" ones. (Doc. No. 23.) According to Petitioner, the lack of such a finding by the jury precluded the trial judge from sentencing him as a "second violent felony offender." (*Id.*)

Without even addressing the timeliness of Petitioner's post-objection filing, the Court rejects Petitioner's argument because *Alleyne* is inapplicable to his case. The Supreme Court in *Alleyne* held that "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury." 133 S.Ct. 2151, 2155 (2013). However, *Alleyne* did not disturb the well-established principle, articulated by the Supreme Court in *Apprendi v. New Jersey,* that this rule does *not* apply to *prior* convictions. 530 U.S. 466, 490 (2000) ("*Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond a prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.") (emphasis added). As the Sixth Circuit recently noted, *"Alleyne* does not stand for the proposition that a defendant's prior conviction must be submitted to a jury and proven beyond a reasonable doubt, even when the fact of those convictions increases the mandatory minimum sentence for a crime." *United States v. Nagy,* 760 F.3d 485, 488 (6th Cir.2014); *see also United States v. Mejia,* 545 F.3d 179, 207 (2d Cir.2008).

Here, Petitioner was sentenced as a "second violent felony offender" pursuant to N.Y. Penal Law § 70.04—which requires only that the trial court find that (1) the count of conviction is a violent felony offense (as that term is defined by law), and (2) the defendant has been previously convicted of a violent felony offense. As such, the statute falls squarely within the exception in *Apprendi* involving prior convictions. *Nunez v. Conway,* 923 F.Supp.2d 557, 569 (S.D.N.Y.2013). As noted above, nothing in *Alleyne* alters this exception, and therefore, *Alleyne* does not support Petitioner's argument that he could not be sentenced as a "second violent felony offender"-a recidivism-based sentencing enhancement-without a jury finding on the "violent" nature of the charged offense. Accordingly, the Court denies Petitioner's supplemental objection.

III. CONCLUSION

For the reasons set forth above, the Court hereby adopts the Report in its entirety and DENIES the Petition. A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray,* 413 F .3d 192, 195 (2d Cir.2005). The Clerk of the Court is respectfully directed to close this case.

***10** SO ORDERED.

*REPORT AND RECOMMENDATION*

JAMES C. FRANCIS IV, United States Magistrate Judge.

TO THE HONORABLE RICHARD J. SULLIVAN, U.S.D.J.:
Dexter Washington brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for two counts of burglary in the first degree, one count each of robbery in the first degree and robbery in the second degree, and one count of resisting arrest. He contends that: (1) the evidence at trial was legally insufficient to support his conviction; (2) he did not have a "full and fair" probable cause hearing; (3) the prosecutor failed to disclose material evidence to him; (4) he was denied the right to represent himself *pro se;* (5) his pretrial and appellate counsel were ineffective; (6) the trial court should have conducted an independent source hearing prior to trial; (7) the prosecutor changed her theory of the case, thus denying him a fair and impartial trial; (8) the trial judge improperly interfered in the trial proceedings; and (9) he was improperly sentenced. For the following reasons, I recommend that the petition be denied.

*Background*

A. *The Crime*

Around 1:00 p.m. on October 25, 1996, Clara Sanchez was in her apartment at 790 Riverside Drive in Manhattan. (Trial Transcript ("Tr.") at 411, 415, 418, 420). Her friend Elena Yunen was visiting with her in the kitchen, and a houseguest, Dominique Phillipeaux, was in one of the bedrooms. (Tr. at 419–20, 650–51, 653–54). Ms. Sanchez, who was retired, sold clothing, jewelry, and housewares out of her apartment. (Tr. at 414–15). Ms. Sanchez received a call she believed came from the lobby of her building; when she answered, a male voice said that he was calling from Federal Express and had a package for her. (Tr. at 420–21, 468). Ms. Sanchez told the caller that she would come down to the lobby to receive the package, but ten minutes later her doorbell rang. (Tr. at 421–22). When she looked through the peephole, she saw a man holding a box who said that he was there to deliver a package. (Tr. at 422–23, 473). However, when Ms. Sanchez opened the door, the man pushed the door into her, knocking her to the floor, and threw the box at her. (Tr. at 423–24, 473–76, 655).

The man, whom Ms. Sanchez identified at trial as Dexter Washington, then dragged her into the kitchen and began punching her in the face. (Tr. at 423–24, 426–27, 477–78, 656). He placed his foot on her back and continued punching her and banging her head against the kitchen floor as he demanded money and jewelry. (Tr. at 424–25, 480). Mr. Washington took the necklaces and bracelet Ms. Sanchez was wearing and put them in his pants pocket. (Tr. at 430–32). After beating Ms. Sanchez, he pulled out a knife from one of the kitchen drawers. (Tr. at 425–26, 656). He held it to Ms. Sanchez's neck and threatened to kill her if she did not give him money and jewelry. (Tr. at 428–29, 484). He then took Ms. Sanchez and Ms. Yunen into Ms. Sanchez's bedroom and began to rifle through her belongings, searching for jewelry. (Tr. at 431–33, 487–88). Although Ms. Sanchez did not see Mr. Washington take money from among her things, she later discovered that $300 was missing from her dresser. (Tr. at 443–45).

***11** At that moment, the doorbell rang. (Tr. at 433–34). Mr. Washington told the women to stay in the bedroom and went into the hallway. (Tr. at 434). Upon returning, he told Ms. Sanchez that he had to leave the apartment immediately and asked her where her fire escape was located. (Tr. at 435, 668). He then left the bedroom. (Tr. at 435). Ms. Sanchez went to the front door, where she found Sergeant Lyle J. Alexa and Officer Brenden Pedrosa of the New York City Police Department (the "NYPD"); the officers had come in response to several calls reporting a violent dispute, possibly involving a weapon, in Ms. Sanchez's apartment. (Tr. at 32, 34–35, 50–51, 289, 290–91, 435–36, 668, 707). Ms. Sanchez told the officers that there was a man in her apartment who was trying to kill her. (Tr. at 36, 291, 436). She also told them that Mr. Washington had threatened her with a knife and might still have it in his possession. (Tr. at 291, 304). The officers found Mr. Washington in Ms. Sanchez's apartment and tried to take him into custody, but he fled from them after a struggle and ran out of the building. (Tr. at 36–40, 292–94). Before Mr. Washington's escape, Sergeant Alexa had succeeded in placing a pair of handcuffs on his right wrist; his shirt had also come off in the struggle, leaving him clothed in only sneakers and a pair of black pants. (Tr. at 41–42, 53, 102, 188, 293–94, 438).

Two other officers, Ron Colon and Richard Olmo, arrived at the scene during the struggle, and they, along with Sergeant Alexa and Officer Pedrosa, pursued Mr. Washington out of Ms. Sanchez's apartment building and into a nearby cemetery. (Tr. at 43–44, 97, 99, 102–05, 189–91, 193–96, 294–95). Mr. Washington was taken into custody there by Detective Robert Yarbrough, who was responding to a police radio call reporting that officers were in pursuit of a man fleeing a dispute with a gun. (Tr. at 46, 225, 227, 234, 261–62, 274. At the time of his arrest, Mr. Washington was shirtless, wearing black jeans, "sweating profusely," and had a pair of handcuffs on one wrist. (Tr. at 106, 229, 233). Detective Yarbrough searched Mr. Washington's pants pockets and recovered money and jewelry. (Tr. at 109, 234–35).

B. *The Trial*

A bail hearing was held on October 27, 1996, at which Justice Arlene D. Goldberg of New York County Criminal Court ordered Mr. Washington held on $50,000 bail. (Hearing Transcript dated Oct. 27, 1996 ("10/27/96 H. Tr.") at 8). At the hearing, Mr. Washington was represented by Daniel Scott. (10/27/96 H. Tr. at 1). He was subsequently indicted on November 25, 1996, on two counts of burglary in the first degree, one count each of robbery in the first and second degrees, and one count of resisting arrest. (Petitioner's Memorandum of Law ("Pet.Memo.") at 7). Although he had provided the prosecution with written notice of his intent to testify in front of the grand jury, Mr. Washington was not produced and thus was unable to testify. (10/27/96 H. Tr. at 2; Pet. Memo. at 78–79).

***12** On March 29, 1997, a pretrial hearing was held in New York State Supreme Court before Justice J.A.K. Bradley.

(Motions Transcript dated March 35, 1997 [1] ("3/29/97 H. Tr.") at 1). Justice Bradley denied various of the petitioner's motions, which had been filed *pro se,* including a motion to dismiss the indictment and a motion for a subpoena to obtain a copy of the felony complaint. (3/29/97 H. Tr. at 2–3). Although Mr. Washington was initially represented at this hearing by Mr. Scott, he soon moved to proceed *pro se,* a motion that Justice Bradley granted after inquiring into the petitioner's educational background and legal knowledge. (3/29/97 H. Tr. at 3–4, 7–14).

On June 4, 1997, a suppression hearing was held in New York Supreme Court before Justice Antonio Brandveen. The petitioner sought (1) to suppress statements he made to the police following his arrest, (2) to suppress the introduction of the jewelry and money found in his pocket by Detective Yarbrough, (3) to challenge the probable cause underlying his arrest, and (4) to suppress the prosecutor's identification evidence. (Huntley–Mapp Hearings Transcript dated June 4, 1997 ("6/4/97 H. Tr.") at 17–19). Once the hearing had begun, however, the prosecutor, Susan Broderick, argued that there was no need for a hearing on identification because she was not planning to introduce at trial any policearranged identification evidence-for example, an identification made pursuant to a line-up or photo array. (6/4/97 H. Tr. at 18). Justice Brandveen agreed, and the hearing proceeded only with respect to the other issues. (6/4/97 H. Tr. at 20–21). At the conclusion of the hearing, Justice Brandveen granted the petitioner's reguest to suppress his statement on the ground that it was made in the course of an interrogation that took place after Mr. Washington had invoked his right to counsel. (6/4/97 H. Tr. at 175–77). However, the court denied the petitioner's other two reguests, finding that there was probable cause for the officers to arrest Mr. Washington and therefore that the money and jewelry found in his pocket were not improperly obtained. (6/4/97 H. Tr. at 177–79). Justice Brandveen also reiterated his conclusion that any identification testimony provided by the police officers at trial would be admissible because it was based on their spontaneous observations of the petitioner at the scene of the crime, not on any police-arranged procedure. (6/4/97H. Tr. at 179–80).

The trial began on June 5, 1997 before Justice Brandveen. (Transcript dated June 5, 1997, at 1; Tr. at 1, 19). The prosecution called twelve witnesses, including Sergeant Alexa, Officer Colon, Officer Olmo, Detective Yarbrough, Officer Pedrosa, Ms. Sanchez, Ms. Yunen, and Joseph Bentivegna, the EMT who initially treated Ms. Sanchez's injuries. (Tr. at 577, 581–84). The petitioner represented himself *pro se* throughout the trial and did not testify. On June 19, 1997, the jury returned a verdict of guilty on all counts of the indictment. (Tr. at 1023–24).

***13** A sentencing hearing was held on October 7, 1997, at which Ms. Broderick sought to have Mr. Washington adjudicated a second violent felony offender pursuant to New York Penal Law § 70.04, which would enhance his sentence to a determinate term of ten to twenty-five years. N.Y. Penal Law § 70.04(3)(a). To be sentenced as a second violent felony offender, the defendant must have been convicted of a violent felony within the past ten years; however, that ten-year period is tolled for "any period of time during which the person was incarcerated for any reason between the time of commission of the previous felony and the time of commission of the present felony ." N.Y. Penal Law § 70.04(1). To prove Mr. Washington qualified for this sentencing enhancement, Ms. Broderick presented evidence indicating that Mr. Washington had been convicted of robbery in the first degree, a violent felony, in the Bronx in 1977. (PFA Hearing Transcript dated Oct. 7, 1997 ("10/7/97 H. Try") at 9–11). However, Mr. Washington disputed that he was the same Dexter Washington who had been convicted in 1977 and argued that, even if he was the same person, the prosecution had not met its burden of establishing that he had been incarcerated for long enough to toll the statute until ten years prior to his current conviction. (10/7/97 H. Tr. at 12–17); N.Y. Penal Law § 70.04(1)(iv), (v). Justice Brandveen adjourned the hearing to October 15, 1997 to resolve these issues. (10/7/97 H. Tr. at 26). When the proceedings resumed, the prosecution provided evidence that Mr. Washington was the same person convicted of first degree robbery in 1977 and that he had remained incarcerated until December of 1989, a sufficient period to trigger the sentencing enhancement. (Sentencing Transcript ("S.Tr.") at 6–8). Justice Brandveen then sentenced Mr. Washington to a determinate term of twenty-five years in prison. (S. Tr. at 49).

C. *Subsequent Proceedings*

In 1999, the petitioner filed a *pro se* motion pursuant to New York Criminal Procedure Law ("CPL") § 440.10 to vacate his conviction due to the prosecutor's failure to turn over Ms. Sanchez's arrest record prior to trial. (Affidavit of Dexter Washington in Support of Motion to Vacate Judgment dated Sept. 16, 1999 ("Washington 9/16/99 Aff."), attached as part of Exh. A to Declaration of Leilani Rodriguez dated Feb. 3, 2011 ("Rodriguez Decl.") at 4 & ¶¶ 4, 11). This motion was denied on the ground that Ms. Sanchez did not have a criminal record; Mr. Washington appealed, and the Appellate

Division combined his appeal with the direct appeal of his conviction. (Order dated Dec. 3, 1999 ("12/3/99 Order"), attached as Exh. C to Rodriguez Decl.; Certificate Granting Leave dated Feb. 4, 2000, attached as Exh. D to Rodriguez Decl.). That direct appeal was filed on July 10, 2000, by Timothy Lewis, Mr. Washington's appellate counsel. (Brief for Defendant–Appellant ("Pet.App.Brief"), attached as Exh. E to Rodriguez Decl.). Mr. Lewis argued three points: (1) that the prosecution had failed to provide sufficient evidence to support Mr. Washington's convictions for burglary in the first degree and robbery in the second degree, (2) that the trial court was wrong to deny the petitioner's motion to suppress the money and jewelry found in his pocket, and (3) that the prosecutor wrongfully failed to disclose either Ms. Sanchez's criminal record or the tape of police radio transmissions made during the crime and its aftermath. (Pet.App. Brief at 20, 27, 35). The petitioner also submitted a *pro se* supplemental brief that presented nine additional points, claiming (1) further errors in the suppression hearing, (2) further non-disclosures of material evidence by the prosecutor, (3) failure to hold an independent source hearing, (4) denial of his right to proceed *pro* se, (5) ineffective assistance of counsel, (6) loss of his opportunity to testify in front of the grand jury, (7) fraud in his trial, (8) improper behavior by the prosecutor and trial judge, and (9) unlawful sentencing. (Supplemental Brief for Appellant ("Supp.Brief"), attached as Exh. F to Rodriguez Decl.). On April 24, 2001, the Appellate Division, First Department, affirmed the denial of the petitioner's § 440.10 motion and affirmed his conviction and sentence. *People v. Washington,* 282 A.D.2d 375, 726 N.Y.S.2d 5 (1st Dep't 2001) (*"Washington I"* ). Mr. Washington subsequently filed timely motions to reargue the appeal and for leave to appeal to the New York Court of Appeals, both of which were denied. (Motion for Reargument, attached as Exh. I to Rodriguez Decl.; Order dated July 5, 2001, attached as Exh. K to Rodriguez Decl.); *People v. Washington,* 96 N.Y.2d 925, 732 N.Y.S .2d 643 (2001) (Table) (*"Washington II"* ).

***14** The petitioner has filed a slew of other *pro se* state court motions over the past ten years, all of which have been denied. These filings include two Article 78 petitions-one challenging the New York County District Attorney's refusal to provide him with Ms. Sanchez's arrest records and the other contesting his sentence and continued detention. (Petition dated June 8, 2000, attached as Exh. M to Rodriguez Decl.); *Washington v. Lippman,* 30 A.D.3d 299, 818 N.Y.S.2d 38 (1st Dep't 2006). Mr. Washington also filed two coram nobis petitions with the Appellate Division, asserting ineffective assistance of his appellate counsel. (Pet. Memo. at 1; Resp. Memo. at 17 & n. 5; Notice of Motion dated Aug. 11, 2006, attached as Exh. VV to Rodriguez Decl.). Both motions were denied, but Mr. Washington only attempted to appeal the second to the Court of Appeals, which denied leave on the ground that the underlying decision was not appealable. (Appeal dated Feb. 12, 2007, attached as Exh. YY to Rodriguez Decl.; Certificate Dismissing Application dated Feb. 27, 2007 ("2/27/07 Certificate"), attached as Exh. ZZ to Rodriguez Decl.). In 2002, the petitioner filed a motion to set aside his sentence pursuant to CPL § 440.20, arguing that his presentence report was invalid. (Affidavit of Dexter Washington in Support of Motion to Vacate Judg[ ]ment dated Feb. 24, 2002, attached as part of Exh. P to Rodriguez Decl., ¶ 6). This motion was denied by the Supreme Court, that decision was affirmed by the Appellate Division, and Mr. Washington's subsequent appeal to the Court of Appeals was dismissed as untimely. (Order dated May 13, 2002, attached as part of Exh. R to Rodriguez Decl.; Order dated Oct. 26, 2004, attached as Exh. Y to Rodriguez Decl.); *People v. Washington,* 7 N.Y.3d 783, 820 N.Y.S.2d 544 (2006) (Table).

In addition, Mr. Washington has filed four other motions-in 2005, 2006, 2007, and 2009–seeking to vacate his conviction and set aside his sentence pursuant to CPL §§ 440.10 and 440.20. (Motion to Vacate Conviction and Sentence, attached as Exh. CC to Rodriguez Decl.; Motion to Vacate Judgment, attached as Exh. AAA to Rodriguez Decl.; Pet. Memo. at 2–3; Resp. Memo. at 23 & n. 9, 24 & n. 10). These motions raised claims similar to those raised on direct appeal, including that the grand jury indictment was invalid, that the sentence was improper, and that other technical errors undermined the validity of the trial and sentence. (Affidavit of Dexter Washington in Support of Motion to Vacate Conviction and Sentence dated March 9, 2005, attached as part of Exh. CC to Rodriguez Decl., ¶ 9; Affidavit of Dexter Washington in Support of Motion to Vacate Judgment dated Oct. 16, 2006, attached as part of Exh. AAA to Rodriguez Decl., ¶¶ 9–11; Pet. Memo. at 2–3; Resp. Memo. at 23–24). Each of these motions was denied, and the petitioner appealed all of them to the extent he was granted permission to do so. (Decision dated June 30, 2005, attached as Exh. EE to Rodriguez Decl.; Certificate Denying Leave dated Oct. 6, 2005, attached as Exh. HH to Rodriguez Decl.; Certificate Dismissing Application dated Jan. 9, 2006, attached as Exh. JJ to Rodriguez Decl.; Decision dated Dec. 14, 2006, attached as Exh. CCC to Rodriguez Decl.; Decision dated March 15, 2007, attached as Exh. EEE to Rodriguez Decl.; Certificate Denying Leave dated May 16, 2007, attached as Exh. III to Rodriguez Decl.; Certificate Denying Leave dated March 11,

2008, attached as Exh. NNN to Rodriguez Decl.; Decision dated Dec. 9, 2009, attached as Exh. QQQ to Rodriguez Decl.; Decision dated March 23, 2010, attached as Exh. SSS to Rodriguez Decl.; Certificate Denying Leave dated June 30, 2010, attached as Exh. UUU to Rodriguez Decl.; Certificate Dismissing Application dated Sept. 10, 2010, attached as Exh. WWW to Rodriguez Decl.).

***15** Finally, Mr. Washington filed three state habeas petitions, all of which were dismissed as meritless. (Petition for Writ of Habeas Corpus dated Dec. 31, 2004, attached as Exh. NN to Rodriguez Decl.; Order dated May 6, 2005, attached as Exh. PP to Rodriguez Decl.; Order dated June 9, 2006, attached as Exh. UU to Rodriguez Decl.; Pet. Memo. at 4; Resp. Memo. at 22 & n. 8, 23–24); *People ex rel. Washington v. NaPoli,* 69 A.D.3d 1066, 894 N.Y.S.2d 181 (3d Dep't 2010); *People ex rel. Washington v. Graham,* 64 A.D.3d 1181, 881 N.Y.S.2d 351 (4th Dep't 2009). He filed the current petition on September 7, 2010.

*Discussion*

A. *Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act (the "AEDPA"),

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "The 'contrary to' and 'unreasonable application' clauses [of § 2254(d) ] have independent meanings." *Douglas v. Portuondo,* 232 F.Supp.2d 106, 111 (S.D.N.Y.2002) (citing *Jones v. Stinson,* 229 F.3d 112, 119 (2d Cir.2000)). A state court decision violates the "contrary to" clause of § 2254(d)(1) when it "reaches a result opposite to the one reached by the Supreme Court on the same question of law or arrives at a result opposite to the one reached by the Supreme Court on a 'materially indistinguishable' set of facts." *Corines v. Superintendent, Otisville Correctional Facility,* 621 F.Supp.2d 26, 31 (E.D.N.Y.2008) (quoting *Earley v. Murray,* 451 F.3d 71, 74 (2d Cir.2006)). To determine if a decision is an unreasonable application of clearly established federal law under the AEDPA, "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Harrington v. Richter,* ––– U.S. ––––, ––––, 131 S.Ct. 770, 786 (2011). The AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents" but "goes no farther." *Id.*

In order for a federal court to review a state court decision at all, the petitioner must first have exhausted available state court remedies. *Duckworth v. Serrano,* 454 U.S. 1, 3 (1981) (per curiam); *see also* 28 U.S.C. § 2254(b)(1); *Aparicio v. Artuz,* 269 F.3d 78, 89 (2d Cir.2001). Exhaustion requires that the factual and legal basis for each claim be fairly presented to the highest available state court, and that the petitioner utilize " 'all available mechanisms to secure appellate review of the denial of' " that claim. *Mayen v. Artist,* No. 06 Civ. 14261, 2008 WL 2201464, at *4 (S.D.N.Y. May 23, 2008) (quoting *Klein v. Harris,* 667 F.2d 274, 282 (2d Cir.1981)); *see also* 28 U.S.C. § 2254(c). "In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Attorney General of New York,* 696 F .2d 186, 191 (2d Cir.1982) (en banc); *accord Jones v. Keane,* 329 F.3d 290, 294–95 (2d Cir.2003). Finally, even when a claim is not exhausted, a district court may reach the merits to deny the petition. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Lurie v. Wittner,* 228 F.3d 113, 124 (2d Cir.2000).

***16** Habeas corpus review is further limited in that a "claim resolved on independent and adequate state procedural

grounds is generally not subject to review on habeas." *Dunn v. Sears,* 561 F.Supp.2d 444, 452 (S.D.N.Y.2008) (citing *Coleman v. Thompson,* 501 U.S. 722, 729–30 (1991)). A state procedural bar qualifies as an "independent and adequate" state law ground if " 'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.' " *Olba v. Unger,* 637 F.Supp.2d 201, 207 (S.D.N.Y.2009) (quoting *Levine v. Commissioner of Correctional Services,* 44 F.3d 121, 126 (2d Cir.1995)). A state procedural rule will generally be adequate to preclude habeas review if it is " 'firmly established and regularly followed.' " *Lee v. Kemna,* 534 U.S. 362, 376 (2002) (quoting *James v. Kentucky,* 466 U.S. 341, 348 (1984)). Additionally, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.' " *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (quoting *Harris v. Reed,* 489 U.S. 255, 263 n. 9 (1989)). Nonetheless, "[f]ederal review [of procedurally barred claims] is permissible if the petitioner can demonstrate any one of the following circumstances: (1) actual innocence of the crime charged; (2) cause for the procedural default resulting in prejudice; or (3) that the procedural bar that the state court applied is not adequate ." *Dunn,* 561 F.Supp.2d at 452–53 (internal citations omitted).

Mr. Washington has timely filed his petition pursuant to the AEDPA's statute of limitations. (Pet. Memo. at 4; Resp. Memo. at 25–28); *see also* 28 U.S.C. § 2244(d)(1). Therefore, the AEDPA's exhaustion requirements and standard of review will be applied to each of the claims raised in his petition.

B. *Sufficiency of the Evidence*

The Due Process Clause of the Fourteenth Amendment requires criminal convictions to be supported by proof beyond a reasonable doubt for every element of the crime with which the defendant is charged. *Ponnapula v. Spitzer,* 297 F.3d 172, 181 (2d Cir.2002) (citing *In re Winship,* 397 U.S. 358, 364 (1970)). When evaluating a prisoner's sufficiency of the evidence claim, courts must ask " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Santos v. Zon,* 206 F.Supp.2d 585, 588 (S.D.N.Y.2002) (emphasis in original) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). When considering the sufficiency of a state law conviction, a court "must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir.1999).

Mr. Washington properly exhausted his sufficiency of the evidence claim by asserting it in his direct appeal and then attempting to appeal to the Court of Appeals. (Pet.App. Brief at 20–26); *Washington II,* 96 N.Y.2d 925, 732 N.Y.S.2d 643.

***17** Turning to the merits of his claim, the petitioner first states that the evidence was insufficient to support his convictions for robbery and burglary because the prosecutor failed to prove that Ms. Sanchez suffered "serious physical injury." (Pet. Memo. at 12–17). However, the petitioner is mistaken as to the elements of burglary in the first degree and robbery in the second degree under New York law-neither demands proof of "serious physical injury"; rather, they require a showing of "physical injury" alone. N.Y. Penal Law §§ 140.30, 160.10. As defined by New York law, "physical injury" is an "impairment of physical condition or substantial pain." N.Y. Penal Law § 10.00(9). And while New York courts have made clear that " 'petty slaps, shoves, kicks and the like delivered out of hostility, meanness and similar motives' " are insufficient to constitute physical injury, *Mustafaj v. Holder,* 369 Fed. Appx. 163, 168 (2d Cir.2010) (quoting *People v. Henderson,* 92 N.Y.2d 677, 680, 685 N.Y.S.2d 409, 410 (1999)), the injuries experienced by Ms. Sanchez-redness, cuts, and swelling in the face, a black eye, pain in her jaw and face, and back pain requiring the ongoing use of a cane-are more than sufficient to meet the definition of physical injury. (Tr. at 295–96, 299–300, 429–30, 446–48, 583); *see also, e .g., People v. Witt,* 56 A.D.3d 324, 325, 868 N.Y.S.2d 18, 19 (1st Dep't 2008) (finding physical injury where "defendant banged [victim's] head against a concrete or brick wall, causing a lump on the back of her head which lasted about two weeks"); *People v. Haith,* 44 A.D.3d 369, 370, 844 N.Y.S.2d 10, 11 (1st Dep't 2007) (same where defendant "knocked [victim] to the ground and dragged her along the street, causing abrasions, bruising and swelling"); *People v. Stapleton,* 33 A.D.3d 464, 465, 823 N.Y.S.2d 32, 33 (1st Dep't 2006) (same where defendant punched victim twice, causing "a swollen temple" and pain lasting for two days); *People v. James,* 2 A.D.3d 291, 291, 769 N.Y.S.2d 38, 38 (1st Dep't 2003) ("The element of physical injury was established by evidence that defendant punched the victim twice in the face during the robbery, causing pain, swelling and headaches.").

With respect to robbery in the first degree, however, Mr. Washington is correct that the statute refers to "serious physical injury":

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:

1. Causes serious physical injury to any person who is not a participant in the crime; or

2. Is armed with a deadly weapon; or

3. Uses or threatens the immediate use of a dangerous instrument....

N.Y. Penal Law § 160.15. As is evident from the language of this statute, however, a prosecutor is not required to prove "serious physical injury" if it is shown that the defendant used or threatened to use a "dangerous instrument" while committing the crime. N.Y. Penal Law § 160.15(3). A "dangerous instrument" is defined as "any instrument, article or substance, ... which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury." N.Y. Penal Law § 10.00(13). New York courts take a "use-oriented approach" to determining whether an object is as a "dangerous instrument." Under this approach, it is the purpose to which the object was put, rather than the inherent nature of the object itself, that is the focus of the analysis. *See People v. Juarez,* 13 Misc.3d 1131, 1137–39, 827 N.Y.S.2d 564, 568–70 (Westchester Cnty. Ct.2006) (observing that "an otherwise innocuous kitchen knife may become a 'dangerous instrument' if used 'in a manner which renders it readily capable of causing serious physical injury' " (quoting *People v. Carter,* 53 N.Y.2d 113, 116, 440 N.Y.S.2d 607, 608–09 (1981))).

***18** Here, the evidence at trial showed that Mr. Washington used a kitchen knife as a weapon to threaten and intimidate Ms. Sanchez. He pulled back Ms. Sanchez's head, held the knife to her throat, and told her that he would use it to kill her if she did not give him money and jewelry. (Tr. at 428). There is therefore no question that his use of the kitchen knife qualifies it as a dangerous instrument. Mr. Washington argues that because the testimony indicated he had already removed Ms. Sanchez's jewelry before picking up the kitchen knife and that he put down the knife before attempting to take any further property, the knife was not used "in commission of" the robbery. (Traverse Petitioner's Memorandum of Law ("Pet. Reply Memo.") at 10–12; Tr. at 480–81, 488, 524). This creative reading of the statute does not comport with New York law and thus fails to support the petitioner's argument. *Cf. People v.. Ford,* 11 N.Y.3d 875, 878, 874 N.Y.S.2d 859, 860–61 (2008) (finding § 160.15(3) met where defendant told victim he had knife and gestured toward his pants pocket but never revealed weapon); *People v. Gill,* 191 A.D.2d 321, 322, 595 N.Y.S.2d 46, 47 (1st Dep't 1993) (finding defendant's use of razor blade to escape robbery scene sufficient to fulfill § 160.15(3)). Therefore, the evidence at trial was sufficient to sustain the petitioner's conviction for robbery in the first degree.

Mr. Washington next argues that the evidence was insufficient to support his convictions because Ms. Sanchez was not a credible witness. (Pet. Memo. at 17–22). However, it is "well established that questions of witness credibility are jury questions and a federal habeas court may not reassess the jury's finding of credibility." *Jackson v. Heath,* No. 10 Civ. 3449, 2010 WL 3075557, at *14 (S.D.N.Y. Aug. 6, 2010). Similarly, the petitioner's claim that the evidence was insufficient because (1) some of the witness' testimony was contradictory and (2) the prosecutor failed to advance a credible theory explaining how he gained entry to Ms. Sanchez's building are insufficient to call the jury's verdict into question. (Pet. Memo. at 22–26); *Cruz v. Ercole,* No. 07 Civ. 9868, 2010 WL 245038, at *8 (S.D.N.Y. Jan. 20, 2010) ("[T]he fact that the jury chose to credit the testimony of certain of the prosecution's witnesses or resolved inconsistencies in the prosecution's favor does not undermine the reliability of the jury's verdict."), *report and recommendation adopted,* 2010 WL 4860668 (S.D.N.Y. Nov. 29, 2010). Viewing all of the evidence adduced at trial in the light most favorable to the prosecution, a rational jury could have found all of the elements of the charged crimes beyond a reasonable doubt. Therefore, the Appellate Division's decision denying this claim was reasonable.

C. *Probable Cause Hearing*

" '[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.' " *Graham v. Costello,* 299 F.3d 129, 131 (2d Cir.2002) (quoting *Stone v. Powell,* 428 U.S. 465, 494 (1976)). A state denies a petitioner a "full and fair" opportunity to litigate only "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley,* 975

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

F.2d 67, 70 (2d Cir.1992); *accord* *Johnson v. Graham,* No. 09 Civ. 5838, 2010 WL 3855286, at *4 (S.D.N.Y. Oct. 1, 2010). With respect to the first requirement, "[i]t is well-settled that New York's procedure for litigating Fourth Amendment claims is constitutionally adequate." *Gonzalez v. Connolly,* No. 09 Civ. 3834, 2010 WL 1005168, at *4 (S.D.N.Y. March 18, 2010). With respect to the second, an "unconscionable breakdown" occurs "where the petitioner demonstrates that no state court conducted a reasoned method of inquiry into relevant questions of fact and law, or any inquiry at all into the Fourth Amendment claim." *Lebron v. Sanders,* No. 02 Civ. 6327, 2008 WL 793590, at *9 (S.D.N.Y. March 25, 2008) (internal quotations marks and alteration omitted).

***19** The petitioner does not deny that the trial court held a pretrial suppression hearing. (Pet. Memo. at 26–31). However, he argues that an "unconscionable break-down" occurred in those proceedings as demonstrated by the fact that(1) the jewelry and money found in his pocket by the police was not suppressed despite the inconsistent testimony of Detective Yarbrough, (2) the prosecutor was not penalized for failing to produce Sergeant Alexa's notes and police recordings related to Detective Yarbrough's testimony prior to the hearing, (3) the petitioner's efforts to represent himself were infringed by his standby counsel and by the prosecutor, and (4) the prosecutor was able to withdraw her request for an identification hearing on the ground that no "police arranged identification" of the petitioner had occurred. (Pet. Memo. at 27–44; 6/4/97 H. Tr. at 18). These allegations fail to demonstrate the type of dysfunction necessary to qualify as an "unconscionable breakdown" under Second Circuit law. *See, e.g., Allah v. LeFevre,* 623 F.Supp. 987, 991 (S.D.N.Y.1985) (citing examples of "unconscionable breakdown," including "the bribing of a trial judge, the prosecution's knowing use of perjured testimony, and a guilty plea extracted by torture"); *Cruz v. Alexander,* 477 F.Supp. 516, 522–23 (S.D.N.Y .1979) (finding "unconscionable breakdown" where trial court, Appellate Division, and Court of Appeals all failed to "make a reasoned inquiry" into petitioner's Fourth Amendment claim). Furthermore, the fact that the petitioner succeeded in raising precisely these four objections on direct appeal illustrates that there was no "unconscionable breakdown" in the process afforded him by New York's courts-the courts' failure to agree with the petitioner does not equate to an "unconscionable breakdown." (Pet.App. Brief at 27–34; Supp. Brief at 13–14, 28–35, 41–44). Therefore, habeas review does not provide an opportunity for reaching the merits of the petitioner's Fourth Amendment claims.

D. *Brady Violations*

Pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963), "the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is material either to guilt or to punishment." *United States v. Paulino,* 445 F.3d 211, 224 (2d Cir.2006) (internal quotation marks omitted). There are three components to a *Brady* violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281–82 (1999); *accord* *Quintana v. Armstrong,* 337 Fed. Appx. 23, 24 (2d Cir.2009). " '[M]aterial' in the Brady context does not mean material in the evidentiary sense, as Brady seemed to suggest. Rather, evidence is material in the Brady context only if 'its suppression undermines confidence in the outcome of the trial.' " *United States v. Coppa,* 267 F.3d 132, 141 (2d Cir.2001) (quoting *United States v. Bagley,* 473 U.S. 667, 678 (1985)). "The touchstone of materiality is a[ ] reasonable probability of a different result." *DiSimone v. Phillips,* 461 F.3d 181, 196 (2d Cir.2006) (internal quotation marks omitted).

***20** Mr. Washington identifies eight pieces of evidence that he alleges the prosecutor failed to produce in violation of her obligations under *Brady* [2] :(1) the complete tape of police radio transmissions relied on by Detective Yarbrough, (2) Sergeant Alexa's notes, (3) photographs of Ms. Sanchez's injuries, (4) other photographs introduced by the prosecutor at trial, (5) Ms. Sanchez's criminal record, (6) Mr. Bentivegna's "Chief Complaint" report, (7) proof of the prosecutor's agreement with Ms. Yunen, and (8) Officer Olmo's notes. (Pet. Memo. at 46–63). The parties agree that all of these claims were made to the Appellate Division, either in Mr. Washington's brief or in his attorney's. [3] (Pet.App. Brief at 35–38; Supp. Brief at 13–23). The Appellate Division rejected these claims and the petitioner appealed, thus exhausting them for AEDPA purposes. *Washington II,* 96 N.Y.2d 925, 732 N.Y.S .2d 643; *Washington I,* 282 A.D.2d at 376, 726 N.Y.S.2d at 7. Therefore, these claims will be reviewed individually under the AEDPA's standard of deference.

1. *Radio Transmission Tape*

Mr. Washington claims that he was not timely provided with a complete copy of the tape containing the police

radio transmissions Detective Yarbrough heard on the day of the crime. (Pet. Memo. at 48–49). He alleges it was only when he obtained and listened to the entire tape years after his conviction that he discovered it contains evidence indicating he was already in police custody when Detective Yarbrough arrived at the cemetery, thus contradicting Detective Yarbrough's testimony at the suppression hearing and at trial. (Pet. Memo. at 49; Pet. Reply Memo. at 28–29). Presumably, if the petitioner had timely access to this tape, he could have used it to impeach Detective Yarbrough at both the pretrial hearing and at trial, which could have resulted in the exclusion of the jewelry and money found in his pocket following the arrest.

Even assuming this recitation of the facts to be true, the tape is mot material in the *Brady* sense, and thus it was not a constitutional violation for the prosecutor to have failed to produce it. Had the jewelry and money found on the petitioner been excluded from evidence and had the jury disbelieved Detective Yarbrough's testimony at trial, the remaining evidence was still more than sufficient to maintain confidence in the ultimate verdict. The identification evidence against the petitioner was overwhelming-he was visually identified at trial by the victim and four police officers in addition to Detective Yarbrough. (Tr. at 37, 101, 187–88, 230, 292, 426–27). Moreover, Ms. Sanchez and the officers described the perpetrator as wearing black pants, no shirt, and a pair of handcuffs on one wrist when he fled the scene of the robbery-precisely what the petitioner was wearing when he was arrested. (Tr. at 38, 41–42, 102, 106–07, 188, 229, 233, 294). Two of the officers explicitly testified that the perpetrator they saw in Ms. Sanchez's apartment building was the same man they subsequently observed in handcuffs at the cemetery. (Tr. at 45, 101, 105). Therefore, the petitioner has not shown a "reasonable probability of a different result" had he timely received the entire tape. *DiSimone,* 461 F.3d at 196.

2. *Sergeant Alexa's Notes*

***21** The petitioner next claims that the prosecutor violated her *Brady* obligations by failing to produce Sergeant Alexa's notes until long after the suppression hearing at which he testified. (Pet. Memo. at 49–50). While it is true that the prosecutor did not produce Sergeant Alexa's notes until after he had testified both at the hearing and at trial, the petitioner has failed to explain how the contents of the notes are favorable to his position or specify how he was prejudiced by their being withheld, aside from a conclusory assertion that he "could of made valuable use" of them. (Pet. Memo. at 50; Tr. at 165).

3. *Photographs of Ms. Sanchez's Injuries*

Mr. Washington asserts that the prosecutor failed to timely provide him with copies of photographs of Ms. Sanchez's injuries. (Pet. Memo. at 50–51). This alleged failure does not rise to the level of a *Brady* violation, however. First, the trial record shows that these photographs were produced to the petitioner before Ms. Sanchez testified; therefore, he was not prejudiced in his ability to use them in cross-examining her. (Tr. at 165–66). Second, the photographs are not favorable to the petitioner-in fact, they provided compelling evidence against him. (Tr. at 168). The petitioner himself recognized this fact immediately upon receiving the photographs, when he objected to their introduction on the grounds that they were "highly prejudicial and highly inflammatory." (Tr. at 166–68). Such prejudice is the opposite of the showing required for the petitioner to make out a *Brady* violation, which requires that the improperly withheld evidence would have helped, not hurt, his case.

4. *Photographs Used by the Prosecutor at Trial*

The petitioner claims that the prosecutor never produced a number of photographs that she used at trial, including images of him and of areas around Ms. Sanchez's apartment building. (Pet. Memo. at 52). He admits that these photographs were shown to his legal advisor, Mr. Scott, but argues that the prosecutor's failure to provide him with copies violated *Brady* due to his *pro se* status. (Pet. Memo. at 53–54; Tr. at 386). However, Mr. Washington has again failed to show how these photographs were favorable to his defense or how he was prejudiced by the prosecutor's alleged withholding of them. Although he states that he had "to scramble to make use of the late material in the best way available," he does not specify how he would have been able to use these materials to his advantage had he received them at an earlier point in time. (Pet. Memo. at 55).

5. *Ms. Sanchez's Criminal Record*

Mr. Washington next argues that the prosecutor violated her *Brady* obligations by failing to provide him with a copy of Ms. Sanchez's arrest record. (Pet. Memo. at 55–60). He asserts that Ms. Sanchez was arrested and prosecuted in 1996 for driving without a license and hitting a pedestrian with her car. (Pet. Memo. at 56–57). The petitioner has previously asserted this argument in the state courts: in 1999, he filed a motion to vacate his conviction pursuant to CPL § 440.10 based on the prosecutor's alleged failure to turn over Ms.

Sanchez's arrest record. (Washington 9/16/99 Aff., ¶¶ 9–11). However, the New York Supreme Court found that the motion was without merit because "Ms. Sanchez has no criminal record." (12/3/99 Order). This finding was adopted by the Appellate Division in its decision affirming Mr. Washington's conviction. *Washington I,* 282 A.D.2d at 376, 726

***22** N.Y.S.2d at 7. The petitioner has therefore failed to show that the prosecutor suppressed evidence of Ms. Sanchez's criminal history. Furthermore, the trial record shows that the petitioner was aware at trial of the facts of Ms. Sanchez's traffic accident and arrest and used them to impeach her credibility on cross—examination. (Tr. at 492–94, 520–23). Therefore, even if Ms. Sanchez had a criminal record and the prosecutor was aware of it, Mr. Washington has not shown that he was prejudiced by the prosecutor's failure to produce it.

6. *Mr. Bentivegna's "Chief Complaint" Report*

The petitioner states that the prosecutor failed to provide him with a copy of the "Chief Complaint Report" of Mr. Bentivegna, the responding EMT. (Pet. Memo. at 60–61). He claims that this report describes Ms. Sanchez having told Mr. Bentivegna that the petitioner " 'pushed in [the door] and [he] punched [her] in the face.' " (Pet Memo. at 60; Tr. at 632). Mr. Washington argues that this statement is in conflict with Ms. Sanchez's testimony at trial, including her statement that he initially hit her in the face either with the door or with the box he was carrying and only punched her in the face after he had entered the apartment. (Pet. Memo. at 60; Tr. at 423–24). He therefore asserts that the prosecutor's failure to produce the "Chief Complaint Report" prejudiced his ability to effectively cross-examine Ms. Sanchez at trial. (Pet. Memo. at 60).

This argument is unavailing for at least two reasons. First, the petitioner does not deny that, prior to Ms. Sanchez's crossexamination, the prosecutor produced a differently-titled report containing essentially the same information. (Resp. Memo. at 49; Pet. Memo. at 60; Tr. at 395). The petitioner claims that he has seen both reports and that there is "absolutely no doubt" that the "Ambulance Call Report," which was produced, differs from the "Chief Complaint Report." (Pet. Memo. at 61). However, he admits that the "Ambulance Call Report" contained a subsection entitled "Chief Complaint," in which Mr. Bentivegna recorded Ms. Sanchez's allegation that the petitioner "pushed in and punched me." (Pet. Memo. at 60; Resp. Memo. at 49). Therefore, even if the "Ambulance Call Report" and the "Chief Complaint Report" are different documents, the "Ambulance Call Report" contained the same characterization of events as was contained in the "Chief Complaint Report" and therefore provided the petitioner with the same opportunity to challenge Ms. Sanchez's testimony on crossexamination. Thus, it is not possible that the outcome of Mr. Washington's trial was prejudiced by the prosecutor's failure to turn over the "Chief Complaint Report."

Second, neither of the Reports conflict with Ms. Sanchez's testimony at trial. Ms. Sanchez stated that the petitioner rang her doorbell and, when she opened the door, pushed the door in and entered her apartment. (Tr. at 422–23). The door hit Ms. Sanchez, knocking her to the ground, following which the petitioner threw or dropped the box he had been holding in Ms. Sanchez's face. (Tr. at 424). Ms. Sanchez next described how Mr. Washington pulled her into the kitchen and then began hitting her in the face. (Tr. at 424). Her statement to Mr. Bentivegna that the petitioner both pushed into her apartment and punched her in the face is therefore supported by her testimony, which describes both of those acts in sequence, albeit with other violent acts in between.

7. *Prosecutor's Agreement with Ms. Yunen*

***23** Next, Mr. Washington argues that the prosecutor violated her *Brady* obligations by failing to reveal an agreement she made with Ms. Yunen pursuant to which the latter was relocated. (Pet. Memo. at 61–62). This allegation is false. The trial transcript clearly shows that Ms. Broderick informed Mr. Washington in the midst of Ms. Yunen's testimony that she had helped to relocate Ms. Yunen. (Tr. at 690). Ms. Broderick further revealed that the reason for Ms. Yunen's relocation was that Ms. Sanchez had received a phone call during which the caller offered her $1,000 in exchange for her not testifying against the petitioner and also displayed knowledge of Ms. Yunen's name and address, which caused Ms. Broderick to fear for the witness' physical safety. (Tr. at 689–90; Jury Trial Transcript dated June 11, 1997 at 2–3). The trial judge implied that, should Mr. Washington question Ms. Yunen about her agreement with the prosecutor, it was possible that the details of the threatening phone call might be revealed to the jury. (Tr. at 689–90). Following this explanation, the petitioner agreed not to ask any further questions about Ms. Yunen's conversations with Ms. Broderick and to move on to a new line of questioning. (Tr. at 691–92). This demonstrates that the petitioner was well aware of the agreement between Ms. Yunen and the prosecutor and chose not to pursue the matter as part of his defense.

8. *Officer Olmo's Notes*
Finally, the petitioner alleges that the prosecutor violated her *Brady* obligations by not promptly producing Officer Olmo's notes, as a result of which he was prejudiced. (Pet. Memo. at 62–63). However, the record reveals that these notes were produced to the petitioner before Officer Olmo testified. (Tr. at 165). Furthermore, the petitioner has not explained how these notes were favorable to his defense or specifically how he was prejudiced in his ability to use them.

E. *Right to Self–Representation*
The Sixth Amendment protects a criminal defendant's right to represent himself at trial. *See Faretta v. California,* 422 U.S. 806, 819 (1975) ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense."); *Davis v. Grant,* 532 F.3d 132, 141 (2d Cir.2008). In order to take advantage of this right, however, the defendant must "be made aware of the dangers and disadvantages of self-representation" and "knowingly and intelligently forgo" representation by counsel. *Faretta,* 422 U.S. at 835 (internal quotation marks omitted). In addition, the defendant's request to proceed *pro se* must be both "timely" and "unequivocal." *LaValle v. Artus,* No. 09–4685, 2010 WL 5156849, at *1 (2d Cir. Dec. 21, 2010) (internal quotation marks omitted).

Even where a defendant has invoked his right to selfrepresentation, "a judge may qualify it by appointing stand-by counsel, with or without the defendant's consent," for the dual purposes of (1) providing legal advice upon the request of the defendant or the judge and (2) representing the defendant if his *pro se* status is terminated. *Clark v. Perez,* 510 F.3d 382, 395 (2d Cir.2008). The decision to appoint standby counsel "lies solely within the discretion of the trial court." *United States v. Tutino,* 883 F.2d 1125, 1141 (2d Cir.1989); *accord Harrison v.. Walsh,* No. 06 Civ. 13328, 2007 WL 1576265, at *24 (S.D.N.Y. June 1, 2007), *report and recommendation adopted,* 2007 WL 2844867 (S.D.N.Y. Sept. 27, 2007). There are two restrictions on the participation of standby counsel at trial: (1) the defendant must "preserve actual control" over the defense such that standby counsel is not allowed "to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak *instead* of the defendant on any matter of importance"; and (2) standby counsel's participation "should not be allowed to destroy the jury's perception that the defendant is representing himself." *McKaskle v. Wiggins,* 465 U.S. 168, 178 (1984); *accord El v. Artuz,* 105 F.Supp.2d 242, 253 (S.D.N.Y.2000).

***24** Mr. Washington raised the claim that he was denied his right of self-representation in his *pro se* appellate brief and sought to appeal denial of the claim to the Court of Appeals, thereby exhausting it. (Supp. Brief at 41–44); *Washington II,* 96 N.Y.2d 925, 732 N.Y.S.2d 643; *Washington I,* 282 A.D.2d at 376–77, 726 N .Y.S.2d at 7.

Turning to the merits, Mr. Washington first claims that he was denied his right to counsel by being forced to represent himself *pro se,* (Pet. Memo. at 64–67; Pet. Reply Memo. at 34–36). He states that Justice Bradley failed to investigate the complaints he raised regarding Mr. Scott's representation or to explore the possibility of appointing new counsel before allowing the petitioner to represent himself. (Pet. Reply Memo. at 34–35). This allegation does not comport with the record. While it is true that Justice Bradley did not conduct an extensive inquiry into Mr. Washington's complaints about his counsel, that is because the petitioner made those complaints not in an effort to get new counsel but rather in support of his motion to proceed *pro se.* (3/29/97 H. Tr. at 3–4). In response to Justice Bradley's question whether Mr. Washington was "seeking another lawyer or to represent" himself, the petitioner responded, "I am seeking to represent myself." (3/29/97 H. Tr. at 7). Justice Bradley then conducted extensive questioning regarding the petitioner's qualifications, including his educational background and familiarity with the law. (3/29/97 H. Tr. at 8–11). After advising Mr. Washington of the disadvantages of self-representation and ensuring that the petitioner understood those warnings, Justice Bradley again asked if Mr. Washington wanted to represent himself. The petitioner responded in the affirmative. (3/29/97 H. Tr. at 12–13). There is therefore no basis in the record for Mr. Washington's claim that he was forced to represent himself against his will.

Next, Mr. Washington alleges that his right to represent himself was infringed by the repeated interference of Ms. Broderick and Mr. Scott at trial. (Pet. Memo. at 63, 67). However, he has failed to cite any instances of Ms. Broderick's interfering in his presentation at trial, and the examples he cites of Mr. Scott's interference are insufficient to violate his right to selfrepresentation. *See United States v. Dyman,* 739 F.2d 762, 771–72 (2d Cir.1984) (finding standby counsel's participation insufficient to infringe defendant's right to self-representation because it did not interfere with defendant's ability to put on "his [own] case in his own

way" (quoting *McKaskle,* 465 U.S. at 177; El, 105 F.Supp.2d at 253 ("Unsolicited participation by ... standby counsel does not necessarily violate petitioner's right to represent himself."). Mr. Washington cites only two occasions on which Mr. Scott interrupted the proceedings. (Tr. at 166, 731–34). Mr. Scott was quickly stopped by Justice Brandveen on both occasions, and in neither instance was the jury present. As a result, Mr. Scott's interruptions were insufficient to wrest tactical control of the case from Mr. Washington or to undermine the jury's view of Mr. Washington's *pro se* status, and his actions therefore did not violate the petitioner's right to selfrepresentation.

***25** Finally, Mr. Washington argues that Mr. Scott interfered with his ability to represent himself by receiving *Brady* materials from the prosecution but then failing to turn those materials over to him. (Pet. Memo. at 67). As discussed above, however, none of these alleged failures kept favorable materials from the petitioner or prejudiced his ability to put on his defense. Therefore, they cannot have interfered with his right to self-representation. For all of these reasons, the Appellate Division's determination that the petitioner's Sixth Amendment right to represent himself at trial was not violated was not unreasonable or contrary to federal law.

F. *Ineffective Assistance of Counsel*

A habeas petitioner's claim that he received ineffective assistance of trial or appellate counsel is analyzed according to the principles set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). *See Ortiz v. Artuz,* No. 06 Civ. 6444, 2010 WL 3238994, at *2 (S.D.N.Y. Aug. 11, 2010) (citing *Smith v. Robbins,* 528 U.S. 259, 285 (2000); *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir.2001)). Under this test, a petitioner must demonstrate (1) that the representation he received "fell below an objective standard of reasonableness," *Strickland,* 466 U.S. at 688, and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694; *accord United States v. De La Pava,* 268 F.3d 157, 163 (2d Cir.2001). When reviewing counsel's performance, a habeas court should be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. As a result, " '[s]urmounting *Strickland's* high bar is never an easy task.' " *Harrington,* ––– U.S. at ––––, 131 S.Ct. at 788 (quoting *Padilla v. Kentucky,* ––– U.S. ––––, ––––, 130 S.Ct. 1473, 1485 (2010)).

The petitioner alleges that both his pretrial and appellate counsel were constitutionally ineffective. (Pet. Memo. at 69–89). I will address each of these claims separately.

1. *Pretrial Counsel*

Mr. Washington claims that Mr. Scott's assistance was ineffective because (1) he failed to ensure that the petitioner was able to appear and testify in front of the grand jury, (2) he did not challenge the indictment despite its facial invalidity, and (3) he refused to communicate with the petitioner for a period of time. (Pet. Memo. at 70–72, 77–79). Mr. Washington exhausted these claims by raising them in his direct appeal. (Supp. Brief at 45–46); *Washington II,* 96 N.Y.2d 925, 932 N.Y.S.2d 643; *Washington I,* 282 A.D.2d at 377, 726 N.Y.S.2d at 7.

With respect to the petitioner's first argument, federal courts typically rely on one of two grounds in rejecting such claims. First, they may apply the rule of *United States v. Mechanik,* which states that a defendant's conviction beyond a reasonable doubt by a petit jury cures any defects in his grand jury proceeding. 475 U.S. 66, 70 (1986); *see also, e.g., Montalvo v. Annetts,* No. 02 Civ. 1056, 2003 WL 22962504, at *24–25 (S.D.N.Y. Dec. 17, 2003) (denying petitioner's "ineffective assistance of trial counsel claim, based on counsel's failure to preserve his right to testify before the grand jury, ... [b]ecause any defect in the grand jury proceedings was cured by the petit jury conviction" and citing cases).

***26** However, the New York Court of Appeals has explicitly declined to adopt *Mechanik,* finding that New York law "provides for dismissal [of an indictment] upon the mere possibility of prejudice" and allows a defendant to raise claims of defects in his grand jury proceedings "even after a plea of guilty." *People v. Wilkins,* 68 N.Y.2d 269, 277 n. 7, 508 N.Y.S.2d 893, 897 n. 7 (1986); *see also People v. Revette,* 48 A.D.3d 886, 886–87 & n. 1, 851 N.Y.S.2d 299, 301 & n. 1 (3d Dep't 2008) (considering challenge to grand jury proceedings brought by convicted defendant on direct appeal because "[a]lthough defendant was convicted by a jury following a trial, this issue nevertheless survives for appellate review in New York"); *People v. Bey–Allah,* 132 A.D.2d 76, 81, 521 N.Y.S.2d 422, 425 (1st Dep't 1987) ("The Court of Appeals has held ... that defects in Grand Jury proceedings may be raised on appeal, even after conviction."). In *Wilkins* the Court of Appeals not only declined to apply *Mechanik,* but also dismissed the appellant's indictment and reversed his conviction due to flaws in the grand jury proceedings. *Wilkins,*

68 N.Y.2d at 277, 508 N.Y.S.2d at 897. Thus, while defects in a petitioner's grand jury proceedings are not themselves cognizable on habeas review pursuant to *Mechanik,* courts may hold that a trial counsel's failure to raise objections to such defects in state proceedings causes prejudice sufficient to constitute ineffective assistance of counsel under *Strickland,* even when the petitioner has been convicted after a jury trial.

Federal courts have also rejected habeas petitioners' ineffective assistance of counsel claims on the ground that "New York courts have consistently held that counsel's failure to ensure that the defendant testifies before the grand jury does not amount to ineffective assistance of counsel." *Batchilly v. Nance,* No. 08 Civ. 7150, 2010 WL 1253921, at *41 (S.D.N.Y. April 2, 2010) (internal quotation marks omitted); *see also, e.g., Affser v. Murray,* No. 04 CV 2715, 2008 WL 2909367, at *7 (E.D.N.Y. July 28, 2008); *Williams v. Ricks,* No. 02 Civ. 2131, 2004 WL 1886028, at *7 (S.D.N.Y. Aug. 24, 2004). But this conclusion does not follow. The federal constitutional standard in *Strickland* operates independently of state constitutional protections, and it is possible that a petitioner may be able to show both deficient performance and prejudice where his trial counsel failed to ensure his grand jury rights.

Despite the apparent inadequacy of these two traditional approaches, Mr. Washington's claim that Mr. Scott was ineffective for failing to ensure his testimony before the grand jury nevertheless fails on the merits. The petitioner argues that, had he been produced to testify in front of the grand jury, he would have pointed out inconsistencies in Ms. Sanchez's and Sergeant Alexa's testimony, thus rendering their recitation of events incredible and precluding his indictment. (Pet. Memo. at 79–81). However, Mr. Washington's attempts to impeach these same witnesses on the same grounds at trial were unsuccessful, and he has failed to explain why his presentation in front of the grand jury would have been more convincing, especially in light of the lower burden of proof for the prosecution at that stage. Moreover, the testimony the petitioner desired to give the grand jury is utterly unconvincing. He first claims that he would have shown Ms. Sanchez to be "a l[ia]r" because she did not go to the police station to provide a statement about the alleged robbery or participate in "a line-up or photo array procedure." (Pet. Memo. at 79). However, Ms. Sanchez gave a statement to the police at her apartment, and there is no evidence that the police asked her to participate in any formal identification procedures. (Tr. at 46, 336–37, 356–57). Therefore, these allegations do not impugn her testimony. The petitioner next states that, had he testified in front of the grand jury, he would have impeached Sergeant Alexa with statements made by other witnesses at his subsequent trial. This is obviously impossible. Mr. Washington has therefore failed to show that the outcome of his grand jury proceedings would have differed had he been produced to testify; thus, his claim fails. *Cf. Fox v. Poole,* No. 06 CV 856, 2008 WL 1991103, at *8 (E.D.N.Y. May 5, 2008) (denying habeas petitioner's ineffective assistance of counsel claim, which was based on attorney's failure to effectuate grand jury testimony, where petitioner failed to show prejudice).

***27** The petitioner's second claim of ineffective assistance of pretrial counsel also fails. Although Mr. Scott may not have moved to dismiss the indictment on the petitioner's behalf, Mr. Washington did file such a motion himself, which Justice Bradley rejected on its merits. (3/29/97 H. Tr. at 2–3). The petitioner has failed to explain how his counsel's failure to file the same motion changed the outcome of the proceedings. The same reasoning undermines Mr. Washington's allegation that Mr. Scott refused to communicate with him for a period of time following his indictment and before the suppression hearing. (Pet. Memo. at 70–71; Pet. Reply Memo. at 38). The petitioner does not deny that he filed a variety of motions during that period, challenging both the validity of his indictment and the representation he was receiving from Mr. Scott. (Pet. Reply Memo. at 38–39). He has not explained how the outcome of those motions, or of his case generally, was affected in any way by Mr. Scott's alleged failure to assist him during that period. Therefore, the Appellate Division's decision denying this claim was not unreasonable or contrary to federal law.

2. *Appellate Counsel*

It is well established that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant." *Evitts v. Lucey,* 469 U.S. 387, 394 (1985); accord *Wynder v. Smith,* No. 09 Civ. 4541, 2011 WL 70556, at *12 (S.D.N.Y. Jan. 10, 2011); *see also Sellan v. Kuhlman,* 261 F.3d 303, 317 (2d Cir.2001). "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994); *accord Forte v. LaClair,* 354 Fed. Appx. 567, 569 (2d Cir.2009), *cert. denied,* ––– U.S. ––––, 130 S.Ct. 1521 (2010). "To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a reasonable probability that [his] claim would have been successful before the [state's highest court].'

" *Mayo,* 13 F.3d at 534 (alteration in original) (internal quotation marks omitted) (quoting *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992)). When appellate counsel is faulted for failing to raise a particular claim on direct appeal, if that claim is "not meritorious, there can be no merit to the claim that appellate counsel should have raised it." *Jeremiah v. Artuz,* 181 F.Supp.2d 194, 200 (E.D.N.Y.2002).

Mr. Washington claims here that Mr. Lewis was ineffective because he (1) refused to assert meritorious arguments despite the petitioner's having made him aware of them, (2) did a poor job of presenting the arguments he did raise, (3) failed to file a reply brief, (4) did not argue that the petitioner received ineffective assistance of pretrial counsel, (5) refused to assert all of the *Brady* and *Rosario* violations identified by the petitioner, (6) failed to convincingly argue that the trial evidence was insufficient to support the convictions, and (7) did not challenge the "predicate felony statement" underlying the sentence. (Pet. Memo. at 81–89; Pet. Reply Memo. at 39–41). However, the petitioner has failed to exhaust any of these claims. His first coram nobis petition, which raised the first two issues complained of here, was denied and not appealed to the Court of Appeals; the second, which the petitioner did appeal to the Court of Appeals following its denial, did not include any of the issues raised here. (Pet. Memo. at 1; Resp. Memo. at 17 & n. 5; Memorandum of Law, attached as part of Exh. VV to Rodriguez Decl., at 17–27; 2/27/07 Certificate). Because the petitioner has failed to exhaust these claims, they are not ripe for review.

***28** In any event, these claims fail on the merits. A review of Mr. Lewis' brief shows that the arguments he chose to raise were well-selected and well-argued, despite the ultimate outcome. Mr. Lewis' decision not to file a reply brief disputing the prosecutor's knowledge of Ms. Sanchez's arrest does not constitute ineffective assistance of appellate counsel because the pertinent legal consideration for this purported *Brady* claim was not whether the prosecutor was aware of Ms. Sanchez's *arrest* but whether she withheld a copy of Ms. Sanchez's *criminal record. See Smalls v. McGinnis,* No. 04 Civ. 301, 2004 WL 1774578, at *32 (S.D.N.Y. Aug. 10, 2004) (finding failure to file reply brief not ineffective assistance of counsel where petitioner "has not demonstrated that a reply brief or oral argument would have changed the outcome of his appeal"). Finally, the specific arguments the petitioner claims his appellate counsel should have asserted are without merit, and therefore it was not ineffective assistance for Mr. Lewis not to raise them. For these reasons, this asserted ground for relief should be denied.

G. *Independent Source Hearing* [4]

Mr. Washington claims that the prosecutor failed to provide him with appropriate notice pursuant to CPL § 710.30 for Officer Colon's visual identification of him at the suppression hearing or Ms. Yunen's visual or voice identification of him at trial. (Pet. Memo. at 92–96). The respondent argues that this claim is not exhausted. (Resp. Memo. at 60). However, the petitioner raised this claim in his *pro se* supplemental brief, and it was rejected by the Appellate Division. (Supp. Brief at 32–35); *Washington I,* 282 A .D.2d at 377, 726 N.Y.S.2d at 7. He then appealed that decision, thereby exhausting the claim. *Washington II,* 96 N.Y.2d 925, 732 N.Y.S.2d 643.

Section 710.30 provides in relevant part that the prosecution must serve notice upon a defendant of its intention to offer "testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such ..." CPL § 710.30(1)(b). However, violations of § 710.30 do not implicate the Federal Constitution and thus are not cognizable on habeas review. *See, e .g., Brown v. Woods,* No. 07 Civ. 10391, 2010 WL 2605744, at *4 (S.D .N.Y. June 29, 2010) (finding § 710.30(1)(b) "only requires the disclosure of witnesses who previously made out-of-court identifications of the defendant"); *Soto v. Donelli,* No. 06 Civ. 5816, 2010 WL 4242602, at *6 (S.D.N.Y. April 8, 2010), *report and recommendation adopted,* 2010 WL 4258879 (S.D.N.Y. Oct. 27, 2010).

Mr. Washington's § 710.30 is therefore not cognizable on federal habeas review, and this Court has no obligation to review its merits. Even looking to the merits, however, this claim fails. Notice pursuant to § 710.30 is only required for witnesses whose identification is based on a police- or prosecutor-arranged procedure. *See Brown,* 2010 WL 2605744, at *4 (finding § 710.30(1)(b) "only requires the disclosure of witnesses who previously made out-of-court identifications of the defendant"); *Lewis v. Bennett,* 328 F.Supp.2d 396, 412–13 (W.D.N.Y.2004) (citing state cases holding same). The respondent states that there were no police-arranged identification procedures used in the investigation or prosecution of the petitioner and, thus, the petitioner was never entitled to notice pursuant to § 710.30. (Resp. Memo. at 61; 6/4/97 H. Tr. at 18–19). Although the petitioner disputes this assertion and alleges that Ms. Yunen and Ms. Phillipeaux were both shown photo arrays, he has

not identified the source of this belief, stating merely that "the facts will show" it to be true. (Pet. Reply Memo. at 43–44). Such a conclusory assertion is insufficient to create a disputed factual issue.

H. *Theory of the Case*

***29** Mr. Washington alleges that the prosecutor impermissibly altered her theory of the case in the middle of his trial, thus undermining his ability to mount a coherent defense. [5] (Pet. Memo. at 96–102). In particular, he objects to the prosecutor's varying explanations for how he gained entry into Ms. Sanchez's building. (Pet. Memo. at 96–99). He raised this claim on direct appeal in his supplemental brief; when it was denied by the Appellate Division, he sought leave to appeal to the Court of Appeals. (Supp. Brief at 50–51); *Washington II,* 96 N.Y.2d 925, 732 N.Y.S.2d 643; *Washington I,* 282 A.D.2d at 377, 726 N.Y.S.2d at 7. This claim is therefore exhausted.

The Fourteenth Amendment protects a criminal defendant's right "to fair notice of the charges against him." *LanFranco v. Murray,* 313 F.3d 112, 119 (2d Cir.2002). Such notice is essential to a defendant's ability to " 'present his defense without being taken by surprise by evidence offered at trial.' " *Armatullo v. Taylor,* No. 04 Civ. 5357, 2005 WL 2386093, at *18 (S.D.N.Y. Sept. 28, 2005)

(quoting *United States ex rel. Richards v. Bartlett,* No. 92 CV 2448, 1993 WL 372267, at *4 (E.D.N.Y. Sept. 9, 1993)). However, the Second Circuit's jurisprudence allows prosecutors "significant flexibility" in how they present their case at trial, "provided that the defendant was given notice of the *core of criminality* to be proven." *United States v. Kelly,* 368 Fed. Appx. 194, 197 (2d Cir.2010) (emphasis in original), *cert. denied,* ––– U.S. ––––, 131 S.Ct. 349 (2010).

The petitioner has failed to demonstrate a shift in the prosecutor's theory sufficient to undermine the notice of the charges provided by his indictment. The "core" of the prosecution's theory, and of the charges, was that Mr. Washington posed as a delivery person so as to gain access to Ms. Sanchez's apartment, following which he assaulted her and robbed her of jewelry and money. Although Ms. Broderick may have supplemented these allegations with additional details as to the precise means of Mr. Washington's entry into Ms. Sanchez's building, such changes did not undermine his ability to mount a defense to the primary thrust of the charges against him. Therefore, the Appellate Division's decision to deny this claim was not unreasonable or contrary to federal law.

I. *Interference at Trial*

The petitioner next alleges that he was denied a fair trial due to Justice Brandveen's "constant" and improper interference in the proceedings. (Pet. Memo. at 102). In particular, he alleges that Justice Brandveen (1) interjected disproportionately during the petitioner's presentations, (2) inappropriately questioned a number of witnesses with respect to lighting conditions at the crime scene, (3) kept the petitioner handcuffed and surrounded by eight armed guards during the trial, and (4) failed to provide the petitioner with daily copies of the trial transcript. (Pet. Memo. at 102–07).

***30** The first two of these claims were raised by the petitioner in his supplemental appellate brief and rejected by the Appellate Division as unpreserved. (Supp. Brief at 52–53); *Washington I,* 282 A.D.2d at 377, 726 N.Y.S.2d at 7. The second two claims were not raised on direct appeal, although New York law requires recordbased claims to be raised on direct appeal before they may be collaterally reviewed. *Oliveri v. New York,* No. 07 Civ. 8262, 2010 WL 5620926, at *6 (S.D.N.Y. Dec. 29, 2010) (referring to New York law's " 'requirement that issues arising from the face of the trial record be raised by direct appeal' " (quoting *Clark v. Perez,* 510 F.3d 382, 391 n. 4 (2d Cir.2008))), *report and recommendation adopted,* 2011 WL 197240 (S.D.N.Y. Jan. 20, 2011); *Jackson v. Lee,* No. 10 Civ. 3062, 2010 WL 4628013, at *21 n. 31 (S.D.N.Y. Nov. 16, 2010), *report and recommendation adopted,* 2010 WL 5094415 (S.D.N.Y. Dec 10, 2010). Both New York's preservation rule, embodied in CPL § 470.05(2), and its rule requiring that record-based claims be brought on direct appeal are "firmly established and regularly followed" such that they provide independent and adequate state law grounds precluding federal habeas review. *See Garvey v. Duncan,* 485 F.3d 709, 720 (2d Cir.2007); *Dixon v. McGinnis,* No. 06 Civ. 39, 2010 WL 3260459, at *8 (S.D.N .Y. June 9, 2010). Because the petitioner has not alleged actual innocence, cause and prejudice, or improper application of these rules, his claims with respect to Justice Brandveen are procedurally barred and cannot be considered on their merits. Therefore, this asserted ground for relief should be denied.

J. *Sentence*

A court has " 'wide discretion' " in choosing the type and source of information to consider in imposing a sentence.

*Williams v. Philips,* No. 02 Civ. 5811, 2003 WL 21961127, at *7 (S.D.N.Y. Aug. 18, 2003) (quoting *United States v. Pugliese,* 805 F.2d 1117, (2d Cir.1986)). Conversely, "a defendant has a due process right to question the procedure leading to the imposition of his sentence." *Pugliese,* 805 F.2d at 1122 (citing *Gardner v. Florida,* 430 U.S. 349, 358 (1977)). That right is violated where a defendant is "sentenced on the basis of 'materially untrue' statements, or on 'misinformation or misreading of court records.' " *United States v. Prescott,* 920 F.2d 139, 143 (2d Cir.1990) (quoting *Townsend v. Burke,* 334 U.S. 736, 741 (1948)); *see also United States v. McDavid,* 41 F.3d 841, 844 (2d Cir.1994) ("A sentence based *in part* on material misinformation may not stand."). As long as a petitioner demonstrates that it is " 'quite probable' " that the sentencing court relied on misinformation, actual reliance need not be shown. *Lewis v. Phillips,* No. 04 Civ. 1117, 2009 WL 362290, at *3 (S.D.N.Y. Feb. 13, 2009) (quoting *King v. Hoke,* 825 F.2d 720, 724 (2d Cir.1987)). However, the trial court's error in relying on such information must be " 'so egregious, that if accurately presented to the sentencing judge a different result would have been reached.' " *Williams,* 2003 WL 21961127, at *7 (quoting *Warren v. Miller,* 78 F.Supp.2d 120, 131 (E.D.N.Y.2000)).

***31** Mr. Washington challenges his sentence on the ground that Justice Brandveen improperly adjudicated him a second violent felony offender, a designation that significantly increased his sentence. (Pet. Memo. at 107–08). He argues that the prosecutor failed to meet her evidentiary burden and that Justice Brandveen's holding therefore relied on material misinformation in violation of his due process rights. (Pet. Memo. at 107–08, 112–16). The Appellate Division reviewed this argument on its merits and denied it. *Washington I,* 282 A.D.2d at 377, 726 N.Y.S.2d at 7. Mr. Washington appealed this denial to the Court of Appeals, thus exhausting this claim. *Washington II,* 96 N.Y.2d 925, 732 N.Y.S.2d 643.

However, this claim is without merit. Even if Mr. Washington were correct that the prosecutor offered insufficient evidence regarding his prior criminal history, he has not denied that he was in fact previously convicted of a violent felony and incarcerated for the periods alleged by the prosecutor. (Pet. Memo. at 112–16). Therefore, he has failed to sustain his burden of showing that, had Justice Brandveen conducted a more thorough investigation, he would have arrived at a different result regarding the petitioner's status as a second violent felony offender. As a result, the Appellate Division's decision to deny this claim was not unreasonable or contrary to federal law.

*Conclusion*

For the reasons set forth above, I recommend that Mr. Washington's petition for a writ of habeas corpus be denied. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard J. Sullivan, Room 640, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Filed March 30, 2011.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 4154103

## Footnotes

1 The respondent explains that this transcript is improperly dated and that the actual date of the hearing was March 29, 1997. (Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Resp.Memo.") at 51 & n. 16).

2 To the extent Mr. Washington is arguing that the withholding of this evidence violates *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448 (1961), those claims are not cognizable on habeas review and thus will not be addressed. *See, e.g., Martinez v. Phillips,* No. 04 Civ. 8617, 2009 WL 1108515, at *23 (S.D.N.Y. April 24, 2009) ("[T]he failure to turn over *Rosario* material is not a basis for habeas relief, as the *Rosario* rule is purely one of state law."); *Lebron,* 2008 WL 793590, at *21 (finding *Rosario* allegation "not subject to habeas

review because *'Rosario* is not based on the State or Federal Constitution' " (quoting *People v. Jackson,* 78 N.Y.2d 638, 644, 578 N.Y.S.2d 483, 487 (1991))).

3 Although the respondent states that the petitioner challenged the prosecutor's alleged failure to produce Officer Olmo's notes in his *pro se* supplemental brief, the document itself does not support that contention. In an abundance of caution, I will address the merits of this claim despite the apparent lack of exhaustion. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

4 Although Mr. Washington frames this ground for relief as the trial court's failure to conduct an independent source hearing, he apparently misunderstands the purpose of such a hearing. From the substance of his argument, it is apparent that Mr. Washington is challenging the trial court's decision to allow various of the prosecutor's witnesses to identify him as the perpetrator-both at the suppression hearing and at trial-without giving him proper notice of the basis for those identifications. (Pet. Memo. at 90–91). I have chosen to address this claim based on its substance rather than its title.

5 To the extent that the petitioner is also objecting here to other aspects of the prosecutor's conduct during trial, the Appellate Division found these claims to be unpreserved and declined to review them in the interest of justice. (Pet. Memo. at 99–100); *Washington I,* 282 A.D.2d at 377, 726 N.Y.S.2d at 7. The petitioner has not made any showing of actual innocence, cause and prejudice, or improper application of the procedural bar; therefore, I will not address the merits of these claims.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.